**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

|  |  |
|---|---|
| **Plaintiffs Fund Texas Choice, The North Texas Equal Access Fund, The Lilith Fund for Reproductive Equity, Frontera Fund, The Afiya Center, West Fund, Jane's Due Process, Clinic Access Support Network, and Dr. Ghazaleh Moayedi, DO, MPH, FACOG,**<br><br>       **Plaintiffs,**<br>**v.**<br><br>**KEN PAXTON, in his Official Capacity of Attorney General; Susan R. Deski, in her Official Capacity of County Attorney of Burleson County, Texas, and on behalf of a class of all Texas County Attorneys similarly situated; and Julie Renken, in her Official Capacity of District Attorney for Washington County, Texas, Wiley B. "Sonny" McAfee, in his Official Capacity of District Attorney for Blanco, Burnet, Llano, and San Saba Counties, Texas,  Jose Garza in his Official Capacity of District Attorney for Travis County, Texas, and Fred H. Weber, in his Official Capacity of District Attorney for Caldwell County, and on behalf of a class of all Texas District Attorneys similarly situated,**<br><br>       **Defendants.** | **Civil Case No. 1:22-cv-859** |

**PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT**
**FOR DECLARATORY AND INJUNCTIVE RELIEF[1]**

---

[1] Plaintiffs assert claims against the named defendants and against two defendant classes in this lawsuit, which are collectively referred to as the "Defendant Classes").

Plaintiffs Fund Texas Choice, The North Texas Equal Access Fund, The Lilith Fund for Reproductive Equity, Frontera Fund, The Afiya Center, West Fund, Jane's Due Process, CASN, and Dr. Ghazaleh Moayed, DO, MPH, FACOG, bring this complaint against the above-named Defendants, and under Federal Rule of Civil Procedure 23, two Defendant classes of all Texas District Attorneys and all Texas County Attorneys similarly situated (collectively, the "Defendant Classes"), under the United States Constitution, the laws of the United States and the State of Texas, 42 U.S.C. § 1983, and the Declaratory Judgment Act, 28 U.S.C.A. §§ 2201, 2202, to challenge any criminal prosecution of Plaintiffs under Texas anti-abortion statutes for lawful exercise of their constitutional rights. In support thereof, Plaintiffs allege the following:

## I.      INTRODUCTION

1.      On June 24, 2022, the Supreme Court of the United State issued its opinion in *Dobbs v. Jackson Women's Health Organization*, No. 19-1392, 2022 WL 2276808 (U.S. June 24, 2022), reversing its prior holdings in *Roe v. Wade*, 410 U.S. 113 (1973) and *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), as well as decades of precedent upholding the constitutional right to abortion.

2.      Leading up to and immediately following the *Dobbs* decision, reproductive justice organizations, including Plaintiffs, were threatened by those who oppose a pregnant person's[2] right to self-determination and reproductive healthcare.  Agents of the State of Texas contend that

---

[2] Any person with a womb is capable of becoming pregnant.  This group includes not only women, but also non-binary and trans persons who do not identify as women, as well as children. To include all of these groups, this Complaint refers to "pregnant people" or "pregnant Texans" throughout.  Although women are obviously targeted and marginalized by laws limiting their personal autonomy, these laws also impact other marginalized individuals as well.

virtually every activity of those who assist pregnant Texans to understand their rights and medical options is now subject to criminal prosecution.  The threats have been repeated and far-ranging, and the intimidation has chilled helping professionals from providing counseling, financial, logistical, and even informational assistance to pregnant Texans who may need to access abortion care outside of the state.

3.      The Texas Attorney General ("AG Paxton") and his associates have undertaken a concerted and coordinated effort to deprive *all* Texans (and non-Texans, too) of many of their constitutional rights when those individuals and entities have any involvement with abortion, or with helping a person to understand or access legal care.  AG Paxton immediately declared that pre-*Roe* statutes that criminalized abortion in Texas were in full force and effect, and activist legislators and their associates have declared that reproductive justice groups were going to be held liable for years of being complicit in murder, including for activities that were undertaken in compliance with all federal and state law requirements at the time.

4.      These efforts have not been limited to abortion itself; they have targeted those who help pregnant Texans access legal healthcare by providing financial assistance, travel arrangements, non-abortion healthcare, logistical support, and even information about accessing legal care available in other places.

5.      For instance, after sending myriad threats in the form of cease-and-desist letters, social media posts, "tweets," and other forms of communication, a group of Texas legislators that comprise the "Texas Freedom Caucus" sent threatening letters to corporations and law firms who

have promised to assist their staff in accessing legal care outside of Texas.  One portion of a July

7, 2022 letter to the Sidley Austin law firm states:[3]

> It has come to our attention that Sidley Austin has decided to reimburse the travel costs of employees who leave Texas to murder their unborn children. It also appears that Sidley has been complicit in illegal abortions that were performed in Texas before and after the Supreme Court's ruling in *Dobbs v. Jackson Women's Health Organization*, No. 19-1392. We are writing to inform you of the consequences that you and your colleagues will face for these actions.

> Abortion is a felony criminal offense in Texas unless the mother's life is in danger. *See* West's Texas Civil Statutes, article 4512.1 (1974) (attached). The law of Texas also imposes felony criminal liability on any person who "furnishes the means for procuring an abortion knowing the purpose intended." West's Texas Civil Statutes, article 4512.2 (1974). This has been the law of Texas since 1925, and Texas did not repeal these criminal prohibitions in response to *Roe v. Wade*, 410 U.S. 113 (1973). These criminal prohibitions extend to drug-induced abortions if any part of the drug regimen is ingested in Texas, even if the drugs were dispensed by an out-of-state abortionist. To the extent that Sidley is facilitating abortions performed in violation of article 4512.1, it is exposing itself and each of its partners to felony criminal prosecution and disbarment.

6.      The letter goes on for four pages, and ultimately concludes with:

---

[3] A copy of the July 7, 2022 letter to Sidley Austin is attached as **<u>Exhibit A</u>** to this Complaint and is fully incorporated by reference.  The letter was released publicly by the Texas Freedom Caucus and is available at
https://www.freedomfortexas.com/uploads/blog/3b118c262155759454e423f6600e2196709787a8.pdf.

It also appears that Sidley may have aided or abetted drug-induced abortions in violation of the Texas Heartbeat Act, by paying for abortions (or abortion-related travel) in which the patient ingested the second drug in Texas after receiving the drugs from an out-of-state provider. Litigation is already underway to uncover the identity of those who aided or abetted these and other illegal abortions. In light of this pending litigation, as well as any anticipated litigation that might ensue, you and your colleagues at Sidley must preserve and retain all documents, data, and electronically stored information relating in any way to: (1) Any abortions performed or induced in Texas on or after September 1, 2021, in which a fetal heartbeat was detectable (or likely to be detectable if tested), including any such abortions that occurred while Judge Pitman's injunction was in effect from October 6–8, 2021; (2) Any abortions performed or induced in Texas on or after June 24, 2022, including abortions performed while Judge Weems's TRO was in effect from June 28, 2022, through July 1, 2022; (3) Any abortion that occurred on or after September 1, 2021, if there is any possibility that the patient might have opted for a drug-induced abortion and ingested either of the abortion drugs in Texas, even if the drugs were dispensed by a provider outside the state of Texas; and (4) The identity of any person or entity who has aided or abetted the abortions described in (1) – (3), including anyone at your firm, and anyone who paid for or in any way reimbursed the costs of those abortions.

7.    The "litigation" referred to in the letter to Sidley Austin is a series of Rule 202 Petitions filed in Texas state courts, two targeting Plaintiffs here (Lilith Fund and TEA Fund), one targeting executives at Whole Women's Health and Alamo Women's Reproductive Services, another targeting a researcher at the University of Texas who studied self-managed abortions after SB8, and one targeting Yvette Ostolaza, managing partner of Sidley Austin.  These Rule 202 actions seek deposition testimony related to abortions the petitioners—all represented by Jonathan Mitchell and Senator Bryan Hughes—apparently believe ran afoul of Texas's Senate Bill 8 ("SB8") and pre-*Roe* statutes.  Messrs. Mitchell and Hughes previously drafted and Senator Hughes sponsored SB8, which was famously separated from state enforcement in order to prevent pre-enforcement judicial review by the federal courts. *Whole Woman's Health v. Jackson*, __ U.S. __, 142 S. Ct. 522, 211 L.Ed.2d 316 (2021).

8.      The 202 Petitions and the July 7 letter from the Texas Freedom Caucus mirror one another in parts word-for-word, evidencing a partnership and/or coordinated effort between private and state actors to intimidate Plaintiffs and others based on their willingness to help clients, employees—or anyone else—access legal healthcare in another state.[4]

9.      Plaintiffs in this action are Texas-based non-profit abortion funds and practical support networks (organized under Internal Revenue Code § 501(c)(3)), and an individual doctor who also serves as a board member on one of the non-profits, who seek a declaratory judgment and injunction to declare null and void the application of Texas anti-abortion laws (Texas REV. CIV. STATS. ANN. ART. 4512.1, 4512.2, 4512.3, 4512.4, 4512.6[5] (("Pre-*Roe* Statutes")) and TEXAS HEALTH & SAFETY CODE § 170A.001, *et seq*. "Trigger Ban") to Plaintiffs based upon Plaintiffs' exercise of their First Amendment Constitutional rights and/or their well-established right to travel interstate.

10.     Texas currently has an intricate, contradictory, and complicated set of laws regulating and outright banning abortion (and the Trigger Ban will soon add to that complexity). In addition to the criminal prohibitions, Texas enacted SB8 in 2021, in which the state authorized private individuals to police their neighbors by bringing civil lawsuits against anyone who "aided or assisted" with abortions in Texas.

11.     Just before *Dobbs* was decided, in anticipation of the decision and out of an abundance of caution (largely due to the previous threats made against them), Plaintiffs paused all

---

[4] In jurisdictions in which District Attorneys have publicly promised not to prosecute abortion-related crimes, SB8 works as a backstop to ensure providers and others are still chilled from providing abortion-related assistance by possible liability in a civil suit under SB8.
[5] Previously codified at Tex. Pen. Code art. 1191, 1192, 1193, 1194, and 1196, respectively.

activities assisting access to abortion care, including for care provided out of state. The non-profit Plaintiffs have not provided direct abortion services (they never have), nor have they paid or reimbursed any provider or other individual or entity for the provision of abortion services within or outside of Texas.  Dr. Moayedi also ceased providing all abortion care, both in Texas and in other states where it remain legal an din which she is also licensed to practice medicine.

12.     Plaintiffs wish to resume the following activities: (a) funding legal, out-of-state abortions for pregnant Texans (i.e. including directly paying and/or reimbursing out-of-state licensed providers of abortion services and providing financial aid to pregnant Texans for that purpose); (b) providing informational materials and planning assistance (such as organizing and funding transportation and lodging) to pregnant Texans for obtaining legal, out-of-state abortions; and (c) transporting pregnant Texans to out-of-state licensed providers of safe, legal abortion.  Dr. Moayedi also wishes to resume her travel to other states to provide care to patients and she wishes to provide care to patients in other states via telehealth practices from her location in Texas.

13.     Despite Plaintiffs' cessation of activities directly related to abortion, Texas state actors have asserted that Plaintiffs engaged in criminal activity both before and after the issuance of *Dobbs*.  Specifically, Texas Legislators have threatened that abortion funds and their donors will be prosecuted for murder. They have asserted retroactive application of the Pre-*Roe* statutes against providers (not parties to this action) and abortion funds.

14.     Texas state actors threaten criminal prosecution of Plaintiffs, their staff, volunteers, and donors under both the Trigger Ban and the Pre-*Roe* statutes. If these statutes are construed as expansively as asserted by Texas state actors (including the Attorney General) both sets of laws violate the constitutional rights of Plaintiffs, their staff, volunteers, and donors. Further, the differing statutory constructs conflict significantly and thus fail to provide fair notice to Plaintiffs,

their staff, volunteers, and donors of the contours of criminal liability for activities Plaintiffs have historically performed (prior to the *Dobbs* opinion) and wish to resume performing.

15.     Plaintiffs seek to enjoin Defendants from applying Texas's anti-abortion laws to Plaintiffs for the legal exercise of their rights. Plaintiffs also seek a declaratory judgment declaring unconstitutional, null and void the retroactive application of the Pre-*Roe* Statutes and to enjoin Defendants from applying them against Plaintiffs, their staff, volunteers, and/or donors for conduct that preceded the *Dobbs* decision.

## II.     JURISDICTION AND VENUE

16.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343. This is an action to enforce civil and constitutional rights arising under 42 U.S.C. § 1983 and the United States Constitution.

17.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201-2202, Rules 57 and 65 of the Federal Rules of Civil Procedure, and the general legal and equitable powers of the Court, including the Court's inherent authority to enforce the supremacy of federal law as against contrary state law.

18.     Venue is appropriate in this district under 28 U.S.C. § 1391(b)(1) and (b)(2) because one or more of the Defendants resides in this judicial district and because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

19.     This case is appropriately filed in the Austin Division because all Defendants maintains offices in this division. Assignment to the Austin Division is also proper because several

Plaintiffs maintain their headquarters in the Austin Division and serve Texans who reside in the Austin Division.[6]

### III.   PARTIES

**A.   Plaintiffs**

20.     Plaintiffs are non-profit entities that provide emotional, financial, logistical, practical, and informational assistance to those who may become pregnant and need or choose to consider abortion as an option, and an individual medical provider.  Plaintiffs support reproductive justice, which recognizes and supports the human right to maintain personal bodily autonomy, have children, not have children, and parent children in safe and sustainable communities.

21.     Reproductive justice is not just about abortion. Abortion access is critical, and people of color, children, and other marginalized people also often have difficulty accessing contraception, comprehensive sex education, STI prevention and care, alternative birth options, adequate prenatal and pregnancy care, domestic violence assistance, adequate wages to support our families, safe homes, and much more.  Plaintiffs are reproductive justice-focused organizations and individuals who have all altered their behavior following the *Dobbs* decision and the associated threat of criminal prosecution under Texas law.  They all want to resume their prior activities as permitted by the United States Constitution and seek intervention from this Court to allow them do so safely.

---

[6] Several other cases pending in the Western District of Texas are related to this case.  *Wendy Davis et al., v. Mistie Sharp, et al*., Cause No. 1:22-cv-00373-RP, *Whole Women's Health et al. v. Jackson et al*., Cause No. 1:21-cv-00616-RP, and *United States of America v. Texas*, Cause No. 1:21-cv-00796-RP, are all pending in front of the Honorable Robert Pitman, and also challenge Texas statutes regulating and/or prohibiting abortion, including Senate Bill 8.

22.     Plaintiff Fund Texas Choice's ("FTC's") mission is to help Texans equitably access abortion through safe, confidential, and comprehensive practical support.  FTC is a nonprofit organization incorporated in Texas that provides practical, logistical, and emotional support to pregnant Texans seeking medical care, including legal health care within Texas and legal abortions outside of Texas.  FTC was founded in response to HB2, a 2013 Texas statute that shuttered over half of the state's abortion clinics, imposing long wait times on patients and forcing them to travel long distances for care.  In the past, FTC booked and directly paid for the transportation and lodging of companions for minor clients or clients who have a fetal anomaly.  FTC does not—and never did—fund abortions directly.

23.     The mission of Plaintiff The North Texas Equal Access Fund ("TEA Fund") is to foster reproductive justice.  It historically provided financial, emotional, and logistical support for abortion patients in North Texas.  TEA Fund also provides education, information, advocacy and activism on behalf of pregnant Texans in need of abortion care.  Since the *Dobbs* decision, TEA Fund has paused its funding of abortions as it tries to comply with Texas law, but it would like to resume its constitutional activity.  TEA Fund is a nonprofit organization incorporated in Texas and based in North Texas.

24.     Plaintiff The Lilith Fund for Reproductive Equity's ("Lilith Fund's") mission is to foster reproductive justice.  Lilith Fund historically provided financial, emotional, and logistical support for abortion patients in Central Texas.  Its core values are compassion, intersectionality, anti-racism, client-centeredness, inclusivity and collaboration.  In addition to its historical funding activities, Lilith Fund conducts educational and informational efforts, and provides advocacy and activism in support of reproductive justice principles.  Since the *Dobbs* decision, Lilith Fund has paused its funding of abortions for Texans as it tries to comply with Texas law, but it would like

to resume it constitutional activity.  Lilith Fund is a nonprofit organization incorporated in Texas and based in Central Texas.

25.    Plaintiff Frontera Fund's mission is also to foster reproductive justice.  It historically provided financial, emotional, and logistical support for low-income abortion patients in the Rio Grande Valley.  In addition to its historical funding activities, Frontera Fund conducts educational and informational efforts and provides advocacy and activism in support of reproductive justice principles.  Since the *Dobbs* decision, Frontera Fund has paused its funding of abortions for Texans as it tries to comply with Texas law, but it would like to resume its constitutional activity.  Frontera Fund is a nonprofit organization incorporated in Texas and based in South Texas.

26.    Plaintiff The Afiya Center is a nonprofit organization incorporated in Texas and based in Dallas. Its mission is to serve Black women and girls by transforming their relationship with their sexual and reproductive health by addressing the consequences of reproductive oppression. Since the *Dobbs* decision, The Afiya Center has also paused its funding of abortions for Texans as it tries to comply with Texas law and because of the threat of potential prosection since *Dobbs* was decided, but it would like to resume conducting its constitutionally protected activities.

27.    Plaintiff West Fund is a non-profit, grass-roots organization based in El Paso, Texas.  It was founded in November of 2013 after a variety of restrictions on abortion clinics were imposed by the Texas Legislature.  Its mission historically was to provide direct and/or supportive funding to assist pregnant people seeking abortion services in El Paso, Texas; Ciudad Juarez, Chihuahua, Mexico; and throughout southern and eastern New Mexico.  It operates a Spanish and English hotline through which it provides information to callers and does client intake, though it

presently only does so in Mexico and New Mexico, where abortion remains legal. West Fund has also collaborated with other Texas reproductive justice organizations to advance advocacy for abortion access and engages in other political activities, with reproductive justice as its central focus. It also provides comprehensive sexual education programs to high schoolers. West Fund has previously funded and would like to resume funding reproductive healthcare, abortions, and people who seek abortions. West Fund also openly communicates with the public regarding abortion, voicing its support for abortion rights, advocating for reproductive freedom and reproductive justice, and seeking the support of others who share the same values.

28.     The mission of Plaintiff Jane's Due Process  ("JDP") is to help ensure that young people in Texas have full reproductive freedom and autonomy over their healthcare decisions. Most young people involve a parent or guardian in their abortion decision if it is safe for them to do so. JDP serves those who cannot—young people who have parents or guardians who are deceased, incarcerated, or abusive; who are inclined to kick them out upon learning of their pregnancy or plans for an abortion; or who would try to coerce them to carry to term. JDP is a nonprofit organization incorporated in Texas, and it historically provided logistical, financial, and emotional support to pregnant Texans seeking medical care, including legal health care within Texas and legal abortions outside of Texas. JDP also used to provide funds to abortion providers in Texas on behalf of young patients in the state to subsidize the cost of their care. Occasionally, JDP also referred young people to abortion providers and secured the abortion appointments for them. JDP has not conducted any of these activities since the decision in *Dobbs* was issued. JDP would like to resume these activities in accordance with their constitutional rights, but are chilled by the threats of potential criminal prosecution.

29.     Plaintiffs FTC, TEA Fund, Lilith Fund, Frontera Fund, The Afiya Center, West Fund, and JDP are collectively referred to as the "Fund Plaintiffs" in this Complaint.

30.     Plaintiff Clinic Access Support Network ("CASN") is a predominantly volunteer, consensus-based, non-hierarchical practical support network that has provided transportation, meal stipends, accommodations, childcare and dependent care assistance, and support and compassionate care to people seeking abortion services in Greater Houston Area and the Southeast Texas region.  CASN generates no revenue, charges no fees for its services, and exists purely out of the generosity and commitment of its volunteers and staff to be of service to people in need. CASN has previously provided, and wishes to continue to provide assistance to people in need of an abortion, including pregnant Texans who need to access care outside of the state.  It cannot safely do so until the threat of criminal prosecution for those activities is removed.

31.     Plaintiff Dr. Ghazaleh Moayedi, DO, MPH, FACOG, is a board-certified OB/GYN and complex family planning specialist who resides in Texas.  She holds active licenses from the relevant medical licensing authorities in 20 states, including Texas, and she is authorized to practice medicine in all of those states.  Historically, as part of her practice, Dr. Moayedi provided abortions to Texans within the state in compliance with all applicable laws.  She also provided abortions to patients in other states in which she is licensed in accordance with all applicable laws in those other states.  Dr. Moayedi also wishes to provide abortion care via telemedicine to patients in states where it is legal, from her location in Texas.  The abortions she performed in other states historically included patients from Texas, particularly when she provided abortions in states other than Texas after Texas Senate Bill 8 became effective on September 1, 2021.  Since the decision in *Dobbs*, Dr. Moayedi stopped  traveling to other states in which abortions remain legal because she fears that performing any abortion on a Texas resident as a licensed Texas physician could

subject her to criminal prosecution and/or threaten her license to practice medicine in Texas. Dr. Moayedi is also a member of the Board of Directors for Plaintiff TEA Fund, and has historically provided funding to assist Texans to obtain abortions. She has also paused that activity since the *Dobbs* decision, but would like to resume all of her constitutionally protected activity.

32. All Plaintiffs openly communicate with the public regarding abortion, voicing support for abortion rights and reproductive healthcare, advocating for reproductive freedom and reproductive justice, and seeking the support of others who share the same values.

33. Each of the Fund Plaintiffs and CASN assert claims on behalf of itself, its staff, volunteers, and donors. Each Fund Plaintiff and CASN have suffered a direct injury because (a) they are being required to divert organizational resources to counteract the State of Texas' threats of criminal liability against it and its staff, volunteers, and donors; (b) their donors are chilled from making financial donations—the source of their funding as a nonprofit organization—because of threats of criminal prosecution against the donors; and, (c) each organization's mission is being frustrated. Each Fund Plaintiff and CASN are also suffering the imminent threat of additional direct injury because, according to public representations by State actors, they are threatened with criminal prosecution and civil and criminal penalties. Each Fund Plaintiff and CASN also have representational standing based on injuries to their staff, volunteers, and donors, because at least one of their staff, at least one of their volunteers, and at least one of their donors has standing; the interests at stake are germane to their purpose; and, neither the claims nor the relief requested requires participation of the organization's individual staff, volunteers, or donors. As set forth below, state actors' public threats regarding enforcement show that, in addition to each Fund Plaintiff and CASN themselves, their staff, volunteers, and donors are all likely targets of criminal prosecution.

**B.     Defendants**

34.     Defendant Ken Paxton is the Attorney General of the State of Texas and may be served at the Office of the Attorney General, 300 West 15th Street, Austin, Texas 78701. Defendant Paxton is sued in his official capacity as Attorney General, and in that capacity, he has authority to assist local prosecutors with criminal prosecutions upon request, TEX. GOV'T CODE 574.004, and he is authorized under the Trigger Ban to pursue a civil penalty of not less than $100,000 for any violation of that law.  TEX. HEALTH & SAFETY CODE 170A.005.

35.     Defendant Julie Renken is an individual sued in her official capacity as the District Attorney of Washington County, Texas.  She may be served at Courthouse Annex, 110 S. Park Street, Brenham, TX 77833.

36.     Defendant Susan R. Deski is an individual sued in her official capacity as the County Attorney of Burleson County, Texas and may be served at 100 West Buck Street, Suite 402, Caldwell, Texas 77836.

37.     Defendant Wiley B. "Sonny" McAfee is an individual sued in his official capacity as the District Attorney of Blanco County, Texas; the District Attorney of Burnet County, Texas; the District Attorney of Llano County, Texas; and the District Attorney of San Saba County, Texas. He may be served at 1701 E. Polk, Suite 24, Burnet, Texas 78611.

38.     Defendant José Garza is an individual sued in his official capacity as the District Attorney of Travis County, Texas and may be served at Ronald Earle Building, 416 West 11th St., Austin, Texas 78701.

39.     Defendant Fred H. Weber is an individual sued in his official capacity as the District Attorney of Caldwell County, Texas and may be served at 1703 S. Colorado Street, Lockhart, Texas 78644.

40.     In their official capacities as District Attorneys, each DA Defendant is required to "represent the State in all criminal cases in the district courts of his district."  TEX. CODE CRIM. PROC. art. 2.01.  Therefore, each DA Defendant has the sole authority of the State of Texas within his or her respective districts to file and pursue criminal cases, including any cases charging a violation of the Trigger Ban and/or Pre-*Roe* abortion statutes.

41.     Burleson County, Texas does not have an elected DA position.  As such, under Texas statute, the County Attorney fulfills the duties traditionally required of a DA.  TEX. CODE CRIM. PROC. art. 2.02.  In her official capacity as County Attorney for Burleson County, Texas, County Attorney Deski therefore has the sole authority of the State of Texas within Burleson County to file and pursue criminal cases, including any cases charging a violation of the Trigger Ban and/or pre-*Roe* abortion statutes.

## IV.     FACTUAL ALLEGATIONS

### A.     Relevant Texas Laws

#### TEXAS'S PRE-*ROE* CRIMINAL ABORTION BAN

42.     Prior to the Supreme Court's opinion in *Roe v. Wade*, 410 U.S. 113 (1973), the Texas Penal Code contained Articles 1191, 1192, 1193, 1194, and 1196[7] (collectively "Pre-*Roe* Statutes"), under which abortion was criminalized.

43.     Art. 1191 of the Texas Penal Code stated:

> If any person shall designedly administer to a pregnant woman or knowingly procure to be administered with her consent any drug or medicine, or shall use towards her any violence or means whatever

---

[7] Now codified at Tex. Rev. Stats. Ann. arts. 4512.1, 4512.2, 4512.3, 4512.4, and 4512.6 respectively.

externally or internally applied, and thereby procure an abortion, he shall be confined in the penitentiary not less than two nor more than five years; if it be done without her consent, the punishment shall be doubled. By 'abortion' is meant that the life of the fetus or embryo shall be destroyed in the woman's womb or that a premature birth thereof be caused.

44.  Art. 1192 stated, "Whoever furnished the means for procuring an abortion knowing the purpose intended is guilty as an accomplice."  This accomplice liability is punishable by two to five years in state penitentiary.  Texas Penal Code art. 1192 (West 1961).

45.  Texas courts interpreted "furnish[ing] the means for procuring an abortion" to apply to providing drugs, medicine, or instruments that could produce an abortion, or committing violence upon the pregnant person to bring about an abortion.  *See Fondren v. State*, 169 S.W. 411, 414-16 (1914).

46.  In *Roe v. Wade*, 410 U.S. 113, 164 (1973), the U.S. Supreme Court affirmed a declaratory judgment that the Pre-*Roe* Statutes were unconstitutional.  It held that no further relief was necessary because the Court "assume[ed] the Texas prosecutorial authorities will give full credence to this decision that the present criminal abortion statutes of that State are unconstitutional."  *Roe*, 410 U.S. at 166.

47.  Despite the *Roe* holding, which remained binding law until June 24, 2022, in the Spring of 2021, the Texas Legislature included a legislative finding in Section 2 of Senate Bill 8, 87th Leg., Reg. Sess., popularly called the "Texas Heartbeat Act" ("SB 8") that Texas "never repealed, either expressly or by implication, the state statutes enacted before the ruling in *Roe v. Wade*, 410 U.S. 113 (1973), that prohibit and criminalize abortion unless the mother's life is in danger." S.B. 8 § 2 (Tex. 2021).

48.     Before and after the *Dobbs* opinion, Texas state actors have asserted that overruling *Roe* would immediately resurrect these Pre-*Roe* Statutes.  Specifically, Texas state actors have continuously asserted that the Pre-*Roe* Statutes criminalize abortion funds, including Plaintiffs, for all activities related to abortion, regardless of whether abortions take place in a jurisdiction outside of Texas in which abortion is legal.  Some state actors have gone so far as to contend that the Pre-*Roe* Statutes should be enforced retroactively, based on the theory that courts do not have the power to invalidate laws.  Their tortured theory of constitutional law and federalism asserts that the Pre-*Roe* Statutes were always in effect, but just lacked DAs with the executive will to enforce them.  Thus, these state actors and their associates contend that those who supported pregnant Texans in obtaining abortions over the past 50 years can be prosecuted as long as the statute of limitations has not expired under the Pre-*Roe* Statutes.

### TEXAS TRIGGER BAN

49.     In July 2021, Texas also enacted an abortion ban that would go into effect on the 30th day after (1) the issuance of a Supreme Court opinion overruling *Roe v. Wade*, 410 U.S. 113 (1973) either wholly or in part; (2) the issuance of any other Supreme Court opinion "that recognizes . . . the authority of the states to prohibit abortion;" or, (3) adoption of a constitutional amendment that "restores to the states the authority to prohibit abortion." 2021 Tex. Sess. Law Serv. Ch. 800 (H.B. 1280), Sec. 3 (West); TEXAS HEALTH & SAFETY CODE § 170A.001, *et seq.*

50.     The Trigger Ban prohibits any abortion except those performed by a licensed physician to prevent the death or serious risk of substantial impairment of a major bodily function of the pregnant person.  TEXAS HEALTH & SAFETY CODE § 170A.002.

51.     Violations of the Trigger Ban are felony crimes.  TEXAS HEALTH & SAFETY CODE § 170A.004.

52.     The Trigger Ban also imposes a civil penalty of "not less than $100,000 for each violation." TEXAS HEALTH & SAFETY CODE § 170A.005. AG Paxton is authorized to pursue these civil penalties on behalf of the State and has indicated his intent to do so.

53.     As in SB 8, the Trigger Ban also includes a legislative finding that "the State of Texas never repealed, either expressly or by implication, the state statutes enacted before the ruling in *Roe v. Wade*, 410 U.S. 113 (1973), that prohibit and criminalize abortion unless the mother's life is in danger." 2021 Tex. Sess. Law Serv. Ch. 800 (H.B. 1280), Sec. 4 (West).

54.     The Trigger Ban addresses its effect on laws already in effect, stating "that conduct is subject to a civil or criminal penalty under this chapter does not abolish or impair any remedy for the conduct that is available in a civil suit." TEXAS HEALTH & SAFETY CODE § 170A.006.

55.     The Trigger Ban becomes effective on August 25, 2022.

**TEXAS PENAL CODE – CRIMINAL RESPONSIBILITY FOR THE CONDUCT OF ANOTHER**

56.     Texas defines criminal responsibility for the conduct of another in Section 7.02 of the Penal Code. A person is criminally responsible for an offense committed by the conduct of another if:

>     (1)     acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense;
>
>     (2)     acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or
>
>     (3)     having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent commission of the offense.

TEX. PENAL CODE ANN. § 7.02(a).

### TEXAS CRIMINAL JURISDICTION STATUTE

57.     Texas also defines its state criminal jurisdiction by statute. Section 1.04(a) of the

Texas Penal Code provides the State with "jurisdiction over an offense that a person commits . . ."

if:

> (1)     either the conduct or a result that is an element of the offense occurs inside this state;
>
> (2)     the conduct outside this state constitutes an attempt to commit an offense inside this state;
>
> (3)     the conduct outside this state constitutes a conspiracy to commit an offense inside this state, and an act in furtherance of the conspiracy occurs inside this state; or
>
> (4)     the conduct inside this state constitutes an attempt, solicitation, or conspiracy to commit, or establishes criminal responsibility for the commission of, an offense in another jurisdiction that is also an offense under the laws of this state.

TEX. PENAL CODE ANN. § 1.04(a).

### TEXAS SENATE BILL 8

58.     SB8, which went into effect on September 1, 2021, authorizes private citizens to

bring a civil action in strict liability tort against any person who performs or "aids or assists" certain

abortions in Texas.

59.     The civil liability provisions of SB8, which are contained in Section 171.208 of the

Texas Health & Safety Code, provide that a suit may be brought against a person who "performs

or induces an abortion in violation of this subchapter" or any person who "knowingly engages in

conduct that aids or abets the performance or inducement of an abortion…if the abortion is

performed or induced in violation of this subchapter…"  TEXAS HEALTH & SAFETY CODE §

171.208(a)(1), (2).

60.     Section 171.201 provides the definitions that apply to certain terms within Subchapter H of Chapter 171 of the Texas Health & Safety Code (the subchapter created by SB8). It defines "physician" as "an individual licensed to practice medicine in this state…"  TEXAS HEALTH & SAFETY CODE § 171.201(4).  Thus, when Section 171.204 prohibits "a physician" from knowingly performing or inducing an abortion unless the test is done and no heartbeat is found, that prohibition applies only to "individual[s] licensed to practice medicine in this state[.]"  *Id.*

61.     SB8's civil liability provisions provide a means for private citizens to sue physicians in Texas for performing post-cardiac activity abortions, and to sue any person who may have "aided or assisted" such an abortion.

62.     SB8 has been declared unconstitutional by a Texas MDL Court.  The Defendants in the MDL have taken an interlocutory appeal, which is pending before the Third Court of Appeals in Austin.

63.     SB8 was purposely drafted to avoid prospective judicial review by the federal courts, which it has so far succeeded in doing.[8]  One of the bill's authors, former Texas Solicitor General, Jonathan F. Mitchell, was quoted in a recent news article:

> "We didn't want bounty hunters filing lawsuits under SB 8," Mitchell said in an email. "A bounty-hunter lawsuit would have provided an opportunity for a court to declare the statute unconstitutional."
>
> "The entire point of SB 8," he added, "was to prevent the judiciary from ruling on the constitutionality of the statute." In other words, the loophole isn't effective because it leads to lawsuits but because it creates the threat of them. "No one wanted to take the risk."…

---

[8] *See* Paulsen, Stephen, *The Legal Loophole that Helped End Abortion Rights,* July 30, 2022, *accessible at* https://www.courthousenews.com/the-legal-loophole-that-helped-end-abortion-rights, attached as **Exhibit B**.

"The Supreme Court is subject to checks and balances, just like the other institutions of our government," he said in an email. "There is nothing wrong with a state enacting a law to evade judicial review."[9]

**B.   The U.S. Constitution Guarantees and Protects Plaintiffs' Right to Travel Freely Among and Across State Borders.**

64.     The right to travel is a fundamental constitutional right of all citizens of the United States.  As the Supreme Court stated in *Saenz v. Roe*, 526 U.S. 489, 500 (1999):

> The "right to travel" discussed in our cases embraces at least three different components.  It protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State.

65.     Article IV, § 2 of the United States Constitution provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

66.     The Fourteenth Amendment guarantees that:

> [a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

U.S. CONST. AMEND. XIV.

67.     The Constitution also provides that "Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several States . . . ." U.S. CONST. ART. I, § 8, CL.

---

[9] *See id.*

3.  The positive grant of authority to Congress necessarily implies that states may not regulate commerce "among the several States."

68.     Recognition of the right to travel dates back to the earliest period of self-government in the United States, under the Articles of Confederation, Article IV, which guaranteed the right of "free ingress and regress to and from" neighboring States.

69.     The right to travel guarantees a citizen's ability to journey into other states and return to the citizen's state of residence.

70.     The right to travel also includes a newly-arrived or traveling citizen's right to be treated equally to the destination state's residents and to receive the same services without discrimination or classification.

71.     Thus, under the United States Constitution, no state can enforce its criminal laws to prevent citizens from traveling to or from another state without violating: (a) the Commerce Clause; (b) the Privileges and Immunities clauses of both Article IV and the Fourteenth Amendment; (c) the  Due Process clauses of the Fifth and Fourteenth Amendments; and, (d) the First Amendment.  A state may not enforce its own criminal laws to prohibit conduct that occurs in another state, where the conduct is legal.  Moreover, as a matter of Texas law, application of the Trigger Ban and the Pre-*Roe* abortion statutes to Texans' travel out-of-state is barred by Texas' own expression of the limits of its criminal jurisdiction.

**C.     The U.S. Constitution Protects Plaintiffs' Right to Freely Associate, Speak, and Fund Others' Travel Across State Borders.**

72.     Plaintiffs and their staff, volunteers, and donors have First Amendment rights to associate freely with each other and with pregnant Texans and to engage in expressive conduct,

including providing funding for pregnant Texans to access out-of-state services that are legal where rendered, including abortion.

73.     Pregnant Texans, including those who seek Plaintiffs' assistance, have constitutional rights to travel to states where full reproductive care—including abortions—is legal.

74.     Plaintiffs' use of funds in furtherance of their missions is considered speech and is protected by the First Amendment.

75.     Charitable donations are a protected form of freedom of speech and association under the First Amendment.  Organizations and their donors have a strong privacy interest in their affiliation—including the funding relationship—which is grounded in the First Amendment.

76.     A law that subjects donors or volunteers to prosecution or civil liability on the basis of their exercise of First Amendment rights (such as donating funds and/or time to a charitable organization) violates the First Amendment, even if the organization itself were accused of illegal activity.  *Elfbrandt v. Russell*, 384 U.S. 11, 17 (1966).

**D.     Irreparable Harm to Plaintiffs**

77.     On June 24, 2022, only hours after the *Dobbs* opinion was announced, AG Paxton issued an advisory regarding the Trigger Ban and asserting that the Pre-*Roe* Statutes could be enforced by DAs and County Attorneys immediately:

> … some prosecutors may choose to immediately pursue criminal prosecutions based on violations of Texas abortion prohibitions predating *Roe* that were never repealed by the Texas Legislature.[FN omitted]. … Under these pre-Roe statutes, abortion

providers could be criminally liable for providing abortions starting today.[10]

78.     On June 28, 2022, AG Paxton confirmed this via tweet: "[b]ut w/ SCOTUS's Dobbs decision, these laws are 100% in effect & constitutional."[11]

79.     After release of Paxton's Advisory, the Pre-*Roe* Statutes were added back into Vernon's Texas Civil Statutes, available on the Texas Legislature's website, which also notes that they were "held to have been impliedly repealed in *McCorvey v. Hill*, 385 F.3d 846 (5th Cir. 2004)."[12]

80.     Although AG Paxton is the chief law enforcement authority in Texas (apart from Governor Abbott), and although AG Paxton has the authority to bring civil actions under the Trigger Ban, it is the District and County Attorney Defendants who have the sole power under the Texas Constitution to bring criminal charges.  *State v. Stephens*, No. PD-1032-20, ___ S.W.3d ___, 2021 WL 5917198, at *6-11 (Tex. Crim. App. Dec. 15, 2021) (finding statute granting criminal enforcement power to the Attorney General to be unconstitutional and noting that these powers are granted to County and District Attorneys). The Attorney General's office nevertheless offers opinions construing laws and advising Texas governmental officials regarding the effect of certain laws, including criminal laws, and AG Paxton has done so here. Consequently, given the

---

[10] *Ken Paxton, Advisory on Texas Law Upon Reversal of* Roe v. Wade (June 24, 2022), https://www.texasattorneygeneral.gov/sites/default/files/images/executive-management/Post-Roe%20Advisory.pdf. (Attached as **Exhibit C**).

[11]  This Tweet is still viewable as of the time of this filing on Attorney General Ken Paxton's Twitter timeline at https://twitter.com/KenPaxtonTX/status/1541877550653313024. (Attached as **Exhibit D**).

[12] VERNON'S TEX. CIV. STATS. Ch. 6-1/2 (June 24, 2022), available at https://statutes.capitol .texas.gov/Docs/SDocs/VERNON'SCIVILSTATUTES.pdf.

State of Texas's chief law enforcement officer's position that the Pre-*Roe* Statutes are enforceable, the threat of potential prosecution by the DA and County Attorney Defendants—none of whom has disavowed the Attorney General's position on the Pre-*Roe* Statutes—is presently chilling.

81.    In fact, many Texas DAs have publicly indicated that they intend to enforce the Pre-*Roe* Statutes and the Trigger Ban, and consider charges on a case-by-case basis as they do other crimes.[13]

82.    Members of the Texas Legislature have also confirmed their intention that the Pre-*Roe* Statutes and Trigger Ban apply beyond the borders of Texas.  The July 7, 2022 letter from the Texas Freedom Caucus to Sidley Austin discussed in paragraphs 5-8, above, is just one example. Prior to the issuance of the *Dobbs* opinion, Texas Representative Briscoe Rowell Cain III ("Cain") also asserted in cease-and-desist letters to Texas abortion funds (including Fund Plaintiffs) that Texas abortion funds, their donors, employees, and volunteers are subject to prosecution under the Pre-*Roe* Statutes.  Specifically, in a letter to Plaintiff Lilith Fund, Representative Cain stated that the Pre-*Roe* Statutes "continue[] to exist as the law of Texas," that Lilith Fund was "committing criminal acts," and that these alleged criminal acts exposed everyone involved in Lilith Fund, "including your employees, volunteers, and donors" to criminal prosecution and imprisonment.[14]

---

[13] J. David Goodman and Jack Healy, *In States Banning Abortion, a Growing Rift Over Enforcement*, The New York Times (nytimes.com), June 29, 2022, https://www.nytimes.com/2022/06/29/us/abortion-enforcement-prosecutors.html; Lauren Rangel, *Some Texoma District Attorneys Say they will Prosecute Abortion Cases*, KXII (kxii.com), June 30, 2022, https://www.kxii.com/2022/06/30/some-texoma-district-attorneys-say-they-will-prosecute-abortion-cases/; Oscar Saravia, *Smith County District Attorney will Prosecute Abortion-related Crimes Like any Other Case*, Tyler Morning Telegraph (tylerpaper.com), July 2, 2022, https://tylerpaper.com/news/smith-county-district-attorney-will-prosecute-abortion-related-crimes-like-any-other-case/article_6990012c-f71b-11ec-9ea4-a30dfafdd919.html.
[14] The Cain letter is attached as **Exhibit E**.

83.     Post-*Dobbs*, Representative Cain has continued to assert that abortion funds and their donors will be prosecuted for murder. On June 28, Cain tweeted, in part, "[a]nyone performing or aiding an abortion in TX (including abortion funds & donors) could face murder charges."[15] On June 29, Cain retweeted a Texas Tribune tweet, adding "…they're already facing jail time for their criminal acts. #ProsecuteTexasAbortionFunds."[16] The same day, Representative Cain retweeted a tweet about donating to abortion funds with an image of the pre-*Roe* statutes recodified and wrote "[d]onating to a Texas abortion is a crime, punishable by 2-5 years imprisonment. *See* article 4512.2, revised civil statutes. #ProsecuteTexasAbortionFunds."[17] Representative Cain also has asserted that there is no right to pay for another person to travel to another state. On June 24, he tweeted a link to a Fortune Magazine article, noting "[h]ere's @FortuneMagazine confusing the right to interstate travel with the nonexistent right to pay for another person to travel to another state."[18]

---

[15] This Tweet was still viewable at the time of this filing at Briscoe Cain's Twitter timeline at https://twitter.com/BriscoeCain/status/1541977303219150848 and is attached as **Exhibit F**.
[16] This Tweet was still viewable at the time of this filing at Briscoe Cain's Twitter timeline at https://twitter.com/BriscoeCain/status/1542290615488204800 and is attached as **Exhibit G**.
[17] This Tweet was still viewable at the time of this filing at Briscoe Cain's Twitter timeline at https://twitter.com/BriscoeCain/status/1542232983142367240 and is attached as **Exhibit H**.
[18] This Tweet was still viewable at the time of this filing at Briscoe Cain's Twitter timeline at https://twitter.com/BriscoeCain/status/1540528410514046980 and is attached as **Exhibit I**.  The partially obscured Fortune Magazine link in the Tweet is https://fortune.com/2022/06/24/justice-brett-kavanaugh-interstate-travel-abortions-constitutional-roe-v-wade-overturned/amp/.  In other litigation pending before this Court, Cain and his co-defendants in that matter also asserted that the Pre-*Roe* Furnishing Statute is still operable that "there is no constitutional obstacle to enforcing article 4512.2 against abortion funds and their donors…" [*Wendy Davis, et al. v. Mistie Sharp, et al.*, Case No. 1:22-cv-00373-RP pending in the Western District of Texas (hereafter "Davis litigation") Dkt. 39 pp. 8-9].

84.     Based on these and other public statements, Plaintiffs reasonably fear that any assistance provided to a pregnant Texan who obtains an abortion that violates the terms of the Pre-*Roe* Statutes or the Trigger Ban, even if the abortion occurs outside of the State of Texas, will subject them to criminal prosecution.  The public statements quoted and discussed above confirm that multiple state actors in Texas believe that providing assistance to a Texan who elects to have a medication abortion in another state violates Texas criminal law, if any part of the medication regimen is ingested in Texas.  *See*, *e.g.* paragraphs 80, 83-5.

85.     Other public statements have created confusion and fear about whether direct funding of surgical abortion procedures in other states would subject Plaintiffs to criminal prosecution.  And the language of the Pre-*Roe* Statues and the Trigger Ban applies directly to Dr. Moayedi as a licensed medical provider in the State of Texas.  What is now unclear given the confusion created by Defendant Paxton and other state officials is whether Dr. Moayedi may treat pregnant Texans in another state and provide elective surgical or medication abortions to those patients in conformity with that state's laws without being prosecuted in Texas for those actions.  Likewise, it is unclear if she may perform legal telemedicine abortion care services to other states from her location in Texas.

86.     Plaintiffs also reasonably fear that they will be criminally prosecuted for behaviors that they undertook prior to June 24, 2022, when the *Dobbs* decision was issued.  Until that date, *Roe v. Wade* remained the law of the land and Plaintiffs conformed their behavior accordingly.  State actors in Texas, however, have publicly asserted that they believe the Pre-*Roe* Statutes, which had been specifically declared to be unconstitutional in *Roe*, were capable of imposing criminal liability for conduct undertaken before June 24, 2022.  Indeed, several Plaintiffs have been specifically targeted by Representative Cain and private citizens for conduct they engaged in prior

to June 24, 2022 and the Texas Freedom Caucus has targeted Sidley Austin for providing travel and other financial assistance to employees who traveled to obtain medication abortions in 2021. *See*, *e.g.* paragraphs 5-6, 83-5.

87.     Pursuant to this Court's equitable powers and Federal Rule of Civil Procedure 65, Plaintiffs are entitled to injunctive relief against AG Paxton in his official capacity and the DA and County Defendants in their official capacity because the threat of impending criminal prosecution and civil liability posed by the laws of Texas and the Defendants' enforcement authority is causing irreparable harm to Plaintiffs.  That harm began immediately on June 24, 2022 when the *Dobbs* decision was issued and AG Paxton declared that the Pre-*Roe* statutes were immediately effective. Plaintiffs immediately ceased certain operations in fear that following the decision in *Dobbs*, they could be criminally prosecuted under the Pre-*Roe* Statutes for behavior that was legal under the prior laws of Texas and constitutionally protected, and if convicted receive a criminal sentence of 2-5 years.

88.     The harm and threats to Plaintiffs will only grow in significance when the Trigger Ban is added to the statutory web on August 25, 2022.  On that date, they will face potential criminal prosecution from the DA and County Attorney Defendants, and civil enforcement actions from AG Paxton under yet another state law, this time for first degree felonies that carry with them potential life sentences and minimum civil penalties of $100,000.  Despite their strong desires and commitment to assisting their fellow Texans, Plaintiffs will be unable to safely return to their prior operations until it is made clear that Defendants have no authority to prosecute Plaintiffs or seek civil penalties from them for their constitutionally protected behavior. The intrusion of Plaintiffs' own constitutional rights is immediate and ongoing and the deprivation of constitutional rights for

any period of time constitutes irreparable harm. *De Leon v. Perry,* 975 F. Supp. 2d 632, 663 (W.D. Tex. 2014), *aff'd sub nom. De Leon v. Abbott,* 791 F.3d 619 (5th Cir. 2015).

89.     Plaintiffs would suffer immediate and irreparable harm if AG Paxton and the DA and County Attorneys Defendants, in their official capacities, are not enjoined from prosecuting or encouraging prosecution of Plaintiffs. As set forth previously, the legal threat Defendants pose is imminent.  Given the State of Texas' stated intent (through state actors, including AG Paxton) to prosecute abortion funds and their staff, volunteers, and donors, the chilling effect on Plaintiffs, their staff, volunteers, and donors (and the subsequent effect on their organizational funding) is substantial.  Plaintiffs will be irreparably harmed if Defendants are not enjoined before prosecution against Plaintiffs (or their staff, volunteers, and/or donors) begins.

90.     Plaintiffs are likely to prevail on the merits of this case and receive the requested declaratory judgment, as well as equitable relief, attorneys' fees, and costs of court.  Plaintiffs' case is purely legal, and the enforcement of the laws as to Plaintiffs is clearly unconstitutional.

91.     Plaintiffs have no adequate remedy at law for Defendants' threatened actions. Specifically, money damages are insufficient to undo the threatened injury to Plaintiffs.  Plaintiffs' First Amendment rights and fundamental due process rights and rights to travel are at stake and they cannot safely resume the exercise of their own constitutional rights until the threat of criminal prosecution for doing so is eliminated.

92.     The threatened injury to Plaintiffs outweighs any possible damages to Defendants. Indeed, Defendants are not harmed by Plaintiffs' conduct in any sense, nor by their exercise of their fundamental, constitutional rights in conducting activities in support of their lawful organizational missions. Defendants lose absolutely nothing by the issuance of an injunction.

E.      **Class Allegations**

93.     Plaintiffs bring this action against each of the named Defendants and as a class action against certain of the named Defendants individually and as representatives of two subclasses of persons (collectively, the "Defendant Classes"):

> a.      All elected District Attorneys in the State of Texas who have the authority within their jurisdictions to enforce through criminal prosecutions the Pre-*Roe* Statutes and the Trigger Ban (the "District Attorney Class"); and
>
> b.      All County Attorneys in counties that do not have an elected District Attorney, and who have the authority within that jurisdiction to enforce the criminal laws of Texas, which includes the Pre-*Roe* Statutes and the Trigger Ban (the "County Attorney Class").

94.     This lawsuit is properly maintained as an action against the two Defendant Classes under Federal Rule of Civil Procedure 23 (a) and 23(b)(1)(A).

95.     Any separate actions commenced against individual District Attorneys or County Attorneys for the purpose of challenging their enforcement of the Pre-*Roe* Statutes or the Trigger Ban would create a risk of inconsistent or varying adjudications by the courts presiding over those actions, which would affect individual class members and establish incompatible standards of conduct for Plaintiffs.

96.     Separate actions would also create a risk of putting Plaintiffs in the untenable position of not knowing which of multiple, incompatible interpretations and rulings they must comply with to avoid violating the law and risking criminal penalties and statutory damages.

97.     Each of the 254 counties in the State of Texas has a position for a duly elected District Attorney or a County Attorney who has the same criminal jurisdiction, and each of those

individuals has exclusive jurisdiction to enforce the criminal laws of Texas within his or her district. The members of the proposed District Attorney Class and County Attorney Class are located in each of Texas's 254 counties. Given the size of the class and this geographic dispersal, it is impracticable to join all Texas District Attorneys and County Attorneys with power to enforce the Pre-*Roe* Statutes and the Trigger Ban in order to provide protection to all potential defendants in those actions.

98.    Resolution of any one of the legal issues raised in this case will affect similarly each member of the proposed District Attorney Class and County Attorney Class, by determining whether, and to what extent, they may enforce the Pre-*Roe* Statutes and the Trigger Ban under the U.S. Constitution and federal law. Moreover, the relief sought in this case does not turn on circumstances specific to members of the proposed defendant classes. Accordingly, there are questions of law common to the classes.

99.    Defendant DAs Renken, McAfee, Garza, and Weber (collectively, the "District Attorney Class Representatives") are adequate class representatives for the District Attorney Class because they each have exclusive authority within their jurisdictions to file criminal charges under the pre-*Roe* Statutes and the Trigger Ban. Plaintiffs seek a declaratory judgment that the pre-*Roe* Statutes and the Trigger Ban cannot be enforced by any Defendant, including the District Attorney Class Representatives, in a manner that violates Plaintiffs' rights to freely travel, freely associate, freely speak, and freely support members of their communities through financial assistance, as guaranteed by the United States Constitution and federal law.

100.    Plaintiffs' claims against each of the District Attorney Class Representatives and the members of the proposed District Attorney Class are the dame. The defenses that the District Attorney Class Representatives will raise will be typical of all members of the proposed District

Attorney Class. The claims against which the District Attorney Class Representatives must defend challenge the constitutionality of the Pre-*Roe* Statutes and the Trigger Ban and are asserted against all members of the proposed District Attorney Class. Further the District Attorney Class Representatives and the other class members hold a common position with respect to Plaintiffs, a position that is defined by statutory obligations and not by personal relationships. Therefore, any defenses the District Attorney Class Representatives assert—and the legal theories on which they are based—will be available to the other class members.

101.    The District Attorney Class Representatives' positions are aligned with that of the other class members because all are authorized to enforce the Pre-*Roe* Statutes and the Trigger Ban through criminal prosecutions. For purposes of this suit, the District Attorney Class Representatives have no interests antagonistic to or in conflict with the interests of other members of the proposed class. Because the authority of all District Attorneys with respect to the Pre-*Roe* Statutes and the Trigger Ban are substantially the same, the District Attorney Class Representatives will be able to fairly and adequately represent the interests of all Texas District Attorneys.

102.    Defendant Deski is an adequate class representatives for the County Attorney Class because she has exclusive authority within her jurisdictions to file criminal charges under the Pre-*Roe* Statutes and the Trigger Ban. Plaintiffs seek a declaratory judgment that the Pre-*Roe* Statutes and the Trigger Ban cannot be enforced by any Defendant, including Defendant Deski, in a manner that violates Plaintiffs' rights to freely travel, freely associate, freely speak, and freely support members of their communities through financial assistance, as guaranteed by the United States Constitution and federal law.

103.    Plaintiffs' claims Defendant Reski and the members of the proposed County Attorney Class are the same. The defenses that Defendant Reski will raise will be typical of all

members of the proposed County Attorney Class.  The claims against which Defendant Reski must defend challenge the constitutionality of the Pre-*Roe* Statutes and the Trigger Ban and are asserted against all members of the proposed County Attorney Class.  Further, Defendant Reski and the other class members hold a common position with respect to Plaintiffs, a position that is defined by statutory obligations and not by personal relationships.  Therefore, any defenses Defendant Reski asserts—and the legal theories on which they are based—will be available to the other class members.

104.    Defendant Reski's positions are aligned with that of the other members of the County Attorney Class because all are authorized to enforce the Pre-*Roe* Statutes and the Trigger Ban through criminal prosecutions. For purposes of this suit, Defendant Reski has no interests antagonistic to or in conflict with the interests of other members of the proposed class. Because the authority of all County Attorneys with respect to the Pre-*Roe* Statutes and the Trigger Ban are substantially the same, Defendant Reski will be able to fairly and adequately represent the interests of all Texas County Attorneys who have authority to enforce the Pre-*Roe* Statutes and the Trigger Ban through criminal prosecutions.

### V.     CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF
### UNDER 42 USC § 1983 AND DECLARATORY JUDGMENT ACT[19]

**Count I:**     **The Trigger Ban and Pre-*Roe* Statutes Violate Dr. Moayedi's and CASN's Staff's and Volunteers' Rights to Travel**

105.     Plaintiffs Dr. Moyaedi and CASN bring this claim against all Defendants.

106.     The right to travel is guaranteed to all United States citizens as one of the "Privileges and Immunities of Citizens in the several States." U.S. Const., Article IV, § 2.

107.     States are prohibited from making or enforcing any law that "abridge[s] the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.

108.     Under the Constitution, states are also prohibited from regulating interstate commerce, or from preventing or otherwise harming interstate commerce.

109.     Prior to the decision in *Dobbs*, Dr. Moayedi routinely traveled to and from other states in order to perform abortion procedures for patients in those states (and in compliance with all applicable laws in those states).  On many occasions, the patients to whom she provided care in states other than Texas were pregnant Texans.  Since *Dobbs* was decided and in anticipation of the Trigger Ban becoming effective, Dr. Moayedi has stopped traveling to other states to provide abortion procedures to pregnant Texans.  Because of the threat of criminal prosecution under the

---

[19] The Declaratory Judgment Act has, since its inception, provided a mechanism for relief in situations where a litigant might otherwise have to subject themselves to coercive action or looming litigation in order to secure constitutional or legal rights before irreparable harm occurs. *See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 243 (1937) (finding federal courts had jurisdiction over insurer's declaratory judgment cause of action where, had the insured sued in contract, it was clear that the controversy would have been justiciable).

Pre-*Roe* Statutes and the criminal liability that will be imposed by the Trigger Ban on her as a medical provider licensed by the State of Texas, she is afraid that performing any abortion procedure on any Texan outside of the State of Texas will subject her to criminal prosecution by a member of the DA or County Attorney Classes and to civil penalties pursued by AG Paxton.

110.    Dr. Moayedi wishes to immediately resume her travel to and from other states to assist her patients—including pregnant Texans—but she cannot safely do so without relief from this Court.  She is chilled by these threats from doing what the Constitution guarantees any citizen may do: travel to another state and engage in lawful commerce and activities while she is there, protected by the privileges and immunities of the state she is visiting.

111.    Staff and volunteers for CASN also regularly traveled both within Texas and from Texas to other states to assist pregnant Texans seeking abortion care, but have stopped doing so following the decision in *Dobbs*.  Those staff and volunteers wish to resume such direct travel assistance.

112.    Although CASN believes that they have standing based upon the standing of their boards, staffs, and volunteers, since these are constituents of the CASN organization, CASN also has associational standing, because (1) at least one of its staff, volunteers, or members did—or at least used to—travel with or provide transportation assistance to people seeking abortions and/or would presently be doing so but for the threats created by the current law; (2) the interest of its staff, volunteers, or members in assisting pregnant Texans in obtaining legal abortions in other states is directly tied to CASN's purpose as described above in Section III.A.; and (3) there is no obvious reason why, apart from providing testimony, it would be necessary for individual staff, volunteers, or members to be made parties to this lawsuit.

113.    Texas state actors' statements interpreting the scope of potential enforcement of the Trigger Ban and the Pre-*Roe* Statutes show an intent to enforce the Trigger Ban and/or Pre-*Roe* Statutes against CASN's staff, volunteers, and persons similarly situated, who travel between Texas and another state to assist pregnant Texans seeking abortions in other states where they continue to be legal, or who assist pregnant Texans with travel in order to seek legal abortion care.

114.    Based on the activities and statements made by Defendants and other representatives of the State, CASN's staff and volunteers have a reasonable fear of being prosecuted under the Trigger Ban statutes and/or Pre-*Roe* Statutes if they assist pregnant Texans in traveling to another state to obtain a legal abortion.

115.    Enforcement of the Trigger Ban and Pre-*Roe* Statutes against CASN's staff and volunteers, citizens who travel between Texas and another state in interstate commerce, violates CASN's staff and volunteers' right to travel and/or infringes upon their rights to assist others with interstate travel.

116.    Interpreting the Pre-*Roe* Statutes and Trigger Ban to criminalize CASN's staff and volunteers' travel for the purpose of assisting a pregnant Texans seeking abortion care violates Plaintiff's staff and volunteers' right to travel and to exercise the "Privileges and Immunities" of citizenship under the Fourth Amendment.

117.    Interpreting the Pre-*Roe* Statutes and Trigger Ban to criminalize CASN's staff and volunteers' travel for the purpose of assisting pregnant Texans seeking abortion care constitutes a State attempting to "enforce a law abridg[ing] the privileges or immunities of citizens of the United States." Texas is also classifying citizens, CASN's staff and volunteers, based on the purpose of their travel, therefore denying the equal protection of the laws to persons within its jurisdiction, in violation of the Fourteenth Amendment.

118.     Interpreting the Pre-*Roe* Statutes and Trigger Ban to criminalize CASN's staff and volunteers' travel for the purpose of assisting pregnant Texans seeking abortion care constitutes an attempt by Texas to regulate commerce "among the several States," which authority the Constitution grants only to Congress.  Likewise, interpreting those statutes to prohibit citizens from assisting Texans' travel generally also constitutes an unconstitutional attempt by Texas to regulate interstate commerce.

119.     The right to travel is implicated for both Dr. Moayedi and CASN's staff and volunteers personally, and is also impacted for their patients and clients in need of assistance.  To the extent the right of the pregnant Texan seeking help is implicated, Dr. Moayedi and CASN also have a First Amendment right to assist with that constitutionally-protected activity.

120.     The Pre-*Roe* Statutes and Trigger Ban are both facially invalid and void as applied to Plaintiffs Moayedi and CASN.

**Count II:**     **Criminalization of Financial Assistance for Pregnant Texans' Travel Out of State to Obtain Legal Abortion Violates Plaintiffs' First Amendment Rights.**

121.     All Plaintiffs bring this claim against all Defendants.

122.     Criminalization of the type of assistance provided by Plaintiffs—financial assistance, transportation, accommodations, and emotional support—to pregnant Texans seeking an abortion violates Plaintiffs' fundamental First Amendment rights.

123.     Plaintiffs' activity in funding travel for pregnant Texans to obtain healthcare that is legal where it is sought is protected First Amendment conduct, and Defendants' attempt to use Texas criminal law to chill that activity is unconstitutional.

124.    Likewise, Defendants' attempt to use Texas criminal law to chill Plaintiffs' relationships with their donors, employees, and volunteers, violates the freedom of expressive association protected by the First Amendment.

125.    Where a state statute infringes upon a fundamental right, such as the right to speech—which includes financial assistance to pregnant Texans—the state must show the statute is narrowly tailored to serve a compelling state interest.

126.    The State of Texas does not have a compelling state interest in criminalizing or preventing Plaintiffs' provision of transportation and emotional support (or financial assistance for transportation or other material aid) for pregnant Texans seeking abortion care.

127.    Neither the Trigger Ban nor the Pre-*Roe* Statutes are narrowly tailored to serve a compelling state interest and they are unconstitutional violations of Plaintiffs' rights.

128.    The Trigger Ban and the Pre-*Roe* Statutes should therefore be enjoined because financial assistance, travel assistance, practical, logistical and emotional support, as well as information sharing and advocacy are all protected conduct under the First Amendment.

129.    The Trigger Ban and Pre-*Roe* Statutes are unconstitutional both facially and as applied to the assistance provided by Plaintiffs to those seeking legal abortion care.

**Count III:    Texas's Threatened Enforcement of the Pre-*Roe* Furnishing Statute Violates Plaintiffs' First Amendment Free Speech Rights.**

130.    All Plaintiffs bring this claim against all Defendants.

131.    The First Amendment to the United States Constitution guarantees its citizens the right to free speech, assembly, association, and petition. U.S. Const. amend. I.

132.    The State has threatened enforcement of the Pre-*Roe* Furnishing Statute (for "furnishing the means" for procuring an abortion) against Plaintiffs for providing information and

funds to its clients for lawful out-of-state activities. Such targeted enforcement against Plaintiffs and their staff, volunteers, and donors on the basis of the content of their speech and conduct and the nature of their association violates their rights of association and free speech.

133.    There is no bar to speaking and providing information just because the underlying conduct is illegal in one state, but not in another, and one can demonstrate and petition to change the law.  These are fundamental tenets of the First Amendment.

134.    Because Plaintiffs' use of funds is considered speech, banning this use of funds on the basis of their intended purpose is a violation of Plaintiffs' free speech rights.

135.    Plaintiffs have representational standing to assert the rights of their employees, volunteers, and donors.

136.    Plaintiffs' desired activity in funding abortion where it is legal is protected First Amendment activity.

137.    Plaintiffs' activity in supporting Texans seeking legal abortion care in other financial, logistical, and practical ways is also protected First Amendment activity.

138.    Likewise, Defendants' attempt to use Texas criminal law to threaten to chill Plaintiffs' relationships with their donors, employees, and volunteers, violates the freedom of expressive association protected by the First Amendment.

139.    The State's threatened enforcement of the Pre-*Roe* Furnishing Statute against Plaintiffs, their staff, volunteers, and donors chills exercise of their protected First Amendment associational rights.

140.    The State's threatened enforcement of the Pre-*Roe* Furnishing Statute against Plaintiffs' donors for funding Plaintiffs' activities through charitable donations chills the donors' First Amendment rights of speech and association.

141.    Any enforcement of the Pre-*Roe* Furnishing Statute that forces disclosure of Plaintiffs' donors would also violate their First Amendment rights of association.

142.    Enforcement of the Pre-*Roe* Furnishing Statute against Plaintiffs, their employees, volunteers or donors is targeted precisely at the speech acts that they have undertaken, including providing funding and other assistance to pregnant Texans.

143.    Therefore, the Pre-*Roe* Furnishing Statute is facially unconstitutional, contains content-based restrictions that are subject to strict scrutiny, and is retaliatory in that it provides for civil and criminal penalties for engaging in speech in which the State disagrees.

144.    The Pre-*Roe* Furnishing Statute is unconstitutional because the First Amendment protects:

      a.    The right to speak out, petition, demonstrate, advocate, and provide information about abortion and the state of abortion laws;

      b.    The right to offer aid (monetary and otherwise);

      c.    The right to political donation;

      d.    The right to discuss and associate;

      e.    The right to contribute;

      f.    The right to free expression; and

      g.    Freedom of the press and publication of materials by Plaintiffs.

145.    Plaintiffs are entitled to a declaratory judgment as to each of these subparts and protections of the First Amendment for the infringement of the Furnishing Statute on their constitutional rights, as well as to injunctive relief.

146.    The Pre-*Roe* Statutes are unconstitutional both facially and as applied to Plaintiffs' protected First Amendment activities.

**Claim IV:** **Texas's Threatened Enforcement of the Trigger Ban Violates Plaintiffs' First Amendment Free Speech Rights.**

147. All Plaintiffs bring this claim against all Defendants.

148. The State has threatened enforcement of the Trigger Ban (via TEXAS PENAL CODE § 7.02(a)) against Plaintiffs for providing information and funds to their clients for out-of-state activities that are lawful where conducted. This targeted enforcement against Plaintiffs and their staff, volunteers, and donors on the basis of the content of their speech and conduct and the nature of their association violates their right of association and free speech.

149. Because Plaintiffs' use of funds is considered speech, banning the use of funds on the basis of their intended purpose is a violation of Plaintiffs' free speech rights.

150. Plaintiffs' activity in funding abortions that occur lawfully out of state is protected by the First Amendment.

151. Plaintiffs' activity in providing truthful information to pregnant Texans is protected by the First Amendment.

152. Plaintiffs' activity in providing other financial, logistical, practical and emotional assistance to Texans in obtaining legal abortion care is also protected by the First Amendment.

153. Likewise, Defendants' attempt to use Texas criminal law to threaten to chill Plaintiffs' relationships with their donors, employees, and volunteers, violates the freedom of expressive association protected by the First Amendment.

154. Plaintiffs have representational standing to assert the rights of their employees, volunteers, and donors.

155. The State's threatened enforcement of the Trigger Ban against Plaintiffs, their employees, volunteers, and donors chills association between them.

156.     The State's threatened enforcement of the Trigger Ban against Plaintiffs' volunteers and donors for funding Plaintiffs' activities through charitable donations chills the donors' First Amendment rights of speech and association.

157.     Any enforcement of the Trigger Ban that forces disclosure of Plaintiffs' donors would also violate their First Amendment associational rights.

158.     Enforcement of the Trigger Ban against Plaintiffs, their staff, volunteers and/or donors is for precisely the speech acts that they have undertaken, including providing funding and other assistance to pregnant Texans.

159.     Therefore, the Trigger Ban, if enforced against Plaintiffs for "criminally responsible conduct of another," is facially unconstitutional contains content-based restrictions that are subject to strict scrutiny, and is retaliatory in that it provides for civil and criminal penalties for engaging in speech with which the State disagrees.

160.     The court should enjoin the Trigger Ban to the extent that it seeks to criminalize the First Amendment conduct of the Plaintiffs.

161.     The Trigger Ban is unconstitutional because the First Amendment protects:

a.     The right to speak out, petition, demonstrate, advocate, and provide information about abortion and the state of abortion laws;

b.     The right to offer aid (monetary and otherwise);

c.     The right to political donation;

d.     The right to discuss and associate;

e.     The right to contribute;

f.     The right to free expression; and

g.     Freedom of the press and publication of materials by Plaintiffs.

162.     Plaintiffs are entitled to a declaratory judgment as to each of these subparts and protections of the First Amendment for the infringement of the Trigger Ban on their constitutional rights, as well as to injunctive relief.

163.     The Trigger Ban is unconstitutional both facially and as applied to Plaintiffs' protected First Amendment activities.

**Count V:        Retroactive Application of the Pre-*Roe* Statutes is Unconstitutional.**

164.     All Plaintiffs bring this claim against all Defendants.

165.     The Pre-*Roe* Statutes were struck down and rendered void by the *Roe v. Wade* decision in 1973.

166.     Any construction of the Pre-*Roe* Statutes that allows their retroactive application to conduct that was expressly lawful under *Roe v. Wade* until its overruling by *Dobbs* would create an Ex Post Facto criminal law.

167.     Retroactive enforcement of Pre-*Roe* Statutes violates the Constitution's Ex Post Facto Clause and Due Process Clause.

168.     "[A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law, such as Art. I, s 10, of the Constitution forbids." *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1964).  State legislatures are barred by the Ex Post Facto Clause of the Constitution from passing such laws, and similarly the Courts are barred by the Due Process Clause from achieving the same result by judicial construction.

169.     "The fundamental principle that 'the required criminal law must have existed when the conduct in issue occurred,' Hall, General Principles of Criminal Law (2d ed. 1960), at 58-59, must apply to bar retroactive criminal prohibitions emanating from courts as well as from legislatures." *Id*. at 354.

**Count VI:       The Texas Pre-*Roe* Furnishing Statute and Trigger Ban are Void for Vagueness.**

170.    All Plaintiffs bring this claim against all Defendants.

171.    The Texas Pre-*Roe* Furnishing Statute and Trigger Ban are also void for vagueness.

172.    The Texas Pre-*Roe* Furnishing Statute and Trigger Ban are too vague for the average citizen to determine what persons are regulated, what conduct is prohibited, and what penalties may be imposed.

173.    The Texas Pre-*Roe* Furnishing Statute and Trigger Ban are also void for vagueness because they impose on Plaintiffs' rights under the First Amendment.

174.    Because the Texas Pre-*Roe* Furnishing Statute and Trigger Ban violate Plaintiffs' constitutional rights, they cannot be enforced.  The statutes burden Plaintiffs by depriving them of their constitutional rights to be apprised of laws that they may be held liable for and by impairing their ability to redress and assert their rights in defense.

**Count VII:      The Texas Pre-*Roe* Statutes, SB8, and the Trigger Ban Cannot and Do Not Apply to Abortion Care Obtained Outside of Texas.**

175.    All Plaintiffs bring this claim against all Defendants.

176.    The Pre-*Roe* Statutes and the Trigger Ban do not provide for any extraterritorial application of those laws.

177.    The language of SB8 confirms that only Texas-licensed physicians can be principally liable, yet its fee-shifting provision codified in the Texas Civil Practice and Remedies Code omits that specificity.

178.    Thus, the scope of abortion prohibited by Texas law applies only to abortions performed or obtained in Texas, and in the case of SB8, which are performed by a Texas-licensed physician.

179.   Texas Penal Code Section 7.02 provides that a person can only be liable if a principal first commits an offense.  The abortion offense under the Trigger Ban (TEX. HEALTH & SAFETY CODE ANN., § 170A.002) applies to a person "knowingly perform[ing], induc[ing], or attempt[ing] an abortion," and the general criminal territorial jurisdiction statute in Texas Penal Code Section 1.04 does not extend to conduct undertaken outside of Texas.

180.   Likewise, the Pre-*Roe* Furnishing Statute is an accomplice statute, and no one can be charged as an accomplice unless there is a guilty principal, as the Texas Court of Criminal Appeals has determined.  *See*, *e.g.*, *Moore v. State*, 40 S.W. 287, 290 (Tex. Crim. App. 1897) (analyzing the "furnishing" statute and noting "[w]e cannot have an offense that could be committed by an accomplice without a principal.").

181.   SB8 likewise only applies to abortions performed by a physician in Texas.  Section 171.201 of the Texas Health & Safety Code provides the definitions that apply to certain terms within Subchapter H of Chapter 171 (the subchapter created by SB8).  It defines "physician" as "an individual licensed to practice medicine in this state…"  *Id.* at § 171.201(4).  Thus, when Section 171.204 prohibits "a physician" from knowingly performing or inducing an abortion unless the test is done and no heartbeat is found, that prohibition applies only to "individuals licensed to practice medicine in this state[.]"

182.   The Fee-Shifting Provision of SB8 is therefore also subject to this limitation in scope.

**Count VIII:   Texas's Abortion Statutes Cannot Reach Medical Care Provided to Patients Outside of Texas.**

183.   Plaintiff Dr. Moayedi brings this claim against all Defendants.

184.   Dr. Moayedi is licensed in 20 states, including Texas.

185.    Telemedicine care is "provided" in the jurisdiction in which the patient resides, according to the billing requirements of the Center for Medicare Services and the Health & Human Services Department.  Specifically, Place of Service (POS) is equal to what it would have been had the service been furnished in person.

186.    The jurisdictional reach of the Texas Pre-*Roe* Statute and Trigger Ban does not contemplate abortions occurring outside of Texas.  Indeed, the Pre-*Roe* Statute was passed more than a century before telemedicine became possible.  Likewise, the general criminal jurisdictional statute does not extend to abortions occurring beyond Texas's borders.

187.    Construction of the Texas Abortion Bans to reach abortions obtained by patients in other states violates the constitutional prohibitions against regulation of interstate commerce.

188.    Construction of the Texas Abortion Bans to reach the practice of medicine provided pursuant to the licensure and laws governing another state, regardless of the location of the provider at the time, is also prohibited by the Interstate Commerce Clause of the United States Constitution, and otherwise preempted by federal law.

189.    The Texas Abortion Bans are unconstitutionally vague because they fail to apprise physicians of what conduct is prohibited and to provide notice comporting with due process.

190.    Physicians providing care cannot constitutionally be subjected to the criminal laws of one state for care provided in another state or for a patient located in another state, regardless of the physical location of the physician, pursuant to the Due Process Clause of the U.S. Constitution.

191.    Plaintiff Dr. Moayedi is thus entitled to a declaratory judgment that she cannot be subjected to Texas Abortion Bans for care she provides outside of Texas, or to patients receiving abortion care via telemedicine outside of Texas, regardless of where Moayedi may be located at

that time to the extent Defendants threaten criminal or civil sanctions, and to injunctive relief providing the same.

**Count IX:      SB8's Fee-Shifting Provision is Preempted.**

192.    All Plaintiffs bring this claim against all Defendants.

193.    Section 4 of Texas's SB8 creates a one-way fee-shifting provision applicable to any person—including a party's lawyers—who seeks declaratory and/or injunctive relief to prevent enforcement of any "law that regulates or restricts abortion" or any law excluding those who "perform or promote" abortion from participating in public funding programs. TEX. CIV. PRAC. & REM. CODE 30.022(a).

194.     Civil rights plaintiffs—including Plaintiffs in this action—could be forced to pay defense attorneys' fees unless they prevail on all claims.  If a court dismisses claims brought by the civil-rights plaintiff, regardless of reason for dismissal, or enters judgment for the opposing party, the party defending the abortion restriction is deemed to prevail.  *Id.* at § 30.022(b)(1)-(2).

195.    Section 4 of SB8 does not explicitly limit fees to what is reasonable, unlike other fee-shifting statutes such as 42 U.S.C. § 1988. It also purportedly applies in both state and federal courts and to both state and federal claims, including Section 1983 claims brought to vindicate federal constitutional rights. But there is already a comprehensive fee-shifting statute for such claims: 42 U.S.C. § 1988.

196.    For claims brought under 42 U.S.C. § 1983, the fee-shifting scheme set forth in Section 4 of SB8 is preempted by 42 U.S.C. § 1988.

197.    Because the fee-shifting scheme set forth in SB8 is preempted by 42 U.S.C. § 1988, it is null and inapplicable to this proceeding.

198.    Plaintiffs specifically request the recovery of costs and reasonable attorney fees under 42 U.S.C. § 1988 when they prevail in this case.

**Count XI:    SB8's Fee-Shifting Provision is Unconstitutional.**

199.    All Plaintiffs bring this claim against all Defendants.

200.    SB8's fee-shifting provision also violates the First Amendment's guarantee of the right to petition the government for redress of grievances and makes the courts inaccessible to potential plaintiffs who must choose between challenging an unconstitutional law, living under an existential threat to their operations, conduct, and freedom, or possible bankruptcy.

201.    Section 30.022's imposition of joint and several liability for attorneys' fees on litigants and attorneys/firm that take on challenges to abortion laws, including retroactively, restrict Plaintiffs' rights (and the rights of other citizens) to access the courts.

202.    Section 30.022 imposes all financial risks and burdens of seeking any kind of legal redress onto one set of litigants (which includes Plaintiffs)—namely those seeking to challenge the provisions of any Texas law or regulation affecting abortion.

203.    These provisions create an automatic conflict between a litigant and her attorney. Any attorney who agrees to present a constitutional defense or mount a proactive challenge to the constitutionality of SB8 subjects herself and her firm to joint and several liability for the attorneys' fees incurred by the opposing party in the case.  These provisions force an attorney to choose between the best interests of her client and liability under SB8 or to refuse to represent a client at all.  These provisions further prevent a litigant from redressing constitutional deprivations of rights by significantly burdening her ability to obtain counsel.

204.    The fee-shifting provisions of SB8 violate the Frist Amendment protections in the United States Constitution.

## VI.    <u>RELIEF REQUESTED</u>

WHEREFORE, Plaintiffs respectfully pray for the following relief:

1.    That this Court determine this lawsuit may be maintained as a defendant class action under Federal Rule of Civil Procedure 23 and that this Court certify the District Attorney Class and the County Attorney Class and designate certain named Defendants as the representative of the District Attorney Class and the County Attorney Class;

2.    Preliminary and permanent injunctions:

    a.    Restraining, enjoining, and prohibiting the named Defendants and members of the Defendant Classes all persons acting on behalf of or in concert with the named Defendants and members of the Defendant Classes from prosecuting Plaintiffs, or any of their staff, volunteers, or donors, under the Pre-*Roe* Statutes and/or the Trigger Ban for any behavior undertaken by Plaintiffs in connection with any abortion that occurs outside the State of Texas; and

    b.    As otherwise necessary to accomplish the results Plaintiffs seeks herein; and

3.    Declaratory judgment relief:

    a.    That enforcement of the Pre-*Roe* Statutes against Plaintiffs or any of their staff or volunteers for traveling is unconstitutional because it violates Plaintiffs,' their staffs,' and their volunteers' right to travel;

    b.    That enforcement of the Trigger Ban via the Texas Penal Code provision on Criminal Responsibility for Conduct of Another against Plaintiffs or any of

their staff or volunteers for traveling is unconstitutional because it violates Plaintiffs,' their staffs,' and their volunteers' right to travel;

c.      That enforcement of the Pre-*Roe* Statutes against Plaintiffs or any of their staff, volunteers, or donors is unconstitutional because it violates Plaintiffs' right to free speech (including the rights to assemble, associate, and petition) under the United States Constitution by infringing upon:

        i.      The right to speak out, petition, demonstrate, advocate, and provide information about abortion and the state of abortion laws;

        ii.     The right to offer aid (monetary and otherwise);

        iii.    The right to political donation;

        iv.     The right to discuss and associate;

        v.      The right to contribute;

        vi.     The right to free expression; and

        vii.    Freedom of the press and publication of materials by Plaintiffs;

d.      That enforcement of the Trigger Ban via the Texas Penal Code provision on Criminal Responsibility for Conduct of Another against Plaintiffs or any of their staff, volunteers, or donors is unconstitutional because it violates Plaintiffs' right to free speech under the United States Constitution by infringing:

        i.       The right to speak out, petition, demonstrate, advocate, and provide information about abortion and the state of abortion laws;

        ii.      The right to offer aid (monetary and otherwise);

        iii.     The right to political donation;

        iv.     The right to discuss and associate;

        v.      The right to contribute;

        vi.     The right to free expression; and

        vii.    Freedom of the press and publication of materials by Plaintiffs;

e.      That enforcement of the Pre-*Roe* Statutes and Trigger Ban against Plaintiffs or any of their staff, volunteers or donors for their practical and financial assistance to pregnant Texans is unconstitutional because the statutes are void for vagueness as to the conduct and operations of Plaintiffs;

f.      That none of the Texas abortion statutes applies to abortions obtained or performed outside of Texas;

g.      That none of the Texas abortion statutes reaches abortion care provided by a physician licensed in another state, performing care that is lawful in that state, regardless of the physical location of the physician providing telemedicine care;

h.      That Section 30.022 of the Texas Civil Practice and Remedies Code is unconstitutional because it violates the First Amendment of the U.S. Constitution;

i.     That Section 30.022 of the Texas Civil Practice and Remedies Code is preempted under the Supremacy Clause by 42 U.S.C. § 1988;

4.     The recovery of costs and reasonable attorney fees under 42 U.S.C. § 1988; and,

5.     Such other and further relief in law or in equity as the Court deems just and proper, including but not limited to, an award to Plaintiffs of costs and attorneys' fees incurred in bringing this action.

Dated: August 23, 2022                    Respectfully submitted,

By: */s/ Jennifer R. Ecklund*
    Jennifer R. Ecklund
    Texas Bar No. 24045626
    jecklund@thompsoncoburn.com

    Elizabeth G. Myers
    Texas Bar No. 24047767
    emyers@thompsoncoburn.com

    Allyn Jaqua Lowell
    Texas Bar No. 24064143
    alowell@thompsoncoburn.com

    John Atkins
    Texas Bar No. 24097326
    jatkins@thompsoncoburn.com

    Elizabeth Rocha
    Texas Bar No. 24127242
    erocha@thompsoncoburn.com

    **THOMPSON COBURN LLP**
    2100 Ross Avenue, Suite 3200
    Dallas, Texas 75201
    Telephone: 972/629-7100
    Facsimile: 972/629-7171


    Alexandra Wilson Albright
    Texas Bar No. 21723500
    aalbright@adjtlaw.com

    Marcy Hogan Greer
    Texas Bar No. 08417560
    mgreer@adjtlaw.com

    515 Congress Ave., Suite 2350
    Austin, TX 78701-3562
    Telephone: 512/482-9300
    Facsimile: 512/482-9303

Kevin Dubose
Texas Bar No. 06150500
kdubose@adjtlaw.com
1844 Harvard Street
Houston, TX 77008
Telephone: 713/523-2358
Facsimile: 713/522-4553

Kirsten M. Castañeda
Texas Bar No. 00792401
kcastaneda@adjtlaw.com
8144 Walnut Hill Lane, Suite 1000
Dallas, TX 75231-4388
Telephone: 214/369-2358
Facsimile: 214/369-2359

**ALEXANDER DUBOSE &
JEFFERSON, LLP**

**ATTORNEYS FOR PLAINTIFFS**