**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| **Plaintiffs Fund Texas Choice, The North Texas Equal Access Fund, The Lilith Fund for Reproductive Equity, Frontera Fund, The Afiya Center, West Fund, Jane's Due Process, Clinic Access Support Network, and Dr. Ghazaleh Moayedi, DO, MPH, FACOG,** | |
| **Plaintiffs,** | **Civil Case No. 1:22-cv-859** |
| **v.** | |
| **KEN PAXTON, et al.,** | |
| **Defendants.** | |

**<u>PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION AND MEMORANDUM OF LAW IN SUPPORT</u>**

Following the Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, No. 19-1392, 2022 WL 2276808 (U.S. June 24, 2022), which reversed the Court's prior holdings in *Roe v. Wade*, 410 U.S. 113 (1973) and *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), Texans will soon be subject to a new abortion law, which bans all abortions in Texas, except when "the pregnant female . . . has a life-threatening physical condition . . . that places the female at risk of death or poses a serious risk of substantial impairment of a major bodily function unless the abortion is performed or induced." TEX. HEALTH & SAFETY CODE 170A.002. This new law, known as the "Trigger Ban" takes effect on August 25, 2022 and makes conduct that results in a successful abortion a first degree felony. *Id.* 170A.004(b).[1]

---

[1] A copy of the Trigger Ban is included as Exhibit A in Plaintiffs' Appendix for the Court's convenience. The Trigger Ban is codified in Texas Health and Safety Code in Chapter 170A. A

In addition to the Trigger Ban, which takes effect in two days, Texas Attorney General Ken Paxton ("AG Paxton") and certain Texas legislators have also taken the position that Texas's statutes that criminalized abortion prior to the decision in *Roe v. Wade* are also in effect following the *Dobbs* decision.   These "Pre-*Roe* Statutes" were originally codified in Texas Penal Code statutes 1191, 1192, 1193, 1194, and 1196 and were specifically declared to be unconstitutional in *Roe v. Wade*.   They were later transferred – in identical form – to West's Texas Civil Statutes 4512.1. 4512.2, 4512.3, 4512.4, and 4512.6.[2]   AG Paxton and the Texas legislators have also asserted that one section of the Pre-*Roe* Statutes – 4512.2, which criminalizes anyone who "furnishes the means for procuring an abortion knowing the purpose intended" – specifically applies to individuals or groups that assist Texans who obtain abortion care out of state, where the abortion care remains legal.   The criminal penalty imposed under the Pre-*Roe* Statutes is two to five years imprisonment.[3]   TEX. CIV. STAT. 4512.1.

Plaintiffs filed this case under 42 U.S.C. §1983 and the Declaratory Judgment Act, seeking (among other things) equitable relief against Defendants in their official capacity.   Should the Trigger Ban take effect on August 25, 2022 as planned, Plaintiffs would immediately suffer irreparable harm in the deprivation of their constitutional rights.   Preliminary injunctive relief clarifying how the Trigger Ban and Pre-*Roe* Furnishing Statute may be applied to their constitutionally protected conduct is urgently needed to (1) ensure that Plaintiffs and their staffs, volunteers, and donors are not subject to criminal prosecution for assisting Texans who seek reproductive healthcare outside of the state, where such care remains legal; and (2) protect

---

violation of the Trigger Ban that does not result in a successful abortion is a second degree felony. TEX. HEALTH & SAFETY CODE 170A.004(b).

[2] A copy of the Pre-*Roe* Statutes is included as Exhibit B in Plaintiffs' Appendix for the Court's convenience.

[3] If the abortion performed is without the consent of the pregnant person, the penalty is doubled.

**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION – Page 2**

Plaintiffs' ability to operate and conduct business as nonprofits in the State of Texas, and in the case of Dr. Moayedi as a licensed medical provider in the State of Texas, without criminal threat and donor intimidation.

**I.   PARTIES**

**A.   Plaintiffs**

Plaintiffs in this action are Texas-based non-profit abortion funds and practical support networks (organized under Internal Revenue Code § 501(c)(3)) (the "Fund and Support Plaintiffs"), and Dr. Ghazaleh Moayedi, an OB-GYN and abortion provider who resides in Texas. Just before *Dobbs* was decided, in anticipation of the decision and out of an abundance of caution (largely due to the threats made directly against them), the Fund and Support Plaintiffs paused all direct assistance activities for Texans seeking abortion services. *See* Exhibits C-J (declarations of officers from each Plaintiff organization). They have not provided direct abortion services (they never have), nor have they paid or reimbursed any provider or other individual or entity for the provision of abortion services within or outside of Texas since June 24, 2022. *Id.* Dr. Moayedi, who is also licensed in 19 other states and had historically provided abortion services to patients in other states by physically traveling to those states or providing care via telehealth practices in those states, also stopped providing all such care. Ex. K, Moayedi Dec., ¶¶ 3, 5-6, 10-11.

All Plaintiffs wish to resume the following activities: (a) funding legal, out-of-state abortions for pregnant Texans (i.e. including directly paying and/or reimbursing out-of-state licensed providers of abortion services and providing financial aid to pregnant Texans for that purpose); (b) providing informational materials and planning assistance (such as organizing and funding transportation and lodging) to pregnant Texans for obtaining legal, out-of-state abortions; and (c) transporting pregnant Texans to out-of-state licensed providers of safe, legal abortion. Dr.

Moayedi also wishes to immediately return to her practice of traveling to states where abortion remains legal to provide services to patients – including Texans – in those states and to immediately begin providing telehealth care in states where such care is permitted.

## B.    Defendants

The named Defendants in this case are the Texas Attorney General, Ken Paxton; four District Attorneys of the State of Texas (DA Julie Renken, DA Wiley B. "Sonny" McAfee, DA Jose Garza, and DA Fred H. Weber, collectively the "DA Defendants"); and  Burleson County Attorney Susan Deski.  Each of the DA Defendants in their official capacities is required to "represent the State in all criminal cases in the district courts of his district."  TEX. CODE CRIM PROC. art. 2.01. Therefore, each of the DA Defendants has the sole authority of the State of Texas within his or her respective districts to file and pursue criminal cases, including any cases charging a violation of the Trigger Ban and/or Pre-*Roe* abortion statutes.  Where there is no elected District Attorney in a county, the County Attorney possesses that power.  TEX. CODE CRIM PROC. art. 2.02. AG Paxton likewise has authority to pursue perceived violators of the Trigger Ban for significant civil penalties related to its criminal prohibitions.

There are 254 distinct counties in Texas and each has either a DA or County Attorney authorized to enforce the felony criminal laws of the State.  The DA Defendants and County Attorney Deski are, therefore, all sued in their official capacities and as representatives of two defendants classes, respectively: (1) the District Attorney Class and (2) the County Attorney Class.

## II.  **TABLE OF EXHIBITS**[4]

| | |
|---|---|
| Exhibit A | Trigger Ban Statutory Text |
| Exhibit B | Pre-*Roe* Statutes |
| Exhibit C | Declaration of Anna Rupani |
| Exhibit D | Declaration of Kamyon Conner |
| Exhibit E | Declaration of Neesha Davé |
| Exhibit F | Declaration of Zaena Zamora |
| Exhibit G | Declaration of Marsha Jones |
| Exhibit H | Declaration of Rachel Cheek |
| Exhibit I | Declaration of Rosann Mariappuram |
| Exhibit J | Declaration of Bridget Schilling |
| Exhibit K | Declaration of Ghazaleh Moayedi |
| Exhibit L | Paxton Post-*Roe* Advisory Letter |
| Exhibit M | AG Paxton's 6.28.2022 Tweet |
| Exhibit N | Representative Cain's 3.18.2022 Letter to Lilith Fund |
| Exhibit O | Representative Cain's 6.28.2022 Tweet |
| Exhibit P | Representative Cain's First 6.29.2022 Tweet |
| Exhibit Q | Representative Cain's Second 6.29.2022 Tweet |
| Exhibit R | Representative Cain's 6.24.2022 Tweet |
| Exhibit S | Freedom Caucus Letter to Sidley Austin |

---

[4] Plaintiffs are filing a separate Appendix of Exhibits as required by the Local Rules, but are also including this Table of Exhibits in the Motion for the Court's convenience.

| Exhibit T | Representative Cain's Press Release and Letter to Citigroup |
| Exhibit U | Rule 202 Petitions Seeking SB8 Discovery |
| Exhibit V | Sections 1.04 and 7.02 of the Texas Penal Code |
| Exhibit W | SB8 Enacted Text |
| Exhibit X | Declaration of Elizabeth Myers |

### III.   STATEMENT OF FACTS

**A.   Defendants' Threats against Plaintiffs**

On June 24, 2022, the Supreme Court of the United States issued its opinion in *Dobbs v. Jackson Women's Health Organization*, reversing its prior decisions in *Roe* and. *Casey*, as well as decades of precedent upholding the constitutional right to abortion.  *Dobbs v. Jackson Women's Health Org.*, --- U.S. ---, 142 S. Ct. 2228, 2284-85 (2022). Almost immediately after the *Dobbs* opinion was announced, AG Paxton issued an advisory regarding the Trigger Ban and asserting that the Pre-*Roe* statutes could be enforced by District Attorneys (including Defendants) immediately:

> … some prosecutors may choose to immediately pursue criminal prosecutions based on violations of Texas abortion prohibitions predating Roe that were never repealed by the Texas Legislature.[FN omitted]. … Under these pre-Roe statutes, abortion providers could be criminally liable for providing abortions starting today.

Ex. L.  On June 28, 2022, AG Paxton confirmed this via tweet, saying "[b]ut w/ SCOTUS's Dobbs decision, these laws are 100% in effect & constitutional."  Ex. M.  After the release of AG's Paxton's Advisory, the Pre-*Roe* Statutes were added back into Vernon's Texas Civil Statutes, available on the Texas Legislature's website, which also notes that the Statutes were "held to have

been impliedly repealed in *McCorvey v. Hill*, 385 F.3d 846 (5th Cir. 2004)."[5]  Several District Attorneys have also publicly confirmed that they intend to enforce the Texas abortion laws, including the Pre-*Roe* Statutes.[6]

Other state actors have gone even further than AG Paxton, asserting that the Pre-*Roe* Statutes were always effective and capable of imposing criminal liability to conduct, even before the overturning of *Roe* and *Casey*.  For instance, prior to the issuance of the *Dobbs* opinion, Texas Representative Briscoe Rowell Cain III ("Cain") asserted in cease-and-desist letters to Texas abortion funds (including Plaintiffs here) that Texas abortion funds, their donors, employees, and volunteers are subject to prosecution under the Pre-*Roe* Statutes.  Specifically, in a letter to Plaintiff Lilith Fund, Cain stated that the Pre-*Roe* statutes "continue[] to exist as the law of Texas," that Lilith Fund was "committing criminal acts," and that these alleged criminal acts exposed everyone involved at Lilith Fund, "including your employees, volunteers, and donors" to criminal prosecution and imprisonment.  Ex. N.

Following the *Dobbs* decision, Cain also continued to assert that abortion funds and their donors will be prosecuted for murder.  On June 28, Cain tweeted, in part, "[a]nyone performing or

---

[5] A group of over seventy Texas Legislators also recently filed an amicus brief at the Texas Supreme Court, in which they assert that the Pre-*Roe* Statutes were never repealed and were therefore fully effective on June 24, 2022.  *See* Amicus Curiae Letter Brief of Numerous State Senators and State Representatives, *In re Ken Paxton*, No. 22-0527 (now pending in the Supreme Court of Texas), filed July 18, 2022, *available at* https://search.txcourts.gov/Case.aspx?cn=22-0527&coa=cossup.

[6] *See* J. David Goodman & Jack Healy, *In States Banning Abortion, a Growing Rift Over Enforcement*, www.NYTIMES.com, Jun. 29, 2022, *available at* https://www.nytimes.com/2022/06/29/us/abortion-enforcement-prosecutors.html; Lauren Rangel, *Some Texoma district attorneys say they will prosecute abortion cases*, www.kxii.com, June 30, 2022, *available at* https://www.kxii.com/2022/06/30/some-texoma-district-attorneys-say-they-will-prosecute-abortion-cases/; Oscar Saravia, *Smith County district attorney will prosecute abortion-related crimes like any other case*, tylerpaper.com, Jul. 2, 2022, available at https://tylerpaper.com/news/smith-county-district-attorney-will-prosecute-abortion-related-crimes-like-any-other-case/article_6990012c-f71b-11ec-9ea4-a30dfafdd919.html.

aiding an abortion in TX (including abortion funds & donors) could face murder charges." Ex. O. On June 29, Cain retweeted a Texas Tribune tweet, adding "…they're already facing jail time for their criminal acts. #ProsecuteTexasAbortionFunds." Ex. P. The same day, Cain retweeted a Planned Parenthood tweet about donating to abortion funds with an image of the Pre-*Roe* statutes recodified and wrote "[d]onating to a Texas abortion is a crime, punishable by 2-5 years imprisonment. See article 4512.2, revised civil statutes. #ProsecuteTexasAbortionFunds." Ex. Q. Cain also has asserted (wrongly, of course) that there is no right to pay for another person to travel to another state. On June 24, he tweeted a link to a Fortune Magazine article, saying "[h]ere's @FortuneMagazine confusing the right to interstate travel with the nonexistent right to pay for another person to travel to another state." Ex. R.[7]

Likewise, a group of 11 Texas Legislators that comprise the "Texas Freedom Caucus" sent a threatening letter to the law firm Sidley Austin on July 7, 2022. One portion of that letter states:

---

[7] In other litigation pending before this Court, Cain and his co-defendants in that matter have asserted that the Pre-*Roe* Furnishing Statute is still operable as it was never repealed, and that "there is no constitutional obstacle to enforcing article 4512.2 against abortion funds and their donors…" *Wendy Davis, et al. v. Mistie Sharp, et al.,* Case No. 1:22-cv-00373-RP pending in the Western District of Texas Dkt. 39 pp. 8-9.

> It has come to our attention that Sidley Austin has decided to reimburse the travel costs of employees who leave Texas to murder their unborn children. It also appears that Sidley has been complicit in illegal abortions that were performed in Texas before and after the Supreme Court's ruling in *Dobbs v. Jackson Women's Health Organization*, No. 19-1392. We are writing to inform you of the consequences that you and your colleagues will face for these actions.
>
> Abortion is a felony criminal offense in Texas unless the mother's life is in danger. *See* West's Texas Civil Statutes, article 4512.1 (1974) (attached). The law of Texas also imposes felony criminal liability on any person who "furnishes the means for procuring an abortion knowing the purpose intended." West's Texas Civil Statutes, article 4512.2 (1974). This has been the law of Texas since 1925, and Texas did not repeal these criminal prohibitions in response to *Roe v. Wade*, 410 U.S. 113 (1973). These criminal prohibitions extend to drug-induced abortions if any part of the drug regimen is ingested in Texas, even if the drugs were dispensed by an out-of-state abortionist. To the extent that Sidley is facilitating abortions performed in violation of article 4512.1, it is exposing itself and each of its partners to felony criminal prosecution and disbarment.

Ex. S.[8]  The letter goes on for four pages, and ultimately continues:

> It also appears that Sidley may have aided or abetted drug-induced abortions in violation of the Texas Heartbeat Act, by paying for abortions (or abortion-related travel) in which the patient ingested the second drug in Texas after receiving the drugs from an out-of-state provider. Litigation is already underway to uncover the identity of those who aided or abetted these and other illegal abortions. In light of this pending litigation, as well as any anticipated litigation that might ensue, you and your colleagues at Sidley must preserve and retain all documents, data, and electronically stored information relating in any way to: (1) Any abortions performed or induced in Texas on or after September 1, 2021, in which a fetal heartbeat was detectable (or likely to be detectable if tested), including any such abortions that occurred while Judge Pitman's injunction was in effect from October 6–8, 2021; (2) Any abortions performed or induced in Texas on or after June 24, 2022, including abortions performed while Judge Weems's TRO was in effect from June 28, 2022, through July 1, 2022; (3) Any abortion that occurred on or after September 1, 2021, if there is any possibility that the patient might have opted for a drug-induced abortion and ingested either of the abortion drugs in Texas, even if the drugs were dispensed by a provider outside the state of Texas; and (4) The identity of any person or entity who has aided or abetted the abortions described in (1) – (3), including anyone at your firm, and anyone who paid for or in any way reimbursed the costs of those abortions.

---

[8] Representative Cain has sent at least one other, similar letter to another business organization, CitiGroup. *See* Ex. T.

**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION – Page 9**

The "litigation" referred to by the Texas Freedom Caucus is a series of Rule 202 Petitions filed in Texas state courts: two against staff of two named Plaintiffs in this lawsuit (Lilith Fund and TEA Fund); one against executives at Whole Women's Health and Alamo Women's Reproductive Services; one against Yvette Ostolaza, managing partner of Sidley Austin; and one against a professor at the University of Texas at Austin, who conducted research about the use of medication abortion pills by Texans after SB8 became effective.  Ex. U. These Rule 202 Petitions seek deposition testimony related to abortions the petitioners—all represented by Jonathan Mitchell and Texas State Senator Bryan Hughes (in his individual capacity)—apparently believe ran afoul of Texas's SB8 and pre-*Roe* statutes.[9]  The Rule 202 Petitions also seek broad categories of documents, including lists of staff, volunteers, and donors.[10]  Mr. Mitchell and Senator Hughes previously drafted and Hughes sponsored SB8, which was famously supposed to be separated from state enforcement in order to prevent pre-enforcement judicial review by the federal courts.  *Whole Woman's Health v. Jackson*, __ U.S. __, 142 S. Ct. 522, 211 L.Ed.2d 316 (2021).[11]  The 202 Petitions and the  letters from the Texas Freedom Caucus mirror one another in parts word-for-word,[12] evidencing a partnership and/or coordinated effort between private and state actors to

---

[9] The Rule 202 Petition seeking information from TEA Fund has been abated, pending appeal of a related case in Denton County, Texas.  And the Rule 202 Petition seeking information from Lilith Fund was denied by the Honorable Brock Smith on August 9, 2022.  As of the filing of this Motion, the remaining Rule 202 Petitions appear to be pending in Smith County, Eastland County and Howard County, respectively but they have not yet been set for hearing.

[10] *See*, *e.g.*, Ex. U, pdf page 27 ("Any and all non-privileged documents describing or identifying any officer, employee, volunteer, board member, or donor of the Lilith Fund")  .

[11] The actions of private individuals are relevant to this case and analysis because SB8 was intended to provide a "backstop" to District Attorneys who may not prosecute under the abortion statutes to the satisfaction of the Attorney General or interested Legislators.  *See* Michael McCardel, *Republican Lawmakers in Texas Already Discussing Legislation to Further Punish Abortion Crimes*, WFAA (wfaa.com), available at
 https://www.wfaa.com/article/news/politics/inside-politics/texas-republican-lawmakers-discussing-further-punish-abortion-crimes/287-9525265f-87b3-405e-b254-9ebb7d69a6fb.

[12] *E.g.*, *Compare* Ex. S, p. 1 (second full paragraph) *with* Ex. U, pdf page 62, ¶¶ 10-13.

intimidate Plaintiffs and others based on their willingness to help clients, employees—or anyone else—access legal healthcare in another state.

Based on these threats and the current and looming state of Texas criminal law, Plaintiffs immediately and drastically adjusted their behavior on June 24, 2022.  Each of the Support Plaintiffs immediately stopped providing all direct assistance to Texans seeking abortion care, even those seeking care outside of the state.  Dr. Moayedi likewise stopped providing abortion care altogether, stopped traveling to other states where providing such care is legal, and has delayed the start of her telehealth practice in other states.  This cessation of activity that is protected by the U.S. Constitution has harmed, and will continue immediately and indefinitely to harm Plaintiffs, their staff, and donors.  The threat of imminent enforcement violates Plaintiffs' civil and constitutional rights, and they are entitled to declaratory and injunctive relief prohibiting any prosecution of them under the Texas Trigger Ban and/or the Pre-*Roe* abortion statutes for assisting Pregnant Texans seeking abortion care in states where such care remains legal.

**B.     Relevant Texas Laws**

Texas has an intricate, contradictory, and complicated set of laws regulating and outright banning abortion, and the Trigger Ban will soon add to that complexity.

**1.     The Pre-*Roe* Statutes**

Prior to the Supreme Court's decision in *Roe v. Wade*, 410 U.S. 113 (1973), the Texas Penal Code contained Articles 1191, 1192, 1193, 1194, and 1196 (now at Revised Civil Statutes 4512.1-6) under which abortion was criminalized.  Ex. B.

Art. 1191 of the Texas Penal Code stated:

> If any person shall designedly administer to a pregnant woman or knowingly procure to be administered with her consent any drug or medicine, or shall use towards her any violence or means whatever externally or internally applied, and thereby procure an abortion, he

> shall be confined in the penitentiary not less than two nor more than five years; if it be done without her consent, the punishment shall be doubled. By 'abortion' is meant that the life of the fetus or embryo shall be destroyed in the woman's womb or that a premature birth thereof be caused.

Art. 1192 stated:

> "Whoever furnished the means for procuring an abortion knowing the purpose intended is guilty as an accomplice."

Like the principal offense, this accomplice liability is punishable by two to five years in the state penitentiary. Texas courts historically interpreted "furnish[ing] the means for procuring an abortion" to apply to providing drugs, medicine, or instruments that could produce an abortion, or committing violence upon the pregnant person to bring about an abortion. *See Fondren v. State*, 169 S.W. 411, 414-16 (1914).

In *Roe*, the U.S. Supreme Court affirmed a declaratory judgment that Articles 1191, 1192, 1193, 1194, and 1196 were unconstitutional and "as a unit, must fall." *Roe v. Wade*, 410 U.S. 113, 164. The *Roe* Court held that no further relief was necessary because the Court "assume[ed] the Texas prosecutorial authorities will give full credence to this decision that the present criminal abortion statutes of that State are unconstitutional." *Id.* at 166. The following year, Texas transferred the language of Articles 1191, 1192, 1193, 1194, and 1196 into the Texas Civil Statutes 4512.1. 4512.2, 4512.3, 4512.4, and 4512.6.

### 2. Texas Trigger Ban

In July 2021, Texas enacted a nearly total ban on abortion that goes into effect on the 30th day after (1) the issuance of a Supreme Court decision overruling *Roe v. Wade*, 410 U.S. 113 (1973) either wholly or in part; (2) the issuance of any other Supreme Court decision "that recognizes . . . the authority of the states to prohibit abortion;" or, (3) adoption of a constitutional amendment that "restores to the states the authority to prohibit abortion." 2021 Tex. Sess. Law

Serv. Ch. 800 (H.B. 1280), Sec. 3 (West); TEX. HEALTH & SAFETY CODE § 170A.001, *et seq.* (the "Trigger Ban").

The Trigger Ban prohibits all abortions in Texas except when performed by a licensed physician to prevent the death or serious risk of substantial impairment of a major bodily function of the pregnant person. Violations of the Trigger Ban are felony level crimes. TEX. HEALTH & SAFETY CODE § 170A.004. The Trigger Ban also creates a civil penalty of "not less than $100,000 for each violation," which is enforceable in a suit filed by the Texas Attorney General. *Id.* § 170A.005. The Trigger Ban expressly addresses its effect on laws already in effect, stating "that conduct is subject to a civil or criminal penalty under this chapter does not abolish or impair any remedy for the conduct that is available in a civil suit." *Id.* § 170A.006. The Trigger Ban goes into effect on August 25, 2022.

**3.      Texas Penal Code Provisions**

Texas defines general criminal responsibility for the conduct of another in Section 7.02 of the Penal Code:

> A person is criminally responsible for an offense committed by the conduct of another if:
>
> (1) acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense;
>
> (2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or
>
> (3) having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent commission of the offense.

TEXAS PENAL CODE § 7.02(a).[13]

Texas also defines its purported criminal jurisdiction in the Penal Code. Section 1.04(a)

provides the State with "jurisdiction over an offense that a person commits . . ." if:

> (1) either the conduct or a result that is an element of the offense occurs inside this state;
> (2) the conduct outside this state constitutes an attempt to commit an offense inside this state;
> (3) the conduct outside this state constitutes a conspiracy to commit an offense inside this state, and an act in furtherance of the conspiracy occurs inside this state; or
> (4) the conduct inside this state constitutes an attempt, solicitation, or conspiracy to commit, or establishes criminal responsibility for the commission of, an offense in another jurisdiction that is also an offense under the laws of this state.

TEXAS PENAL CODE § 1.04(a).[14]

### 4.     Senate Bill 8

In addition to its criminal laws prohibiting abortion, Texas enacted Senate Bill 8 ("SB8")

in 2021, in which the state prohibited all abortions if the presence of cardiac activity was detected

– which is usually at approximately the sixth week of pregnancy.[15]   SB8 was famously (or

infamously) drafted to avoid judicial review in federal courts by authorizing private enforcement

of its provisions until *Roe* was overturned.   Although it has been declared unconstitutional under

both the Texas and U.S. Constitution for flaws that have nothing to do with the abortion ban itself,[16]

it remains a threat to all Texans who seek to help others obtain reproductive healthcare, even

outside of the state.   The effect of the combined civil and criminal statutes is a "belt and

---

[13] To be considered an "offense" under the Texas Penal Code, conduct must be "defined as an offense by statute, municipal ordinance, order of a county commissioners court, or rule authorized by and lawfully adopted under a statute."   TEX. PENAL CODE § 1.03(a).

[14] A copy of Section 1.04 and 7.02 of the Texas Penal Code are included as Exhibit V in Plaintiffs' Appendix for the Court's convenience.

[15] A copy of SB8 is included as Exhibit W in Plaintiffs' Appendix for the Court's convenience.

[16] *Van Stean v. Texas Right to Life*, No. D-1-GN-21-004179 (98th Dist. Travis County, Texas Dec. 9, 2021).

suspenders" attempt to ensure that anyone who wants to help a Texan access abortion, even in another state, cannot do so.

In addition to creating a one-sided bounty-hunting scheme that allows anyone in the world to sue a Texan who helps someone obtain an abortion without the claimant having any actual injury, SB8 also imposes a draconian fee shifting regime on anyone who affirmatively challenges a Texas abortion statute or regulation.  Codified as Section 30.022 of the Texas Civil Practice and Remedies Code, it states:

> [A]ny person, including an entity, attorney, or law firm, who seeks declaratory or injunctive relief to prevent this state, a political subdivision, any governmental entity or public official in this state, or any person in this state from enforcing any statute, ordinance, rule, regulation, or any other type of law that regulates or restricts abortion . . . in any state or federal court, or that represents any litigant seeking such relief in any state or federal court, is jointly and severally liable to pay the costs and attorney's fees of the prevailing party.

Tex. Civ. Prac. & Rem. Code 30.022 (a).  Although couched in "prevailing party" language, the only people that can ever be jointly and severally liable are those "who seek[] declaratory or injunctive relief to prevent . . . enforce[ment of] any statute, ordinance, rule, regulation, or any other types of law that regulates or restricts abortion" and the lawyers who represent them.

This joint and several liability attaches if the party defending the abortion statute or regulation prevails on any single claim, regardless of whether there are others on which they fail. *Id.* 30.022(b).  And the party defending the abortion statute or regulation need not even seek fees in the actual case challenging the law; he may file a separate civil action in a different court for up to three years afterward.  *Id.* 30.022(c).  Section 30.022 also purports to eliminate res judicata by stating that it is not a defense to an action to recover costs and fees that the court in the original lawsuit declined to recognize or enforce Section 30.022 or the original court held that any provision

of Section 30.022 was "invalid, unconstitutional, or preempted by federal law." *Id.* 30.022(d).

Section 30.022 is indeed invalid, unconstitutional, and preempted by federal law for multiple

reasons discussed in Section IV.B.8, *infra.*

The Texas Legislature also included a "legislative finding" in Section 2 of SB8 that Texas

"never repealed, either expressly or by implication, the state statutes enacted before the ruling in

*Roe v. Wade*, 410 U.S. 113 (1973), that prohibit and criminalize abortion unless the mother's life

is in danger." S.B. 8 § 2 (Tex. 2021)."[17]

## C.    Relevant Provisions of the United States Constitution

### 1.    The Right to Travel

The right to travel is a fundamental constitutional right of all citizens of the United States.

As stated by the Supreme Court in *Saenz v. Roe*, 526 U.S. 489, 500 (1999):

> The "right to travel" discussed in our cases embraces at least three
> different components. It protects the right of a citizen of one State
> to enter and to leave another State, the right to be treated as a
> welcome visitor rather than an unfriendly alien when temporarily
> present in the second State, and, for those travelers who elect to
> become permanent residents, the right to be treated like other
> citizens of that State.

Recognition of the right to travel dates back to the earliest period of self-government in the United

States, under the Articles of Confederation, Article IV, which guaranteed the right of "free ingress

and regress to and from" neighboring States. The right to travel guarantees a citizen's ability to

make journeys into other states and return to the citizen's state of residence. The right to travel

also includes a newly-arrived or traveling citizen's right to be treated equally to the destination

---

[17] The Trigger Ban also includes a "legislative finding" that "the State of Texas never repealed,
either expressly or by implication, the state statutes enacted before the ruling in *Roe v. Wade*, 410
U.S. 113 (1973), that prohibit and criminalize abortion unless the mother's life is in danger."

state's residents and to receive the same services without discrimination or classification.  The

right is grounded in multiple provisions of the U.S. Constitution, including:

- Article IV, § 2, which states "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

- The Fourteenth Amendment guarantees that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

- The Commerce Clause, which states "Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several States . . . ." U.S. Const. art. I, § 8, cl. 3.

**2.     The Rights to Freely Associate, Speak, and Donate Money.**

All Texans have First Amendment rights to associate freely with each other and with

pregnant Texans and to engage in expressive conduct, including providing funding for pregnant

Texans to access out-of-state services that are legal where rendered, including abortion.  Pregnant

Texans, including those who seek Plaintiffs' assistance, have constitutional rights to travel to states

where full reproductive care – including abortions – is legal.  Plaintiffs' use of funds in furtherance

of their missions is considered both speech and an integral part of the right to associate, and it is

protected by the First Amendment to the U.S. Constitution, which states:

> Congress shall make no law . . . abridging the freedom of speech, or
> of the press; or the right of the people peaceably to assemble, and to
> petition the Government for a redress of grievances.

"If there is a bedrock principle underlying the First Amendment, it is that the government

may not prohibit the expression of an idea simply because society finds the idea itself offensive or

disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989). Indeed, "the point of all speech

protection ... is to shield just those choices of content that in someone's eyes are misguided, or

even hurtful." *Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston, Inc.,* 515 U.S. 557, 574 (1995). "The freedom of speech and of the press guaranteed by the Constitution embraces at the least the liberty to discuss publicly and truthfully all matters of public concern without previous restraint or fear of subsequent punishment. . . . Freedom of discussion, if it would fulfill its historic function in this nation, must embrace all issues about which information is needed or appropriate to enable the members of society to cope with the exigencies of their period." *Thornhill v. Alabama*, 310 U.S. 88, 101–102, (1940); *see also First Nat. Bank of Boston v. Bellotti,* 435 U.S. 765, 776 (1978). Citizens must be free to speak, associate, publish information, and to express themselves without fear of criminal prosecution in accordance with this protection, regardless of how State actors view the issue in question.

This is true especially when the subject of the speech is controversial:

> "[S]peech on 'matters of public concern' ... is 'at the heart of the First Amendment's protection.'" *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 758–759, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985) (opinion of Powell, J.) (*quoting First Nat. Bank of Boston v. Bellotti,* 435 U.S. 765, 776, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978)). The First Amendment reflects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). That is because "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana,* 379 U.S. 64, 74–75, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964). Accordingly, "speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Connick v. Myers*, 461 U.S. 138, 145, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) (internal quotation marks omitted).

*Snyder v. Phelps,* 562 U.S. 443, 451-52 (2011).

The issue of abortion rights has undoubtedly been contentious in society over the last half-century, and following the *Dobbs* decision, the controversy has been front and center. Part of the result of *Dobbs* is a "restoration" of the issue to the states, and the varying approaches among the

states ranged from protections for reproductive healthcare and right to, as here, vast criminal

prohibitions impacting wide subsections of the community and helping professions.  The breadth

of Texas's prohibitions is not sustainable under the First Amendment, however.  As the Supreme

Court has held:

> The objectionable quality of vagueness and overbreadth does not
> depend upon absence of fair notice to a criminally accused or upon
> unchanneled delegation of legislative powers, but upon the danger
> of tolerating, in the area of First Amendment freedoms, the existence
> of a penal statute susceptible of sweeping and improper application.
> 14 *Cf. Marcus v. Search Warrant*, 367 U.S. 717, 733, 81 S.Ct. 1708,
> 1717, 6 L.Ed.2d 1127. These freedoms are delicate and vulnerable,
> as well as supremely precious in our society. The threat of sanctions
> may deter their exercise almost as potently as the actual application
> of sanctions. *Cf. Smith v. California, supra,* 361 U.S. at 151—154,
> 80 S.Ct. at 217—219; *Speiser v. Randall,* 357 U.S. 513, 526, 78
> S.Ct. 1332, 1342, 2 L.Ed.2d 1460. Because First Amendment
> freedoms need breathing space to survive, government may regulate
> in the area only with narrow specificity. *Cantwell v. Connecticut,*
> 310 U.S. 296, 311, 60 S.Ct. 900, 906, 84 L.Ed. 1213.

*National Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415, 432-33 (1963).  Where

as here, criminal prosecutions are threatened, the scope and safety of First Amendment protections

are paramount in order to protect citizens from sweeping government overreach—which in this

case may impact their freedom altogether.

## IV.    ARGUMENT & AUTHORITIES

### A.    Legal Standards.

Preliminary injunctions are appropriate when (1) the movant is likely to succeed on the

merits of their claims; (2) the movant is likely to suffer irreparable harm absent an injunction; (3)

the balance of equities favor the movant; and (4) a preliminary injunction would serve the public

interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see Jackson Women's

Health Org. v. Currier*, 760 F.3d 448, 452 (5th Cir. 2014).  District courts have "wide discretion"

in granting preliminary injunctions. *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1987).  "[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and on evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).  Courts are not required to hold an evidentiary hearing before issuing a preliminary injunction, particularly where the "defendants do not point to any convincing factual disputes." *Dixon*, 835 F.2d at 558.

The same legal standards apply to temporary restraining orders ("TROs"). *DeFranceschi v. Seterus, Inc.*, No. 4:15-CV-870-O, 2016 WL 6496323, at *1 (N.D. Tex. Aug. 2, 2016) ("A temporary restraining order ('TRO') is 'simply a highly accelerated and temporary form of preliminary injunctive relief,' which requires that party seeking such relief to establish the same four elements for obtaining a preliminary injunction" (quoting *Hassani v. Napolitano*, No. 3:09-cv-1201-D, 2009 WL 2044596, at *1 (N.D. Tex. 2009))).  Generally, a TRO may last up to 14 days. FED. R. CIV. P. 65(b)(2). The Court may extend it for another 14 days (for a total of 28 days) if it finds "good cause" or the party to be enjoined consents.  *Pizza Hut LLC v. Pandya*, No. 4:19-CV-00726-RWS, 2019 WL 8331437, at *3 (E.D. Tex. Nov. 26, 2019).  If (and only if) the Court extends a TRO beyond the time permissible under Federal Rule of Civil Procedure 65(b)(2) without consent of the enjoined party, it becomes an enforceable preliminary injunction that can be appealed.  *See Sampson v. Murray*, 415 U.S. 61, 86 (1974); *see also Insight Direct USA, Inc. v. Kelleher*, No. 1:17-CV-252-RP, 2017 WL 1371252, at *2 (W.D. Tex. Apr. 10, 2017) (holding that a TRO that does not extend beyond the time permitted under FRCP 65(b)(2) is not appealable as a preliminary injunction).

**B.      Plaintiffs are likely to succeed on the merits of their constitutional challenges.**

The Texas Pre-*Roe* Statutes and Trigger Ban cannot criminalize Plaintiffs' conduct that assists pregnant Texans obtain abortion care outside of the state for many independent reasons. And Section 30.002 of the Texas Civil Practice & Remedies Code is also fatally flawed under the U.S. Constitution, is preempted by federal law, and therefore void.

**1.      The Pre-Roe Statutes and the Trigger Ban Violate the Right to Travel under the U.S. Constitution.**

The "freedom to travel throughout the United States has long been recognized as a basic right under the Constitution" and "fundamental to the concept of our Federal Union." *United States v. Guest*, 383 U.S. 745, 757–58 (1966); *Saenz v. Roe*, 526 U.S. 489, 498 (1999) ("[T]he constitutional right to travel from one State to another is firmly embedded in [federal] jurisprudence," and is "a virtually unconditional personal right, guaranteed by the Constitution to us all.") (internal quotation marks and citations omitted). Because it is fundamental, laws which infringe the right to travel, as Texas's laws do, are subject to strict scrutiny. *Chavez v. Martinez*, 538 U.S. 760, 775 (2003); *Dunn v. Blumstein*, 405 U.S. 330, 338–39 (1972). Such laws are unconstitutional unless they are shown to be narrowly tailored to accomplish a compelling state interest. *Id.* Where a law fails this test in a Right to Travel case, a finding that the law is facially invalid is appropriate. *Aptheker v. Sec'y of State*, 378 U.S. 500, 516-17 (1964).

A blanket restriction on all interstate travel or assistance related to abortion outside of the State of Texas, where there are reasonable alternatives that could further the State's alleged interest, is not narrowly tailored. *Dunn v. Blumstein*, 405 U.S. 330, 343 (1972) ("And if there are other, reasonable ways to achieve those goals with a lesser burden on constitutionally protected activity, a State may not choose the way of greater interference. If it acts at all, it must choose 'less drastic means.'") (internal citation omitted). Such alternatives include disseminating information

about the activity, *i.e.*, abortion, to advocate the State's position for individuals to consider in their decision related to the medical services sought through interstate travel. *Bigelow v. Virginia*, 421 U.S. 809, 824, 95 S. Ct. 2222, 2234 (1975) (noting that an alternative for states seeking to regulate out of state conduct, which it has no authority to regulate, may instead "seek to disseminate information so as to enable its citizens to make better informed decisions when they leave.") Here, Defendants' assertion that  the Trigger Ban and Pre-*Roe* Statutes apply to interstate travel demonstrates their failure to choose a less drastic means to achieve the goal of restricting abortion within the State.  Because there are alternative means available to further the State's alleged interest in restricting abortion in the State of Texas, the Trigger Ban and Pre-*Roe* Statutes are not narrowly tailored.

Additionally, criminalizing interstate travel is not a compelling state interest.  Specifically, criminalizing a citizens' exercise of their constitutional right to interstate travel to engage in lawful conduct in another state does not bear any relationship to any State interest that could be alleged by Defendants.  While "[c]ompelling interests rarely 'reduce to precise definition' . . . [t]he Supreme Court has sometimes described compelling interests with synonyms such as 'interests of the highest order' and 'vital state interest[s].'" *Willey v. Harris Cnty. Dist. Att'y*, 27 F.4th 1125, 1131 (5th Cir. 2022).  Whether a Texan engages in a lawful activity in another state is not vital to the State's criminalization and/or regulation of abortion within the State.  *See Bigelow*, 421 U.S. at 824 (noting available alternatives for the state to achieve its goal).  Because there is no compelling interest in the criminalization of interstate travel related to abortion, Defendants cannot criminalize and/or prosecute lawful constitutionally protected conduct.  *See Aptheker v. Sec'y of State*, 378 U.S. 500, 501 (1964) (finding that despite the Federal Government's asserted interest

of national security the law at issue, which made it a felony for a member of a Communist organization to apply for, use or attempt to use a passport, was unconstitutional on its face).

Neither the Trigger Ban nor the Pre-*Roe* Statutes can prohibit a person's right to travel or to assist someone in interstate travel.[18]  *Bigelow*, 421 U.S. at 822-24 ("Neither could Virginia prevent its residents from traveling to New York to obtain those services or, as the State conceded, prosecute them for going there").   A person is permitted to leave their home state to engage in an activity that is lawful in the destination state.  *Id.*  at 824 ("A State does not acquire power or supervision over the internal affairs of another State merely because the welfare and health of its own citizens may be affected when they travel to that State."); *see also United States v. Texas*, 566 F. Supp. 3d 605, 683 (W.D. Tex. 2021) *cert. granted before judgment* 142 S.Ct. 14, 211 L.Ed.2d 225 (2021) (noting that under the Texas Heartbeat Act, pregnant Texans were bound by the state law, if constitutional, and "[s]tate lines only provide a refuge so long as different laws exist across them.").

Moreover, the Privileges and Immunities Clause of Article IV and the Fourteenth Amendment protects a non-resident's "right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in [another] State." *Saenz*, 526 U.S. at 500.  When a challenged restriction deprives nonresidents of a privilege or immunity protected by this Clause, it is invalid unless "(i) there is a substantial reason for the difference in treatment; and (ii) the

---

[18] In the *United States v. Texas*, Defendant Paxton seemingly conceded that the state regulation prohibiting conduct, i.e., abortion after cardiac activity is detected, within the state does not apply to Texans across state lines.  566 F. Supp. 3d 605, 674 (W.D. Tex.), *cert. granted before judgment*, 142 S. Ct. 14, 211 L. Ed. 2d 225 (2021) ("The State further asserts that Texas residents can still travel to other states to access abortion care, which nullifies the likely unconstitutionality of the ban.").  Additionally, the court noted that "[s]tate lines only provide a refuge so long as different laws exist across them."  *United States v. Texas*, 566 F. Supp. 3d at 683.

discrimination practiced against nonresidents bears a substantial relationship to the State's objective." *Barnard v. Thorstenn*. 489 U.S. 546, 552-53 (1989).

Here, Defendants threaten Plaintiffs, their volunteers, and their donors with prosecution under the Texas's criminal abortions statutes for travel, intended travel, or assisting one in traveling across state lines. The attempted restraint on Plaintiffs, their volunteers, and their donors to prevent their movement or assistance in movement of a pregnant Texan into a destination state where they may legally undertake or obtain reproductive health care services, such as an abortion while they are in the destination state, denies that person's entitlement to the privileges and immunities of the destination state. *Bigelow*, 421 U.S. at 822-24 ("Neither could Virginia prevent its residents from traveling to New York to obtain those services or, as the State conceded, prosecute them for going there") (citations omitted). It is a violation of both the pregnant person's rights as well as the helper's constitutional rights to burden the fundamental right to travel in this way. *See*, *e.g.*, *Edwards v. People of State of California*, 314 U.S. 160 (1941) (finding that California statute applied against person helping another person exercise right to travel was unconstitutional).

These restrictions are also invalid because there is no "substantial reason for the difference in treatment," and "the discrimination practiced against nonresidents" bears no "relationship to the State's objective." *Barnard*, 489 U.S. at 552 (quoting *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 284 (1985)). Threatened prosecution for exercising or assisting with the constitutional right to travel bears no relationship to the State's goal of criminalizing abortion *in the state of Texas*. "A State does not acquire power or supervision over the internal affairs of another State merely because the welfare and health of its own citizens may be affected when they travel to that State." *Bigelow*, 421 U.S. at 824.

State laws that seek to and/or prevent citizens from traveling to or from another state also violate the Due Process Clauses of the Fifth and Fourteenth Amendment.  "The right to travel is part of the liberty of which the citizen cannot be deprived without the due process of law." *United States v. Laub*, 385 U.S. 475, 481 (1967) (quoting *Kent v. Dulles*, 357 U.S. 116, 125 (1958)); *accord Hernandez v. Cremer*, 913 F.2d 230, 237 (5th Cir. 1990); *Califano v. Gautier Torres*, 435 U.S. 1, 5, n. 6 (1978) ("The constitutional right of interstate travel is virtually unqualified. By contrast the 'right' of international travel has been considered to be no more than an aspect of the 'liberty' protected by the Due Process Clause of the Fifth Amendment") (internal citations omitted).  A law "implicates the right to travel when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right."  *Soto–Lopez*, 476 U.S. at 903  (internal quotation marks and citations omitted).

Here, Defendants' actions invade the right to travel in at least two ways.  First, with respect to Dr. Moayedi, who wishes to resume her travel among the states to provide abortion services where legal, and the Support Plaintiffs, who wish to travel with pregnant Texans across state lines to help them obtain legal abortions out of state, the Trigger Ban and the Pre-*Roe* States directly impede their own personal rights to travel freely among the states.  Second, the criminal laws implicate the right to travel because their threatened prosecutions resulted in Plaintiffs ceasing all abortion assistance activities in support of that right.  *See Soto–Lopez*, 476 U.S. at 903.  Indeed, Plaintiffs ceased all activities related to obtaining an abortion out of state because of the threat of prosecution and the significant criminal penalties that could follow.

2.    **The Pre-*Roe* Statutes and the Trigger Ban Violate the Commerce Clause of the U.S. Constitution.**

A business is in interstate commerce when it "directly engage[s] in the production, distribution, or acquisition of goods or services in interstate commerce." *United States v. American Building Maintenance Industries*, 422 U.S. 271, 283 (1975).  Interpreting the Pre-*Roe* Statutes and Trigger Ban to criminalize Plaintiffs', their volunteers', and their clients' travel for the purpose of assisting pregnant Texans seeking abortion care in other states constitutes an attempt by Texas to regulate commerce "among the several States," which authority the Constitution grants only to Congress.  *Comptroller of Treasury of Maryland v. Wynne*, 575 U.S. 542, 549 (2015); *Dennis v. Higgins*, 498 U.S. 439 (1991); *Dickerson v. Bailey*, 336 F.3d 388, 397 (5th Cir. 2003).  Likewise, interpreting those statutes to prohibit citizens from assisting Texans' travel generally also constitutes an unconstitutional attempt by Texas to regulate interstate commerce.

Plaintiffs are nonprofit organizations that, prior to *Dobbs*, provided information and funds to its clients for lawful out-of-state activities.  Due to the numerous threats of prosecution under various Texas statutes for assisting and/or supporting Texans in obtaining an abortion in other states where abortions remain legal, Plaintiffs ceased all abortion funding activities, even for abortions that occur in another state.  But use of Pre-*Roe* Statutes and/or the Trigger Ban to threaten prosecution for assisting and/or supporting a pregnant Texan access care in another state hinders the flow of commerce in a manner that implicates federal concerns.  *See United States v. Texas*, 566 F. Supp. 3d at 641 ("By extending liability to persons anywhere in the country, [the Texas Heartbeat Act's] structure all but ensures that it will implicate commerce across state lines— whether through insurance companies reimbursing Texas abortions, banks processing payments, medical device suppliers outfitting providers, or persons transporting patients to their

appointments."). This interference with out-of-state access has a substantial effect on the availability of abortion-related services in the national market.

Both Congress and the courts have found that abortion regulation implicates interstate commerce. *See* 18 U.S.C. § 1531(a) (restricting the provision of "partial birth abortion" procedures "in or affecting interstate or foreign commerce"); *United States v. Bird*, 124 F.3d 667, 678 (5th Cir. 1997) (finding that a federal statute that criminalized certain threats and intimidation directed at providers of abortion services was a legitimate regulation of intrastate activity having a substantial effect on interstate commerce including commercial market for abortion and proportionate increase in out of state cost of abortion services); *see also United States v. Bird*, 401 F.3d 633, 634 (5th Cir. 2005) (reaffirming that the federal criminal statute was "a valid exercise of Congress's authority under the Commerce Clause").

Here, Defendants threaten to civilly and criminally prosecute all Texans and non-Texas to prevent access entirely to an abortion out of state. In effect, Defendants seek to remove all Texans from the national abortion market. This complete ban exceeds the State's authority and undoubtably implicates the national abortion market in interstate commerce. *See United States v. Bird*, 124 F.3d at 673 ("Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities.").

### 3.    The Pre-*Roe* Statutes and the Trigger Ban Violate Plaintiffs' First Amendment Rights.

In addition to violating the right to travel, the Pre-*Roe* Statutes and the Trigger Ban also violate Plaintiffs' rights to freely associate, freely speak, and freely donate money to charitable endeavors. And because the Pre-*Roe* and Trigger Ban's application to Plaintiffs' conduct are content-based regulations (that apply only to those seeking to assist pregnant Texans seeking

abortions) they are presumptively invalid.  *R.A.V. v. City of St. Paul*, Minn., 505 U.S. 377, 382 (1992). "The risk of a chilling effect on association is enough, '[b]ecause First Amendment freedoms need breathing space to survive.'"  *Bonta*, 141 S. Ct. at 2389 (citation omitted).  Here, the chilling has already occurred, and it will continue to occur absent court intervention.

Plaintiffs are involved in "expressive activity" under the First Amendment because they advocate for reproductive justice. Dkt. 1, ¶¶ 20-33. An association need not associate for the purpose of disseminating a certain message for First Amendment protection, but "must merely engage in expressive activity that could be impaired." *Boy Scouts of America v. Dale*, 530 U.S. 640, 655 (2000). One central, common goal of all these Plaintiffs is to disseminate truthful information about reproductive rights and options, including legal abortion services outside of Texas.  Defendants are clearly hostile to this message. But, the government (through its interpretation of law) may not "interfere with speech for no better reason than promoting an approved message or discouraging a disfavored one…" *Id.* at 661 (quoting *Hurley*, 515 U.S. at 579).  Just as the government may not interfere with Plaintiffs' truthful speech (disseminating information) and expressive speech (advocacy for reproductive justice), it may not interfere with Plaintiffs' association with their volunteers, donors, and clients.

> a.  ***The rights to freely associate and freely speak under the First Amendment include assisting others exercising their own constitutional rights.***

Defendants' attempts to foreclose all assistance to pregnant Texans seeking abortion care, even in other states where such care is legal, directly violate the First Amendment.

> i.  ***Free speech***

Plaintiffs are being subjected to threats of criminal prosecution due to their speech and advocacy activities.  Part of that speech is in facilitating and providing truthful, factual information

as to how pregnant Texans may seek legal healthcare outside the state.   As the Seventh Circuit

Court of Appeals recognized more than 40 years ago:

> It is quite common for persons to travel to other jurisdictions in order
> to avoid restrictive laws in their home state or to take advantage of
> more lenient laws in another state, ***and it is perfectly lawful for one
> to advise another to do so***.  People travel to Nevada to gamble or to
> gain a quick marriage or divorce; they travel across state lines in
> order to purchase liquor cheaper or at a younger age.

*Robak v. United States*, 658 F.2d 471, 476–77 (7th Cir. 1981) (emphasis added).  Attempts, and

even as here, threats, to prosecute individuals under the State's criminal abortion statutes implicate

the First Amendment right to assist with travel because "impeding travel is its primary objective."

*Soto–Lopez*, 476 U.S. at 903.

Free speech requires individuals (and associations of individuals) be able to assist others

with informational materials without being criminalized or prosecuted as an "aider or abetter."  *See*

*In re Aimster Copyright Litig,*, 334 F.3d 643, 651 (7th Cir. 2003) (internal citations omitted).  Here,

Plaintiffs are not providing informational assistance to obtain illegal Texas abortions; they are

speaking to provide assistance to those seeking *legal* care elsewhere.  When speech in the first

instance is protected by the First Amendment, it cannot possibly be subject to criminalization in

the second.  *See generally Simon & Schuster v. Members of the New York State Crime Board,* 502

U.S. 105 (1991).

Free speech requires that Plaintiffs be able to speak on matters that may be repugnant to

some.  *Texas v. Johnson*, 491 U.S. at 414 ("If there is a bedrock principle underlying the First

Amendment, it is that the Government may not prohibit the expression of an idea simply because

society finds the idea itself offensive or disagreeable."); *see also FCC v. Pacifica Foundation*, 438

U.S> 726, 745-46 (1978) ("The fact that society may find speech offensive is not a sufficient

reason for suppressing it.  Indeed, if it is the speaker's opinion that gives offense, that consequence

is a reason for according it constitutional protection."). It likewise demands that Plaintiffs be able to advocate and speak out about the state of abortion laws in Texas, and about how laws function differently elsewhere. *Snyder*, 562 U.S. at 452. To construe the provision of truthful information and advocacy as criminal runs afoul of the most basic constitutional requirements. *Button*, 371 U.S. at 433.

Plaintiffs are targeted in part due to assistance they provide in the form of informational materials, which may include newsletters, social media posts, and other public communications. Freedom of the press likewise prohibits Texas's Abortion Bans from criminalizing the dissemination of truthful information, and is a bedrock principle of our constitutional jurisprudence. *Mills v. State of Ala.*, 384 U.S. 214, 219 (1966) ("Suppression of the right of the press … to clamor and contend for or against change … muzzles one of the very agencies the Framers of our Constitution thoughtfully and deliberately selected to improve our society and keep it free."); *Thornhill,* 310 U.S. at 101–102; *Lovell v. City of Griffin, Georgia*, 303 U.S. 444, 452 (1938) ("The liberty of the press is not confined to newspapers and periodicals.. . The press in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion."). The Texas Pre-*Roe* Statutes and Trigger Ban facially violate this fundamental tenet by encompassing the public dissemination of information.

### ii.    *Free association*

Similarly, Defendants' threatened prosecutions of Plaintiffs and their donors for financial contributions also improperly infringe on the right to freely associate. *Dale*, 530 U.S. at 653 ("As we give deference to an association's assertions regarding the nature of its expression, we must also give deference to an association's view of what would impair its expression."). State actors have already coordinated with private actors under SB8 to "investigate" the identities of all who

may have violated the Pre-*Roe* Statutes in order to use to criminal statutes for intimidation.   The Supreme Court has noted that compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom.   *NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 462 (1958); *Ex parte Lowe*, 887 S.W.2d 1, 2 (Tex. 1994) ("The rights to form, discuss, and express unpopular views are protected fundamental rights.  Where the organization advocates views which might subject members to ridicule and denunciation from the mere fact of membership, First Amendment associational rights are the basis for a qualified privilege against disclosure of membership lists."). Further, the Court has recognized the vital relationship between freedom to associate and privacy in one's associations.  *Id.*  "Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs."  *Id.* at 449.

Challenges to compelled disclosure are reviewed under "exacting scrutiny." *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2383 (2021).  Under that standard, there must be "a substantial relation between the disclosure requirement and a sufficiently important governmental interest." *Id.* (citing *Doe v. Reed*, 561 U.S. 186, 196 (2010)).  "To withstand this scrutiny, the strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights."  *Id.*  Here, Plaintiffs advocate views which might subject members to ridicule and denunciation from the mere fact of membership.   In particular, disclosure may subject Plaintiffs' volunteers and donors to further threats of criminal prosecution or threats of ruinous civil lawsuits for the exercise of constitutionally protected conduct.  *Bonta*, 141 S. Ct. at 2388 (noting the gravity of the privacy concerns where petitioners' supporters were subjected to bomb threats, protests, stalking, and finding that the deterrent effect feared by the organizations was real and pervasive).  Therefore, the need for privacy is crucial for the preservation of Plaintiffs'

volunteers' and donors' freedom of association.   *Id.*, at 2388 (2021) ("[D]isclosure requirements can chill association "[e]ven if there [is] no disclosure to the general public.").  In fact, Defendants' threatened prosecution has already chilled, and continues to chill, Plaintiffs' volunteers and donors from engaging in their right to associate for fear of prosecution.  [*See* ¶ 12 of Decl. of Anna Rupani (Exh.C); ¶ 10 of Decl. of Neesha Dave (Exh.E); ¶ 9 of Decl. of Rachel Cheek (Exh.H)].

The sole avenue for Plaintiffs to ensure avoidance of prosecution by Defendants under Texas's criminal abortion statutes is to cease any free speech or association that Defendants believe to be violative of those statutes, including – according to public statements made by AG Paxton and other state actors – assisting travel to other states for abortion procedures.[19]  Essentially, Plaintiffs, their volunteers, and their donors have been given a choice: relinquish your right to associate in any way with an organization and its activities furthering reproductive health services or face prosecution for leaving, intending to leave, or assisting someone from leaving the state.  A restriction of an individual's constitutional right to travel that can only be recaptured by relinquishing another fundamental right such as freedom of association, is unconstitutional.  *Aptheker*, 378 U.S. at 507 ("The restrictive effect of the legislation cannot be gainsaid by emphasizing, . . . that a member of a registering organization could recapture his freedom to travel by simply in good faith abandoning his membership in the organization.  Since freedom of association is itself guaranteed in the First Amendment, restrictions imposed upon the right to travel cannot be dismissed by asserting that the right to travel could be fully exercised if the individual would first yield up his membership in a given association.").

---

[19] As discussed more fully at § IV.B.5, neither Pre-*Roe* nor Trigger Ban explicitly states that the statute applies to travel or financial contributions/donations and this attempted breadth violates due process under both the Fifth and Fourteenth Amendment.  Additionally, Defendants' interpretation of the statutes evidences the statutes' unconstitutional vagueness.

### iii.    Free expression

Plaintiffs, as well as their volunteers and donors, also have a First Amendment right to make financial contributions to and/or advocate for the Plaintiffs' activities in furtherance of their organizational mission.  *See McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 191 (2014) (noting that the right to participate in democracy through political contributions is protected by the First Amendment); *see Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 349 (2010) ("If the First Amendment has any force, it prohibits [the government] from fining or jailing citizens, or associations of citizens, for simply engaging in political speech.").  This fundamental freedom is not limited to political contributions, but extends to issues important to our time. *See Thornhill* 310 U.S. at 102) ("Freedom of discussion, if it would fulfill its historic function in this nation, must embrace all issues about which information is needed or appropriate to enable the members of society to cope with the exigencies of their period.").   Here, Plaintiffs – as well as their volunteers and donors – are already being forced to adjust their constitutionally protected behavior, including the giving of money, because they fear enforcement by the State.  Ex. C, ¶¶ 8-12, Ex. D, ¶¶ 6-10; Ex. E, ¶¶ 6-10; Ex. F, ¶¶ 7-10; Ex. G, ¶¶ 7-10;  Ex. H, ¶¶ 5-8; Ex. I, ¶¶ 7-10; Ex. J, ¶¶ 7-10; Ex. K, ¶¶ 5-9.

### b.    Texas's Abortion Bans are not narrowly tailored to serve compelling state interests.

The Texas criminal law provisions are presumptively invalid as applied to Plaintiffs' speech and "may be justified only if the government proves" that the restriction is "narrowly tailored" and necessary "to serve compelling state interests."  *Reed*, 576 U.S. at 163; *see also United States v. Alvarez*, 567 U.S. 709, 715-17 (2012); *R.A.V.*, 505 U.S. at 382 ("The First Amendment generally prevents government from proscribing speech, or even expressive conduct, because of disapproval of the ideas expressed.") (citations omitted).  Defendants cannot show that

the Pre-*Roe* Statutes or Trigger Ban's application to donations and/or financial contributions survives strict scrutiny because the State lacks a compelling interest in suppressing speech that promotes and supports legal abortion access in other states.  It also cannot constitutionally suppress speech that supports changing the law of *this* state. Therefore, Defendants' threatened prosecution of Plaintiffs' financial contributions (and sources thereof, i.e. donors) and receipt of donations related to abortion, travel, support of their clients, and their reproductive justice missions violates the right to freedom of speech, expression, and association.

**4.    The Pre-*Roe* Statutes and Trigger Ban are unconstitutionally vague.**

Under the Fourteenth Amendment's guarantee of due process, a law can be void for vagueness "for either of two independent reasons.  First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement."  *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (plurality).  "This test demands that statutes affecting speech explain precisely what conduct they are proscribing."  *Nat'l Press Photographers Assoc. v. McCraw*, __ F.Supp. 3d ___ , 2022 WL 939517, at *12 (W.D. Tex. Mar. 3, 2022).  As a result, "the government may regulate conduct that affects speech only with narrow specificity.")  *Id.* (citations and quotations omitted).

"Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly . . . ." *Landgraf v. USI Film Prods.,* 511 U.S. 244, 265 (1994).  A penal statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.  *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).  Where the legislature fails to provide such minimal guidelines, a criminal statute may

permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." *Smith v. Goguen*, 415 U.S. 566, 575 (1974). "[A] governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." *State of Ala. ex rel. Patterson*, 377 U.S. at 307 (emphasis added).

The Pre-*Roe* Furnishing Statute prohibits "furnishes the means for procuring an abortion knowing the purpose intended is guilty as an accomplice." TEX. REV. STATS. ANN. Art. 4512.2 (1974). But the statute nowhere defines the phrase "furnishing the means." Nor is it defined in the Texas Penal Code. And it has no uniform definition under Texas law. Further, the Pre-*Roe* statutes use the words "means" and "procure" in a special (and consistent) way: "means" is consistently used to refer to the drug, medicine, or physical act that causes the abortion, and "procure" is used to refer to the actual causation of the abortion. Former Texas Penal Code Article 1191 reads: "…any drug or medicine, or shall use towards her any violence or means whatever externally or internally applied, and thereby procure an abortion" (emphasis added). *See*, *e.g.*, *Moore v. State*, 40 S.W. 287, 290 (Tex. Crim. App. 1897) (drugs); *Wandell v. State*, 25 S.W. 27, 28 (Tex. Crim. App. 1894) (catheter); *Willingham v. State*, 25 S.W. 424, 424 (1894) (drugs).

Under the "presumption of consistent usage,"[20] the same words, used later in the same statutory scheme, would have the same meaning as they do in former Article 1191. Thus, if "means" refers to the drug or instrument and "procure" means "induce or cause" in former Article 1191, then those words mean the same things in former Article 1192. Liability for "furnishing" under former Article 1192 should only be possible if Plaintiffs actually provide to the doctor or the patient the "drug or medicine…violence or means…externally or internally applied…[to]

---

[20] *See United States v. Castleman*, 572 U.S. 157, 174 (2014) (Scalia, J. concurring).

procure [the] abortion[.]"  This is not the interpretation Defendant Paxton or the State of Texas has taken to date; thus, the statute is at the very least too vague to permit an ordinary citizen to understand what is prohibited.

Moreover, and in a vast expansion of that previous understanding, according the threats of State officials, the Furnishing Statute imposes liability regardless of whether a person knew that a critical element of the offense was present, specifically when the second portion of a medication abortion obtained lawfully outside of Texas is consumed inside the state.  This is fatal to the law's constitutionality.  *See Women's Med. Ctr. of Nw. Houston v. Bell*, 248 F.3d 411, 422 (5th Cir. 2001) (abortion regulation "is unconstitutionally vague on its face because it impermissibly subjects physicians to sanctions based not on their own objective behavior, but on the subjective viewpoints of others"). This forced guessing game about what "furnishing the means" includes is the opposite of "fair warning" with "explicit standards."  *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  Plaintiffs are subject to the "hazard of being prosecuted for knowing but guiltless behavior."  *Baggett v. Bullitt*, 377 U.S. 360, 373 (1964).  Due process does not allow for this uncertainty.  *Grayned*, 408 U.S. at 109 (citations and internal quotation marks omitted).

Similarly, the Trigger Ban is unconstitutionally vague because it fails to fairly apprise Plaintiffs of what conduct may be prohibited by the terms "induce" and "attempt."  The threats from State actors have targeted out-of-state medication abortions in which a pregnant Texan consumes part of the medication regime within the state.[21]  As with the Furnishing Statute, the Trigger Ban is thus impermissibly vague because anyone who provides assistance to a person seeking a lawful abortion outside of Texas cannot know or control the patient's timing or location in taking legal, prescribed medication.  Thus, the Trigger Ban is unconstitutionally vague because

it subjects people helping Texans to sanctions not based on their own objective behavior, but on the subjective decisions of others.  *See Bell*, 248 F.3d at 422.

Likewise, threats from State actors have targeted conduct ranging from charitable donations to informational assistance, from funding travel to physical accompaniment.  It is not at all clear that these activities constitute "inducement."  Once again, Plaintiffs are subject to the "hazard of being prosecuted for knowing but guiltless behavior," which due process does not permit. *Baggett,* 377 U.S. at 373; *Grayned*, 408 U.S. at 109.

5.      **The Pre-*Roe* Statutes and Trigger Ban cannot criminalize abortion care provided for out-of-state patients pursuant to that state's laws.**

Texas's jurisdictional penal statute does not contemplate extension to care provided beyond the boundaries of Texas in accordance with the law of the state where it is provided.  TEX. PENAL CODE ANN. § 1.04(a).  Because both patients and physicians have a fundamental constitutional right to travel, as laid out previously in this motion, Texas cannot burden the ability of abortion-seekers or providers for care provided out of state.  This is violative of not only the right to travel, but also the Constitution's prohibition against state regulation of interstate commerce.  *See United States v. Texas*, 566 F. Supp. 3d at 641.

The threats by state actors and their associated private emissaries (through SB8's civil enforcement mechanism) have thus far extended to abortion care provided in a state where it is lawful if medications necessary to complete the abortion are ultimately consumed in Texas.  This threat also demonstrates the vagueness of the Texas Abortion Bans, which do not clearly establish that care provided in another state may be subject to Texas criminal liability.  *Landgraf*, 511 U.S. at 265. Likewise, these threats further demonstrate that the Texas Abortion Bans are vague because they may subject an unknowing target to liability without intent or guilt.  *Bell*, 248 F.3d at 422.

Additionally, the federal government has assumed the role of regulating medical billing through CMS and the Department of Health and Human Services.  In that role, care is deemed provided where it is received, as "Place of Service" reflects the location of the patient rather than the provider in circumstances involving telehealth.[22]   Federal law preempts any state law suggestion or mandate to the contrary, in accordance with the Supremacy Clause of the U.S. Constitution.  *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617-18 (2011).

Abortion care services provided via telehealth to patients in states where abortion is legal therefore cannot be subject to the Texas Abortion Bans. Medical care is regulated for the benefit of the patient, not for the interest of the State apart from patient safety.  *Bigelow*, 421 U.S. at 827. A physician must be licensed in a particular state to provide care in that state; where that is true and the care is provided via telehealth, such care is subject to the laws of the state in which the patient resides.   Texas cannot infringe upon those laws by applying its own statutes in that circumstance without also running afoul of the prohibitions against regulation of interstate commerce.   *Dennis v. Higgins*, 498 U.S. 439 (1991) (state statute taxing only out-of-state registered vehicles violated Commerce Clause, and Section 1983 suit was properly brought for redress).   Telehealth services provided to patients located outside of Texas by medical professionals located in Texas therefore cannot be the basis criminal or civil penalty under Texas law, and Defendants should be restrained enforcing its laws in that manner.

---

[22] "Include Place of Service (POS) equal to what it would have been had the service been furnished in person."   Billing and coding Medicare Fee-for-Service claims | Telehealth.HHS.gov; https://telehealth.hhs.gov/providers/billing-and-reimbursement/billing-and-coding-medicare-fee-for-service-claims/#coding-claims-during-covid-19, last accessed on August 23, 2022.

6.     **The Pre-*Roe* statutes cannot criminalize any conduct because they were already repealed by implication.**

In addition to being unconstitutional, the Pre-*Roe* Statutes are wholly unenforceable because they were repealed by implication. "[R]epeals by implication are not favored, . . . and will not be found unless an intent to repeal is clear and manifest." *Rodriguez v. United States*, 480 U.S. 522, 524 (1987).  A clear and manifest intent, however, may be inferred from the existence of an irreconcilable conflict.  *Id.*  An irreconcilable conflict exists between two statutes when there is a "positive repugnancy between them or. . .they cannot mutually coexist." *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155 (1976).

Similarly, in Texas "a statute may be repealed expressly or by implication."  *Gordon v. Lake*, 356 S.W.2d 138, 139 (Tex. 1962).  "Where a later enactment is intended to embrace all the law upon the subject with which it deals, it repeals all former laws relating to the same subject." *Id*.  When "a subsequent statute, revising the subject matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must operate to repeal the former, to the extent to which its provisions are revised and supplied." *Bryan v. Sundburg*, 5 Tex. 418 at 423 (1849).  Therefore, "laws relating to the same subject should be considered as though incorporated in the same act."  *Gordon*, 356 S.W.2d at 139..

In *McCorvey v. Hill*, 385 F.3d 846, 849 (5th Cir. 2004), the Fifth Circuit Court of Appeals examined the issue and found that "[t]he Texas statutes that criminalized abortion (former Penal Code Articles 1191, 1192, 1193, 1194 and 1196) and were at issue in *Roe* have, at least, ***been repealed by implication***." (emphasis added).  After *Roe*, the Texas legislature passed numerous abortion regulations including its comprehensive set of civil regulations governing the availability of abortions for minors and practices and procedures of abortion clinics.  *Id*.  Since the regulatory provisions could not be "harmonized with provisions that purport to criminalize abortion," the

court found that the legislature had repealed its Pre-*Roe* ban by implication. *Id*. Because the Texas legislature repealed its statutes that criminalized abortion by implication, the Pre-*Roe* Statutes are unenforceable.

Defendant Paxton and other state actors assert that because there was no explicit repeal of the Pre-*Roe* Statutes, they are operative following *Dobbs*. *See* Exs. L-U. But this is inconsistent with a court's power to find that a statute has been repealed by implication. Defendants cannot merely revive a repealed statute by expressing their, or the legislature's intent, to revive the statute. *Fleming Foods of Texas*, *Inc. v. Rylander*, 6 S.W.3d 278, 286 (Tex. 1999) ("General statements of the Legislature's intent cannot revive repealed statutes or override the clear meaning of a new, more specific statute."). Therefore, the Pre-*Roe* statutes have been repealed by implication and cannot impose any criminal penalties on Plaintiffs at all.

**7.   The Pre-*Roe* Statutes and the Trigger Ban irreconcilably conflict.**

Even if the Pre-*Roe* Statutes have not been impliedly repealed by the State's 50 years of abortion-regulating laws, the Pre-*Roe* Statutes and the Trigger Ban are clearly inconsistent and attempt to regulate/criminalize the same subject and conduct. For example, Article 4512.1 of the Pre-Roe Statutes provides:

> If any person shall designedly administer to a pregnant woman or knowingly produce to be administered with her consent any drug or medicine, or shall use towards her any violate or means whatever externally or internally applied, and thereby procure an abortion, he shall be confined in the penitentiary not less than two nor more than five years; . . . .

TEX. REV. STATS. ANN. ART. 4512.1 (1974). And Section 170A.004(a) of the Trigger Ban broadly states: "A person may not knowingly perform, induce, or attempt an abortion." TEX. HEALTH. & SAFETY CODE §170A.004(a).

Both the Pre-*Roe* Statutes and Trigger Ban criminalize the intent to attempt,  perform, and induce or procure an abortion, yet proscribe conflicting criminal penalties.  For example, the Pre-*Roe* Statutes distinguish between an abortion with consent from the pregnant person and one without.  An abortion performed, or attempted, with the consent of the pregnant person is penalized by incarceration of 2 to 5 years, but doubles when the act was performed without consent.  TEX. REV. STATS. ANN. ART 4512.1 (1974).  The Trigger Ban criminalizes the same conduct of performing an abortion, but makes no such distinction regarding consent.  Instead, it provides that an attempted but failed abortion is a second-degree felony, which under the Texas Penal Code is punishable for up to 20 years in prison, and that a successful abortion is a first-degree felony, punishable by up to life in prison.  *See* TEX. PENAL CODE § 12.33 (2009).

The Trigger Ban criminalizes the same subject/conduct and does not attempt to bridge any gaps or clarify any provision of the Pre-*Roe* Statutes. The Trigger Ban itself therefore supersedes the Pre-*Roe* Statutes.  *Gordon*, 356 S.W.2d at 139.  Bald statements mandating explicit repeal of the Pre-*Roe* Statutes in later legislation are insufficient to prevent the earlier of two clearly conflicting statutes from being repealed.  Any argument that explicit repeal is required fails and is inconsistent with both state and federal law examining the issue.  *Weeks v. Connick*, 733 F. Supp. 1036, 1039 (E.D. La. 1990) ("Neither party has cited nor has this court found any cases to support the state's argument that a bald statement of a contrary legislative intent can prevent the earlier of two clearly conflicting statutes from being repealed."); *Rylander*, 6 S.W.3d at 286 ("General statements of the Legislature's intent cannot revive repealed statutes or override the clear meaning of a new, more specific statute.").

8.    **Section 4 of SB8 is unenforceable because it is preempted by 42 U.S.C. § 1988 and is also unconstitutional.**

a.    *SB8's Fee-Shifting Provision is Preempted by Federal Law*

Under the Supremacy Clause, when "state and federal law directly conflict, state law must give way." *PLIVA, Inc.*, 564 U.S. at 617-18 (citation and internal quotation marks omitted). A conflict exists "when compliance with both state and federal law is impossible, or when the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress.'" *United States v. Locke*, 529 U.S. 89, 109 (2000) (*quoting California v. ARC America Corp.*, 490 U.S. 93, 100-01 (1989); *Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323, 330 (2011); *see also United States v. Zadeh*, 820 F.3d 746, 751 (5th Cir. 2016).

Section 1988 governs attorney's fees awards in federal civil rights actions, regardless of whether those claims are raised in state or federal court. It provides that in "any action" to enforce Section 1983 and other covered civil rights statutes, the court "may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). As the Supreme Court has held, this provision grants a right to a prevailing plaintiff to "ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); *see also Lefemine v. Wideman*, 568 U.S. 1, 5 (2012) (per curiam); *Grisham v. City of Fort Worth*, 837 F.3d 564, 568 (5th Cir. 2016). But a prevailing defendant in a Section 1983 case may recover attorney's fees from the plaintiff "only if the district court finds that the plaintiffs action was frivolous, unreasonable, or without foundation." *Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (per curiam). This specific limitation ensures that a non-prevailing plaintiff has a right to bring their civil rights claims without fear of incurring the other side's fees and costs.

Section 4 of SB8 directly conflicts with Section 1988.  Specifically, Section 4 – which is codified as Section 30.022 of the Texas Civil Practice and Remedies Code – allows a defendant who loses an abortion-related Section 1983 case and is permanently enjoined from enforcing a challenged statute to still recover fees from a civil rights plaintiff.  TEX. CIV. PRAC. & REM. CODE § 30.022(b).  This availability of attorneys' fees for a defendant cannot be reconciled with Section 1988, which limits a defendant's recovery to reasonable attorney's fees only where the defendant truly prevails, and where such fees are "incurred because of," and "only because of, a frivolous claim" by the civil rights plaintiff.  *Fox v. Vice*, 563 U.S. 826, 836 (2011).

SB8's broad definition of a "prevailing party" also directly conflicts with federal law.  Essentially, anything less than a complete victory on all claims for the plaintiff challenging an abortion statute or regulation renders the defendant the prevailing party.  TEX. CIV. PRAC. & REM. CODE § 30.022(b).  This directly conflicts with the federal law where "parties are ordinarily required to bear their own attorney's fees—the prevailing party is not entitled to collect from the loser." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res*., 532 U.S. 598, 602 (2001) (citation omitted).  It further conflicts with federal law noting that "prevailing party" is a "term of art" and requires at least some "alteration in the legal relationship of the parties."  *Id*. at 603-05.  Therefore, compliance with both SB8's definition and federal law is impossible.

Section 4 of SB8 also conflicts with Section 1988's fee regime.  Under Section 1988 a request for attorney's fees must be made in the "action or proceeding to enforce" a federal civil rights statute, including Section 1983, and that the fees, where assessed, are allowed only "as part of the costs." 42 U.S.C. § 1988(b).  A motion for fees and costs must be filed within 14 days of the judgment, or it is waived.  *Romaguera v. Gegenheimer*, 162 F.3d 893, 895 (5th Cir. 1998),

*decision clarified on denial of reh'g*, 169 F.3d 223 (5th Cir. 1999); *United Indus., Inc. v. Simon-Hartley, Ltd*., 91 F.3d 762, 766 (5th Cir. 1996).  In contrast, SB8's cause of action for fees and costs may be brought in an entirely new proceeding before a different judge *within three years* of any substantive claim resolution.  TEX. CIV. PRAC. & REM. CODE § 30.022(c).  Again, compliance with both SB8 and Section 1988's fee regime is impossible.

Courts considering state laws governing imposition of attorney's' fees and costs in favor of prevailing defendants have likewise held that those laws were preempted by Section 1988 or analogous federal fee-shifting provisions.  *See, e.g*., *State v. Golden's Concrete Co*., 962 P.2d 919, 926 (Colo. 1998) (en banc) (finding that because the state statute "mandates the award of attorney fees to a prevailing defendant, while 42 U.S.C. § 1988 permits an award of attorney fees to a prevailing defendant in limited circumstances, the Colorado statute conflicts with federal law . . . [t]hus, we hold that 42 U.S.C. § 1988 preempts the operation of [the state statute] as to the section 1983 claim in this case."); *Hubbard v. SoBreck*, LLC, 554 F.3d 742, 746-47 (9th Cir. 2009) (holding that a mandatory award of fees to prevailing defendants under the California Disabled Persons Act was inconsistent with, and therefore preempted by, the fee-shifting standard applicable to the Americans with Disabilities Act).  Accordingly, Plaintiffs are likely to succeed on the merits of their claims finding that Section 4 of SB8 is preempted by Section 1988.

### b.     SB8's Joint and Several Fee Provision is also Unconstitutional

SB8's fee-shifting deterrence scheme also violates Plaintiffs' First Amendment rights to freedom of speech and to petition the courts.

### i.     Section 30.022 Violates Plaintiffs' Freedom of Speech

Section 30.022 also violates Plaintiffs' freedom of speech and is subject to strict scrutiny because it is a viewpoint and content-based restriction.  *Barr v. Am. Ass'n of Pol. Consultants, Inc*,

140 S. Ct. 2335, 2346 (2020); *Reed v. Town of Gilbert, Ariz*., 576 U.S. 155, 164 (2015); *. see also Simon & Schuster*, 502 U.S. at 115 ("A statute is presumptively inconsistent with the First Amendment if it imposes a financial burden on speakers because of the content of their speech."). SB8 specifically punishes litigants for challenges to the enforcement of laws that "regulate[] or restrict[] abortion" or laws that provide funding to entities who "perform or promote" abortion because of the content of their advocacy.  *See* TEX. CIV. PRAC. & REM. CODE § 30.022.   In contrast, SB8 does not impose any penalty on litigants whose goal is to uphold laws or to restrict access to abortion.  *Cf. Compl., Davenport v. City of Fort Worth*, No. 4:20-cv-00379 (N.D. Tex. Apr. 23, 2020), ECF No. 1 (seeking declaratory and injunctive relief against abortion providers and the municipality to prevent abortion during the Covid-19 pandemic); *Scheideman v. City of Fort Worth*, No. 017-316515-20 (*Tarrant Cnty. Dist. Ct*. filed Apr. 17, 2020) (same).  Because SB8 seeks to suppress Plaintiffs' pro-choice views in direct opposition to the Defendants' and the Texas Legislature's self-proclaimed anti-choice stance on abortion, it is a viewpoint and content-based restriction subject to strict scrutiny

Section 30.022 fails under strict scrutiny review.  Texas has no valid interest in insulating its unconstitutional laws from judicial review.  *Legal Services Corp. v. Velazquez*, 531 U.S. 533, 545 (2001).  Nor does the State have a legitimate or compelling, interest in punishing advocates with whom it disagrees.  *U.S. Dept. of Agriculture v. Moreno*, 413 U.S. 528, 534 (1973). Additionally, the broad fee-shifting provision that almost certainly guarantees attorneys' fees for a party opposing a pro-choice plaintiff or defendant is antithetical to narrow tailoring.  *See United States v. Playboy Ent. Grp., Inc*., 529 U.S. 803, 813 (2000) (where a "less restrictive alternative would serve the Government's purpose" in adopting a content-based restriction on speech, "the legislature must use that alternative").

## ii.        *Section 30.022 Violates the Right to Petition*

The First Amendment guarantees the right to petition the courts for redress of grievances. "Petitions to the government assume an added dimension when they seek to advance political, social, or other ideas of interest to the community as a whole." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 395 (2011).  Accordingly, a state may not restrict the right to petition based on the content or viewpoint of a petitioner or to insulate an unconstitutional act from review.  *See City of Cuyahoga Falls v. Buckeye Cmty. Hope Found*., 538 U.S. 188, 196 (2003); *Velazquez*, 531 U.S. at 548; *S. Christian Leadership Conf. v. Sup. Ct. of La*., 252 F.3d 781, 792 (5th Cir. 2001).

Here, Section 30.022 is designed to insulate all Texas abortion restrictions from judicial challenge by deterring even meritorious lawsuits.   Under Section 30.022, if someone challenges a Texas abortion restriction and does not prevail on any one of their claims, their opponent is deemed the "prevailing" party entitled to have their attorneys' fees paid.  TEX. CIV. PRAC. & REM. CODE § 30.022(a)-(c).   This means that successful challengers could still be forced to pay fees even when they obtain full relief against an unconstitutional restriction, simply because one claim was dismissed.  *Id*. § 30.022(b)(1).  It imposes an unnecessarily high standard for no other purpose than to deter any challenge to the constitutionality of Texas's abortion statutes and regulations. The Constitution, however, does not permit a state to constrain non-frivolous legal theories and claims available to civil rights litigants.  *Velazquez,* 531 U.S. at 548.

## C.        **Without injunctive relief, Plaintiffs are likely to suffer irreparable harm.**

The threatened violation of constitutional rights constitutes irreparable harm.  *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) (threatened violation of First Amendment rights); *Opulent Life Church v. City of Holly Springs, Miss.,* 697 F.3d 279, 295 (5th Cir. 2012); *De Leon v. Perry*, 975 F. Supp. 2d 632, 663 (W.D. Tex. 2014), *aff'd sub nom. De Leon v. Abbott,* 791 F.3d 619 (5th Cir.

2015) ("Federal courts at all levels have recognized that violation of constitutional rights constitutes irreparable harm as a matter of law."); 11A Charles Alan Wright, et al., Federal Practice & Procedure § 2948.1 (3d ed. 2013) ("When an alleged deprivation of a constitutional right is involved, . . . most courts hold that no further showing of irreparable injury is necessary.").  Thus, in demonstrating a likelihood of success on the merits of their constitutional claims, Plaintiffs have also demonstrated that, in the absence of an injunction, they and their staff are likely to suffer irreparable harm as their constitutionally-protected speech and conduct will be chilled.

Harm is irreparable if traditional legal money damages are inadequate relief. *Six Kingdoms Enterprises, LLC v. City of El Paso, Tex.,* No. EP-10-CV-485-KC, 2011 WL 65864, at *9 (W.D. Tex. Jan. 10, 2011). The direct threats being posed by State actors against Plaintiffs are stifling Plaintiffs' ability to engage in their mission, and dramatically burdening their ability to freely exercise their constitutional rights.  Plaintiffs are an individual medical provider and small nonprofit organizations with limited resources, whose very existence would be jeopardized by having to defend against unconstitutional laws. "[A]n injury that threatens to terminate a franchise or otherwise threatens a party's ability to continue in business can constitute an irreparable injury." *Id.* at *9 (citing cases).

Each Plaintiff has put a declaration into the record establishing the irreparable harm to its organization or herself.  Plaintiffs' ability to accomplish their professional missions is compromised by the chilling effect of enforcement threats that exceed the constitutional guardrails guaranteed to Plaintiffs (and all others).  The enforcement and threats of enforcement of the Pre-*Roe* Statutes and Trigger Ban, even if prosecutions are ultimately unsuccessful, irreparably harm Plaintiffs by damaging their abilities to serve Texans in need, damaging relationships with their donors, employees and volunteers, and even by chilling their ability to speak freely in a public

forum without threats of government harassment or targeting.  *See Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965) ("Moreover, we have not thought that the improbability of successful prosecution makes the case different. The chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospects of its success or failure.").

**D.    The remaining factors – the balance of equities and public interest – weigh in favor of injunctive relief.**

The "public interest" prong tests whether an injunction serves or disserves the public interest, but the Supreme Court generally considers this factor together with the balance of equities fcactor when deciding in which direction (for or against injunction) the balance tips.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 26 (2008) (deciding that the balance of equities and public interest together weighed in favor of Navy and against injunction where public interest of national defense in accurate anti-submarine training was balanced against difficult-to-calculate environmental harms). Where constitutional rights are concerned, "enforcement of an unconstitutional law is always contrary to the public interest[.]" *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013); *see also Vote.org v. Callanen,* No. SA-21-CV-00649-JKP, 2022 WL 2181867, at *17 (W.D. Tex. June 16, 2022) ("Injunctions protecting constitutional freedoms are always in the public interest.") (*citing Texans for Free Enter. v. Tex. Ethics Comm'n,* 732 F.3d 535, 539 (5th Cir. 2013)).

The public interest cannot be served by permitting an extremist interpretation of old and new statutes to intimidate and coerce the public to forego their constitutional rights.  The Pre-*Roe* Statutes were largely passed before women and racial minorities even had the right to vote, and have not been enforced in fifty years.  The Trigger Ban has never yet been in effect, and its halting as to the constitutional conduct of Texans cannot harm the public interest.  In the dawning of an

entirely new era of jurisprudence, the public interest is best served by a careful and constitutionally sound enforcement of the law.  *Austin Div. Dep't of Texas v. Texas Lottery Comm'n*, No. A-10-CA-465-SS, 2010 WL 11597747, at *3 (W.D. Tex. Dec. 14, 2010) ("Further, '[a] government's constituents have a vested interest in their government enacting [and enforcing] constitutionally sound laws.'") (citation omitted).

The balance of equities also tips in Plaintiffs' favor because the injuries that Plaintiffs are suffering – the ongoing deprivation of their constitutional rights while this case is pending – far outweigh any injury to Defendants from having to delay enforcement of the challenged laws.  *See De Leon*, 975 F. Supp. 2d at 664 (holding that threatened injuries to individual constitutional rights outweighed any harm to state officials from enjoining enforcement of legislation).  Unlike Plaintiffs who are already suffering irreparable harm, Defendants will not be injured by the requested injunction.

 First, Defendants have no right to prosecute or seek civil penalties from Plaintiffs under unconstitutional state statutes and enjoining them from doing something they has no right to do is not an injury.  Second, even if this Court ultimately determines that Plaintiffs are wrong and that the statutes at issue do not violate that U.S. Constitution and federal law, temporarily enjoining Defendants from bringing criminal charges or other cases related to or arising under the Pre-*Roe* Statutes and Trigger Ban does not injure the State's ability to later file such claims.  By contrast, the injury to Plaintiffs is and will be profound if the State's threats come to fruition in the form of criminal prosecutions or civil penalty cases.  The Plaintiffs' very existence and the freedom of their employees and volunteers are at stake.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiffs request a temporary restraining order preventing

Defendants from pursuing any criminal prosecutions against Plaintiffs for any conduct related to an abortion that is obtained outside of the State of Texas, and request that the Court set a hearing on their motion for preliminary injunction at its earliest convenience.  Plaintiffs further request any other relief to which they may be entitled.

Dated: August 23, 2022                    Respectfully submitted,

                                          By: */s/ Jennifer R. Ecklund*
                                              Jennifer R. Ecklund
                                              Texas Bar No. 24045626
                                              jecklund@thompsoncoburn.com

                                              Elizabeth G. Myers
                                              Texas Bar No. 24047767
                                              emyers@thompsoncoburn.com

                                              Allyn Jaqua Lowell
                                              Texas Bar No. 24064143
                                              alowell@thompsoncoburn.com

                                              John Atkins
                                              Texas Bar No. 24097326
                                              jatkins@thompsoncoburn.com

                                              Elizabeth Rocha
                                              Texas Bar No. 24127242
                                              erocha@thompsoncoburn.com

                                              **THOMPSON COBURN LLP**
                                              2100 Ross Avenue, Suite 3200
                                              Dallas, Texas 75201
                                              Telephone: 972/629-7100
                                              Facsimile: 972/629-7171


                                              Alexandra Wilson Albright
                                              Texas Bar No. 21723500
                                              aalbright@adjtlaw.com

                                              Marcy Hogan Greer
                                              Texas Bar No. 08417560
                                              mgreer@adjtlaw.com

                                              515 Congress Ave., Suite 2350
                                              Austin, TX 78701-3562
                                              Telephone: 512/482-9300
                                              Facsimile: 512/482-9303


                                              Kevin Dubose
                                              Texas Bar No. 06150500

kdubose@adjtlaw.com
1844 Harvard Street
Houston, TX 77008
Telephone: 713/523-2358
Facsimile: 713/522-4553

Kirsten M. Castañeda
Texas Bar No. 00792401
kcastaneda@adjtlaw.com
8144 Walnut Hill Lane, Suite 1000
Dallas, TX 75231-4388
Telephone: 214/369-2358
Facsimile: 214/369-2359

**ALEXANDER DUBOSE &
JEFFERSON, LLP**

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I certify that this document was filed electronically on August 23, 2022, with the clerk of the Court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court.

/s/ *Jennifer R. Ecklund*
Jennifer R. Ecklund