UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

|  |  |  |
|---|---|---|
| FUND TEXAS CHOICE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil No. 1:22-cv-859-RP |
| | ) | |
| KEN PAXTON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**[PROPOSED]** *AMICI CURIAE* **BRIEF OF THE STATES OF CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, HAWAI'I, ILLINOIS, MAINE, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OREGON, PENNSYLVANIA, RHODE ISLAND, WASHINGTON, AND THE DISTRICT OF COLUMBIA IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

ROB BONTA
Attorney General of California
RENU R. GEORGE
Senior Assistant Attorney General
KARLI EISENBERG
Supervising Deputy Attorney General
LAUREN ZWEIER
ANNA RICH*
Deputy Attorneys General
  1515 Clay Street, 20th Floor
  P.O. Box 70550
  Oakland, CA  94612-0550
  Telephone: (510) 879-0296
  Email: Anna.Rich@doj.ca.gov
*Attorneys for State of California*

Dated: September 23, 2022

**pro hac vice* application pending

*(Additional counsel are listed on signature page)*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND INTERESTS OF *AMICI CURIAE* ........................................ 1

SUMMARY OF THE ARGUMENT .......................................................................... 2

ARGUMENT .................................................................................................................. 4

    I.    The U.S. Constitution Protects the Right to Travel Across State Borders, Including for Purposes Related to Legal Abortion Care ......... 4

    II.    Deterring Abortion-Related Travel Harms Amici States and the Public Health ...................................................................................................... 8

CONCLUSION ............................................................................................................... 14

## TABLE OF AUTHORITIES

**CASES**

*Aptheker v. Secretary of State*
378 U.S. 500 (1964) ................................................................................4, 6

*Att'y Gen. of New York v. Soto-Lopez*
476 U.S. 898 (1986)..................................................................................6

*BST Holdings, LLC, v. Occupational Safety and Health Admin.*
17 F.4th 604 (5th Cir. 2021) ....................................................................9

*Crandall v. State of Nevada*
73 U.S. 35 (1867)......................................................................................4

*Dobbs v. Jackson Women's Health Org.*
142 S.Ct. 2228 (2022).................................................................... *passim*

*Edwards v. California*
314 U.S. 160 (1941) ..................................................................................7

*Hicklin v. Orbeck*
437 U.S. 518 (1978)..................................................................................8

*Kent v. Dulles*
357 U.S. 116 (1958)..................................................................................4

*Los Angeles v. Lyons*
461 U.S. 95 (1983)....................................................................................8

*Mem. Hosp. v. Maricopa Cnty*
415 U.S. 250 (1974)..................................................................................8

*Saenz v. Roe*
526 U.S. 489 (1999)..........................................................................4, 5, 8

*Shapiro v. Thompson*
394 U.S. 618 (1969)..............................................................................4, 6

*Supreme Ct. of New Hampshire v. Piper*
470 U.S. 274 (1985)..................................................................................8

*Toomer v. Witsell*
334 U.S. 385 (1948)..................................................................................8

*United States of America v. Idaho*
No. 1:22-cv-00329-BLW, ECF No. 51-1 (D. Id. Aug. 16, 2022)............12

*United States v. Texas*
    566 F.Supp.3d 605 (W.D. Tex. 2021)......................................................................10

*Whole Woman's Health v. Jackson*
    No. 1:21-cv-00616-RP ......................................................................................11

**STATUTES**

775 ILCS 55/1-15, 1-20 ............................................................................................7

42 U.S.C.
    § 1395dd...................................................................................................12

22 M.R.S.
    § 1597-A ...................................................................................................7

22 M.R.S.
    § 1598(1)...................................................................................................7

Cal. Health & Saf. Code
    § 123462...................................................................................................7

Mass. Gen. Ls. c. 12
    § 11I 1/2(b) ...............................................................................................7

N.Y. Pub. Health L.
    § 2599-aa(2)...............................................................................................7

Wash. Rev. Code
    § 9.02.100(2)-(3)..........................................................................................7

**CONSTITUTIONAL PROVISIONS**

U.S. CONST.
    Article I, § 8 .............................................................................................5
    Article IV, § 2 ......................................................................................5, 7, 8
    Amendment XIV, § 1 ..................................................................................5, 7

**OTHER AUTHORITIES**

Am. Coll. of Obstetricians and Gynecologists, *Facts are Important: Abortion Is Healthcare* (last visited Sept. 22, 2022)........................................................................13

Am. Coll. of Obstetricians and Gynecologists, *Facts Are Important: Understanding Ectopic Pregnancy* (last visited Sept. 22, 2022) .............................................12

Gov. Charlie Baker, *Governor Baker Signs Legislation Further Protecting Access to Reproductive Health Care Services* (July 29, 2022)...............................................9

Philip Bump, *What the Ohio Rape Case Tells Us About Post-Roe Abortion Politics*, Washington Post (July 14, 2022)................................................................3

Cal. Dep't of Health Care Services, Letter No. 15-23, *Residency for Out-of-State Students* (July 9, 2015)................................................................12

Cong. Globe, 39th Cong., 1st Sess. 475 (1866) ................................................................4-5

Diana Greene Foster, et al., *Socioeconomic Outcomes of Women Who Receive and Women Who are Denied Wanted Abortions in the United States*, Am. J. Pub. Health 103, no. 3 (2018) ................................................................11

Sarah Friedmann, *What A Medical Emergency For An Abortion Actually Means, According To OB/GYNs*, Bustle (June 6, 2019)................................................................13

Attorney General Merrick B. Garland, *Statement on Supreme Court Ruling in Dobbs v. Jackson Women's Health Organization* (June 24, 2022) ............................................9

Caitlin Gerdts, et al., *Side Effects, Physical Health Consequences, and Mortality Associated with Abortion and Birth after an Unwanted Pregnancy*, Women's Health Issues (2016) ................................................................11

Gov. Michelle Lujan Grisham, *Gov. Lujan Grisham Signs Executive Order Expanding Access to Reproductive Health Care in New Mexico* (Aug. 31, 2022) ................................................................9

Daniel Grossman et al., *Self-Induction of Abortion Among Women in the United States*, 18(36) Reprod. Health Matters 136, 143 (2010) ............................................11

Caroline Kitchener and Devin Barrett, *Antiabortion Lawmakers Want to Block Patients from Crossing State Lines*, Washington Post (June 30, 2022)....................................3

Gov. Gavin Newsom, *West Coast States Launch New Multi-State Commitment to Reproductive Freedom, Standing United on Protecting Abortion Access* (June 24, 2022) ................................................................9

Kathryn M. McKenney et al., *Patient Navigation Across the Spectrum of Women's Health Care in the U.S.*, Am. J. Obstet. Gynecol. No. 218(3) (Mar. 2018) ................................................................14

Gov. JB Pritzker, *Gov. Pritzker Announces Medicaid Reimbursement Increases and Expanded Title X Funds for Reproductive Health Care Providers* (Aug. 4, 2022) ................................................................9

Reuters Fact Check, *Fact Check-Termination of Pregnancy Can Be Necessary to Save a Woman's Life, Experts Say*, Reuters (Dec. 27, 2021) ...........................................12, 13

iv

Sarah C.M. Roberts, et al., *Risk of Violence from the Man Involved in the Pregnancy After Receiving or Being Denied an Abortion*, BMC Medicine (2014)..........................................................................................................11

Claire Suddath, *A Very Dangerous Place to Be Pregnant Is Getting Even Scarier*, Bloomberg (Aug. 4, 2022)..........................................................................10

U.S. Dept. of Health & Human Servs., *Projections of Supply and Demand for Women's Health Service Providers: 2018-2030* (Mar. 2021) ...................................13

White House, *Remarks by President Biden on the Supreme Court Decision to Overturn* Roe v. Wade (June 24, 2022) ..................................................................9

Mikaela H. Smith, et al., *Abortion Travel Within the United States: An Observational Study of Cross-state Movement to Obtain Abortion Care in 2017*, The Lancet (Mar. 3, 2022) ..........................................................................10

Maanvi Singh, *Even in Abortion "Safe Havens" Finding Care Can Be Challenging: 'It's a System Already Strained*, The Guardian (May 13, 2022) ......................13

## INTRODUCTION AND INTERESTS OF *AMICI CURIAE*

The States of California, Colorado, Connecticut, Delaware, Hawaiʻi, Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, New York, North Carolina, Oregon, Pennsylvania, Rhode Island, Washington, and the District of Columbia submit this amicus curiae brief in support of Plaintiffs' motion to halt enforcement of Texas's abortion laws to the extent that they violate the federal constitutional right to interstate travel by impeding the movement of individuals across Texas state lines.

Amici States have a strong interest in preserving the right to interstate travel. Thousands of Amici States' residents live in Texas to attend college, go to graduate school, or to serve as temporary workers; millions of others enter Texas as visitors each year. Amici States have a significant interest in ensuring that those residents may leave Texas and return to their home state to access time sensitive, lawful, and safe medical care, including abortions. We also have an interest in preserving those residents' right to travel to Amici States to provide abortion services or to accompany a patient in need of abortion care. And more generally, as states that are committed to protecting access to reproductive healthcare, Amici States have a profound interest in preserving the right to travel for the millions of individuals living in states with restrictive abortion laws that are applied to limit interstate travel, which is critical. Texas's anti-abortion laws—and Texas lawmakers' threats to use those laws to restrict travel outside their state borders—pose a substantial threat to the liberty and safety of those individuals who may need to exit Texas under sometimes urgent circumstances.

Amici States also serve as providers or administrators of healthcare services to millions of individuals and offer a full range of reproductive services, including abortion. Amici States own and operate public hospital systems, employ individual healthcare personnel, and license

1

and regulate the many other health care providers that operate within our jurisdictions. Generally, Amici States' healthcare systems are open to patients regardless of their state of origin or residence when they seek emergency services within our borders, including abortions and other reproductive healthcare. As healthcare providers, Amici States maintain a strong interest in the health, safety, and liberty of all patients in our healthcare systems, including any students, traveling workers, or visitors from Texas. Amici States likewise have an interest in safeguarding the ability of clinicians licensed by our States' medical boards to practice medicine within our jurisdictions, including licensees like Plaintiff Dr. Moayedi who are also permanent Texas residents. Amici States have a powerful stake in ensuring that participants in our healthcare systems are not chilled by the threat of criminal liability or costly litigation from traveling out of Texas into our jurisdictions to engage in conduct that complies with our state laws.

## SUMMARY OF THE ARGUMENT

Texas's abortion laws unlawfully interfere with the federal constitutional right to interstate travel. For at least a century and a half, the United States Supreme Court has recognized that the right to travel is a fundamental liberty, rooted in the Commerce Clause, Equal Protection Clause, Due Process Clause, and the Privileges and Immunities Clauses of the federal Constitution. Yet Plaintiffs explain that they have been chilled by the risk of ruinous criminal and civil liability under Texas's antiabortion laws from traveling out of Texas to other states to engage in abortion-related conduct. Texas lawmakers have explicitly admitted that was the intent in passing their anti-abortion laws: they have acknowledged that they seek to impede an individual's ability to travel across state lines to obtain an abortion, to provide an abortion, or

2

to support a patient in need of an abortion.[1]  Texas lawmakers do not stand alone, as state leaders elsewhere have also explored legislation and other opportunities to deter interstate travelers who obtain, provide, or support abortion access outside their borders.[2]  These efforts are unlawful: the federal Constitution's right to travel allows freedom of movement across state boundaries and guarantees visitors in a state the same privileges and immunities enjoyed by residents of those states.  Texas's attempt to burden such travel under the circumstances presented in this case represents an unconstitutional intrusion into individual liberty interests.

Texas's interference with an individual's right to travel when the purpose of that travel involves legal, out-of-state abortions results in irreparable harms, both within and beyond Texas borders.  Texas's laws are likely to cause unwanted pregnancies, imposing grave socioeconomic and health consequences, including complications resulting in death.  Texas's laws criminalizing interstate travel by abortion providers or the companions of individuals seeking abortions out of state also harm the individuals most in need of extra support, including individuals from low-income, rural, and underserved communities.  The Court should grant the preliminary injunction.

---

[1] *See, e.g.*, Compl. Ex. A (warning private entity of legal liability for supporting workers who travel interstate in order to obtain an abortion).

[2] *See, e.g.*, Philip Bump, *What the Ohio Rape Case Tells Us About Post-Roe Abortion Politics*, Washington Post (July 14, 2022), https://www.washingtonpost.com/politics/2022/07/14/what-ohio-rape-case-tells-us-about-post-roeabortion-politics/ (describing Indiana Attorney General's desire to discipline doctor who provided an abortion to a 10-year old rape victim from Ohio); Caroline Kitchener and Devin Barrett, *Antiabortion Lawmakers Want to Block Patients from Crossing State Lines*, Washington Post (June 30, 2022), https://www.washingtonpost.com/politics/2022/ 06/29/abortion-state-lines/ (describing model legislation that would prohibit interstate travel to obtain an abortion).

## ARGUMENT

**I.   The U.S. Constitution Protects the Right to Travel Across State Borders, Including for Purposes Related to Legal Abortion Care**

The U.S. Constitution's guarantee of freedom to travel across state lines is well established, with a provenance founded early in our Nation's history.  While not explicitly enumerated, the right to travel has become over centuries "firmly embedded in our jurisprudence." *Saenz v. Roe*, 526 U.S. 489, 498 (1999) (citing *United States v. Guest*, 383 U.S. 745, 757 (1966)).  It is one of those "select list of fundamental rights that are not mentioned anywhere in the Constitution" that are nevertheless "'deeply rooted in our history and tradition' and . . . essential to our Nation's 'scheme of ordered liberty.'" *Dobbs v. Jackson Women's Health Org.*, 142 S.Ct. 2228, 2246 (2022) (alteration in original); *see also Kent v. Dulles*, 357 U.S. 116, 126 (1958) ("Freedom of movement is basic in our scheme of values.").  "[F]reedom of movement is the very essence of our free society . . . Once the right to travel is curtailed, all other rights suffer." *Aptheker v. Secretary of State*, 378 U.S. 500, 520 (1964) (Douglas, J., concurring).  Both "the nature of our Federal Union and our constitutional concepts of personal liberty . . . require that all citizens be free to travel throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement." *Shapiro v. Thompson*, 394 U.S. 618, 629 (1969) (*overruled on other grounds by Edelman v. Jordan*, 415 U.S. 651 (1974)).

The U.S. Supreme Court formally recognized the right to interstate travel more than 150 years ago, when it struck down a Nevada law that levied a $1 tax on vehicular passengers leaving the state. *Crandall v. State of Nevada*, 73 U.S. 35 (1867).  The Court emphasized that every U.S. citizen has the right to "seek . . . protection" from any state government, "independent of the will of any State over whose soil he must pass in the exercise of" this right. *Id.* at 44; *see also* Cong.

4

Globe, 39th Cong., 1st Sess. 475 (1866) (statement of Sen. Trumbull, Chair of Sen. Judiciary Comm. and drafter of Civil Rights Act) ("[A] person who is a citizen in one State . . . is entitled to . . . the right to travel, to go where he pleases."). One year later, with that decision firmly establishing a right to travel, Congress in 1868 adopted the Fourteenth Amendment prohibiting states from abridging "the privileges or immunities of citizens of the United States," depriving persons of liberty "without due process of law," or denying any person "equal protection of the laws." U.S. CONST. amend. XIV, § 1.

      In the leading right to travel case of the modern era, the Supreme Court identified three different components of this right, each resting on different sources within the Constitution: (1) the "right of a citizen of one State to enter and to leave another State," based on the Commerce Clause, the Equal Protection Clause, and the Due Process Clause; (2) the "right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State," grounded in the Privileges and Immunities Clause of Article IV, Section 2; and (3) "for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State," protected by the Privileges and Immunities Clause of the Fourteenth Amendment. *See Saenz*, 526 U.S. at 500-03 (1999) (describing component of right to travel and collecting cases). The laws challenged in this case, and the Texas lawmakers' proposed enforcement of those antiabortion laws, involve at least two of these three components: the laws deter individuals from crossing state lines to obtain an abortion, provide an abortion, or support a pregnant person seeking an abortion; and the laws implicate the rights of Texas residents under the Privileges and Immunities Clause to seek access as welcome visitors to the same abortions available to Amici States' residents.

Under the circumstances presented in Plaintiffs' complaint, Texas laws that prohibit or punish individuals who engage in interstate travel to obtain an abortion, provide an abortion, or accompany a pregnant person in need of an abortion, would violate those individuals' fundamental right to freedom of movement across state lines. "A state law implicates the right to travel when it actually deters such travel." *Att'y Gen. of New York v. Soto-Lopez*, 476 U.S. 898, 903 (1986). Here, according to Plaintiffs, Texas laws and lawmakers have actually deterred them from out-of-state travel for abortion related purposes. *See, e.g.*, Schilling Decl. ¶¶ 11-12; Moayedi Decl. ¶¶ 6-11. While Texas' Attorney General, in his opposition, claims that plaintiffs are "free to come and go from the State as they please," he also contends that Texas maintains an interest in "criminalization" of abortions as "a means to an end." Resp. to Pls. Mot. for Prelim. Inj. at 23-24. Significantly, Texas asserts that its interest "continues whether the Texan mother seeks an abortion in Denver or Dallas, in Las Cruces or Lamesa" and that Texas may prohibit the travel of "third parties" if that travel "help[s]" a pregnant person who also travels to another state to seek an abortion. *Id.* at 22-23. Notably, too, Texas does not address Dr. Moayedi's claim that she has "stopped traveling and providing abortion care to Texans in any other state" because of Texas's laws. Moayedi Decl. ¶ 6.[3]  Plaintiffs and others similarly situated are thus deprived of what would otherwise be a "virtually unconditional personal right." *Shapiro*, 394 U.S. at 643 (Stewart, J., concurring); *see also Aptheker*, 378 U.S. at 508 (applying a strict standard of review to interference with freedom of movement). In *Dobbs*, Justice Kavanaugh considered the

---

[3] If Texas disclaims an interest in interfering with an individual's ability to freely travel out of Texas—whether as a pregnant person seeking to obtain an abortion, as a doctor seeking to provide an abortion out of state, or as a traveler accompanying a pregnant person out of state to seek an abortion—Texas should say so. But its current refusal to clearly disavow an intent to interfere with that travel only bolsters Plaintiffs' claim that they are chilled from traveling because of Texas's laws.

question of whether a state may legally prevent its residents from traveling to another state for the purpose of obtaining an abortion.  Justice Kavanaugh, who characterized the question as one that was "not especially difficult," concluded "no," a state may not legally thwart interstate travel for abortion because of "the constitutional right to interstate travel."  142 S. Ct. at 2309 (Kavanaugh, J., concurring); *see also Edwards v. California*, 314 U.S. 160, 181 (1941) ("a state statute which obstructs or in substance prevents" the right of free movement "must fall") (Douglas, J., concurring).

Furthermore, any effort by Texas to dictate what kind of healthcare a "welcome visitor" may access within Amici States' borders implicates the values underlying the Privileges and Immunities Clause, which guarantees visitors' access to privileges available to in-state residents. In *Dobbs*, the Supreme Court returned regulation of abortion back to legislatures and states.  142 S.Ct. at 2279.  Nothing in that decision affected laws in Amici States that ensure access to safe and legal abortions.[4]  Amici States have made clear that residents and visitors alike can access abortion services when in our jurisdictions.  Patients, providers, and supporters who travel from Texas therefore can expect to be treated equally as a "welcome visitor rather than an unfriendly

---

[4] *See, e.g.*, Cal. Health & Saf. Code § 123462 (the "state shall not deny or interfere with a woman's fundamental right to choose to bear a child or to choose to obtain an abortion"); 775 ILCS 55/1-15, 1-20 (the state shall not deny, restrict, interfere with, or discriminate against an individual's exercise of the fundamental right to make autonomous decisions about the individual's own reproductive health, including the fundamental right to use or refuse reproductive health care); Mass. Gen. Ls. c. 12 § 11I 1/2(b) ("Access to reproductive health care services and gender-affirming health care services is a right secured by the constitution and laws of the commonwealth. Interference with this right, whether or not under the color of law, is against the public policy of the commonwealth."); N.Y. Pub. Health L. § 2599-aa(2) ("Every individual who becomes pregnant has the fundamental right to choose to carry the pregnancy to term, to give birth to a child, or to have an abortion, pursuant to this article."); 22 M.R.S. § 1598(1) ("It is the public policy of the State that the State not restrict a woman's exercise of her private decision to terminate a pregnancy before viability except as provided in section 1597-A."); Wash. Rev. Code § 9.02.100(2)-(3) ("Every pregnant individual has the fundamental right to choose or refuse to have an abortion," and "the state shall not deny or interfere with a pregnant individual's fundamental right to choose or refuse to have an abortion").

alien" when temporarily present within our borders.[5]  *Cf. Saenz*, 526 U.S. at 501 (noting that Article IV Privileged and Immunities Clause entitles "a citizen of one State who travels in other States" to enjoy "the 'Privileges and Immunities of Citizens in the several States' that he visits") (citation omitted).  Pregnant individuals' right to interstate travel should be entitled to special respect because restrictive Texas laws may make travel to another state imperative.

## II. Deterring Abortion-Related Travel Harms Amici States and the Public Health

Preliminarily enjoining Defendants from interference with Plaintiffs' rights to interstate travel when the purpose of that travel involves abortion would prevent serious harms, both within and beyond Texas' borders.  In addition to preserving Plaintiffs' own rights to travel, an injunction would help safeguard the health and liberty of Amici State residents who are in Texas as students, temporary workers, or visitors and allow them to travel to the Amici States.  An injunction would ensure that providers, patients, and their supporters may engage in activities related to abortion within Amici States' borders in accordance with our own state laws.  And it would guard against Texas's interference with the safety and security of Texas's residents seeking refuge within Amici States' borders.  *See Los Angeles v. Lyons*, 461 U.S. 95, 136 (1983) ("Courts of equity have much greater latitude in granting injunctive relief 'in furtherance of the public interest than . . . when only private interests are involved.'" (quoting *Virginian R. Co. v. Railway Employees*, 300 U.S. 515, 552 (1937)).

---

[5] The Privileges and Immunities Clause right to travel protects nonresidents who enter a State for purposes of obtaining employment or engaging in commerce.  *See Hicklin v. Orbeck*, 437 U.S. 518, 533-34 (1978) (invalidating hiring preference for state residents); *Toomer v. Witsell*, 334 U.S. 385, 401-03 (1948) (invalidating state statute requiring non-resident licensing fees for commercial shrimp fishing).  That right also applies to travel for non-commercial purposes. *Supreme Ct. of New Hampshire v. Piper*, 470 U.S. 274, 282 (1985); *see also Mem. Hosp. v. Maricopa Cnty*, 415 U.S. 250, 258 (1974) (applying heightened scrutiny to state durational residency requirements for coverage of medical care).

8

While Amici States broadly agree that Texas has a general interest in defending its "constitutionally reserved police power over public health policy," *BST Holdings, LLC, v. Occupational Safety and Health Admin.*, 17 F.4th 604, 618 (5th Cir. 2021), that interest does not allow it to unlawfully intrude on the right to interstate travel, including for abortion purposes. That is particularly true in the context of this case, where the public health policies of states on the *receiving* end of interstate movement are at stake.  In the wake of *Dobbs*, Amici States' legislative and executive branch leaders have been vocal about assuring residents and visitors that our States' values and policies safeguard access to reproductive healthcare, including abortion.[6]  At the federal level, the President and Attorney General likewise responded to *Dobbs* by underscoring their commitment to protect an individual's right to travel across state borders for abortion care.[7]  If Texas is allowed to impose significant criminal penalties or other

---

[6] Office of Gov. Michelle Lujan Grisham, *Gov. Lujan Grisham Signs Executive Order Expanding Access to Reproductive Health Care in New Mexico* (Aug. 31, 2022) ((directing funds to establish a reproductive health care clinic in Dona Ana County and directing state agencies to take actions to increase access to abortion care), available at https://www.governor.state.nm.us/2022/08/31/gov-lujan-grisham-signs-executive-order-expanding-access-to-reproductive-health-care-in-new-mexico/; Office of Gov. Gavin Newsom, *West Coast States Launch New Multi-State Commitment to Reproductive Freedom, Standing United on Protecting Abortion Access* (June 24, 2022) available at; https://www.gov.ca.gov/2022/06/24/west-coast-states-launch-new-multi-state-commitment-to-reproductive-freedom-standing-united-on-protecting-abortion-access/; Office of Gov. JB Pritzker, *Gov. Pritzker Announces Medicaid Reimbursement Increases and Expanded Title X Funds for Reproductive Health Care Providers* (Aug. 4, 2022), available at https://www.illinois.gov/news/press-release.25265.html; Office of Gov. Charlie Baker, *Governor Baker Signs Legislation Further Protecting Access to Reproductive Health Care Services* (July 29, 2022), https://www.mass.gov/news/governor-baker-signs-legislation-further-protecting-access-to-reproductive-health-care-services.

[7] The White House, *Remarks by President Biden on the Supreme Court Decision to Overturn Roe v. Wade*, (June 24, 2022), available at https://www.whitehouse.gov/briefing-room/speeches-remarks/2022/06/24/remarks-by-president-biden-on-the-supreme-court-decision-to-overturn-roe-v-wade/ and Attorney General Merrick B. Garland, *Statement on Supreme Court Ruling in Dobbs v. Jackson Women's Health Organization* (June 24, 2022), available at https://www.justice.gov/opa/pr/attorney-general-merrick-b-garland-statement-supreme-court-ruling-dobbs-v-jackson-women-s.

9

substantial burdens on constitutionally-protected travel, predictable harms will result. Abortion care providers residing in Texas, but licensed in other States, will no longer be able to exercise their right to travel interstate and provide medical care in Amici States without imperiling their liberty. Texans traveling out of the state, and Amici States' residents who are students, temporary workers, and visitors to Texas, will find their interstate movements scrutinized and be forced to make decisions about their health and autonomy under the threat of criminal sanctions. And Amici States, and our healthcare systems and providers, will find it harder to protect rights to healthcare within our borders if Texas lawmakers are allowed to interfere with travel to, and healthcare decisions made within, our borders. The requested injunction to assure that individuals may travel across Texas's state line will alleviate those harms.

Texas laws hindering interstate abortion travel also are likely to result in lack of access to or delayed access to abortion, which cause serious harms to public health. Even before the enactment of S.B. 8 and the *Dobbs* decision, state abortion restrictions had already forced many Texans to travel out of state for care.[8] As this Court has observed, the number of individuals choosing to cross state lines for abortion care will likely substantially increase as more severe and punitive abortion restrictions take effect. *See United States v. Texas*, 566 F.Supp.3d 605, 674–677 (W.D. Tex. 2021) (noting likely influx of Texas patients to other states), *stay granted*,

---

[8] Mikaela H. Smith, et al., *Abortion Travel Within the United States: An Observational Study of Cross-state Movement to Obtain Abortion Care in 2017*, The Lancet (Mar. 3, 2022), https://www.thelancet.com/journals/lanam/article/PIIS2667-193X(22)00031-X/fulltext (finding that that in 2017 (before severe restrictions were imposed), more than 2,000 women from Texas crossed state lines in order to obtain an abortion). And pregnant Texans in some areas already experience difficulties accessing needed healthcare, heightening risks associated with labor and delivery. *See* Claire Suddath, *A Very Dangerous Place to Be Pregnant Is Getting Even Scarier*, Bloomberg (Aug. 4, 2022), https://www.bloomberg.com/news/features/2022-08-04/texas-pregnancy-care-worsens-as-maternity-wards-close?leadSource=uverify%20wall (describing Texas hospitals without full time maternity wards and negative impacts on health outcomes).

No. 21-50949 (5th Cir. Oct. 7, 2021), *cert. dismissed*, No. 21-588, 142 S.Ct. 522 (2021).  And if

Texas is allowed to forbid or substantially burden such travel, severe negative health and

socioeconomic consequences will ensue.  Forcing a patient to carry an unwanted pregnancy to

term creates a greatly heightened risk of death, in part due to the dangerous risks of postpartum

hemorrhage and eclampsia.[9]  Physical violence is a further risk, because carrying an unwanted

pregnancy to term can cause a pregnant person to remain in contact with a violent partner.[10]

Lack of access to abortion also results in poorer socioeconomic outcomes, including lower rates

of full-time employment and increased reliance on publicly funded safety-net programs.[11]  And

lack of access to abortion may cause people to attempt self-induction, which can result in grave

long-term medical consequences.[12]  For Amici States, this means coverage of more costly and

---

[9] Caitlin Gerdts, et al., *Side Effects, Physical Health Consequences, and Mortality Associated with Abortion and Birth after an Unwanted Pregnancy*, Women's Health Issues (2016), https://www.sciencedirect.com/science/article/pii/S1049386715001589; *see also Whole Woman's Health v. Jackson*, No. 1:21-cv-00616-RP, Braid Decl. ¶ 17, July 13, 2021, ECF No. 19-8; Gilbert Decl. ¶¶ 30–31; Kumar Decl. ¶ 28  (noting that people who carry a pregnancy to term against their will face a mortality risk fourteen times greater than that associated with abortion and that those with pre-existing conditions will be forced to incur the heightened medical and mental health risks associated with continuing pregnancy unless their condition deteriorates so profoundly that they can satisfy S.B. 8's narrow "medical emergency" exception).

[10] *See* Sarah C.M. Roberts, et al., *Risk of Violence from the Man Involved in the Pregnancy After Receiving or Being Denied an Abortion*, BMC Medicine (2014), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4182793/; *see also Whole Woman's Health v. Jackson*, No. 1:21-cv-00616-RP, Rupani Decl. ¶ 13, July 13, 2021, ECF No. 19-14; Kumar Decl. ¶ 21; Ferrigno Decl. ¶ 26.

[11] *See* Diana Greene Foster, et al., *Socioeconomic Outcomes of Women Who Receive and Women Who are Denied Wanted Abortions in the United States*, Am. J. Pub. Health 103, no. 3, at pp. 407-413 (2018), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5803812/.

[12] Daniel Grossman et al., *Self-Induction of Abortion Among Women in the United States*, 18(36) Reprod. Health Matters 136, 143 (2010), https://pubmed.ncbi.nlm.nih.gov/21111358/ (discussing medical risks associated with self-induced abortion).

more complicated health needs if their residents are unable to freely leave states like Texas to obtain a timely abortion procedure.[13]

An injunction will also help reduce harms to the health of those already traveling out of state, or those with the means to promptly travel to obtain an abortion as treatment for an emergency medical condition.[14]  As this Court is aware, many pregnancy and miscarriage complications can require time-sensitive treatment, including an abortion.  In such circumstances, any failure to provide, or delays in providing, necessary abortion care puts the pregnant patient's life or health at risk.[15]  One physician explained that a clear sign of uterine infection can be life threatening "because there is an extremely high risk that the infection inside

_____

[13] For example, California's Medi-Cal program covers both individuals attending school or university in California who plan to return to their original state of residence, as well as individuals who have Medi-Cal coverage but are temporarily attending school out of state.  *See* Cal. Dep't of Health Care Services, Letter No. 15-23, *Residency for Out-of-State Students* (July 9, 2015), available at https://www.dhcs.ca.gov/services/medi-cal/eligibility/letters/Documents/c15-23.pdf.  California therefore has a direct financial interest in ensuring that these students for whom the state bears financial responsibility have timely access to abortion care, including the ability to travel to receive such care if necessary.

[14] The Emergency Medical Treatment and Labor Act (EMTALA), 42 U.S.C. § 1395dd, requires hospitals that operate an emergency department and participate in Medicare to provide stabilizing medical treatment for emergency conditions relating to pregnancy, including emergency abortion care when necessary.  Am. Br. ISO Pls. Mot. for Prelim. Inj., *United States of America v. Idaho*, No. 1:22-cv-00329-BLW, ECF No. 51-1 (D. Id. Aug. 16, 2022).  Texas has taken the position that EMTALA does not require its hospitals to provide emergency medical care that would violate its restrictions on abortions.

[15] *See, e.g.*, Reuters Fact Check, *Fact Check-Termination of Pregnancy Can Be Necessary to Save a Woman's Life, Experts Say*, Reuters (Dec. 27, 2021), https://www.reuters.com/article/factcheck-abortion-false/fact-check-termination-of-pregnancy-can-be-necessary-to-save-a-womans-life-experts-say-idUSL1N2TC0VD (discussing, for example, that placental abruption presents a risk of hemorrhage, which left untreated, threatens the pregnant women's life and that preeclampsia if not treated quickly can result in the pregnant person's death); Am. Coll. of Obstetricians and Gynecologists (ACOG), *Facts Are Important: Understanding Ectopic Pregnancy*, https://www.acog.org/advocacy/facts-are-important/understanding-ectopic-pregnancy (last visited Sept. 22, 2022) (advising that "[a]n untreated ectopic pregnancy is life threatening; withholding or delaying treatment can lead to death").

of the uterus spreads very quickly into [the patient's] bloodstream and she becomes septic.  If she continues the pregnancy it comes at a very high risk of death."[16]  Another observed that, "under certain conditions, continuing a pregnancy could significantly increase the morbidity risk for the pregnant person or even jeopardize their life. . . . [F]or people with certain cardiovascular disease conditions, like Eisenmenger's syndrome and pulmonary hypertension, carrying a pregnancy could cause as high as a 40% risk of maternal death." [17]  While not all circumstances will necessarily require an abortion, abortion care is necessary in at least some of these circumstances.  As the American College of Obstetricians and Gynecologists has explained, pregnancy complications "may be so severe that abortion is the only measure to preserve a woman's health or save her life."[18]

Finally, Plaintiffs in this case wish to travel out of state in order to provide legal abortion care and to travel to offer financial, logistical, and emotional support for abortion patients.  These types of services carry substantial value to Amici States, which already face growing shortages of health care workers.[19]  Travel by providers like Dr. Moayedi could expand the available pool

---

[16] Reuters Fact Check, *Fact Check-Termination of Pregnancy Can Be Necessary to Save a Woman's Life, Experts Say*, Reuters (Dec. 27, 2021), https://www.reuters.com/article/factcheck-abortion-false/fact-check-termination-of-pregnancy-can-be-necessary-to-save-a-womans-life-experts-say-idUSL1N2TC0VD.

[17] Sarah Friedmann, *What A Medical Emergency For An Abortion Actually Means, According To OB/GYNs*, Bustle (June 6, 2019), https://www.bustle.com/p/what-a-medical-emergency-for-abortion-actually-means-according-to-obgyns-17929296.

[18] ACOG, *Facts are Important: Abortion Is Healthcare*, https://www.acog.org/advocacy/facts-are-important/abortion-is-healthcare (last visited Sept. 22, 2022).

[19] *See, e.g.*, Maanvi Singh, *Even in Abortion "Safe Havens' Finding Care Can Be Challenging: 'It's a System Already Strained*, The Guardian (May 13, 2022), https://www.theguardian.com/us-news/2022/may/13/abortion-access-safe-haven-california; U.S. Dept. of Health & Human Servs., *Projections of Supply and Demand for Women's Health Service Providers: 2018-2030* (Mar. 2021) (predicting increasingly inadequate supply of women's health care providers), https://bhw.hrsa.gov/sites/default/files/bureau-health-workforce/data-research/projections-supply-demand-2018-2030.pdf.

of appropriately trained and credentialed clinicians.  Likewise, travel by contributors to and

supports of abortion funds helps individuals overcome barriers to safe abortion services.  These

funds disproportionately benefit individuals at greater risk of adverse health outcomes, including

low-income and minority individuals.[20]  An injunction ensuring that Plaintiffs and others

similarly situated are free to travel interstate for purposes related to out-of-state abortion would

avoid substantial harms and benefit the public interest.

## CONCLUSION

The Court should grant Plaintiffs' motion for a preliminary injunction to the extent

Texas's laws violate the federal constitutional right to interstate travel by impeding the

movement of individuals across Texas state lines.

Respectfully submitted,

ROB BONTA
Attorney General of California
RENU R. GEORGE
Senior Assistant Attorney General
KARLI EISENBERG
Supervising Deputy Attorney General
LAUREN ZWEIER

s/ Anna Rich
ANNA RICH* CA SBN 230195
Deputy Attorneys General
1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, CA  94612-0550
Telephone: (510) 879-0296
Email: Anna.Rich@doj.ca.gov
Attorneys for State of California

Dated: September 23, 2022                                  *pro hac vice application pending

---

[20] See, e.g., Kathryn M. McKenney et al., Patient Navigation Across the Spectrum of Women's Health Care in the U.S., Am. J. Obstet. Gynecol. No. 218(3), at 280–286 (Mar. 2018) (noting potential of navigation assistance to help improve health care access, delivery, and outcomes for low-income and minority women).

PHILIP J. WEISER
*Attorney General*
State of Colorado
1300 Broadway
Denver, CO 80203

WILLIAM TONG
*Attorney General*
State of Connecticut
165 Capitol Avenue
Hartford, CT 06106

KATHLEEN JENNINGS
*Attorney General*
State of Delaware
820 N. French Street
Wilmington, DE 19801

HOLLY T. SHIKADA
*Attorney General*
State of Hawai'i
425 Queen Street
Honolulu, HI 96813

KWAME RAOUL
*Attorney General*
State of Illinois
100 West Randolph Street
Chicago, IL 60601

AARON M. FREY
*Attorney General*
State of Maine
6 State House Station
Augusta, ME 04333

BRIAN E. FROSH
*Attorney General*
State of Maryland
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202

MAURA HEALEY
*Attorney General*
Commonwealth of Massachusetts
One Ashburton Place
Boston, MA 02108

DANA NESSEL
*Attorney General*
State of Michigan
P.O. Box 30212
Lansing, MI 48909

KEITH ELLISON
*Attorney General*
State of Minnesota
102 State Capitol
75 Rev. Dr. Martin Luther King Jr. Blvd.
St. Paul, MN 55155

AARON D. FORD
*Attorney General*
State of Nevada
100 North Carson Street
Carson City, NV 89701

MATTHEW J. PLATKIN
*Acting Attorney General*
State of New Jersey
25 Market Street Trenton, NJ 08625

HECTOR BALDERAS
*Attorney General*
State of New Mexico
P.O. Drawer 1508
Santa Fe, NM 87504

LETICIA JAMES
*Attorney General*
State of New York
Office of the Attorney General
The Capitol
Albany, NY 12224

15

JOSHUA H. STEIN
*Attorney General*
State of North Carolina
114 W. Edenton Street
Raleigh, NC 27603

ELLEN F. ROSENBLUM
*Attorney General*
State of Oregon
1162 Court Street NE
Salem, OR 97301

JOSH SHAPIRO
*Attorney General*
Commonwealth of Pennsylvania
Strawberry Square
Harrisburg, PA 17120

PETER F. NERONHA
*Attorney General*
State of Rhode Island
150 South Main Street
Providence, RI 02903

ROBERT W. FERGUSON
*Attorney General*
State of Washington
P.O. Box 40100
Olympia, WA 98504

KARL A. RACINE
*Attorney General*
District of Columbia
400 6th Street, NW, Suite 8100
Washington, D.C. 20001