IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Plaintiffs Fund Texas Choice, The North Texas Equal Access Fund, The Lilith Fund for Reproductive Equity, Frontera Fund, The Afiya Center, West Fund, Jane's Due Process, Clinic Access Support Network, and Dr. Ghazaleh Moayedi, DO, MPH, FACOG, <br><br> Plaintiffs, <br> vs. <br><br> KEN PAXTON, in his Official Capacity as Attorney General; et al., <br><br> Defendants. | § § § § § § § § § § § § § § § § | CIVIL CAUSE NO. 1:22-cv-859-RP |

**RESPONSE TO DEFENDANT'S MOTION TO QUASH, MOTION TO RECONSIDER RULING ON SAME, AND EMERGENCY MOTION TO EXCLUDE**

Plaintiffs hereby file this Response to Defendant's Motion to Quash (ECF 44), Motion to Reconsider Ruling (9/27/22 Docket Entry) on Same, and Emergency Motion to Exclude. The Court should reconsider its ruling granting Defendant's Motion to Quash because General Paxton has made his own conduct of which he has exclusive, first-hand knowledge relevant to today's injunction hearing. Alternatively, if General Paxton is not compelled to appear and testify, the Court should prohibit him-- exclude under the applicable principles of equity and the Court's authority over hearing subpoenas—from contesting at the hearing the meaning of his statements, the evidence Plaintiffs offer about those statements, and that he has threatened enforcement of civil and criminal penalties for helping women procure out-of-state abortions. *See, e.g., Healthpoint, Ltd. v. Stratus Pharms., Inc.*, 273 F. Supp. 2d 769, 794-95 (W.D. Tex. 2001) (equitable principles apply to preliminary injunctions); *see also* FED. R. CIV. P. 45.

- 1 -

In his Response to Plaintiffs' Motion for Preliminary Injunction and Motion to Dismiss Plaintiffs' Complaint (ECF 33) filed September 19, 2022, General Paxton chose to anchor his defense to the primary argument that he has not made any statement creating an imminent threat of enforcement for helping women procure out-of-state abortions and that Plaintiffs have manufactured the threatened injury. PI Response at 1. This argument contradicts numerous extra-litigation statements that General Paxton himself has made as Attorney General. This argument also contradicts statements General Paxton makes later in his PI Response.

By threatening enforcement of civil and criminal laws against those who help Texans obtain abortions in other states where abortion is legal, and by defending against the preliminary injunction by arguing that those threats do not mean what he said, General Paxton has made conduct about which he has exclusive, first-hand knowledge relevant to the issues to be determined at the injunction hearing. *See Freedom From Religion Foundation, Inc. v. Abbott*, No. A-16-CA-00233-SS, 2017 WL 4582804, at *11 (W.D. Tex. Oct. 13, 2017). When a witness has personal knowledge of relevant facts, even the highest-level official is subject to examination. *See id.*; *see also, e.g.*, *Rolscreen Co. v. Pella Prods. of St. Louis, Inc.*, 145 F.R.D. 92, 98 (S.D. Ia. 1992); *Digital Equip. Corp. v. Sys. Indus., Inc.*, 108 F.R.D. 742, 744 (D. Mass 1986); *CBS, Inc. v. Ahern*, 102 F.R.D. 820, 822 (S.D.N.Y. 1984).

In moving to quash subpoenas compelling General Paxton in his official and individual capacities to attend the preliminary injunction hearing and give testimony, General Paxton invokes the *Morgan* doctrine, discussed in *In re F.D.I.C.*, 58 F.3d 1055 (5th Cir. 1995). *See* Paxton's Motion to Quash Subpoenas (ECF 44) at 1-2. But this doctrine offers him no refuge. The doctrine provides, "'[T]op executive department officials should not, **absent extraordinary circumstances**, be called to testify regarding **their reasons for** taking official actions.'" *F.D.I.C.*,

58 F.3d at 1060 (emphasis added). The doctrine applies in cases where "'it [i]s not the function of the court to probe the mental processes of" the [policymaker]," but rather to determine whether the policy comports with the law. *United States v. Morgan,* 313 U.S. 409, 422, 61 S.Ct. 999 (1941); *Morgan v. United States*, 304 U.S. 1, 18, 58 S. Ct. 773 (1938). Here, General Paxton is not being called to testify about the reasons or mental processes leading to his choice to make the statements/threats he has made. He is being called to testify because he now argues that his public statements do not mean what he said, such that Plaintiffs have "manufactured [the] threats of injury" that support injunctive relief. PI Response at 1.

Even if the *Morgan* doctrine applied, this case involves extraordinary circumstances. The Attorney General has himself (not through representatives) made repeated statements about enforcement of civil and criminal penalties (as he misinterprets them) against those who assist women in obtaining or attempting to obtain abortions outside Texas borders in states where abortion is legal. Plaintiffs are entitled to examine General Paxton.

When General Paxton first attempted last week in his September 19 PI Response to create a fact dispute regarding his own statements/threats, Plaintiffs were unaware of any need to subpoena him to attend a hearing this Court already had ordered him and his counsel (along with all other parties and counsel) to attend. *See* Order Setting Preliminary Injunction Hearing (ECF 24). General Paxton's choices drove the events that unfolded thereafter:

- On September 22-23, 2022, when General Paxton's counsel refused to confirm he would attend the hearing as ordered or to accept service of a hearing subpoena, Plaintiffs (with advance notice to General Paxton's counsel) served a subpoena on him through the procedure established at his office. *See* Exhibit A (Declaration of John Atkins) at Exs. A-1-A-4.

- When on September 25, 2022, General Paxton's counsel challenged the sufficiency of that service and of the capacity to which the subpoena was directed, Plaintiffs (again with advance notice) on September 26, 2022, served subpoenas in his official and individual capacities in person. *See id.* at ¶¶5-7 & Exs. A-4-A-5.

- When General Paxton's counsel challenged that service on the basis that Plaintiffs offered no evidence that service had been effectuated, Plaintiffs filed certificates of service evidencing service of the various subpoenas, including the service location. *See* Motion to Quash at 1 n.1; Certificates of Service (ECF 59-62).

- When General Paxton's counsel objected to two Certificates as including the location at which Plaintiffs served General Paxton (*i.e.*, his wife's home address), Plaintiffs filed redacted Certificates even though no rule requires redaction of the address. *See* Ex. A at Ex. A-5; Redacted Certificates of Service (ECF 63-64).

The necessity, nature, timing, and location of Plaintiffs' service of the subpoenas are the product of General Paxton's choices. The law does not protect him—a person who has placed his own, exclusive, first-hand knowledge at issue in these extraordinary circumstances— from testifying as any other witness with personal knowledge of relevant facts. The ruling on his motion to quash should be reconsidered and the motion denied. Alternatively, he should be prohibited from contesting at the hearing the meaning and evidence of his statements or that he has threatened enforcement of civil and criminal penalties for helping women procure out-of-state abortions.

**A.   General Paxton has made conduct of which he has exclusive, first-hand knowledge relevant to the preliminary-injunction issues.**

General Paxton has stated—in an Advisory issued in his official capacity as Attorney General and signed by him as "Attorney General of Texas—that he "**will assist** any local prosecutor who pursues criminal charges." Exhibit B (PX3) at 2 (emphasis added). He did not state that he is authorized to assist local prosecutors, willing to assist local prosecutors, or will assist any local prosecutors who may ask for his assistance. Instead, just as he stated that he "**will** strictly enforce this law" to "pursue and recover those civil penalties," he stated in the very next sentence that he "**will** assist any local prosecutor who pursues criminal charges." Ex. B (PX3) at 2 (emphasis added). In case anyone was inclined to take the "will assist" statement about criminal charges at less than face value in comparison with the "will strictly enforce" statement about civil penalties, General Paxton concluded his Advisory by stating that he "will do **everything in my**

**power** to protect the unborn and uphold **the state laws** duly enacted by the Texas Legislature." *Id.* (emphasis added). Although General Paxton later updated his advisory to say he "**stand[s] ready** to assist any local prosecutor who pursues criminal charges," he did not condition his readiness on any request for assistance. Exhibit C (PX 27) at 2 (emphasis added). And he reasserted that he "will do everything in my power . . . to uphold the state laws duly enacted by the Texas Legislature," without distinguishing between civil and criminal laws or limiting his efforts to situations where he is invited by a local authority to participate. *Id.*

General Paxton's refusal to limit his enforcement threats to only civil, not criminal, statutes extends to other statements, as well. *See, e.g.*, PX4 (Attorney General Ken Paxton tweeting "I'll ensure we have **all the legal tools** to keep TX pro-life!" (emphasis added)); Exhibit D (PX28) at 2 (Attorney General Ken Paxton stating "I will fight back to defend **our pro-life laws** and Texas mothers and children." (emphasis added)); Exhibit E (PX34) at 2 (Attorney General Ken Paxton stating that "abortion is illegal here. I look forward to defending **the pro-life laws of Texas** and the lives of all unborn children moving forward." (emphasis added)).[1] Indeed, General Paxton has confirmed that his enforcement efforts will (not may) extend to criminal laws. After the updated Advisory, General Paxton stated, in the face of a Harris County District Court temporary restraining order blocking enforcement of Pre-*Roe* Statutes—"Let there be no mistake: the lower court's unlawful order does not immunize **criminal conduct, which can be punished at a later date** once the temporary restraining order is lifted. My office **will not hesitate to act** in defense of unborn Texans put in jeopardy by plaintiffs' wrongful actions and the trial court's erroneous order." Exhibit G (PX32) at 2 (emphasis added).

---

[1] *See also* Exhibit F (PX31) (State of Texas Original Complaint against Biden Administration) (stating that "[t]he sovereign right to enforce its criminal laws is the epitome of Texas's police power" and discussing the criminal statutes providing that "an individual may not act as an accomplice to abortion or an attempted abortion.").

- 5 -

In his PI Response, General Paxton made his testimony relevant to the preliminary injunction issues by contending that these statements do not mean what they say. He asserts that no statement or action of his constitutes an "imminent threat of enforcement for helping women procure out-of-state abortions…." PI Response at 1. He contends that he has not "demonstrated a willingness to enforce the statutes in the way Plaintiffs hypothesize . . . ." *Id.* at 13.

General Paxton also argues in his Response that the statements in his Advisory and tweet do not "represent a threat that he will interpret the pre-*Roe* statutes to 'criminalize abortion funds, including Plaintiffs, for all activities related to abortion, regardless of whether abortions take place in a jurisdiction outside of Texas in which abortion is legal.'" *Id.* at 5. He posits that the facts do not support the allegation "that the Attorney General will interpret the law to apply to 'any behavior undertaken by Plaintiffs in connection with any abortion that occurs outside the State of Texas." *Id.* at 13. Yet General Paxton does not address the inconsistency of this position with: (1) his own public statements about the illegality of abortions under Pre-*Roe* Statutes [*e.g.*, Ex. E (PX34) at 2]; (2) his position in his lawsuit against the Biden administration that Pre-*Roe* criminal statutes provide "an individual may not act as an accomplice to abortion or an attempted abortion" [Ex. F (PX 31)]; or (3) his position in the PI Response itself that funding and assisting Texans to obtain abortions in other states where abortion is legal is "illegal," violates "legitimate and important State interests," and is "well within the State's police powers" [PI Response at 21, 24].

As General Paxton makes clear in his PI Response, his interpretation of Texas law is that "there is no constitutional right to **pay for an abortion**, there is no constitutional right to **help someone get an abortion**, and the First Amendment does not protect those things just because Plaintiffs want to perform **those illegal deeds** at the same time they talk about performing them." PI Response at 21 (emphasis added). According to General Paxton, Texas's criminalization of

abortion applies "whether the Texan mother seeks an abortion in Denver or Dallas, in Las Cruces or Lamesa" and extends to "procurement [in] the form of a bus ticket for the pregnant Texan to an abortion clinic, or the paying from Texas of the cost of a pregnant Texan's hotel room adjacent to that clinic, it does not matter if the travel and hotel are in Albuquerque or Austin . . . ." *Id.* at 24. Although it would be reasonable to do so, Plaintiffs do not need "to draw [a] reasonable inference that the Attorney General will enforce the law in the way Plaintiffs fear . . . ." *Id.* at 13. General Paxton's statements on pages 21 and 24 of the PI Response confirm what he has repeatedly threatened: He interprets the pre-*Roe* statutes to criminalize abortion funds, including Plaintiffs, for all activities related to abortion, regardless of whether abortions take place in a jurisdiction outside of Texas in which abortion is legal. *See id.* at 21, 24. And his public statements confirm that he will enforce all laws of this State, not just those authorizing civil penalties, to defend against these activities he has misinterpreted as illegal. *See* Exs. B, C, G (PX 3, 27, 32).

Nevertheless, General Paxton argues that the preliminary injunction should be denied because his public statements do not mean what he said. *See* PI Response at 5-9, 13. To the extent that these conclusory arguments create a fact dispute, General Paxton has made conduct of which he has exclusive, first-hand knowledge relevant to the issues at the preliminary injunction hearing. His own responsive arguments turn heavily on the meaning of words spoken by General Paxton himself and whether he meant something different than he said (*e.g.*, only civil laws, rather than all Texas laws), which are matters about which *only he* can testify.

Contrary to his arguments, Plaintiffs do not merely assert that General Paxton was merely involved in the regular course of agency decisionmaking. *See F.D.I.C.*, 58 F.3d at 1061-62 (no extraordinary circumstances presented by mere involvement in decisionmaking); *Ctr. for Juvenile Mgmt. v. Williams*, No. 5:15-cv-640, 2016 WL 8904968, at *5 (W.D. Tex. Sept. 22, 2016) (same).

On the contrary, all of the statements/threats that General Paxton attempts to place at issue were made by General Paxton himself. They were not made by or through deputies or other representatives. Thus, General Paxton "has first-hand knowledge related to the [issues] being litigated and other persons cannot provide the necessary information." *See FFRF*, 2017 WL 4582804, at *11. This exclusive, first-hand knowledge "present[s] extraordinary circumstances" and "a special need for [the official's] testimony," either one of which would defeat the *Morgan* doctrine. *See In re United States*, 985 F.2d 510, 512-13 (11th Cir. 1993) (quoted language; Commissioner was not the commissioner at the time of relevant investigation and other agency officials with knowledge of investigation had already testified in the case). Even if the *Morgan* doctrine applies, Plaintiffs are entitled to examine General Paxton.

Furthermore, the substantive reason that General Paxton's exclusive, first-hand knowledge of his own statements is relevant to the preliminary injunction is his own choice to defend against the injunction by arguing that he did not mean what he said. When a senior agency decisionmaker puts his conduct at issue, he subjects himself to examination. *See F.D.I.C.*, 58 F.3d at 1062 (holding that, when senior agency decisionmakers engage in conduct that makes testimony explaining their actions relevant, they subject themselves to deposition). For this reason, as well, even if the *Morgan* doctrine applies, General Paxton's decision to deny that his statements constitute threats of enforcement subjects him to Plaintiffs' hearing subpoena. *See id.*

Additional extraordinary circumstances support Plaintiffs' right to examine General Paxton. The statements/threats he has made himself (not through representatives), then attempted to recharacterize as the basis for defeating injunctive relief, concern the enforcement of civil and criminal penalties (as he misinterprets them) against those who assist women in obtaining or attempting to obtain abortions outside Texas borders in states where abortion is legal. And the

examination he seeks to avoid is not at a deposition or at a trial after full discovery has been completed, but at a preliminary-injunction hearing held before Plaintiffs are allowed to conduct any discovery. *See F.D.I.C.*, 58 F.3d at 1057 (addressing motion to quash depositions during discovery); *League of United Latin Am. Citizens v. Abbott*, No. EP-21-CV-00259-DCG-JES-JVB, 2022 WL 2866673, at *1 (W.D. Tex. July 6, 2022) (addressing motion to quash depositions during discovery); *Texas Entertainment Association v. Hegar*, No. 1:17-cv-594, 2019 WL 13080576, at *2 (W.D. Tex. Oct. 18, 2019) (addressing untimely trial subpoena after plaintiff failed to seek identification of corporate representative during discovery); *FFRF*, 2017 WL 4582804, at *10-11 (addressing motion to quash deposition during discovery); *Williams*, 2016 WL 8904968, at *5 (addressing motion for leave to depose official).

Far from being dispositive (Motion to Quash at 3-4), the *Texas Entertainment* case lacked any extraordinary circumstances, with the plaintiff conceding they did not exist. 2019 WL 13080576, at *2. Similarly, the magistrate judge in *F.D.I.C.* had made no effort to find extraordinary circumstances, which were not created by mere involvement in the regular course of agency decisionmaking. 58 F.3d at 1061-62; *see also Williams*, 2016 WL 8904968, at *5. The extraordinary circumstances in this case justify the requested testimony under *Morgan*.

But General Paxton has not even established that the *Morgan* doctrine applies here. The doctrine constitutes a "general bar against **probing mental processes**" and examining high-ranking officials' "**reasons** for taking official actions" when those processes and reasons are not relevant. *See In re Office of Inspector Gen'l*, 933 F.2d 276, 278 (5th Cir. 1991) (emphasis added); *Kent Corp. v. N.L.R.B.*, 530 F.2d 612, 620-21 (5th Cir. 1976) (emphasis added). But General Paxton is not being called to testify about the mental processes or reasons that led him to make the statements and threats he has made. Instead, he is being called to testify about the

statements/threats themselves because, in his PI Response, he denies they mean what he said.

B. **General Paxton has made his testimony as an individual relevant to the preliminary injunction issues.**

In pre-hearing discussions about evidence Plaintiffs will offer at the preliminary-injunction hearing, General Paxton has conclusorily asserted that the Twitter account he operates as Attorney General of Texas is a personal account and that his tweeted statements/threats are unauthenticated. *Cf.* Ex. A at Ex. A-5, p.7 (9/26 9:54 a.m. e-mail). Once again, General Paxton's litigation position has necessitated the subpoena directed to him individually. Either he can appear and testify on the issues he has made relevant by objecting to evidence of his own tweets, or he can withdraw the objections that made the individual subpoena necessary.

C. **Plaintiffs did not delay in serving General Paxton with the hearing subpoenas.**

General Paxton's mischaracterization of Plaintiffs' subpoenas as served at the "eleventh hour" is both inaccurate and disingenuous. *See* Bullet List at 3-4, *supra*. The only delay and impropriety in connection with the subpoenas has been on General Paxton's part. There has been no delay and no impropriety on Plaintiffs' part. The timing of the subpoenas does not support quashing them under Rule 45 or the *Morgan* doctrine.

## CONCLUSION

The Court should reconsider its ruling and deny General Paxton's motion to quash. Alternatively, under applicable principles of equity and the Court's authority over hearing subpoenas, he should be prohibited from contesting at the hearing the meaning of his statements, the evidence Plaintiffs offer about those statements, and that he has threatened enforcement of civil and criminal penalties for helping women procure out-of-state abortions. *See, e.g.*, *Healthpoint*, 273 F. Supp. 2d at 794-95 (equitable principles apply to preliminary injunctions).

Dated: September 27, 2022

Respectfully submitted,

*s/ Kirsten M. Castañeda*
Kirsten M. Castañeda
Texas Bar No. 00792401
kcastaneda@adjtlaw.com
8144 Walnut Hill Lane, Suite 1000
Dallas, TX 75231-4388
Telephone: 214/369-2358
Facsimile: 214/369-2359

**ALEXANDER DUBOSE & JEFFERSON LLP**

**Jennifer R. Ecklund**
Texas Bar No. 24045626
**Elizabeth G. Myers**
Texas Bar No. 24047767
**Allyn Jaqua Lowell**
Texas Bar No. 24064143
**John Atkins**
Texas Bar No. 24097326
**Elizabeth Rocha**
Texas Bar No. 24127242

**THOMPSON COBURN, LLP**
2100 Ross Avenue, Suite 3200
Dallas, TX 75201
(972) 629-7100
(972) 629-7171 (facsimile)
jecklund@thompsoncoburn.com
emyers@thompsoncoburn.com
alowell@thompsoncoburn.com
jatkins@thompsoncoburn.com
erocha@thompsoncoburn.com

Alexandra Wilson Albright
Texas Bar No. 21723500
aalbright@adjtlaw.com
Marcy Hogan Greer
Texas Bar No. 08417560
mgreer@adjtlaw.com

515 Congress Ave., Suite 2350
Austin, TX 78701-3562
Telephone: 512/482-9300
Facsimile: 512/482-9303

Kevin Dubose
Texas Bar No. 06150500
kdubose@adjtlaw.com
1844 Harvard Street
Houston, TX 77008
Telephone: 713/523-2358
Facsimile: 713/522-4553

**ALEXANDER DUBOSE & JEFFERSON LLP**

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

    I hereby certify that on this September 27, 2022, a copy of the foregoing, with attachments, was filed electronically with the Clerk of Court using the CM/ECF system, which provides service to all counsel of record for the parties.

    *s/ Kirsten M. Castañeda*
    Kirsten M. Castañeda