IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| FUND TEXAS CHOICE, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 1:22-CV-859-RP |
| | § | |
| KEN PAXTON, *in his official capacity of* | § | |
| *Attorney General*, et al., | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Before the Court is a motion for reconsideration brought by Plaintiffs Fund Texas Choice, et al. ("Plaintiffs"). (Mot. Reconsider, Dkt. 67). The motion requests that the Court reconsider its order granting Defendant Ken Paxton's ("Paxton") motion to quash subpoenas that order Paxton to testify at a hearing on Plaintiffs' motion for a preliminary injunction. (Certificate of Service, Dkt. 62). For the reasons discussed below, the Court will grant Plaintiffs' motion for reconsideration.

**I. BACKGROUND**

This case concerns several non-profit Texas abortion funds and one OB-GYN who are suing Attorney General Ken Paxton and local district attorneys (collectively, "Defendants"), in their official capacity, for alleged violations of their constitutional rights. Plaintiffs contend that statements made by Paxton chill their First Amendment rights to speak about and fund abortion care. (Mot. Prelim. Inj., Dkt. 6, at 32). They further allege that Paxton's statements restrict their ability to facilitate out-of-state abortions, which is protected by the right to interstate travel. (*Id.* at 23). In addition, Dr. Moayedi argues that Paxton's actions have restricted her ability to travel across state lines and provide abortion services where they remain legal. (*Id.* at 25). The Plaintiffs request an injunction which, among other things, would enjoin Defendants from punishing organizations for facilitating abortion care outside Texas. (*Id.* at 50–51).

1

Plaintiffs filed their complaint and a motion for a temporary restraining order and preliminary injunction on August 23, 2022. (Compl., Dkt. 1; Mot. Prelim. Inj., Dkt. 6). The Court denied Plaintiffs' ex parte motion for a temporary restraining order to give the Defendants time to respond and to allow the Court to decide the preliminary injunction with complete briefing from both parties. (Order, Dkt. 8). After the parties submitted a joint briefing schedule on September 8, the Court set a hearing for the preliminary injunction for September 27, 2022. (Order, Dkts. 24). The Court ordered, "All parties and counsel must appear at this hearing." (*Id.*)

On September 19, Defendant Ken Paxton responded to Plaintiffs' motion for a preliminary injunction and moved to dismiss Plaintiffs' complaint.[1] (Resp., Dkt. 33). Paxton anchored his response on the argument that Plaintiffs lack standing because the Attorney General's office has no authority to bring criminal prosecutions, and that Paxton has not clarified the scope of his civil enforcement powers. (*Id.* at 3–13). He argued that Plaintiffs have manufactured the injury at question and there is no imminent threat of enforcement for out-of-state abortions or speech protected by the First Amendment. (*Id.*). At the same time, Paxton's response showed that the Attorney General's office viewed abortions as illegal whether the Texan has one in "Denver or Dallas, in Las Cruces or Lamesa." (*Id.* at 24).

According to Plaintiffs' motion for reconsideration, Paxton's argument that Plaintiffs lacked standing called into doubt whether Paxton meant what he had said in his Tweets, statements, and interviews—namely, whether he does in fact interpret the Human Life Protection Act ("Trigger Ban") to penalize Texans who seek out-of-state abortions. (Mot. Reconsider, Dkt. 67, at 2). Plaintiffs felt that this response contradicted his earlier statements, and accordingly decided they would need to call him as a witness at the upcoming hearing for a preliminary injunction. (*Id.*) According to the

---

[1] Originally, Mr. Paxton's responsive pleading was due on September 15, but the Court granted Mr. Paxton's unopposed motion to extend the pleading deadline to September 19. (Dkt. 27).

sworn declaration of Plaintiffs' counsel John Atkins, Plaintiffs emailed Defendants on the morning of September 22 asking them to confirm that Paxton would appear at the hearing, pursuant to our order that all parties make an appearance. (Mot. Reconsider, Dkt. 67-1, at 6–7). Over the following days, counsel for Plaintiff repeatedly emailed the counsel for Paxton, asking whether they could accept service of a subpoena on behalf of Paxton. Up until September 26, the Plaintiffs continued to inquire as to how to serve Mr. Paxton with subpoenas. (*Id.* at 6–26).

Around 12:30 pm on September 26, the day before the hearing, both parties submitted their proposed witness list. (Dkts. 36, 41). Plaintiffs' list included Paxton, in both his official and personal capacity. (Dkt. 41). Later that afternoon, Paxton filed a motion to quash the subpoenas. (Mot. Quash, Dkt. 44). In his motion, Paxton argued that, as a high-ranking government official, he could not be compelled to testify in a hearing. (*Id.*). Paxton represented that the Court should deny the motion because Plaintiffs raised the prospect of his testimony at the last minute. (*Id.* at 4). Specifically, Mr. Paxton characterized the timing of the request as being made at the "eleventh-hour." (*Id.* at 3). He argued that the Court should quash the subpoena because "the Court will consider the merits in less than 24 hours" and because "it is now the *literal* eve of trial." (*Id.* at 4 (emphasis in original)). Paxton noted that Plaintiffs "did not even bother trying to obtain testimony until mere days ago" but made no reference to when Plaintiffs had first notified Defendant's counsel of Paxton's expected appearance. (*Id.*)

In addition, Paxton called into question whether he had been properly served. In a footnote, Paxton stated that Plaintiffs "have thus far offered no evidence that they have [served Paxton]." (*Id.* at 1, n.1). He stated explicitly that "[n]either subpoena has been effectively served." (*Id.* at 1). Paxton made no mention of Plaintiffs' repeated emails attempting to serve Paxton and inquiring how best to accomplish service.

Relying on these representations made by Paxton and his counsel, the Court granted his motion to quash the subpoena the following morning around 8:00 am. (Dkt. 66). An hour later, Plaintiffs filed the motion to reconsider, which is now pending before the Court. (Mot. Reconsider, Dkt. 67). Plaintiffs argued that they had informed Paxton well before serving him that he would be expected at the hearing. (Mot. Reconsider, Dkt. 67, at 3, 10). The motion contends that any delay on Plaintiffs' part is because Paxton's response, filed on September 19, created a factual dispute about his policy positions, and thus the need to clarify his stance on out-of-state abortions. (*Id.* at 3–5). Plaintiffs also argue that they properly served Mr. Paxton and attach exhibits showing attempts to serve him. (*Id.* at 3–4). Finally, Plaintiffs contend that Mr. Paxton has exclusive and first-hand knowledge of the central facts at issue in the hearing, and accordingly should be compelled to testify. (*Id.* at 1–11).

At the hearing for a preliminary injunction, Plaintiffs pointed to several press releases from the Attorney General's office where Paxton states that he will pursue civil penalties and assist in criminal prosecutions against anyone performs, incudes, or attempts an abortion. (Press releases, Dkt. 42, Exhs. 27–29). They also include several posts from Paxton's official Twitter account stating that he intends to ensure that pre-*Roe* laws are "100% in effect" and that he'll make "Texas fully pro-life!" (Tweets, Dkt. 42, Exhs. 4, 41, 42). Finally, Plaintiffs point to media interviews given by Paxton, where he promises to "use the full force of [the Trigger Ban] to make people pay if they're going to do abortions." (Interviews, Dkt. 42, Exhs. 62, 63, 64). Several witnesses stated that they understood these statements to cover out-of-state abortion care but could not be sure because the statements were unclear. (Hearing, Dkt. 74).

The Court briefly discussed the pending motion for reconsideration but deferred a decision on the matter so that Paxton could respond. (*Id.*). On September 28, 2022, Paxton filed a response, focusing largely on the alleged impropriety of Plaintiffs' service. (Resp., Dkt. 77). The response also

encouraged the Court to deny the motion on the merits, arguing that nothing in the hearing required Paxton's testimony. (*Id.*)

## II. DISCUSSION

Plaintiffs ask the Court to reconsider its motion to quash the subpoenas served on Mr. Paxton. (Mot. Reconsider, Dkt. 67).[2] The Court will first address whether it should reconsider its earlier order to quash. It will then turn to whether Paxton should be compelled to testify.

### A. Motion to Reconsider

"[T]he Federal Rules of Civil Procedure do not recognize a general motion for reconsideration." *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997). Instead, Plaintiff asserts its motion under Rule 54(b). "[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to revise at any time any order or other decision that does not end the action." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (cleaned up) (citing Fed. R. Civ. P. 54(b)). "Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Id.* (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)). "Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible, reflecting the 'inherent power of the rendering

---

[2] Plaintiffs served—or attempted to serve—Paxton is both his official and personal capacity. The Court need not address whether the attempted service on Paxton in his personal capacity was legally sufficient. The exhibits presented by the Plaintiffs show that he was served in his official capacity on September 23, 2022. (Certificate of Service, Dkt. 62); Fed. R. Civ. P. 5(b). Defendants represented that Paxton was not properly served, but they have offered no evidence to suggest that this particular service was improper.

district court to afford such relief from interlocutory judgments as justice requires.'" *Id.* at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015)).

Under the Rule 54(b) standard, the Court finds sufficient grounds to grant Plaintiffs' motion for reconsideration. First, the Court has now had more time to review Paxton's motion to quash and consider the full record. Because Paxton filed its motion to quash late in the day before the hearing—and the motion impacted whether Paxton would be required to attend the hearing the next morning—the Court issued a text order granting the motion before the hearing, eliminating the need for Paxton to attend that morning. Less than two hours later, Plaintiffs filed their motion for reconsideration. The critical issues raised by both Plaintiffs and Paxton warrant time to consider their motions in full.

In addition, when the Court granted Paxton's motion to quash, it did so on the assumption that counsel for Paxton had made candid representations to the Court about when Paxton had been served and when Paxton was notified that he was expected to attend the hearing. The Court took Paxton's factual statements—that the notification occurred "at the eleventh hour" and "on the *literal* eve of trial"—as accurate, candid representations of counsel, and those statements influenced the Court's decision on Paxton's motion to quash. (Mot. Quash, Dkt. 44, at 4) (emphasis in original). The Court also assumed Paxton provided full, accurate factual statements, only to learn later that Paxton failed to disclose Plaintiffs' repeated emails attempting to inquire as to whether Paxton could testify. The motion mentioned that Plaintiffs began to try and obtain testimony "mere days ago," but did not convey that Paxton had been served or that Plaintiffs had been trying to engage on ongoing conversations to coordinate witnesses for the hearing. Yet, Plaintiffs' attempt to obtain "mere days ago" was presented as the only notification that Paxton received in advance of the hearing about his expected testimony. (*Id.*) Paxton stated that "the Court will consider the merits in less than 24 hours." (*Id.*) Finally, Paxton had already been served days before and could have filed his motion to

6

quash then, giving Plaintiffs a meaningful chance to respond and the Court time to consider. Instead, the Court only learned that Paxton's counsel had been notified several days before the hearing during the hearing itself.[3]

Because the Court was forced to decide Paxton's motion to quash on a very limited timeframe, without the benefit of Plaintiffs' response, and because the Court relied on Defendant's representations as accurate depictions of when Paxton had been served and notified of his expected testimony,[4] the Court issued its ruling on incomplete facts. Accordingly, the Court grants Plaintiffs' motion to reconsider. (Dkt. 67).

### B. Motion to Quash Subpoena under Rule 45(d)(3)(A)

Having granted the motion for reconsideration, the Court next turns to whether it should grant or deny Paxton's motion to quash. (Dkt. 44). Rule 45(d)(3)(A) provides that, "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). Paxton moves to quash the subpoenas on the fourth basis. (Mot. Quash, Dkt. 44, at 5).

Paxton centers his request to quash the subpoena on a legal principle called the "*Morgan* doctrine." *See United States v. Morgan*, 313 U.S. 409 (1941). Under the doctrine, a party may not involuntarily compel testimony from a high-ranking official without exceptional circumstances. *Id.* at

---

[3] Because Paxton delayed filing his motion to quash, Plaintiffs responded by filing their certificates of service late in the evening. One of these certificates showed that Mr. Paxton had been served through his executive assistant. (Certificate of Service, Dkt. 62). While this appeared to meet the federal requirements for service of a subpoena, it did not show that Mr. Paxton or his counsel had been notified of the subpoena or his expected testimony. It was not until Plaintiffs submitted their motion for reconsideration that the Court learned that Paxton's counsel was notified of the expected testimony even earlier than the certificate of service showed.
[4] *See Domain Prot., L.L.C. v. Sea Wasp, L.L.C.*, 23 F.4th 529, 543 (5th Cir. 2022) (explaining that the duty of candor extends both to intentional misrepresentations as well as omissions).

7

413; *In Re Bryant*, 745 F. App'x 215 (5th Cir. 2018), *as revised* (Nov. 30, 2018) (unpublished); *In re F.D.I.C.,* 58 F.3d 1055, 1062 (5th Cir. 1995). Courts in the Fifth Circuit have employed a three-factor test, examining (1) whether the witness is a high-ranking official, (2) the substantive reasons for taking the testimony, and (3) the potential burden that involuntary testimony would impose on the official. *In Re Bryant*, 745 F. App'x at 220; *Freedom from Religion Found., Inc. v. Abbott*, No. A-16-CA-00233-SS, 2017 WL 4582804, at *9 (W.D. Tex. Oct. 13, 2017).

1.  Substantive Reasons for the Testimony

The parties do not contest that the Attorney General qualifies as a "high-ranking official." The burden then shifts to Plaintiffs to demonstrate exceptional circumstances. *Freedom from Religion Found., Inc*, 2017 WL 4582804, at *9. When considering the substantive reasons for the deposition, courts ask whether the official has first-hand knowledge related to the claims being litigated and other persons cannot provide the necessary information. *Id.* at *11 (citing *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007)); *Hernandez v. Tex. Dept. of Aging & Disability Servs.*, No. A–11–CV–856 LY, 2011 WL 6300852, at *2 (W.D. Tex. Dec. 16, 2011); *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1048 (E.D. Cal. 2010)).

Plaintiffs argue that only Paxton can provide the necessary information needed to clarify his statements, press releases, and media appearances. (Mot. Reconsider, Dkt. 67, at 2). Because the statements came directly and voluntarily from Paxton, only he is capable of clarifying the scope of what he means when he claims he will pursue civil penalties to "use the full force of [the Trigger Ban] to make people pay." (*Id.*; Interview, Dkt. 42, Exh. 64). In addition, Plaintiffs point out that Paxton's position has changed over the course of the lawsuit and even within the same document filed with the Court. (Mot. Reconsider, Dkt. 67, at 2). For example, Paxton's response claims that Plaintiffs lack any concrete injury for the purposes of standing, while simultaneously suggesting that the Trigger Ban requires the Attorney General bring civil enforcement actions against Texans who

8

facilitate out-of-state abortion care. (*Id.*; Resp., Dkt. 33). The Plaintiffs argue that only the Attorney General himself can clarify the scope of these statements and whether he intends to pursue civil or criminal sanctions for facilitating out-of-state abortion care.

Paxton responds that Plaintiffs have failed to demonstrate a "special need or situation compelling" testimony. (Mot. Quash, Dkt. 44, at 3). He states that compelling high-ranking officials to testify would risk constant distraction and render him unable to perform his public duties. (Resp., Dkt. 77, at 3–4). Finally, Paxton argues that Plaintiffs have failed to show he has firsthand knowledge of the claims being litigated because the information is readily available from the Attorney General's office more broadly. (*Id.*)

The Court finds that exceptional circumstances exist, and Paxton should testify. First, this case does not involve an official being called to testify about his decision making in previous actions. In *Morgan*, the Supreme Court considered whether the Secretary of Agriculture should have been called to explain the reasons behind his recent policies. *Morgan*, 313 U.S. at 413. The Supreme Court counseled that "it [i]s not the function of the court to probe the mental processes of the [policymaker]," but to determine whether the policy in question comports with the law. *Id.* at 422. In the instant case, Paxton is not being called to testify to explain a past policy. Instead, Plaintiffs call Paxton to seek clarification as to what his policy *is*. Plaintiffs allege that the current ambiguity of Paxton's statements has created a chilling effect. Indeed, his counsel conceded that "whatever is happening in state law perhaps that is chilling their conduct." (Hearing, Dkt. 74). To determine whether the "policy in question comports with the law," the Court must first determine what the Attorney General means by his repeated statements threatening to enforce the law. *Morgan*, 313 U.S. at 413.

Paxton also possesses unique, first-hand knowledge of the issues at hand and about how he will enforce the Trigger Ban. Courts have repeatedly found that even the highest-ranking officials

9

should testify when they have personal knowledge of relevant facts. *See, e.g.*, *Rolscreen Co. v. Pella Prods. of St. Louis, Inc.*, 145 F.R.D. 92, 98 (S.D. Ia. 1992); *Digital Equip. Corp. v. Sys. Indus., Inc.*, 108 F.R.D. 742, 744 (D. Mass 1986); *CBS, Inc. v. Ahern*, 102 F.R.D. 820, 822 (S.D.N.Y. 1984). Indeed, in 2017, this Court ordered Governor Greg Abbott to testify because he alone had personal knowledge of the central question at issue. *Freedom From Religion Foundation, Inc.*, 2017 WL 4582804, at *11. In short, parties have repeatedly overcome the *Morgan* doctrine by making a genuine showing of unique, firsthand knowledge.

Paxton's motion to quash does not dispute in earnest whether he has firsthand knowledge of the issues in this case. Instead, he argues that his knowledge is not unique to him, and that any representative of the Attorney General's office can testify as to the office's policies. The Court does not dispute the plain fact that lawyers at the Attorney General's Office may articulate the Office's policies. In this case, Paxton has inserted himself into this dispute by repeatedly tweeting and giving interviews about the Trigger Ban. Having added his voice many times—not just in a press release or official statement but in intentional ways designed to reach Texans from within his role as Attorney General—Paxton alone is capable of explaining his thoughts and statements.

Paxton's own briefing suggests that he does consider out-of-state abortions illegal under Texas law and is required to pursue such civil penalties. (Resp., Dkt. 33, at 24); *see also* Tex. Health & Safety Code § 170A.005 ("The attorney general shall file an action to recover a civil penalty[.]"). If Paxton believes that out-of-state abortion care violates the Trigger Ban, then the statutory language suggests he must pursue civil sanctions against the alleged offenders. This position, however, goes against Paxton's contention that there is no imminent threat of enforcement. Given this contradiction, Paxton alone can testify as to which represents his position on out-of-state abortion care and his views as to whether such conduct is covered by the statute is directly related to whether Plaintiffs' conduct has been chilled.

10

During the preliminary injunction hearing, witnesses for the Plaintiffs frequently expressed confusion and fear about Paxton's stance on out-of-state abortions. (Hearing, Dkt. 74). For example, Neesha Dave, Deputy Director of the Lillith Fund, stated that a press release from the Attorney General's Office, among other public statements, forced the organization to stop giving direct abortion funding because it was unclear about the scope of the new abortion laws. (*Id.*). Dr. Ghazaleh Moayedi, a licensed OB-GYN in 20 states, expressed her concern that the lack of clarity on Texas's abortion laws renders her unable to provide complete care to her patients. (*Id.*). Likewise, Rosann Mariappuram, Executive Director of Jane's Due Process, remarked how confusing the scope of the law was without clarification from Paxton. (*Id.*).

The repeated testimony from the witnesses shows that Paxton's statements have rendered Plaintiffs feeling unable to fulfill their organizational purpose or facilitate out-of-state abortion care in states where it remains legal. Paxton's contention that these fears are objectively unreasonable is precisely why Paxton's testimony is needed. If their fears are unwarranted, then that will become clear during the course of his testimony. But the Court will not sanction a scheme where Paxton repeatedly labels his threats of prosecution as real for the purposes of deterrence and as hypothetical for the purposes of judicial review.

### 2. Burden on Witness

Paxton also contends that having to testify would create a significant burden, given his role as Attorney General and the short timing in question. In general, federal courts should recognize the fact that high-ranking officials have significant constraints on their time. *In re F.D.I.C.*, 58 F.3d at 1062. Yet the idea that Paxton would be unduly burdened by testimony in court is belied by his many public statements and interviews in which he threatens civil prosecutions of Texans. (Interviews, Dkt. 65-62, 63, 64). It is challenging to square the idea that Paxton has time to give interviews threatening prosecutions but would be unduly burdened by explaining what he means to

11

the very parties affected by his statements. To the extent Paxton is burdened by his testimony, it is because both he and his office have declined to take a clear stance on the legality of out-of-state abortions while issuing statements suggesting they are illegal. The burden faced by Plaintiffs—the effective cessation of many core operations—outweighs the burden of testimony faced by Paxton.

In addition, Paxton argues that the timing of the subpoena would create an undue burden. Paxton relies on a 2019 case from this Court to bolster his position. (Mot. Quash, Dkt. 44, at 3–4); *Texas Entertainment Association v. Hegar*, No. 1:17-cv-594, 2019 WL 13080576, at *2 (W.D. Tex. Oct. 18, 2019). In that case, the United States Magistrate Judge considered a motion to quash the subpoena on Glenn Hegar, the public comptroller for the state. *Id.* The court granted the motion, holding that enforcing the plaintiff's subpoena would violate the *Morgan* doctrine. *Id.* The plaintiff had argued that the comptroller should be able to designate a corporate representative on his behalf, but the court held that having to do so a mere thirteen days before trial would constitute an undue burden. *Id.* Paxton contends that because Plaintiffs provided only a few days' notice to Paxton, his testimony would likewise create an unreasonable burden.

However, the facts of *Texas Entertainment* are easily distinguished from the instant case. In *Texas Entertainment*, the plaintiff delayed over two years before serving a subpoena on the high-ranking official. *Id.* In this case, by contrast, Plaintiffs waited only a few days before attempting to serve Paxton with a subpoena. More importantly, the plaintiff in *Texas Entertainment* conceded that no exceptional circumstances existed. *Id.* The court's holding was directed at whether the public official should nonetheless be compelled to appoint a corporate representative in his stead. It did not address whether the plaintiff could meet the *Morgan* exception, since that issue was not in contention.

Weighing all factors, the Court concludes that Plaintiffs have carried their burden of demonstrating exceptional circumstances exist that merit the opportunity to question Paxton.

## III. CONCLUSION

For the reasons discussed above, **IT IS ORDERED** that Plaintiffs' motion for reconsideration, (Dkt. 67), is **GRANTED**.

**IT IS FURTHER ORDERED** that the Court's Text Order on September 27, 2022 granting Defendant's motion to quash is **VACATED**.

**IT IS FURTHER ORDERED** that Paxton's motion to quash, (Dkt. 44), is **DENIED**.

**IT IS FURTHER ORDERED** that the parties meaningfully confer **on or before October 11, 2022** to agree on the particulars of Paxton's testimony, whether by deposition or evidentiary hearing.

**IT IS FINALLY ORDERED** that the parties' agreed motion for entry of scheduling order, (Dkt. 79), is **MOOTED**. The parties' deadline to file post-hearing briefing and Plaintiffs' deadline to respond to Defendant's motion to dismiss, (Dkt. 33), shall be stayed pending Paxton's testimony.

**SIGNED** on October 4, 2022.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE