# United States Court of Appeals
# for the Fifth Circuit

No. 22-50882

FILED
November 14, 2022
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____Jay Vicha_____
DEPUTY

In re Ken Paxton,

*Petitioner.*

---

Petition for a Writ of Mandamus
to the United States District Court
for the Western District of Texas
USDC No. 1:22-CV-859

---

Before Higginbotham, Duncan, and Wilson, *Circuit Judges*.

Stuart Kyle Duncan, *Circuit Judge*:

Believing Texas intends to enforce its abortion laws to penalize their out-of-state actions, Plaintiffs sued Texas Attorney General Ken Paxton. Paxton moved to dismiss the suit for lack of subject matter jurisdiction. Plaintiffs then issued subpoenas to obtain Paxton's testimony. Paxton moved to quash the subpoenas, which the district court initially granted. On reconsideration, however, the district court changed course, denied the motion, and ordered Paxton to testify either at a deposition or evidentiary hearing. Paxton petitioned our court for a writ of mandamus to shield him from the district court's order. We conclude the district court clearly erred by not first ensuring its own jurisdiction and also by declining to quash the subpoenas. We therefore grant the writ.

No. 22-50882

I.

Plaintiffs are organizations that pay for abortions and an abortion provider (collectively, "Plaintiffs"). They sued Paxton and other officials, claiming the anticipated enforcement of Texas's abortion laws violates their First Amendment rights and their right to interstate travel.[1] Primarily, they seek to enjoin the enforcement of these laws "for any behavior undertaken by Plaintiffs in connection with any abortion that occurs outside the state of Texas[.]" Paxton promptly moved to dismiss the suit for lack of subject matter jurisdiction, arguing that he is entitled to sovereign immunity and that Plaintiffs lack standing.

Before the district court ruled on Paxton's motion to dismiss, Plaintiffs separately subpoenaed Paxton in his official and individual capacities. They contended they were entitled to examine Paxton personally to clarify his power to enforce the challenged laws because his public statements—including official advisories, campaign statements, and tweets—allegedly contradicted his court filings on that point. Paxton moved to quash the subpoenas, and the district court granted the motion. Plaintiffs then moved for reconsideration.

On reconsideration, the district court changed course and ruled Plaintiffs had shown the "exceptional circumstances" necessary to subpoena a high-level official like Paxton. The court thought Paxton's testimony was necessary because he "possesses unique, first-hand knowledge" about his intentions to enforce the challenged laws. His intentions were relevant, the

---

[1] Plaintiffs challenge both Texas's pre-*Roe* prohibition on abortion, *see* Tex. Rev. Civ. Stat. art. 4512–.2, .6, as well as the Human Life Protection Act (HLPA), Tex. Health & Safety Code ch. 170A, which was enacted in 2021 and became effective upon the overruling of *Roe v. Wade*, 410 U.S. 113 (1973). *See Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2242 (2022) (overruling *Roe*).

court continued, because Paxton had simultaneously publicly promised to enforce the laws while arguing in court that he lacked the authority to do so. Having "inserted himself into this dispute by repeatedly tweeting and giving interviews about [the challenged laws]," the court concluded that "Paxton alone is capable of explaining his thoughts and statements."

The court also determined that testifying would not unduly burden Paxton. While recognizing that high-level officials have significant duties, the court stated: "It is challenging to square the idea that Paxton has time to give interviews threatening prosecutions but would be unduly burdened by explaining what he means to the very parties affected by his statements." Paxton's "many public statements and interviews," the court thought, belied the notion that testifying would burden his time.

Accordingly, the district court reversed its initial decision, denied the motion to quash, and ordered Paxton "to meaningfully confer on or before October 11, 2022 to agree on the particulars of Paxton's testimony, whether by deposition or evidentiary hearing." The court also stayed Plaintiffs' deadline to respond to Paxton's motion to dismiss "pending Paxton's testimony." That motion remains pending.

Paxton then petitioned us for a writ of mandamus and a stay of the district court's order. He separately filed an interlocutory appeal, arguing that the order constructively denied him sovereign immunity. We granted a temporary administrative stay to consider the petition. We now grant it.

II.

Federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). One such writ is mandamus, an extraordinary remedy used to correct "a judicial usurpation of power" or a "clear abuse of discretion." *Cheney v. U.S. Dist. Ct. for D.C.,* 542 U.S. 367, 380 (2004)

(citations and internal quotation marks omitted). Typically, the writ serves as a means of "confining the inferior court to a lawful exercise of its prescribed jurisdiction, or of compelling it to exercise its authority when it is its duty to do so." *In re Gee*, 941 F.3d 153, 158 (5th Cir. 2019) (per curiam) (quoting *Ex parte Republic of Peru*, 318 U.S. 578, 583 (1943)).

Before the writ can issue, three conditions must be met: (1) the petitioner must show his right to the writ is clear and indisputable; (2) the petitioner must have no other adequate means of obtaining relief; and (3) the issuing court must be satisfied in its own discretion that the writ is appropriate under the circumstances. *Cheney*, 542 U.S. at 380–81; *In re Gee*, 941 F.3d at 157. Those stringent standards are satisfied here.

### A.

We turn first to Paxton's asserted right to relief from the order to testify. Our mandamus cases distinguish a court's discretionary and non-discretionary duties. *In re Gee*, 941 F.3d at 158. For discretionary duties, "a clear and indisputable right to the issuance of the writ of mandamus will arise only if the district court has clearly abused its discretion, such that it amounts to a judicial usurpation of power." *Id.* at 158–59 (quoting *In re First S. Sav. Ass'n*, 820 F.2d 700, 707 (5th Cir. 1987)). By contrast, violating a non-discretionary duty necessarily creates a clear right to relief because the court lacked authority to deviate from that duty. *Ibid.*

Paxton argues he has a right to relief under each basis. He contends the district court violated a non-discretionary duty to ensure its own jurisdiction by failing to rule first on his motion to dismiss. Paxton also argues the court abused its discretion by denying his motion to quash. We address argument each in turn.

No. 22-50882

1.

"A district court's obligation to consider a challenge to its jurisdiction is non-discretionary." *In re Gee*, 941 F.3d at 159. An appropriate jurisdictional challenge triggers a "duty of making further inquiry as to [the court's] own jurisdiction." *Ibid.* (quoting *Opelika Nursing Home, Inc. v. Richardson*, 448 F.2d 658, 666 (5th Cir. 1971)). Paxton raised such a challenge by moving to dismiss for lack of jurisdiction on both standing and sovereign immunity grounds, well before Plaintiffs subpoenaed him. The district court failed to rule on that motion before refusing to quash the subpoenas. Indeed, in the same order compelling Paxton to testify, the court stayed Plaintiffs' deadline to respond to the motion to dismiss "pending Paxton's testimony."

A court has a fundamental duty to examine its jurisdiction. The district court's failure to do so here extends beyond a "mere jurisdictional error" or "mere failure to spot a jurisdictional issue." *Id.* at 159. Indeed, the district court's order explicitly postpones Paxton's assertion of sovereign immunity pending his deposition. But sovereign immunity provides immunity from suit, not mere immunity from damages. *Russell v. Jones*, 49 F.4th 507, 512 (5th Cir. 2022); *see also Ex Parte Ayers*, 123 U.S. 443, 505 (1887) ("The very object and purpose of the eleventh amendment were to prevent the indignity of subjecting a state to the coercive process of judicial tribunals at the instance of private parties."). As such, we have vacated the perfunctory denial of a motion to dismiss predicated on sovereign immunity and remanded for consideration of the motion before any further litigation, even though the district court preferred to put off the motion until "other legal issues were resolved and further discovery was conducted." *Texas v. Caremark, Inc.*, 584 F.3d 655, 657 (5th Cir. 2009); *see also Russell*, 49 F.4th at 514 ("Where sovereign immunity applies, it applies totally. Plaintiffs stop at the Rule 12(b)(1) stage and don't get discovery. They don't pass go.").

No. 22-50882

Our recent decision in *Carswell v. Camp*, 37 F.4th 1062 (5th Cir. 2022), confirms the district court should have first ruled on Paxton's assertion of immunity.[2] There, the plaintiff sought to depose defendants who had asserted qualified immunity, relying on the district court's scheduling order that allowed limited discovery "if the plaintiff believes discovery is necessary to resolve the [qualified immunity] defense" or if discovery was in the defendant's capacity as a "witness." *Id.* at 1064–65. While some of our cases had previously allowed "narrow" and "careful" discovery prior to ruling on immunity "if further factual development is necessary to ascertain the availability of [the] defense," *Carswell* overruled those precedents. *Id.* at 1066 (citations and internal quotation marks omitted). We explained that "[t]he Supreme Court has now made clear that a plaintiff asserting constitutional claims against an officer must survive the motion to dismiss (and the qualified immunity defense) *without any* discovery." *Ibid.* (emphasis in original). In so doing, we emphasized that a defendant's entitlement to immunity "should be determined at the earliest possible stage of the litigation," a principle that "admits of no exceptions." *Id.* at 1067 (citations and internal quotation marks omitted). Accordingly, we held that the district court's scheduling order, which allowed discovery against defendants while deferring resolution of their asserted immunity, was an abuse of discretion. *Id.* at 1066.

Plaintiffs insist *Carswell* is inapposite because their subpoenas are "to obtain hearing testimony," not discovery, and because Paxton is being called as a "witness" with relevant knowledge, not as a party. We disagree. Even

---

[2] *Carswell* addressed qualified immunity but is pertinent here because, like sovereign immunity, qualified immunity provides "immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

assuming such distinctions make any difference,[3] Paxton is a defendant, not a third party, and to the extent his statements are relevant to Plaintiffs' claims, it is because of his status as a defendant. Moreover, *Carswell* already rejected similar arguments. The plaintiff there brought two sets of claims: § 1983 claims against the individual defendants and a *Monell* claim against the county. The plaintiff tried to couch deposing the immunity-asserting defendants as obtaining their testimony as "witnesses" for the *Monell* claim, not as defendants for the § 1983 claim. *Carswell*, 37 F.4th at 1068. We rejected this gambit, explaining that it "turn[ed] qualified immunity on its head" by opening the defendants to deposition before adjudication of their immunity defense. *Ibid*. So too here.

Finally, we reject Plaintiffs' argument that Paxton's testimony is somehow necessary to decide jurisdiction. Whether Paxton may be sued under the *Ex parte Young* exception to sovereign immunity does not turn on Paxton's campaign statements or tweets. Rather, it turns principally on whether Paxton "is statutorily tasked with enforcing the challenged law." *City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019). The same inquiry also informs the standing question. *See id.* at 1002. In other words, Paxton's jurisdictional defenses can be assessed by reference to Texas law. His personal deposition answers are irrelevant.

The district court had a non-discretionary duty to ascertain its jurisdiction by ruling on Paxton's motion to dismiss before allowing Paxton to be subpoenaed. *See In re Gee*, 941 F.3d at 159. Because the district court failed to do so, Paxton has a clear right to relief.

---

[3] *But see Russell*, 49 F.4th at 515 (holding sovereign immunity barred subpoenas even against third-party judges because subpoenas are a "coercive judicial process" that "issue under the court's authority and are enforced by court order").

2.

Apart from the jurisdictional question, the district court also clearly abused its discretion by refusing to quash the subpoenas. "[E]xceptional circumstances must exist before the involuntary depositions of high agency officials are permitted." *In re Off. of Inspector Gen., R.R. Ret. Bd.*, 933 F.2d 276, 278 (5th Cir. 1991) (per curiam). Before requiring such "apex" testimony, courts must consider: (1) the deponent's high-ranking status; (2) the substantive reasons for the deposition; and (3) the potential burden the deposition would impose on the deponent. *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995); *see also In re Bryant*, 745 F. App'x 215, 218 n.2 (5th Cir. 2018) (per curiam). A district court commits a "clear abuse of discretion" when it compels apex testimony absent extraordinary circumstances. *In re FDIC*, 58 F.3d. at 1062. No such circumstances exist here.

Only the second and third factors are disputed. As for the second factor, substantive need, the district court found Paxton's testimony was necessary to clarify his enforcement policy due to purported contradictions between his court filings and public statements. It concluded testimony was needed from Paxton himself because he had "unique, first-hand knowledge" from "ha[ving] inserted himself into this dispute by repeatedly tweeting and giving interviews about the [challenged law]." "Paxton alone," the district court thought, could "explain[] his thoughts and statements." We disagree.

The district court ignored the rationale for limiting apex testimony to exceptional circumstances. High-ranking officials—state attorneys general being the paradigm case—are often drawn into lawsuits. They cannot perform their duties if they are not personally shielded from the burdens of litigation. *In re Bryant*, 745 F. App'x at 220–21; *see also In re Stone*, 986 F.2d 898, 904 (5th Cir. 1993) (per curiam) ("Obviously, high-ranking officials of cabinet agencies could never do their jobs if they could be subpoenaed for

every case involving their agency."). Accordingly, a "key aspect" of the analysis "is whether the [sought after] information . . . can be obtained from other witnesses." *In re Bryant*, 745 F. App'x at 221. Where it can, apex testimony is justified only in the "rarest of cases." *In re FDIC*, 58 F.3d at 1062. This is not one of those rare cases.

The district court conceded the "plain fact that lawyers at the Attorney General's Office may articulate the Office's [enforcement] policies." So, by the court's own admission, if there is a need to clarify the office's enforcement policy, a representative can do so on the Attorney General's behalf. The court nonetheless treated Paxton as having unique information merely because he made public statements about a matter that later became the subject of litigation. That does not follow. Paxton's personal "thoughts and statements" have no bearing on his office's legal authority to enforce Texas's abortion laws or any other law. To accept the district court's position would undermine the exceptional circumstances test. It is entirely unexceptional for a public official to comment publicly about a matter of public concern. If doing so imparts unique knowledge, high-level officials will routinely have to testify.

Similarly, the district court erred in holding that compelling Paxton's testimony would not unduly burden him. The court reasoned that if Paxton has time to give public statements, he has time to testify: "It is challenging to square the idea that Paxton has time to give interviews threatening prosecutions but would be unduly burdened by explaining what he means to the very parties affected by his statements." Again, this reasoning would eviscerate the exceptional circumstances test. "High ranking government officials have greater duties and time constraints than other witnesses." *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993) (per curiam). Those duties often involve communicating with the public on matters of public interest.

The fact that a high-ranking official talks to his constituents does not *ipso facto* mean he also has ample free time for depositions.

In sum, the district court committed a "clear abuse of discretion" by finding that exceptional circumstances justified ordering Paxton to testify. *In re FDIC*, 58 F.3d. at 1062. Paxton has therefore shown a clear and indisputable right to relief.

### B.

Because mandamus is a remedy of last resort, the writ cannot issue unless the petitioner has no other adequate means of obtaining the relief he seeks. *Cheney*, 542 U.S. at 380. Here, not only has Paxton sought the writ, he has also filed a separate interlocutory appeal. Plaintiffs argue that this appeal is an adequate alternative avenue for relief, making the writ inappropriate.

Our precedent forecloses that argument. We have held that an interlocutory appeal does not constitute adequate relief where the party opposing the writ also challenges the jurisdictional basis for the appeal. In *In re FDIC*, we issued the writ to quash notices of deposition issued to members of the Board of Directors of the Federal Deposit Insurance Corporation ("FDIC"). 58 F.3d at 1057. The officials filed an interlocutory appeal while simultaneously seeking the writ. *Id.* at 1060 n.7. Notwithstanding the appeal, we held that that the officials had no other adequate means of obtaining relief because the opposing party had moved to dismiss the appeal for lack of jurisdiction. *Ibid.* As we explained, "[w]e do not think [the opposing party] can at once move to dismiss the appeal and urge that the FDIC has an adequate means of obtaining relief." *Ibid.* We issued the writ and dismissed the appeal as moot. *Id.* at 1063 n.10.

*In re FDIC* controls here because Plaintiffs have moved to dismiss Paxton's appeal for lack of jurisdiction. On the one hand, they argue that Paxton should not receive the writ because he can receive relief via his appeal.

On the other, they seek to prevent the appeal's resolution on the merits by challenging our jurisdiction. Under *In Re FDIC*, they cannot do both. Paxton's appeal is thus not an adequate alternative.

Paxton's only remaining source of relief is the writ. Without it, he will be compelled either to submit to testifying or risk contempt charges for violating the court's order.

## C.

Finally, we exercise our discretion to decide whether to issue the writ. The writ is always discretionary: "Discretion is involved in defining both the circumstances that justify exercise of writ power and also the reasons that may justify denial of a writ even though the circumstances might justify a grant." 16 Alan Wright, Arthur Miller, & Edward H. Cooper, Fed. Prac. and Proc. § 3933 (3d ed. 2012); *see also Duncan Townsite Co. v. Lane*, 245 U.S. 308, 311 (1917) ("Mandamus is an extraordinary remedial process which is awarded, not as a matter of right, but in the exercise of a sound judicial discretion."). We are satisfied that the writ should issue.

We sometimes deny the writ as a matter of prudence even when the district court erred, *see In re Depuy Orthopaedics, Inc.*, 870 F.3d 345, 347 n.4 (5th Cir. 2017) (collecting cases), but we typically do so when two conditions are met, neither of which is present here. First, our prudential denials involve a district court's mistaken resolution of a novel or thorny question of law. *See, e.g.*, *In re JPMorgan Chase & Co.*, 916 F.3d 494, 504 (5th Cir. 2019) (denying the writ where the district court "followed numerous others in errantly applying" the relevant legal standard); *In re Dean*, 527 F.3d 391, 394 (5th Cir. 2008) (per curiam) (denying the writ where "the district court, with the best of intentions, misapplied the law" on a legal question involving a circuit split); *In re Kleberg Cnty.*, 86 F. App'x 29, 34 (5th Cir. 2004) (denying

the writ where the district court "handled a delicate and novel legal issue but nevertheless [ran] afoul of controlling law"); *In re Stone*, 986 F.2d at 901 (denying the writ where the district court erred as to an "important, undecided issue"); *Landmark Land Co. v. Off. of Thrift Supervision*, 948 F.2d 910, 911 (5th Cir. 1991) (denying the writ after the erroneous interpretation of a "question of first impression"). These types of mistakes, made under difficult circumstances, may not rise to the level of a clear and indisputable error, as required for mandamus relief. *See In Re JPMorgan Chase*, 916 F.3d at 504.

Our prudential denials also involve the kind of errors that the district court can correct once we have clarified the proper legal standard. For instance, we declined to issue the writ when the district court improperly delayed crime victims from exercising their statutory right to participate in the offender's plea agreement process. *In Re Dean*, 527 F.3d at 396. Despite this error, we were "confident . . . that the conscientious district court will fully consider the victims' objections and concerns in deciding whether the plea agreement should be accepted." *Ibid.* Similarly, we denied the writ where the district court erroneously required a representative of the government with settlement authority to be present at all settlement conferences without considering more tailored measures. *In re Stone*, 986 F.2d at 905. In denying the writ, we noted that "[t]he able district judge has indicated that he welcomes this court's exposition of this issue, and we are confident that he will abide by our decision and adjust his directives accordingly." *Ibid.*; *see also In re Kleberg Cnty.*, 86 F. App'x at 34 (denying writ where the district court would have the opportunity to "reconsider its [error] in light of the standards we have articulated").

Neither circumstance is present here. The district court's twin errors occurred in areas of the law governed by well-settled standards. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 319 (5th Cir. 2008) (en banc)

(suggesting that discretion counsels issuing the writ where the court reached a "patently erroneous result"). Moreover, the errors are ones that cannot be rectified as the case progresses. Paxton's compelled testimony cannot be undone or corrected by the district court or a reviewing court once it occurs. We are therefore satisfied that, under the circumstances, we should exercise our discretion to issue the writ.

## III.

The petition for writ of mandamus is GRANTED, directing the district court to vacate its October 4, 2022 order and grant Paxton's motion to quash. Paxton's interlocutory appeal, No. 22-50889, and motion for stay are DISMISSED as MOOT. Finally, our temporary stay of October 10, 2022, is LIFTED.

No. 22-50882

PATRICK E. HIGGINBOTHAM, *Circuit Judge*, concurring:

I agree that the district court must resolve the question of whether the parties before it have standing and join in the remand for further proceedings.

The energy driving this case is generated by its subject—not its complexity. Plaintiffs proceeding under § 1983 seek injunctive and declaratory relief—a declaration that Texas's Human Life Protection Act (HLPA), among other anti-abortion statutes, cannot be enforced against persons assisting Texans to obtain abortion healthcare in states where abortion is permitted.

[1] HLPA makes abortion a felony unless a woman's pregnancy creates a "life-threatening physical condition."[2] The statute grants *inter alia* the Attorney General the power to enforce its terms by imposing a fine of "no[] less than $100,000."[3] Plaintiffs fear that Attorney General Ken Paxton will pursue civil liability for assisting Texans to obtain abortion healthcare in states not prohibiting abortion, chilling their exercise of free speech and their constitutional right to interstate travel. On the extant record, these assertions are not fanciful. Plaintiffs' briefs cite to statements assertedly made by Attorney General Paxton in media interviews, press releases, and twitter posts promising, among other things, "to make people pay if they're going to do abortions;"[4] that Attorney General Paxton clarified in his briefings that

---

[1] As detailed in their original complaint, Plaintiffs "seek to enjoin Defendants from applying Texas's anti-abortion laws to Plaintiffs for the legal exercise of their rights." They "also seek a declaratory judgment declaring unconstitutional, null and void the retroactive application of the Pre-*Roe* Statutes and to enjoin Defendants from applying them against Plaintiffs, their staff, volunteers, and/or donors for conduct that preceded the *Dobbs* decision."

[2] Tex. Health & Safety Code Ann. § 170A.002.

[3] *Id.* § 170A.005.

[4] Several witnesses stated that they understood these statements to cover out-of-state abortion care but could not be sure because the statements were unclear.

No. 22-50882

the State's interest in protecting unborn Texans "continues whether the Texan mother seeks an abortion in Denver or Dallas, in Las Cruces or Lamesa." Plaintiffs also point to statements by other state officials, who while lacking specific enforcement authority under state law nonetheless fuel a climate of fear of suit or prosecution.[5]

While it appears on the face of the complaint that Plaintiffs may have an adequate stake in providing out-of-state abortion access, their standing—injury and redressability—here is not self-evident, and as a threshold matter jurisdiction must be addressed. This is rote. My colleagues go further, applying *Carswell v. Camp*'s complete ban on discovery prior to the determination of *qualified* immunity to the determination of *sovereign* immunity.[6] That any obligation of Attorney General Paxton to testify is fully resolved by the Apex doctrine aside, the mandate has not yet issued in *Carswell*, but even if it is proffered as a decision of this panel, now informed but not controlled by precedent, I cannot agree. It is at best "unsettled jurisprudence." The Apex doctrine does all the work here and it is not apparent that discovery from the Attorney General is essential to this case. "Exceptional circumstances" do not exist to justify deposing a high-ranking official when the information desired from testimony can be obtained elsewhere.[7] Plaintiffs seek testimony from Attorney General Paxton while at the same time urging that his statements—their content and inconsistency, including in these proceedings—chill their constitutionally protected rights. It signifies that these inferences are drawn from the present record: Indeed,

---

[5] Plaintiffs cite, for example, a letter sent by a group of State legislators who threatened an organization with criminal liability for "reimburs[ing] the travel costs of employees who leave Texas to murder their unborn children."

[6] *Cf. Carswell v. Camp*, 37 F.4th 1062, 1066 (5th Cir. 2022) (addressing district courts' rulings on "qualified immunity" questions).

[7] *In re Bryant*, 745 F. App'x 215, 221 (5th Cir. 2018) (unpublished per curiam).

No. 22-50882

Attorney General Paxton argues to this Court that the potential liability Plaintiffs fear is "nonexistent," while at the same time he argues that when "procurement takes the form of a bus ticket for the pregnant Texan to an abortion clinic, or the paying from Texas of the cost of a pregnant Texan's hotel room adjacent to that clinic, it does not matter if the travel and hotel are in Albuquerque or Austin" for the State to have an interested in protecting the unborn.

The point is that, on the record at hand, a trier of fact, which we are not, could find there is sufficient evidence of an unsettling and chilling want of clarity in statements by officials with enforcement authority made against a chorus of state officials without enforcement power to allow this case to proceed. Those issues and the jurisdictional issue of Plaintiffs' standing, including any discovery they may entail, remain for the district court.

As for mandamus, we need only remind that Plaintiffs cannot move to dismiss the interlocutory appeal while also arguing that it affords the Attorney General another adequate means of obtaining relief,[8] as they do in this case. I would end the mandamus inquiry here.

---

[8] *See In re FDIC*, 58 F.3d 1055, 1060 n.7 (5th Cir. 1995).