# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | |
|---|---|
| **FUND TEXAS CHOICE, et al,**<br><br>     **Plaintiffs,**<br>**v.**<br><br>**KEN PAXTON, et al.,**<br><br>     **Defendants.** | **Civil Case No. 1:22-cv-859-RP** |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## TABLE OF CONTENTS

I.   RELEVANT FACTS...................................................................................................... 2

     A.    Plaintiffs...................................................................................................... 2

     B.    Defendants ................................................................................................... 3

II.   LEGAL STANDARDS ................................................................................................ 5

     A.    Rule 12(b)(1) Standard .............................................................................. 5

     B.    Rule 12(b)(6) Standard .............................................................................. 6

III.   ARGUMENT AND AUTHORITIES ........................................................................... 6

     A.    The Court Has Jurisdiction over All of Plaintiffs' Claims. .................................. 6

          1.    *Ex Parte Young* applies to Plaintiffs' claims............................... 6

          2.    Plaintiffs have standing. .......................................................... 8

          3.    Plaintiffs assert their own injuries and allege facts to establish associational standing............................................................... 11

          4.    The Court should not abstain under *Pullman*. ............................ 12

     B.    Plaintiffs Plausibly Alleged All of Their Claims. ................................................ 13

          1.    Plaintiffs have a First Amendment right to fund legal conduct. ............... 13

          2.    A restraint on funding or assistance for out-of-state abortions cannot pass rational basis scrutiny, much less strict scrutiny. .............................. 14

          3.    Plaintiffs alleged viable Right to Travel claims. ........................................ 15

          4.    The Pre-*Roe* Statutes were impliedly repealed and enforcing them would violate Due Process. ....................................................... 17

          5.    Plaintiffs alleged viable claims that certain parts of the Texas Abortion Laws violate the U.S. Constitution and are preempted by federal law. ................................................................................ 18

IV.   CONCLUSION.......................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507
(5th Cir. 2017)................................................................................................................7

*Altria Group, Inc. v. Good*, 555 U.S. 70 (2008) ...........................................................18

*Animal Legal Def. Fund v. Vaught*, 8 F.4th 714 (8th Cir. 2021) .................................10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................................6

*Baggett v. Bullitt*, 377 U.S. 360 (1964)........................................................................13

*Bigelow v. Virginia,* 421 U.S. 809 (1975).....................................................................16

*Bonaparte v. Appeal Tax Court of Baltimore*, 104 U.S. 592 (1881) ...........................17

*Bouie v. City of Columbia*, 378 U.S. 347 (1964) ..........................................................17

*Califano v. Gautier Torres*, 435 U.S. 1 (1978).............................................................16

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010).............................11, 14

*City of Austin v. Paxton*, 943 F.3d 993 (5th Cir. 2019) ..................................................7

*City of Fort Worth v. Craik*, 411 S.W.2d 541 (Tex. 1967)...........................................13

*Corfield v. Coryell*, 6 F. Cas. 546 (C.C.E.D. Pa. 1823).................................................15

*Cuvillier v. Taylor*, 503 F.3d 397 (5th Cir. 2007)...........................................................6

*Dobbs v. Jackson Women's Health Organization*, 213 L. Ed. 2d 545 (2022)....................2, 4, 5, 7

*Ex Parte Young*, 209 U.S. 123 (1908) ...........................................................1, 6, 7, 8

*F.D.I.C. v. Abraham*, 137 F.3d 264 (5th Cir. 1998) .....................................................18

*Fed. Crude Oil Co. v. Yount-Lee Oil Co*., 52 S.W.2d 56 (1932)..................................18

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305.............................20

*Harris Cty. Com'rs Ct. v. Moore*, 420 U.S. 77 (1975) ...........................................12, 13

*Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006 (5th Cir.
1998) ..............................................................................................................................5

*Huntington v. Attrill*, 146 U.S. 657 (1892) ....................................................................17

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007) ...............................6

*In re Ken Paxton*, Case No. 22-50882 (Oct. 7, 2022, 5th Cir.) .......................................1

*In re Paxton*, No. 22-50882, --- F.4th ---, 2022 WL 16921697 (5th Cir. Nov. 14, 2022) ........................................................................................................1, 7, 10

*KVUE, Inc. v. Moore*, 709 F.2d 922 (5th Cir. 1983) .....................................................10

*La Union del Pueblo Entero v. Abbott*, No. 5:21-CV-0844-XR, 2022 WL 3052489 (W.D. Tex. Aug. 2, 2022) ...................................................................7

*Lane v. Halliburton*, 529 F.3d 548 (5th Cir. 2008) .........................................................5

*Legal Servs. Corp. v. Velazquez*, 531 U.S. 533 (2001) ..................................................20

*Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 145 F.3d 238 (5th Cir. 1998) ..........12

*McCorvey v. Hill*, 385 F.3d 846 (5th Cir. 2004) ......................................................17, 18

*Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018) .................15

*Nat'l Press Photographers Ass'n v. McCraw*, 504 F.Supp.3d 568 (W.D. Tex. 2020) ............................................................................................................ *passim*

*NetChoice, L.L.C. v. Paxton*, No. 21-51178, 2022 WL 4285917 (5th Cir. Sept. 16, 2022) ...........................................................................................................15

*New York Life Ins. Co. v. Head*, 234 U.S. 149 (1914) ..................................................16

*Nielsen v. State of Oregon*, 212 U.S. 315 (1909) ..........................................................17

*Nissan Motor Corp. in U.S.A. v. Harding*, 739 F.2d 1005 (5th Cir. 1984) ...................12

*Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) .........................................................11

*Pike v. Bruce Church, Inc.,* 397 U.S. 137 (1970) ..........................................................17

*PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011) ...............................................................18

*Police Department of Chicago v. Mosley*, 408 U.S. 92 (1972) ......................................15

*Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941) ......................12, 13

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) ..............................................................15

*Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781 (1988) .................13

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47 (2006)...........................................8

*Russell v. Lundergan-Grimes*, 784 F.3d 1037 (6th Cir. 2015) ........................................................7

*Saenz v. Roe*, 526 U.S. 489 (1999) ................................................................................................16

*Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620 (1980)......................................14

*Secretary of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947 (1984) ..........................14

*Speech First, Inc. v. Fenves,* 979 F.3d 319 (5th Cir. 2020) .............................................................8

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) ...............................................16

*State v. Morales*, 869 S.W.2d 941 (Tex. 1994)...............................................................................13

*Tex. Entm't Ass'n, Inc. v. Hegar*, 10 F.4th 495 (5th Cir. 2021)......................................................14

*Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535 (5th Cir. 2013) ...........................14

*Turner v. Pleasant*, 663 F.3d 770 (5th Cir. 2011)............................................................................6

*United Food & Comm. Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S.
544 (1996).................................................................................................................................11, 12

*Ward v. State*, 79 U.S. 418 (1870) .................................................................................................16

*Zwickler v. Koota*, 389 U.S. 241 (1967) ........................................................................................12

**Statutes and Constitutional Provisions**

28 U.S.C. § 2202.................................................................................................................................8

42 U.S.C. § 1856...............................................................................................................................19

42 U.S.C. § 1983............................................................................................................................9, 22

42 U.S.C. § 1988...............................................................................................................................20

TEX. CIV. PRAC. & REM. CODE ANN. § 30.022 ...........................................................................19, 20

TEX. CODE CRIM PROC. art. 2.01........................................................................................................3

TEX. CODE CRIM PROC. art. 206.........................................................................................................3

Tex. Health & Safety Code Ann., § 170A.005 ..................................................................................7

TEX. HEALTH & SAFETY CODE § 170A.001 .......................................................................................2

TEX. REV. CIV. STATS. ANN. art. 4512.1 ...........................................................................................2

Tex. Rev. Civ. Stats. Ann. art. 4512.2 ..................................................................2

Tex. Rev. Civ. Stats. Ann. art. 4512.3 ..................................................................2

Tex. Rev. Civ. Stats. Ann. art. 4512.4 ..................................................................2

Tex. Rev. Civ. Stats. Ann. art. 4512.6 ..................................................................2

U.S.C.A. § Articles of Confederation, Art. IV, ¶ 1. (1777)....................................16

**Rules & Regulations**

70 Fed. Reg. 4588, 4664 (Jan. 28, 2005) ...............................................................19

Fed. R. Civ. P. 12........................................................................................1, 2, 6

Fed. R. Civ. P. 15...............................................................................................20

**Other Authorities**

Blackstone, Commentaries On the Laws of England, Book 1: The Rights of
    Persons, Chapter 1 – Of the Absolute Rights of Individuals, II ..............................16

https://telehealth.hhs.gov/providers/billing-and-reimbursement/billing-and-
    coding-medicare-fee-for-service-claims/#coding-claims-during-covid-19 (last
    updated May 17, 2022) ...................................................................................19

Magna Carta, Leonard B. Boudin, The Constitutional Right to Travel, 56 Colum.
    L. Rev. 47 (1956)...........................................................................................16

Senate Bill 8...................................................................................................11

U.S. Const., Art. VI, cl. 2....................................................................................18

General Paxton moved to dismiss Plaintiffs' Complaint in its entirety under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (ECF 33) ("**MTD**"). While General Paxton's MTD was pending, he sought relief by interlocutory appeal and mandamus to avoid testifying at a hearing on Plaintiffs' Application for Preliminary Injunction. Petition for Writ Mandamus, *In re Ken Paxton*, Case No. 22-50882 (Oct. 7, 2022, 5th Cir.); Attorney General Paxton's Notice of Appeal (ECF 87). Plaintiffs timely filed their First Amended Complaint ("**FAC**") during those appeals. (ECF 90). The Fifth Circuit panel granted General Paxton's mandamus request and quashed Plaintiffs' subpoena on November 14, 2022, holding that that General Paxton's testimony is not necessary to resolve his jurisdictional defenses:

> Whether Paxton may be sued under the *Ex parte Young* exception to sovereign immunity does not turn on Paxton's campaign statements or tweets. Rather, it turns principally on whether Paxton "is statutorily tasked with enforcing the challenged law." The same inquiry also informs the standing question. In other words, **Paxton's jurisdictional defenses can be assessed by reference to Texas law. His personal deposition answers are irrelevant**.

*In re Paxton*, No. 22-50882, --- F.4th ---, 2022 WL 16921697, at *1, 6 (5th Cir. Nov. 14, 2022) (internal citations omitted, emphasis added). Judge Higginbotham, in concurrence, clarified:

> The point is that, on the record at hand, a trier of fact, which we are not, could find there is sufficient evidence of an unsettling and chilling want of clarity in statements by officials with enforcement authority made against a chorus of state officials without enforcement power to allow this case to proceed.

*Id.* at *7 (Higginbotham, J., concurring).

As made clear by Plaintiffs' detailed allegations, the evidence already before this Court, Texas law, and the Fifth Circuit's guidance, *Ex Parte Young* applies to Plaintiffs' claims against

General Paxton and Plaintiffs have Article III standing. The MTD should be denied.[1]

## I.    RELEVANT FACTS[2]

### A.    Plaintiffs

Plaintiffs are eight Texas-based non-profit abortion funds and practical support networks (the "Fund and Support Plaintiffs"), and Dr. Ghazaleh Moayedi, an OB-GYN and abortion provider who resides in Texas. FAC at ¶¶ 22-41.  In the wake of *Dobbs v. Jackson Women's Health Organization*,[3] and because of the credible threat of enforcement of the Texas Trigger Ban[4] and the Pre-*Roe* Statutes[5] against them, all of the Plaintiffs have ceased certain constitutionally protected activities that they wish to resume:

(1)    paying for abortions that occur outside the state of Texas where those abortions are legal;

(2)    paying for or otherwise helping Texans access travel support to allow them to obtain abortion care outside the state of Texas where it is legal;

(3)    paying for or otherwise helping Texans access practical support—like childcare—to allow them to obtain abortion care where it is legal;

---

[1] General Paxton filed his MTD in the same document as his Response to Plaintiffs' Motion for Preliminary Injunction. ECF 33. Plaintiffs filed their Reply in Support of their Motion for Preliminary Injunction on September 26, 2022, (ECF 56), and the Court conducted an evidentiary hearing on September 27, 2022 (ECF 24) ("**PI Hearing**").  Because some of the preliminary injunction arguments overlap with arguments in the MTD, Plaintiffs refer to and incorporate their briefing on the Motion for Preliminary Injunction.

[2] Plaintiffs' factual allegations are contained in the FAC. The factual record currently includes: (1) Plaintiffs' Appendix and Supplemental Appendix in Support of their Motion for Preliminary Injunction, (ECF 4 and 57); (2) the Exhibits offered by Plaintiffs and Defendant and admitted by the Court in connection with the PI Hearing (ECF 82); (3) the sworn testimony provided during the PI Hearing; and (4) Plaintiffs' Appendix in Support of this Response. Because the Court may consider evidence in its analysis of the 12(b)(1) issues, Plaintiffs are including it for the Court's convenience. The Exhibits offered and admitted at the PI Hearing are cited by their numerical designations as "**Pls.' Ex.**". Plaintiffs' Appendix to this Response is cited as "**App. Ex.**". The declaration proving up these materials is App. Ex. A, while each exhibit is sequentially numbered App. Ex. A-1 through A-21. The PI Hearing transcript is included as App. Ex. A-20. None of the evidence referenced is offered in response to General Paxton's Rule 12(b)(6) arguments.

[3] 213 L. Ed. 2d 545 (2022).

[4] TEX. HEALTH & SAFETY CODE § 170A.001, *et seq*.

[5] TEX. REV. CIV. STATS. ANN. art. 4512.1, 4512.2, 4512.3, 4512.4, 4512.6.

**PLAINTIFFS' RESPONSE TO MOTION TO DISMISS – Page 2**

(4)     traveling with Texans who leave the state to obtain legal abortion care; and

(5)     in the case of Dr. Moayedi, traveling to states in which she is licensed to perform abortion care for Texans, and providing telemedicine abortion care from her home state of Texas in states where such care is legal.

All Plaintiffs also seek to freely associate and speak about these activities. *See* FAC at ¶¶ 11-12, 14, 23-28; Pls.' Exs. 20-41.[6]

## B.     Defendants

Defendants are Texas Attorney General, Ken Paxton, in his official capacity; and four District Attorneys of the State of Texas and the Burleson County Attorney (collectively the "**Prosecutor Defendants**"). Each of the Prosecutor Defendants has the authority within his or her respective districts to file and pursue criminal cases, including any cases charging a violation of the Trigger Ban and/or Pre-*Roe* Statutes.[7] Each also has stipulated that: (1) because of that authority, he or she is a proper defendant; (2) there is a significant controversy regarding the constitutionality, scope, and potential invalidity of the Trigger Ban and the Pre-*Roe* Statutes; and (3) the injuries alleged by Plaintiffs would be redressed by an order of this Court defining the constitutionality and scope of the challenged laws.[8] Pls.' Exs. 46-47 at 1-3.

General Paxton is authorized by the Trigger Ban to pursue perceived violators of that law for a minimum statutory penalty of $100,000 per violation, and he has publicly promised to do so. FAC at ¶45; Pls.' Ex. 14 at 2; Ex. 3 at 2. He has made clear his intention to fully enforce the Trigger Ban, even in situations where abortion care occurs outside of the State of Texas. For example:

- In an interview with Leland Vittert on June 24, 2022, General Paxton stated that he can, and that his office will, enforce civil penalties under the Trigger Ban. FAC at ¶ 93; Pls.' Ex. 63. He further stated that he believed the laws reach organizations that offer abortion

---

[6] *See also* App. Ex. A-20 at 9:24-10:11, 15:16-19, 18:9-22, 59:8-14, 60:17-61:1, 185:3-186:5, 211:9-13, 211:17-212:6.
[7] *See* TEX. CODE CRIM. PROC. arts. 2.01, 2.02.
[8] None of the Prosecutor Defendants moved to dismiss any of Plaintiffs' claims.

travel assistance for employees. *Id.*[9]

- Immediately after the *Dobbs* opinion issued on June 24, General Paxton put out an alert that stated "My office is specifically authorized to pursue and recover those civil penalties [authorized by the Trigger Ban], and I will strictly enforce this law." Pls.' Exs. 3, 34.

- On June 28, 2022, General Paxton tweeted that the "Harris County judge froze pre-Roe laws criminalizing abortion in TX. But w/SCOTUS's Dobbs decision, these laws are 100% in effect & constitutional." FAC at ¶96; Pls.' Exs. 4, 42.

- On June 29, 2022, in an interview on the Great America Show with Lou Dobbs, General Paxton lamented that some DAs in Texas would not prosecute violations of the Trigger Ban: "However, I do have the ability to civilly prosecute and the minimum fine for this is $100,000 so I can tell you, we're going to use the full force of that law to make people pay if they're going to do abortions." FAC at ¶97; Pls.' Ex. 64.

- On June 30, 2022, General Paxton filed an emergency motion with the Texas Supreme Court asserting that the Pre-*Roe* Statutes were fully enforceable and no pre-enforcement challenge in Texas state court is available. FAC at ¶98; Pls.' Exs. 32, 44.

- Following the Texas Supreme Court's decision granting in part his emergency motion, General Paxton tweeted "Our state's pre-Roe statutes banning abortion in Texas are 100% good law." FAC at ¶99; Pls.' Ex. 41.

- On July 1, 2022, General Paxton tweeted, "Texas's pre-Roe statutes criminalizing abortion is [sic] 100% good law, and I'll ensure they're enforceable." FAC at ¶100; Pls.' Ex. 42.

- On July 7, 2022, the Texas Freedom Caucus copied General Paxton on a letter to the law firm of Sidley Austin. Among other things, the letter informed Sidley Austin "of the consequences" the firm would face for "reimburs[ing] the travel costs of employees who leave Texas" to obtain abortion care, including felony criminal liability under the Pre-*Roe* Statutes for "furnishing the means for procuring an abortion knowing the purpose intended[.]" FAC at ¶100; Pls.' Ex. 1 at 2. The letter was widely publicized when the Texas Freedom Caucus posted it to various social media platforms and each of the Plaintiffs in this case saw it. App. Ex. A-19.[10]

---

[9] When asked directly whether Texas would go after companies who offered to pay for their employees to go out of state to have an abortion, Paxton responded: "We're going to look whether the language covers at least the civil side, and that's obviously at least what we can deal with. These penalties can be, even for corporations, over $100,000 per violation, so we'll see…we're looking at that literally as we speak."

[10] Representative Briscoe Cain, a member of the Texas Freedom Caucus, also specifically connected the funding of abortions and the funding of travel to obtain abortions out of state to criminal liability in a series of Tweets during this time. Pls.' Exs. 6, 8-9; App. Ex. A-2. Several of the Tweets were directed specifically at abortion funds, including the Plaintiffs. *Id.*

- On June 24, 2022, when asked what will happen when a District Attorney declines to prosecute, General Paxton explained: "I have the opportunity to impose some of the civil penalties, so the minimum penalty is 100,000, and it can go up to an unlimited amount. **So we will be pursuing the civil side of this**." FAC at ₧94; Pls.' Ex. 63 (transcribed from audio by drafter, emphasis added).

- On July 27, 2022, immediately after the judgment and mandate in *Dobbs* issued, General Paxton put out another advisory from his office, reiterating his prior statements in his June 24 alert. FAC at ₧102; Pls.' Ex. 27.

- In his MTD, filed on September 19, 2022, General Paxton stated that the challenged Texas laws apply to activities that help pregnant Texans procure out-of-state abortions: "Rather, criminalization is a means to an end—the protection of human life, including the life of the unborn. That interest continues whether the Texas mother seeks an abortion in Denver or Dallas, in Las Cruces or Lamesa. **When that procurement takes the form of a bus ticket for the pregnant Texan to an abortion clinic, or the paying from Texas of the cost of a pregnant Texan's hotel room adjacent to that clinic, it does not matter if the travel and hotel are in Albuquerque or Austin—the procurement in Texas of the means of an abortion has intruded upon the State's interest in the protection of human life**." MTD at 24 (emphasis added).

- When asked by this Court whether General Paxton's civil enforcement authority under the Trigger Ban applies to the conduct Plaintiffs seek to resume, counsel for the OAG refused to provide a direct answer. Instead, he said "As a general matter, our position is that this is not something that is amendable to a broad, . . . up-or-down decision on the front end that like most criminal statutes, the facts are very important and that the appropriate time to raise a First Amendment defense to something like this or any kind of defense to this kind of statute would be in the context of an individual criminal proceeding." App. Ex. A-20 at 248:3-10; *see also id.* at 252:15-24 ("[W]hatever is happening in state law perhaps that is chilling their conduct.").

## II.      LEGAL STANDARDS

### A.      Rule 12(b)(1) Standard

A federal court properly dismisses a case "for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). In ruling on a Rule 12(b)(1) motion, the court may consider: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

B.      **Rule 12(b)(6) Standard**

"[A] motion to dismiss under 12(b)(6) is viewed with disfavor and is rarely granted."

*Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (cleaned up). In deciding a Rule 12(b)(6)

motion to dismiss, a "court accepts all well-pleaded facts as true, viewing them in the light most

favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)

(internal quotation marks omitted). "To survive a Rule 12(b)(6) motion to dismiss, a complaint

does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement

to relief—including factual allegations that when assumed to be true raise a right to relief above

the speculative level." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (internal quotation

marks omitted). That is, "a complaint must contain sufficient factual matter, accepted as true, to

state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.*

## III.      ARGUMENT AND AUTHORITIES

A.      **The Court Has Jurisdiction over All of Plaintiffs' Claims.**

General Paxton challenges this Court's jurisdiction by asserting sovereign immunity,

claiming that Plaintiffs do not have standing, and encouraging the Court to abstain from

considering the critically important federal and constitutional questions presented.  MTD at 3-14,

30-32.  None of these arguments has any merit.

1.      ***Ex Parte Young* applies to Plaintiffs' claims.**

Under the *Ex Parte Young* exception to sovereign immunity, lawsuits may proceed in

federal court when a plaintiff requests prospective relief against state officials in their official

capacities for ongoing federal violations. 209 U.S. 123, 159-60 (1908). It applies when state

officials "by virtue of their office" have "some connection with the enforcement of the challenged act." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) (cleaned up).[11] The "connection" component overlaps with Article III standing requirements. *Id.* at 1002 ("In fact, it may be the case that an official's connection to enforcement is satisfied when standing has been established.") (cleaned up).[12] As explained in Section I.A.2 *infra*, the threat of enforcement in this case is more than sufficient to establish Article III standing.

General Paxton suggests that he does not enforce the Trigger Ban because he lacks criminal prosecution powers under it. MTD at 13. But General Paxton has the **exclusive** power to file suits for ruinous civil penalties under the Trigger Ban,[13] a fact that is not altered by the existence of other correct defendants (who have different enforcement authority).[14] As the party "statutorily tasked with enforcing the challenged law" he is a proper *Ex Parte Young* defendant. *In re Paxton*, 2022 WL 16921697, at *4. The Trigger Ban is a new law that arguably proscribes the conduct at issue in this case, and according to General Paxton, the Pre-*Roe* Statutes have been unearthed from their graves as a result of *Dobbs*. Therefore, Plaintiffs are entitled to a presumption of a credible

---

[11] General Paxton argues that *Ex Parte Young* may not be used to nakedly force the state to conform to its own laws. MTD at 16. This ignores that Plaintiffs' injuries asserted are exclusively federal. While the improper construction of Texas state law underlying the threats against Plaintiffs are wrong as a matter of law, the harm caused is the invasion of rights protected by federal law and the U.S. Constitution. Seeking declaratory and prospective injunctive relief construing state laws so that they do not violate federal law is a garden-variety use of *Ex Parte Young*. *See Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 519 (5th Cir. 2017).

[12] The Sixth Circuit has explicitly so ruled. *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015) ("[A]t the point that a threatened injury becomes sufficiently imminent and particularized to confer Article III standing, that threat of enforcement also becomes sufficient to satisfy this element of *Ex parte Young*.").

[13] *See* Tex. Health & Safety Code Ann., § 170A.005 ("A person who violates Section 170A.002 is subject to a civil penalty of not less than $100,000 for each violation. **The attorney general shall file an action to recover a civil penalty assessed under this section**…" (emphasis added)).

[14] *See, e.g., La Union del Pueblo Entero v. Abbott*, No. 5:21-CV-0844-XR, 2022 WL 3052489, at *5-21 (W.D. Tex. Aug. 2, 2022) (Attorney General and Secretary of State sufficiently connected to the enforcement of certain election laws to be proper *Ex Parte Young* defendants).

threat of enforcement absent compelling evidence to the contrary. General Paxton has offered **no** such evidence and all of the evidence before the Court confirms General Paxton's enforcement, regardless of where an abortion occurs.[15]

Moreover, although General Paxton cannot alone initiate any criminal proceedings, Plaintiffs' claims against the Prosecutor Defendants (who indisputably have that authority) seek declaratory relief. Because General Paxton has publicly stated his position that the Pre-*Roe* Statutes are and remain fully enforceable, this Court also has supplemental jurisdiction over him for this declaratory judgment claim. *See* 28 U.S.C. § 1367(a); 28 U.S.C. § 2202 ("In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration.).[16]

### 2. Plaintiffs have standing.

"To have [Article III] standing, a plaintiff must (1) have suffered an injury in fact, (2) that is fairly traceable to the challenged action of the defendant, and (3) that will likely be redressed by a favorable decision." *Speech First, Inc. v. Fenves,* 979 F.3d 319, 330 (5th Cir. 2020) (citing *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560–61 (1992), *as revised* (Oct. 30, 2020)).[17]

*Injury*. In a pre-enforcement challenge to a criminal law, injury-in-fact is established when the plaintiff "(1) has an intention to engage in a course of conduct arguably affected with a

---

[15] *Ex Parte Young* does not require that the defendant show a willingness to enforce in a precise context. "Neither a specific grant of enforcement authority nor a history of enforcement is required to establish a sufficient connection. There need only be a scintilla of enforcement by the relevant state official for *Ex Parte Young* to apply." *McCraw*, 504 F.Supp.3d at 582 (cleaned up).

[16] General Paxton is the top law enforcement officer of the state and has specifically taken a position on the legal effect of the Pre-*Roe* Statutes and is therefore an "interested party." FAC at ¶¶ 3, 45, 59, 89-105, 109, 112. General Paxton has also repeatedly advocated full enforcement of the Pre-*Roe* statutes and stated unequivocally that he will assist any criminal prosecution under them. FAC at ¶¶ 80, 87-89; Pls' Exs. 62-64.

[17] Only one plaintiff is required to demonstrate standing to satisfy Article III's case-or-controversy requirement. *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 53 n.2 (2006).

constitutional interest, (2) his intended future conduct is arguably proscribed by the policy in question, and (3) the threat of future enforcement of the challenged policies is substantial." *Fenves*, 979 F.3d at 330 (cleaned up). "[W]hen dealing with pre-enforcement challenges to recently enacted (or, at least, non-moribund) statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence." *Id.* at 335.

Every single Plaintiff specifically described the conduct in which they would like to engage. *See* Pls.' Exs. 16-23.[18] Plaintiffs also confirmed that they are currently not engaging in their desired conduct because it is arguably proscribed by the Pre-*Roe* Statutes and the Trigger Ban. FAC at ⁋⁋11, 23-24, 26-28, 30-31, 33, 35, 39, 41, 109, 111, 132, 134; Pls.' Exs. 16-23.[19] General Paxton does not assert that the challenged statutes do not apply to Plaintiffs' desired conduct. Instead, his MTD **confirms** that General Paxton's position on these statutes is exactly as Plaintiffs alleged—namely, that General Paxton, as the top state law enforcement official, believes that Texas has criminalized conduct that merely assists legal abortions that occur in another state. MTD at 24. The evidence offered at the preliminary injunction hearing also confirms this position. Pls.' Exs. 1, 3-4, 25-30, 32, 34-38, 41-42, 62-64. Moreover, when directly asked to provide the official position of the Office of the Attorney General ("**OAG**") regarding whether the desired conduct of Plaintiffs would subject them to civil enforcement penalties by the OAG, counsel left the question open and stated that Plaintiffs could raise their defenses in a prosecution. App. Ex. A-

---

[18] Some of the Plaintiffs also testified about these issues during the PI hearing. App. Ex. A-20 at 9:24-10:11, 15:16-19, 18:9-22, 59:8-14, 60:17-61:1, 185:3-186:5, 211:9-13, 211:17-212:6.

[19] General Paxton and other state officials have publicly stated that Plaintiffs' desired conduct is arguably proscribed by the challenged statutes. Pls.' Exs. 1, 3-6, 8-10, 16-32, 34-38, 41-47, 49-50, 62-64; App. Exs. A-1– A-2, A-4 –A-8, A-17 – A-18.

20 at 248:3-10.[20]

   ***Traceability and Redressability.*** General Paxton also claims Plaintiffs' injuries are not

traceable to him because he has not directly threatened to enforce the challenged statutes against

Plaintiffs specifically. MTD. at 5-6. But Plaintiffs need only plausibly allege that the "challenged

law has caused Plaintiffs to reasonably self-censor their speech for fear of being punished." *Nat'l*

*Press Photographers Ass'n v. McCraw*, 504 F.Supp.3d 568, 576 (W.D. Tex. 2020).[21] "This type

of self-censorship must arise from a fear of prosecution that is not imaginary or wholly

speculative." *Id.* (cleaned up). Plaintiffs' fear is not imaginary or speculative; indeed, Justice

Higginbotham specifically noted that "on the extant record, these assertions are not fanciful." *In*

*re Paxton*, 2022 WL 16921697, at *6. General Paxton himself (along with other state officials)

stated that the conduct in which Plaintiffs wish to engage is within the State's enforcement targets.

"That the statute has not been enforced and that there is no certainty that it will does not establish

the lack of a case or controversy. The state had not disavowed enforcement." *KVUE, Inc. v. Moore*,

---

[20] General Paxton's refusal to alleviate the chill has continued. On October 25, 2022, the Chair of the Texas House Committee on Criminal Jurisprudence, Representative Nicole Collier, wrote to General Paxton, asking him to clarify the scope of the Trigger Band and the Pre-*Roe* Statutes. See App. Ex. A-21 at 2-3. Rep. Collier asked: "Can a resident of Texas pay for the travel of another resident of Texas for the purpose of obtaining an abortion in a state where abortion is legally protected? … Can a resident of Texas donate to an organization whose sole purpose is to provide financial assistance to residents of Texas seeking travel to obtain abortions in states where the procedure is legally protected? … Can a resident of Texas provide information related to abortion services in another state to another resident of Texas? … Can a resident of Texas accompany another resident of Texas who is traveling out of state for the sole purpose of obtaining an abortion?" *Id.* Rep. Collier also referenced the Texas Freedom Caucus's letter to Sidley Austin LLP and asked whether, "if an employer is facilitating the means to obtain an abortion outside of the State of Texas, they are violating" the pre-*Roe* statutes. *See id*. at 3. On November 11, 2022, the Texas Women's Health Caucus tweeted: "[t]he AG declined to answer and neglected providing Texans with the info they need to make informed decisions." *Id*. at 4.

[21] *See also Animal Legal Def. Fund v. Vaught*, 8 F.4th 714, 720 (8th Cir. 2021) ("A formal threat . . . is not required to establish an injury in fact. The question is whether the plaintiffs have an objectively reasonable fear of legal action that chills their speech.").

709 F.2d 922, 930 (5th Cir. 1983).[22] The challenged statutes "are chilling Plaintiffs' actions, and enjoining enforcement of the provisions would stop Plaintiffs' self-censorship." *McCraw*, 504 F.Supp. at 582.[23]

### 3. Plaintiffs assert their own injuries and allege facts to establish associational standing.

Plaintiffs have satisfied the standard for associational standing. Plaintiffs assert their own rights,[24] but also allege facts to support that: "(a) [their] members would otherwise have standing to sue in their own right; (b) the interests [they] seek[] to protect are germane to the organization[s'] purpose[s]; and (c) neither the claim[s] asserted nor the relief requested requires the participation of individual members in the lawsuit." *United Food & Comm. Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 553 (1996).

On the first element, Plaintiffs' staff, volunteers, and donors have all been threatened by state actors. FAC at ₱₱2, 5-8, 13-14, 41, 43, 80-84; 92-103; App. Ex. A-20 at 13-14, 124. Staff and volunteers at CASN have stopped traveling with patients. FAC at ₱134; App. Ex. A-20 at 111-13. Some donors have stopped giving. FAC at ₱23, 25, 27, 34; App. Ex. A-20 at 14:9-24, 132:17-20; Pls.' Exs. 17-20. Rosann Mariappuram testified that a Board member of her organization resigned, explaining the fear and pressure created by the threat of enforcement. App. FAC at ₱36; Ex. A-20

---

[22] General Paxton's reliance on *Okpalobi v. Foster* is misplaced; the plaintiffs in that case sued state officials with no power to enforce the statute. 244 F.3d 405, 424-27 (5th Cir. 2001).

[23] General Paxton also asserts that Plaintiffs lack standing to challenge the joint and several liability provision created by Senate Bill 8. For the Court's convenience and to avoid duplicative briefing, Plaintiffs address those arguments in Section III.B.1.5, *infra*, where they also respond to General Paxton's 12(b)(6) arguments with respect to that specific claim.

[24] Organizations have constitutional rights of their own. *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 365 (2010) ("[T]he Government may not suppress political speech on the basis of the speaker's corporate identity."). And Dr. Moayedi is a natural person.

**PLAINTIFFS' RESPONSE TO MOTION TO DISMISS – Page 11**

at 116:1-4.[25] This self-censorship includes curtailing speech as well as expressive conduct. *Id*. at 17:1-3, 43:1-3, 85:2-9, 120:1-6, 126:20-22. Second, the organizational plaintiffs focus on abortion assistance and advocate for abortion access,[26] and every claim they assert challenges a state law that prohibits abortion, which is germane to their purpose and missions. *See McCraw*, 504 F.Supp.3d at 580. On the third element, "individual participation is not normally necessary when an association seeks prospective or injunctive relief for its members." *UFCW Local* 751, 517 U.S. at 546 (internal quotation marks omitted).

### 4. The Court should not abstain under *Pullman*.

Under *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941), abstention should occur only "when a federal constitutional claim is premised on an unsettled question of state law" and state-court resolution of "the underlying state-law question [would] avoid the possibility of unnecessarily deciding a constitutional question." *Harris Cty. Com'rs Ct. v. Moore*, 420 U.S. 77, 83 (1975). Like all abstention doctrines, *Pullman* is discretionary.[27] And before abstaining under *Pullman*, a "district court must carefully assess the totality of circumstances presented by a particular case. This requires a broad inquiry which should include consideration of the rights at stake and the costs of delay pending state court adjudication." *Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 145 F.3d 238, 243 (5th Cir. 1998).

Plaintiffs assert ongoing chilling and violations of their fundamental constitutional rights that make abstention inappropriate. *See Zwickler v. Koota*, 389 U.S. 241, 252 (1967) ("[T]o force the plaintiff who has commenced a federal action to suffer the delay of state court proceedings

---

[25] Several witnesses testified that their entire organizations were fearful, including staff and volunteers, and had significantly constrained their own behavior as a result. App. Ex. A-20 at 12:11, 14:9-13,15:2-5,16:10-17, 17:4-8, 60:2-5, 71:18-21, 116:1-5, 127:11-17; Pls.' Exs. 17-20.
[26] FAC at ¶¶ 22-28; Pls.' Exs. 16-23; App. Ex. A-9 – A-16.
[27] "[A]bstention is the exception, not the rule." *Nissan Motor Corp. in U.S.A. v. Harding*, 739 F.2d 1005, 1008 (5th Cir. 1984).

might itself effect the impermissible chilling of the very constitutional right he seeks to protect."). In fact, the Supreme Court has repeatedly held abstention under *Pullman* is inappropriate when First Amendment rights are at issue—as they are here. *See, e.g., Baggett v. Bullitt*, 377 U.S. 360, 375–80 (1964). Moreover, pre-enforcement review of criminal statutes in Texas state court is generally not permitted,[28] a position General Paxton recently took in front of the Texas Supreme Court. Pls.' Exs. 32, 44. Thus, there is no meaningful opportunity for a state-court resolution of "the underlying state-law question" that "[would] avoid the possibility of unnecessarily deciding a constitutional question."[29]

**B.      Plaintiffs Plausibly Alleged All of Their Claims.**

**1.      Plaintiffs have a First Amendment right to fund legal conduct.**

Plaintiffs themselves have First Amendment rights to associate freely with each other and with pregnant Texans, and to engage in expressive conduct. General Paxton does not dispute this. Instead, he argues that funding abortions in other states—though such care is legal there—is illegal in Texas because the State's purported interest is the same no matter where an abortion occurs. MTD at 21-22. This argument is constitutionally troubling and meritless.

Donations and funding are inherently protected speech. "[T]he solicitation of charitable contributions is protected speech." *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S.

---

[28] *See State v. Morales*, 869 S.W.2d 941, 943 (Tex. 1994) ("[C]ivil courts . . . have no power to grant either injunctive or declaratory relief based on the unconstitutionality of a criminal statute."); *City of Fort Worth v. Craik*, 411 S.W.2d 541, 543 (Tex. 1967) (noting that the validity of a penal ordinance may be tested in criminal courts but holding that "a court of equity will not determine originally the validity of a criminal regulation in the absence of a showing of irreparable injury to vested property rights.").

[29] General Paxton essentially asserts that Plaintiffs must endure ongoing constitutional violations until they, or some unknown individual, is at some remote, speculative future date, criminally prosecuted. But "because of the delays inherent in the abstention process," it is a certainty "that valuable federal rights [would] be lost in the absence of expeditious adjudication in the federal court." *Moore*, 420 U.S. at 83.

781, 789 (1988).[30] Since he disagrees with Plaintiffs' missions, however, General Paxton differentiates their funding by calling it "illegal" conduct. MTD at 21. But Plaintiffs have not asked to fund or support any illegal deeds, and they have not claimed that funding abortions **in Texas** is protected speech. Plaintiffs assert only that they may charitably fund legal conduct, whether it be advocacy for reproductive justice in Texas, or legal abortions performed outside of Texas. FAC at ¶¶ 11-12, 15, 22-41, 135-37, 159-60, 175. Deeds are not rendered illegal in New Mexico, Kansas, or elsewhere simply because Texas has decreed them illegal within its own borders. Thus, funding abortion-related activity—when abortions are performed where legal—is not funding illegal activity: it is protected speech. *See Riley*, 487 U.S. at 789; *Secretary of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 967 (1984).

For the same reasons given with respect to the Right to Travel argument, *see infra* section III.B.3, Texas has no interest in regulating conduct or speech that occurs entirely in other states and which is legal in those states. Thus, Texas has neither a compelling nor "legitimate" interest in enforcing its laws in this way, rendering the restraint unconstitutional under any legal standard.[31]

### 2.     A restraint on funding or assistance for out-of-state abortions cannot pass rational basis scrutiny, much less strict scrutiny.

General Paxton also asserts that the Pre-*Roe* statutes and Trigger Ban are content-neutral

---

[30] *See also Secretary of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 967 (1984) (law that limited the ability of charitable organizations to raise contributions was "a direct restriction on protected First Amendment activity."); *Citizens United*, 558 U.S. at 339 (a "prohibition on corporate independent expenditures is thus a ban on speech."); *Schaumburg*, 444 U.S. at 632 (charitable solicitations "involve a variety of speech interests ... that are within the protection of the First Amendment"); *Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) ("[Texans for Free Enterprise's] ability to speak is undoubtedly limited when it cannot raise money to pay for speech.").

[31] As discussed in Section III.B.2, *infra*, the challenged statutes are also content-based since enforcement has not been publicly threatened or suggested against funding of other cross-borders conduct that is legal in the state in which it takes place, but illegal in Texas. They are, therefore, presumptively unconstitutional, and strict scrutiny applies. *Tex. Entm't Ass'n, Inc. v. Hegar*, 10 F.4th 495, 512 (5th Cir. 2021).

**PLAINTIFFS' RESPONSE TO MOTION TO DISMISS – Page 14**

because they "apply equally regardless of one's opinion on abortion, and the statutes' requirements in no way depend on the speaker's viewpoint or motives." MTD at 21. But a regulation targeted at specific subject matter is content-based even if it does not discriminate among viewpoints. *Reed v. Town of Gilbert*, 576 U.S. 155, 156 (2015). "Whether laws define regulated speech by particular subject matter or by its function or purpose, they are subject to strict scrutiny." *Id.* at 156.[32] "This stringent standard reflects the fundamental principle that governments have no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371 (2018) (cleaned up).

The only speech targeted by the Pre-*Roe* Statutes and the Trigger Ban is speech (including funding) that supports Texans seeking safe and legal abortion. Only those who believe that pregnant Texans should be allowed to obtain safe abortions where those abortions are legal are impacted by these laws. *See Police Department of Chicago v. Mosley*, 408 U.S. 92 (1972) (holding government cannot selectively exclude speakers based on the content of their message).

### 3.    Plaintiffs alleged viable Right to Travel claims.

General Paxton argues that the Right to Travel asserted by Plaintiffs—that is, the right to interstate travel to engage in lawful conduct in another state—is (1) too broadly defined, and (2) when properly narrowed, is not historically protected. MTD at 23-24. Both arguments fail.

Taking the second argument first, Justice Bushrod Washington (George's nephew), recognized precisely this right within a generation of Constitutional ratification. *Corfield v. Coryell*, 6 F. Cas. 546, 552 (C.C.E.D. Pa. 1823) ("The right of a citizen of one state to pass through, or to reside in any other state, for purposes of trade, agriculture, professional pursuits, or otherwise

---

[32] Earlier this month, the Fifth Circuit affirmed that "the phrase 'content based' requires a court to consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *NetChoice, L.L.C. v. Paxton*, No. 21-51178, 2022 WL 4285917, at *30 (5th Cir. Sept. 16, 2022) (quoting *Reed*, 576 U.S. at 163).

… may be mentioned as some of the particular privileges and immunities of citizens, which are clearly embraced by the general description of privileges deemed to be fundamental.").[33] The Right to Travel to conduct legal business in another state is "virtually unqualified," and has been recognized and affirmed by the U.S. Supreme Court for more than a century. *Califano v. Gautier Torres*, 435 U.S. 1, 5 n.6 (1978).

Turning to breadth, General Paxton asserts that construing a right to "interstate travel to engage in lawful conduct in another state," is too broad to be administrable. MTD at 23 (citing *Hutchins v. Dist. of Columbia*, 188 F.3d 531, 538 (D.C. Cir. 1999)). Plaintiffs' construction of the right, however, is limited to travel between states and to conduct that is legal in the destination state. The right to travel "plainly and unmistakably" embraces the right to cross state lines to engage in "lawful commerce, trade, or business." *Ward v. State*, 79 U.S. 418, 430 (1870).

Moreover, binding precedent makes clear that the Right to Travel specifically includes the right to do so "to procure medical services." *Saenz v. Roe*, 526 U.S. 489, 502 (1999). General Paxton also argues that Texas could nevertheless pass the strict scrutiny test because it has a compelling interest in "protecting … the life of [an] unborn child." MTD at 23. But "[a] State does not acquire power or supervision over the internal affairs of another State merely because the welfare and health of its own citizens may be affected when they travel to that State." *Bigelow v. Virginia,* 421 U.S. 809, 824 (1975).[34]

---

[33] A broad right to travel in peacetime also appears in Blackstone's commentaries. Blackstone, COMMENTARIES ON THE LAWS OF ENGLAND, Book 1: The Rights of Persons, Chapter 1 – Of the Absolute Rights of Individuals, II. It is also explicit in the Articles of Confederation, U.S.C.A. § ARTICLES OF CONFEDERATION, Art. IV, ¶ 1. (1777), and enshrined in Magna Carta. *See* Leonard B. Boudin, The Constitutional Right to Travel, 56 COLUM. L. REV. 47 (1956) (citing Magna Carta, Ch. 42, as giving to every free man the right to leave the realm at his pleasure in time of peace).

[34] *See also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421 (2003) ("A State cannot punish a defendant for conduct that may have been lawful where it occurred."); *New York Life Ins.*

For the same reasons, application of the challenged statutes to out-of-state abortions cannot pass the Commerce Clause's balancing analysis under *Pike v. Bruce Church, Inc.,* 397 U.S. 137 (1970). Texas has **no** interest in prohibiting interstate travel to do commerce that is legal in a destination state and completed within that state. The Texas laws are a flat prohibition on interstate travel to engage in legal commerce elsewhere. In *Pike*, a less invasive regulation of cantaloupe imports was found insufficiently justified because of a weak state interest. *See id.* at 146.[35]

### 4.    The Pre-*Roe* Statutes were impliedly repealed, and enforcing them would violate Due Process.

The Pre-*Roe* Statues were repealed by implication and cannot be revived by general statements of the Texas Legislature. General Paxton's threatened application of a repealed statute, is "a deprivation of the right of fair warning [that] can result not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language." *Bouie v. City of Columbia*, 378 U.S. 347, 352 (1964).

General Paxton concedes that the Fifth Circuit held Texas's regulatory scheme on abortion "cannot be harmonized with provisions that purport to criminalize abortion. There is no way to enforce both sets of laws; the current regulations are intended to form a comprehensive scheme—not an addendum to the criminal statutes struck down in *Roe*." *McCorvey v. Hill*, 385 F.3d 846,

---

*Co. v. Head*, 234 U.S. 149, 161 (1914) ("… it would be impossible to permit the statutes of Missouri to operate beyond the jurisdiction of that State and in the State of New York and there destroy freedom of contract without throwing down the constitutional barriers…upon the preservation of which the Government under the Constitution depends."); *Huntington v. Attrill*, 146 U.S. 657, 669 (1892) ("Laws have no force of themselves beyond the jurisdiction of the state which enacts them, and can have extraterritorial effect only by the comity of other states."); *Bonaparte v. Appeal Tax Court of Baltimore*, 104 U.S. 592, 594 (1881) ("No State can legislate except with reference to its own jurisdiction."); *Nielsen v. State of Oregon*, 212 U.S. 315, 321 (1909) ("It is enough to decide, as we do, that, for an act done within the territorial limits of the state of Washington, under authority and license from that state, one cannot be prosecuted and punished by the state of Oregon.").

[35] General Paxton also claims that Plaintiffs' forfeited this argument by not citing to *Pike* in their Preliminary Injunction Motion, MTD at 24, but the issue was not raised, if at all, until the MTD.

849 (5th Cir. 2004). General Paxton's disagreement with this authority does not change this Court's obligation to follow it.[36] The Supreme Court of Texas has not disagreed with *McCorvey*, nor has any Texas Court of Appeals disapproved it.[37]

### 5. Plaintiffs alleged viable claims that certain parts of the Texas Abortion Laws violate the U.S. Constitution and are preempted by federal law.

The Supremacy Clause mandates that federal law "shall be the supreme Law of the Land" U.S. Const., Art. VI, cl. 2. Congress can indicate its preemptive intent either expressly through a statute's plain language, or implicitly through a statute's "structure and purpose." *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008). Where state and federal law "directly conflict," state law must give way. *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617 (2011) (internal citations omitted).[38] Field preemption exits "where a scheme of federal regulation is so pervasive at to make reasonable the inference that Congress left no room for the States to supplant it, or where an Act of Congress touches a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of the state laws on the same subject." *McCraw*, 504 F.Supp.3d at 588. Moreover, even without field preemption, conflict preemption applies when "it is impossible for a private party to comply with both state and federal requirements." *PLIVA*, 564 U.S at 618.

---

[36] *See F.D.I.C. v. Abraham*, 137 F.3d 264, 269 (5th Cir. 1998) ("[W]hen our *Erie* analysis of controlling state law is conducted for the purpose of deciding whether to follow or depart from prior precedent of this circuit. . . we should not disregard our own prior precedent . . . unless [the state court] precedent comprises unanimous or near-unanimous holdings from several—preferably a majority—of the intermediate appellate courts of the state in question.").

[37] The Texas Legislature's attempts to retroactively avoid the repeal of the Pre-*Roe* Statutes also fail because a later legislature cannot speak for the intention of an earlier legislature. *See, e.g.*, *Fed. Crude Oil Co. v. Yount-Lee Oil Co*., 52 S.W.2d 56, 63 (1932) ("[T]he expression of an opinion by one Legislature in construing the act of a former Legislature is not conclusive upon the courts as it is their province to arrive at the intention of the particular legislature which enacted each of these laws.").

[38] Further, "courts should not strain to find ways to reconcile federal law with seemingly conflicting state law," and "when the ordinary meaning of federal law blocks a private party from independently accomplishing what state law requires, that party has established preemption." *PLVIA*, 564 U.S. at 622-23**.**

Plaintiffs specifically assert two federal law preemption claims.

First, the Trigger Ban and Pre-*Roe* Statutes are preempted by federal CMS billing requirements, which specifically mandate that for telehealth services, including abortion services, the location of services is deemed to be the patient's location, irrespective of the location of the physician. Billing and coding Medicare Fee-for-Service claims | TELEHEALTH.HHS.GOV; https://telehealth.hhs.gov/providers/billing-and-reimbursement/billing-and-coding-medicare-fee-for-service-claims/#coding-claims-during-covid-19, (last updated May 17, 2022); FAC at ¶ 185. Congress delegated to CMS and HHS broad authority to regulate and preempt state law for Medicare and Medicaid beneficiaries, where the state's only carve out is for licensure and solvency requirements. *See* 42 U.S.C. § 1856(b)(3).[39] Pursuant to this broad statutory authority, CMS has instructed fee-for-service providers of Medicare to bill for reimbursement pursuant to the **patient's place of service**, irrespective of the location of the physician. FAC at ¶¶ 208-17. This regulation unambiguously conflicts with any Texas abortion law that holds Dr. Moayedi liable for performing an abortion via telehealth if her patient is located where such care is legal.

Second, Plaintiffs challenge the joint and several liability provision created by SB8 and codified as Section 30.022 of the Texas Civil Practice and Remedies Code. Although styled as a "fee-shifting" provision, Section 30.022(a) actually makes any "entity, attorney, or law firm, who seeks declaratory or injunctive relief to prevent . . . any person in this state from enforcing any statute . . . or any other type of law that regulates or restricts abortion . . . jointly and severally liable to pay the costs and attorney's fees of the prevailing party." *Id*.; *see also* FAC at ¶¶ 227-29. Liability under Section 30.022 only inures to the party seeking **relief from** an abortion-

---

[39] These carve outs are limited and cannot be used to escape the preemptive power of CMS. *See* 70 Fed. Reg. 4588, 4664 (Jan. 28, 2005) (limiting the role of state licensure in regulating Medicare Advantage plans to a finite set of circumstances).

**PLAINTIFFS' RESPONSE TO MOTION TO DISMISS – Page 19**

restraining law and that party's lawyers. FAC at ¶ 228. Unlike the rest of SB8, which can only be enforced through private civil enforcement, Section 30.022(a) specifically applies to any challenge to a Texas abortion law, even if the defendants are state actors.[40]

Section 30.022(a) directly conflicts with (and is therefore preempted by) 42 U.S.C. 1988, which establishes a comprehensive attorneys' fees scheme for federal civil rights cases brought under Section 1983. The federal goals reflected in Sections 1983 and 1988 are to allow and encourage non-frivolous challenges to unconstitutional state laws that deprive individuals of their rights under the U.S. Constitution and other federal laws. Section 30.022 directly interferes with those goals by (1) mandating an award of fees as a separate joint and several liability; (2) imposing that liability solely on a plaintiff who brings a civil rights lawsuit against unconstitutional abortion laws; and (3) foisting that liability onto both the plaintiff and her lawyers. The result is an obvious chilling of non-frivolous civil rights litigation.[41]

## IV.   CONCLUSION

For all of these reasons, Plaintiffs respectfully request the Court deny General Paxton's Motion to Dismiss. In the alternative, if the Court grants any portion of General Paxton's Motion, Plaintiffs respectfully request that they be allowed to move for leave to replead and cure any deficiencies identified by the Court. Fed. R. Civ. P. 15(a)(2); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

---

[40] General Paxton also asserts that Plaintiffs do not have standing to challenge Section 30.022 or that such a challenge is not yet ripe because he has not yet invoked Section 30.022 against them. MTD at 11. General Paxton again misapprehends the standing inquiry in a pre-enforcement challenge under the First Amendment. It is well-settled that public-interest litigation constitutes speech. *See Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 548 (2001).

[41] Plaintiffs themselves experienced this very chill in the form of a delayed ability to file this lawsuit. Because of the unique joint and several liability mandated by Section 30.022, they had to secure funding to cover any such award. *See* FAC at ¶¶ 219-21; Pls.' Exs. 16-23; App. Ex. A-20 at 15:24-25; 16:1-6; 61:10-23; 62:1-2; 141:7-9.

Dated:  November 17, 2022                Respectfully submitted,

By:  */s/ Jennifer R. Ecklund*
      Jennifer R. Ecklund
      Texas Bar No. 24045626
      jecklund@thompsoncoburn.com

      Elizabeth G. Myers
      Texas Bar No. 24047767
      emyers@thompsoncoburn.com

      Allyn Jaqua Lowell
      Texas Bar No. 24064143
      alowell@thompsoncoburn.com

      John Atkins
      Texas Bar No. 24097326
      jatkins@thompsoncoburn.com

      Elizabeth Rocha
      Texas Bar No. 24127242
      erocha@thompsoncoburn.com

**THOMPSON COBURN LLP**
2100 Ross Avenue, Suite 3200
Dallas, Texas 75201
Telephone:  972/629-7100
Facsimile:  972/629-7171


Alexandra Wilson Albright
Texas Bar No. 21723500
aalbright@adjtlaw.com

Marcy Hogan Greer
Texas Bar No. 08417560
mgreer@adjtlaw.com
515 Congress Ave., Suite 2350
Austin, TX 78701-3562
Telephone:  512/482-9300
Facsimile:  512/482-9303

Kevin Dubose
Texas Bar No. 06150500
kdubose@adjtlaw.com
1844 Harvard Street
Houston, TX 77008
Telephone:  713/523-2358
Facsimile:  713/522-4553


Kirsten M. Castañeda
Texas Bar No. 00792401
kcastaneda@adjtlaw.com
8144 Walnut Hill Lane, Suite 1000
Dallas, TX 75231-4388
Telephone:  214/369-2358
Facsimile: 214/369-2359

**ALEXANDER DUBOSE &
JEFFERSON, LLP**

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I certify that this document was filed electronically on November 17, 2022, with the clerk of the Court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court.


/s/ *Jennifer R. Ecklund*
Jennifer R. Ecklund