# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| FUND TEXAS CHOICE, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil No. 1:22-cv-859-RP |
| V. | ) |
| | ) |
| KEN PAXTON, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

## [PROPOSED] BRIEF FOR AMICI CURIAE PROFESSOR ELIZABETH SEPPER AND PROFESSOR SEEMA MOHAPATRA IN SUPPORT OF NEITHER PARTY

James C. Martin*
Reed Smith LLP
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222
Telephone: (412) 288-3546
Fax: (412) 288-3063
Pennsylvania Bar No. 204336
California Bar No. 83719
JCMartin@ReedSmith.com
*Pro hac vice admission pending

Emily P. Harbison
Reed Smith LLP
811 Main Street
Suite 1700
Houston, TX 77002-6110
Telephone: (713) 469-3808
Fax: (713) 469-3899
Texas Bar No. 24059892
eharbison@reedsmith.com

*Attorneys for Amici*
*Professor Elizabeth Sepper and Professor*
*Seema Mohapatra*

Dated:  November 18, 2022

I.    INTRODUCTION, INTEREST OF AMICUS CURIAE, AND SUMMARY OF ARGUMENT ......................................................................................... 1

II.   ARGUMENT ........................................................................................... 1

    A.   The Pre-*Roe* Statutes Do Not Apply To The Conduct Plaintiffs Want To Engage In ......................................................................... 3

        1.   The Pre-*Roe* Statutes Do Not Apply To The Conduct At Issue Because They Have Been Repealed ................................. 3

        2.   The Pre-*Roe* Statutes Do Not Apply To The Conduct At Issue By Their Terms ............................................................. 7

    B.   H.B. 1280 Does Not Apply To The Conduct Plaintiffs Want To Engage In ....... 13

    C.   This Court Should Issue A Declaratory Judgment And Injunction That The Pre-*Roe* Statutes And H.B. 1280 Do Not Apply And Cannot Be Applied To The Conduct Plaintiffs' Desire To Engage In ................................. 15

    D.   This Court Should Exercise Its Broad Discretion And Decline To Reach The Constitutional Issues ......................................................... 16

III.  CONCLUSION ...................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acker v. Texas Water Comm'n,*
   790 S.W.2d 299 (Tex. 1990) ........................................................................6

*Alabama State Federation of Labor v. McAdory,*
   325 U.S. 450 (1945) ..................................................................................16

*In re Allen,*
   366 S.W.3d 696 (Tex. 2012) ......................................................................8

*Batts v. Tow-Motor Forklift Co.,*
   66 F.3d 743 (5th Cir. 1995) .......................................................................6

*Beier v. State,*
   687 S.W.2d 2 (Tex. Crim. App. 1985) .................................................2, 15

*BMW of N. Am., Inc. v. Gore,*
   517 U.S. 559 (1996) ...................................................................................8

*Canarchy CRAFT Brewery Collective, L.L.C. v. Tex. Alcoholic Bev. Comm'n,*
   37 F.4th 1069 (5th Cir. 2022) ..................................................................12

*Coca-Cola Co. v. Harmar Bottling Co.,*
   218 S.W.3d 671 (Tex. 2006) ......................................................................9

*Delay v. State,*
   465 S.W.3d 232 (Tex. Crim. App. 2014) .................................................13

*Dickson v. Afiya Cr.,*
   636 S.W.3d 247 (Tex. App. 2021) .............................................................6

*Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd.,*
   336 F.3d 211 (3d Cir. 2003) ....................................................................17

*El Dia, Inc. v. Hernandez Colon,*
   963 F.2d 488 (1st Cir. 1992) ....................................................................18

*Epps v. Fowler,*
   351 S.W.3d 862 (Tex. 2011) ....................................................................11

*Ernst & Young v. Depositors Economic Protection Corp.,*
   45 F.3d 530 (1st Cir. 1995) ......................................................................17

*Escambia Cty. v. McMillan*,
    466 U.S. 48 (1984)...................................................................................16

*Fedricksburg Care Co. v. Perez*,
    461 S.W.3d 513 (Tex. 2015)...................................................................10

*Fondren v. State*,
    169 S.W. 411 (Tex. Crim. App. 1914)...................................................10

*Fort Worth Transp. Auth. v. Rodriguez*,
    547 S.W.3d 830 (Tex. 2018)...................................................................15

*Gamble v. Anesthesiology Assocs.*,
    2022 Tex. App. LEXIS 5091 (Tex. App. July 21, 2022)........................15

*Gannon v. Payne*,
    706 S.W.2d 304 (Tex. 1986).....................................................................8

*Gegenheimer v. Stevenson*,
    2017 U.S. Dist. *LEXIS* 103843 (W.D. Tex. July 5, 2017) ......................17

*Gibson v. Am. Cyanamid Co.*,
    760 F.3d 600 (7th Cir. 2010) ...................................................................17

*Go Green Botanicals, Inc. v. Tri-State Ins. Co. of Minn.*,
    2022 U.S. Dist. LEXIS 141235 (W.D. Tex. Aug. 9, 2022) .......................5

*Gonzalez-Oyarzun v. Caribbean City Builders, Inc.*,
    798 F.3d 26 (1st Cir. 2015).......................................................................17

*Gordon v. Lake*,
    356 S.W.2d 138 (Tex. 1962).......................................................................6

*Greater Houston P'ship v. Paxton*,
    468 S.W.3d 51 (Tex. 2015).......................................................................10

*Greenwell v. Davis*,
    180 S.W.3d 287 (Tex. App. 2005)..............................................................8

*Griffiths v. Philip Morris, Inc.*,
    2000 U.S. Dist. LEXIS 16159 (S.D. Tex. Sep. 11, 2000) ..........................6

*Hay v. Waldron*,
    834 F.2d 481 (5th Cir. 1987) ...................................................................15

*Hollis v. Itawamba County Loans*,
    657 F.2d 746 (5th Cir. 1981) ...................................................................15

*Jaster v. Comet II Constr., Inc.*,
438 S.W.3d 556 (Tex. 2014)......................................................................13

*Jones v. State*,
323 S.W.3d 885 (Tex. Crim. App. 2010)...................................................11

*Kiobel v. Royal Dutch Petroleum Co.*,
569 U.S. 108 (2013).....................................................................................9

*Klein v. Hernandez*,
315 S.W.3d 1 (Tex. 2010)............................................................................9

*Marmon v. Mustang Aviation, Inc.*,
430 S.W.2d 182 (Tex. 1968)........................................................................9

*McCorvey v. Hill*,
385 F.3d 846 (5th Cir. 2004) ...................................................4, 5, 6, 7, 17

*Merlo v. Lopez*,
2021 Tex. App. LEXIS (Tex. App. Jan. 28, 2021) ...................................13

*Molinet v. Kimbrell*,
356 S.W.3d 407 (Tex. 2011)......................................................................15

*Moore v. State*,
40 S.W. 287 (Tex. Crim. App. 1897).................................................10, 11

*Nagy v. Farmers Ins. Exch.*,
758 F.2d 189 (6th Cir. 1985) .....................................................................16

*Prairie View A&M Univ. v. Chatha*,
381 S.W.3d 500 (Tex. 2012)......................................................................15

*RJR Nabisco v. European Community*,
579 U.S. U.S. 325, 335 (2016)....................................................................9

*Rodriguez v. United States*,
480 U.S. 522 (1987).....................................................................................5

*Roe v. Wade*,
410 U.S. 113 (1973).....................................................................................4

*State v. Colyandro*,
233 S.W.3d 870 (Tex. Crim. App. 2007)...................................................11

*In Re State*,
325 S.W.3d 848 (Tex. 2010)........................................................................9

*Sw. Royalties, Inc. v. Hegar*,
    500 S.W.3d 400 (Tex. 2016)..................................................................11

*Tex. Lottery Comm'n v. First State Bank of Dequeen*,
    325 S.W.3d 628 (Tex. 2010)..................................................................10

*Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n*,
    511 S.W.3d 28 (Tex. 2017)....................................................................11

*Texas v. Becerra*,
    2022 U.S. Dist. LEXIS 151142 (N.D. Tex. Aug. 23, 2022)....................8

*Texas v. United States*,
    328 F.Supp.3d 662 (S.D. Tex. 2018) ....................................................16

*Tonnahill v. State*,
    208 S.W. 516 (Tex. Crim. App. 1919)..................................................10

*United States v. Johnson*,
    956 F.3d 740 (5th Cir. 2020) ................................................................16

*Weeks v. Connick*,
    733 F.Supp. 1036 (E.D. La. 1990).........................................................6

*West Fork Advisors, LLC v. SunGard Consulting Servs., LLC*,
    437 S.W.3d 917 (Tex. App. 2014).........................................................15

*Zimmerman v. City of Austin*,
    620 S.W.3d 473 (Tex. App. 2021).....................................................4, 6

**Statutes**

1973 Tex. Gen. Laws 995 (codified at TEX. REV. CIV. STAT. Articles 4512.1-
    4512.4, 4512.6 (West 1974)) ..................................................................4

Tex. Health & Safety Code § 170A ................................................................13

Tex. Health & Safety Code §§ 170A.001-002, 245.002..................................14

Tex. Health & Safety Code §§ 170A.002, 170A.004-.005...............................14

Tex. Health & Safety Code §§ 171.011-171.018...............................................4

Tex. Health & Safety Code §§ 171.061-171.066...............................................4

Tex. Health & Safety Code §§ 171.151-171.153...............................................4

Tex. Penal Code Ann. § 7.02(a).......................................................................2

Tex. Penal Code Ann. § 21.06 ...................................................................4

Tex. Penal Code Ann. § 104(a) ................................................................9

Tex. Penal Code Articles 1191-94, 1196 ...............................................3

**Other Authorities**

1925 TEX. CRIM. Stat. 1193 ..................................................................12

Act of May 24, 1973, S.B. 34, 63rd Leg., Reg. Sess., ch. 399, § 5(a) ............4

Black's Law Dictionary (1933) ..............................................................11

Bouvier's Law Dictionary (1926) ...........................................................11

Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 268-69 (2012) ........................8

## I. INTRODUCTION, INTEREST OF AMICUS CURIAE, AND SUMMARY OF ARGUMENT

Amici Elizabeth Sepper, Professor of Law at the University of Texas at Austin School of Law, and Professor Seema Mohapatra, M.D. Anderson Foundation Endowed Professor in Health Law, at the SMU Dedman School of Law, are experts in the field of reproductive rights and justice, women's health and the societal and constitutional issues related to both fields. As their resumes indicate, they have written and spoken on the legal and societal implications of abortion regulations in Texas and other states. (*See* Exh. A attached). They also have followed the developments in this litigation as it impacts their fields of interest and have reviewed the briefing of the parties and other participating Amici. Having made that review, these Amici believe that there is a resolution path for this lawsuit — founded on settled principles of statutory construction — that the parties and other participating Amici have not fully or directly explored.

Specifically, these Amici explain that once this Court adopts the proper limiting construction of the Texas statutes directly at issue in this litigation, there is no need to reach the constitutional issues raised by the parties as related to the conduct involved. Rather, this Court should instead enter a declaratory judgment that the Texas statutes at issue do not apply to the conduct Plaintiffs want to engage in and an injunction prohibiting the Defendants from attempting to apply those statutes to that conduct.

## II. ARGUMENT

As the record and briefing reflects, in this proceeding, the basic dispute centers around the Plaintiffs' expressed desire to help pregnant residents of Texas obtain lawful out-of-state abortions. The non-profit Plaintiffs want to provide funding, as well as information, planning and travel assistance, for those lawful abortions. The individual Plaintiff wants to travel out-of-state, and use telehealth, to provide care for patients in those states where the abortions lawfully occur. (First

Amended Complaint ("FAC"), Doc. 90, ¶¶ 2, 11-12, 23-28 (filed 10/11/2022). None of the conduct Plaintiffs want to engage in, however, involves abortion procedures conducted in Texas.[1]

Here, Plaintiffs want this Court to intercede and enjoin the various Texas state actors, most notably the Attorney General, from threatening criminal prosecution of the Plaintiffs and their staffs, volunteers, and donors under two Texas statutes — respectively the pre-*Roe* abortion criminal statutes (FAC ¶¶ 53-59), and Sections 170A, *et seq.*, of the Health and Safety Code (FAC ¶¶ 60-67) (hereafter "H.B. 1280"). Plaintiffs maintain that the Defendant state actors will expansively construe these statutes in a manner that violates their constitutional rights. Plaintiffs seek a declaration that such an expansive construction would violate their constitutional rights and request an injunction to protect those constitutional rights.[2] (FAC ¶¶ 9, 14, 59, 66 and Counts I-V).

In this case, however, the Texas statutes for which the declaration and injunction are sought do not reach the conduct Plaintiffs want to engage in. Whether one looks to the pre-*Roe* statutes or H.B. 1280, the result is the same: none of these statutes, by their express terms, prohibit the conduct Plaintiffs want to resume — whether it relates to funding, information, or transportation

---

[1] For their part, the non-profit Plaintiffs do not provide direct abortion services and have not paid or reimbursed any provider or other individual for the provision of abortion services inside or outside of Texas. (FAC ¶ 11). For her part, the individual Plaintiff wants to resume her travel to other states to perform lawful abortion procedures (*id*. ¶¶ 12, 132, 133), and to advise patients in those states on such procedures via telehealth from her office in Texas. (*Id*.)

[2] The FAC also makes reference to Texas Senate Bill 8 and its civil liability provisions. (FAC ¶¶ 70-75). But the declaration and injunction sought in FAC's charging allegations refers only to the pre-*Roe* statutes and H.B. 1280. (FAC ¶ 9). The FAC also refers to the general criminal statute on aiding and abetting. TEX. PENAL CODE ANN. § 7.02(a). (FAC ¶ 68). But that statute is only relevant if a violation of one of the two targeted statutes is found. In order to obtain a conviction for aiding and abetting, the underlying offense first must be proven. *Beier v. State*, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985) (*en banc*).

for out-of-state abortions or providing medical care for those who are seeking or have had an out-of-state abortion.

Moreover, once the proper construction is adopted, the declaratory and injunctive relief this Court orders need not address Plaintiffs' constitutional rights because there is a resolution path to provide them with the relief sought that avoids those issues. This Court should instead enter a declaratory judgment that the pre-*Roe* statutes and H.B. 1280 do not apply to the conduct Plaintiffs want to engage in as that conduct relates to lawful abortions outside of this State. Concomitantly, it should issue an injunction prohibiting the Defendants from enforcing those statutes against that conduct.

**A.  The Pre-*Roe* Statutes Do Not Apply To The Conduct Plaintiffs Want To Engage In**

On contextual analysis, the pre-*Roe* statutes do not threaten Plaintiffs' activities related to out-of-state abortions. As courts have held, the statutes have long been repealed.[3] Apart from that, the plain terms of those statutes do not apply to the conduct Plaintiffs desire to resume.

**1.  The Pre-*Roe* Statutes Do Not Apply To The Conduct At Issue Because They Have Been Repealed**

Before *Roe*, abortion was prohibited by two statutes, enacted in 1925, that made it a crime to provide an abortion except in cases of life-endangerment. TEX. PENAL CODE Arts. 1191-94, 1196. In 1973, however, the United States Supreme Court affirmed the federal district court's

---

[3] In their operative complaint, Plaintiffs attack the retroactive application of the pre-*Roe* statutes on ex post facto (FAC Count V) and vagueness grounds (*id*. Count VI), and argue in their request for TRO and Preliminary Injunction that those statutes have been repealed by implication and cannot criminalize the conduct alleged. (Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction and Memorandum of Law in Support ("TRO"), Doc. 6, at 39-40 (filed August 24, 2022). All of these arguments are, however, made in support of a declaration that the pre-*Roe* statutes are unconstitutional as applied to the conduct Plaintiffs desire to resume.

judgment that those statutes were unconstitutional and held that "the Texas abortion statutes, as a unit, must fall." *Roe v. Wade*, 410 U.S. 113, 166 (1973).

Shortly after *Roe* was decided, the Texas Legislature removed the pre-*Roe* statutes from the Penal Code. *See* Act of May 24, 1973, S.B. 34, 63rd Leg., Reg. Sess., ch. 399, § 5(a); *see also Zimmerman v. City of Austin*, 620 S.W.3d 473, 477, n.4 (Tex. App. 2021). Although the pre-*Roe* statutes initially were transferred to Chapter 6-1/2 of Title 71 of the Civil Statutes, *see* 1973 Tex. Gen. Laws 995 (codified at TEX. REV. CIV. STAT. arts. 4512.1-4512.4, 4512.6 (West 1974)), they have been absent from Texas civil and criminal statutes since 1984. Before June 24, 2022, the Texas Legislature's website, which posts the text of Texas statutes, did not contain them. By contrast, other Texas statutes that had been declared unconstitutional remained on the statute books and available on the Texas Legislature's website, with an accompanying notation that they had been held unconstitutional. *See, e.g.*, TEX. PENAL CODE § 21.06.

In the decades following *Roe*, the Texas Legislature enacted a comprehensive scheme of statutes expressly permitting and regulating abortion and licensing facilities for the provision of legal abortions that supplanted the pre-*Roe* statutes. For example, Texas law defined how patients could give informed consent for a legal abortion, TEX. HEALTH & SAFETY CODE §§ 171.011-171.018, permitted and regulated the provision of medication abortion, *id*. §§ 171.061-171.066, and regulated which abortion procedures could be used, *id*. §§ 171.151-171.153.

Of relevance here, this comprehensive legislative scheme led the Fifth Circuit to hold that "[t]he Texas statutes that criminalized abortion (former Penal Code Articles 1191, 1192, 1193, 1194 and 1196) and were at issue in *Roe* have . . . been repealed by implication" because abortion regulations passed thereafter could not be "harmonized with provisions that purport to criminalize abortion." *McCorvey v. Hill*, 385 F.3d 846, 849 (5th Cir. 2004). As the Fifth Circuit explained,

these adopted regulations were "intended to form a comprehensive scheme — not an addendum to the criminal statutes struck down in *Roe*." *Id.* As a result, "[t]here is no way to enforce both sets of laws." *Id.* For that reason, the Fifth Circuit also rejected a motion to reopen the final judgment in *Roe* for new evidence, finding that doing so would be pointless because "[s]uits regarding the constitutionality of statutes become moot once the statute is repealed." *Id.*

Judge Edith Jones authored the unanimous decision in *McCorvey* and added a concurrence in which she expressed hope that the U.S. Supreme Court would revisit *Roe*. *See id.* at 850-53 (Jones, J., concurring). As she explained in her concurrence, reopening the district court's judgment in *Roe* could not "turn back Texas's legislative clock to reinstate the laws, no longer effective, that formerly criminalized abortion." *Id.* at 850 (Jones, J., concurring).

The Attorney General derides the Fifth Circuit's reasoning and holding on the implied repeal as a mistaken *Erie* guess.[4] But the purported mistake is not supported by any analysis of the respective statutory schemes in his briefing and ends up as an empty legal conclusion. While repeals by implication are not favored, "the existence of an irreconcilable conflict" can lead to inference of a "clear and manifest" intent to repeal—precisely what the Fifth Circuit decided as to Texas's pre-*Roe* statutes. *E.g., Rodriguez v. United States*, 480 U.S. 522, 524 (1987). Further, as the Attorney General must concede, *McCorvey*'s analysis and holding is directly on point and remains controlling here. *See Go Green Botanicals, Inc. v. Tri-State Ins. Co. of Minn.*, 2022 U.S. Dist. LEXIS 141235, at *14 (W.D. Tex. Aug. 9, 2022) ("District courts within the Fifth Circuit and subsequent panels of the Fifth Circuit Court are bound by the Fifth Circuit's *Erie* predictions of state law absent any subsequent state-court decisions establishing that the Fifth Circuit's

---

[4] Response to Plaintiffs' Motion for Preliminary Injunction and Motion to Dismiss Plaintiffs' Complaint ("Response"), Doc. 33, pp. 28-29 (filed 9/19/2022).

prediction of state law is incorrect."); *Griffiths v. Philip Morris, Inc*., 2000 U.S. Dist. LEXIS 16159, at *4-5 (S.D. Tex. Sep. 11, 2000) ("Precedent set by the Fifth Circuit in making . . . *Erie* predictions binds this court unless 'a subsequent state court decision or statutory amendment render[s] [the Fifth Circuit's] prior decision clearly wrong.'" (quoting *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 749 (5th Cir. 1995)).

In any event, contrary to the Attorney General's unsubstantiated assertion, the Fifth Circuit's decision in *McCorvey* accords fully with Texas common law. "Where a later enactment is intended to embrace all the law upon the subject with which it deals, it repeals all former laws relating to the same subject . . . ." *Gordon v. Lake*, 356 S.W.2d 138, 139 (Tex. 1962). That is the case here. Over the course of multiple decades, Texas enacted a comprehensive regulatory scheme dealing with abortion repugnant to, and unreconciliable with, the pre-*Roe* statutes' near-total criminal ban on abortion. *See Weeks v. Connick*, 733 F.Supp. 1036, 1038 (E.D. La. 1990) ("[I]t is clearly inconsistent to provide in one statute that abortions are permissible if set guidelines are followed and in another provide that abortions are criminally prohibited.").

While the Attorney General also claims that predecessor statutes can remain in force where they can be harmonized with later statutes (*e.g., Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990)) (Response 28-29), he makes no serious attempt to show how such harmonization is possible, and it plainly is not for the reasons *McCorvey* explains.

Finally, if more were needed, before *Roe* was overruled, two Texas state appellate decisions likewise held that the pre-*Roe* statutes were unenforceable because the U.S. Supreme Court's declaration that the statutes were unconstitutional rendered them null and void. *See Dickson v. Afiya Cr.*, 636 S.W.3d 247, 263 (Tex. App. 2021); *Zimmerman*, 620 S.W.3d at 484-85.

These cases are declarative of Texas law, they support the conclusion reached in *McCorvey*, and they should be viewed as equally dispositive in this case.

In short, the pre-*Roe* statutes were repealed by implication long ago and are null and void; they thus are *not* enforceable now. For this reason alone, those statutes do not apply to prohibit the conduct Plaintiffs seek to engage in.

2. **The Pre-*Roe* Statutes Do Not Apply To The Conduct At Issue By Their Terms**

This Court need look no further than *McCorvey* or the Texas state cases (*Dickson* and *Zimmerman*) to declare the pre-*Roe* statutes unenforceable. But if it elects to do so, it is apparent that those statutes, by their plain terms, do not apply to the conduct Plaintiffs want to engage in. They cannot be read to have extraterritorial reach or to prohibit financial or logistical support or medical care related to lawful abortions outside of Texas. A contrary construction would impermissibly expand the statutes' scope and conflict with settled Texas law.

a. **The Pre-*Roe* Statutes Do Not Apply Extraterritorially[5]**

As far as the pre-*Roe* statutes are concerned, Plaintiffs focus on Article 1191 and Article 1192. For its part, Article 1191 provides:

> If any person shall designedly administer to a pregnant woman or knowingly procure to be administered with her consent any drug or medicine, or shall use towards her any violence or means whatever externally or internally applied, and thereby procure an abortion, he shall be confined in the penitentiary not less than two nor more than five years; if it be done without her consent, the punishment

---

[5] Plaintiffs maintain that the pre-*Roe* statutes cannot be given extraterritorial reach. (FAC Count VIII). That argument also is made in support of a declaration that the statutes are unconstitutional as applied to the conduct they desire to resume. (*Id.*; TRO 37-38).

shall be doubled.  By 'abortion' is meant that the life of the fetus or embryo shall

be destroyed in the woman's womb or that a premature birth thereof be caused.

Article 1192 provides, in turn, that:  "Whoever furnished the means for procuring an abortion

knowing the purpose intended is guilty as an accomplice."

In this instance, neither statute, by its terms, purports to apply to out-of-state abortions and,

as a threshold matter, they should not be read to do so.  The statutes are, at bottom, an exercise of

Texas's "sovereign power over individuals and entities *within* the relevant jurisdiction"—that is,

within Texas.  *Texas v. Becerra*, 2022 U.S. Dist. LEXIS 151142, *25-26 (N.D. Tex. Aug. 23,

2022) (emphasis added).  "Because the various states of our nation are, in many respects, entirely

separate legal sovereignties, no state "can demand that its laws have effect beyond the limits of its

sovereignty.'"  *Greenwell v. Davis*, 180 S.W.3d 287, 292 (Tex. App. 2005) (citing *Gannon v.

Payne*, 706 S.W.2d 304, 306 (Tex. 1986)).  Thus, it is an accepted principle that "[n]o state can

legislate except with reference to its own jurisdiction."  *BMW of N. Am., Inc. v. Gore*, 517 U.S.

559, 571 (1996) (citation omitted).

The Texas Legislature is, of course, presumed to act with this limiting principle in mind.

*In re Allen*, 366 S.W.3d 696, 706 (Tex. 2012) (legislature is presumed to enact a statute with

complete knowledge of existing law).  Indeed, the "legislature need not qualify each law by saying

"within the territorial jurisdiction of this State.'  That is how statutes have always been

interpreted…." Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 268-69 (2012)

(discussing extraterritorial presumptions regarding congressional enactments).

What follows from the presumed intent to legislate only within a state's jurisdiction is a

further presumption that state laws are intended to apply *only* within the state's territorial

jurisdiction and *not* extraterritorially.  The Texas Supreme Court has made it clear that this State

follows and adheres to this presumption. That is, unless an intention to have a statute operate extraterritorially is "clearly expressed," the statute will be presumed, as a matter of statutory construction, not to have extraterritorial reach.[6] *See Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 682-83 (Tex. 2006) (finding no extraterritorial effect where there is no clear intent); *Marmon v. Mustang Aviation, Inc.*, 430 S.W.2d 182, 187 (Tex. 1968) (same).

The two Articles at issue here provide no indication whatsoever, much less a clear indication, that they are intended to apply to conduct directed to lawful abortions occurring outside of Texas. Rather, it is clear that both Articles are properly read to refer to conduct within Texas and further limited to conduct related to an abortion procedure actually occurring in Texas. Accordingly, as a matter of first principles, any effort to apply the pre-*Roe* statutes to criminalize Plaintiffs' desired conduct would defy the presumptive limitations on the Legislature's authority to act and its awareness of those limitations.[7] Texas does not have the authority to enforce these statutes with respect to conduct related to legal acts in other states.

### b. The Pre-*Roe* Statutes Do Not Apply By Their Plain Terms

When one turns to principles of statutory construction, the result is the same. In construing a statute, a court's primary objective "is to ascertain and give effect to the Legislature's intent." *In Re State*, 325 S.W.3d 848, 854 (Tex. 2010) (citing *Klein v. Hernandez*, 315 S.W.3d 1, 3-4 (Tex.

---

[6] Federal law embraces this same "clear indication" principle. There is a presumption that a statute does not operate extraterritorially where there is no clear indication in the statute itself that Congress intended it to apply abroad. *See RJR Nabisco v. European Community*, 579 U.S. U.S. 325, 335 (2016); *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 118 (2013).

[7] The Texas criminal jurisdiction statute (TEX. PENAL CODE ANN. § 104(a) (FAC ¶ 69)) does not change this conclusion in any respect. First, the "clear indication" principle applies to the statutes in question; here, Articles 1191 and 1192. Further, there is no "clear indication" in § 104(a) regarding abortion procedures or any conduct relating to abortions, nor does the plain language of the statute evince an intent to reach out-of-state abortions or conduct related to them.

2010)). Further, a court will rely on the plain meaning of the text as the expression of intent unless a different meaning is apparent from context or the plain meaning leads to an absurd result. *Tex. Lottery Comm'n v. First State Bank of Dequeen*, 325 S.W.3d 628, 635 (Tex. 2010). In determining the plain meaning, statutory language is not read in isolation. Rather, the language is construed in the context of the statute as a whole. *Greater Houston P'ship v. Paxton*, 468 S.W.3d 51, 58-60 (Tex. 2015); *Fedricksburg Care Co. v. Perez*, 461 S.W.3d 513, 520 (Tex. 2015).

Looking first at Article 1191, there is nothing in its plain language that would criminalize the Plaintiffs' desired conduct. None of the non-profit Plaintiffs seeks to administer or knowingly procure to be administered any drug, medicine or means to cause an abortion inside or outside of Texas. (FAC ¶ 11). And, with respect to the individual Plaintiff, the proposed conduct is directed to abortions occurring outside the State. (FAC ¶¶ 11-12). Given the absence of any applicable language, there is nothing absurd about limiting the statute to abortions occurring within Texas and the Legislature should be presumed to have intended that limitation.

And, as for Article 1192, none of the Plaintiffs intends to "furnish the means" for "procuring" an abortion in Texas as those terms are used in the provision under their historic interpretation. In Article 1192, "means" refers to the act that caused the abortion, whether a drug, medicine, instruments, or other procedure. "Procuring," as read in context, refers to "causation." *See*, *e.g.*, *Moore v. State*, 40 S.W. 287, 290 (Tex. Crim. App. 1897) (and cases cited); *Fondren v. State*, 169 S.W. 411, 413-15 (Tex. Crim. App. 1914); *Tonnahill v. State*, 208 S.W. 516, 517-19 (Tex. Crim. App. 1919). As the *Moore* court thus explained with respect to the earlier similarly-worded statute, because the pregnant woman could not be a principal in her own abortion, the Texas Legislature created a separate crime in Texas such that "where one prescribes the medicine, and furnishes it to the woman for the purpose of creating an abortion, he is a principal and that [the

furnishing provision] has reference to a case in which the principal is furnished the means with which the abortion is committed." *Moore*, 40 S.W. at 290. The Legislature is presumed to have enacted the pre-*Roe* statutes with an awareness of this long-standing construction, and that construction should be credited here. *See Jones v. State*, 323 S.W.3d 885, 888-89 (Tex. Crim. App. 2010); *State v. Colyandro*, 233 S.W.3d 870, 877-78 (Tex. Crim. App. 2007).

Looking beyond the pertinent judicial construction, the result is the same. Ordinary dictionary definitions at the time make clear that "[f]urnish" meant "supply" or "provide," just as the Texas state cases indicate. *See* Black's Law Dictionary (1933) ("1.To supply; provide; provide for use; deliver, whether gratuitously or otherwise. As used in the liquor laws "furnish" means to provide in any way, and includes giving as well as selling."); Bouvier's Law Dictionary (1926) ("To supply. Distinguished from 'invent' which means to create."). As for "procure," in this context, it meant "cause," just as the Texas cases likewise indicate. *See* Black's Law Dictionary (1933) ("In criminal law, and in analogous uses elsewhere, to 'procure' is to initiate a proceeding to cause a thing to be done; to instigate; to contrive, bring about, effect, or cause. To persuade, induce, prevail upon, or cause. To obtain, as intoxicating liquor, for another. To find or introduce; - said of a broker who obtains a customer. To bring the seller and the buyer together so that the seller has an opportunity to sell. To 'procure' an act to be done is not synonymous with to 'suffer' it to be done."); Bouvier's Law Dictionary (1926) ("To contrive, effect, or bring about; to cause. There is a clear legal distinction between procuring an act to be done and suffering it to done.").

These ordinary definitions likewise should be credited in construing Article 1192. "When a statute contains a term that is undefined," Texas courts apply the term's ordinary meaning. *Sw. Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 405 (Tex. 2016); *Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 34-35 (Tex. 2017); *see Epps v. Fowler*,

351 S.W.3d 862, 866 (Tex. 2011) ("[W]e consult dictionaries to discern the natural meaning of a common-usage term not defined by contract, statute, or regulation."). When interpreting Texas statutes, the Fifth Circuit adopts the ordinary meaning as well. *Canarchy CRAFT Brewery Collective, L.L.C. v. Tex. Alcoholic Bev. Comm'n*, 37 F.4th 1069, 1074 (5th Cir. 2022) (interpreting a Texas statute and stating that "[t]o determine a term's common, ordinary meaning, we typically look first to dictionary definitions.).

Context also leads to the same limited reach for Article 1192. The surrounding Articles in the pre-*Roe* statutes confirm that Article 1192 applied to supplying the instrumentality or medicine to cause an abortion in Texas. In its definition of abortion, for example, Article 1191 makes clear that the "means" is any "drug or medicine," or "violence," or any "means whatever externally or internally applied" that "thereby procure the abortion." Similarly, the statutes attempt provision, also indicates that an attempt occurs "[i]f the means used shall fail to produce an abortion" so long as "such means were calculated to produce that result." 1925 TEX. CRIM. Stat. 1193. This further indicates that "means" refers to something that is able to produce an abortion, *i.e.*, the instrumentality or medicine. And the language of Article 1196—exempting from the chapter "an abortion procured or attempted by medical advice for the purpose of saving the life of the mother"—establishes that "procure" means "cause."

Simply put, consistent with their plain terms, Articles 1191 and 1192 should be read to apply to abortions occurring in Texas and providing the means for, or causing, an abortion in Texas. Those Articles, as enacted decades ago, do not purport to reach conduct related to lawful abortions occurring outside this State and there are no contemporaneous Texas cases giving any hint that that would be the case. Equally importantly, there is nothing in the text or context of the statutes suggesting a more expansive construction reaching the conduct that Plaintiffs desire to

pursue with respect to lawful abortions outside this State. Articles 1191 and 1192 were enacted a century ago and aimed at abortions performed in Texas. There is no language expressly applicable to supplying financing, information, or transportation or providing care for a lawful out-of-state abortion. Texas courts will not, in these circumstances, read language into a statute that is not there. *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 562 (Tex. 2014) ("We must enforce a statute "as written" and "refrain from rewriting text that lawmakers chose" (citations omitted)); *Merlo v. Lopez*, 2021 Tex. App. LEXIS, at *33 (Tex. App. Jan. 28, 2021) (a court limits its "analysis to the words of the statute and will not insert language into the statute that is not there").

Finally, if there was any alleged ambiguity in that regard, Texas's application of the rule of lenity to these criminal penalties located outside of the penal code would call for a narrow, not expansive, construction of these provisions. *See Delay v. State*, 465 S.W.3d 232, 251 & n.69 (Tex. Crim. App. 2014) (noting the applicability of the rule of lenity in these circumstances).

In sum, there is no recognized principle of statutory construction that conceivably would stretch the language in Articles 1191 and 1192 to the conduct in issue in this proceeding. These statutes do not apply by their plain terms, and if this Court reaches the issue, consistent with accepted principles of construction, it should say so.

## B.      H.B. 1280 Does Not Apply To The Conduct Plaintiffs Want To Engage In

Just as with the pre-*Roe* statutes, H.B. 1280 should not be construed to reach conduct related to lawful abortions occurring outside of this State.[8] H.B. 1280 prohibits any abortion except those performed by a licensed physician to prevent the death or serious risk of substantial impairment of a major bodily function of the pregnant person. TEX. HEALTH & SAFETY CODE

---

[8] Plaintiffs attack H.B. 1280 on vagueness grounds (Count VII, TRO 34-37), and object to its extraterritorial reach (Count VIII, TRO 37-38). But as noted above, their arguments are in support of a declaration that the statute is unconstitutional as applied to the conduct they want to resume.

§ 170A.  The statute defines an "abortion" to mean "the act of using or prescribing an instrument, a drug, a medicine, or any other substance, device, or means with the intent to cause the death of an unborn child of a woman known to be pregnant."  TEX. HEALTH & SAFETY CODE §§ 170A.001-002, 245.002.  Further, §§ 170A.004 and 170A.005 provide criminal and civil penalties for a person who violates Section 170A.002; that is those who "us[e] or prescribe[e] an instrument, a drug, a medicine, or any other substance, device, or means," for an abortion.  TEX. HEALTH & SAFETY CODE §§ 170A.002, 170A.004-.005.

To begin with, as with the pre-*Roe* statutes, these statutes do not purport to have any extraterritorial reach.  There is no language in the statutes indicating any such thing, much less the clear intent Texas law would demand.  Therefore, the statutes should be presumed to have no extraterritorial effect as to conduct that is lawful in another state or to criminalize conduct occurring in Texas related to that lawful out-of-state conduct and not otherwise within H.B. 1280's terms.

Further, the plain language of H.B. 1280 does not apply the conduct involved in this lawsuit either.  There is nothing in the statutes that purports to reach those who are not using, prescribing, or employing any means related to an abortion.  In particular, nothing in the various sections of H.B. 1280 makes reference to anything except the conduct relating to the abortion procedure itself.  There likewise is no express reference to conduct relating to abortions out-of-state or providing financing or other support for those abortions or medical care for those who receive them.  Therefore, no contextual construction of H.B. 1280 could conceivably extend to that conduct, and

as noted above, no Texas court would add language to the statutes to do so. Since the statutes' plain terms do not reach the alleged conduct, the statutory construction would stop right there.[9]

Lastly, no concept of aiding and abetting, if urged by the Defendants as a basis for liability, can change the statutory construction calculus in any respect. As noted at the outset (fn. 1 *supra*), there can be no potential liability for aiding and abetting unless and until the state proves a primary violation of a particular statute. That is true as a matter of criminal law, as *Beier*, 687 S.W.2d at 3, reflects, as well as alleged civil liability. *Gamble v. Anesthesiology Assocs.*, 2022 Tex. App. LEXIS 5091 (Tex. App. July 21, 2022) (citing *West Fork Advisors, LLC v. SunGard Consulting Servs., LLC*, 437 S.W.3d 917, 921 (Tex. App. 2014)) (aiding and abetting is a derivative claim premised on proof of the underlying tort).

Therefore, like the pre-*Roe* statutes, H.B. 1280 should not be construed to reach the conduct Plaintiffs have stopped but seek to resume. If this Court reaches the issue, it should hold so.

**C.    This Court Should Issue A Declaratory Judgment And Injunction That The Pre-*Roe* Statutes And H.B. 1280 Do Not Apply And Cannot Be Applied To The Conduct Plaintiffs' Desire To Engage In**

Under any circumstances, the granting of declaratory and injunctive relief lies in this Court's discretion. *Hay v. Waldron*, 834 F.2d 481, 484 (5th Cir. 1987) (injunctive relief); *Hollis v. Itawamba County Loans*, 657 F.2d 746, 750 (5th Cir. 1981). Here, after recognizing the limited reach of the statutes at issue, this Court should enter a declaratory judgment that those statutes are

---

[9] Any attempt by the Defendants to extract a broader intent from H.B. 1280 by resort to extrinsic evidence or their own declarations of the policy of Texas law would be futile. A statute's unambiguous language "is the purest guide to the Legislature's intent." *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 507 (Tex. 2012). The "Legislature expresses its intent by the words it enacts and declares to be the law." *Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex. 2011); *see Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018) ("When a statute is not ambiguous on its face, it is inappropriate to use extrinsic aids to construe the unambiguous statutory language").

inapplicable to the conduct Plaintiffs desire to engage in because (i) those statutes cannot be applied extraterritorially to reach that conduct and (ii) those statutes do not apply to that lawful conduct by their plain terms. This Court should then enter an injunction prohibiting the Defendants from enforcing those statutes against the Plaintiffs who undertake that conduct.

D.      **This Court Should Exercise Its Broad Discretion And Decline To Reach The Constitutional Issues**

With the declaration and injunction based on the proper construction in hand, there is no need to reach the constitutional issues related to the application of the pre-*Roe* statutes or H.B. 1280 as applied to the conduct Plaintiffs want to engage in. Since the statutes cannot be applied or read to prohibit that conduct, there is no need to declare those statutes unconstitutional as applied to this controversy. *See United States v. Johnson*, 956 F.3d 740, 743 (5th Cir. 2020) (recognizing that the court was "obliged to consider non-constitutional issues that would be dispositive of the appeal before [it] reach[ed] a constitutional question."). "It is a long-standing precept, steeped in the traditions of federal jurisprudence, that courts should avoid ruling on constitutional issues when a matter can be resolved on non-constitutional grounds." *Texas v. United States*, 328 F.Supp.3d 662, 710 (S.D. Tex. 2018) (citing *Escambia Cty. v. McMillan*, 466 U.S. 48, 51 (1984)). Thus, a court should decline to render a declaratory judgment or enter an injunction with respect to constitutional issues "where the underlying controversy has already been resolved under state law and resolution of the constitutional issue[s] is unnecessary to clarify the rights of the parties." *Nagy v. Farmers Ins. Exch.*, 758 F.2d 189, 192 (6th Cir. 1985); *see Alabama State Federation of Labor v. McAdory*, 325 U.S. 450, 471 (1945) ("In the exercise of this Court's discretionary power to grant or withhold the declaratory judgment remedy it is of controlling significance that it is in the public interest to avoid the needless determination of constitutional questions").

Principles of mootness also support avoiding reaching the constitutional issues, consistent with the reasoning in *McCorvey*. In that case, the Fifth Circuit declined to reach the constitutional issues regarding the involved statutes because the statutes had been repealed and thus did not apply. While the inapplicability of the statutes in this instance results from interpretation, the same result ensues — the statutes, by their terms, do not infringe on the conduct at issue and the constitutional issues are moot for that reason because no constitutional problem is posed. A dispute can become moot if the issues initially presented no longer create the need for the declaration requested. So it would be here if this Court adopts the declaration and injunction Amici advance. Dismissal is appropriate in these circumstances. *See Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 216 (3d Cir. 2003); *Gegenheimer v. Stevenson*, 2017 U.S. Dist. *LEXIS* 103843, **6-9 (W.D. Tex. July 5, 2017) (dismissal for mootness is appropriate where statutory text, properly construed, does not actually pose the constitutional issue on which a lawsuit is based); *see also Gibson v. Am. Cyanamid Co*., 760 F.3d 600, 608 (7th Cir. 2010) (explaining that if state statute resolved issue, "then discussing the federal constitutional challenges … would amount to issuing an advisory opinion").

Given the availability of a resolution path that both avoids and moots the asserted constitutional issues, this Court should exercise its broad discretion, and decline to make a declaration concerning those disputed constitutional issues. This is especially true where, as here, matters of "public moment," *Ernst & Young v. Depositors Economic Protection Corp.*, 45 F.3d 530, 535 (1st Cir. 1995), and significant constitutional issues are involved, *Gonzalez-Oyarzun v. Caribbean City Builders, Inc.*, 798 F.3d 26, 28 (1st Cir. 2015) ("declaratory judgments concerning the constitutionality of government conduct will almost always be inappropriate when . . . the underlying grievance can be remedied for the time being without gratuitous exploration of

uncharted constitutional terrain") (quoting *El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488, 494 (1st Cir. 1992).

## III.    CONCLUSION

Given the proper construction of the pre-*Roe* statutes and H.B. 1280, this Court should enter a declaratory judgment that these statutes do not apply to the conduct Plaintiffs want to engage in and an injunction prohibiting their application.  Having done so, this Court should then decline to reach the constitutional issues raised as they relate to the application of those statutes.

Dated:  November 18, 2022                    Respectfully submitted,

*/s/ Emily P. Harbison*
Emily P. Harbison
Reed Smith LLP
James C. Martin
Reed Smith LLP
*Attorneys for Professor*
*Elizabeth Sepper and Professor Seema*
*Mohapatra*

# EXHIBIT A

**ELIZABETH SEPPER**
The University of Texas at Austin
727 E. Dean Keeton St.
Austin, TX 78705
esepper@law.utexas.edu

## *ACADEMIC APPOINTMENTS*

**University of Texas School of Law**
*Professor*                                                          2019 - Present

**Princeton University**
*Law and Public Affairs Fellow/Crane Fellow*                         2018 - 2019

**Washington University School of Law**
*Professor*                                                          2017 - 2019
*Associate Professor*                                                2012 - 2017

- Courses Taught: Torts, Health Law, Healthcare Financing, Reproductive Rights and Justice, Health Law and Policy Seminar, Corporations & the Constitution Seminar
- Research Interests: Law & Religion, Health Law, Corporate Constitutional Rights, Public Accommodations Law, and Gender & Reproduction

## *EDUCATION*

**New York University School of Law**, New York, NY
LL.M. in International Legal Studies, 2007
Honors:       Institute for International Law and Justice Scholar

**New York University School of Law**, New York, NY
J.D., *magna cum laude*, 2006
Honors:       *New York University Law Review*; Order of the Coif; Dean's Scholarship

**Boston University**, Boston, MA
B.A. in History, *summa cum laude* with distinction, 2002

## *WORKS IN PROGRESS*

- *Government's Religious Hospitals*, 109 VA. L. REV. --- (forthcoming 2023) (with James D. Nelson)
- *Religion Law and Political Economy*, --- IOWA L. REV. --- (forthcoming 2023) (with James D. Nelson) (invited symposium)
- *Beyond Free Exercise Lochnerism*, -- B.Y.U. L. REV. --- (forthcoming 2023) (BYU Law School's Annual Law and Religion Lecturer)

- *Texas Standards of Care*, SMU L. REV. --- (forthcoming 2023) (invited symposium)

- *Abortion Exceptionalism After* Dobbs, 51 J. OF L. MED. & ETHICS --- (forthcoming 2023) (invited symposium)

- *Crisis of Conscience*, 24 J. of Contemporary Legal Issues --- (forthcoming 2023) (invited symposium keynote speaker)

- CONSTITUTIONAL LAW AND RELIGION (co-edited casebook with Frederick Mark Gedicks, Robert W. Tuttle, Micah J. Schwartzman, & Nelson Tebbe) (West forthcoming 2024)

## *PUBLICATIONS*

- *Religious Exemptions and Gender Equality in a Pandemic in* THE ROUTLEDGE GENDER COMPANION TO GENDER AND COVID-19 (Linda C. McClain & Aziza Ahmed, eds. Forthcoming 2022)

- *The Feminist Movement's State Action Doctrine*, 2021 MICH. ST. L. REV. --- (forthcoming 2022) (invited symposium keynote speaker)

- *Adolf Berle's Corporate Conscience,* 45 U. SEATTLE L. REV. 97 (2021) (with James D. Nelson) (invited symposium)

- *The Religious Conversion of Corporate Social Responsibility*, 71 EMORY L.J. 217 (2021) (with James D. Nelson)

- *Disestablishing Religious Hospitals*, 49 J. OF L. MED. & ETHICS 542 (2021) (with James D. Nelson) (peer reviewed)

- *The Original Meaning of "Full and Equal Enjoyment" of Public Accommodations*, 11 CAL. L. REV. ONLINE 572 (2021) (reply to Suja A. Thomas, *The Customer Caste: Lawful Discrimination by Public Businesses*, 109 CAL. L. REV. 141 (2021))

- *The First Amendment and the "Unique Evils" of Public Accommodations Discrimination*, 2020 U. CHI. LEGAL F. 271 (2020) (invited symposium)

- *Shared Histories: The Feminist and Gay Liberation Movements for Freedom in Public*, 54 U. RICHMOND L. REV. 784 (2020) (with Deborah Dinner) (invited symposium)

- *Sex Segregation, Economic Opportunity, and* Roberts v. U.S. Jaycees, 28 WM. & MARY BILL OF RTS J. 489 (2020) (invited symposium)

- *The Right to Avoid Procreation and the Regulation of Pregnancy*, in OXFORD HANDBOOK OF COMPARATIVE HEALTH LAW (Tamara Hervey & David Orentlicher, eds. 2020)

- *Sex in Public*, 129 YALE L.J. 78 (2019) (with Deborah Dinner)

- *Toppling the Ethical Balance — Health Care Refusal and the Trump Administration*, 381 NEW ENG. J. OF MED. 896 (2019)

- *A Missing Piece of the Puzzle of the Dignitary Torts*, 104 CORNELL L. REV. ONLINE 70 (2019) (reply to Kenneth S. Abraham & G. Edward White, *The Puzzle of the Dignitary Torts*, 104 CORNELL L. REV. 317 (2019))

Elizabeth Sepper

- *Making Religion Transparent: The Substance, Process, and Efficacy of Disclosing Religious Restrictions on Care in* TRANSPARENCY IN HEALTH AND HEALTH CARE (I. Glenn Cohen, Holly Fernandez Lynch, Barbara Evans & Carmel Shachar eds. 2019)

- *Zombie Religious Institutions*, 112 NW. U. L. REV. 929 (2018)

- *Religious Exemptions, Harm to Others, and the Indeterminacy of a Common Law Baseline*, 106 KENTUCKY L.J. 661 (2018) (invited symposium)

- *Sex, Religion, and Politics, or the Future of Healthcare Antidiscrimination Law*, 19 MARQUETTE BENEFITS & SOC. WELFARE L. REV. 217 (2018) (with Jessica L. Roberts) (invited symposium)

- *The Risky Business of RFRAs after* Hobby Lobby, *in* THE CONTESTED PLACE OF RELIGION IN FAMILY LAW (Robin Fretwell Wilson, ed. 2018)

- LAW, RELIGION, AND HEALTH IN THE UNITED STATES (Cambridge Univ. 2017) (editor together with Holly Fernandez Lynch and I. Glenn Cohen)

- *Contracting Religion, in* LAW, RELIGION, AND HEALTH IN THE UNITED STATES (Holly Fernandez Lynch, I. Glenn Cohen, & Elizabeth Sepper eds. 2017)

- *The Role of Religion in State Public Accommodations Laws*, 60 SLU L.J. 631 (2016) (invited response to Professor Larry Sager's Childress Lecture)

- *Substantiating the Burdens of Compliance*, 2016 U. ILL. L. REV. ONLINE 53 (2016) (invited)

- *Conscientious Refusals of Care, in* OXFORD HANDBOOK OF AMERICAN HEALTH LAW (Glenn Cohen, Allison Hoffman, & William Sage, eds. 2016)

- *Free Exercise Lochnerism*, 115 COLUM. L. REV. 1457 (2015)

- *Healthcare Exemptions and the Future of Corporate Religious Liberty, in* THE RISE OF CORPORATE RELIGIOUS LIBERTY (Micah Schwartzman, Chad Flanders & Zoe Robinson, eds. 2015)

- *Gendering Corporate Conscience*, 38 HARV. J. GENDER L. 193 (2015) (invited symposium)

- *Gays in the Moralized Marketplace*, 7 ALA. C.R. & C.L. L. REV. 129 (2015) (invited symposium)

- *Doctoring Discrimination in the Same-Sex Marriage Debates*, 89 IND. L.J. 703 (2014)

- *Reports of Accommodation's Death Have Been Greatly Exaggerated*, 128 HARV. L. REV. FORUM 24 (2014) (invited response to Paul Horwitz, *The* Hobby Lobby *Moment*, 128 HARV. L. REV. 154 (2014))

- *Contraception and the Birth of Corporate Conscience*, 22 AM. U. J. OF GENDER, SOC. POL'Y & L. 303 (2014) (symposium)

- *Not Only the Doctor's Dilemma: The Complexity of Conscience in Medicine*, 4 FAULKNER L. REV. 385 (2013) (invited symposium)

- *Taking Conscience Seriously*, 98 VA. L. REV. 1501 (2012)

- *Confronting the 'Sacred and Unchangeable': The Obligation to Modify Cultural Patterns Under the Women's Discrimination Convention*, 30 U. PA. J. INT'L L. 585 (2008), reprinted in GENDER ISSUES AND HUMAN RIGHTS (Dianne Otto, ed. 2013)

Elizabeth Sepper

- *International Health Law,* 41 INT'L LAWYER 629 (2007) (co-authored with Jonathan Todres & Laurel R. Hyle)


## *AWARDS*

- 2023 Law and Religion Lectureship at BYU Law School
- 2022 Recipient of the McDonald-Merrill-Ketcham Memorial Lectureship and Award for Excellence in Law and Medicine, Indiana University Robert H. McKinney School of Law and Indiana University School of Medicine
- Audre Lorde Academic Exploration Award from Washington University LGBT* Student Association, Nov. 2016
- *Doctoring Discrimination in the Same-Sex Marriage Debates* awarded:
  - o Dukeminier Award and the Ezekiel Webber Prize 2015, which recognize the best sexual orientation and gender identity legal scholarship published in the previous year and are conferred by the Williams Institute at UCLA School of Law
  - o Southeastern Association of Law Schools 2014 Annual Meeting Best Papers Prize
- 2014 Health Law Scholar, The American Society of Law, Medicine, and Ethics and St. Louis University


## *SELECTED PRESENTATIONS*

- *Government's Religious Hospitals*
  - o University of Texas Law School Faculty Workshop, Oct. 2022
  - o University of Kansas School of Law Faculty Workshop, Sept. 2022
  - o University of Kentucky College of Law Faculty Workshop, Apr. 2022
  - o University of Texas Law School Seminar on Corporations and the Constitution, Apr. 2022
  - o Nootbaar Fellows Workshop, Pepperdine School of Law, Dec. 2021
  - o APPEAL Working Group on Constituting and Constitutionalizing Law and Political Economy, Dec. 2021
  - o Yale Law School, Information Society Project Workshop, Oct. 2021
  - o Annual Law & Religion Roundtable, June 2021
  - o American Society of Law, Medicine, & Ethics Annual Meeting, June 2021
- *The Religious Conversion of Corporate Social Responsibility*
  - o National Business Law Scholars' Conference, June 2021
  - o UC Davis School of Law Faculty Workshop, March 2021
  - o Michigan State University College of Law, Nov. 2020
  - o Yale Law School Seminar on Private Law, March 2020
- *Sex in Public: The Feminist Movement for Public Accommodations Law*
  - o Princeton University, Law and Public Affairs Program, Feb. 2019
  - o Temple School of Law, Faculty Workshop, Feb. 2019
  - o Rutgers-Camden School of Law, Faculty Workshop, Nov. 2018
  - o Drexel Law School, Faculty Workshop, Nov. 2018
  - o Washington University School of Law, Faculty Workshop, June 2018
  - o Law & Society Association, June 2018
- *Zombie Religious Institutions*

Elizabeth Sepper

- o University of Indiana Indianapolis McKinney School of Law, Health Law Grand Rounds, Nov. 2017
  - o University of Houston Law Center, Colloquium: Reenvisioning Law, Apr. 2017
  - o University of Indiana Maurer School of Law, Faculty Workshop, Mar. 2017
  - o University of Notre Dame School of Law Faculty Workshop, Mar. 2016
- *Making Religion Transparent,*
  - o Harvard Law School, Petrie-Flom Center Conference Transparency in Health and Health Care: Legal and Ethical Possibilities and Limits, Apr. 2017
- *Social Citizenship, Antidiscrimination, and the Affordable Care Act*
  - o Southeastern Association of Law Schools, Panel, Health Law, Aug. 2017
  - o American Association of Law Schools, Panel, Health Insurance and Access to Healthcare After the Affordable Care Act, Jan. 2017
  - o American Association of Law Schools, Health Law Works-in-Progress, The Promise and Perils of the Healthcare Antidiscrimination Act, Jan. 2017
  - o American Society of Law, Medicine, & Ethics Annual Meeting, June 2016
- *Free Exercise Lochnerism*
  - o Roundtable on First Amendment Lochnerism, Columbia Law School, Mar. 2016
  - o University of Missouri School of Law Faculty Workshop, Apr. 2015
  - o Wharton Business School, Hobby Lobby Conference, Philadelphia, Dec. 2014
  - o Loyola Constitutional Law Colloquium, Loyola Chicago Law School, Nov. 2014
  - o Southeast Law Schools Junior-Senior Workshop, Florida State University, Oct. 2014
  - o Annual Law and Religion Roundtable, June 2014
  - o Harvard Law School, Religious Accommodation in the Age of Civil Rights, Apr. 2014
  - o Washington University Midwest Junior Faculty Workshop, Dec. 2013
  - o Washington University Women, Gender, and Sexuality Studies Workshop, Oct. 2013
  - o Southeastern Association of Law Schools Annual Meeting, Aug. 2013
- *Contracting Religion*
  - o Loyola Constitutional Law Colloquium, Loyola Chicago Law School, Nov. 2015
  - o University of Chicago Workshop on Regulating Family, Sex, and Gender., Nov. 2015
  - o Harvard Law School, Petrie-Flom Center Conference on Law, Religion, and Health in America, May 2015
- *Contraception and the Birth of Corporate Conscience*
  - o American Society of Law, Medicine, & Ethics Annual Meeting, June 2013
  - o American University School of Law, Symposium on Gender Matters: Women, Social Policy, and the 2012 Election, April 2013
- *Doctoring Discrimination*
  - o Southeastern Association of Law Schools Annual Meeting, Aug. 2014
  - o University of Illinois School of Law Faculty Workshop, Sept. 2013
  - o Washington University Faculty Workshop, July 2013
  - o Emerging Family Law Scholars Conference, June 2013
  - o Southeastern Association of Law Schools Annual Meeting, Aug. 2013
  - o Law and Society Association Annual Meeting, May 2013
- *Taking Conscience Seriously*
  - o Oxford University, University College, Abortion in Context: Law, Ethics, & Practice Seminar, June 2016
- Other
  - o Rockefeller University Women in Science Lecture Series, Reproductive Rights and Justice after Dobbs v. Jackson Women's Health Organization, June 2022

Elizabeth Sepper

- o Vanderbilt Law School, LGBTQ+ Roundtable, Apr. 2022
- o Yale Law School Free Exercise Speaker Series, Revisiting Free Exercise Lochnerism, Apr. 2022
- o Indiana University Robert H. McKinney School of Law and Indiana University School of Medicine, The Law and Ethics of Conscience in Healthcare, McDonald-Merrill-Ketcham Memorial Lectureship and Award for Excellence in Law and Medicine, Mar. 2022
- o Dartmouth University, Ethics Institute, State Funding of Religious Schools and *Carson v. Makin*, Feb. 2022
- o AALS, SB8 and the Future of Reproductive Rights, Jan. 2022
- o American Constitution Society, Abortion & the Supreme Court: Debriefing the SB8 Oral Arguments, Nov. 2021
- o University College London Bioethics and Medical Law Society, Understanding the State of Abortion in the US, Nov. 2021
- o NYU Law Birnbaum Center, Texas SB 8 and Looking Ahead to Dobbs, Nov. 2021
- o Federalist Society Chapters of the University of Virginia and the University of Texas, Unpacking Fulton, July 2021
- o Southwestern Association of Obstetrician-Gynecologists, Dallas, TX, Nov. 2018
- o Southern Methodist University New Feminist Discourses and Social Change, Reproductive Justice and Religion, Apr. 2018
- o Law and Society Annual Meeting, Commentator on Carol Sanger's On Abortion, June 2018
- o Southeastern Association of Law Schools, Aug. 2017
  - ▪ Presenter, Recent Developments in Health Law and Public Health Ethics
  - ▪ Presenter, Affordable Care Act Repeal and Replace Proposals
- o Columbia Law School, The Future of Religious Exemptions, Dec. 2016
- o University of Virginia, Religion, Liberalism, and Law Symposium, Apr. 2016
  - ▪ Invited Commentator on Nelson Tebbe book manuscript
- o American Society of Law, Medicine, & Ethics Annual Meeting, June 2015
  - ▪ Panelist and Moderator, Toward a Healthy First Amendment
- o Law and Society Association Annual Meeting, May 2015
  - ▪ Panelist, *The Family Corporation*
- o American Society of Law, Medicine, and Ethics and St. Louis University Health Law Scholars Workshop, Sept. 2014
  - ▪ Workshop, *Unethical Contracts*
- o Federalist Society, Faculty Legal Colloquium, Liberty of Conscience and the Law, Chicago, Aug. 2014
- o Religious Institutionalism Conference, DePaul School of Law, Sept. 2013
  - ▪ Commentator, *Demagoguing Abortion* by Robin Fretwell Wilson
- o Faulkner Law School Symposium on Overlapping Jurisdictions: What Role for Conscience and Religion?, October 2012
  - ▪ Plenary Speaker, *Not Only the Doctor's Dilemma: The Complexity of Conscience in Medicine*
- o American Society of Law, Medicine, & Ethics Annual Meeting, June 2012
  - ▪ Panelist, *Free to Associate Against Public Health?: Religious Organizations' Challenges to Sexual and Reproductive Healthcare*

## SERVICE

Elizabeth Sepper

Law School
University of Texas:
- Budget Committee, 2021-present
- Library Director Search Committee, Chair, 2021-22
- Tenure & Promotions Committee, Chair, 2020-21
- Colloquium Committee, 2019-20
- Faculty Advisor, American Constitution Society UT Chapter, 2021-Present
- Faculty Advisor, Health Law Society UT Chapter, 2022-Present

Washington University:
- Appointments Committee, Summer/Fall 2018
- Scholarship Committee, Spring 2017, Chair, 2017-18
- Institutional Profile Committee, 2014-16
- Mission/Community Planning Committee, 2012-13
- Appointments Committee, Fall 2013
- Judicial Clerkship Advisor, Fall 2013
- Faculty Advisory Committee, Transnational Law Program, Fall 2012-2018
- Faculty Advisor, Health Law Student Association, 2014-2018
- Faculty Advisor, Washington University Journal of Law & Policy, 2015-2018
- Women's Law Caucus, Mentor, 2012-2015

University-wide
- University of Texas: University Faculty Gender Equity Council, 2020-present
- Washington University: Association of Women Faculty Board, 2018-19; Honorary Degree Committee, 2018-19; Work-Life Balance Committee, 2018-19; Embryonic Stem Cell Research Oversight Committee, 2015-19; Faculty Scholar, Institute for Public Health, 2012-19

Professional
- AALS Section on Law & Religion, At-Large Member, 2016-2019
- AALS Section on Sexual Orientation and Gender Identity, Treasurer, 2019-20; Executive Committee Member, 2018
- Legal Advisor, Public Rights/Private Conscience Project, Columbia Law School, 2014-2017
- Board Member, Planned Parenthood of the St. Louis Region and Southwest Missouri, 2013-2016
- Referee: Journal of Law and Biosciences; New England Journal of Medicine; Journal of Law, Medicine, and Ethics; Journal of Law, Religion and State; Journal of Church and State
- Media: Regular commentator in popular national outlets, including the New York Times, Washington Post, NPR, the Atlantic, Bloomberg, Reuters, and AP, and local television, radio, and print media, including the Texas Tribune, Houston Chronicle, Spectrum TV, and Austin American Statesman. My scholarly writing has been reported in the New Republic, the Nation, Slate, and the Maryland Daily Record.


## *OTHER LEGAL EXPERIENCE*

- Columbia Law School, New York, NY
  - *Center for Reproductive Rights Fellow*, 2010-2012

Elizabeth Sepper

- N.Y.U. Center for Human Rights and Global Justice, New York, NY
    - *Legal Fellow*, 2009-2010
- Human Rights Watch, New York, NY
    - *Legal Fellow*, 2008-2009
- The Honorable Marjorie O. Rendell, Third Circuit Court of Appeals, Philadelphia, PA
    - *Law Clerk*, 2007-2008
- Human Rights First, New York, NY
    - *Legal Intern*, Fall 2007
- Cooley, Godward & Kronish, New York, NY
    - *Summer Associate*, Summer 2007
- Cleary, Gottlieb, Steen & Hamilton, Rome, Italy and New York, NY
    - *Summer Associate*, Summer 2005
- International Women's Rights Action Watch, Kuala Lumpur, Malaysia
    - *Legal Intern*, Summer 2004

## *ADDITIONAL INFORMATION*

Languages: fluent Italian, proficient French, and basic Spanish.
Bar admissions: New York.

# SEEMA MOHAPATRA
## 3315 DANIEL AVE
## DALLAS, TEXAS 75205

## ACADEMIC EXPERIENCE

| | |
|---|---|
| 2021-Present | M.D. Anderson Endowed Professor in Health Law and Professor of Law (with tenure) (2022-Present), Charles J. and Inez Wright Murray Distinguished Visiting Professor of Law (2021-2022), SMU Dedman School of Law, Dallas, TX |
| 2018-2021 | Professor of Law (Law Faculty Approval October 2021, University Approval February 2021, Board of Trustees Approval April 2021); Associate Professor of Law (with tenure), Indiana University Robert H. McKinney School of Law, Indianapolis, IN |
| 2020-2021 | Visiting Associate Professor of Law (Online), Florida A & M College of Law, Orlando, FL |
| 2010-2018 | Associate Professor of Law (with tenure), previously Assistant Professor of Law Barry University, Dwayne O. Andreas School of Law, Orlando, FL |

## LEGAL PRACTICE EXPERIENCE

| | |
|---|---|
| 2001-2005 | Associate in Health Law Group, Sidley and Austin, Chicago, IL |
| 2000-2001 | Associate in Health Law and Corporate Groups, Foley and Lardner, Chicago, IL |

## EDUCATION

| | |
|---|---|
| J.D. | School of Law, Northwestern University, 2000 |
| M.P.H. | Department of Chronic Disease Epidemiology, School of Public Health, Yale University, 1997 |
| B.A. | Natural Sciences Area Major, Women's Studies Minor, Johns Hopkins University, 1995 |

## PUBLICATIONS

### *Books*

2022   Feminist Judgments Health Law Rewritten (Eds. **Seema Mohapatra** and Lindsay F. Wiley) (Cambridge University Press)  (December 2022 publication date)

1
Mohapatra CV

2022    Reproductive Technologies and The Law (Third Edition) (casebook) (Eds. Judith Daar, Glenn Cohen, **Seema Mohapatra**, and Sonia Suter) (Carolina Academic Press)

### *Book Chapters*

2023    *Surrogacy and Constitutional Law,* Research Handbook on Surrogacy and the Law (Katarina Trimmings, Sharon Shakargy, and Claire Achmad, Eds.) Edward Elger Publishing  (in progress)

2023    Valarie Blake and **Seema Mohapatra,** , *Uterine Transplantation in the United States: A Legal Analysis*, International Ethical and Legal Perspectives on Uterine Transplantation, Edward Elger Publishing  (in progress)

2023    Lindsay F. Wiley and **Seema Mohapatra**, *Feminist Legal Theory, COVID-19, and Health Justice,* Gender Companion to Gender and COVID-19 (Aziza Ahmed and Linda McClain, Eds.), Routledge (in progress)

2023    **Seema Mohapatra** and Ruqaiijah Yearby, *Race and the COVID-19 Pandemic*, Race, Racism, and the Law Handbook (Aziza Ahmed and Guy-Uriel Charles, Eds.) (Edward Elger Publishing) (in progress)

2022    **Seema Mohapatra** and Lindsay F. Wiley, *Introduction*, Feminist Judgments Health Law Rewritten (Eds. Seema Mohapatra and Lindsay F. Wiley) (Cambridge University Press)  (December 2022 publication date)

2021    *Time to Abolish the Façade of "Anonymous" Gamete Donation in the Age of Direct-to-Consumer Genetic Testing*, Consumer Genetic Technologies: Ethical And Legal Considerations (Hank Greely, Nita Farahany, and Glenn Cohen, Eds.) (Cambridge University Press)

2020    *Rewritten Opinion, In re: T.J.S.,* Feminist Judgments: Rewritten Family Law Opinions (Rachel Rebouche, ed.) (Cambridge University Press)

2015    *States of Confusion: Regulation of Surrogacy in the United State*s, Commodification of The Human Body: A Cannibal Market (Eds. J.D. Rainhorn & S. El Boudamoussi) Editions de la Fondation Maison des Sciences de l'Homme

2014    *A Race to the Bottom? The Need for International Regulation of the Rapidly Growing Global Surrogacy Market?*, Outsourcing Life: Globalization And Gestational Surrogacy In India (Eds. S. Dasgupta & S. Dasgupta) (Lexington Books)

2004    *Privacy of Electronic Health Information*, E-Health And Telemedicine, a Law Journal Press Treatise, 2004 (with Karen Dunlop and Laura Cole)

3
Mohapatra CV

***Law Reviews Articles and Essays***

2023    *Assisted Reproductive Justice*, SMU Law Review (Invited Symposium) (in progress)

2021    Ruqaiijah Yearby and **Seema Mohapatra**, Systemic Racism, *The Government's Pandemic Response, and Racial Inequities in COVID-19*, Emory Law Journal

2021    *Passports of Privilege*, American University Law Review (Invited Symposium)

2021    Yvonne Dutton and **Seema Mohapatra**, *COVID-19 and Law Teaching: Guidance on Developing an Asynchronous Online Course for Law Students,* St. Louis University Law Journal (Special Volume on Teaching)

2020    Emily Benfer, **Seema Mohapatra**, Lindsay Wiley, and Ruqaiijah Yearby, *Health Justice Strategies to Combat the Pandemic: Eliminating Discrimination, Poverty, and Health Inequities During and After COVID-19*, 19 Yale Journal Health Policy, Law, And Ethics 125-171

2020    Elizabeth Pendo, Robert Gatter, and **Seema Mohapatra**, *Resolving Tensions Between Disability Rights Law and COVID-19 Mask Policies*, 80 Maryland Law Review Online 1

2020    Robert Gatter and **Seema Mohapatra**, *COVID-19 and the Conundrum of Mask Requirements*, Washington and Lee Law Review Online, Vol. 77

2019     *Law in the Time of Zika: Disability Rights and Reproductive Justice Collide*, 84 Brooklyn Law Review 325

2017    *Assisted Reproduction Inequality and Marriage Equality*, Chicago-Kent Law Review 87 (Invited Symposium)

2016    *Politically Correct Eugenics*, 12 Florida International University Law Review 1 (Invited Symposium)

2016    *Use of Facial Recognition Technology for Medical Purposes: Balancing Privacy with Innovation*, 43 Pepperdine Law Review 1017

2015    *Adopting an International Convention on Surrogacy -- A Lesson from Intercountry Adoption,* 13 Loyola University Chicago International Law Review 25 (Invited Symposium)

2015     *Time to Lift the Veil of Inequality in Health Care Coverage: Using Corporate Law to Defend the Affordable Care Act's Reproductive Health Care Mandate*, 50 Wake Forest Law Review 137

2014    *Using Egg Freezing for Non-Medical Reasons: Fertility Insurance or False Hope*?, 8 Harvard Law and Policy Review 381

2014    *Fertility Preservation for Medical Reasons and Reproductive Justice*, 30 Harvard Journal on Racial and Ethnic Justice 193

2013    *Examining Global Legal Responses to Prenatal Gender Identification and Sex Selection: A Bioethical Analysis*, 13 Nevada Law Journal 690

2013    *Cutting the Cord from Private Cord Blood Banking: Encouraging Compensation for Public Cord Blood Donations*, 84 University of Colorado Law Review 944

2012    *Stateless Babies and Adoption Scams: A Bioethical Analysis of Commercial Surrogacy*, 30 Berkeley Journal of International Law 412

2012    *Achieving Reproductive Justice in The International Surrogacy Market*, Annals of Health Law 21: 191

2011    *Unshackling Addiction: A Public Health Approach to Drug Use during Pregnancy,* 26 Wisconsin Journal of Law, Gender & Society 241

### *Interdisciplinary Articles*

2022    Abigail E. Lowe, Teck Chuan Voo, Kelly K. Dineen, Lisa M. Lee, David M. Brett-Major, Christy Feig, Alva O. Ferdinand, Seema Mohapatra, and Matthew K. Wynia, Uncertainty, Scarcity and Transparency: Public Health Ethics and Risk Communication in a Pandemic, The Lancet Regional Health-Americas (forthcoming, peer reviewed).

2022    Erika R. Cheng,   **Seema Mohapatra**, Shelley M. Hoffman, and Brownsyne Tucker Edmonds, Periviable Decision-Making in a New Era of Parentage: Ethical and Legal Considerations and Provider Perspectives on Shared Decision-Making in Diverse Family Structures, *Journal of Pediatrics*, August 06, 2022, https://doi.org/10.1016/j.jpeds.2022.08.002 (peer reviewed).

2022    Kelly K. Dineen, Abigail Lowe, Nancy E. Kass, Lisa M. Lee, Matthew K. Wynia, Teck Chuan Voo, Seema Mohapatra, Rachel Lookadoo, Athena K. Ramos, Jocelyn J. Herstein, Sara Donovan, James V. Lawler, John J. Lowe, Shelly Schwedhelm, and Nneka O. Sederstrom, Treating Workers as Essential Too: An Ethical Framework for Public Health Interventions to Prevent and Control COVID-19 Infections among Meat-processing Facility Workers and Their Communities in the United States https://link.springer.com/article/10.1007/s11673-022-10170-2#citeas, J. *Bioethical Inquiry*, doi: 10.1007/s11673-022-10170-2 (2022) (peer reviewed).

2022    Abigail Lowe, Kelly K. Dineen, and **Seema Mohapatra**, *Structural Discrimination in*

*Pandemic Policy: Essential Protections for Essential Workers, Journal of Law, Medicine &Ethics, 50*(1), 67-75. doi:10.1017/jme.2022.10 (peer reviewed).

2022    Kayte Spector-Bagdady, Holly Fernandez Lynch, Barbara E Bierer, Luke Gelinas, Sara Chandros Hull, David Magnus, Michelle Meyer, Richard Sharp, Jeremy Sugarman, Benjamin Wilfond, Ruqaiijah Yearby, and **Seema Mohapatra**, *Allocation of Opportunities to Participate in Clinical Trials During the COVID-19 Pandemic and Other Exceptional Circumstances*, Hastings Center Report, . 2022 Jan;52(1):51-58. doi: 10.1002/hast.1297 (peer reviewed).

2021    Abigail E. Lowe, Kelly K. Dineen, Jocelyn J. Herstein, Matthew K. Wynia, Josh Santarpia, Lisa M. Lee, Alva O. Ferdinand, Sara Donovan, Teck Chuan Voo, David Brett-Major, Rachel Lookadoo, and **Seema Mohapatra**, *Emerging Science, Personal Protective Equipment (PPE) Guidance, and Resource Scarcity: Inaction and Inequity for Workers in Essential Industries*, Health Security (peer reviewed).

2021    Michelle N. Meyer, Luke Gelinas, Barbara E. Bierer, Sara Chandros Hull, Steven Joffe, David Magnus, **Seema Mohapatra**, Richard R. Sharp, Kayte Spector-Bagdady, Jeremy Sugarman, Benjamin S. Wilfond, and Holly Fernandez Lynch, *An Ethics Framework for Consolidating and Prioritizing COVID-19 Clinical Trials,* Clinical Trials (peer reviewed).

2020    Ruqaiijah Yearby and **Seema Mohapatra**, Structural Discrimination In COVID-19 Workplace Protections, Health Affairs Blog (peer reviewed).

2020    Ruqaiijah Yearby and **Seema Mohapatra**, *Law, Structural Racism, and the COVID-19 Pandemic*, 7 Journal of Law and the Biosciences 1-20 (peer reviewed).

2020    **Seema Mohapatra** and Dov Fox, *The Moral Economy of Fertility Markets: Hope and Hype, History and Inclusion*, 48 Journal of Law, Medicine and Ethics,765-767 (peer reviewed).

2019    **Seema Mohapatra** and Lindsay F. Wiley, *Feminist Perspectives in Health Law*, Journal of Law, Medicine and Ethics, 47(4_suppl):103-115 (peer reviewed).

2015    Seema Mohapatra, *False Framings: The Co-Opting of Sex-Selection by The Anti-Abortion Movement*, Journal of Law, Medicine and Ethics (Invited Commentary) (peer reviewed).

2003    **Seema Mohapatra** and Liliana Kalogjera, *Who Owns These Slides? Overview of Legal Issues Facing Pathologists and Laboratories When Saving and Sending Out Tissues, Slides, and Tissue Blocks*, Pathology Case Reviews, 8(3):90-97 (peer reviewed).


**SAMPLE OF OTHER WRITTEN WORK**

2022    *Legal Success Of Texas' Near-Total Abortion Ban Prompts 'Copycat' Laws From Other Republican-Led States,* Ms. Magazine, December 15, 2021, https://msmagazine.com/2021/12/15/supreme-court-texas-mississippi-abortion-womens-health/

2021    **Seema Mohapatra**, Francois Baylis, and Natalie Kofler, *Why cities like Boston shouldn't follow New York's lead on vaccination passports*, Boston Globe (Op-Ed), August 24

2021    **Seema Mohapatra** and Maya Manian, *COVID Vaccine Prioritization and the Perils of Colorblind Constitutional Jurisprudence*, American Constitutional Society Expert Forum, https://www.acslaw.org/expertforum/covid-vaccine-prioritization-and-the-perils-of-colorblind-constitutional-jurisprudence/ (republished in Law360) (invited essay)

2021    *Widespread Vaccination Efforts Require Earning Women's Trust and Overcoming Vaccine Hesitancy*, Ms. Magazine, February 1, 2021, https://msmagazine.com/2021/02/01/covid-19-vaccine-safe-effective-fact-check-women- gender-gap/ (invited piece)

2020    Kelly K. Dineen, Abigail E. Lowe, Sara K. Donovan, Rachel E. Lookadoo, **Seema Mohapatra**, and Lisa Lee with the Global Center for Health Security's Ethics Advisory Committee, *Comments to the National Academies of Sciences Draft Framework for Equitable Allocation of COVID-19 Vaccine*, available at https://www.unmc.edu/healthsecurity/ethics/consultation-reports/NAS-comments-FINAL.pdf

2020    *The Trump Administration's Further Expansion of the Global Gag Rule and Its Impact on Global Health*, Ms. Magazine, https://msmagazine.com/2020/11/27/the-trump-administrations-further-expansion-of-the-global-gag-rule-and-its-impact-on-global-health/ (invited piece)

2020    *Reproductive Injustice and COVID-19*, Harvard Law and Policy Review Online Symposium, (republished in Stetson Law Review, Volume 50, Issue 3) (invited symposium)

2020    *Termination of Parental Rights of Mothers with Disabilities: The Role of the Americans with Disabilities Act*, JOTWELL, https://family.jotwell.com/termination-of-parental-rights-of-mothers-with-disabilities-the-role-of-the-americans-with-disabilities-act/

**REPRINTS**

2019    Criminal Law: Cases and Materials, 4th Edition, By Cynthia Lee and Angela Harris, (excerpt of *Unshackling Addiction: A Public Health Approach to Drug Use during Pregnancy*, 26 Wisconsin Journal of Law, Gender & Society 241, 2011), West Academic Publishing

2016    International Family Law, edited by Ann Laquer Estin (includes *Stateless Babies and Adoption Scams: A Bioethical Analysis of International Commercial Surrogacy*, Berkeley Journal of International Law, 30 (2), 412–51), 2012)

## LICENSURE

2000-Present   Illinois Bar/Law License, Attorney Number: 6273593

## PROFESSIONAL HONORS, GRANTS, AND AWARDS

2022    SMU Summer Research Grant
2021    SMU Summer Research Grant
2020    Greenwall Foundation Making a Difference in Bioethics Grant, Co-investigator with Brownsyne Tucker-Edmonds, MD and Erica Cheng, PhD, Periviable Decision-Making Dynamics: Who Should Decide and What Happens When Parental Parties Disagree? ($256,000 grant)
2020    Dean's Fellow (awarded yearly to two tenured or tenure track faculty members to reward outstanding scholarship), Indiana University Robert H. McKinney School of Law
2019    Dean's Fellow (awarded yearly to two tenured or tenure track faculty members to reward outstanding scholarship), Indiana University Robert H. McKinney School of Law
2019    Bioethics and the Law, IUPUI Curriculum Enhancement Grant, IUPUI, Principal Investigator
2018    Introduction to Health Care Law and Policy, McKinney Online Grant, Principal Investigator
2017    Faculty Scholarship Award, Barry University Dwayne O. Andreas School of Law, Recipient, 2012 thru 2017

## INVITED FACULTY WORKSHOPS

2023    Penn State Law University Park Faculty Workshop Series (February)
2023    Seattle University School of Law Faculty Workshop Series (April)
2021    University of Maine School of Law Faculty Workshop Series (April)
2021    University of Louisville School of Law Faculty Workshop Series (March)
2021    University of Illinois School of Law Faculty Workshop Series (March)
2020    American University, Washington College of Law Faculty Speaker Series (September)
2020     Loyola University Chicago School of Law Faculty Workshop Series, Chicago, Illinois, (January)
2019    Drexel University School of Law Faculty Workshop Series, Philadelphia, PA (September)
2014    St. Louis University School of Law Faculty Workshop, St. Louis, MO (December)

## INTERNATIONAL INVITED PRESENTATIONS

2018    Invited Speaker, *The Role of Torts and Food Safety Insurance in Promoting Food Safety in a Deregulatory Environment,* International Conference on China-U.S. Food Safety Governance and Public Health at Renmin University of China Law School, Beijing, China, May 28, http://cohd.cau.edu.cn/art/2018/5/31/art_8574_571945.html

2017    Invited Speaker, *Conceiving an International Convention on Surrogacy,* Critical Perspectives on Surrogacy: Surrogacy in Canada Workshop, University of Ottawa Faculty of Law, May 16 - 18

2014    Invited Panelist, *States of Confusion: Regulation of Surrogacy in the United States* Globalization and Commodification of the Human Body: A Cannibal Market? Global Symposium Sponsored by the Brocher Foundation, Geneva, Switzerland, February 6-7, 2014

2006    Presenter, *Paying to be Guinea Pigs: Exploiting the Dream of Motherhood: The Marketing of 'Fertility Insurance' in the United States and the Need for Greater Regulation of the Assisted Reproductive Technology Industry*, Texas Wesleyan School of Law Symposium, Gloucester Summer Legal Conference, Gloucester, England, July

**SELECT PRESENTATIONS**

**Invited Speaking Engagements**

2022    Intersectionality, Assisted Reproduction and Reproductive Justice, Centering Intersectionality in Human Rights Discourse, Washington and Lee Law Review Lara D. Gass Symposium, Lynchburg, Virginia, March 2022

2022    Post Roe: Assisted Reproduction and Reproductive Justice at the Baby Markets Roundtable, University of Pennsylvania Carey Law School, Philadelphia, Pennsylvania, March 2022

2022    Anti-Racist Teaching and Practice Session, Journal of Law, Medicine, and Ethics Health Law and Anti-Racism Symposium, University of Pennsylvania Carey Law School, Philadelphia, Pennsylvania, March 2022

2022    Abortion Rights at the Crossroads Virtual Conference, University of Pittsburgh Law School, February 25, 2022

2021    UIC Law Braun Symposium on Health Equity, *Enhancing Health Equity through Structural Transformation: The Role for Law*, October 15

2021    Deason Criminal Justice Reform Center, SMU Dedman School of Law, Doing the Work Series, *Critical Race Theory in Classrooms: An American Dilemma*, September 28

2021    American Journal of Bioethics, *Webinar on Vaccine Mandates*, September 14

2021    National Press Foundation, Educational Program: *"Vaccine Passports: Ethics and Inequality"*, July 20, https://nationalpress.org/topic/vaccine-passports-ethics-and-inequality/

2021    DePaul Law Mary and Michael Jaharis Health Law and Intellectual Property Symposium, *The Quest for Vaccine Equity*, April

2021    Harvard Law School Petrie-Flom Center for Health Law Policy, Biotechnology, and Bioethics, "Vaccine Passports: A Path to the New Normal?", April 28, 2021, https://www.thecrimson.com/article/2021/4/30/vaccine-passports-hls-panel/, https://blog.petrieflom.law.harvard.edu/2021/05/17/vaccine-passports-petrie-flom-center/, April 29

2021    ABA Webinar on Family Law During COVID-19: Challenges, Adaptations, and Future Impact, April 8

2021    *Passports of Privilege*, University of Utah S.J. Quinney College of Law, Law and Biomedicine Colloquium, March 16

2021    *'Essential' to Work: Achieving a Just Workers' Bill of Rights,* The Many Faces of Health, Northeastern University School of Law, March

2021    *COVID's Children*, Petrie-Flom Center for Health Law Policy, Biotechnology, and Bioethics at Harvard Law School and the Solomon Center for Health Law and Policy at Yale Law School, COVID-19 and the Law: Disruption, Impact, and Legacy Seminar Series, February 16

2021    Stanford Law School, 2020-21 Stanford Law and the Biosciences Workshop, February 16

2021    *Structural Racism and COVID-19*, Howard University School of Law's Annual C. Clyde Ferguson Symposium, January 28

2020    *COVID's Children*, Loyola University Chicago School of Law, Health Justice Symposium, Invited Speaker, October 30

2020    Harvard Law School – Petrie Flom Center, Health Law Policy, Bioethics, and Biotechnology Workshop, November

2020    Georgia State University Jean Beer Blumenfeld Center for Ethics, September 9, webinar: https://ethics.gsu.edu/2020/08/26/health-care-access-and-the-2020-elections/

2020    American University Washington College of Law, *Health Justice Engaging Critical Perspectives in Health Law and Policy* Workshops and Conference; Presenter, October 2, – Critical Perspectives in Health Law & Policy (webinar); Organizer and Moderator, September 11– Valuing Human Dignity; Participant, August 14– Just Distribution of Benefits and Burdens; Participant, July 10– Empowering Communities; Member, Steering Committee, August 20, 2019 – present

2020    *Ethical Issues around Contact Tracing/Testing in the Workplace*, National Institute of Environmental Health Sciences Worker Safety and Community Welfare, August

2020    *Ethical Considerations Regarding Meat Processing Plant Operations,* National Institute of Environmental Health Sciences Worker Safety and Community Welfare, July

2020    *Protecting Essential Workers during the COVID-19 Pandemic*, Public Health Law Watch, May

2020    Race and Ethnicity and COVID-19, Wake Forest Law Review Online Symposium, April, video here: https://events.law.wfu.edu/isolated-by-the-law/

2020    Public Health Law Watch, Abortion Exceptionalism in COVID-19, April

2020    *Reality or Science Fiction? Revisiting Gattaca in An Era of Consumer Genetics*, Medical Humanities and the Law: Intersections and Opportunities, Association of American Law Schools Annual Meeting, Washington, D.C., January 4

2020    *Feminist Perspectives in Health Law*, Law, Medicine & Health Care and Poverty Law Joint Program: Advancing Health Equity by Addressing Social Determinants of Health, Poverty, and Racial Disparities, Association of American Law Schools Annual Meeting, Washington, D.C., January 4

2019    *The Default Male and Implications for Health Care Delivery*, Coverage, and Innovation, Northeastern University School of Law, Boston, MA, April

2019    *Time to Abolish the Façade of "Anonymous" Gamete Donation in the Age of Direct- to-Consumer Genetic Testing*, Baby Markets Roundtable, American University Washington College of Law, Washington, D.C., June

2019    *Time to Abolish the Façade of "Anonymous" Gamete Donation in the Age of Direct- to-Consumer Genetic Testing*, Consuming Genetics: The Ethical and Legal Considerations of Consumer Genetic Technologies Conference, Petrie-Flom Center for Health Law Policy, Biotechnology, and Bioethics, Harvard Law School, Cambridge, MA, May

2019    Center for Reproductive Rights Convening on Compensated Gestational Surrogacy, Center for Reproductive Rights New York, NY, May 2

2019    *Anonymous No More: Sperm Donation and the False Promise of Privacy*, Saint Louis University Center for Health Law Studies Distinguished Speaker Series, St. Louis, MO, October 28

2019    *What is Health Care for All?,* Hall Center for Law and Health: Indiana Health Law Review Symposium, Getting Real About Health Care for All, October 18

2019    *Regulating Human Germline Editing*, Nova Southeastern Broad Center Annual Symposium, First Do No Harm: A Patient-Driven Approach to Navigating the Health Law, Intellectual Property, and Technology Maze, Fort Lauderdale, FL, October 11

2019    Crafting your Scholarship Goals Workshop (Aspiring Law Teachers Workshop), Southeastern Association of Law Schools Annual Meeting, Boca Raton, FL, July 29

2019    *ACA Under Threat: The Potential Impacts of Possible Repeal of the Affordable Care Act*, Public Health Law Network and Public Health Law Watch Webinar, June 26

2018    Speaker and Workshop Convener (with Lindsay F. Wiley), Feminist Perspectives on Health Law Workshop, Hall Center of Law and Health, Indiana University Robert H. McKinney School of Law, December

2018    Utah Law Review Symposium on The Opioid Crisis: Paths Forward to Mitigate Regulatory Failure, Salt Lake City, UT, November

2018    Invited Speaker, *Considering the Pregnant Woman in "Fetal Surgery,"* Baby Markets Roundtable, University of California Hastings College of Law, San Francisco, CA, May

2018    Invited Speaker, *Considering the Pregnant Woman in "Fetal Surgery,"* BioLawPalooza, Stanford Law School, Palo Alto, CA, March 23

2018    Invited Speaker, *Politically Correct Eugenics*, Marquette IP Colloquium Series, Marquette University Law School, Milwaukee, WI, March 5

2017    Invited Faculty Speaker, *CRISPR: Legal and Ethical Issues*, Creighton University School of Law, Omaha, NE, November

2017    Invited Speaker, *Law in the Time of Zika: Battling the Binary of Abortion and Disability*, The National Women's Conference: Taking 1977 into the 21st Century, University of Houston, Houston, TX, November

2017    Invited Speaker, *International Law and Reproductive Rights: The Changing Law of Surrogacy and Adoption*, 2017 International Law Weekend (ILW), New York, October

2017    Invited Speaker, *CRISPR: Legal and Ethical Issues*, American Association for Clinical Chemistry (AACC) Annual Meeting and Clinical Lab Expo, San Diego, CA, August

2017    *Zika, Reproductive Justice, and Disability Justice*, Between Complacency and Panic: Legal, Ethical and Policy Responses to Emerging Infectious Diseases, Health Care Law Symposium, Northeastern University School of Law, Boston, MA, April 13-14

2017    *Politically Correct Eugenics,* 10th Annual Feminist Legal Theory Conference, University of Baltimore School of Law, March

2017    Co-organizer, Moderator, and Presenter, Reproductive Rights Roundtable, 2017 Southeastern Association of Law Schools Annual Meeting, Boca Raton, FL, July

2016    Co-organizer, Moderator, and Presenter, Reproductive Rights Roundtable, Southeastern Association of Law Schools Annual Meeting, Amelia Island, FL, July

2016    *Politically Correct Eugenics*, FIU Law Review Symposium on Approaches and Challenges to Reproductive Justice, Miami, Florida, November 3-4

2016    *Prenatal Gender Identification and Research and Fertility Preservation for Reproductive Justice*, StartART Annual REI Nursing Congress: Scientific & Therapeutic Approaches to Assisted Reproductive Technology, Las Vegas, Nevada, August 6

2015    *Treating Cross Border Surrogacy like Inter-Country Adoption: The Need for an International Convention,* Cross-Border Healthcare: The Movement of Patients, Providers, and Diseases, Loyola University School of Law, Chicago, IL

**Presenter**

2019    *Centering Marginalized Groups in Interdisciplinary Bioethics Courses: Strategies and Resources for Teachers*, American Society for Bioethics and Humanities Annual Conference, Pittsburgh, PA

2019    *The Default Male and Implications for Health Care Delivery, Coverage, and Innovation*, Annual Health Law Professors Conference, Loyola Law School, Chicago, Illinois, June

2019    *Feminist Approaches to Health Law*, Annual International Meeting on Law and Society, Washington, DC, June

2019    *Time to Abolish the Façade of "Anonymous" Gamete Donation in the Age of Direct-to-Consumer Genetic Testing*, Howard University Law School, Family Law Scholars and Teachers Conference, Washington, D.C., May

2019    *Losing our Brain Gain: Foreign Trained Physicians and the Chilling Effect of Current Immigration Policies on Health Care Access in the United States*, National People of Color Legal Scholarship Conference, American University Washington College of Law, Washington, D.C., March

2019    Reproductive Justice Teaching and Scholarship Discussion Group, Southeastern Association of Law Schools Annual Meeting, Boca Raton, FL, August

2018    Family Law and Feminist Opinions Roundtable (Part of the Feminist Legal Theory CRN), Annual International Meeting on Law and Society, Toronto, Canada, June 9

2018    Moderator and Commentator, Intersectionality Panel (Part of the Feminist Legal Theory CRN), Annual International Meeting on Law and Society, Toronto, Canada, June 8

2016    Critical Perspectives on Reproductive Justice: From Activism to the Academy, Law and Society Annual Conference, New Orleans, Louisiana, June

2016    *Law in the Time of Zika*, Family Law Scholars and Teachers Conference, Loyola University New Orleans School of Law, New Orleans, LA, May 31

2016    *Law in the Time of Zika*, Conference of Asian Pacific American Law Faculty, University of California Davis, Davis, California, April 8

2015    *Use of Facial Recognition Technology for Medical Purposes: Balancing Privacy with Innovation,* Workshop on Health Law: The Health Care System of Tomorrow, 2015 Southeastern Association of Law Schools Annual Meeting, Boca Raton, FL, July

2015    *Use of Facial Recognition Technology for Medical Purposes: Balancing Privacy with Innovation*, Race and Science Panel, American Society of Law, Medicine, & Ethics, Health Law Professors Conference, St. Louis, MO, June

2015    *Treating Cross Border Surrogacy like Inter-Country Adoption: The Need for an International Convention,* Work in Progress Session, Family Law Scholars and Teachers Conference, Orlando, FL, June

2015    *Treating Cross Border Surrogacy like Inter-Country Adoption: The Need for an International Convention,* Feminist CRN, International Law and Society Conference, Seattle, Washington, May

**Discussant/ Moderator**

2021    Invited Mentor and Commentator, Health Law Scholars Workshop, St Louis University School of Law, September

2020    Invited Mentor and Commentator, Health Law Scholars Workshop, St Louis University School of Law, September

**TEACHING EXPERIENCE**

**SMU Dedman School of Law**
Torts (Fall 2021/2022); Critical Race Theory (Fall 2021/2022); Race, Health, Gender, and Justice (Spring 2022/2023); Bioethics and the Law (Spring 2022)

**FAMU College of Law**
Constitutional Law I (Fall 2020); Constitutional Law II (Spring 2020); Advanced Torts (Fall 2020); Public Health Law (Spring 2021)

**Indiana University Robert H. McKinney School of Law**
Torts (Fall 2018 and Fall 2019); Introduction to Health Care Law and Policy (Spring 2019 and Spring 2020); Bioethics (Fall 2018 and Fall 2019); Genetics and the Law (Spring 2019 and Spring 2020)

**Barry University Dwayne O. Andreas School of Law**

Offered multiple times over ten years: Torts I and II; Health Care Law ; Genetics and the Law; Public Health Law; Women's Health and the Law; Comparative Public Health Law; Patients' Rights and Health Care Disparities Bioethics Seminar; Interviewing Counseling and Problem Solving; Professional Responsibility; Business Organizations

**SELECT MEDIA APPEARANCES**
2022 TV appearance on UK's Channel 4 News on June 26, 2022
2022 [TV appearance](#) on Canada's CTV News discussing trigger laws on June 25, 2022
2022 [Retracing the Steps of My Abortion](#), Teen Vogue, June 24, 2022
2022 [Overturning Roe V. Wade: Here's How It Could Impact Fertility Treatments And IVF](#), Forbes, June 24, 2022
2022 TV Interview for LX News, LX/Peacock (live stream), June 24, 2022
2022 [Overturning Roe V. Wade: Here's How It'll Impact Reproductive Healthcare — Beyond Abortion](#), Forbes, June 24, 2022
2022 [Can I Still Legally Get an Abortion In Texas? What To Know About Access After Supreme Court Ruling](#), The Houston Chronicle, June 24, 2022
2022 [Texas 'Trigger Law' To Ban Abortion Will Soon Go Into Effect. Here Are The Details,](#) [Texas Public Radio](#) and KERA News, June 24, 2022
2022 [Supreme Court Decision Overturns Roe V. Wade, Effectively Banning Abortions In Texas](#), KERA News , June 24, 2022
2022 [Texas Fertility Clinics Assess Impact Of SCOTUS' Roe V. Wade Decision](#), WFAA, June 24, 2022
2022 TV Interview on Spectrum News on the Dobbs Decision, June 24, 2022
2022 [It May Soon Be Harder To Access Medications Used In Miscarriages And Ectopic Pregnancies Because They're Also Used To Treat Abortions](#), Business Insider, June 24, 2022

2022  [The Future of Abortion Access](), Skimm This Podcast, June 24, 2022
2022  [If Roe falls, some fear repercussions for reproductive care](), Associated Press/The Telegraph, Whitehurst, Lindsay, and Tanner, Lindsey, May 27, 2002
2022  [How abortion bans might effect IVF](), POLITICO Nightly, May 23, 2022
2022  [The Post-Roe Battleground for Abortion Pills Will Be Your Mailbox](), Wired, McKenna, Maryn, May 16, 2022
2022  [Some birth control options could be banned if they are seen as abortion methods rather than pregnancy prevention, experts say](), Business Insider, Cohen, Rebecca, May 12, 2022
2022  [Private reproduction decisions like IVF and contraception could be at risk if the Supreme Court overturns Roe v. Wade, experts say](), Business Insider, Cohen, Rebecca, May 12, 2022
2022  [Many states' abortion bans have life-saving "exceptions." Experts doubt they will work as intended](), Salon, Karlis, Nicole, May 12, 2022
2022  [Draft Decision on Abortion Could Threaten Birth Control, Too](), LX/Peacock (live stream), May 12, 2002
2022  [Overturning Roe could have major repercussions for IVF treatments, fertility experts warn](), CNN politics, Schneider, Jessica and Sneed, Tierney, May 11, 2022
2022  [A Roe v. Wade reversal could put fertility clinics at the center of the abortion fight](), ABC 12 News/CNN, Schneider, Jessica and Sneed, Tierney, May 11, 2022
2022  [Overturning Roe v. Wade could impact legality of morning after pill and IVF, Texas law professors say](), WFAA Channel 8 News/ABC, Joy, William, May 11, 2022
2022  [How abortion "trigger laws" could inadvertently impede fertility treatments](), Salon, Karlis, Nicole, May 10, 2022
2022  [The Ramifications of Roe v. Wade's Fall Won't Stop at Abortion Bans](), Wired, Browne, Grace, Science, May 9, 2022
2022  [Podcast,What Happens If The Supreme Court Overturns Roe v. Wade]()?, theSkimm', May 5, 2022
2022  [Cómo entender la 'ley gatillo' de Texas que prohibiría el aborto si se anula el caso Roe v. Wade](), KUT 90.5 Austin's NPR Station, Aguilar, Julián, May 5, 2022
2022  [Oklahoma's governor has signed a Texas-style abortion ban. Here's how it could affect Texas](), Texas Standard, Cordner, Sascha, The Texas Newsroom, May 4, 2022
2022  [Alito Draft would Allow for Sweeping State Action on Abortion](), Bloomberg Law, May 4, 2022,
2022  [TV Interview: Seema Mohapatra discusses significance of Roe v. Wade draft opinion](), Spectrum News Staff, Orlando, May 3, 2022
2022  [After Leaked Draft Supreme Court Opinion, Abortion-Rights Supporters Brace For Total Ban In Texas](), Houston Public News, Aguilar, Julián, The Texas Newsroom, May 3, 2022
2022  [Biden Pledges to Try to Enshrine Roe Into Law If Court Strikes Down Landmark Ruling](), Bloomberg, Leonard, Jenny, Dennis, Steven T., Jacobs, Jennifer, and Wingrove, Josh, May 3, 2022
2022  [Biden Urges Enshrining Roe into Law But Lacks Votes to Do It, Bloomberg Law,]() Leonard, Jenny, and Dennis, Steven T., May 3, 2022
2022  [State Restraints on Abortion Pill Access Tee Up New Legal Battle](), Bloomberg Law, March 31, 2022

15
Mohapatra CV

2022 Health Worker Vaccine Mandate Stays Intact as Pandemic Recedes, Bloomberg Law, March 21, 2022

2022 America's Flu-Shot Problem Is Also Its Next COVID-Shot Problem, The Atlantic, March 18, 2022

2022 Appeared on the Skimm This Podcast about Judge Ketanji Brown Jackson's nomination, November 5, 2021

2022 Guest on Texas Standard (Texas Public Radio), *Legal Success Of Texas' Near-Total Abortion Ban Prompts 'Copycat' Laws From Other Republican-Led States*, March 16, https://www.texasstandard.org/stories/legal-success-of-texas-near-abortion-ban-prompts- copycat-laws-from-other-republican-led-states/,

2022 Guest on Point (National Public Radio), *Evaluating the Effectiveness of Vaccine Passes*, February 1, 2022

2022 *COVID-Vaccine Mandates for Kids are Coming,* The Atlantic, November 5, 2021

2022 Guest on Texas Standard (Texas Public Radio), *Texas' Abortion Law Could Remain In Place Until Summer If Case Goes To Texas Supreme Court,* January 10, 2022, https://www.texasstandard.org/stories/texas-abortion-law-could-remain-in-place-until- summer-if-case-goes-to-texas-supreme-court/

2021 Guest on Texas Standard (Texas Public Radio), *US Supreme Court Allows Abortion Providers To Sue Over Texas' Six-Week Abortion Ban, But Keeps Law In Place,* December 10, 2021, https://www.texasstandard.org/stories/u-s-supreme-court-allows-abortion-providers-to- sue-over-texas-six-week-abortion-ban-but-keeps-law-in-place/

2021 Guest on Skimm This Podcast speaking about the *Dobbs* Supreme Court oral arguments, December 2, 2021, https://podcasts.apple.com/no/podcast/how-to-save-a-life-omicron- and-abortion-care/id1454021155?i=1000543782373

2021 Guest on Skimm This Podcast speaking about Texas' SB8 Bill, November 4, 2021, https://podcasts.apple.com/us/podcast/20-21-vision-election-results-greenwashing-and- lets/id1454021155?i=1000540811156

2021 *We're Already Barreling Toward The Next Pandemic,* The Atlantic, September 29, 2021, https://www.theatlantic.com/health/archive/2021/09/america-prepared-next- pandemic/620238/

2021 *31st Anniversary of the ADA*, Spectrum News 13 In Depth Interview, July 26

2021 *U.S. Supreme Court Upholds Affordable Care Act*, Spectrum News 13, TV Interview, https://www.mynews13.com/fl/orlando/news/2021/06/17/u-s--supreme-court-upholds- affordable-care-act

2021 Heather Murphy, *A Look at Covid-19 Vaccine 'Passports,' Passes and Apps Around the Globe*, The New York Times, April 26, https://www.nytimes.com/2021/04/26/travel/vaccine- passport-cards-apps.html

2021 Peter Coy, *The Legacy of the Lost Year Will Be Devastating Inequality*, BLOOMBERG NEWS, Mar. 10

2020 Ed Yong, *Where Year Two of the Pandemic Will Take Us*, The Atlantic, Dec 29, https://www.theatlantic.com/health/archive/2020/12/pandemic-year-two/617528/

2020 Eli Cahan, *Most Home Health Aides 'Can't Afford Not To Work'—Even When Lacking PPE*, Kaiser Health News, October, https://medicalxpress.com/news/2020-10-home- health-aides-workeven-lacking.html

16
Mohapatra CV

2020    *How To Use Indiana's New COVID-19 Nursing Home Dashboard*, WRTV (ABC) Indianapolis, August 14, https://www.wrtv.com/news/coronavirus/covid-19-healthcare/how-to-use-indianas-new-covid-19-nursing-home-dashboard

2020    *Why a Mask Mandate in Indiana is Legal*, WTHR 13 Indianapolis, July 27, https://www.wthr.com/article/news/health/why-a-mask-mandate-in-indiana-is-legal/531-90cbb763-c708-45f0-adf2-506d8337a340

2020    *Questions Surround Hospital, Clinic Closures Despite Influx of Federal Stimulus Money*, Call 6 Investigates – WRTV (ABC) Indianapolis, July 1, https://www.wrtv.com/news/call-6-investigators/questions-surround-hospital-clinic- closures-despite-influx-of-federal-stimulus-money

2020    *To Mask or Not to Mask? Depending On Where You Live, You May Not Have A Choice*, The Indianapolis Star, June 21,https://www.indystar.com/story/news/health/2020/06/21/indiana-coronavirus-why-some- counties-not-requiring-masks/3200412001/

2020    *Law Profs Say Mask Requirements Are Permissible*, The Exponent – Purdue University, June 12, https://www.purdueexponent.org/campus/article_fc8a89a6-ac00-11ea-9c94-8b1615ef1b83.html

2020    *Newest Twist in Racial Profiling: "Wearing A Mask While Black",* The Crime Report – Center on Media Crime and Justice at John Jay College, June 11, https://thecrimereport.org/2020/06/11/newest-twist-in-racial-profiling-wearing-a-mask- while-black/

2020    Brian Resnick, *What Public Health Experts Want Critics to Know About Why They Support The Protests*, Vox, June 6, https://www.vox.com/science-and-health/2020/6/6/21279592/protest-pandemic-covid-19-risk-second-wave-systemic-racism

2020    *The Protests Over George Floyd's Death Highlight The Real Crisis Facing Black Americans Across The Country*, BELatina Daily, June 3, https://belatina.com/structural-racism-police-brutality-pandemic-impact-on-black-americans/

2020    Brian Resnick, *Police Brutality is a Public Health Crisis*, Vox, June 1, 2020, https://www.vox.com/science-and-health/2020/6/1/21276828/pandemic-protests-police- public-health-black-lives-matter

2020    Emma Pettit, *Being A Woman in Academe Has Its Challenges, A Global Pandemic Not Helping*, The Chronicle of Higher Education, May 26, https://www.chronicle.com/article/being-a-woman-in-academe-has-its-challenges-a- global-pandemic-not-helping

2020    Olivia Covington, *Life and Death Decisions: Pandemic Increases Focus on Estate Planning, Health Care Advance Directives*, The Indiana Lawyer, May 26, https://www.theindianalawyer.com/articles/life-and-death-decisions-pandemic-increases- focus-on-estate-planning-health-care-advance-directives

2020    Kara Kenney, *Indiana Nursing Home Death Information To Be Made Public Despite State's Efforts*, WRTV (ABC) Indianapolis, May 15, https://www.wrtv.com/news/coronavirus/covid-19-healthcare/indiana-nursing-home- death-information-to-be-made-public-despite-states-efforts

2019    Olivia Covington, *Indiana Abortion Cases Highlight Rift As Fate Of Roe Uncertain*, The Indiana Lawyer, June, https://www.theindianalawyer.com/articles/50532-indiana- abortion-cases-highlight-rift

2019    Richard Wolf and Shari Rudavsky, *Supreme Court Upholds Part Of Indiana Anti-*

*Abortion Law Requiring Disposal Of Fetal Remains By Burial Or Cremation*, Indianapolis Star, June, https://www.indystar.com/story/news/2019/05/28/indiana-abortion-law-supreme-court-rules- fetal-remains-law/1256953001/

2019    Shari Rudavsky*, What Alabama Abortion Law Could Mean for Indiana*, The Indianapolis Star, May 22, 2019, https://www.indystar.com/story/news/health/2019/05/22/what- alabama-abortion-law- could-mean-indiana/3751806002/

2019    *Legal Scholars of Color Convene at AU*, Diverse: Issues in Higher Education, March 23, https://diverseeducation.com/article/141852/

2019   Television Interview on Possible Risks with Mail-In Genetic Tests, WISH TV, January 31,          https://www.wishtv.com/news/i-team-8/lawyer-possible-risks-with-mail-in-genetic-tests/1743658858

OTHER

In August 2022, a federal appeals court upheld the injunction on Arkansas's ban on gender-affirming healthcare for trans youth in the Brandt v. Rutledge case. I, along with other bioethics scholars and Cooley LLP, wrote a brief on behalf of bioethics and public health scholars to support this result. https://aclu.org/sites/default/files/field_document/brief_of_biomedical_ethics_and_public_health_scholars.pdf

Invited Video for Bioethics: Inclusive Voices project, Greenwall Foundation sponsored project Engaging Diversity: Pathways to Bioethics for Minority Students, https://readingroom.law.gsu.edu/bioethics/

2018    *Right to Hope: New Law Lets Patients Request Untried Drugs, But Many Skeptical,* The Indiana Lawyer, July, https://www.theindianalawyer.com/articles/47527-right-to-hope- new-law-lets-patients-request-untried-drugs-but-many-skeptical

2017    Expert Highlights CRISPR's Applications, Limitations, and Ethical Concerns, News Medical Life Sciences, August, https://www.news-medical.net/news/20170801/Expert-highlights-CRISPRe28099s-applications- limitations-and-ethical-concerns.aspx

2017    Interview on the Obamacare Repeal, Orlando Channel 13, July, https://www.youtube.com/watch?v=f5n3bfa5fZk

2017    *Checking In? Fresno Hospitals First Want Your 'Eyeprint' For Patient ID,* The Fresno Bee, May, https://www.fresnobee.com/news/local/article151619247.html

2016    Sophia Vergara Pre-Embryo Suit, Al Jazeera English NewsGrid: Video, December 11, https://www.youtube.com/watch?v=UGiHF3cdU9Q

2016    *Sofia Vergara Embryo Case Could Open Floodgates*, The Daily Beast, December 8, http://www.thedailybeast.com/articles/2016/12/08/crazy-vergara-embryo-case-could- open-floodgates.html

2015    *King v. Burwell Interview*, Florida, Orlando Channel 13, June 23, video available here: https://www.youtube.com/watch?v=ze_8b4nRQt8

2014    *Egg-Freezing Perk Will Not Make Workplace More Equal for Women, Times of India, Interview with Neelam Raa*j, October 26, https://timesofindia.indiatimes.com/home/sunday-times/all-that-matters/Egg-freezing- perk-will- not-make-workplace-more-equal-for-women/articleshow/44936645.cms

2014    *Is Egg Freezing a Game Changer for Women,* To the Point Interview NPR, KCRW, October 24, http://www.kcrw.com/people/seema-mohapatra

2014    *Egg Freezing: Putting Pregnant Workers On Ice*, The Stream, Al Jazeera America October 23, http://stream.aljazeera.com/story/201410230003-0024283

2014    *Egg Freezing Interview on Singapore TV show Between the Lines*, TV AsiaNews, Oct. 21

2014    *Freezing Eggs to Put off Pregnancy – Clever Business Move but Not Magic Bullet: Experts*, Oct. 20, http://sputniknews.com/analysis/20141020/194335233.html#ixzz3XG5WM13z

2014    *A Cool, Rational Analysis of Egg Freezing*, BioEdge, October 18, http://www.bioedge.org/bioethics/bioethics_article/11179

2014    Allison Vingiano, *Are Companies That Pay to Freeze Women's Eggs Improving the Workforce for Them?,* Buzzfeed,  October 17, https://www.buzzfeednews.com/article/alisonvingiano/are-companies-that-pay-to-freeze-womens-eggs-improving-the-w

2014    Jill Berman, *Why You Should Be Wary of Egg Freezing As a Ticket to 'Having It All'*, Huffington Post, October 17, 2014, http://huff.to/1rGtYmN

2014    Stephanie Mlot, *Apple, Facebook Employee Perks: Free Meals and... Egg Freezing?*, PC Magazine, October 15, 2014, http://www.pcmag.me/a/2470396

2014    Claire Cain Miller, *Freezing Eggs as Part of Employee Benefits: Some Women See Darker Message*, New York Times, October 14, 2014, http://nyti.ms/1EVEMI9

2014    *Egg Freezing Commentary on Al Jazeera America*, October, video available here: https://www.youtube.com/watch?v=S92N6xhOB7E

**LAW SCHOOL SERVICE**

SMU Dedman School of Law
  Faculty Appoint

Indiana University Robert H McKinney School of Law
  Admissions Committee Member 2018-2019, 2019-2020
  Colloquium Committee Chair 2019-2010
  Admissions Red Carpet Open House Speaker February 2019
  Indiana Health Law Review Co-Advisor 2018-2019, 2019-2020
  Health Law VAP Appointments Committee Member 2018-2019
  Hall Center for Law and Health Speaker and Topic Selection Committee Member 2018-2019

Barry University Dwayne O. Andreas School of Law
  Faculty Appointments Committee Member 2012- 2013 (Chair 2013-2014, 2014-2015, 2015-2016)
  Academic Programs Committee Member 2015-2016
  Faculty Development Committee Chair 2011-2012, Member 2012-2013
  Admissions Committee Member 2012-2013, 2013-2014
  Strategic Planning Committee Member 2012-2018
  Academic Programs Committee Member 2014-2015, 2015-2016
  Faculty Advisor to the Health Law Students Association Advisor 2013-2018
  Health Law Moot Court Competition Co-coach 2015, 2016
  Admitted Students Day Speaker (on Professionalism, Mock Class, Torts)
  Tortes of Torts Summer Speaker Series Speaker 2015, 2016
  Orientation Speaker 2012-2017
  Moot Court Judge for First Year Oral Arguments Judge 2010-2016
  Guest Judge Moot Court Competition Teams Judge 2010-2016
  Academic Standards Committee Member/Interim Chair 2012-2014
  Library Services Committee Member 2012-2015
  Faculty Advisor Asian American Law Students Association Advisor 2012-2017

**PROFESSIONAL SERVICE**

| | |
|---|---|
| 2021-2023 | Board Member of the American Society off Law, Medicine, and Ethics |
| 2020-2022 | Member, University of Nebraska Global Center for Health Security Ethics Advisory Committee (working on issues around COVID-19) |
| 2021 | JAMA Peer Reviewer |
| 2017- 2021 | Southeastern Association of Law Schools Health Law Resource Team Member |
| 2017-2021 | Southeastern Association of Law Schools Family Law Resource Team Member |
| 2018-2021 | Southeastern Association of Law Schools Works-In-Progress Committee, Vice Chair 2019-Present |

| 2020-2021 | AALS Section on Law, Medicine, and Health Care, Executive Committee Member |
| 2020-2021 | AALS Section on Africa, Chair-Elect 2021, Secretary 2020 |
| 2019-2021 | Southeastern Association of Law Schools New Scholars Committee |

| | |
|---|---|
| 2022 | New England Journal of Medicine Peer Reviewer |
| 2021 | American Journal of Preventive Medicine Peer Reviewer |
| 2019 | Social Sciences and Humanities Research Council of Canada Peer Reviewer |
| 2019-Present | Johns Hopkins University Press Peer Reviewer |
| 2019-Present | Cambridge University Press Peer Reviewer |
| 2019-Present | Oxford University Press Peer Reviewer |
| 2019 - Present | Yale Journal of Health Policy Law and Ethics Peer Reviewer |
| 2019 | Northwestern University Law Review Peer Reviewer |
| 2019, 2016, 2014 | Feminist Legal Theory Collaborative Research Network Law and Society Planning Committee Member |
| 2018-2020 | American Society for Bioethics and Humanities, Diversity Disparity and Inclusion Category Leader |
| 2018 | Feminist Legal Theory Collaborative Research Network Law and Society Planning Committee Co-chair |
| 2018-Present | American Journal of Public Health Peer Reviewer |
| 2018- Present | Bioethics Peer Reviewer |
| 2018-Present | Journal of Law and Biosciences Peer Reviewer |
| 2018 | Social Politics Peer Reviewer |
| 2015, 2017 | Family Law Scholars and Teachers Conference Planning Committee |
| 2016 | Family Law Scholars and Teachers Conference Co-Chair |
| 2012-2014 | SE/SW People of Color Legal Scholarship Conference, Executive Planning Committee Member |
| 2014-2015 | Journal of Legal Medicine Book Review Deputy Editor |
| 2015 | Journal of Legal Medicine Peer Reviewer |
| 2016-Present | American Journal of Law and Medicine Peer Reviewer |
| 2015-2017 | Journal of Forensic and Legal Medicine Peer Reviewer |

## PROFESSIONAL ORGANIZATION MEMBERSHIPS

| | |
|---|---|
| 2005 - Present | American Society of Law, Medicine, and Ethics |
| 2016 -2020 | American Society of Bioethics and Humanities |
| 2008-Present | Law and Society Association |
| 2010-Present | American Bar Association |