**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **FUND TEXAS CHOICE, et al,**<br><br>    **Plaintiffs,**<br>**v.**<br><br>**KEN PAXTON, et al.,**<br><br>    **Defendants.** | **Civil Case No. 1:22-cv-859-RP** |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ ii

I.  RELEVANT FACTS................................................................................. 2

    A.    Plaintiffs .......................................................................... 2

    B.    Defendants ........................................................................ 3

II.  LEGAL STANDARDS............................................................................ 6

    A.    Rule 12(b)(1) Standard ................................................... 6

    B.    Rule 12(b)(6) Standard ................................................... 6

III.  ARGUMENT AND AUTHORITIES........................................................ 7

    A.    The Court Has Jurisdiction over All of Plaintiffs' Claims. ................ 7

        1.    *Ex Parte Young* applies to Plaintiffs' claims............................. 8

        2.    Plaintiffs have standing. .......................................... 10

        3.    Plaintiffs assert their own injuries and allege facts to establish associational standing.................................. 14

        4.    Plaintiffs' Claims Are Undeniably Ripe for Adjudication. ........................ 15

        5.    The Court should not abstain under *Pullman*............................. 18

    B.    Plaintiffs Plausibly Alleged All of Their Claims. ................ 20

        1.    Plaintiffs have a First Amendment right to fund legal conduct. ............... 20

        2.    A restraint on funding or assistance for out-of-state abortions cannot pass rational basis scrutiny, much less strict scrutiny. ............... 21

        3.    Plaintiffs alleged viable Right to Travel claims. ........................ 22

        4.    Plaintiffs alleged viable claims that certain parts of the Texas Abortion Laws violate the U.S. Constitution and are preempted by federal law. ........................ 24

IV.  CONCLUSION........................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*,
    851 F.3d 507 (5th Cir. 2017) ...................................................................................8

*Altria Group, Inc. v. Good*,
    555 U.S. 70 (2008) .................................................................................................24

*Animal Legal Def. Fund v. Vaught*,
    8 F.4th 714 (8th Cir. 2021) ...................................................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................7

*Babbitt v. United Farm Workers Nat. Union*,
    442 U.S. 289 (1979) ...............................................................................................17

*Baggett v. Bullitt*,
    377 U.S. 360 (1964) ...............................................................................................19

*Bigelow v. Virginia*,
    421 U.S. 809 (1975) .........................................................................................23, 24

*Bonaparte v. Appeal Tax Court of Baltimore*,
    104 U.S. 592 (1881) ...............................................................................................23

*Califano v. Gautier Torres*,
    435 U.S. 1 (1978) ...................................................................................................22

*Citizens United v. Fed. Election Comm'n*,
    558 U.S. 310 (2010) .........................................................................................14, 20

*City of Austin v. Paxton*,
    943 F.3d 993 (5th Cir. 2019) ...................................................................................8

*City of Fort Worth v. Craik*,
    411 S.W.2d 541 (Tex. 1967) ..................................................................................19

*Cooper v. McBeath*,
    11 F.3d 547 (5th Cir. 1994) ...................................................................................18

*Corfield v. Coryell*,
    6 F. Cas. 546 (C.C.E.D. Pa. 1823) ........................................................................22

*Cuvillier v. Taylor*,
    503 F.3d 397 (5th Cir. 2007) ...................................................................................7

*Dobbs v. Jackson Women's Health Organization*,
    213 L. Ed. 2d 545 (2022) .................................................................................2, 4, 5

*Ex Parte Young*,
    209 U.S. 123 (1908) ....................................................................................... *passim*

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
    313 F.3d 305 (5th Cir. 2002) ...............................................................................27

*Harris Cty. Com'rs Ct. v. Moore*,
    420 U.S. 77 (1975)...................................................................................18, 19, 20
*Home Builders Ass'n of Miss., Inc. v. City of Madison*,
    143 F.3d 1006 (5th Cir. 1998) ...........................................................................6
*Huntington v. Attrill*,
    146 U.S. 657 (1892)..........................................................................................23
*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) .............................................................................7
*In re Paxton*,
    53 F.4th 303 (5th Cir. 2022) ..................................................................... *passim*
*Int'l Soc. for Krishna Consciousness of Atlanta v. Eaves*,
    601 F.2d 809 (5th Cir. 1979) ...........................................................................17
*KVUE, Inc. v. Moore*,
    709 F.2d 922 (5th Cir. 1983) ...........................................................................14
*La Union del Pueblo Entero v. Abbott*,
    No. 5:21-CV-0844-XR, 2022 WL 3052489 (W.D. Tex. Aug. 2, 2022)..................................9
*Lane v. Halliburton*,
    529 F.3d 548 (5th Cir. 2008) .............................................................................6
*Legal Servs. Corp. v. Velazquez*,
    531 U.S. 533 (2001)..........................................................................................26
*Lipscomb v. Columbus Mun. Separate Sch. Dist.*,
    145 F.3d 238 (5th Cir. 1998) ...........................................................................19
*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007)..........................................................................................15
*Midship Pipeline Co., L.L.C. v. FERC*,
    45 F.4th 867 (5th Cir. 2022) ...........................................................................15
*Mission Toxicology, LLC v. Unitedhealthcare Ins. Co.*,
    499 F. Supp. 3d 350 (W.D. Tex. 2020)..........................................................24
*Monk v. Huston*,
    340 F.3d 279 (5th Cir. 2003) ...........................................................................15
*Nat'l Inst. of Family & Life Advocates v. Becerra*,
    138 S. Ct. 2361 (2018).....................................................................................21
*Nat'l Press Photographers Ass'n v. McCraw*,
    504 F.Supp.3d 568 (W.D. Tex. 2020)........................................................ *passim*
*NetChoice, L.L.C. v. Paxton*,
    49 F.4th 439, 480 (5th Cir. 2022) ...................................................................21
*New York Life Ins. Co. v. Head*,
    234 U.S. 149 (1914)..........................................................................................23
*Nielsen v. State of Oregon*,
    212 U.S. 315 (1909)..........................................................................................23

*Nissan Motor Corp. in U.S.A. v. Harding,*
  739 F.2d 1005 (5th Cir. 1984) ........................................................................19
*OCA-Greater Houston v. Tex.,*
  867 F.3d 604 (5th Cir. 2017) ..........................................................................13
*Okpalobi v. Foster,*
  244 F.3d 405 (5th Cir. 2001) ..........................................................................14
*Pike v. Bruce Church, Inc.,*
  397 U.S. 137 (1970)........................................................................................24
*PLIVA, Inc. v. Mensing,*
  564 U.S. 604 (2011)........................................................................................25
*Police Department of Chicago v. Mosley,*
  408 U.S. 92 (1972)..........................................................................................22
*Railroad Commission of Texas v. Pullman Co.,*
  312 U.S. 496 (1941)..................................................................................18, 19
*Reed v. Town of Gilbert,*
  576 U.S. 155 (2015)........................................................................................21
*Reno v. Catholic Social Servs., Inc.,*
  509 U.S. 43 (1993)..........................................................................................15
*Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.,*
  487 U.S. 781 (1988)..................................................................................20, 21
*Roark & Hardee LP v. City of Austin,*
  522 F.3d 533 (5th Cir. 2008) ..........................................................................17
*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.,*
  547 U.S. 47 (2006)..........................................................................................12
*Russell v. Lundergan-Grimes,*
  784 F.3d 1037 (6th Cir. 2015) ..........................................................................8
*Saenz v. Roe,*
  526 U.S. 489 (1999)........................................................................................23
*Schaumburg v. Citizens for a Better Environment,*
  444 U.S. 620 (1980)........................................................................................20
*Sec'y of State of Md. v. Joseph H. Munson Co.,*
  467 U.S. 947 (1984)..............................................................................11, 20, 21
*Speech First, Inc. v. Fenves,*
  979 F.3d 319 (5th Cir. 2020) ....................................................................10, 11
*State Farm Mut. Auto. Ins. Co. v. Campbell,*
  538 U.S. 408 (2003)........................................................................................23
*State v. Morales,*
  869 S.W.2d 941 (Tex. 1994)...........................................................................19
*Tex. Entm't Ass'n, Inc. v. Hegar,*
  10 F.4th 495 (5th Cir. 2021) ...........................................................................21

*Texans for Free Enter. v. Texas Ethics Comm'n*,
  732 F.3d 535 (5th Cir. 2013) ..................................................................................20
*Texas v. United States*,
  497 F.3d 491 (5th Cir.2007) ...................................................................................15
*Turner v. Pleasant*,
  663 F.3d 770 (5th Cir. 2011) .....................................................................................6
*United Food & Comm. Workers Union Local 751 v. Brown Group, Inc.*,
  517 U.S. 544 (1996)................................................................................................14
*Virginia v. Am. Booksellers Ass'n, Inc.*,
  484 U.S. 383 (1988)...............................................................................12, 17, 18
*Ward v. State*,
  79 U.S. 418 (1870)..................................................................................................23
*Whole Woman's Health v. Jackson*,
  211 L. Ed. 2d 316, 142 S. Ct. 522 (2021) ................................................................9
*Zwickler v. Koota*,
  389 U.S. 241 (1967)................................................................................................19

**Statutes and Constitutional Provisions**

28 U.S.C. § 1367(a) .......................................................................................................10
28 U.S.C. § 2202 ............................................................................................................10
42 U.S.C. § 1856 ............................................................................................................25
42 U.S.C. § 1983 ............................................................................................................26
42 U.S.C. § 1988 ............................................................................................................26
TEX. CIV. PRAC. & REM. CODE ANN. § 30.022 ....................................................26, 27
TEX. CODE CRIM PROC. art. 2.01 ...................................................................................3
TEX. CODE CRIM PROC. art. 2.02 ...................................................................................3
TEX. GOV'T. CODE § 402.042 ........................................................................................16
TEX. HEALTH & SAFETY CODE ANN., § 170A.005...................................................8, 9
TEX. HEALTH & SAFETY CODE § 170A.001 ...................................................................1
TEX. REV. CIV. STATS. ANN. art. 4512.1 .......................................................................2
TEX. REV. CIV. STATS. ANN. art. 4512.2 .......................................................................2
TEX. REV. CIV. STATS. ANN. art. 4512.3 .......................................................................2
TEX. REV. CIV. STATS. ANN. art. 4512.4 .......................................................................2
TEX. REV. CIV. STATS. ANN. art. 4512.6 .......................................................................2
U.S.C.A. § Articles of Confederation, Art. IV, ¶ 1. (1777)..........................................22
U.S. Const., Art. VI, cl. 2...............................................................................................24

**Rules & Regulations**

70 Fed. Reg. 4588, 4664 (Jan. 28, 2005) ......................................................................25
Fed. R. Civ. P. 12 .................................................................................................*passim*
Fed. R. Civ. P. 15 ...........................................................................................................27

**Other Authorities**

Blackstone, COMMENTARIES ON THE LAWS OF ENGLAND, Book 1: The Rights of
Persons, Chapter 1 – Of the Absolute Rights of Individuals, II ..............................................22

Billing and coding Medicare Fee-for-Service claims, TELEHEALTH.HHS.GOV,
https://telehealth.hhs.gov/providers/billing-and-reimbursement/billing-and-
coding-medicare-fee-for-service-claims/#coding-claims-during-covid-19 (last
updated May 17, 2022) ..............................................................................................................25

Magna Carta, Leonard B. Boudin, The Constitutional Right to Travel, 56 COLUM.
L. REV. 47 (1956)......................................................................................................................22

General Paxton has moved to dismiss Plaintiffs' First Amended Complaint in its entirety under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (ECF 110) ("**MTD**"), arguing primarily that he has not sufficiently threatened to enforce the challenged Texas laws against the Plaintiffs. Whether articulated as a sovereign immunity challenge, a standing or ripeness argument, or as an assertion that this Court should abstain, the argument fails for at least four reasons.

*First*, General Paxton is the sole, statutorily designated civil enforcer of the Texas Trigger Ban,[1] making him a proper defendant under *Ex Parte Young*, 209 U.S. 123 (1908), and defeating his assertion of soveriegn immunity.

*Second*, while General Paxton may now wish to say he has not personally threatened enforcement, the Fifth Circuit recently instructed in this case that "Paxton's personal 'thoughts and statements' have no bearing on his office's legal authority to enforce Texas's abortion laws or any other law." *In re Paxton*, 53 F.4th 303, 309 (5th Cir. 2022). Instead, the relevant inquiries for both his asserted immunity defense and his standing arguments "turn[] principally on whether Paxton is statutorily tasked with enforcing the challenged law." *Id.* at 308. There is no question that General Paxton is tasked by the Texas Trigger Ban to enforce it.

*Third*, to the extent General Paxton's actions and words are relevant to any inquiry before the Court, they confirm that the Plaintiffs' alleged injuries are concrete and traceable to him and his office. As Judge Higginbotham explained, "[t]he point is that, on the record at hand, a trier of fact . . . could find that there is sufficient evidence of an unsettling and chilling want of clarity in statements by officials with enforcement authority made against a chorus of state officials without enforcement power to allow this case to proceed." *Id.* at 313 (Higginbotham, J., concurring).

*Fourth*, because Plaintiffs are suffering ongoing deprivations of fundamental constitutional

---

[1] TEX. HEALTH & SAFETY CODE § 170A.001, *et seq.*

rights and there is no meaningful state-court remedy available to them, abstention is not appropriate.

For all of these reasons and more below, the MTD should be denied in its entirety.

## I. RELEVANT FACTS[2]

### A. Plaintiffs

Plaintiffs are eight Texas-based non-profit abortion funds and practical support networks (the "**Fund and Support Plaintiffs**") and Dr. Ghazaleh Moayedi, an OB-GYN and abortion provider who resides in Texas. FAC at ¶¶ 22-41. In the wake of *Dobbs v. Jackson Women's Health Organization*,[3] and because of the credible threat of enforcement of the Texas Trigger Ban and the Pre-*Roe* Statutes[4] against them, all of the Plaintiffs ceased certain constitutionally protected activities that they wish to resume:

    (1)    paying for abortions that occur outside the state of Texas where those abortions are legal;

    (2)    paying for or otherwise helping Texans access travel support to allow them to obtain abortion care outside the state of Texas where it is legal;

    (3)    paying for or otherwise helping Texans access practical support—like childcare—to allow them to obtain abortion care where it is legal;

---

[2] Plaintiffs' factual allegations are contained in the FAC. The factual record currently includes: (1) Plaintiffs' Appendix and Supplemental Appendix in Support of their Motion for Preliminary Injunction, (ECF 4 and 57); (2) the Exhibits offered by Plaintiffs and Defendant and admitted by the Court in connection with the PI Hearing (ECF 82); (3) the sworn testimony provided during the PI Hearing; and (4) Plaintiffs' Appendix in Support of this Response. Because the Court may consider evidence in its analysis of the 12(b)(1) issues, Plaintiffs are including it for the Court's convenience. The Exhibits offered and admitted at the PI Hearing are cited by their numerical designations as "**Pls.' Ex.**". Plaintiffs' Appendix to this Response is cited as "**App. Ex.**". The declaration authenticating these materials is App. Ex. A and each exhibit is sequentially numbered App. Ex. A-1 through A-21. The PI Hearing transcript is included as App. Ex. A-20. None of the evidence referenced is offered in response to General Paxton's Rule 12(b)(6) arguments.

[3] 213 L. Ed. 2d 545 (2022).

[4] Tex. Rev. Civ. Stats. Ann. art. 4512.1, 4512.2, 4512.3, 4512.4, 4512.6.

(4)     traveling with Texans who leave the state to obtain legal abortion care; and

(5)     in the case of Dr. Moayedi, traveling to states where abortion is legal and in which she is licensed to perform abortion care for Texans also traveling to those states, and providing telemedicine abortion care from her home state of Texas to patients in states where such care is legal.

All Plaintiffs also seek to freely associate and speak about these activities. *See* FAC at ¶¶ 11-12, 14, 23-28; Pls.' Exs. 20, 25-39.[5]

## B.     Defendants

Defendants are Texas Attorney General, Ken Paxton, in his official capacity; and four District Attorneys of the State of Texas and the Burleson County Attorney (collectively the "**Prosecutor Defendants**"). Each of the Prosecutor Defendants has the authority within his or her respective districts to file and pursue criminal cases, including any cases charging a violation of the Trigger Ban and/or Pre-*Roe* Statutes.[6] Each also has stipulated that: (1) because of that authority, he or she is a proper defendant; (2) there is a significant controversy regarding the constitutionality, scope, and potential invalidity of the Trigger Ban and the Pre-*Roe* Statutes; and (3) the Plaintiffs alleged injuries would be redressed by an order of this Court defining the constitutionality and scope of the challenged laws.[7] Pls.' Exs. 46-47 at 1-4.

General Paxton is authorized by the Trigger Ban to pursue perceived violators of that law for a minimum statutory penalty of $100,000 per violation, and he has publicly promised to do so. FAC at ¶45; Pls.' Ex. 14 at 2; Ex. 3 at 2. For example:

- In an interview with Leland Vittert on June 24, 2022, General Paxton stated that he can, and that his office will, enforce civil penalties under the Trigger Ban. FAC at ¶ 93; Pls.' Ex. 63. He further indicated that his office was investigating the possibility of civil

---

[5] *See also* App. Exs. A-6, A-7, A-20 at 9:24-10:11, 15:16-19, 18:9-22, 59:8-14, 60:17-61:1, 185:3-186:5, 211:9-13, 211:17-212:6.

[6] *See* Tex. Code Crim. Proc. arts. 2.01, 2.02.

[7] None of the Prosecutor Defendants moved to dismiss any of Plaintiffs' claims.

enforcement of the Trigger Ban against business helping their employees obtain legal abortions in other states. *Id.*[8]

- Immediately after the *Dobbs* opinion issued on June 24, General Paxton put out an alert that stated "My office is specifically authorized to pursue and recover those civil penalties [authorized by the Trigger Ban], and I will strictly enforce this law." Pls.' Ex. 3; *see also* Pls. Ex. 34 (similar).

- On June 28, 2022, General Paxton tweeted that the "Harris County judge froze pre-Roe laws criminalizing abortion in TX. But w/SCOTUS's Dobbs decision, these laws are 100% in effect & constitutional." FAC at ¶96; Pls.' Exs. 4, 42.

- On June 29, 2022, in an interview on the Great America Show with Lou Dobbs, General Paxton lamented that some DAs in Texas would not prosecute violations of the Trigger Ban: "However, I do have the ability to civilly prosecute and the minimum fine for this is $100,000 so I can tell you, we're going to use the full force of that law to make people pay if they're going to do abortions." FAC at ¶97; Pls.' Ex. 64.

- On June 30, 2022, General Paxton filed an emergency motion with the Texas Supreme Court asserting that the Pre-*Roe* Statutes were fully enforceable and no pre-enforcement challenge in Texas state court is available. FAC at ¶98; Pls.' Exs. 32, 44. Following the Texas Supreme Court's decision granting in part his emergency motion, General Paxton tweeted "Our state's pre-Roe statutes banning abortion in Texas are 100% good law." FAC at ¶99; Pls.' Ex. 41.

- On July 1, 2022, General Paxton tweeted, "Texas's pre-Roe statutes criminalizing abortion is [sic] 100% good law, and I'll ensure they're enforceable." FAC at ¶100; Pls.' Ex. 42.

- On July 7, 2022, the Texas Freedom Caucus copied General Paxton on a letter to the law firm of Sidley Austin. Among other things, the letter informed Sidley Austin "of the consequences" the firm would face for "reimburs[ing] the travel costs of employees who leave Texas" to obtain abortion care, including felony criminal liability under the Pre-*Roe* Statutes for "furnishing the means for procuring an abortion knowing the purpose intended[.]" FAC at ¶101; Pls.' Ex. 1 at 2. The letter was widely publicized when the Texas Freedom Caucus posted it to various social media platforms and each of the Plaintiffs in this case saw it. App. Ex. A-19.[9]

---

[8] When asked directly whether Texas would go after companies who offered to pay for their employees to go out of state to have an abortion, Paxton responded: "We're going to look whether the language covers at least the civil side, and that's obviously at least what we can deal with. These penalties can be, even for corporations, over $100,000 per violation, so we'll see…we're looking at that literally as we speak." FAC at ¶ 95; Pls.' Ex. 63.

[9] Representative Briscoe Cain, a member of the Texas Freedom Caucus, also specifically connected the funding of abortions and the funding of travel to obtain abortions out of state to

- On June 24, 2022, when asked what will happen when a District Attorney declines to prosecute, General Paxton explained: "I have the opportunity to impose some of the civil penalties, so the minimum penalty is 100,000, and it can go up to an unlimited amount. **So we will be pursuing the civil side of this**." FAC at ¶94; Pls.' Ex. 63 (transcribed from audio by drafter, emphasis added).

- On July 27, 2022, immediately after the judgment and mandate in *Dobbs* issued, General Paxton put out another advisory from his office, reiterating his prior statements in his June 24 alert. FAC at ¶102; Pls.' Ex. 27.

- On October 24, 2022, Texas Representative Nicole Collier, who serves as the Chair of the Texas House Committee on Criminal Jurisprudence, requested an opinion from General Paxton's office regarding the potential application of the Texas Trigger Ban and Pre-*Roe* Statues to abortion care that occurs out of state. App. Ex. A-21 at 2. Rep. Collier's letter contained a series of specific questions, including: "Can a resident of Texas pay for the travel of another resident of Texas for the purposed of obtaining an abortion in a state where abortion is legally protected?" and "Can a resident of Texas accompany another resident of Texas who is traveling out of state for the sole purpose of obtaining an abortion?" *Id.* Rep. Collier also specifically asked whether General Paxton agreed with the contents of the Texas Freedom Caucus's July 7, 2022 letter to Sidley Austin LLP. *Id.* at 2-3. General Paxton apparently refused to answer Rep. Collier's questions "due to pending litigation." *Id.* at 2.

- In his MTD, filed on December 9, 2022, General Paxton stated that the challenged Texas laws apply to activities that help pregnant Texans procure out-of-state abortions: "Rather, criminalization is a means to an end—the protection of human life, including the life of the unborn. That interest continues whether the Texas mother seeks an abortion in Denver or Dallas, in Las Cruces or Lamesa. **When that procurement takes the form of a bus ticket for the pregnant Texan to an abortion clinic, or the paying from Texas of the cost of a pregnant Texan's hotel room adjacent to that clinic, it does not matter if the travel and hotel are in Albuquerque or Austin—the procurement in Texas of the means of an abortion has intruded upon the State's interest in the protection of human life**." MTD at 24 (emphasis added).[10]

---

criminal liability in a series of Tweets during this time. Pls.' Exs. 6, 8-9; App. Ex. A-2. Several of the Tweets were directed specifically at abortion funds, including the Plaintiffs. *Id.*

[10] General Paxton also said this in his first Motion to Dismiss (ECF 33), filed September 19, 2022, and he made the same types of statements to the Fifth Circuit. Judge Higginbotham's concurrence in *In re Paxton*, specifically referenced them:

> It signifies that these inferences are drawn from the present record: Indeed, Attorney General Paxton argues to this Court that the potential liability Plaintiffs fear is "nonexistent," while at the same time he argues that when "procurement takes the form of a bus ticket

- When asked by this Court whether General Paxton's civil enforcement authority under the Trigger Ban applies to the conduct Plaintiffs seek to resume, counsel for the OAG refused to provide a direct answer. Instead, he said "As a general matter, our position is that this is not something that is amendable to a broad, . . . up-or-down decision on the front end that like most criminal statutes, the facts are very important and that the appropriate time to raise a First Amendment defense to something like this or any kind of defense to this kind of statute would be in the context of an individual criminal proceeding." App. Ex. A-20 at 248:3-10; *see also id.* at 252:15-24 ("[W]hatever is happening in state law perhaps that is chilling their conduct.").[11]

## II. <u>LEGAL STANDARDS</u>

### A. Rule 12(b)(1) Standard

A federal court properly dismisses a case "for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). In ruling on a Rule 12(b)(1) motion, the court may consider: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### B. Rule 12(b)(6) Standard

"[A] motion to dismiss under 12(b)(6) is viewed with disfavor and is rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (cleaned up). In deciding a Rule 12(b)(6)

---

for the pregnant Texan to an abortion clinic, or the paying from Texas of the cost of a pregnant Texan's hotel room adjacent to that clinic, it does not matter if the travel and hotel are in Albuquerque or Austin" for the State to have an interested in protecting the unborn.

*In re Paxton*, 53 F.4th 303, 313 (5th Cir. 2022) (Higginbotham, J., concurring).

[11] The Fifth Circuit has made clear that General Paxton's argument that he has not sufficiently threatened enforcement to trigger *Ex Parte Young* misconstrues the proper analysis since he is the statutorily-designated state enforcer. Nonetheless, General Paxton continues to assert this argument in his MTD and the Court can consider non-disputed facts and resolve any disputed facts when evaluating General Paxton's 12(b)(1) arguments.

motion to dismiss, a "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). "To survive a Rule 12(b)(6) motion to dismiss, a complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (internal quotation marks omitted). That is, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.    <u>ARGUMENT AND AUTHORITIES</u>

### A.    The Court Has Jurisdiction over All of Plaintiffs' Claims.

General Paxton challenges this Court's jurisdiction by asserting sovereign immunity, claiming that Plaintiffs do not have standing, arguing Plaintiffs' claims are not ripe for adjudication, and encouraging the Court to abstain from considering the critically important federal and constitutional questions presented. MTD at 3-15, 28-31. None of these arguments has any merit; and several of them are the same. General Paxton's traceability, concrete injury, ripeness, and *Ex Parte Young* arguments all assert that General Paxton has not sufficiently threatened enforcement against the Plaintiffs. These all fail because, as the Fifth Circuit told this Court and these litigants, General Paxton's personal statements and intentions are irrelevant to the *Ex Parte Young* analysis. *See In re Paxton*, 53 F.4th at 308. And "[t]he same inquiry informs the standing question." *Id.* General Paxton is statutorily tasked with enforcing the Trigger Ban, and he has never disavowed his ability or intention to enforce it against the activities in which Plaintiffs wish to

engage.

### 1. *Ex Parte Young* applies to Plaintiffs' claims.

Under the *Ex Parte Young* exception to sovereign immunity, lawsuits may proceed in federal court when a plaintiff requests prospective relief against state officials in their official capacities for ongoing federal violations. 209 U.S. at 159-60. It applies when state officials "by virtue of [their] office" have "some connection with the enforcement of the challenged act[.]" *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) (cleaned up).[12] The "connection" component overlaps with Article III standing requirements. *Id.* at 1002 ("In fact, it may be the case that an official's connection to enforcement is satisfied when standing has been established." (cleaned up)).[13] As explained in Section III.A.2 *infra*, the threat of enforcement in this case is more than sufficient to establish Article III standing.

General Paxton suggests that he does not enforce the Trigger Ban because he lacks criminal prosecution powers under it. MTD at 12. But General Paxton has the *exclusive* power to file suits for ruinous civil penalties under the Trigger Ban,[14] a fact that is not altered by the existence of

---

[12] General Paxton argues that *Ex Parte Young* may not be used to force the state to conform to its own laws. MTD at 17. This ignores that Plaintiffs' alleged injuries are federal. While General Paxton's improper construction of Texas state law underlying his threats against Plaintiffs are wrong as a matter of law, the harm caused is the invasion of rights protected by federal law and the U.S. Constitution. Seeking declaratory and prospective injunctive relief to construe state laws such that they do not violate federal law is a garden-variety use of *Ex Parte Young*. *See Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 519 (5th Cir. 2017).

[13] The Sixth Circuit has explicitly so ruled. *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015) ("[A]t the point that a threatened injury becomes sufficiently imminent and particularized to confer Article III standing, that threat of enforcement also becomes sufficient to satisfy this element of *Ex parte Young*.").

[14] *See* Tex. Health & Safety Code Ann., § 170A.005 ("A person who violates Section 170A.002 is subject to a civil penalty of not less than $100,000 for each violation. **The attorney general shall file an action to recover a civil penalty assessed under this section**…" (emphasis added)).

other correct defendants (the Prosecutor Defendants, who have different enforcement authority).[15] As the party "statutorily tasked with enforcing the challenged law[,]" General Paxton is a proper *Ex Parte Young* defendant. *In re Paxton*, 53 F.4th at 308.

The factual allegations and evidence cited in Section I.B., *supra,* also clearly shows that General Paxton is willing to enforce this law.[16] He also has a positive *duty* to enforce the law, which is phrased in mandatory terms. *See* Tex. Health & Safety Code Ann., § 170A.005 ("The attorney general shall file an action to recover a civil penalty assessed under this section . . . ."). Plaintiffs allege that this law has directly affected their operations. *See* Section III.A.2, *infra* (identifying factual allegations and evidence regarding foregone conduct). The Supreme Court of the United States held just last year that these types of allegations were enough to satisfy *Ex Parte Young* without *any* threats at all when defendant had the power to enforce the challenged law:

> The petitioners have plausibly alleged that S. B. 8 has already had a direct effect on their day-to-day operations. And they have identified provisions of state law that appear to impose a duty on the licensing-official defendants to bring disciplinary actions against them if they violate S. B. 8. In our judgment, this is enough at the motion to dismiss stage to suggest the petitioners will be the target of an enforcement action and thus allow this suit to proceed.

*Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 536-37 (2021).[17]

---

[15] *See, e.g., La Union del Pueblo Entero v. Abbott*, No. 5:21-CV-0844-XR, 2022 WL 3052489, at *5-21 (W.D. Tex. Aug. 2, 2022) (finding that Attorney General and Secretary of State sufficiently connected to the enforcement of certain election laws to be proper *Ex Parte Young* defendants).

[16] The Court should resist General Paxton's gloss on the standard that a demonstrated willingness to enforce must be specific to a plaintiff or a context. *See* MTD at 13. "Neither a specific grant of enforcement authority nor a history of enforcement is required to establish a sufficient connection. There need only be a scintilla of enforcement by the relevant state official for *Ex parte Young* to apply." *Nat'l Press Photographers Ass'n v. McCraw*, 504 F.Supp.3d 568, 582 (W.D. Tex. 2020) (cleaned up).

[17] Ultimately the claim that survived this decision was dismissed, but only after it was determined that the remaining defendants actually did not have enforcement powers under the challenged law.

Moreover, although General Paxton cannot alone initiate any criminal proceedings, Plaintiffs' claims against the Prosecutor Defendants (who indisputably have that authority) seek declaratory relief concerning criminal enforcement. Because General Paxton has publicly stated his position that the Pre-*Roe* Statutes are and remain fully enforceable, this Court has supplemental jurisdiction over him for this declaratory judgment claim. *See* 28 U.S.C. § 1367(a); 28 U.S.C. § 2202 ("In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration.").[18]

## 2. Plaintiffs have standing.

"To have [Article III] standing, a plaintiff must (1) have suffered an injury in fact, (2) that is fairly traceable to the challenged action of the defendant, and (3) that will likely be redressed by a favorable decision." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020) (citing *Lujan v. Def's. of Wildlife,* 504 U.S. 555, 560–61 (1992)), *as revised* (Oct. 30, 2020). Plaintiffs easily satisfy all three requirements.

*Injury.* As a threshold matter, General Paxton ignores the proper standard for evaluating injury-in-fact in a pre-enforcement challenge. In that context, injury-in-fact is established when the plaintiff "(1) has an intention to engage in a course of conduct arguably affected with a constitutional interest, (2) his intended future conduct is arguably proscribed by the policy in question, and (3) the threat of future enforcement of the challenged policies is substantial." *Fenves*,

---

Different from those defendants, General Paxton is specifically designated as the statutory enforcer of the Trigger Ban.

[18] General Paxton is the top law enforcement officer of the state and has specifically taken a position on the legal effect of the Pre-*Roe* Statutes. Therefore, he is an "interested party." FAC at ¶¶ 3, 45, 59, 89-105, 109, 112. General Paxton has also repeatedly advocated full enforcement of the Pre-*Roe* statutes and stated unequivocally that he will assist any criminal prosecution under them. FAC at ¶¶ 90-92; Pls' Exs. 62-64.

979 F.3d at 330 (cleaned up). "[W]hen dealing with pre-enforcement challenges to recently enacted (or, at least, non-moribund) statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence." *Id.* at 335. [19]

Every single Plaintiff specifically described in testimony the conduct in which they would like to engage. *See* Pls.' Exs. 16-20.[20] Plaintiffs also confirmed that they are currently not engaging in their desired conduct because it is arguably proscribed by the Pre-*Roe* Statutes and the Trigger Ban. FAC at ¶¶11, 23-24, 26-28, 30-31, 33, 35, 39, 41, 109, 111, 132, 134; Pls.' Exs. 16-20.[21] General Paxton does not assert that the challenged statutes do not apply to Plaintiffs' desired conduct. Instead, his MTD *confirms* that General Paxton's position on these statutes is exactly as Plaintiffs alleged—namely, that General Paxton, as the top state law enforcement official, believes that Texas has criminalized conduct that merely assists legal abortions that occur in another state. MTD at 24.[22] The evidence offered at the preliminary injunction hearing also confirms this position. Pls.' Exs. 1, 3-4, 25-30, 32, 34-38, 41-42, 62-64.

Moreover, when directly asked to provide the official position of the Office of the Attorney

[19] *See also Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984) ("Within the context of the First Amendment, the Court has enunciated other concerns that justify a lessening of prudential limitations on standing. . . . [W]hen there is a danger of chilling free speech, the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged.").

[20] Some of the Plaintiffs also testified about these issues during the PI hearing. App. Ex. A-20 at 9:24-10:11, 15:16-19, 18:9-22, 59:8-14, 60:17-61:1, 185:3-186:5, 211:9-13, 211:17-212:6.

[21] General Paxton and other state officials have publicly stated that Plaintiffs' desired conduct is arguably proscribed by the challenged statutes. Pls.' Exs. 1, 3-6, 8-10, 16-32, 34-38, 41-47, 49-50, 62-64; App. Exs. A-1– A-2, A-4 –A-8, A-17 – A-18.

[22] General Paxton's Motion to Dismiss Plaintiffs' Complaint (ECF 33), filed September 19, 2022, also confirmed this position.

General ("**OAG**") regarding whether Plaintiffs' desired conduct would subject them to civil enforcement penalties by the OAG, counsel conceded that the Trigger Ban would apply if Dr. Moayedi (1) traveled to other states and provided abortion care to Texans in those states or (2) provided abortion care via telemedicine in states where such care is legal, stating "that type of scenario could present liability for a civil penalty." App. Ex. A-20 at 247:23-248:2.[23] With respect to the other Plaintiffs, counsel left the question open and stated that they could raise their defenses in a prosecution. *Id.* at 248:3-10.[24]

An arguably proscriptive law, a Defendant with enforcement power, and no disavowal of enforcement is sufficient for a pre-enforcement challenge. *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) ("We are not troubled by the pre-enforcement nature of this suit. The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise. We conclude that plaintiffs have alleged an actual and well-founded fear that the law will be enforced against them.").

***Traceability and Redressability.*** General Paxton also claims Plaintiffs' injuries are not traceable to him because he has not directly threatened to enforce the challenged statutes against

---

[23] Counsel's concession regarding Dr. Moayedi is sufficient to demonstrate standing to satisfy Article III's case-or-controversy requirement for all Plaintiffs. *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 53 n.2 (2006) (citing *Bowsher v. Synar*, 478 U.S. 714, 721 (1986)).

[24] As noted in Section III.A.5 *infra*, General Paxton's refusal to alleviate the chill has continued. On October 25, 2022, the Chair of the Texas House Committee on Criminal Jurisprudence, Representative Nicole Collier, wrote to General Paxton, asking him to clarify the scope of the Trigger Ban and the Pre-*Roe* Statutes. *See* App. Ex. A-21 at 2-3. Rep. Collier also referenced the Texas Freedom Caucus's letter to Sidley Austin LLP and asked whether, "if an employer is facilitating the means to obtain an abortion outside of the State of Texas, they are violating" the pre-*Roe* statutes. *See id*. at 3. On November 11, 2022, the Texas Women's Health Caucus tweeted: "[t]he AG declined to answer and neglected providing Texans with the info they need to make informed decisions." *Id*. at 4.

Plaintiffs specifically. MTD. at 7-8. General Paxton is wrong as a matter of law and as a matter of fact.

*First*, in a pre-enforcement challenge to a statute the defendant enforces, the statutory enforcement authority itself satisfies both traceability and redressability. *OCA-Greater Houston v. Tex.*, 867 F.3d 604, 613 (5th Cir. 2017) ("The facial invalidity of a Texas election statute is, without question, fairly traceable to and redressable by the State itself and its Secretary of State, who serves as the 'chief election officer of the state.'"). In *OCA-Greater Houston*, the alleged violative conduct was by a county official, not the Secretary of State, but because the Secretary of State was the chief elections official, the injury caused by the misapplication of the statute was still traceable to him. *Id.* Likewise, because General Paxton has civil enforcement power under the statute, the Plaintiffs' injury is traceable to him.

*Second*, Plaintiffs plausibly alleged that the "challenged law has caused Plaintiffs to reasonably self-censor their speech for fear of being punished." *Nat'l Press Photographers Ass'n v. McCraw*, 504 F.Supp.3d 568, 576 (W.D. Tex. 2020).[25] "This type of self-censorship must arise from a fear of prosecution that is not imaginary or wholly speculative." *Id.* at 578 (cleaned up). Plaintiffs' fear is not imaginary or speculative; indeed, Justice Higginbotham specifically noted that "on the extant record, these assertions are not fanciful." *In re Paxton*, 53 F.4th at 312 (Higginbotham, J., concurring). General Paxton has said his office is investigating enforcement against those who help others to travel to obtain abortions, and he has repeatedly failed to disavow such enforcement even when directly asked by this Court. App. Ex. A-20 at 249:14- 253:10. "That the statute has not been enforced and that there is no certainty that it will does not establish the

---

[25] *See also Animal Legal Def. Fund v. Vaught*, 8 F.4th 714, 720 (8th Cir. 2021) ("A formal threat . . . is not required to establish an injury in fact. The question is whether the plaintiffs have an objectively reasonable fear of legal action that chills their speech.").

lack of a case or controversy. The state had not disavowed enforcement." *KVUE, Inc. v. Moore*, 709 F.2d 922, 930 (5th Cir. 1983).[26] The challenged statutes "are chilling Plaintiffs' actions, and enjoining enforcement of the provisions would stop Plaintiffs' self-censorship[.]" *McCraw*, 504 F.Supp. at 582.[27]

### 3. Plaintiffs assert their own injuries and allege facts to establish associational standing.

Plaintiffs have satisfied the standard for associational standing. Plaintiffs assert their own rights,[28] but also allege facts to support that: "(a) [their] members would otherwise have standing to sue in their own right; (b) the interests [they] seek[] to protect are germane to the organization[s'] purpose[s]; and (c) neither the claim[s] asserted nor the relief requested requires the participation of individual members in the lawsuit." *United Food & Comm. Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 553 (1996).

On the first element, Plaintiffs have alleged and established that their staff, volunteers, and donors have all been threatened by state actors. FAC at ¶¶2, 5-8, 13-14, 41, 43, 92-103; App. Ex. A-20 at 13-14, 124. Staff and volunteers at CASN have stopped traveling with patients. FAC at ¶134; App. Ex. A-20 at 154:1-9. Some donors have stopped giving. FAC at ¶23, 25, 27, 34; App. Ex. A-20 at 14:9-24, 132:17-20; Pls.' Exs. 17-20. Rosann Mariappuram testified that a Board member of her organization resigned, explaining the fear and pressure created by the threat of

---

[26] General Paxton's reliance on *Okpalobi v. Foster* is misplaced; the plaintiffs in that case sued state officials with no power to enforce the statute. 244 F.3d 405, 424-27 (5th Cir. 2001).

[27] General Paxton also asserts that Plaintiffs lack standing to challenge SB8's joint and several liability provision. For the Court's convenience and to avoid duplicative briefing, Plaintiffs address those arguments in Section III.B.4, *infra*, where they also respond to General Paxton's 12(b)(6) arguments with respect to that specific claim.

[28] Organizations have constitutional rights of their own. *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 365 (2010) ("[T]he Government may not suppress political speech on the basis of the speaker's corporate identity."). And Dr. Moayedi is a natural person.

enforcement. App. FAC at ¶36; Ex. A-20 at 116:1-4.[29] This self-censorship includes curtailing speech as well as expressive conduct. *E.g.*, *id.*, at 17:1-12, 43:1-3, 85:2-9, 126:20-22. They have established the second element as well. The organizational plaintiffs focus on abortion assistance and advocate for abortion access,[30] and every claim they assert challenges a state law that prohibits abortion, which is germane to their purposes and missions. *See McCraw*, 504 F.Supp.3d at 580. And they satisfied the third element because "individual participation is not normally necessary when an association seeks prospective or injunctive relief for its members[.]" *UFCW Local* 751, 517 U.S. at 546 (internal quotation marks omitted).

### 4. Plaintiffs' Claims Are Undeniably Ripe for Adjudication.

The "ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Social Servs., Inc*., 509 U.S. 43, 57 n.18 (1993). "The key considerations are the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003) (internal quotation marks omitted). In pre-enforcement challenges to statutes, standing often overlaps with ripeness. *See MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 128 n.8 (2007); *Texas v. United States*, 497 F.3d 491, 496 (5th Cir. 2007) ("[T]he doctrines often overlap in practice, particularly in an examination of whether a plaintiff has suffered a concrete injury[.]"). Plaintiffs' claims in this case are ripe.

*First*, this matter is fit for review because "it presents pure legal questions that require no additional factual development." *Midship Pipeline Co., L.L.C. v. FERC*, 45 F.4th 867, 872 (5th

---

[29] Several witnesses testified that their entire organizations were fearful, including staff and volunteers, and had significantly constrained their own behavior as a result. App. Ex. A-20 at 12:11, 14:9-13,15:2-5,16:10-17, 17:4-8, 60:2-5, 71:18-21, 116:1-5, 127:11-17; Pls.' Exs. 17-20.

[30] FAC at ¶¶ 22-28; Pls.' Exs. 16-20; App. Exs. A-9 – A-16.

Cir. 2022). The record already establishes the credible threat of enforcement of the Pre-*Roe*

Statutes and the Trigger Ban against those who engage in the conduct at issue in this case. FAC at

¶¶ 23, 25, 27, 34, 36, 92-93, 97, 100, 134; App. Ex. A-20 at 14:9-24, 113:11-22, 116:1-4, 132:17-

20; Pls.' Exs. 3, 17-20, 34, 42, 63-64. As Justice Higginbotham noted, General Paxton's threats of

enforcement "are not fanciful," nor are they speculative. *See In re Paxton*, 53 F.4th at 312

(Higginbotham, J., concurring).

General Paxton has also steadfastly refused to clarify the scope of the Trigger Ban and the

Pre-*Roe* Statutes despite his knowledge of the shadow they cast. For example, months after this

lawsuit was filed, General Paxton refused to respond to the request of the Chair of the Texas House

Committee on Criminal Jurisprudence, Representative Nicole Collier, for a formal opinion

regarding the following conduct:

> Can a resident of Texas pay for the travel of another resident of
> Texas for the purpose of obtaining an abortion in a state where
> abortion is legally protected? … Can a resident of Texas donate to
> an organization whose sole purpose is to provide financial assistance
> to residents of Texas seeking travel to obtain abortions in states
> where the procedure is legally protected? … Can a resident of Texas
> provide information related to abortion services in another state to
> another resident of Texas? … Can a resident of Texas accompany
> another resident of Texas who is traveling out of state for the sole
> purpose of obtaining an abortion?

App. Ex. A-21 at 2-3. Nor did General Paxton respond to Rep. Collier's request for clarification

on whether the State of Texas agreed with the contents of the Texas Freedom Caucus's letter to

Sidley Austin LLP, *i.e.*, that "if an employer is facilitating the means to obtain an abortion outside

of the State of Texas, they are violating" the pre-Roe statutes. *Id*. at 3.[31] General Paxton's continued

---

[31] This is in dereliction of General Paxton's duty to "issue a written opinion on a question affecting
the public interest or concerning the official duties of the requesting person." TEX. GOV'T. CODE
§ 402.042.

refusal to disavow his civil enforcement authority under the Trigger Ban confirms the nonspeculative nature of the threat. *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 302 (1979) ("[T]he State has not disavowed any intention of invoking the criminal penalty provision against unions that commit unfair labor practices. Appellees are thus not without some reason in fearing prosecution[.]").

General Paxton's words, actions, and conspicuous failures to speak or act are sufficient to establish imminent harm where, as here, the reason that no enforcement proceedings have been explicitly threatened is that Plaintiffs have themselves ceased their desired conduct. Where the alleged danger of a challenged statute is self-censorship, a credible threat of prosecution can be realized without an actual threat of prosecution. *Am. Booksellers*, 484 U.S. at 393. "It is not necessary that (a party) first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Int'l Soc. for Krishna Consciousness of Atlanta v. Eaves*, 601 F.2d 809, 817 (5th Cir. 1979). Because the record establishes that Plaintiffs' claims are neither premature nor speculative, their claims give rise to a sufficiently ripe controversy. *See In re Paxton*, 53 F.4th at 313 (Higginbotham, J., concurring) ("The point is that, on the record at hand, a trier of fact, which we are not, could find there is sufficient evidence of an unsettling and chilling want of clarity in statements by officials with enforcement authority made against a chorus of state officials without enforcement power to allow this case to proceed.").

*Second*, Plaintiffs have sufficiently demonstrated hardship. "[W]here a regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance, hardship has been demonstrated." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 545 (5th Cir. 2008) (alteration in original). As noted, Plaintiffs have

historically engaged in the conduct at issue. *See* FAC at ¶¶ 14, 23, 111, 132; Pls.' Exs. 20-41; App. Ex. A-20 at 9:24-10:11, 15:16-19, 18:9-22, 59:8-14, 60:17-61:1, 185:3-186:5, 211:9-13, 211:17-212:6. But as a direct result of General Paxton's threats of prosecution, Plaintiffs immediately ceased certain constitutionally protected activities that they wish to resume. *See* FAC at ¶¶ 11-12, 14, 23-28; Pls.' Exs. 20-41; App. Ex. A-20 at 9:24-10:11, 15:16-19, 18:9-22, 59:8-14, 60:17-61:1, 185:3-186:5, 211:9-13, 211:17-212:6. This immediate and significant change in Plaintiff's conduct demonstrates substantial hardship. *Cooper v. McBeath*, 11 F.3d 547, 552 n.7 (5th Cir. 1994). ("Substantial hardship—the touchstone for determining when review if appropriate—exists where the enforcement of a statute is assured and the only obstacle to ripeness is merely a delay before the action or proceedings commence.").

Given General Paxton's willingness to enforce, his refusal to clarify the scope of these laws, and his refusal to disavow any intended prosecution related to the conduct at issue, Plaintiffs' claims are ripe. *See id*. ("Where the application of a law is inevitable and consequences attach to it, the Court will find the matter ripe before the actual proceedings occur."); *see also Am. Booksellers*, 484 U.S. at 393 (finding that a statute prohibiting activity protected by the First Amendment leads to "self-censorship, a harm that can be realized even without an actual prosecution").

5.     **The Court should not abstain under *Pullman*.**

Under *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941), abstention should occur only "when a federal constitutional claim is premised on an unsettled question of state law" and state-court resolution of "the underlying state-law question" would "avoid the possibility of unnecessarily deciding a constitutional question." *Harris Cty. Com'rs Ct. v. Moore*,

420 U.S. 77, 83 (1975). Like all abstention doctrines, *Pullman* is discretionary.[32] And before abstaining under *Pullman*, a "district court must carefully assess the totality of circumstances presented by a particular case. This requires a broad inquiry which should include consideration of the rights at stake and the costs of delay pending state court adjudication." *Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 145 F.3d 238, 243 (5th Cir. 1998).

Plaintiffs assert ongoing chilling and violations of their fundamental constitutional rights that make abstention inappropriate. *See Zwickler v. Koota*, 389 U.S. 241, 252 (1967) ("[T]o force the plaintiff who has commenced a federal action to suffer the delay of state court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect."). In fact, the United States Supreme Court has repeatedly held abstention under *Pullman* is inappropriate when First Amendment rights are at issue—as they are here. *See, e.g., Baggett v. Bullitt*, 377 U.S. 360, 375-80 (1964). Moreover, as General Paxton recently explained to the Texas Supreme Court, Texas state courts generally are not permitted to conduct pre-enforcement review of state criminal statutes (like the pre-*Roe* statutes and the Trigger Ban).[33] Thus, there is no meaningful opportunity for a state-court resolution of "the underlying state-law question" that would "avoid the possibility of unnecessarily deciding a constitutional question." *Harris Cty. v.*

---

[32] "[A]bstention is the exception, not the rule." *Nissan Motor Corp. in U.S.A. v. Harding*, 739 F.2d 1005, 1008 (5th Cir. 1984).

[33] Pls.' Exs. 32, 44. *See State v. Morales*, 869 S.W.2d 941, 943 (Tex. 1994) ("[C]ivil courts . . . have no power to grant either injunctive or declaratory relief based on the unconstitutionality of a criminal statute."); *City of Fort Worth v. Craik*, 411 S.W.2d 541, 543 (Tex. 1967) (noting that the validity of a penal ordinance may be tested in criminal courts but holding that "a court of equity will not determine originally the validity of a criminal regulation in the absence of a showing of irreparable injury to vested property rights").

*Moore*, 420 U.S. at 83. [34]

**B.    Plaintiffs Plausibly Alleged All of Their Claims.**

   **1.    Plaintiffs have a First Amendment right to fund legal conduct.**

General Paxton does not dispute that Plaintiffs themselves have First Amendment rights to associate freely with each other and with pregnant Texans, and to engage in expressive conduct. Instead, he argues that funding legal abortions in other states is *illegal* in Texas because the State's purported interest is the same no matter where an abortion occurs. MTD at 21-22. This argument is constitutionally troubling and meritless.

Donations and funding are inherently protected speech. "[T]he solicitation of charitable contributions is protected speech[.]" *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 789 (1988).[35] Since he disagrees with Plaintiffs' missions, however, General Paxton differentiates their funding by calling it "illegal" conduct. MTD at 20. But Plaintiffs have not sought to fund or support anything illegal, and they have not claimed that funding abortions *in Texas* is protected speech. Plaintiffs assert only that they are allowed to charitably fund legal conduct, whether it be advocacy for reproductive justice in Texas, or legal abortions performed outside of Texas. FAC at ¶¶ 11-12, 15, 22-41, 135-37, 159-60, 175. Abortions are not illegal in

---

[34] General Paxton essentially asserts that Plaintiffs must endure ongoing constitutional violations until they are criminally prosecuted. But "because of the delays inherent in the abstention process," it is a certainty "that valuable federal rights [would] be lost in the absence of expeditious adjudication in the federal court." *Harris Cty. v. Moore*, 420 U.S. at 83.

[35] *See also Munson Co.*, 467 U.S. at 967 (law that limited the ability of charitable organizations to raise contributions was "a direct restriction on protected First Amendment activity"); *Citizens United*, 558 U.S. at 339 ("[A] prohibition on corporate independent expenditures is thus a ban on speech."); *Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 632 (1980) ("[Charitable solicitations] involve a variety of speech interests ... that are within the protection of the First Amendment"); *Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) ("[Texans for Free Enterprise's] ability to speak is undoubtedly limited when it cannot raise money to pay for speech.").

New Mexico, Kansas, or elsewhere simply because Texas has decreed them illegal within its own borders. Thus, funding abortion-related activity—when the abortions are legally performed where legal—is not funding illegal activity: it is protected speech. *See Riley*, 487 U.S. at 789; *Sec'y of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 967 (1984).

For the same reasons given with respect to the Right to Travel argument, *see infra* section III.B.3, Texas has no interest in regulating conduct or speech that occurs entirely in other states and is legal in those states. Thus, Texas has neither a compelling nor "legitimate" interest in enforcing its laws in this way, rendering the restraint unconstitutional under any legal standard.[36]

## 2. A restraint on funding or assistance for out-of-state abortions cannot pass rational basis scrutiny, much less strict scrutiny.

General Paxton also asserts that the Pre-*Roe* statutes and the Trigger Ban are content-neutral because they "apply equally regardless of one's opinion on abortion, and the statutes' requirements in no way depend on the speaker's viewpoint or motives." MTD at 21. But a regulation targeted at specific subject matter is content-based even if it does not discriminate among viewpoints. *Reed v. Town of Gilbert*, 576 U.S. 155, 156 (2015). "Whether laws define regulated speech by particular subject matter or by its function or purpose, they are subject to strict scrutiny." *Id.* at 156.[37] "This stringent standard reflects the fundamental principle that governments have no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371 (2018) (cleaned

---

[36] The challenged statutes are also content-based because funding of other cross-borders conduct that is legal in the state in which it takes place, but illegal in Texas, has not publicly threatened or suggested. The statutes are, therefore, presumptively unconstitutional, and strict scrutiny applies. *Tex. Entm't Ass'n, Inc. v. Hegar*, 10 F.4th 495, 512 (5th Cir. 2021).

[37] Earlier this year, the Fifth Circuit affirmed that "the phrase 'content based' requires a court to consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys *NetChoice, L.L.C. v. Paxton*, 49 F.4th 439, 480 (5th Cir. 2022) (quoting *Reed*, 576 U.S. at 163).

up).

The only speech targeted by the Pre-*Roe* Statutes and the Trigger Ban is speech (including funding) that supports Texans seeking safe and legal abortion. Only those who believe that pregnant Texans should be allowed to obtain safe abortions where those abortions are legal are impacted by these laws. *See Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 95 (1972) (holding government cannot selectively exclude speakers based on the content of their message).

### 3. Plaintiffs alleged viable Right to Travel claims.

General Paxton argues that the Right to Travel asserted by Plaintiffs—that is, the right to interstate travel to engage in lawful conduct in another state—is (1) too broadly defined, and (2) when properly narrowed, is not historically protected. MTD at 23-24. Both arguments fail.

The Right to Travel is a long-standing and historically protected constitutional right. Justice Bushrod Washington (George's Washington's nephew), recognized precisely this right in 1823, less than a generation after the Constitutional was ratified. *Corfield v. Coryell*, 6 F. Cas. 546, 552 (C.C.E.D. Pa. 1823) ("The right of a citizen of one state to pass through, or to reside in any other state, for purposes of trade, agriculture, professional pursuits, or otherwise … may be mentioned as some of the particular privileges and immunities of citizens, which are clearly embraced by the general description of privileges deemed to be fundamental.").[38] The Right to Travel to conduct legal business in another state is "virtually unqualified," and has been recognized and affirmed by the U.S. Supreme Court for more than a century. *Califano v. Gautier Torres*, 435 U.S. 1, 5 n.6

---

[38] A broad right to travel in peacetime also appears in Blackstone's commentaries. Blackstone, COMMENTARIES ON THE LAWS OF ENGLAND, Book 1: The Rights of Persons, Chapter 1 – Of the Absolute Rights of Individuals, II. It is also explicit in the Articles of Confederation, U.S.C.A. § ARTICLES OF CONFEDERATION, Art. IV, ¶ 1. (1777), and enshrined in Magna Carta. *See* Leonard B. Boudin, The Constitutional Right to Travel, 56 COLUM. L. REV. 47 (1956) (citing Magna Carta, Ch. 42, as giving to every free man the right to leave the realm at his pleasure in time of peace).

(1978).

This long-standing right to "interstate travel to engage in lawful conduct in another state," is not too broad to be administrable, as General Paxton claims. *See* MTD at 23 (citing *Hutchins v. Dist. of Columbia*, 188 F.3d 531, 538 (D.C. Cir. 1999)). Plaintiffs' construction of the right, does not "essentially ask[] 'whether Americans enjoy a general right of free Movement[.]'" Instead, Plaintiffs assert a right that is limited to travel between states and to conduct that is legal in the destination state. The right to travel "plainly and unmistakably" embraces the right to cross state lines to engage in "lawful commerce, trade, or business." *Ward v. State*, 79 U.S. 418, 430 (1870). Moreover, binding precedent makes clear that the Right to Travel specifically includes the right to do so "to procure medical services." *Saenz v. Roe*, 526 U.S. 489, 502 (1999).

General Paxton argues that Texas could pass the strict scrutiny test because it has a compelling interest in "protecting … the life of [an] unborn child." MTD at 23. But "[a] State does not acquire power or supervision over the internal affairs of another State merely because the welfare and health of its own citizens may be affected when they travel to that State." *Bigelow v. Virginia*, 421 U.S. 809, 824 (1975).[39]

For the same reasons, application of the challenged statutes to out-of-state abortions cannot

---

[39] *See also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421 (2003) ("A State cannot punish a defendant for conduct that may have been lawful where it occurred."); *New York Life Ins. Co. v. Head*, 234 U.S. 149, 161 (1914) ("… it would be impossible to permit the statutes of Missouri to operate beyond the jurisdiction of that State and in the State of New York and there destroy freedom of contract without throwing down the constitutional barriers…upon the preservation of which the Government under the Constitution depends."); *Huntington v. Attrill*, 146 U.S. 657, 669 (1892) ("Laws have no force of themselves beyond the jurisdiction of the state which enacts them, and can have extraterritorial effect only by the comity of other states."); *Bonaparte v. Appeal Tax Court of Baltimore*, 104 U.S. 592, 594 (1881) ("No State can legislate except with reference to its own jurisdiction."); *Nielsen v. State of Oregon*, 212 U.S. 315, 321 (1909) ("It is enough to decide, as we do, that, for an act done within the territorial limits of the state of Washington, under authority and license from that state, one cannot be prosecuted and punished by the state of Oregon.").

pass the Commerce Clause's balancing analysis under *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970). The plaintiff in *Pike* challenged a state law regulating cantaloupe packing that increased costs on certain growers who had previously packed their fruit outside of Arizona. *Id.* at 144-45. Although the Court assumed Arizona's asserted interest of enhancing the reputation of in-state growers was legitimate, the law was still held to be unconstitutional as applied to the grower challenging it because it would have forced the company to build a $200,000 packing plant in Arizona, and the interest asserted could not justify imposing those costs. *See id.* at 145-46.[40]

Here, Texas has *no* interest in prohibiting interstate travel by its citizens to do commerce that is legal in a destination state and completed within that state. *See Bigelow*, 421 U.S. at 824, and authority cited at n. 39, *supra*. Moreover, applying the challenged Texas laws to Plaintiffs' desired conduct imposes a flat prohibition on such travel. If a limited but legitimate interest cannot justify an expensive cantaloupe regulation under *Pike*, Texas cannot justify an interstate travel ban based on no legitimate interest at all.

4. **Plaintiffs alleged viable claims that certain parts of the Texas Abortion Laws violate the U.S. Constitution and are preempted by federal law.**

The Supremacy Clause mandates that federal law "shall be the supreme Law of the Land" U.S. Const., Art. VI, cl. 2. Congress can indicate its preemptive intent either expressly through a statute's plain language, or implicitly through a statute's "structure and purpose." *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008). "Where state and federal law 'directly conflict,' state law

---

[40] General Paxton also claims that Plaintiffs forfeited this argument by not citing to *Pike*. *See* MTD at 25. But General Paxton's MTD is the first brief in this this exchange, and Plaintiffs certainly are not required to cite legal authority in their FAC. This may be a holdover from General Paxton's previous MTD, which was also his response to Plaintiffs' preliminary injunction application, but even there, General Paxton's authority does not say what he claims. The citation appears to be to some dicta regarding arguments being waived if brought up for the first time in a reply brief. *Mission Toxicology, LLC v. Unitedhealthcare Ins. Co.*, 499 F. Supp. 3d 350, 359 (W.D. Tex. 2020).

must give way." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617 (2011).[41] "Field preemption exists where a scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or where Congress is regulating "a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of the state laws on the same subject." *McCraw*, 504 F.Supp.3d at 588. Moreover, even without field preemption, conflict preemption applies when "it is impossible for a private party to comply with both state and federal requirements." *PLIVA*, 564 U.S at 618. Plaintiffs specifically assert two federal law preemption claims.

First, the Trigger Ban and Pre-*Roe* Statutes are preempted by federal CMS billing requirements, which specifically mandate that for telehealth services, including abortion services, the location of services is deemed to be the patient's location, irrespective of the location of the physician. *See* Billing and coding Medicare Fee-for-Service claims, TELEHEALTH.HHS.GOV, https://telehealth.hhs.gov/providers/billing-and-reimbursement/billing-and-coding-medicare-fee-for-service-claims/#coding-claims-during-covid-19, (last updated May 17, 2022); FAC at ¶¶ 212-14. Congress delegated to CMS and HHS broad authority to regulate and preempt state law for Medicare and Medicaid beneficiaries, where the state's only carve-out is for licensure and solvency requirements. *See* 42 U.S.C. § 1856(b)(3).[42] Pursuant to this broad statutory authority, CMS has instructed fee-for-service providers of Medicare to bill for reimbursement pursuant to

---

[41] Further, "courts should not strain to find ways to reconcile federal law with seemingly conflicting state law," and "when the ordinary meaning of federal law blocks a private party from independently accomplishing what state law requires, that party has established preemption." *PLIVA*, 564 U.S. at 622-23.

[42] These carve outs are limited and cannot be used to escape the preemptive power of CMS. *See* 70 Fed. Reg. 4588, 4664 (Jan. 28, 2005) (limiting the role of state licensure in regulating Medicare Advantage plans to a finite set of circumstances).

the *patient's place of service*, irrespective of the location of the physician. FAC at ¶¶ 208-17. This regulation unambiguously conflicts with any Texas abortion law that holds Dr. Moayedi liable for performing an abortion via telehealth if her patient is located where such care is legal.

Second, Plaintiffs challenge SB8's joint and several liability provision, codified as Section 30.022 of the Texas Civil Practice and Remedies Code. Although styled as a "fee-shifting" provision, Section 30.022(a) actually makes any "entity, attorney, or law firm, who seeks declaratory or injunctive relief to prevent . . . any person in this state from enforcing any statute . . . or any other type of law that regulates or restricts abortion . . . jointly and severally liable to pay the costs and attorney's fees of the prevailing party." *Id.*; *see also* FAC at ¶¶ 227-29. Liability under Section 30.022 only inures to the party seeking *relief from* an abortion-restraining law and that party's lawyers. FAC at ¶ 228. Unlike the rest of SB8, which can only be enforced through private civil enforcement, Section 30.022(a) specifically applies to any challenge to a Texas abortion law, even if the defendants are state actors.[43]

Section 30.022(a) directly conflicts with (and is therefore preempted by) 42 U.S.C. 1988, which establishes a comprehensive attorneys' fees scheme for federal civil rights cases brought under Section 1983. The federal goals reflected in Sections 1983 and 1988 are to allow and encourage non-frivolous challenges to unconstitutional state laws that deprive individuals of their rights under the U.S. Constitution and other federal laws. Section 30.022 directly interferes with those goals by (1) mandating an award of fees as a separate joint and several liability; (2) imposing that liability solely on a plaintiff who brings a civil rights lawsuit against unconstitutional abortion

_____

[43] General Paxton also asserts that Plaintiffs do not have standing to challenge Section 30.022 or that such a challenge is not yet ripe because he has not yet invoked Section 30.022 against them. MTD at 10. General Paxton again misapprehends the standing inquiry in a pre-enforcement challenge under the First Amendment. It is well-settled that public-interest litigation constitutes speech. *See Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 548 (2001).

laws; and (3) foisting that liability onto both the plaintiff and her lawyers. The result is an obvious

chilling of non-frivolous civil rights litigation.[44]

## IV.    <u>CONCLUSION</u>

For all of these reasons, Plaintiffs respectfully request the Court deny General Paxton's

Motion to Dismiss. In the alternative, if the Court grants any portion of General Paxton's Motion,

Plaintiffs respectfully request that they be allowed to move for leave to replead and cure any

deficiencies identified by the Court. Fed. R. Civ. P. 15(a)(2); *Great Plains Trust Co. v. Morgan*

*Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

Dated: December 20, 2022        Respectfully submitted,

By: */s/ Jennifer R. Ecklund*        
    Jennifer R. Ecklund
    Texas Bar No. 24045626
    jecklund@thompsoncoburn.com

    Elizabeth G. Myers
    Texas Bar No. 24047767
    emyers@thompsoncoburn.com

    Allyn Jaqua Lowell
    Texas Bar No. 24064143
    alowell@thompsoncoburn.com

    John Atkins
    Texas Bar No. 24097326
    jatkins@thompsoncoburn.com

    Elizabeth Rocha
    Texas Bar No. 24127242
    erocha@thompsoncoburn.com

**THOMPSON COBURN LLP**
2100 Ross Avenue, Suite 3200

---

[44] Plaintiffs themselves experienced this very chill in the form of a delayed ability to file this lawsuit. Because of the unique joint and several liability mandated by Section 30.022, they had to secure funding to cover any such award. *See* FAC at ¶¶ 219-21; Pls.' Exs. 16-23; App. Ex. A-20 at 15:24-25; 16:1-6; 61:10-23; 62:1-2; 141:7-9; 163:3-21.

Dallas, Texas 75201
Telephone: 972/629-7100
Facsimile: 972/629-7171


Alexandra Wilson Albright
Texas Bar No. 21723500
aalbright@adjtlaw.com

Marcy Hogan Greer
Texas Bar No. 08417560
mgreer@adjtlaw.com
515 Congress Ave., Suite 2350
Austin, TX 78701-3562
Telephone: 512/482-9300
Facsimile: 512/482-9303


Kevin Dubose
Texas Bar No. 06150500
kdubose@adjtlaw.com
1844 Harvard Street
Houston, TX 77008
Telephone: 713/523-2358
Facsimile: 713/522-4553


Kirsten M. Castañeda
Texas Bar No. 00792401
kcastaneda@adjtlaw.com
8144 Walnut Hill Lane, Suite 1000
Dallas, TX 75231-4388
Telephone: 214/369-2358
Facsimile: 214/369-2359

**ALEXANDER DUBOSE &
JEFFERSON, LLP**

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I certify that this document was filed electronically on December 20, 2022, with the clerk of the Court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court.

/s/ *Jennifer R. Ecklund*
Jennifer R. Ecklund