**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **Plaintiffs Fund Texas Choice, et al.,** | |
| **Plaintiffs,** | |
| **v.** | |
| **José Garza, in his Official Capacity as Travis County District Attorney; Julie Renken, in her Official Capacity as Washington County District Attorney; Susan R. Deski, in her official capacity as Burleson County Attorney; Wiley B. "Sonny" McAfee, in his official capacity as Blanco County, Burnet County, Llano County, and San Saba County District Attorney; Fred H. Weber in his official capacity as Caldwell County District Attorney; Joe Gonzales, in his official capacity as Bexar County District Attorney; Toribio Palacios, in his official capacity as Hidalgo County District Attorney; K. Sunshine Stanek, in her official capacity as Lubbock County District Attorney; Gocha Allen Ramirez, in his official capacity as Starr County District Attorney; Bill D. Hicks, in his official capacity as Hudspeth County and El Paso County District Attorney; Ori T. White, in his official capacity as Pecos County District Attorney; Richard E. Glaser, in his official capacity as Fannin County District Attorney; Ryan Sinclair, in his official capacity as Hood County District Attorney; Jacob Putman, in his official capacity as Smith County District Attorney; Shannon D. Thomason; Sadie Weldon; Ashley Maxwell; Zach Maxwell; and Mistie Sharp,** | **Civil Case No. 1:22-cv-859-RP** |
| **Defendants.** | |

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**
**FOR DECLARATORY AND INJUNCTIVE RELIEF[1]**

---

[1] Plaintiffs assert claims against the named defendants and against a defendant class in this lawsuit.

Plaintiffs Fund Texas Choice, The North Texas Equal Access Fund, The Lilith Fund for Reproductive Equity, Frontera Fund, The Afiya Center, West Fund, Jane's Due Process, Clinic Access Support Network, Buckle Bunnies Fund, and Dr. Ghazaleh Moayedi, DO, MPH, FACOG, bring this Second Amended Complaint ("**SAC**") against the above-named Defendants, and under Federal Rule of Civil Procedure 23, against a defendant class of all Texas District Attorneys and all Texas County Attorneys similarly situated (collectively, the "**Defendant Class**"), under the United States Constitution, the laws of the United States and the State of Texas, 42 U.S.C. § 1983, and the Declaratory Judgment Act, 28 U.S.C.A. §§ 2201, 2202, to challenge any criminal prosecution of, or civil enforcement action against, Plaintiffs under Texas anti-abortion statutes for lawful exercise of their constitutional and statutory federal rights.  In support thereof, Plaintiffs allege the following:

## I.     INTRODUCTION AND PROCEDURAL BACKGROUND

1.      Plaintiffs in this action are Texas-based non-profit abortion funds and practical support networks, and an individual doctor who also serves as a board member for one of the non-profits, who seek a declaratory judgment and injunction to declare null and void the application of Texas anti-abortion laws (TEX. REV. STAT. ANN. §§ 4512.1, 4512.2, 4512.3, 4512.4, 4512.6 ("**Pre-Roe Statutes**") and TEX. HEALTH & SAFETY CODE ANN. § 171.201 *et seq.* and TEX. CIV. PRAC. & REM. CODE ANN. § 30.022. ("**SB8**")) to Plaintiffs based upon their exercise of First Amendment rights, their fundamental right to travel interstate, and their rights to due process and equal protection under the U.S. Constitution.[2]

---

[2] Plaintiffs' challenges to the enforcement of the Pre-*Roe* Statutes and SB8 assert that these laws are unconstitutional, invalid, preempted, or otherwise void in their entirety, and further assert that these laws, even if valid in certain circumstances, do not apply (or would be unconstitutional if applied) to the Plaintiffs' desired conduct of providing funding, practical and informational

2.     On June 24, 2022, the Supreme Court of the United States issued its opinion in *Dobbs v. Jackson Women's Health Organization*, No. 19-1392, 2022 WL 2276808 (U.S. June 24, 2022), reversing its prior holdings in *Roe v. Wade*, 410 U.S. 113 (1973) and *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), as well as decades of precedent upholding the constitutional right to abortion. Like many Americans, Plaintiffs had structured their lives and activities in reliance on the nearly seventy years of unbroken precedent upholding *Roe v. Wade*.

3.     Leading up to and following the *Dobbs* decision, reproductive justice organizations and their allies, including Plaintiffs, were threatened by those who oppose a pregnant person's[3] right to self-determination and reproductive healthcare.  Agents of the State of Texas and several private individuals contended (and contend) that those who assist pregnant Texans to understand their rights and access medical options in states where abortion care is legal are subject to criminal prosecution and civil enforcement claims by private actors.  The threats have been repeated and far-ranging, and the intimidation has forced Plaintiffs to substantially alter their operations and chilled them from providing counseling, financial, logistical, and even informational assistance to pregnant Texans who may need to access abortion care outside of the state.

4.     The Texas Attorney General ("**AG Paxton**"), several other state actors, and several private citizens who all share the same counsel have undertaken a concerted and coordinated effort

---

support, or (in Dr. Moayedi's case) directly providing abortion services to pregnant Texans who obtain legal abortions in other states.

[3] Any person with a womb is capable of becoming pregnant.  This group includes not only women, but also non-binary and transgender persons who do not identify as women, as well as children. To include all of these groups, this SAC refers to "pregnant people" or "pregnant Texans" throughout.  Although women are obviously targeted and marginalized by laws limiting their personal autonomy, these laws impact other marginalized individuals as well.

to deprive all Texans (and non-Texans, too) of many of their constitutional rights when those individuals and entities are involved with an abortion obtained by a Texan, or help a person in Texas to understand or access legal care in other states.  Following the decision in *Dobbs*, AG Paxton immediately declared that Texas laws that criminalized abortion in Texas before *Roe* was decided ("**Pre-*Roe* Statutes**") were in full force and effect.  In addition, activist legislators and private actors declared that reproductive justice groups would be held liable for years of being complicit in murder, including for activities that were undertaken in compliance with all federal and state law requirements at the time.

5.      These efforts target those who help pregnant Texans access legal healthcare by providing financial assistance, travel arrangements, non-abortion healthcare, logistical support, and even information about accessing legal care available in other states. For instance, after sending myriad threats in the form of cease-and-desist letters, social media posts, "tweets," and other forms of communication, a group of Texas legislators that comprise the "Texas Freedom Caucus" sent threatening letters to corporations and law firms who have promised to assist their staff in accessing legal care outside of Texas.  One portion of a July 7, 2022 letter to the Sidley Austin law firm, on which AG Paxton was copied, states:[4]

---

[4] A copy of the this letter is attached as **Exhibit A** to this Complaint and is fully incorporated by reference. The letter was released publicly by the Texas Freedom Caucus and is available at https://www.freedomfortexas.com/uploads/blog/3b118c262155759454e423f6600e2196709787a8.pdf.

It has come to our attention that Sidley Austin has decided to reimburse the travel costs of employees who leave Texas to murder their unborn children. It also appears that Sidley has been complicit in illegal abortions that were performed in Texas before and after the Supreme Court's ruling in *Dobbs v. Jackson Women's Health Organization*, No. 19-1392. We are writing to inform you of the consequences that you and your colleagues will face for these actions.

Abortion is a felony criminal offense in Texas unless the mother's life is in danger. *See* West's Texas Civil Statutes, article 4512.1 (1974) (attached). The law of Texas also imposes felony criminal liability on any person who "furnishes the means for procuring an abortion knowing the purpose intended." West's Texas Civil Statutes, article 4512.2 (1974). This has been the law of Texas since 1925, and Texas did not repeal these criminal prohibitions in response to *Roe v. Wade*, 410 U.S. 113 (1973). These criminal prohibitions extend to drug-induced abortions if any part of the drug regimen is ingested in Texas, even if the drugs were dispensed by an out-of-state abortionist. To the extent that Sidley is facilitating abortions performed in violation of article 4512.1, it is exposing itself and each of its partners to felony criminal prosecution and disbarment.

6.    The letter goes on for four pages, and ultimately concludes with:

It also appears that Sidley may have aided or abetted drug-induced abortions in violation of the Texas Heartbeat Act, by paying for abortions (or abortion-related travel) in which the patient ingested the second drug in Texas after receiving the drugs from an out-of-state provider. Litigation is already underway to uncover the identity of those who aided or abetted these and other illegal abortions. In light of this pending litigation, as well as any anticipated litigation that might ensue, you and your colleagues at Sidley must preserve and retain all documents, data, and electronically stored information relating in any way to: (1) Any abortions performed or induced in Texas on or after September 1, 2021, in which a fetal heartbeat was detectable (or likely to be detectable if tested), including any such abortions that occurred while Judge Pitman's injunction was in effect from October 6–8, 2021; (2) Any abortions performed or induced in Texas on or after June 24, 2022, including abortions performed while Judge Weems's TRO was in effect from June 28, 2022, through July 1, 2022; (3) Any abortion that occurred on or after September 1, 2021, if there is any possibility that the patient might have opted for a drug-induced abortion and ingested either of the abortion drugs in Texas, even if the drugs were dispensed by a provider outside the state of Texas; and (4) The identity of any person or entity who has aided or abetted the abortions described in (1) – (3), including anyone at your firm, and anyone who paid for or in any way reimbursed the costs of those abortions.

7.      The "litigation" referred to in the letter is a series of Rule 202 Petitions filed by Zach Maxwell, Ashley Maxwell, Sadie Weldon, Shannon D. Thomason, and others in Texas state courts.   The Rule 202 Petitions seek pre-suit deposition testimony related to abortions the petitioners—all represented by Jonathan F. Mitchell and Texas State Senator Bryan Hughes— apparently believe run afoul of Texas Senate Bill 8 ("**SB8**") and the Pre-*Roe* Statutes.   Texas enacted SB8 in 2021, authorizing private individuals to police their neighbors by bringing civil lawsuits against anyone who "aided or assisted" with prohibited abortions in Texas.   Mr. Mitchell and Senator Hughes drafted, and Senator Hughes sponsored SB8, which famously forbid traditional state actor enforcement in order to attempt to avoid pre-enforcement judicial review by the federal courts.   *See Whole Woman's Health v. Jackson*, __ U.S. __, 211 L. Ed. 2d 316, 142 S. Ct. 522, 549 (2021) (Sotomayor, J., concurring in part and dissenting in part).

8.      The 202 Petitions and the July 7 letter from the Texas Freedom Caucus mirror one another in parts word-for-word, evidencing a partnership and/or coordinated effort between private and state actors to intimidate Plaintiffs and others based on their willingness to help clients, employees—or anyone else—access legal healthcare in another state.

9.      On the same day the Texas Freedom Caucus sent the Sidley Austin letter, Mr. Mitchell also sent several litigation-hold notification letters on behalf his client, Shannon D. Thomason to Plaintiffs.  Two letters were sent to undersigned counsel and a third letter was sent directly to Plaintiff Buckle Bunnies.[5]  Similar to the July 7 Freedom Caucus letter to Sidley Austin, the litigation hold letters all state:

> Mr. Thomason is also seeking attorney–client communications concerning these illegal abortions under the crime–fraud exception to the attorney–client privilege, as well as the identity of every person who aided or abetted these illegal abortions.
>
> In light of this pending litigation, as well as any anticipated litigation that might ensue, you and your co-counsel, along with your clients and each of their employees, officers, board members, and donors, must preserve and retain all documents, data, and electronically stored information relating in any way to: (1) Any abortions performed or induced in Texas on or after September 1, 2021, in which a fetal heartbeat was detectable (or likely to be detectable if tested), including any such abortions that occurred while Judge Pitman's injunction was in effect from October 6–8, 2021; (2) Any abortions performed or induced in Texas on or after June 24, 2022, including abortions performed while Judge Weems's TRO was in effect from June 28–July 1, 2022; (3) Any abortion that occurred on or after September 1, 2021, if there is any possibility that the patient might have opted for a drug-induced abortion and ingested either of the abortion drugs in Texas, even if the drugs were dispensed by a provider outside the state of Texas; and (4) The identity of any person or entity who has aided or abetted the abortions described in (1) – (3), including your clients' donors and financial supporters, and anyone who paid for or in any way reimbursed the costs of those abortions.

---

[5] Copies of these three letters are attached as **Exhibit B**, **Exhibit C**, **and Exhibit D** to this SAC and are fully incorporated by reference.  The letters sent to undersigned counsel also reference several of counsel's additional clients who are not Plaintiffs in this lawsuit.

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF      7

10.     Immediately upon receipt of these letters through undersigned counsel and in response to Mr. Mitchell's threat that "failure to preserve these documents could subject . . . Plaintiffs to severe penalties," all Plaintiffs altered their normal business operations and processes to ensure compliance with the asserted document retention obligations even though each Plaintiff believes that none of their conduct can support criminal prosecutions or civil liability under SB8 without violating Plaintiffs' constitutional rights.[6]

11.     The opinion in *Dobbs*, and the related threats of enforcement of Texas' anti-abortion laws, caused all of the Plaintiffs, except Buckle Bunnies Fund, to pause all activities assisting access to abortion care, including care provided out of state. The non-profit Plaintiffs stopped providing financial, logistical, or practical support to assist pregnant Texans access abortion within or outside the state.  Dr. Moayedi also ceased providing all abortion care, both in Texas and in other states where it remains legal and in which she is also licensed to practice medicine.  Plaintiffs sought preliminary injunctive relief so that they could resume their desired and constitutional activities of assisting pregnant Texans to access care in states where such care is legal.

12.     In its February 24, 2023 Order, this Court partially granted the requested injunctive relief, enjoining any criminal prosecutions of Plaintiffs by Defendants Garza, Renken, Deski, McAfee, and Weber under the Pre-*Roe* Statutes while this matter proceeds.  ECF 120 at 51-52.  In the same Order, the Court held that H.B. 1280, commonly known as the Texas Trigger Ban "does

---

[6] Because Mr. Mitchell also directed the notice to undersigned counsel and made threats toward counsel as well, undersigned counsel has also altered its own operations and processes in an abundance of caution.

not penalize out-of-state abortions, and as such, does not penalize conduct related to out-of-state abortions." ECF 120 at 29.

13.     The Court's February 24, 2023 Order and partial injunctive relief have allowed some Plaintiffs to resume some of their operations in assisting pregnant Texans to access abortion care in states where such care is legal.  For example, Plaintiffs Lilith Fund, TEA Fund, Frontera Fund, and FTC have begun assisting pregnant Texans with resources for travel and out-of-state abortion care.  Other Plaintiffs who operate in locations across the state where the relevant prosecutorial authority is not currently enjoined have not been able to resume their operations ,and all Plaintiffs are still threatened with civil liability under SB8 by Defendants Ashley Maxwell, Zach Maxwell, Sadie Weldon, Mistie Sharp, and Shannon D. Thomason.

14.     In fact, in response to public announcements from Plaintiff TEA Fund about its ability to resume some of its activities, another of Mr. Mitchell's clients, Mark Lee Dickson, began publicly threatening donors with liability under SB8 through social media posts.  Those posts stated: "Texas Equal Access Fund, you should let potential donors know about the risks.  Any donor to @TEAFund can be sued under the Texas Heartbeat Act (SB8).  There is already litigation underway to reveal @TEAFund's donor list."[7]

15.     Plaintiffs file this SAC to enjoin Defendants and the proposed Defendant Class from enforcing Texas's anti-abortion laws against Plaintiffs for the legal exercise of their constitutional rights.  Plaintiffs also seek a declaratory judgment (1) declaring the Pre-Roe Statutes unconstitutional to the extent applied to funding or practical support for abortion procedures that

---

[7] A copy of Mr. Dickson's social media posts is attached as **Exhibit E** to this SAC and fully incorporated by reference.  As of the date of filing, this Tweet was publicly available at https://twitter.com/MarkLeeDickson/status/1639329724097867776.

occur outside the State of Texas, (2) declaring the Pre-Roe statutes were impliedly repealed, null and void, and/or unenforceable; and (3) declaring SB8 unconstitutional, null and void under the United States Constitution and federal law.

## II.  JURISDICTION AND VENUE

16.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343. This is an action to enforce civil and constitutional rights arising under 42 U.S.C. § 1983 and the U.S. Constitution.

17.  Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201-2202, Rules 57 and 65 of the Federal Rules of Civil Procedure, and the general legal and equitable powers of this Court, including the Court's inherent authority to enforce the supremacy of federal law as against contrary state law.

18.  Venue is appropriate in this district under 28 U.S.C. § 1391(b)(1) and (b)(2) because one or more of the Defendants resides in this judicial district[8] and because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district. Many of the threats made against Plaintiffs originated from locations within the Austin Division of the Western District, and for the Plaintiffs that are headquartered in the Austin Division (see part III below), these threats of enforcement were directed at and experienced by them in the Austin Division of the Western District.

19.  This case was properly assigned to the Austin Division because, in addition to the facts alleged in the preceding paragraph, Defendants Garza, Renken, Deski, McAfee, and Weber all maintain their offices in the Austin Division, and several Plaintiffs, including Fund Texas

---

[8] Defendants Garza, Renken, Deski, McAfee, Weber, Gonzales, and Hicks all maintain their offices within the Western District of Texas.

Choice, Jane's Due Process, and the Lilith Fund for Reproductive Equity maintain their headquarters in the Austin Division, and seek to specifically serve Texans who reside in the Austin Division

### III.   PARTIES

**A.   Plaintiffs**

20.     Plaintiffs are non-profit organizations that provide emotional, financial, logistical, practical, and informational assistance to those who may become pregnant and need or choose to consider abortion as an option, and an individual medical provider.  Plaintiffs support reproductive justice, which recognizes and supports the human right to maintain personal bodily autonomy, have children, not have children, and parent children in safe and sustainable communities.

21.     Reproductive justice is not just about abortion.  Abortion access is critical, but people of color, children, and other marginalized people also often have difficulty accessing contraception, comprehensive sex education, STI prevention and care, alternative birth options, adequate prenatal and pregnancy care, domestic violence assistance, adequate wages to support families, safe homes, and much more.  Plaintiffs are reproductive justice-focused organizations and individuals who have all altered their behavior following the *Dobbs* decision and the associated threats of criminal prosecution by prosecutors and civil enforcement by private actors under Texas law.  They all want to resume their prior activities to the degree legally possible, as permitted by the United States Constitution, and seek intervention from this Court to allow them to do so safely.

**The Fund Plaintiffs**

22.     Plaintiff Fund Texas Choice's ("**FTC**") mission is to help Texans equitably access abortion through safe, confidential, and comprehensive practical support.  FTC is a nonprofit

organization incorporated in Texas, and headquartered in Austin, that historically provided practical, logistical, and emotional support to pregnant Texans seeking medical care, including legal health care within Texas and legal abortions outside of Texas. FTC was founded in response to HB2, a 2013 Texas statute that shuttered over half of the state's abortion clinics, imposing long wait times on patients and forcing them to travel long distances for care. Historically, FTC booked and directly paid for the transportation and lodging of pregnant Texans and of companions for minor clients who sought abortion care outside of the State. FTC does not—and never did—fund abortions directly.[9]

23.     FTC's staff members joined the organization, and donors to FTC have donated to it, because of the impact of the Texas abortion laws before *Dobbs*. Prior to the *Dobbs* decision, FTC staff assisted over a hundred people a month to access abortion care out of state; when this litigation began, FTC assisted none because of the threats of criminal prosecution for doing so. Following the entry of this Court's February 24, 2023 Order, FTC resumed providing practical support for abortions to be performed out-of-state, principally for Texans living in counties with district or county attorneys subject to the Court's preliminary injunction.

24.     The threats of enforcement of the Pre-*Roe* Statutes by other prosecutors and of SB8 by private actors are still felt by FTC as an organization and by FTC's individual staff members and donors. Since the *Dobbs* decision was announced and threats of enforcement of the Pre-*Roe* Statutes began, some of FTC's donors have expressed fear about continuing to donate and some have also stopped donating. FTC officers have also received repeated messages from staff and volunteers that they are afraid to continue their work, or that the uncertainty related to civil and

---

[9] FTC's mission statement is publicly available at https://fundtexaschoice.org/our-vision-mission-values/ and is incorporated by reference.

criminal enforcement is impacting their lives.  Two FTC staff members have left employment at FTC as a result.[10]

25.     Liability under SB8 also continues to threaten FTC, and FTC has had to change its operations and procedures as a result.  FTC is forced to be extremely careful with its speech and self-sensor to avoid attracting frivolous Rule 202 demands or SB8 litigation.  FTC also reasonably fears that any support for out-of-state medication abortion care will be used as a basis for SB8 litigation by Defendant Thomason based on statements in the litigation hold letters that were sent to FTC through its counsel.  *See* Exs. B-C.

26.     FTC has attempted to ensure it may safely resume its operations by directly asking several district attorneys other than those this Court has already enjoined in areas where FTC operates whether they will abide by this Court's injunction. FTC (along with Plaintiff Jane's Due Process) sent letters to District Attorneys in Bexar, Dallas, and Harris Counties. None responded.[11]

27.     The mission of Plaintiff The North Texas Equal Access Fund ("**TEA Fund**") is to foster reproductive justice.[12]  It historically provided financial, emotional, and logistical support for abortion patients in North Texas.  TEA Fund also provides education, information, advocacy and activism on behalf of pregnant Texans in need of abortion care.  After the *Dobbs* decision, TEA Fund paused its funding of abortions as it tried to comply with Texas law.  After the entry of this Court's February 24, 2023 Order, TEA Fund resumed providing funding for abortions

---

[10] FTC knows the identity of these former staff members. To protect them from injuries and threats to their own constitutional rights, FTC will not publicly disclose their identities.

[11] Copies of the letters to District Attorneys Joe Gonzales, John Creuzot, and Kim Ogg are attached hereto as **Exhibit F**. Only one copy of the Court's February 24, 2023 Order granting in part Plaintiffs' motion for preliminary injunction is included in Exhibit F, but each letter was sent with a copy of the Court's order.

[12] TEA Fund's mission statement is publicly available at https://teafund.org/about/ and is incorporated by reference.

performed out-of-state, principally for Texans living in counties with district or county attorneys subject to the Court's preliminary injunction.

28.     The threats of enforcement of the Pre-*Roe* Statutes by other prosecutors and of SB8 by private actors are still felt by TEA Fund as an organization and by TEA Fund's individual staff members, volunteers, and donors. Since the *Dobbs* decision was announced and threats of enforcement of the Pre-*Roe* Statutes and SB8 began, TEA Fund has lost local donors due to fear of criminal and civil liability, and TEA Fund officers have repeatedly heard from scared staff and volunteers. TEA Fund estimates that it has lost donors responsible for tens of thousands of dollars of annual donations. And threats to TEA Fund's donors specifically have been made as recently as March 24, 2023, when Mark Lee Dickson directly threatened those donors with SB8 liability. TEA Fund has also recently heard from large donors who say that they are being advised that no donations to TEA Fund are safe, even after this Court entered its February 24, 2023 Order.[13]

29.     Staff and volunteers who operate TEA Fund's public-facing services, including TEA Fund's PATH group, worry that their legal activities might be construed as violating Texas laws. They self-censor and alter their speech and activities because of those worries and threats of liability. TEA Fund, its employees, and its volunteers scrutinize their every public communication now, and have altered their prior operations significantly as a result.

30.     TEA Fund also reasonably fears that any support for out-of-state medication abortion care will be used as a basis for SB8 litigation by Defendant Thomason based on statements in the litigation hold letters that were sent to TEA Fund through its counsel. *See* Exs. B-C. TEA Fund has also already been directly targeted by Defendant Ashley Maxwell, who filed a Rule 202

---

[13] TEA Fund knows the identity of these donors. To protect them from injuries and threats to their own constitutional rights, TEA Fund will not publicly disclose their identities.

petition seeking to investigate abortions that occurred while this Court's injunction in *U.S. v. Texas* was pending, as discussed more fully below. Defendant Ashley Maxwell has also submitted sworn pleadings and declarations confirming her intention to sue TEA Fund, as described more specifically below.

31.     Plaintiff The Lilith Fund for Reproductive Equity's ("**Lilith Fund**") mission is also to foster reproductive justice.  Lilith Fund historically provided financial and emotional support for people in Central and Southeast Texas seeking abortion care.  Its core values are compassion, intersectionality, anti-racism, client-centeredness, inclusivity and collaboration.  In addition to its historical funding activities, Lilith Fund conducts educational and informational efforts, and provides advocacy and activism in support of reproductive justice principles.  Lilith Fund, too, had paused funding after the *Dobbs* decision, but also recently resumed funding abortions in the specific contexts that this Court's preliminary injunction allow.  Lilith Fund wishes to resume funding services more broadly, and wishes to be safe from frivolous pre-suit discovery and SB8 litigation.  Lilith Fund is a nonprofit organization incorporated in Texas and based in Central and Southeast Texas.[14]  It is headquartered in Austin.

32.     Lilith Fund's staff and volunteers joined the organization because they believe in the cause Lilith Fund was founded to advance.  Lilith Fund's inability to safely and completely resume its mission of providing financial assistance to pregnant Texans who seek legal abortion care means that the organization's and its staff members' and volunteers' constitutional rights are chilled in the same way.  Like other organizations, Lilith Fund must now carefully monitor what it says, and weigh uncertain risks—for instance, about whether providing factual information about

---

[14] Lilith Fund's mission statement is publicly available at https://www.lilithfund.org/we-updated-our-mission-vision-and-values/ and is incorporated by reference.

the availability of out-of-state abortion care is a violation of Texas law or whether it is safer simply to link to resources provided by others outside of the state.

33.     Lilith Fund's staff members have expressed fear and confusion about the state of the law, and without declaratory and injunctive relief that reaches all district and county attorneys in Texas, and declaratory relief against high profile SB8 enforcers, Lilith Fund remains under significant threat and limited in what it can do.  Lilith Fund has also been contacted by numerous supporters, volunteers, donors, and associates since the *Dobbs* decision.  Many of these calls and communications expressed concern or confusion over how individuals associated with Lilith Fund may be impacted if they continued to work with, publicly support, donate to, and associate with Lilith Fund given the potential enforcement of SB8 and the Pre-*Roe* Statutes. At least one Lilith Fund donor has discontinued their donations to the organization since Lilith Fund was forced to pause its abortion funding services in June of 2022.[15]  This donor has not resumed funding, even after the entry of this Court's preliminary injunction due to ongoing fear and threat of criminal prosecution and civil liability.

34.     Liability under SB8 also continues to threaten Lilith Fund, and it has had to change its operations and procedures as a result.  Lilith Fund is forced to be extremely careful in talking about its legal activities speech to avoid it being misconstrued as illegal, attracting additional frivolous Rule 202 demands or SB8 litigation.  Lilith Fund also reasonably fears that any support for out-of-state medication abortion care will be used as a basis for SB8 litigation by Defendant Thomason based on statements in the litigation hold letters that were sent to Lilith Fund through its counsel.  *See* Exs. B-C.

---

[15] Lilith Fund knows the identity of this donor. To protect them from injuries and threats to their own constitutional rights, Lilith Fund will not publicly disclose their identity.

35.     Neesha Davé, a principal of Lilith Fund, was also the target of a petition for Rule 202 discovery filed by Defendant Weldon, which seeks information regarding abortions Lilith Fund allegedly funded while this Court's injunction against the enforcement of SB8 in *United States v. Texas* was in place.  Ms. Weldon has also submitted sworn pleadings and declarations confirming her intention to sue Lilith Fund under SB8, as described more specifically below.

36.     Plaintiff **Frontera Fund's** mission is also to foster reproductive justice.  It historically provided financial, emotional, and logistical support for low-income abortion patients in the Rio Grande Valley.  In addition to its historical funding activities, Frontera Fund conducts educational and informational efforts and provides advocacy and activism in support of reproductive justice principles.  Since the *Dobbs* decision, Frontera Fund has paused its funding of abortions for Texans as it tries to comply with Texas law, but it would like to resume its constitutional activity.  Frontera Fund is a nonprofit organization incorporated in Texas and based in South Texas.[16]

37.     Frontera Fund's staff, volunteers, and donors, are committed to its original mission—it is why they work for and donate to the organization—so Frontera Fund's inability to pursue its mission, and the infringement on its constitutional rights as set forth below, is an infringement on the rights of its staff, volunteers, and donors as well.  Leaders at Frontera Fund themselves are afraid, and that fear is felt by their staff and volunteers, too.  This fear is despite Frontera Fund already having suspended its primary operations, and engaging in significant self-censorship.  Frontera Fund and its staff and volunteers have to carefully consider their public statements on any matters other than pure political advocacy because they fear that even something

---

[16] Frontera Fund's mission statement is publicly available at https://fronterafundrgv.org/about-us/ and is incorporated by reference.

as simple as providing the address of a safe and well-managed abortion clinic in a state where that procedure is legal might be considered a violation of Texas law.

38.    The threats of enforcement of the Pre-*Roe* Statutes by prosecutors that are not subject to this Court's February 24, 2023 Order are acutely felt by Frontera Fund because it primarily serves Texans who do not reside in the jurisdictions covered by the Order.  In order to obtain clarity and safely resume its operations, Frontera Fund therefore contacted each of the District Attorneys in Willacy, Cameron, Hidalgo and Starr counties after this Court's Order was entered and directly inquired whether Frontera Fund could resume its activities without threat of criminal prosecution.[17]  None of the District Attorneys responded to Frontera Fund's inquiry.

39.    Liability under SB8 also continues to threaten Frontera Fund, and it has had to change its operations and procedures as a result.  Frontera Fund is forced to be extremely careful and self-censor its speech about its activities to avoid attracting frivolous Rule 202 demands or SB8 litigation. Frontera Fund also reasonably fears that any support for out-of-state medication abortion care will be used as a basis for SB8 litigation by Defendant Thomason based on statements in the litigation hold letters that were sent to Frontera Fund through its counsel.  *See* Exs. B-C. The threats of enforcement of the Pre-*Roe* Statutes by prosecutors and of SB8 by private actors are still felt by Frontera Fund as an organization and by Frontera Fund's individual staff members, volunteers, and donors.

---

[17] Copies of the letters sent on behalf of Frontera Fund to DAs Toribio Palacios, Luis V. Saenz, Gocha Allen Ramirez and Annette Hinojosa are attached as **Exhibit G** to this SAC and incorporated in full by reference.  Copies of the Court's February 24, 2023 Order granting in part Plaintiffs' motion for preliminary injunction that were sent with each letter are omitted in Exhibit G.

40.     Plaintiff **The Afiya Center** is a nonprofit organization incorporated in Texas and based in Dallas.  Its mission is to serve Black women and girls by transforming their relationship with their sexual and reproductive health by addressing the consequences of reproductive oppression.  Since the *Dobbs* decision, The Afiya Center has also paused its funding of abortions for Texans as it tries to comply with Texas law and because of the threat of potential prosecution and civil liabilities, but it would like to resume conducting its constitutionally protected activities.[18]

41.     The Afiya Center and its staff and volunteers view the funding of abortion services as a critical component of their mission. Staff, volunteers, and donors to The Afiya Center have expressed fear to its leadership, and The Afiya Center has lost some local donors since the *Dobbs* decision was issued.  Leaders at The Afiya Center now spend significant time thinking about and seeking advice regarding the potential risks of presenting truthful information that may help people obtain legal abortions in other states.  The organization itself and its staff and volunteers have also altered their websites, their public channels of communication, and other media in order to try to keep themselves safe in an uncertain enforcement environment.

42.     The threats of enforcement of the Pre-*Roe* Statutes by prosecutors that are not subject to this Court's February 24, 2023 Order are also acutely felt by The Afiya Center because it primarily serves Texans who do not reside in the jurisdictions covered by the Order.  Liability under SB8 also continues to threaten The Afiya Center, and it has had to change its operations and procedures as a result.  The Afiya Center is forced to be extremely careful with its speech to avoid attracting frivolous Rule 202 demands or SB8 litigation. The Afiya Center also reasonably fears that any support for out-of-state medication abortion care will be used as a basis for SB8 litigation

---

[18]     The   Afiya   Center's   mission   statement   is   publicly   available   at https://www.theafiyacenter.org/our-work and is incorporated by reference.

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF     19**

by Defendant Thomason based on statements in the litigation hold letters that were sent to it through its counsel. *See* Exs. B-C.

43.     Plaintiff **West Fund** is a non-profit, grass-roots organization based in El Paso, Texas.  It was founded in November of 2013 after a variety of restrictions on abortion clinics were imposed by the Texas Legislature.  Its mission historically was to provide direct and/or supportive funding to assist pregnant people seeking abortion services in El Paso, Texas; Ciudad Juarez, Chihuahua, Mexico; and throughout southern and eastern New Mexico.  It previously operated a Spanish and English hotline through which it provided information to callers, but it has completely shut down that operation in light of the risks of liability under current Texas law in the wake of *Dobbs*.  West Fund has also collaborated with other Texas reproductive justice organizations to advance advocacy for abortion access and engages in other political activities, with reproductive justice as its central focus.  It also provides comprehensive sexual education programs to high schoolers.[19]

44.     West Fund has previously funded and would like to resume funding reproductive healthcare, legal abortions, and assistance for people who seek abortions.  West Fund also openly communicates with the public regarding abortion, voicing its support for abortion rights, advocating for reproductive freedom and reproductive justice, and seeking the support of others who share the same values. Like other organizations, West Fund, as well as its staff and volunteers, have had to change their normal operations and self-censor since the *Dobbs* decision was issued.

---

[19]   West Fund's mission is publicly available at https://abortionfunds.org/fund/west-fund/#:~:text=We%20believe%20that%20the%20right,money%20to%20pay%20for%20it. and is incorporated by reference.

45.     Without the ability to pursue its mission, West Fund is chilled in the exercise of rights that are constitutionally protected, and its staff and volunteers (who share its mission and associate with the organization to further that mission) are similarly chilled.  West Fund leaders have heard from staff and volunteers who are afraid to continue their work with the organization because of Texas's anti-abortion laws, and because of the uncertainty created about them by the Defendants' threats of enforcement. Donors, too, have expressed fear and some have stopped donating, particularly local donors.[20]  Protecting West Fund's constitutional rights—by providing it with the necessary clarity to adopt a strategy that comports with its mission while clearly complying with Texas law—would also protect the constitutional rights of West Fund's donors, staff, and volunteers.

46.     The threats of enforcement of the Pre-*Roe* Statutes by prosecutors that are not subject to this Court's February 24, 2023 Order are also acutely felt by West Fund because it primarily serves Texans who do not reside in the jurisdictions covered by the Order.  In order to obtain clarity and safely resume its operations, West Fund therefore contacted each of the District Attorneys in El Paso, Hudspeth, Pecos, Lubbock, and Midland counties after this Court's Order was entered and directly inquired whether West Fund could resume its activities without threat of criminal prosecution.[21]  Only the DA of Pecos County, Ori T. White, responded, but he did not answer the question posed.

---

[20] West Fund knows the identity of one or more such donors. To protect them from injuries and threats to their own constitutional rights, West Fund will not publicly disclose their identities.

[21] Copies of the letters sent on behalf of West Fund to DAs Bill D. Hicks (for both Hudspeth and El Paso counties), Ori T. White, Sunshine Stanek, and Laura Nodolf are attached as **Exhibit H** to this SAC and incorporated in full by reference.  Copies of the Court's February 24, 2023 Order granting in part Plaintiffs' motion for preliminary injunction that were sent with each letter are omitted in Exhibit H.

47.     Liability under SB8 also continues to threaten West Fund, and it has had to change its operations and procedures as a result.  West Fund is forced to censor its speech about its activities to avoid attracting frivolous Rule 202 demands or SB8 litigation.  West Fund also reasonably fears that any support for out-of-state medication abortion care will be used as a basis for SB8 litigation by Defendant Thomason based on statements in the litigation hold letters that were sent to West Fund through its counsel.  *See* Exs. B-C.  The threats of enforcement of the Pre-*Roe* Statutes by prosecutors and of SB8 by private actors are still felt by West Fund as an organization and by West Fund's individual staff members, volunteers, and donors.

48.     The mission of Plaintiff Jane's Due Process ("**JDP**") is to help ensure that young people in Texas have full reproductive freedom and autonomy over their healthcare decisions. Most young people involve a parent or guardian in their abortion decision if it is safe for them to do so.  JDP serves those who cannot—young people who have parents or guardians who are deceased, incarcerated, or abusive and are inclined to kick them out upon learning of their pregnancy or plans for an abortion or who would try to coerce them to carry to term.  JDP is a nonprofit organization incorporated in Texas, and its headquarters are located in Austin.  JDP historically provided legal, logistical, financial, and emotional support to pregnant Texans seeking medical care, including legal health care within Texas and legal abortions outside of Texas.  JDP also used to provide funds to abortion providers in Texas on behalf of young patients in the state to subsidize the cost of their care.  Occasionally, JDP also referred young people to abortion providers and secured the abortion appointments for them.  JDP has not conducted any of these activities since the decision in *Dobbs* was issued.  JDP would like to resume its constitutionally protected activities—providing financial, logistical, and informational support to Texans seeking

to access abortion care in states where such care is legal—but is chilled by the threats of potential criminal prosecution and civil penalties pursued by private actors.[22]

49.     JDP lost a board member[23] due to the threat posed by Defendants and by the uncertain state of the Texas law following the *Dobbs* decision, as well as several local donors. Like other organizations, it is staffed by people who believe in reproductive healthcare and reproductive justice, and in particular in making certain that abortion services are available to those who need them.  Because JDP cannot safely pursue that mission, its staff and volunteers cannot either, and curing JDP's inability to do so will also cure theirs.  JDP, its staff, and its volunteers also now self-censor, limiting themselves primarily to legal advocacy and purely educational work, and worry about the risks associated with any efforts—even purely informational efforts—that might help connect people with legal, medically appropriate abortion services in other states.

50.     Plaintiff the Buckle Bunnies Fund ("**Buckle Bunnies**") is a collection of Texas volunteers.  It was founded to provide financial aid to those seeking abortions and to emotionally support those receiving abortion services. Buckle Bunnies has no paid employees; instead, its volunteers work together to assist Texans (and others) in need.  Restraints on Buckle Bunnies's rights are therefore restraints on the rights of these individual volunteers and members who work with and for Buckle Bunnies only for these purposes.

51.     After the *Dobbs* decision, Buckle Bunnies continued to financially support pregnant Texans who sought legal abortion care out-of-state.  Because of that support, Buckle Bunnies was specifically targeted by Defendant Zach Maxwell, who filed a Rule 202 petition

---

[22] JDP's mission statement is publicly available at https://janesdueprocess.org/about/ and is incorporated by reference.

[23] JDP knows the identity of this former board member. To protect them from injuries and threats to their own constitutional rights, JDP will not publicly disclose their identity.

against the founder of Buckle Bunnies, Makayla Montoya-Frazier on September 1, 2022. As described more fully below, Defendant Mr. Maxwell seeks information from Ms. Montoya-Frazier about public statements she allegedly made regarding assisting people seeking abortion services, many of which (even as alleged) would have occurred before SB8 was effective. Buckle Bunnies has also had to censor its own speech about its activities so as not to attract additional frivolous Rule 202 Petitions or SB litigation against it.

52.     The threats of enforcement of the Pre-*Roe* Statutes by prosecutors that are not subject to this Court's February 24, 2023 Order are also acutely felt by Buckle Bunnies because its members and volunteers wish to help Texans across the state, including those who reside in the jurisdictions not covered by the Order, and Buckle Bunnies also wishes to be relieved from the immediate and current threat of liability under SB8 simply for engaging in constitutionally protected activity.

53.     Buckle Bunnies, and its members and volunteers have had to change their operations and procedures as a result of the ongoing threats of criminal prosecution and civil liability. Buckle Bunnies' members and volunteers are forced to be extremely careful with and censor their speech to avoid attracting more frivolous Rule 202 demands or SB8 litigation. Buckle Bunnies also reasonably fears that any support for out-of-state medication abortion care will be used as a basis for SB8 litigation by Defendant Thomason based on statements in the litigation hold letter that was sent to Buckle Bunnies. See Ex. D. The threats of enforcement of the Pre-*Roe* Statutes by prosecutors and of SB8 by private actors are still felt by Buckle Bunnies as an organization and by its individual members and volunteers.

54.     Plaintiffs FTC, TEA Fund, Lilith Fund, Frontera Fund, The Afiya Center, West Fund, JDP, and Buckle Bunnies are collectively referred to as the "**Fund Plaintiffs**."

**CASN**

55.      Plaintiff Clinic Access Support Network ("**CASN**") is a volunteer, consensus-based, non-hierarchical practical support network that historically provided transportation, meal stipends, accommodations, childcare and dependent care assistance, and support and compassionate care to people seeking abortion services in the Greater Houston Area and the Southeast Texas region.  CASN generates no revenue, charges no fees for its services, and exists purely out of the generosity and commitment of its volunteers to be of service to people in need. Restraints on CASN's constitutional rights are, therefore, restraints on the rights of its volunteers, who work for CASN specifically to do the work that CASN until recently did.

56.      CASN has previously provided, and wishes to continue to provide, assistance to people in need of an abortion, including pregnant Texans who need to access care outside of the state.  It cannot safely do so until the threat of criminal prosecution and civil liability for those activities is removed.[24]

57.      Like the other Plaintiff organizations, CASN is directly harmed by the climate of confusion and fear created by the Texas abortion laws and by the threat of enforcement by Defendants in this case.  CASN's volunteers and donors are left to choose between taking a significant risk of catastrophic criminal or civil liability for what they believe to be constitutionally protected giving of money and time, or allowing the law and Defendants' threats to chill the exercise of their rights.

58.      CASN now carefully considers things that it never did before, like where its volunteers are located and how to frame its public communications.  It has also had to change its

---

[24] CASN's mission statement is publicly available at https://www.clinicaccess.org/about-us and incorporated by reference.

historical operations and the organization, its volunteers, and its members, all now engage in significant self-censorship about the organization and its mission in order to avoid frivolous and harassing litigation.  CASN lost several donors, and shrank to its present size, after SB8 became effective; post-*Dobbs*, these donors have not returned and CASN has ceased recruiting volunteers in order to further minimize risk.

59.     CASN also reasonably fears that any support for out-of-state medication abortion care will be used as a basis for SB8 litigation by Defendant Thomason based on statements in the litigation hold letters that were sent to CASN through its counsel.  *See* Exs. B-C.  The threats of enforcement of the Pre-*Roe* Statutes by prosecutors and of SB8 by private actors are still felt by CASN as an organization and by CASN's individual members, volunteers, and donors

**Dr. Moayedi**

60.     Plaintiff Dr. Ghazaleh Moayedi, DO, MPH, FACOG, is a board-certified OB/GYN and complex family planning specialist who resides in Texas.  She holds active licenses from the relevant medical licensing authorities in 20 states, including Texas, and she is authorized to practice medicine in all of those states.  Historically, as part of her practice, Dr. Moayedi provided abortions to Texans within the state in compliance with all applicable laws.  She also provided abortions to patients in other states in which she is licensed in accordance with all applicable laws in those other states.  Dr. Moayedi also wishes to provide abortion care via telemedicine to patients in states where it is legal, from her location in Texas.

61.     The abortions Dr. Moayedi performed in other states historically included patients from Texas, particularly when she provided abortions in states other than Texas after SB8 became effective on September 1, 2021.  Following the decision in *Dobbs*, Dr. Moayedi stopped traveling to other states in which abortions remain legal because she fears that performing any abortion on

a Texas resident as a licensed Texas physician could subject her to criminal prosecution, subject her to civil liability under SB8, and/or threaten her license to practice medicine in Texas.  Dr. Moayedi is also a member of the Board of Directors for Plaintiff TEA Fund, and has historically provided funding to assist Texans to obtain abortions.  She would like to resume all of her constitutionally protected activity, including treating pregnant Texans in other states where the care she historically provided, including all forms of abortion care, are legal.

62.    Dr. Moayedi stands ready to provide abortion services to Texans through Pegasus Justice Health Center ("Pegasus"), an organization she founded and for which she serves as Chief Medical Officer, and that is dedicated to providing gynecological medical services, but Pegasus has not been able to provide such services to Texans, even outside of Texas, for fear of liability under the Pre-*Roe* Statutes and SB8.

63.    The threats of enforcement of the Pre-*Roe* Statutes by prosecutors that are not subject to this Court's February 24, 2023 Order are also acutely felt by Dr. Moayedi because when she provides abortion care to Texans in other states where such care is legal, those Texans may not reside in the jurisdictions covered by the Order.

64.    Liability under SB8 also continues to threaten Dr. Moayedi, and she has had to alter her behavior and the provision of medical care to her patients as a result.  She is also forced to be extremely careful with her speech to avoid attracting frivolous Rule 202 demands or SB8 litigation. And she also reasonably fears that any support for, or provision of, out-of-state medication abortion care to her Texas patients will be used as a basis for SB8 litigation by Defendant Thomason based on statements in the litigation hold letters that were sent to her through her counsel.  *See* Exs. B-C

65.     All Plaintiffs openly communicate with the public regarding abortion, voicing support for abortion rights and reproductive healthcare, advocating for reproductive freedom and reproductive justice, and seeking the support of others who share the same values.

66.     Each of the Fund Plaintiffs and CASN assert claims on behalf of itself, and (to the extent applicable to each) its staff, volunteers, members, and donors.  The Fund Plaintiffs and CASN have suffered a direct injury because (a) they are being required to divert organizational resources to counteract the State of Texas's and the SB Enforcer Defendants' threats of criminal enforcement and civil liability against it and its staff, volunteers, and donors; (b) their donors are chilled from making financial donations—the source of their funding as a nonprofit organization— because of threats of criminal prosecution and civil liability against the donors; (c) each organization's mission is being frustrated; (d) each organization is having to self-censor in order to avoid potential liability or litigation under exceptionally vague laws; and (e) these organizations are all being forced to undertake litigation holds in anticipation of lawsuits to be filed in connection with Defendant Thomason's Rule 202 Petition regarding potential violations of SB8.  Several Plaintiffs—including Lilith Fund, TEA Fund, and Buckle Bunnies—are also already being specifically targeted by pre-suit discovery in Texas state court relating to SB8.  The Fund Plaintiffs and CASN are also suffering the imminent threat of additional direct injury because they are still threatened with criminal prosecution and civil penalties.

67.     The Fund Plaintiff and CASN also have representational or associational standing based on injuries to their staff, volunteers, members, and donors because for each Plaintiff (a) at least one of their staff, at least one of their volunteers, at least one of their members, and at least one of their donors has standing; (b) the interests at stake are germane to the organizations' purposes; and (c) neither the claims nor the relief requested requires participation of the

organizations' individual staff, volunteers, members, or donors.  As set forth below, public threats regarding enforcement show that, in addition to each Fund Plaintiff and CASN themselves, their staff, volunteers, and donors are all likely targets of criminal prosecution and civil liability.

68.    Each of the Plaintiffs that recently resumed funding or practical support for abortion services being provided to Texans in states where abortion is legal did so in response to this Court's February 24, 2023 Order and preliminary injunction.  If the preliminary injunctive relief is retracted or eliminated, then Plaintiffs will have to once again stop their constitutionally protected activities and the injuries that this Court has already ruled are irreparable will again be inflicted on them.

**B.    Named Defendants**

**The Prosecutor Defendants**

69.    Defendant José Garza is an individual sued in his official capacity as the District Attorney of Travis County, Texas.  He has appeared in this case and may be served through his counsel of record.  DA Garza has stipulated that "he is authorized by law to pursue criminal charges under the Pre-*Roe* Statutes…", that if Plaintiffs' factual allegations are proven, then "Plaintiffs are experiencing irreparable injury to their expressive, associational, and other constitutional rights", that Plaintiffs' injuries "would be redressed by an order form this Court defining the constitutionality and scope of the challenged laws", and that he "is a proper Defendant because of his authority to prosecute under the challenged statutes…"  ECF No. 31, ¶¶ 2-5.

70.    Defendant Julie Renken is an individual sued in her official capacity as the District Attorney of Washington County, Texas.  She has appeared in this case and may be served through her counsel of record.

71.     Defendant Susan R. Deski is an individual sued in her official capacity as the County Attorney of Burleson County, Texas.  She has appeared in this case and may be served through her counsel of record.

72.     Defendant Wiley B. "Sonny" McAfee is an individual sued in his official capacity as the District Attorney of Blanco County, Texas; the District Attorney of Burnet County, Texas; the District Attorney of Llano County, Texas; and the District Attorney of San Saba County, Texas. He has appeared in this case and may be served through is counsel of record.

73.     Defendant Fred H. Weber is an individual sued in his official capacity as the District Attorney of Caldwell County, Texas.  He has appeared in this case and may be served through his counsel of record.

74.     Defendants Renkin, Deski, McAfee, and Weber have all stipulated that they are "authorized by law to pursue criminal charges under the Pre-*Roe* Statutes…", that if Plaintiffs' factual allegations are proven, then "Plaintiffs are experiencing irreparable injury to their expressive, associational, and other constitutional rights", that Plaintiffs' injuries "would be redressed by an order form this Court defining the constitutionality and scope of the challenged laws", and that each of them "is a proper Defendant because of [his or her] authority to prosecute under the challenged statutes…".  ECF 32, ¶¶ 2-5.

75.     Defendant Joe Gonzales is an individual sued in his official capacity as the District Attorney of Bexar County, Texas. He may be served at his office, at 101 W. Nueva, Paul Elizondo Tower Fourth Floor, San Antonio, TX 78205.

76.     Defendant Toribio Palacios is an individual sued in his official capacity as the District Attorney of Hidalgo County, Texas. He may be served at his office, at 100 East Cano Street, Edinburg, TX 78539.

77.     Defendant K. Sunshine Stanek is an individual sued in her official capacity as the District Attorney of Lubbock County, Texas. She may be served at her office at 904 Broadway Street, 2nd Floor, Lubbock, TX 79408.

78.     Defendant Gocha Allen Ramirez is an individual sued in his official capacity as the District Attorney of Starr County, Texas. He may be served at his office, at 401 N. Britton Ave., Rio Grande City, TX 78582.

79.     Defendant Bill D. Hicks is an individual sued in his official capacity as the District Attorney of Hudspeth County, Texas and the District Attorney of El Paso County, Texas. He may be served at his office at 500 E. San Antonio Street, #201, El Paso, TX 79901.

80.     Defendant Ori T. White is an individual sued in his official capacity as the District Attorney of Pecos County, Texas. He may be served at his office at 400 S. Nelson Street, Fort Stockton, TX 79735.

81.     Defendant Richard E. Glaser is an individual sued in his official capacity as the District Attorney of Fannin County, Texas. He may be served at his office, at 800 E. 2nd Street, Bonham, TX 75418.

82.     Defendant Ryan Sinclair is an individual sued in his official capacity as the District Attorney of Hood County, Texas. He may be served at his office at 1200 W. Pearl Street, Granbury, TX 76048.

83.     Defendant Jacob Putman is an individual sued in his official capacity as the District Attorney of Smith County, Texas. He may be served at his office, at 100 N. Broadway Ave. #400, Tyler, TX 75702.

84.     Collectively, all of the Defendant District or County Attorneys sued in their official capacities are referred to as the "**Prosecutor Defendants**."

85.    In their official capacities as District or County Attorneys, each Prosecutor Defendant is required to "represent the State in all criminal cases in the district courts of his district." TEX. CODE CRIM. PROC. arts. 2.01. Defendant Deski fulfills this role as County Attorney because Burleson County, Texas does not have a District Attorney. TEX. CODE CRIM. PROC. art. 2.02.  Therefore, each Prosecutor Defendant has the sole authority of the State of Texas within his or her respective districts to file and pursue criminal cases, including any cases charging a violation of the Pre-*Roe* Statutes.

### The SB8 Enforcer Defendants

86.    Defendant Shannon D. Thomason is a citizen of Texas who resides in Howard County, Texas. Plaintiffs are aware of an address in that county at which they believe Mr. Thomason may be personally served.

87.    Defendant Sadie Weldon is a citizen of Texas who resides in Jack County, Texas. Plaintiffs are aware of an address in that county at which they believe Ms. Weldon may be personally served.

88.    Defendant Ashley Maxwell is a citizen of Texas who resides in Hood County, Texas. Plaintiffs are aware of an address in that county at which they believe Ms. Maxwell may be personally served.

89.    Defendant Zach Maxwell is a citizen of Texas who resides in Hood County, Texas. Plaintiffs are aware of an address in that county at which they believe Mr. Maxwell may be personally served.

90.    Defendant Mistie Sharp is a citizen of Texas who resides in Henderson County, Texas. Plaintiffs are aware of an address in that county at which they believe Ms. Sharp may be personally served.

91.     Defendants Thomason, Weldon, Ms. Maxell, Mr. Maxwell, and Sharp are referred to collectively as the "**SB8 Enforcer Defendants**."

92.     All of the SB8 Enforcer Defendants have been and/or are represented by Jonathan F. Mitchell in other litigation related to Texas's abortion laws.

93.     All of the SB8 Enforcer Defendants are acting under color of state law because the Texas Legislature deputized them as enforcers of SB8.  The Texas Supreme Court has explicitly held that the only people empowered by the State to enforce SB8 are private actors like the SB8 Enforcer Defendants.  *See Whole Woman's Health v. Jackson*, 642 S.W.3d 569, 583 (Tex. 2022). Because the Texas Legislature purposefully delegated all of the State's enforcement power for SB8—which would normally reside in the Texas Executive Branch—private actors who seek to enforce SB8 do so under color of state law.

94.     Moreover, Plaintiffs' declaratory judgment claims are appropriate against the SB8 Enforcer Defendants even if they were not operating under color of state law, since the threat of civil SB8 litigation they pose coerces Plaintiffs to comply, and forces Plaintiffs to choose between litigation and abandoning their rights.

## IV.     FACTUAL ALLEGATIONS

### A.     Relevant Texas Laws

#### TEXAS'S PRE-*ROE* CRIMINAL ABORTION BAN

95.     Prior to the Supreme Court's opinion in *Roe v. Wade*, 410 U.S. 113 (1973), the Texas Penal Code contained Articles 1191, 1192, 1193, 1194, and 1196[25] (collectively "Pre-*Roe* Statutes"), under which abortion was criminalized.

---

[25] Now codified at Tex. Rev. Stats. Ann. arts. 4512.1, 4512.2, 4512.3, 4512.4, and 4512.6 respectively.

96.     Art. 1191 of the Texas Penal Code stated:

> If any person shall designedly administer to a pregnant woman or
> knowingly procure to be administered with her consent any drug or
> medicine, or shall use towards her any violence or means whatever
> externally or internally applied, and thereby procure an abortion, he
> shall be confined in the penitentiary not less than two nor more than
> five years; if it be done without her consent, the punishment shall be
> doubled. By 'abortion' is meant that the life of the fetus or embryo
> shall be destroyed in the woman's womb or that a premature birth
> thereof be caused.

97.     Art. 1192 stated, "Whoever furnished the means for procuring an abortion knowing

the purpose intended is guilty as an accomplice."  This accomplice liability is punishable by two

to five years in a state penitentiary.  TEX. PEN. CODE ART. 1192 (West 1961).

98.     Texas courts interpreted "furnish[ing] the means for procuring an abortion" to apply

to providing drugs, medicine, or instruments that could produce an abortion, or committing

violence upon the pregnant person to bring about an abortion.  *See Fondren v. State*, 169 S.W. 411,

414-16 (1914).

99.     In *Roe v. Wade*, 410 U.S. 113, 164 (1973), the U.S. Supreme Court affirmed a

declaratory judgment that the Pre-*Roe* Statutes were unconstitutional.  It held that no further relief

was necessary because the Court "assume[ed] the Texas prosecutorial authorities will give full

credence to this decision that the present criminal abortion statutes of that State are

unconstitutional."  *Roe*, 410 U.S. at 166.

100.     Despite the *Roe* holding, which remained binding law until at least June 24, 2022,

in the Spring of 2021, the Texas Legislature included a legislative finding in Section 2 of Senate

Bill 8, 87th Leg., Reg. Sess., popularly called the "Texas Heartbeat Act" ("SB 8") that Texas "never

repealed, either expressly or by implication, the state statutes enacted before the ruling in *Roe v. Wade*, 410 U.S. 113 (1973), that prohibit and criminalize abortion unless the mother's life is in danger." S.B. 8 § 2 (Tex. 2021).

101.    Before and after the *Dobbs* opinion, Texas state actors, including AG Paxton, asserted that overruling *Roe* would immediately resurrect the Pre-*Roe* Statutes. These Texas state actors, including AG Paxton, also suggested that the Pre-*Roe* Statutes criminalize entities that provide funding for abortion care or related travel, regardless of whether abortions take place in a jurisdiction outside of Texas in which abortion is legal. Some state actors and the SB8 Enforcer Defendants have gone so far as to contend that the Pre-*Roe* Statutes should be enforced retroactively (that is, for abortions that occurred during the time that *Roe* was the law of the land), based on the theory that courts do not have the power to invalidate laws. Their tortured theory of constitutional law and federalism asserts that the Pre-*Roe* Statutes were always in effect, but just lacked DAs with the executive will to enforce them. Thus, they contend that those who supported pregnant Texans in obtaining abortions over the past 50 years – like the Plaintiffs – can be (1) criminally prosecuted as long as the statute of limitations has not expired under the Pre-*Roe* Statutes and (2) sued by any person under SB8.

## TEXAS SENATE BILL 8

102.    SB8, which went into effect on September 1, 2021, authorizes private citizens to bring a civil action in strict liability tort against any person who performs or "aids or abets" certain abortions in Texas.[26]

---

[26] SB8 has been declared to be unconstitutional under both the Texas Constitution and the Fourteenth Amendment to the U.S. Constitution by a Texas MDL Court. The Defendants in the MDL have taken an interlocutory appeal, which is pending before the Third Court of Appeals in

103.    The civil liability provisions of SB8, which are contained in Section 171.208 of the Texas Health & Safety Code, provide that a suit may be brought against a person who "performs or induces an abortion in violation of this subchapter" or any person who "knowingly engages in conduct that aids or abets the performance or inducement of an abortion…if the abortion is performed or induced in violation of this subchapter…"  TEX. HEALTH & SAFETY CODE ANN. § 171.208(a)(1), (2).

104.    Section 171.201 provides the definitions that apply to certain terms within Subchapter H of Chapter 171 of the Texas Health & Safety Code (the subchapter created by SB8). It defines "physician" as "an individual licensed to practice medicine in this state…" TEX. HEALTH & SAFETY CODE ANN. § 171.201(4).  Thus, when Section 171.204 prohibits "a physician" from knowingly performing or inducing an abortion unless the test is done and no heartbeat is found, that prohibition applies only to "individual[s] licensed to practice medicine in this state[.]"  *Id.*

105.    SB8's civil liability provisions provide a means for private persons—the statute provides no limit on who has standing, not even Texas (or United States) citizenship—to sue Texas physicians for performing post-cardiac activity abortions, or to sue any person who may have "aid[ed] or abet[ted]" such an abortion.

106.    SB8 eliminates several defenses, many of which would be available to all defendants other than SB8 defendants.  TEX. HEALTH & SAFETY CODE ANN. § 171.208(e).

107.    SB8 prescribes a minimum $10,000 statutory penalty per abortion but no maximum, provides no guidance on calculating a maximum penalty, and also mandatorily requires

---

Austin.  Another state court judge, however, has held that SB8 is constitutional.  That decision is also on appeal, pending before the Second Court of Appeals in Fort Worth.

the imposition of an injunction by a court in the event of a finding that SB8 has been violated. TEX. HEALTH & SAFETY CODE ANN. § 171.208(b).

108.    SB8 purports to limit the effect of the judgments of other courts, including federal courts, by denying the defenses of nonmutual preclusion, or in connection with the unique joint and several liability attorneys' fees claim described below, denying the defense even of claim preclusion (also known as res judicata). *See* TEX. HEALTH & SAFETY CODE ANN. § 171.208(e) and TEX. CIV. PRAC. & REM. CODE ANN. 30.022(d)(3).

109.    SB8 mandates fee shifting against any non-prevailing SB8 defendant and prohibits any fee shifting against the SB8 Plaintiff under the Texas Rules of Civil Procedure, including in the event of a state court dismissal under Texas Rule of Civil Procedure 91a (which involves dismissal of a baseless cause of action). *See* TEX. HEALTH & SAFETY CODE ANN. §§ 171.208(b)(3), 171.208(i).

110.    SB8 permits an SB8 plaintiff to bring the case in his or her own county of domicile (if in Texas), regardless of whether that county has any connection to the events alleged or the relevant witnesses, and prohibits any motion to transfer venue. *See* TEX. HEALTH & SAFETY CODE ANN. § 171.210.

111.    SB8 appears, by its terms, to give standing to anyone—not merely those directly and personally injured by an abortion. *See* TEX. HEALTH & SAFETY CODE ANN. § 171.208(a) ("any person"). Coupled with the elimination of nonmutual preclusion, this permits an unlimited number of suits against one party for the same alleged abortion with a different plaintiff every time, since there are an unlimited number of people with standing, and no prior negative result is binding on any new plaintiff. Given the restriction on shifting attorney fees and the venue provisions described

above, SB8 appears almost tailor-made to generate politically motivated, harassing, unending litigation even against an SB8 defendant with a strong case.[27]

112.    SB8 also includes a unique joint and several liability provision, codified as Section 30.022 of the Texas Civil Practice & Remedies Code, that penalizes any party and its lawyers who affirmatively challenge or seek to enjoin enforcement of any Texas law that regulates or prohibits abortion. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 30.022.

113.    SB8 was purposely drafted to avoid prospective judicial review by the federal courts, which it has so far succeeded in doing.[28]  One of the bill's authors, Mr. Mitchell, was quoted as saying:

> 'We didn't want bounty hunters filing lawsuits under SB 8,' Mitchell said in an email. 'A bounty-hunter lawsuit would have provided an opportunity for a court to declare the statute unconstitutional.'

> 'The entire point of SB 8,' he added, 'was to prevent the judiciary from ruling on the constitutionality of the statute.' In other words, the loophole isn't effective because it leads to lawsuits but because it creates the threat of them. 'No one wanted to take the risk.'…

> 'The Supreme Court is subject to checks and balances, just like the other institutions of our government,' he said in an email. 'There is nothing wrong with a state enacting a law to evade judicial review.'[29]

**B.    The U.S. Constitution Guarantees and Protects Plaintiffs' Right to Travel Freely Among and Across State Borders.**

---

[27] It is not hypothetical that SB8 would be used by people who have not been injured; so far, people who have no connection to the alleged abortions at issue are the only people using it in any capacity.  For example, the SB8 Enforcer Defendants have not, in any of the 202 Petitions they have filed, suggested that any of the alleged or possible abortions they seek to investigate have harmed them in any way.

[28] *See* Paulsen, Stephen, *The Legal Loophole that Helped End Abortion Rights,* July 30, 2022, *accessible at* https://www.courthousenews.com/the-legal-loophole-that-helped-end-abortion-rights, attached as **Exhibit I**.

[29] *See id.*

114.     The right to travel is a fundamental constitutional right of all citizens of the United States.  As the Supreme Court stated in *Saenz v. Roe*, 526 U.S. 489, 500 (1999):

> The "right to travel" discussed in our cases embraces at least three different components.  It protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State.

115.     Article IV, § 2 of the United States Constitution provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

116.     The Fourteenth Amendment guarantees that:

> [a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

U.S. CONST. AMEND. XIV.

117.     The Constitution also provides that "Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several States . . . ." U.S. CONST. ART. I, § 8, CL. 3.  The positive grant of authority to Congress necessarily implies that states may not regulate commerce "among the several States."

118.     Recognition of the right to travel dates back to the earliest period of self-government in the United States, under the Articles of Confederation, Article IV, which guaranteed the right of "free ingress and regress to and from" neighboring States.

119.    The right to travel guarantees a citizen's ability to journey into other states and return to the citizen's state of residence.

120.    The right to travel also includes a newly-arrived or traveling citizen's right to be treated equally to the destination state's residents and to receive the same services without discrimination or classification.

121.    Thus, under the United States Constitution, no state can enforce its laws to prevent citizens from traveling to or from another state without violating: (a) the Commerce Clause; (b) the Privileges and Immunities clauses of Article IV; (c) the Privileges or Immunities Clause of the Fourteenth Amendment; (d) the Due Process clauses of the Fifth and Fourteenth Amendments; and (e) the First Amendment.  A state may not enforce its own criminal laws to prohibit conduct that occurs in another state, where the conduct is legal, nor may it prohibit material or financial support for conduct that is legal in another state.  Moreover, as a matter of Texas law, application of the Pre-*Roe* Statutes to Texans' travel out-of-state, or of Plaintiffs' support for that travel, is barred by Texas's own expression of the limits of its criminal jurisdiction.

**C.    The U.S. Constitution Protects Plaintiffs' Rights to Freely Associate, Speak, and Fund Others' Travel Across State Borders.**

122.    Plaintiffs and their staff, volunteers, and donors have First Amendment rights to associate freely with each other and with pregnant Texans and to engage in expressive conduct, including providing funding or practical support for pregnant Texans traveling to access out-of-state services that are legal where rendered, including abortion.

123.    Pregnant Texans, including those who seek Plaintiffs' assistance, have constitutional rights to travel to states where full reproductive care—including abortions—is legal.

124. Plaintiffs' use of funds in furtherance of their missions is considered speech and is protected by the First Amendment.

125. Charitable donations are a protected form of freedom of speech and association under the First Amendment. Organizations and their donors have a strong privacy interest in their affiliation—including the funding relationship—that is grounded in the First Amendment.

126. A law that subjects donors or volunteers to prosecution or civil liability on the basis of their exercise of First Amendment rights (such as donating funds and/or time to a charitable organization) violates the First Amendment, even if the organization itself were accused of illegal activity. *Elfbrandt v. Russell*, 384 U.S. 11, 17 (1966). Both the Pre-*Roe* Statutes and SB8 create exactly such a threat, as described in Sections III.A. and IV.E.

**D.    The U.S. Constitution Protects Plaintiffs' Rights to Due Process and Equal Protection.**

127. "[T]he Due Process Clause of the Fourteenth Amendment was intended to prevent government 'from abusing [its] power, or employing it as an instrument of oppression.'" *Collins v. City of Harker Heights, Tex*., 503 U.S. 115, 126 (1992) (citation omitted). Among other things, due process protects the fundamental right of meaningful access to the courts, including the right to select and confer with counsel.

128. SB8 violates due process in several ways. First, the law denies SB8 defendants or SB8 challengers meaningful access to the courts by imposing obstacles and hardships unique to them. As noted above, these include unfavorable fee shifting, allowing a plaintiff to fix venue where he lives regardless of connection to the case and prohibiting any venue change, and the elimination of defenses.

129. Second, SB8 violates due process because it is void for vagueness both in its scope and in its effect. It is void in scope because the term "aid or abet" is not defined in the statute and

cannot be defined with reference to the criminal law since aiding and abetting are not part of Texas criminal law, nor are they considered a part of the common law of torts.  Moreover, SB8 specifically provides that it is not necessary for an abettor to know that the abortion they intend to assist would violate SB8—indeed, they may fully believe that it will not and still be held liable. SB8 is also vague in its effects, because it provides a minimum statutory damages penalty but no maximum, and provides no guidance or information to the court (or to litigants) about how that award should be determined.  Unlike common law damages, which may be unlimited, SB8 damages are not compensatory and thus are not limited by the scope of the actual injury that can be proved. Since SB8 plaintiffs are not actually injured, SB8's punitive statutory damages provision is necessarily and by definition constitutionally excessive as well.

130.    Further, and as explained more fully in Counts III and VI *infra*, enforcement of SB8 violates Plaintiffs' due process rights by potentially subjecting them to retroactive liability and preventing them from relying on the decisions of courts. For instance, the SB8 Enforcer Defendants' Rule 202 Petitions all seek to investigate abortions that occurred before *Dobbs* was decided, when *Roe v. Wade* was still the law of the land. Two of them relate to alleged abortions performed while this Court's injunction in *United States v. Texas* was in effect.  Finally, provisions of SB8 purport to prevent parties from relying on the preclusive effects of court judgments—even those of federal courts—and it is not within the power of the Texas Legislature to define the preclusive effect of a federal judgment.

131.    "[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  Therefore, it directs

"that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

132.    A challenged classification is subject to strict scrutiny if it burdens a fundamental right, "that is explicitly or implicitly protected by the Constitution." *Richard v. Hinson*, 70 F.3d 415, 417 (5th Cir. 1995); *see Zablocki v. Redhail*, 434 U.S. 374, 388 (1978).  As discussed above SB8's enforcement provisions burden fundamental Due Process and First Amendment rights. Thus, strict scrutiny applies, and the state must have a compelling interest and demonstrate that the statutory classification "fit[s] the compelling goal so closely that there is little or no possibility that the motive for the classification was illegitimate." *Grutter v. Bollinger*, 539 U.S. 306, 333 (2003) (internal quotation marks omitted). But even under rational-basis review, a law that is plainly "drawn for the purpose of disadvantaging" a disfavored class is unconstitutional. *Romer v. Evans*, 517 U.S. 620, 633 (1996).

133.    SB8 separates for special disadvantages *only* the class of defendants sued under its terms, including by: (1) permitting the plaintiff to choose his home venue and prohibiting any venue change regardless of other law; (2) imposing onerous one-way fee shifting under two different provisions, one of which punishes affirmative requests for declaratory or injunctive relief with joint and several attorney fee liability that includes the SB8 challenger's attorneys; (3) eliminating available defenses; (4) mandating a minimum statutory damages amount but not including any maximum damages amount; and (5) eliminating any mechanism to limit seriatim re-trial for exactly the same conduct if a first SB8 plaintiff is unsuccessful by eliminating any defense of nonmutual preclusion. The joint and several attorney fees provision, for instance, instantly creates a conflict of interest between an SB8 defendant and their attorney, since if the SB8 defendant wishes to seek to file a declaratory judgment counterclaim challenging the

constitutionality of SB8, their attorney has a strong incentive not to do that (even if the claim would be meritorious) because doing so would impose joint and several liability risk on the attorney himself.

134.    These disadvantages, sanctions, and penalties are imposed only on a subset of Texas's citizens who hold particular political views (namely that abortion should be legally protected and accessible) and well before any liability for wrongdoing is actually determined.

**E.    Injury and Irreparable Harm to Plaintiffs**

135.    While AG Paxton is no longer in this lawsuit, in his role as chief law enforcement officer of the State of Texas, his expressions of opinion with respect to the Pre-*Roe* Statutes and SB8 increase the likelihood and threat that the Pre-*Roe* Statutes will be enforced by a non-enjoined District or County Attorney and that SB8 claims will be pursued by the SB8 Enforcer Defendants.

136.    AG Paxton has publicly stated that Texas's criminal abortion laws, including the Pre-*Roe* Statutes are enforceable, even in situations where abortion care occurs outside of the State of Texas. On June 24, 2022, only hours after the *Dobbs* opinion was announced, AG Paxton issued an advisory asserting that the Pre-*Roe* Statutes could be enforced by DAs and County Attorneys immediately:

> … some prosecutors may choose to immediately pursue criminal prosecutions based on violations of Texas abortion prohibitions predating *Roe* that were never repealed by the Texas Legislature.[FN omitted]. … Under these pre-Roe statutes, abortion providers could be criminally liable for providing abortions starting today.[30]

---

[30] Ken Paxton, *Advisory on Texas Law Upon Reversal of* Roe v. Wade (June 24, 2022), https://www.texasattorneygeneral.gov/sites/default/files/images/executive-management/Post-Roe%20Advisory.pdf., attached as **Exhibit J**.

137.    After release of Paxton's Advisory, the Pre-*Roe* Statutes were added back into Vernon's Texas Civil Statutes, and available on the Texas Legislature's website, which also notes that they were "held to have been impliedly repealed in *McCorvey v. Hill*, 385 F.3d 846 (5th Cir. 2004)."[31]

138.    That same day, AG Paxton issued a press release celebrating the *Dobbs* decision, including a link to his Advisory, and stating, ""[A]bortion is illegal here. I look forward to defending the pro-life laws of Texas and the lives of all unborn children moving forward."[32] Also on that same day, in an interview with Leland Vittert, AG Paxton stated that he believed Texas's criminal abortion laws reach organizations that offer abortion travel assistance for employees.[33]

139.    On June 28, 2022, AG Paxton confirmed the conclusions in his June 24 Advisory via tweet: "[b]ut w/ SCOTUS's Dobbs decision, these laws are 100% in effect & constitutional."[34]

140.    On June 30, 2022, AG Paxton issued a press release regarding the emergency motion he filed with the Texas Supreme Court asserting that the Pre-*Roe* Statutes were fully enforceable and arguing that no pre-enforcement challenge in Texas state court is available.[35]

---

[31] VERNON'S TEX. CIV. STATS. Ch. 6-1/2 (June 24, 2022), available at https://statutes.capitol .texas.gov/Docs/SDocs/VERNON'SCIVILSTATUTES.pdf.

[32] Ken Paxton*, AG Paxton Celebrate End of Roe v. Wade; Announces Abortion Now Illegal in Texas* (June 24, 2022), https://www.texasattorneygeneral.gov/news/releases/ag-paxton-celebrates-end-roe-v-wade-announces-abortion-now-illegal-texas, attached as **Exhibit K**.

[33] NewsNation, "Some Red State Prosecutors Won't Enforce Ban", On Balance with Leland Vittert, (June 24, 2022), *available at* https://www.youtube.com/watch?v=HcauVyRw4tQ (last visited Oct. 9, 2022).

[34] This Tweet was still viewable as of the time of this filing on Attorney General Ken Paxton's Twitter timeline at https://twitter.com/KenPaxtonTX/status/1541877550653313024, attached as **Exhibit L**.

[35] Ken Paxton*, AG Paxton Files Emergency Motion with Texas Supreme Court in Support of Pre-Roe Statutes Barring Abortions* (June 30, 2022), https://www.texasattorneygeneral.gov/news/releases/ag-paxton-files-emergency-motion-texas-supreme-court-support-pre-roe-statutes-barring-abortions, attached as **Exhibit M**.

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF    45

Following the Texas Supreme Court's decision granting in part AG Paxton's emergency motion for temporary relief, he tweeted "Our state's pre-Roe statutes banning abortion in Texas are 100% good law."[36]

141.    On July 1, 2022, AG Paxton tweeted, "Texas's pre-Roe statutes criminalizing abortion is [sic] 100% good law, and I'll ensure they're enforceable."[37]

142.    On July 7, 2022, the Texas Freedom Caucus sent its letter to Sidley Austin, on which AG Paxton was copied.[38]  Among other things, the letter was written to inform Sidley Austin "of the consequences" the firm would face for "reimburs[ing] the travel costs of employees who leave Texas" to obtain abortion care, including felony criminal liability under the Pre-*Roe* Statutes for "furnishing the means for procuring an abortion knowing the purpose intended[.]" The letter was widely publicized when the Texas Freedom Caucus posted it to various social media platforms and each of the Plaintiffs in this case saw it.[39]

143.    On July 27, 2022, immediately after the judgment and mandate in *Dobbs* issued, AG Paxton put out another Advisory from his office, reiterating his prior statements in his June 24 alert.[40]

---

[36] This Tweet was still viewable as of the time of this filing on Attorney General Ken Paxton's Twitter timeline at https://twitter.com/KenPaxtonTX/status/1543193949808066560, attached as **Exhibit N**.

[37] This Tweet was still viewable as of the time of this filing on Attorney General Ken Paxton's Twitter timeline at https://twitter.com/KenPaxtonTX/status/1542792157299367936, attached as **Exhibit O**; *see also* Petition for Writ of Mandamus, *In re* Ken Paxton, No. 22-0527, (TX. June 29, 2022), attached as **Exhibit P**; Reply in support of Petition for Writ of Mandamus, *In re Paxton*, No. 22-0527, (TX. July 11, 2022), attached as **Exhibit Q**.

[38] *See generally* Ex. A.

[39] This Tweet was still viewable as of the time of this filing on Texas Freedom Caucus's Twitter timeline at https://twitter.com/txfreedomcaucus/status/1545118985959575554, attached as **Exhibit R**.

[40] Ken Paxton, *Updated Advisory on Texas Law Upon Reversal of Roe v. Wade* (July 27, 2022), available at https://texasattorneygeneral.gov/sites/default/files/images/executive-

144.     As recently as September 19, 2022, in this litigation, AG Paxton took the position

that the challenged Texas laws apply to activities that help pregnant Texans procure out-of-state

abortions: "Rather, criminalization is a means to an end—the protection of human life, including

the life of the unborn. That interest continues **whether the Texas mother seeks an abortion in**

**Denver or Dallas, in Las Cruces or Lamesa**. When that procurement takes the form of a bus

ticket for the pregnant Texan to an abortion clinic, or the paying from Texas of the cost of a

pregnant Texan's hotel room adjacent to that clinic, **it does not matter if the travel and hotel are**

**in Albuquerque or Austin –the procurement in Texas of the means of an abortion has**

**intruded upon the State's interest in the protection of human life**."  (ECF 33 at 24) (emphasis

added).

145.     Thus, the chief legal officer of the State of Texas has taken the public position that

District and County Attorneys have the authority and power to pursue criminal charges under the

Pre-*Roe* Statutes against people and organizations like Plaintiffs for the conduct Plaintiffs seek to

engage in.

146.     None of the Named DA Defendants has disavowed their ability to pursue such

charges.

147.     DAs Garza, Deski, Renken, McAfee, and Weber have admitted that they are

authorized to enforce the Pre-*Roe* Statutes, admitted they would be proper defendants to a

challenge to the Pre-*Roe* Statutes, and admitted that final judgment and injunctive relief in

Plaintiffs' favor will redress their admittedly irreparable injuries. ECF 31, ¶¶ 2-5; ECF 32, ¶¶ 2-5.

---

management/Updated%20Post-
Roe%20Advisory%20Upon%20Issuance%20of%20Dobbs%20Judgment%20(07.27.2022).pdf,
attached as **Exhibit S**.

Although they all agreed to be bound by any judgment of this Court, none of them has disavowed their power to pursue criminal charges under the Pre-*Roe* Statutes in the absence of a judgment from this Court. This means that if this case were to terminate without final judgment, these DAs would be free to prosecute actions under the Pre-*Roe* Statutes.

148.    Shortly after this Court entered its February 24, 2023 Order, Defendants Gonzales, Palacios, Ramirez, Stanek, White, and Hicks (among other district attorneys) were all informed of the Order and asked directly by certain Plaintiffs who operate within their jurisdictions whether they could safely resume their operations without being prosecuted under the Pre-*Roe* Statutes.[41] None of them confirmed that Plaintiffs could resume their operations without facing potential prosecution under the Pre-*Roe* Statutes.[42]

149.    DAs Glaser, Sinclair, and Putman have made public statements that indicate they are likely to enforce the Pre-*Roe* Statutes. Defendant Glaser said he will enforce Texas abortion restrictions, while Defendant Putman said "People want certain things to be a crime and it is our job to see that out, but not just to ignore crimes altogether."[43] Defendant Sinclair posted an article

---

[41] The Frontera Fund sent letters to DAs Hinojosa, Ramirez, Saenz, and Palacios; West Fund sent letters to DAs Nodolf, Stanek, White, and Hicks; and Plaintiffs FTC and JDP sent letters to DAs Creuzot and Ogg. *See* Exs. F, G, H.

[42] Not a single District Attorney actually answered this question. Only Defendant White, responded at all. He did so by an email that stated,"We do not have any abortion clinics in our district. If we ever do of course we will comply [with] the law and caselaw."

[43] *See also*, *e.g.*, J. David Goodman and Jack Healy, *In States Banning Abortion, a Growing Rift Over Enforcement*, The New York Times (nytimes.com), June 29, 2022, available at https://www.nytimes.com/2022/06/29/us/abortion-enforcement-prosecutors.html; Lauren Rangel, *Some Texoma District Attorneys Say they will Prosecute Abortion Cases*, KXII (kxii.com), June 30, 2022, available at https://www.kxii.com/2022/06/30/some-texoma-district-attorneys-say-they-will-prosecute-abortion-cases/; Oscar Saravia, *Smith County District Attorney will Prosecute Abortion-related Crimes Like any Other Case*, Tyler Morning Telegraph (tylerpaper.com), July 2, 2022, https://tylerpaper.com/news/smith-county-district-attorney-will-prosecute-abortion-related-crimes-like-any-other-case/article_6990012c-f71b-11ec-9ea4-a30dfafdd919.html.

about the *Dobbs* decision to social media immediately after it was handed down and opined that it was "good news."

150.    Members of the Texas Legislature, whose intentions prosecutors are likely to look to in determining the scope of the Pre-*Roe* statutes, have also confirmed their intention that the Pre-*Roe* Statutes apply beyond the borders of Texas.  The July 7, 2022 letter from the Texas Freedom Caucus to Sidley Austin discussed above is just one example.  Prior to the issuance of the *Dobbs* opinion, Texas Representative Briscoe Rowell Cain III ("**Cain**") also asserted in cease-and-desist letters to Texas abortion funds (including Fund Plaintiffs) that Texas abortion funds, their donors, employees, and volunteers are subject to prosecution under the Pre-*Roe* Statutes. Specifically, in a letter to Plaintiff Lilith Fund, Representative Cain stated that the Pre-*Roe* Statutes "continue[] to exist as the law of Texas," that Lilith Fund was "committing criminal acts," and that these alleged criminal acts exposed everyone involved in Lilith Fund, "including your employees, volunteers, and donors" to criminal prosecution and imprisonment.[44]

151.    Post-*Dobbs*, Representative Cain continued to assert that abortion funds and their donors will be prosecuted for murder. On June 28, Cain tweeted, in part, "[a]nyone performing or aiding an abortion in TX (including abortion funds & donors) could face murder charges."[45] On June 29, Cain retweeted a Texas Tribune tweet, adding "…they're already facing jail time for their criminal acts. #ProsecuteTexasAbortionFunds."[46] The same day, Representative Cain retweeted a tweet about donating to abortion funds with an image of the Pre-*Roe* Statutes recodified and wrote

---

[44] The Cain letter is attached as **Exhibit T**.

[45] This Tweet was still viewable at the time of this filing at Briscoe Cain's Twitter timeline at https://twitter.com/BriscoeCain/status/1541977303219150848 and is attached as **Exhibit U**.

[46] This Tweet was still viewable at the time of this filing at Briscoe Cain's Twitter timeline at https://twitter.com/BriscoeCain/status/1542290615488204800 and is attached as **Exhibit V**.

"[d]onating to a Texas abortion is a crime, punishable by 2-5 years imprisonment. *See* article 4512.2, revised civil statutes. #ProsecuteTexasAbortionFunds."[47]   Representative Cain also asserted that there is no right to pay for another person to travel to another state. On June 24, he tweeted a link to a Fortune Magazine article, noting "[h]ere's @FortuneMagazine confusing the right to interstate travel with the nonexistent right to pay for another person to travel to another state."[48]

152.    Based on these and other public statements, Plaintiffs reasonably fear that any assistance provided to a pregnant Texan who obtains an abortion that violates the terms of the Pre-*Roe* Statutes, even if the abortion occurs outside of the State of Texas, will subject them to criminal prosecution and/or civil liability.  The public statements quoted and discussed above also confirm that multiple state actors in Texas believe that providing assistance to a Texan who elects to have a medication abortion in another state violates Texas criminal law, if any part of the medication regimen is ingested in Texas.

153.    Other public statements have created confusion and fear about whether direct funding of surgical abortion procedures in other states would subject Plaintiffs to criminal prosecution.  And the language of the Pre-*Roe* Statues applies directly to Dr. Moayedi as a licensed

---

[47] This Tweet was still viewable at the time of this filing at Briscoe Cain's Twitter timeline at https://twitter.com/BriscoeCain/status/1542232983142367240 and is attached as **Exhibit W**.

[48] This Tweet was still viewable at the time of this filing at Briscoe Cain's Twitter timeline at https://twitter.com/BriscoeCain/status/1540528410514046980 and is attached as **Exhibit X**.  The partially obscured Fortune Magazine link in the Tweet is https://fortune.com/2022/06/24/justice-brett-kavanaugh-interstate-travel-abortions-constitutional-roe-v-wade-overturned/amp/.  In other litigation pending before this Court, Cain and his co-defendants in that matter also asserted that the Pre-*Roe* Furnishing Statute is still operable that "there is no constitutional obstacle to enforcing article 4512.2 against abortion funds and their donors…" [*Wendy Davis, et al. v. Mistie Sharp, et al.*, Case No. 1:22-cv-00373-RP pending in the Western District of Texas (hereafter "Davis litigation") Dkt. 39 pp. 8-9].

medical provider in the State of Texas.  What is now unclear given the confusion created by AG Paxton and other state officials is whether Dr. Moayedi may treat pregnant Texans in another state and provide elective surgical or medication abortions to those patients in conformity with that state's laws without being prosecuted under the Pre-*Roe* Statutes in Texas for those actions. Likewise, it is unclear if she may provide legal telemedicine abortion care services to patients in other states from her location in Texas.

154.    Plaintiffs also reasonably fear that they will be criminally prosecuted for behaviors that they undertook prior to June 24, 2022, when the *Dobbs* decision was issued.  Until that date, *Roe v. Wade* remained the law of the land and Plaintiffs conformed their behavior accordingly. State actors in Texas, however, have publicly asserted that they believe the Pre-*Roe* Statutes, which had been specifically declared to be unconstitutional in *Roe*, were capable of imposing criminal liability for conduct undertaken before June 24, 2022.  Several Plaintiffs have been specifically targeted by Representative Cain and the SB8 Enforcer Defendants for conduct they engaged in prior to June 24, 2022 and the Texas Freedom Caucus has targeted Sidley Austin for providing travel and other financial assistance to employees who traveled to obtain medication abortions in 2021.

155.    With respect to SB8, the SB8 Enforcer Defendants have also made their intentions to enforce SB8 against Plaintiffs clear.  For example, Defendant Shannon D. Thomason filed a Rule 202 petition seeking pre-suit discovery from Amy Hagstrom Miller, Marva Sadler, Alan Braid, and Andrea Gallegos, related to one or more abortions allegedly performed by Dr. Braid after SB8 became effective.[49] Defendant Thomason then served the undersigned counsel with two

---

[49] A copy of Defendant Thomason's Rule 202 Petition, without exhibits, is attached to this SAC as **Exhibit Y**.

copies of a litigation hold letter, demanding that Plaintiffs The Afiya Center, CASN, The Frontera Fund, Fund Texas Choice, the Lilith Fund, Dr. Moayedi, the TEA Fund, and the West Fund (along with four other clients of the who are not parties to this litigation) preserve any and all documents and information related to any abortions performed after September 1, 2021, specifically including any medication abortions provided to Texas residents where any part of the medication regime may have been ingested in Texas. Exs. B-C.  This preservation demand includes not only the identities of any involved people, but also "donors and financial supporters," of Plaintiffs among other things.  Defendant Thomason also served a virtually identical litigation hold notice on Plaintiff Buckle Bunnies.  Ex. D.  All of the Plaintiffs who received these notices immediately altered their normal operations and procedures in response, as did undersigned counsel because the notices also purport to impose the same preservation obligations on them.

156.    Defendant Weldon has repeatedly stated under oath that she intends to enforce SB8 through civil litigation against certain Plaintiffs.  For example, on January 26, 2022, she filed a Rule 202 petition seeking pre-suit discovery from Neesha Davé, a principal of the Lilith Fund, seeking information about abortions Lilith Fund funded in reliance on this Court's injunction against that law in *United States v. Texas*, 566 F. Supp. 3d 605, 690-93 (W.D. Tex. 2021), *cert. granted before judgment*, 211 L. Ed. 2d 225, 142 S. Ct. 14 (2021)[50]  In her 202 Petition, which Ms. Weldon verified under oath, she states that she is investigating future civil actions to be brought under SB8, and that she believes that Ms. Davé, as a principal of Lilith Fund, has admitted to violating SB8, and that she "anticipates the institution of a suit in which Ms. Davé or the Lilith Fund may be a party."  Ex. Z.  The discovery sought by Ms. Weldon included not just the identities

---

[50] A copy of Defendant Weldon's Rule 202 Petition, without exhibits, is attached to this SAC as **Exhibit Z**.

of people involved in the funding of any abortions after SB8 became effective, but also (for instance) lists all of the Lilith Fund's donors and funding streams.[51]

157.    On May 31, 2022, Ms. Weldon also submitted sworn declaration testimony to this Court in another matter that explains the reasons she filed her Rule 202 Petition.[52] That declaration states: "I have no interest in suing any abortion fund (or individuals involved with abortion funds) **apart from the Lilith Fund** and those who aided or abetted the illegal post-heartbeat abortions described in Ms. Dave's sworn declaration."  Ex. AA, ¶9 (emphasis added). Ms. Weldon again confirmed her intentions of enforcing SB8 during a deposition conducted on August 24, 2022.[53]

158.    Like Ms. Weldon, Defendant Ashley Maxwell has shown her willingness to enforce SB8 by filing a Rule 202 petition on January 26, 2022.  That filing sought pre-suit discovery from Kamyon Conner, a principal of TEA Fund, about abortions TEA Fund funded in reliance on this Court's injunction against enforcement of SB8 in *United States v. Texas*, 566 F. Supp. 3d 605, 690-93 (W.D. Tex. 2021), *cert. granted before judgment*, 211 L. Ed. 2d 225, 142 S. Ct. 14 (2021)[54] In her Rule 202 Petition, which Ms. Maxwell verified under oath, she states that she is investigating future civil actions to be brought under SB8, and that she believes that Ms. Conner, as a principal of TEA Fund, has admitted to violating SB8, and that she "anticipates the institution of a suit in

---

[51] Defendant Weldon's Rule 202 Petition was denied by the Honorable Brock R. Smith in August 2022.

[52] A copy of Defendant Weldon's May 31, 2022 Declaration submitted in *Davis v. Sharp*, Case No. 1:22-cv-00373-RP, without exhibits is attached to this SAC as **Exhibit AA**.

[53] Relevant excerpts from the transcript of Ms. Weldon's deposition, with the textually cited portions highlighted, are attached to this SAC as **Exhibit AB**. Ms. Weldon expresses her intentions to enforce SB8 at: Ex. AB, 18:5-9; 18:15-19:4 (indicating this is why she filed her Rule 202 petition); 22:15-17 (filed the petition to hold people "accountable"); 28:4-14 (filed the Petition so SB8 "would be upheld"); 29:3-5 (filed because "I had knowledge that [SB8] had been broken.").

[54] A copy of Defendant Ms. Maxwell's Rule 202 Petition, without exhibits, is attached to this SAC as **Exhibit AC**.

which Ms. Conner or TEA Fund may be a party." Ex. AC, ¶ 23.  Like the discovery sought by

Ms. Weldon, the discovery sought by Ms. Maxwell included not just the identities of people

involved in the funding of any abortions after SB8 became effective, but also lists all of the TEA

Fund's donors and funding streams.[55]

159.    Ms. Maxwell also submitted a sworn declaration to this Court on May 31, 2022 in

another matter, where she also explained the reason she filed her Rule 202 Petition.[56]  In that

declaration, Ms. Maxwell confirmed her intentions to enforce SB8 against TEA Fund specifically,

stating: "I have no interest in suing an abortion fund (or individuals involved with abortion funds)

**apart from the North Texas Equal Access Fund** [TEA Fund] and those who aided or abetted

the illegal post-heartbeat abortions described in Ms. Conner's sworn declaration."  Ex. AB, ¶9

(emphasis added).

160.    Like Ms. Weldon and Ms. Maxwell, Defendant Zach Maxwell (who is Ms.

Maxwell's husband) also filed a Rule 202 Petition seeking pre-suit discovery about medication

abortions that he believes may have violated SB8 because some part of the medication regimen

allegedly may have been ingested in Texas.[57] Mr. Maxwell filed his Rule 202 Petition against

Makayla Montoya-Frazier, the founder of Plaintiff Buckle Bunnies, based on his speculative

reading of certain alleged statements to the media by Ms. Montoya-Frazier, many of which were,

if made at all, made before SB8 was even effective. Ex. AC. Mr. Maxwell recognizes that Ms.

---

[55] Ms. Maxwell's Rule 202 Petition was abated by the Honorable Jim Johnson on August 11, 2022. At the same time, Judge Johnson dismissed TEA Fund's separate lawsuit that sought declaratory judgment that SB is unconstitutional, holding that he "found SB8 constitutional."  TEA Fund has appealed that decision and the case is pending at the Second Court of Appeals in Fort Worth.

[56] A copy of Ms. Maxwell's May 31, 2022 Declaration submitted in *Davis v. Sharp*, Case No. 1:22-cv-00373-RP, without exhibits is attached to this SAC as **Exhibit AD**.

[57] A copy of Mr. Maxwell's Rule 202 Petition, without exhibits, is attached to this SAC as **Exhibit AE**.

Montoya-Frazier and "the Buckle Bunnies Funds's employees, volunteers, [and] board members" are likely to have "interests adverse to Mr. Maxwell" in any anticipated suit.[58]

161.   Defendant Mistie Sharp has also submitted sworn testimony to this Court confirming her interest in suing abortion funds, like certain Plaintiffs, under SB8.  Ms. Sharp first confirmed her desire to sue abortion funds under SB8 when she sought to intervene in *U.S. v. Texas*.[59]  In support of her motion to intervene, Ms. Sharp submitted a declaration stating:

> I have an interest in preserving my state-law right to sue abortion funds that violate the Texas Heartbeat Act [SB8] . . . Specifically, I intend to sue only abortion funds who pay for other' peoples abortions in violation of Senate Bill 8. . . I respectfully seek intervention to defend and preserve my state law right to sue abortion funds that pay for post-heartbeat abortions in violation of Senate Bill 8.

162.   Ms. Sharp then confirmed her desire to sue abortion funds under SB8 in a May 31, 2022 sworn declaration she submitted to this Court in *Davis v. Sharp*.[60]  In that sworn testimony she states: "I am interested in suing only the abortion *funds*—the actual entities rather than the individuals—that pay for abortions in violation of Senate Bill 8."  Ex. AG (emphasis original).

163.   The ongoing threats posed by the SB8 Enforcer Defendants (1) prevents Plaintiffs from safely and freely supporting Texans who are seeking abortion care in another state, including in situations where medication is dispensed in a state where it is legal, but ultimately taken in Texas, and (2) substantially chills Plaintiffs' speech rights because SB8 fails to make clear what conduct would count as "aiding or abetting" a prohibited abortion, and enables frivolous and

---

[58] Mr. Maxwell's Rule 202 Petition was granted by the Hon. Brian Bufkin on March 28, 2023. Buckle Bunnies and Ms. Montoya Frazier have appealed that ruling and a related denial of a motion to dismiss the Rule 202 Petition.  That appeal is pending in the Second Court of Appeals in Fort Worth.

[59] A copy of Ms. Sharp's September 21, 2021 Declaration submitted in *U.S. v. Texas*, without exhibits is attached to this SAC as **Exhibit AF**.

[60] A copy of Ms. Sharp's May 31, 2022 Declaration submitted in *Davis v. Sharp*, Case No. 1:22-cv-00373-RP, without exhibits is attached to this SAC as **Exhibit AG**.

invasive pre-suit discovery and enforcement actions brought in unfavorable venues unconnected to any of the allegedly illegal conduct without the possibility of transfer.

164.     Plaintiffs are suffering, and will continue to suffer, irreparable harm if the DA and County Attorneys Defendants, in their official capacities, are not enjoined from prosecuting or encouraging prosecution of Plaintiffs, and if the SB8 Enforcer Defendants are not subject to declaratory judgment and enjoined from bringing SB8 enforcement actions against Plaintiffs. As set forth previously, the legal threat Defendants pose is imminent.  Given the State of Texas's stated intent (through state actors, including AG Paxton) to prosecute abortion funds and their staff, volunteers, and donors, and given the similar intent expressed by the SB8 Enforcer Defendants, the chilling effect on Plaintiffs, their staff, volunteers, and donors (and the subsequent effect on their organizational funding) is substantial.

165.     Plaintiffs have no adequate remedy at law for Defendants' threatened actions. Specifically, money damages are insufficient to undo the present and threatened injuries to Plaintiffs.  Plaintiffs' First Amendment rights, fundamental due process and equal protection rights, and rights to travel are at stake and they cannot safely resume the exercise of their own constitutional rights until the threat of criminal prosecution for doing so is eliminated.

166.     The threatened injury to Plaintiffs outweighs any possible damages to Defendants. Indeed, Defendants are not harmed by Plaintiffs' conduct in any sense, nor by their exercise of their fundamental, constitutional rights in conducting activities in support of their lawful organizational missions. Defendants lose absolutely nothing by the issuance of an injunction.

167.     Pursuant to this Court's equitable powers and Federal Rule of Civil Procedure 65, Plaintiffs are entitled to injunctive relief against the Prosecutor Defendants in their official capacities because of the threat of impending criminal prosecution posed by the Pre-*Roe* Statutes.

The irreparable harm created by this threat began immediately on June 24, 2022 when the *Dobbs* decision was issued and AG Paxton declared that the Pre-*Roe* Statutes were immediately effective. Plaintiffs are presently in reasonable fear that after the decision in *Dobbs*, they could be criminally prosecuted under the Pre-*Roe* Statutes for behavior that was legal under the prior laws of Texas and constitutionally protected, and if convicted receive a criminal sentence of 2-5 years. And they now reasonably fear that, if a Texan from a county not covered by this Court's preliminary injunction receives assistance (or, in Dr. Moayedi's case, abortion services) while out-of-state in a state where abortion is legal, a similar threat of criminal liability exists unless such prosecutions are also enjoined.

168. For similar reasons, Plaintiffs are entitled to injunctive relief against the SB8 Enforcer Defendants. The threat of litigation by the SB8 Enforcer Defendants is imminent and coercive. Plaintiffs are presently suffering irreparable harm to their federal constitutional rights, All of the Plaintiffs have already been coerced into adjusting their behavior in direct response to Defendant Thomason's litigation hold notices. Several Plaintiffs have been subjected to pre-suit discovery proceedings in Texas state court, and are experiencing that separate (and direct) ongoing injury as well. And the threat of SB8 enforcement by all of the SB8 Enforcer Defendants is having its intended effect and creating yet another injury to Plaintiffs: chilling the exercise of fundamental constitutional rights.

169. Despite their strong desires and commitment to assisting their fellow Texans, Plaintiffs are unable to safely return—beyond the limited resumption they have been able to accomplish to this court's preliminary injunction order—to their prior operations until it is made clear that Defendants have no authority to prosecute Plaintiffs or seek civil penalties from them for their constitutionally protected behavior. The intrusion of Plaintiffs' own constitutional rights

is immediate and ongoing and the deprivation of constitutional rights for any period of time constitutes irreparable harm. *De Leon v. Perry,* 975 F. Supp. 2d 632, 663 (W.D. Tex. 2014), *aff'd sub nom. De Leon v. Abbott,* 791 F.3d 619 (5th Cir. 2015).

## F.    Defendant Class Allegations

170.    Plaintiffs bring this action against each of the Defendants and as a class action against the Prosecutor Defendants individually and, under Federal Rule of Civil Procedure 23, as representatives of a Defendant Class comprised of: "All elected District Attorneys and County Attorneys in the State of Texas who have the authority within their jurisdictions to enforce through criminal prosecutions the Pre-*Roe* Statutes."

171.    The Defendant Class is sought only with respect to the claims related to the Pre-*Roe* Statutes.

172.    This lawsuit is properly maintained as an action against the Defendant Class under Federal Rule of Civil Procedure 23(a), and Rule 23(b)(1)(A) and/or Rule 23(b)(2).

173.    The proposed Defendant Class satisfies Rule 23(b)(1)(A) because any separate actions commenced against individual District Attorneys or County Attorneys for the purpose of challenging their enforcement of the Pre-*Roe* Statutes would create a risk of inconsistent or varying adjudications by the courts presiding over those actions, which would affect individual class members and establish incompatible standards of conduct for Defendants and Plaintiffs.

174.    Separate actions would also create a risk of putting Defendants and Plaintiffs in the untenable position of not knowing which of multiple, incompatible interpretations and rulings they must comply with to avoid violating the law and risking criminal penalties and statutory damages.

175.    This action is also appropriate as a class action under Rule 23(b)(2) because the same conduct of the members of the Defendant Class is at issue, and Plaintiffs seek final injunctive and declaratory relief regarding the Defendant Class as a whole.

176.    The Defendant Class is so numerous that joinder of all members is impracticable. *See* FED. R. CIV. P. 23(a)(1).  Each of the 254 counties in the State of Texas has a position for a duly elected District Attorney or a County Attorney who has the same criminal jurisdiction, and each of those individuals has exclusive jurisdiction to enforce the criminal laws of Texas within his or her district.  The members of the proposed Defendant Class are located across Texas's 254 counties.  The proposed Defendant Class has over 160 members.  Given the size of the Defendant Class and this geographic dispersal, as well as the nature of the action, it is impracticable to join all Texas District Attorneys and County Attorneys with power to enforce the Pre-*Roe* Statutes in order to provide protection to all potential defendants in those actions.

177.    There are issues of law and fact common to the Defendant Class Members.  *See* FED. R. CIV. P. 23(a)(2).  Resolution of any one of the legal issues raised in this case will affect each member of the proposed Defendant Class in the same or similar manner, by determining whether, and to what extent, they may enforce the Pre-*Roe* Statutes under the U.S. Constitution and federal law.  Moreover, the relief sought in this case does not turn on circumstances specific to members of the proposed Defendant Class.  Accordingly, there are questions of law common to the Defendant Class:

- Does the enforcement of the Pre-*Roe* Statutes against the Plaintiffs or any of their staff or volunteers for paying for abortions that occur outside the State of Texas where those abortions are legal violate the First Amendment or the right to interstate travel?

- Does the enforcement of the Pre-*Roe* Statutes against the Plaintiffs or any of their staff or volunteers for paying for or otherwise helping Texans access travel support to allow them to obtain abortion care outside the State of Texas where it is legal violate the First Amendment or the right to interstate travel?

- Does the enforcement of the Pre-*Roe* Statutes against Dr. Moayedi for traveling to states in which she is licensed to perform abortion care for Texans, and providing telemedicine abortion care from her home state of Texas in states where such care is legal violate the First Amendment or the right to interstate travel?

- Is retroactive application of the Pre-*Roe* Statutes unconstitutional?[61]

178.    The Prosecutor Defendants and unnamed Defendant Class Members will have the same or similar defenses, satisfying the typicality requirement. FED. R. CIV. P. 23(a)(3). Plaintiffs' claims against each of the Defendant Class Representatives and the members of the putative Defendant Class are the same. The defenses that the Defendant Class Representatives will raise will be typical of all members of the putative Defendant Class. The claims against which the Defendant Class Representatives must defend challenge the constitutionality of the Pre-*Roe* Statutes and are asserted against all members of the putative Defendant Class. Further, the Defendant Class Representatives and the other Defendant Class members hold a common position with respect to Plaintiffs, a position that is defined by statutory obligations and not by personal relationships. Therefore, any defenses the Defendant Class Representatives assert—and the legal theories on which they are based—will be available to the other Defendant Class members.

---

[61] These and other common questions of law and fact will be further developed in Plaintiffs' Amended Motion for Class Certification that is anticipated to be filed soon.

179.    The Prosecutor Defendants are adequate representatives for the Defendant Class because they are similarly situated to the unnamed class members.  FED. R. CIV. P. 23(a)(4).  Each has exclusive authority within their jurisdictions to file criminal charges under the Pre-*Roe* Statutes.  Plaintiffs seek a declaratory judgment that the Pre-*Roe* Statutes cannot be enforced by any Defendant or Defendant Class member, including the Defendant Class Representatives, in a manner that violates Plaintiffs' rights to freely travel, freely associate, freely speak, and freely support members of their communities through financial assistance, as guaranteed by the United States Constitution and federal law.

180.    Further, the Defendant Class Representatives' positions are aligned with that of the other Defendant Class members because all are authorized to enforce the Pre-*Roe* Statutes through criminal prosecutions and these enforcement powers are the subject of the declaratory and injunctive relief sought in this lawsuit. For purposes of this suit, the Defendant Class Representatives have no interests antagonistic to or in conflict with the interests of other members of the putative Defendant Class.  To the extent any such issues are raised about their intentions to enforce these laws, whether due to stipulations, relief granted by this Court, or otherwise, any perceived conflict in that regard can be resolved by creating two or more subclasses.  Because the authority of all District and County Attorneys with respect to the Pre-*Roe* Statutes is substantially the same, the Defendant Class Representatives will be able to fairly and adequately represent the interests of all Texas District and County Attorneys with the requisite enforcement authority.

## V.    CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER 42 USC § 1983 AND DECLARATORY JUDGMENT ACT[62]

---

[62] The Declaratory Judgment Act has, since its inception, provided a mechanism for relief in situations where a litigant might otherwise have to subject themselves to coercive action or looming litigation in order to secure constitutional or legal rights before irreparable harm occurs. *See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 243 (1937) (finding federal

**Count I:**     **The Pre-*Roe* Statutes Violate Dr. Moayedi's and CASN's Staff's and Volunteers' Rights to Travel**

181.     Plaintiffs Dr. Moyaedi and CASN assert this claim against the Prosecutor Defendants and the proposed Defendant Class.

182.     The right to travel is guaranteed to all United States citizens as one of the "Privileges and Immunities of Citizens in the several States." U.S. Const., Article IV, § 2.

183.     States are prohibited from making or enforcing any law that "abridge[s] the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.

184.     Under the Constitution, states are also prohibited from regulating interstate commerce, or from preventing or otherwise harming interstate commerce.

185.     Prior to the decision in *Dobbs*, Dr. Moayedi routinely traveled to and from other states in order to perform abortion procedures for patients in those states (and in compliance with all applicable laws in those states).  On many occasions, the patients to whom she provided care in states other than Texas were pregnant Texans.  Since *Dobbs* was decided, Dr. Moayedi has stopped traveling to other states to provide abortion procedures to pregnant Texans.  Because of the threat of criminal prosecution under the Pre-*Roe* Statutes, she is afraid that performing any abortion procedure on any Texan outside of the State of Texas will subject her to criminal prosecution by a member of the Defendant Class.

---

courts had jurisdiction over insurer's declaratory judgment cause of action where, had the insured sued in contract, it was clear that the controversy would have been justiciable).

186.    Dr. Moayedi wishes to immediately resume her travel to and from other states to assist her patients—including pregnant Texans—but she cannot safely do so without relief from this Court.  She is chilled by these threats from doing what the Constitution guarantees any citizen may do: travel to another state and engage in lawful commerce and activities while she is there, protected by the privileges and immunities of the state she is visiting.

187.    Staff and volunteers for CASN also regularly traveled both within Texas and from Texas to other states to assist pregnant Texans seeking abortion care, but have stopped doing so following the decision in *Dobbs.*  Those staff and volunteers wish to resume such direct travel assistance.

188.    Although CASN believes it has standing based upon the standing of its boards, staffs, and volunteers, since these are constituents of the CASN organization, CASN also has associational standing, because (1) at least one of its staff, volunteers, or members did—or at least used to—travel with or provide transportation assistance to people seeking abortions and/or would presently be doing so but for the threats created by the current law; (2) the interest of its staff, volunteers, or members in assisting pregnant Texans in obtaining legal abortions in other states is directly tied to CASN's purpose as described above in Section III.A.; and (3) there is no obvious reason why, apart from providing testimony, it would be necessary for individual staff, volunteers, or members to be made parties to this lawsuit.

189.    Texas state actors' statements interpreting the scope of potential enforcement of the Pre-*Roe* Statutes show an intent to enforce the Pre-*Roe* Statutes against CASN's staff, volunteers, and persons similarly situated, who travel between Texas and another state to assist pregnant Texans seeking abortions in other states where they continue to be legal, or who assist pregnant Texans with travel in order to seek legal abortion care.

190.    Based on the activities and statements made by Defendants and other representatives of the State, CASN's staff and volunteers have a reasonable fear of being prosecuted under the Pre-*Roe* Statutes if they assist pregnant Texans in traveling to another state to obtain a legal abortion.

191.    Enforcement of the Pre-*Roe* Statutes against CASN's staff and volunteers, citizens who travel between Texas and another state in interstate commerce, violates CASN's staff and volunteers' right to travel and/or infringes upon their rights to assist others with interstate travel.

192.    Interpreting the Pre-*Roe* Statutes to criminalize CASN's staff and volunteers' travel for the purpose of assisting a pregnant Texans seeking abortion care violates Plaintiff's staff and volunteers' right to travel and to exercise the "Privileges and Immunities" of citizenship under the Fourth Amendment.

193.    Interpreting the Pre-*Roe* Statutes to criminalize CASN's staff and volunteers' travel for the purpose of assisting pregnant Texans seeking abortion care constitutes a State attempting to "enforce a law abridg[ing] the privileges or immunities of citizens of the United States." Texas is also classifying citizens, CASN's staff and volunteers, based on the purpose of their travel, therefore denying the equal protection of the laws to persons within its jurisdiction, in violation of the Fourteenth Amendment.

194.    Interpreting the Pre-*Roe* Statutes to criminalize CASN's staff and volunteers' travel for the purpose of assisting pregnant Texans seeking abortion care constitutes an attempt by Texas to regulate commerce "among the several States," which authority the Constitution grants only to Congress.  Likewise, interpreting those statutes to prohibit citizens from assisting Texans' travel generally also constitutes an unconstitutional attempt by Texas to regulate interstate commerce.

195.    The right to travel is implicated for both Dr. Moayedi and CASN's staff and volunteers personally, and is also impacted for their patients and clients in need of assistance.  To the extent the right of the pregnant Texan seeking help is implicated, Dr. Moayedi and CASN also have a First Amendment right to assist with that constitutionally-protected activity.

196.    The Pre-*Roe* Statutes are facially invalid and void as applied to Plaintiffs Moayedi and CASN.

**Count II:      Threatened Enforcement of the Pre-*Roe* Statutes and SB8 Violates Plaintiffs' First Amendment Free Speech Rights.**

197.    All Plaintiffs bring this claim against the Prosecutor Defendants and the proposed Defendant Class with respect to the Pre-*Roe* Statutes, and against the SB8 Enforcer Defendants with respect to SB8.

198.    The First Amendment to the United States Constitution guarantees its citizens the right to free speech, assembly, association, and petition. U.S. CONST. AMEND. I.

199.    The State has threatened enforcement of the Pre-*Roe* Furnishing Statute (for "furnishing the means" for procuring an abortion) against Plaintiffs for providing information and funds to its clients for lawful out-of-state activities.  Such targeted enforcement against Plaintiffs and their staff, volunteers, and donors on the basis of the content of their speech and conduct and the nature of their association violates their rights of association and free speech.

200.    As noted above, the SB8 Enforcer Defendants have clearly taken the position that "aid[ing] or abet[ting]" out-of-state abortions involving Texans violates SB8.

201.    The Constitution does not permit a state to bar speaking and providing information regarding conduct legal in another state just because it is illegal in this one, nor does it permit a state to prohibit funding and practical support for Texans seeking to undertake legal conduct in

another state.  Because Plaintiffs' use of funds is speech, banning this use of funds on the basis of a legal intended purpose is a violation of Plaintiffs' free speech rights.

202.    Plaintiffs have representational standing to assert the rights of their employees, volunteers, and donors, as previously alleged.

203.    Plaintiffs' desired activities of providing information regarding, and practical and/or monetary support for, Texans seeking abortions in states where abortion is legal is protected First Amendment activity.

204.    Likewise, Defendants' attempt to use Texas law to threaten to chill Plaintiffs' relationships with their donors, employees, and volunteers, violates the freedom of expressive association protected by the First Amendment.

205.    Defendants' threatened enforcement of the Pre-*Roe* Furnishing Statute and SB8 against Plaintiffs, their staff, volunteers, and donors chills exercise of their protected First Amendment associational rights.

206.    Defendants' threatened enforcement of the Pre-*Roe* Furnishing Statute and SB8 against Plaintiffs' donors for funding Plaintiffs' activities through charitable donations chills the donors' First Amendment rights of speech and association.

207.    Any enforcement of the Pre-*Roe* Furnishing Statute that forces disclosure of Plaintiffs' donors would also violate their First Amendment rights of association. As already alleged, the fear that this may happen, or that there will be consequences for donations, has already caused (and continues to cause) various Plaintiffs to lose donors.

208.    Enforcement of the Pre-*Roe* Furnishing Statute and SB8 against Plaintiffs, their employees, volunteers or donors is targeted precisely at the speech acts that they have undertaken, including providing funding and other assistance to pregnant Texans.

209.    The Pre-*Roe* Furnishing Statute and SB8 are facially unconstitutional, contain content-based restrictions that are subject to strict scrutiny, and are retaliatory in that they provides for civil and criminal penalties for engaging in speech in which the State disagrees.

210.    The Pre-*Roe* Furnishing Statute and SB8 are unconstitutional because the First Amendment protects:

    a.    The right to speak out, petition, demonstrate, advocate, and provide information about abortion and the state of abortion laws;

    b.    The right to offer aid (monetary and otherwise);

    c.    The right to political donation;

    d.    The right to discuss and associate;

    e.    The right to contribute;

    f.    The right to free expression; and

    g.    Freedom of the press and publication of materials by Plaintiffs.

211.    Plaintiffs are entitled to a declaratory judgment as to each of these subparts and protections of the First Amendment for the infringement of the Pre-*Roe* Statutes and SB8 on their constitutional rights, as well as to injunctive relief.  The declaratory and injunctive relief requested would run against the Prosecutor Defendants and the Proposed Class as to the Pre-*Roe* Statutes, and against the SB8 Enforcer Defendants as to SB8 .

**Count III:    Retroactive Application of the Pre-*Roe* Statutes and SB8 is Unconstitutional.**

212.    All Plaintiffs bring this claim against the Prosecutor Defendants and the proposed Defendant Class as to the Pre-*Roe* Statutes, and against the SB8 Enforcer Defendants as to SB8.

213.    The Pre-*Roe* Statutes were struck down and rendered void by the *Roe v. Wade* decision in 1973. Any construction of the Pre-*Roe* Statutes that allows their retroactive application

to conduct that was lawful under *Roe v. Wade* and its progeny until its overruling by *Dobbs* would function as an Ex Post Facto criminal law, and thus would violate Due Process.

214.    "[A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law, such as Art. I, s 10, of the Constitution forbids." *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1964).  State legislatures are barred by the Ex Post Facto Clause of the Constitution from passing such laws, and similarly the Courts are barred by the Due Process Clause from achieving the same result by judicial construction.

215.    "The fundamental principle that 'the required criminal law must have existed when the conduct in issue occurred,' Hall, General Principles of Criminal Law (2d ed. 1960), at 58-59, must apply to bar retroactive criminal prohibitions emanating from courts as well as from legislatures." *Id.* at 354.

216.    Retroactive enforcement of Pre-*Roe* Statutes violates the Constitution's Ex Post Facto Clause and Due Process Clause.

217.    Additionally, various SB8 Enforcer Defendants, including Defendant Ashley Maxwell and Ms. Weldon, have (as described above) already threatened enforcement of SB8's provisions for abortions that took place not only while *Roe v. Wade* was the law of the land, but also while enforcement of the SB8 was enjoined by this Court. As noted above, federal due process guarantees prevent the retroactive application of a law where a potential defendant would not have fair warning that the alleged conduct was prohibited.

218.    The following provisions of SB8 impair prior and settled rights and reliance interests, which violates these federal constitutional guarantees:

    a.    Section 171.208(e)'s elimination of defenses to liability, including the effect of court decisions like the injunction this court issued in *United States v. Texas*; and

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF     68

b.  Section 30.022's imposition of joint and several liability on attorneys or law firms that represent or defend clients in matters that seek injunctive or declaratory relief regarding abortion regulations and statutes.

c.  SB8's general enforcement provisions, to the extent enforcement is attempted regarding abortions that took place during a period in which *Roe* was still good law or during any injunction against the enforcement of SB8.

219.  The retroactive reach of SB8 and its fee shifting provisions burdens Plaintiffs by depriving them of their constitutional right to be apprised of laws they may be held liable for and by impairing their abilities to redress their rights in defense.

**Count IV:  The Texas Pre-*Roe* Furnishing Statute and SB8 are Void for Vagueness.**

220.  All Plaintiffs bring this claim against the Prosecutor Defendants and the proposed Defendant Class as to the Pre-*Roe* Statutes, and against the SB8 Enforcer Defendants as to SB8.

221.  The Texas Pre-*Roe* Furnishing Statute and SB8 are both void for vagueness.

222.  The Texas Pre-*Roe* Furnishing Statute is too vague for the average citizen to determine what persons are regulated, what conduct is prohibited, and what penalties may be imposed.

223.  "Furnishing the means" is not a term defined within the statute, and to the extent it is considered to encompass anything beyond directly providing the specific tool or medication that causes the termination of pregnancy while both provider and recipient are within the borders of the State of Texas its scope is undefined.

224.  The Texas Pre-*Roe* Furnishing Statute is void for vagueness because it imposes on Plaintiffs' rights under the First Amendment. To the extent "furnishing the means" can be considered to encompass funding or practical assistance for people seeking to obtain legal

abortions outside the State of Texas, or to encompass providing emotional support to people seeking abortions, or to encompass providing true information about the availability of legal abortions in other States in the United States, it violates the First Amendment.

225.    SB8 is also void for vagueness, which also violates the basic federal due process of law requirement that a person must have notice of what conduct is permitted and what is forbidden to be penalized in law.

226.    SB8 is a quasi-criminal statute that imposes civil penalties, but its use of the phrase "aid or abet" is, as already explained in Section IV.D., supra, is too vague for the average citizen to determine what persons are regulated, what conduct is prohibited, and what penalties may be imposed. Moreover, SB8 is vague in effect as well as scope, because it contains a statutory damage minimum but no maximum and provides courts with no guidance whatsoever on how to determine appropriate damages.

227.    The vagueness is exacerbated, and rendered substantially more constitutionally onerous, because as noted above SB8 imposes on Plaintiffs' rights to freedom of speech, and assembly with the breadth of its prohibition against "aiding" or "abetting" a person seeking an abortion.

228.    Because the Texas Pre-*Roe* Furnishing Statute and SB8 violate Plaintiffs' rights to be apprised of the laws they must follow, and their right not to be subject to laws that are arbitrary in scope or effect, they cannot be enforced, and declaratory and injunctive relief must issue declaring these laws unconstitutional and enjoining their enforcement, as to the Pre-*Roe* Statutes against the Prosecutor Defendants and Proposed Class, and as to SB8 against the SB8 Enforcer Defendants.

**Count V:      The Texas Pre-*Roe* Statutes and SB8 Cannot Apply to Abortion Care Obtained Outside of Texas.**

229.    All Plaintiffs bring this claim against all Prosecutor Defendants and the proposed Defendant Class as to the Pre-*Roe* statutes, and all SB8 Enforcer Defendants as to SB8.

230.    Neither the Pre-*Roe* Statutes nor SB8 provide for any extraterritorial application of those laws.

231.    Thus, the scope of abortion prohibited by the Pre-*Roe* Statutes applies only to abortions performed or obtained in Texas, and in the case of SB8, abortions performed by a Texas-licensed physician in Texas.

232.    The Pre-*Roe* Furnishing Statute is an accomplice statute, and no one can be charged as an accomplice unless there is a guilty principal, as the Texas Court of Criminal Appeals has determined.  *See*, *e.g.*, *Moore v. State*, 40 S.W. 287, 290 (Tex. Crim. App. 1897) (analyzing the "furnishing" statute and noting "[w]e cannot have an offense that could be committed by an accomplice without a principal.").

233.    SB8 likewise only applies to abortions performed by a physician in Texas.  Section 171.201 of the Texas Health & Safety Code provides the definitions that apply to certain terms within Subchapter H of Chapter 171 (the subchapter created by SB8).  It defines "physician" as "an individual licensed to practice medicine in this state…"  *Id.* at § 171.201(4).  Thus, when Section 171.204 prohibits "a physician" from knowingly performing or inducing an abortion unless the test is done and no heartbeat is found, that prohibition applies only to "individuals licensed to practice medicine in this state[.]"  Nothing in SB8 provides for explicit extraterritorial application, either, so that even if a Texas-licensed physician provided an abortion, it could not violate SB8 unless the abortion took place within the borders of the State of Texas.

234.    Moreover, SB8's enforcement cannot be extended to services not provided by a Texas-licensed physician, nor can it be extended to services or medications legally provided in another state, regardless of where the patient takes those medications, since the prohibited act—the provision of abortion services—occurred in a state where that act was legal.

**Count VII:    The Pre-*Roe* Statutes and SB8 Cannot Reach Medical Care Provided to Patients Outside of Texas Via Telemedicine.**

235.    Plaintiff Dr. Moayedi brings this claim against all Prosecutor Defendants and the proposed Defendant Class as to the Pre-*Roe* statutes, and all SB8 Enforcer Defendants as to SB8.

236.    Dr. Moayedi is licensed in 20 states, including Texas.

237.    Telemedicine care is "provided" in the jurisdiction in which the patient resides, according to the billing requirements of the Center for Medicare Services and the Health & Human Services Department.  Specifically, Place of Service (POS) is equal to what it would have been had the service been furnished in person.

238.    The jurisdictional reach of the Texas Pre-*Roe* Statutes does not contemplate abortions occurring outside of Texas, nor does that of SB8, for the reasons already given.  Indeed, the Pre-*Roe* Statutes were passed more than a century before telemedicine became possible. Likewise, the general criminal jurisdictional statute does not extend to abortions occurring beyond Texas's borders.

239.    Construction of the Pre-*Roe* statutes or SB8 to reach abortions obtained by patients in other states through telemedicine violates the constitutional prohibitions against regulation of interstate commerce.

240.    Construction of the Pre-*Roe* statutes or SB8 to reach the practice of medicine provided pursuant to the licensure and laws governing another state, regardless of the location of

the provider at the time, is also prohibited by the Interstate Commerce Clause of the United States Constitution, by the principles of federalism and state sovereignty, and is otherwise preempted by federal law.

241.   Moreover, Federal law through CMS regulation preempts the Pre-*Roe* statutes and SB8 insofar as they may be construed to reach telemedicine abortion care provided to patients outside of Texas.

242.   CMS exclusively occupies the realm of medical billing nationwide, in both the public and private spheres, and its regulation and specifications are intended to guide the industry nationwide.

243.   CMS specifically considers abortion care and how it should be reported for billing, and has specifically provided that "place of service" ("POS") should be considered to be the location of the *patient*, and not the provider.

244.   The Pre-*Roe* statutes and SB8 are unconstitutionally vague because they fail to apprise physicians of what conduct is prohibited and to provide notice comporting with due process.

245.   Physicians providing care cannot constitutionally be subjected to the criminal and/or civil laws of one state for care provided in another state or for a patient located in another state, regardless of the physical location of the physician, pursuant to the Due Process Clause of the U.S. Constitution.

246.   Plaintiff Dr. Moayedi is thus entitled to a declaratory judgment that she cannot be subjected to prosecution under the Pre-*Roe* Statutes or civil liability under SB8 for care she provides outside of Texas, or to patients receiving abortion care via telemedicine outside of Texas,

regardless of where Moayedi may be located at that time to the extent Defendants threaten criminal or civil sanctions, and to injunctive relief providing the same.

**Count VI:    SB8 Deprives Plaintiffs of Due Process By Denying them Meaningful Access to Courts.**

247.    All Plaintiffs bring this claim against the SB8 Enforcer Defendants.

248.    The right of access to the courts is a fundamental right guaranteed by the First, Fifth, and Fourteenth Amendments to the U.S. Constitution, and is specifically protected by the Due Process Clauses of the Fifth and Fourteenth Amendments.

249.    The following provisions of SB8, individually and collectively, so dramatically reconfigure the general risks of litigation and so thoroughly rig the game in favor of one side as to deny Plaintiffs, or those in their position, meaningful access to fair and impartial justice in the judicial system, thereby violating the Constitution:

a.    Section 171.208(b)'s provision for mandatory minimum (and no maximum) relief for a prevailing claimant, regardless of proved damages;

b.    Section 171.208(b)'s provision for mandatory injunctive relief for a prevailing claimant regardless of any demonstration of need for injunctive relief;

c.    Section 171.208(e)'s elimination of applicable defenses for potential defendants;

d.    Section 171.208(i)'s prohibition of an award of fees to a prevailing defendant, thereby ensuring that in an offensive SB8 case, even the most frivolous case, can be brought without risk; and

e.    Section 30.022's imposition of joint and several liability for attorneys' fees on litigants and attorneys/firms that take on challenges to abortion laws and its attempt

to allow other, later courts to assess fees even if the original court found Section 30.022 unconstitutional.

250.    The above provisions purport to eliminate Plaintiffs' defenses to any claims asserted against it under SB8, and impose all financial risks and burdens of seeking any kind of legal redress on those who are either defendants in an SB8 civil suit, or claimants seeking a ruling that SB8 (or other abortion-regulating statutes) are invalid.

251.    Indeed, Section 30.022 even attempts to rob litigants of willing attorneys by creating joint and several liability for lawyers and firms who take up nonfrivolous but ultimately unsuccessful challenges to SB8 (or other abortion laws) on behalf of their clients.  The transparent design of this scheme is to dissuade litigants from challenging the constitutionality of SB8, and if the litigants cannot be dissuaded, to make it difficult or impossible for them to find attorneys.

252.    Since this stricture only applies to challenges to abortion statutes, its restraints are discriminatory and content based, triggering strict scrutiny.  This discrimination also violates the equal protection guarantees of the U.S. Constitution as indicated in Count VII *infra*, since it treats litigants challenging the constitutionality of certain laws dramatically differently from litigants challenging the constitutionality of other laws—a penalty, essentially, for a political opinion.  Such a provision, which would only serve to insulate controversial laws from constitutional review, cannot possibly have a legitimate, much less a compelling, government purpose.

253.    The provisions listed above also require judges to issue a mandatory injunction sufficient to prevent future conduct if a claimant prevails on his SB8 claim.  A mandatory injunction removes all discretion from the trial judge to determine the appropriate relief and subjects a defendant to a civil injunction that will operate as a restraint on the defendant's future work and speech

254.    Even if attorneys would not be immediately dissuaded by the threat of joint and several liability, the above provisions create an automatic conflict between the Plaintiffs, as would-be defendants under SB8, and their attorneys.  The provisions force an attorney to choose between the best interests of her client and liability under SB8 or to refuse to represent a client at all, and could cause an attorney to levy only narrow and certain affirmative constitutional challenges (or no such challenges at all) when broader, nonfrivolous challenges are possible in order to avoid being liable for a mandatory fee award.  Again, the goal and effect is to deprive litigants with nonfrivolous constitutional claims of effective, unconflicted counsel.

255.    The provisions listed above, among other things, eliminate the defense of non-mutual preclusion.  This may seem harmless, but because SB8 does not require any person bringing a claim to demonstrate standing, and because SB8 insulates SB8 claimants from penalties for bringing frivolous lawsuits, the elimination of non-mutual preclusion as a defense means that an SB8 defendant can be sued as many times for the same alleged conduct as there are politically (or financially) motivated plaintiffs to take the case, and no number of victorious defenses will prevent a further suit with a new plaintiff.

256.    These provisions all but deny SB8 defendants and those challenging SB8 access to the Courts.  This renders SB8 unconstitutional and unenforceable, requires a declaratory judgment to that effect, and makes proper an injunction against the SB8 Enforcer Defendants preventing them from attempting to enforce SB8 against Plaintiffs, or bring an SB8 attorney fee claim in relation to this or any other lawsuit.

**Count VII:     SB8's Provisions Violate the Equal Protection Clause.**

257.    The Equal Protection Clause requires that no State deny to any person within its jurisdiction the equal protection of the laws, which is a direction that all persons similarly situated must be treated alike.

258.    SB8 singles out Plaintiffs (and others) who are accused of "aid[ing] or abet[ting]" abortion or intending to do these things, and then treats that category of people differently from all other defendants in civil litigation.

259.    As explained above, SB8 alters virtually all of the procedural rules that apply in civil litigation and limits the substantive defenses and arguments available to SB8 defendants.  SB8 even goes so far as to mandate that SB8 defendants be treated differently in the courts of the United States, with special, extremely disadvantageous rules and barriers to relief and defenses applicable only to them.  The venue and fee-shifting provisions, the conferral of standing without injury, the elimination of standard defenses, and the redefinition of federal due process protections all work together to disadvantage a single subset of citizens—those who advocate for and help pregnant patients access abortion healthcare.

260.    SB8's transparent purpose is animus and to burden the exercise of constitutional rights, which are not legitimate government interests.  Nor are SB8's provisions narrowly tailored to achieve any legitimate goal, even assuming one exists, since there is no rational reason that, for instance, the goal of prohibiting abortion should require that persons accused of aiding or abetting abortion be denied the ability to transfer venue that other defendants have, or denied the right to rely on court decisions that other defendants would be able to rely on, or denied the right to raise defenses that other defendants would be able to raise, etc.  The enforcement provisions therefore cannot survive any level of Equal Protection review.

**Count VIII:   SB8's Joint and Several Liability Attorney Fee Provision is Preempted.**

261.    All Plaintiffs bring this claim against the SB8 Enforcer Defendants.

262.    As noted, SB8 creates a one-way fee-shifting provision applicable to any person—including a party's lawyers—who seeks declaratory and/or injunctive relief to prevent enforcement of any "law that regulates or restricts abortion" or any law excluding those who "perform or promote" abortion from participating in public funding programs. TEX. CIV. PRAC. & REM. CODE 30.022(a).

263.    Civil rights plaintiffs—including Plaintiffs in this action—would under this provision be forced to pay defense attorneys' fees unless they prevail on all claims.  If a court dismisses claims brought by the civil-rights plaintiff, regardless of reason for dismissal, or enters judgment for the opposing party, the party defending the abortion restriction is deemed to prevail. *Id*. at § 30.022(b)(1)-(2).

264.    Section 30.022 does not explicitly limit fees to what is reasonable, unlike other fee-shifting statutes such as 42 U.S.C. § 1988. It also purportedly applies in both state and federal courts and to both state and federal claims, including Section 1983 claims brought to vindicate federal constitutional rights. But there is already a comprehensive fee-shifting statute for such claims: 42 U.S.C. § 1988.

265.    For claims brought under 42 U.S.C. § 1983, the joint and several liability scheme set forth in Section 30.022 is preempted by 42 U.S.C. § 1988.

266.    Because Section 30.022 is preempted by 42 U.S.C. § 1988, it is null and inapplicable to this proceeding.

267.    Plaintiffs specifically request the recovery of costs and reasonable attorney fees under 42 U.S.C. § 1988 when they prevail in this case.

# VI.    <u>RELIEF REQUESTED</u>

WHEREFORE, Plaintiffs respectfully pray for the following relief:

1.      That this Court determine this lawsuit may be maintained as a defendant class action under Federal Rule of Civil Procedure 23 and that this Court certify the Defendant Class and designate certain named Prosecutor Defendants as the representatives of the Defendant Class;

2.      Permanent injunctions:

      a.      Restraining, enjoining, and prohibiting the Prosecutor Defendants and members of the Defendant Class and all persons acting on behalf of or in concert with the named Defendants and members of the Defendant Class from prosecuting Plaintiffs, or any of their staff, volunteers, or donors, under the Pre-*Roe* Statutes for any behavior undertaken by Plaintiffs in connection with any abortion that occurs outside the State of Texas;

      b.      Restraining, enjoining, and prohibiting the SB8 Enforcer Defendants and all persons acting on behalf of or in concert with the SB8 Enforcer Defendants from attempting to enforce SB8 against Plaintiffs, and from seeking pre-suit discovery against Plaintiffs related to potential or anticipated SB8 claims;

      c.      As otherwise necessary to accomplish the results Plaintiffs seeks herein; and

3.      Declaratory judgment relief:

      a.      That enforcement of the Pre-*Roe* Statutes by the Prosecutor Defendants or the Defendant Class (or any member thereof), or SB8 by the SB8 Enforcer Defendants, against Plaintiffs or any of their staff or volunteers for traveling

across state lines to assist another person to access legal abortion care in the destination state is unconstitutional because it violates Plaintiffs,' their staffs,' and their volunteers' right to travel;

b.      That enforcement of the Pre-*Roe* Statutes by the Prosecutor Defendants or the Defendant Class (or any member thereof), or SB8 by the SB8 Enforcer Defendants, against Plaintiffs or any of their staff, volunteers, or donors, is unconstitutional because such enforcement would violate Plaintiffs' right to free speech (including the rights to assemble, associate, and petition) under the United States Constitution by infringing upon:

      i.      The right to speak out, petition, demonstrate, advocate, and provide information about abortion and the state of abortion laws;

      ii.     The right to offer aid (monetary and otherwise);

      iii.    The right to political donation;

      iv.     The right to discuss and associate;

      v.      The right to contribute;

      vi.     The right to free expression; and

      vii.    Freedom of the press and publication of materials by Plaintiffs;

c.      That enforcement of the Pre-*Roe* Statutes by the Prosecutor Defendants or the Defendant Class (or any member thereof), or SB8 by the SB8 Enforcer Defendants, against Plaintiffs or any of their staff, volunteers or donors for their practical and financial assistance to pregnant Texans who are seeking

abortion care outside the state of is unconstitutional because the statutes are void for vagueness as to the conduct and operations of Plaintiffs;

d.      That enforcement of the Pre-*Roe* Statutes by the Prosecutor Defendants or the Defendant Class (or any member thereof), or SB8 by the SB8 Enforcer Defendants, against Plaintiffs or any of their staff, volunteers or donors for their practical and financial assistance to pregnant Texans is unconstitutional because both statutes violate Equal Protection;

e.      That enforcement of SB8 by the SB8 Enforcer Defendants against Plaintiffs or any of their staff, volunteers or donors for their practical and financial assistance to pregnant Texans is unconstitutional because the statutes are unconstitutional due to their denial of meaningful access to the Courts;

f.      That neither the Pre-*Roe* Statutes nor SB8 applies, or constitutionally can apply, to abortions obtained or performed outside of Texas, or to medication legally prescribed outside of Texas;

g.      That neither the Pre-*Roe* Statutes nor SB8 reaches abortion care provided via telemedicine by a physician licensed in another state, performing care that is lawful in that state, regardless of the physical location of the physician providing telemedicine care, and regardless of whether the physician is licensed to practice medicine in Texas;

h.      That Section 30.022 of the Texas Civil Practice and Remedies Code is preempted under the Supremacy Clause by 42 U.S.C. § 1988;

4.      The recovery of costs and reasonable attorney fees under 42 U.S.C. § 1988; and,

5.      Such other and further relief in law or in equity as the Court deems just and proper, including but not limited to, an award to Plaintiffs of costs and attorneys' fees incurred in bringing this action.

Dated: April 20, 2023                    Respectfully submitted,

By: */s/ Jennifer R. Ecklund*
    Jennifer R. Ecklund
    Texas Bar No. 24045626
    jecklund@thompsoncoburn.com

    Elizabeth G. Myers
    Texas Bar No. 24047767
    emyers@thompsoncoburn.com

    Allyn Jaqua Lowell
    Texas Bar No. 24064143
    alowell@thompsoncoburn.com

    John Atkins
    Texas Bar No. 24097326
    jatkins@thompsoncoburn.com

    Elizabeth Rocha
    Texas Bar No. 24127242
    erocha@thompsoncoburn.com

    **THOMPSON COBURN LLP**
    2100 Ross Avenue, Suite 3200
    Dallas, Texas 75201
    Telephone: 972/629-7100
    Facsimile: 972/629-7171

    Alexandra Wilson Albright
    Texas Bar No. 21723500
    aalbright@adjtlaw.com

    Marcy Hogan Greer
    Texas Bar No. 08417560
    mgreer@adjtlaw.com

    515 Congress Ave., Suite 2350
    Austin, TX 78701-3562
    Telephone: 512/482-9300
    Facsimile: 512/482-9303

Kevin Dubose
Texas Bar No. 06150500
kdubose@adjtlaw.com
1844 Harvard Street
Houston, TX 77008
Telephone: 713/523-2358
Facsimile: 713/522-4553

Kirsten M. Castañeda
Texas Bar No. 00792401
kcastaneda@adjtlaw.com
8144 Walnut Hill Lane, Suite 1000
Dallas, TX 75231-4388
Telephone: 214/369-2358
Facsimile: 214/369-2359

**ALEXANDER DUBOSE & JEFFERSON, LLP**

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I certify that this document was filed electronically on April 20, 2023, with the clerk of the Court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court.


/s/ *Elizabeth G. Myers*
Elizabeth G. Myers