IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| FUND TEXAS CHOICE, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 1:22-CV-859-RP |
| | § | |
| SUSAN R. DESKI, et al., | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are motions to dismiss filed by Susan R. Deski, Jose Garza, Wiley B. McAfee, Julie Renken, Fred H. Weber, (Dkt. 137), Gocha Allen Ramirez, (Dkt. 161), Joe Gonzales, (Dkt. 162), Bill D. Hicks, (Dkt. 163), Toribio Palacios, (Dkt. 164), Jacob Putman, (Dkt. 165), Richard E. Glaser and Ryan Sinclair, (Dkt. 166), and K. Sunshine Stanek, (Dkt. 176), (collectively, the "Prosecutor Defendants"); and Ashley Maxwell, Zach Maxwell, Mistie Sharp, Shannon D. Thomason, and Sadie Weldon, (Dkt. 167), (collectively, the "SB 8 Defendants"). Plaintiffs Fund Texas Choice, et al. ("Plaintiffs") filed a consolidated response to several of the Prosecutor Defendants' motions to dismiss, (Dkt. 177), a response to Defendant Putman's motion to dismiss, (Dkt. 178), and a response to the SB 8 Defendants' motion to dismiss, (Dkt. 175). Also before the Court is the SB 8 Defendants' motion to defer their response deadline to Plaintiffs' motion for summary judgment, (Dkt. 217). Having considered the record, the parties' briefing, and the relevant law, the Court will deny the motions to dismiss and grant in part the motion to defer.

## I. BACKGROUND

This case concerns several Texas abortion advocacy groups that seek to fund or support abortion for Texans in states where it remains legal. The Court will first describe the parties, the

challenged statutes, and the case's procedural history, before turning to the merits of Defendants' arguments.

## A. The Parties

Plaintiffs are comprised of several nonprofit Texas abortion funds and one physician. As part of their mission to support reproductive rights, they hope to fund and facilitate travel and lodging for Texans who seek abortions outside the state. (2d Am. Compl., Dkt. 129, at 2). Historically, before the Supreme Court's decision in *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022), the funds would provide financial, logistical, emotional, and travel assistance to pregnant Texans. Dr. Ghazaleh Moayedi, an OB-GYN, provided abortions for pregnant Texans and now hopes to directly provide abortion-related healthcare to pregnant Texans in other states. (*Id.*). They claim that they have been forced to halt many of their historic activities following the passage of SB 8 and the *Dobbs* decision, and they want to resume their prior activities as permitted by the U.S. Constitution. (*Id.* at 11).

The Prosecutor Defendants are various district and county attorneys in Texas. They are authorized to pursue criminal charges under the Texas pre-*Roe* statutes for crimes that occur in their jurisdiction. Tex. Code Crim. Proc. art. 2.01. They have the sole authority to file and pursue criminal cases in their respective districts. (2d Am. Compl., Dkt. 129, at 32).

The SB 8 Defendants are private Texas citizens. (*Id.* at 32–33). They have threatened to enforce SB 8 against certain Plaintiffs for their assistance with in- and out-of-state abortions. (*Id.*). This includes, among other things, sending Rule 202 Petitions seeking pre-suit discovery against Plaintiffs and other abortion providers. (*Id.* at 51–55).

**B. Relevant Laws**

Prior to the Supreme Court's opinion in *Roe v. Wade*, 410 U.S. 113 (1973), the Texas Penal

Code contained Articles 1191, 1192, 1193, 1194, and 119625 (collectively, the "Pre-Roe Statutes"),

under which abortion was criminalized.

Article 1191 of the Texas Penal Code stated:

> If any person shall designedly administer to a pregnant woman or
> knowingly procure to be administered with her consent any drug or
> medicine, or shall use towards her any violence or means whatever
> externally or internally applied, and thereby procure an abortion, he
> shall be confined in the penitentiary not less than two nor more than
> five years; if it be done without her consent, the punishment shall be
> doubled. By 'abortion' is meant that the life of the fetus or embryo
> shall be destroyed in the woman's womb or that a premature birth
> thereof be caused.

Tex. Pen. Code. Art. 1192 (West 1961).

Article 1192 further states, "Whoever furnished the means for procuring an abortion

knowing the purpose intended is guilty as an accomplice." *Id.* This accomplice liability is punishable

by two to five years in a state penitentiary. *Id.* Over a century ago, a Texas court interpreted

"furnish[ing] the means for procuring an abortion" to apply to providing drugs, medicine, or

instruments that could produce an abortion, or committing violence upon the pregnant person to

bring about an abortion. *See Fondren v. State*, 169 S.W. 411, 414-16 (Tex. 1914).

Beyond the pre-*Roe* laws, Plaintiffs also challenge the constitutionality of SB 8. The law,

which went into effect on September 1, 2021, authorizes private citizens to bring a civil action

against any person who performs or "aids or abets" certain abortions in Texas. Tex. Health & Safety

Code § 171.208. SB 8 provides that a suit may be brought against a person who "performs or

induces an abortion in violation of this subchapter" or any person who "knowingly engages in

conduct that aids or abets the performance or inducement of an abortion . . . if the abortion is

performed or induced in violation of this subchapter…" *Id.* § 171.208(a)(1), (2).

SB 8 delegates enforcement to private citizens and prohibits governmental officials from enforcing the law. A plaintiff under SB 8 need not have an individualized injury to bring suit. *Id.* § 171.208(a). It provides a minimum fine of $10,000 for each abortion but provides no maximum penalty. SB8 purports to limit the effect of the judgments of other courts, including federal courts, by denying the defenses of nonmutual preclusion, claim preclusion (also known as res judicata), and limiting recovery of attorney's fees. *Id.* § 171.208(e). SB 8 permits a private plaintiff to bring the case in his or her own county of domicile (if in Texas), regardless of whether that county has any connection to the events alleged or the relevant witnesses and prohibits any motion to transfer venue. *Id.* § 171.210. The law was designed to avoid judicial review. (2d Am. Compl., Dkt. 129, at 38); *United States v. Texas*, 566 F. Supp. 3d 605, 628 (W.D. Tex.) (discussing legislative history of SB 8), *cert. granted before judgment*, 142 S. Ct. 14 (2021). The Supreme Court twice declined to grant emergency applications on the Fifth Circuit's stays of this Court's injunctions that prohibited enforcement of the law. *See id.*; *Whole Woman's Health v. Jackson*, 556 F. Supp. 3d 595 (W.D. Tex.), *aff'd in part, rev'd in part* 142 S. Ct. 522 (2021).

### C. Case Background

Plaintiffs brought suit on August 23, 2022. (Compl., Dkt. 1). Plaintiffs initially sued Ken Paxton, in his official capacity as Attorney General for the State of Texas, and several county and district attorneys around the greater Austin area, including Susan R. Deski, Jose Garza, Wiley B. McAfee, Julie Renken, Fred H. Weber (the "Austin area prosecutors"), seeking a preliminary injunction against all Defendants. (*Id.*). Paxton moved to dismiss the complaint, (Dkt. 33), while the Austin area prosecutors filed an agreed stipulation stating that they did not intend to enforce abortion laws against interstate travel during the duration of this suit. (Agreed Stip., Dkt. 31).

The Court issued its order on Plaintiffs' motion for a preliminary injunction and Paxton's motion to dismiss on February 24, 2023. (Dkt. 120). In its order, the Court found that Paxton could

only enforce Texas's abortion restrictions through H.B. 1280 (also known as the "Trigger Ban"). (*Id.*); 2021 Tex. Sess. Law Serv. ch. 800 (H.B. 1280), Sec. 3 (West); Tex. Health & Safety Code § 170A.001, et seq. However, it found that H.B. 1280 does not regulate out-of-state abortions, and therefore, Paxton would have no authority to prosecute Plaintiffs for funding or assisting out-of-state abortions. (Dkt. 120). Accordingly, the Court granted Paxton's motion to dismiss. (*Id.*).

As to the Austin area prosecutors, the Court determined that they did have enforcement power under the pre-*Roe* laws. (*Id.* at 30–32). Moreover, the Court ruled that the language of the pre-*Roe* laws could be arguably interpreted to cover out-of-state abortions, meaning that Plaintiffs could viably claim a genuine threat of prosecution from the Austin area prosecutors. (*Id.*). The Court found that it was bound by the Fifth Circuit's holding in *McCorvey v. Hill*, 385 F.3d 846 (5th Cir. 2004), which held that the pre-*Roe* laws had been repealed by implication. (*Id.* at 45–47). Accordingly, it preliminarily enjoined the Austin area prosecutors from enforcing the pre-*Roe* laws against Plaintiffs. (*Id.* at 52).

Following the preliminary injunction ruling, Plaintiffs moved to amend their complaint. (Dkt. 125). In their amended complaint, Plaintiffs added their claims against the SB 8 Defendants. Plaintiffs also named several more district and county attorneys as Defendants. (2d Am. Compl., Dkt. 129). They plan to request to certify a class of all district and county attorneys in Texas and to seek permanent injunctions and declaratory judgments holding that the pre-*Roe* statutes and SB 8 may not be enforced against them for facilitating out-of-state abortions. (*Id.* at 79–80).

Both the Prosecutor Defendants and the SB 8 Defendants have moved to dismiss the complaint. For the most part, the Prosecutor Defendants' motions raise the same arguments. They argue that Plaintiffs' claim is not ripe because they have not initiated or planned to initiate any enforcement proceedings against Plaintiffs. (Mot. Dismiss, Dkt. 137). Moreover, they argue the injury is not traceable to the Prosecutor Defendants because it is unrelated to any activity which they

have taken. (*Id.*). Similarly, Putman, the District Attorney for Smith County, argues that Plaintiffs have not plead a valid injury because the pre-*Roe* laws do not appear to authorize enforcement against them, Putman has taken no actions to indicate that he will enforce the laws against them, and they will not have their injuries redressed by a decision against him. (Mot. Dismiss, Dkt. 165).

Separately, the SB 8 Defendants moved to dismiss on grounds of venue and improper joinder. (Mot., Dkt. 167). They argue that the SB 8 Defendants were improperly joined to this action under Rule 20 because the claims do not involve the same transactions or occurrences as the claims against the Prosecutor Defendants. (*Id.*). They then argue that venue is improper because the enforcement threats did not occur in Austin or the Western District of Texas. (*Id.*). The SB 8 Defendants have not moved to dismiss for lack of subject-matter jurisdiction.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in

the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

## B. Rule 12(b)(3)

A party moving to dismiss based on improper venue does so pursuant to Federal Rule of Civil Procedure 12(b)(3). Venue is proper in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

"On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Servs. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007). However, the Court may consider evidence in the record beyond the facts alleged in the complaint and its attachments, including affidavits or evidence submitted by the parties as part of the venue motion. *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 449 (5th Cir. 2008). When it is determined a case is filed in a division or district of improper venue, the district court may either dismiss the case or transfer it to any district or division of proper venue. *See* 28 U.S.C. § 1406(a).

## C. Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To

survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the [plaintiffs'] grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)). "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III. DISCUSSION – PROSECUTOR DEFENDANTS

The Prosecutor Defendants move to dismiss on largely separate grounds from the SB 8 Defendants. Accordingly, the Court will first address the arguments raised by the Prosecutor Defendants before turning to the SB 8 Defendants' motion.[1] Putman argues that Plaintiffs lack an

---

[1] With the exception of Putman, the Prosecutor Defendants' motions to dismiss are nearly verbatim copies. Therefore, for convenience, the Court will refer to the motion to dismiss filed by the Austin area prosecutors, (Dkt. 137), except when addressing specific arguments only raised in other motions to dismiss.

Article III injury, while the remaining Prosecutor Defendants argue that their claim is not ripe or traceable to them. The Court will address each argument in turn.

### A.  Plaintiffs Have an Article III Injury

To demonstrate standing, a plaintiff must show that they have suffered "an injury in fact" that is "fairly traceable" to the defendant's actions and will "likely be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, (1992). In pre-enforcement challenges, a plaintiff "satisfies the injury-in-fact requirement when he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). The relevant inquiry is whether "fear of criminal prosecution . . . is not imaginary or wholly speculative[.]" *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 302 (1979). When prosecutors have "not disavowed enforcement" of a non-moribund statute, a plaintiff is "not without some reason in fearing prosecution for violation." *Id.* In the previous motion to dismiss, the Court held that Plaintiffs meet the threshold for an injury in the context of a pre-enforcement challenge, and it reaffirms that holding today.

1. Plaintiffs' Conduct is Afforded Constitutional Interest

For the most part, the Prosecutor Defendants do not contest Plaintiffs' ability to bring a pre-enforcement challenge. The sole exception is Putman, who argues against each element of a pre-enforcement challenge. (Mot. Dismiss, Dkt. 165, at 5–9). Specifically, he contends that their conduct does not implicate constitutional concerns, that the pre-*Roe* laws do not cover their conduct, and the threat of enforcement is not substantial. (*Id.*).

As to Plaintiffs' constitutional interest, Putman suggests that their desire to fundraise does not implicate the First Amendment because "they do not plead with specificity that they wish to engage in expressive activity with their money, such as election-related speech." (*Id.* at 8 (citing

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 365 (2010))). Even accepting that Plaintiffs'

speech is not expressive, "the solicitation of charitable contributions is protected speech[.]" *Riley v.*

*Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 789 (1988). The Supreme Court has

recognized that the Constitution affords individuals a right to advertise and advocate for activities,

including specifically abortion, that remain legal in other states. *Bigelow v. Virginia*, 421 U.S. 809, 823–

25 (1975) ("[One state] may not, under the guise of exercising internal police powers, bar a citizen of

another State from disseminating information about an activity that is legal in that State.").[2] Beyond

the First Amendment context, Plaintiffs' conduct is also afforded an interest under the Fourteenth

Amendment's right to travel. *See Edwards v. California*, 314 U.S. 160 (1941); *Saenz v. Roe*, 526 U.S. 489

(1999).[3] Their preemption argument is afforded a constitutional interest under the Supremacy

Clause. (2d Am. Compl., Dkt. 129, at 72–73). Their void for vagueness challenge implicates the Due

Process Clauses of the Fifth and Fourteenth Amendments. (*Id.* at 69). The validity of their

constitutional claims may be more fully litigated in a 12(b)(6) or summary judgment motion, but the

possibility that these constitutional claims may lose on the merits does not defeat this Court's

jurisdiction to hear those claims. *See Bell v. Hood*, 327 U.S. 678, 682 (1946) ("Jurisdiction, therefore, is

not defeated as respondents seem to contend, by the possibility that the averments might fail to state

a cause of action on which petitioners could actually recover.").

---

[2] Although some scholars have questioned whether the holding in *Bigelow* is dependent on *Roe*'s validity, *see* David S. Cohen, et al., *The New Abortion Battleground*, 123 COLUM. L. REV. 1, 28–29 (2023), the Fifth Circuit has favorably cited *Bigelow* even after the *Dobbs* decision. *See NetChoice, L.L.C. v. Paxton*, 49 F.4th 439, 450 (5th Cir. 2022).
[3] Putman argues that there is no constitutional interest here because the constitutional right to travel does not implicate the right to have an abortion in another state. This is contradicted by Justice Kavanaugh's concurrence in *Dobbs*, where he opined that "a State [may not bar] a resident of that State from traveling to another state to obtain an abortion . . . based on the constitutional right to interstate travel." *Dobbs*, 142 S. Ct. at 2309 (Kavanaugh, J., concurring). Justice Kavanaugh characterized the question as "not especially difficult as a constitutional matter." *Id.*

2. The Pre-*Roe* Laws Arguably Proscribe Plaintiffs' Desired Conduct

Next, Putman argues that Plaintiffs' conduct is not "arguably proscribed" by the pre-*Roe* statutes. (Mot. Dismiss, Dkt. 165, at 9–10). In its previous order on Plaintiffs' motion for a preliminary injunction, the Court detailed the history of the pre-*Roe* laws and the century-old cases that had attempted to interpret the phrase "furnish the means" within the context of Texas's laws at the time. (Order, Dkt. 120, at 33–36). It found that, although the most plausible interpretation of "furnish the means" referred only to providing abortion medicine, a broader interpretation was still arguable. (*Id.*). In particular, the Court noted that the core decision on point, *Moore v. State*, 40 S.W. 287, 290 (Tex. Crim. App. 1897), could not definitively limit the statute's construction, and that 120 years of developments in statutory interpretation could arguably lead to a different interpretation than *Moore.* (*Id.*).

Putman contends that a broad construction of the law is beyond debate because *Moore*'s age cements its status through stare decisis. (Mot. Dismiss, Dkt. 165, at 15). This argument runs into several problems. First, as the Court previously noted, *Moore*'s discussion was likely dicta. (Order, Dkt. 120, at 35). Second, virtually no other cases have cited *Moore*'s construction in the proceeding century. (*Id.*). In particular, for the last 50 years, Texas was unable to enforce the laws at all, so there are no modern interpretations of "furnish the means." *See generally Roe v. Wade*, 410 U.S. (holding the pre-*Roe* laws unconstitutional). Third, statutory construction has changed since 1897, as has the meaning of the terms "furnishing the means."[4] For example, the Supreme Court of Texas now construes statutes by "looking to the plain and common meaning of the statute's words." *Fitzgerald v. Adv. Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex. 1999). The relevant "plain meaning" of "means" is "something that helps to attain an end; an instrument; a cause." MEANS, *Black's Law Dictionary* (11th ed. 2019). In other words, the plain meaning of the statute appears to cover

---

[4] The pre-*Roe* laws do not define the term "furnishing the means." Tex. Pen. Code. Art. 1192 (West 1961).

furnishing something to help someone obtain an abortion, and therefore can arguably cover Plaintiffs' support for interstate abortions.[5] As the Fifth Circuit recently held, a plaintiff's "interpretation may not be the *best* interpretation [but] the statute doesn't require that." *Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211, 218 (5th Cir. 2023). The conduct must be *arguably* proscribed, not *actually* proscribed. *Id.* Because the pre-*Roe* laws arguably proscribe Plaintiffs' conduct, they satisfy this prong of the pre-enforcement test.

Most problematically for Putman, Texas government officials have taken the stance that the pre-*Roe* laws *do* cover Plaintiffs' conduct. Attorney General Paxton, for example, took the position that "procuring" applies to activities including the "procurement of a bus ticket" to New Mexico to obtain an abortion. (Paxton's Resp., Dkt. 33, at 24). After the law firm Sidley Austin LLP offered to fund travel for out-of-state abortions, a group of Texas legislators known as the Freedom Caucus sent a letter threatening criminal prosecutions under the pre-*Roe* laws, specifically citing "felony criminal liability on any person who 'furnishes the means for procuring an abortion[.]'" (Cain Letter, Dkt. 42-1). State Representative Briscoe Cain Tweeted, "Donating money to a Texas abortion is a crime punishable by 2-5 years Imprisonment" and cited Article 4512.2 of the pre-*Roe* laws. Given the threats of enforcement by the Texas Attorney General, among other lawmakers, the statute arguably proscribes Plaintiffs' conduct. *See In re Paxton*, 53 F.4th 303, 313 (5th Cir. 2022) ("The point is that . . . a trier of fact . . . could find there is sufficient evidence of an unsettling and chilling want

---

[5] Putman suggests that it is only "speculative" that a Texas court would disagree with the *Moore* interpretation. For the reasons already discussed, it is far from clear that *Moore* would be binding or even persuasive on Texas courts. Moreover, the fact that a court may render a limiting construction on a statute does not make the injury speculative. To hold otherwise would be to vacate virtually all pre-enforcement challenges, because it would always be speculative as to what a state court's statutory construction would be. The Supreme Court in *Babbitt*, for example, would have lacked jurisdiction because Arizona state courts could have limited the statute during a prosecution. *Babbitt*, 442 U.S. The Court in *American Booksellers* would have lacked jurisdiction because the statute was potentially "readily susceptible" to a narrowed construction. *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 398 (1988). The potential for state courts to narrow statutes does not render all pre-enforcement injuries speculative.

of clarity in statements by officials with enforcement authority made against a chorus of state officials without enforcement power to allow this case to proceed.") (Higginbotham, J., concurring).

Finally, Plaintiffs do not need to show specific threats of enforcement from each prosecutor. Rather, in the pre-enforcement context of criminal laws, "the threat is latent in the existence of the statute." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020), *as revised* (Oct. 30, 2020). In facial challenges, which Plaintiffs bring, (2d Am. Compl., Dkt. 129, at 65, 67), "courts will assume a credible threat of prosecution in the absence of compelling contrary evidence." *Speech First*, 979 F.3d at 335. None of the Prosecutor Defendants have set forth compelling evidence that they will not prosecute, only that they have made no statement on the matter. Silence is not compelling evidence of non-enforcement, especially where the statute purportedly prohibits the taking of unborn life under Texas law.

### 3. The Threat of Enforcement is Substantial

Relatedly, Putman argues that the threat of enforcement is not "substantial" because the pre-*Roe* laws do not appear to authorize such prosecutions, Plaintiffs waited a year to sue him, and they do not plan to facilitate abortions in Smith County, where Putman is a prosecutor. (Mot. Dismiss, Dkt. 165, at 12–15).

Having found that the pre-*Roe* laws arguably do cover Plaintiffs' conduct, the threat of enforcement is substantial. First and foremost, this threat is demonstrated by the severe punishments that Texas provides for performing an abortion. The Texas government considers abortion a first-degree felony. Tex. Health & Safety Code § 170A.004(b). It views a fetus as an "unborn child" and an "individual living" person. *Id.* § 170A.001(5). The state claims a "compelling interest . . . in protecting . . . the life of the unborn child[.]" Tex. Health & Safety Code § 171.202(3). It is the position of the State of Texas, as codified through H.B. 1280, SB 8, and the pre-*Roe* laws, that an abortion takes the life of an unborn child. Amidst a "chilling want of clarity in statements by

officials with enforcement authority made against a chorus of state officials without enforcement power," and faced with laws that analogize their activities to murder, Plaintiffs face a substantial threat of prosecution. *In re Paxton*, 53 F.4th at 313 (Higginbotham, J., concurring).

Nor is the Court persuaded by Putman's argument that Plaintiffs delayed suing him. Plaintiffs initially sued certain county and district attorneys as representatives of a Defendant class of all local Texas prosecutors. (Compl., Dkt. 1). As a district attorney in Texas, Putman was a member of the putative class. (*Id.*). In effect, Plaintiffs did not wait at all to sue Putman—rather, Putman merely changed from a class member to a named defendant.

Putman's third argument—that Plaintiffs do not have a desire to facilitate abortions in Smith County—runs contrary to the amended complaint. Plaintiffs have specifically stated that they intend to help "Texans across the state," while Plaintiff Afiya Center seeks relief specifically because it serves Texans "who do not reside in the jurisdictions covered by the" Court's earlier order. (Am. Compl., Dkt. 129, at 19, 24). Assuming that Attorney General Paxton's interpretation of Article 4512.2 is correct, and "furnishing the means" includes activities such as purchasing a bus ticket or providing transportation, the criminal venue will lie in Smith County so long as a Texan travels from Smith County to outside the state.

Putman argues that Plaintiffs have not named Smith County specifically, so their hope to fund abortions for Texans in Smith County is purely conjectural. (Mot. Dismiss, Dkt. 165, at 12–15). Since the *Dobbs* decision, Plaintiffs may have felt too intimidated to follow through on facilitating any abortions for people in Smith County, but that does not erase their desire to do so should it become legal. Plaintiffs still have an interest in funding abortions for those Texans in Smith County who seek to have an abortion, even if that interest is currently proscribed by law. Moreover, Plaintiffs have alleged that they previously provided abortion support for Texans across the state. They do not specifically name Smith County, but they do not specifically name *any* county, precisely

because their desire is not to fund abortions on a county-by-county basis, but rather to freely fund abortions from Texans across the state. (2d Am. Compl., Dkt. 129, at 12–29).[6] It is not speculative that if Plaintiffs desire to facilitate abortion travel for all Texans who seek abortions, that will include those who live in Smith County.

Further, the elements of standing must be met only "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. At the motion to dismiss stage, then, the Court credits Plaintiffs' allegations that their ongoing chill comes from the Prosecutor Defendants' threat of enforcement. Similarly, it draws the reasonable inferences that prosecutors will enforce the laws they are tasked with enforcing and that abortion advocacy groups who help Texans across the state will seek to help Texans from Smith County. In short, the Court finds Plaintiffs' allegations sufficient to establish an Article III harm.

### B. Plaintiffs' Claims are Ripe

Perhaps recognizing that Plaintiffs have a concrete injury, the Prosecutor Defendants focus their motion on the argument that Plaintiffs' injury is not ripe for review. Courts examine two factors to determine if a claim is ripe: (1) fitness for review and (2) hardship. *Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 930 (5th Cir. 2023). As to fitness for review, courts look at "whether an injury that has not yet occurred is sufficiently likely to happen to justify judicial intervention." *Pearson v. Holder*, 624 F.3d 682, 684 (5th Cir. 2010) (quoting *Chevron U.S.A., Inc., v. Traillour Oil Co.*, 987 F.2d 1138, 1153 (5th Cir. 1993)). As to hardship, courts simply examine "the hardship to the parties of withholding court consideration." *Braidwood*, 70 F.4th at 930.

---

[6] The amicus brief filed by the American Medical Association, College of Obstetricians and Gynecologists, and other professional medical organizations is particularly illustrative on this point. (Amicus Br., Dkt. 185, at 10, 18–19). At least 5,500 Texans obtained out-of-state abortions between September and December 2021. (*Id.* at 10). And Texans in rural counties are considerably less likely to have access to the same level of obstetric care. (*Id.* at 18–19).

Fitness for review is appropriate here because the injury is present and ongoing. Again, the injury that Plaintiffs are suffering is not just prosecution itself, but the *threat* and *chill* of prosecution. Because of the pre-*Roe* laws and the credible threat of their enforcement, they are suffering ongoing harms. They cannot fulfill their organizational mission, which is to support and advocate for lawful abortions, including those that occur out-of-state. (2d Am. Compl., Dkt. 129, at 11–29).[7] They have continued 'to receive[] repeated messages from staff and volunteers that they are afraid to continue their work, or that the uncertainty related to civil and criminal enforcement is impacting their lives." (*Id.* at 12–13). Employees have left their organizations as a result, (*Id.* at 13), and some donors have stopped providing funds. (*Id.* at 14, 16). For the same reason, Plaintiffs are suffering an ongoing hardship, and in the absence of this Court's injunction, would have effectively ended their core operations altogether. (Order, Dkt. 120, at 13 (noting that some Plaintiffs had ceased all operations after *Dobbs*)).

The Prosecutor Defendants' motions to dismiss provides detailed caselaw citations on ripeness. (Mot. Dismiss, Dkt. 137, at 2–5). Its analysis, however, is more lacking, and states simply: "Plaintiffs' request for declaratory relief is not ripe, and therefore not justiciable." (*Id.* at 5). They explain that there "is no allegation and no evidence alleged in the Second Amended Complaint that any Austin [] Prosecutor Defendant has stated such an intent" to prosecute Plaintiffs. But again, this goes to whether they can bring a pre-enforcement challenge, not whether the claim is ripe. The Prosecutor Defendants fail to explain why the claims are not fit for review and why Plaintiffs would not suffer hardship in the absence of review.

---

[7] Some of the Plaintiffs appear to have resumed providing practical support for out-of-state abortions following this Court's entry of a preliminary injunction against the Austin area prosecutors. (2d Am. Compl., Dkt. 129, at 12). To state the obvious: the entry of a preliminary injunction does not negate a plaintiff's injury simply because it has provided interim relief. At the time of their initial complaint, Plaintiffs could not engage in their desired conduct at all.

### C. Traceability and Redressability

Next, the Prosecutor Defendants argue that Plaintiffs lack a causal connection between their alleged injuries and the prosecutor's conduct. (Mot. Dismiss, Dkt. 137, at 6–7 ("[T]here has been no evidence or testimony offered by Plaintiffs demonstrating any statements, comments, interviews or correspondence by the Austin Division Prosecutor Defendants threatening any enforcement action in response to Plaintiffs' desired conduct[.]")). In sum, because the Prosecutors have not threatened to enforce the pre-*Roe* bans against Plaintiffs, they argue the injury is not traceable to them.

Here, there is no doubt that the Prosecutor Defendants have the statutory ability to enforce the pre-*Roe* laws. As this Court has already found, the pre-*Roe* laws exclusively task district and county attorneys with prosecutorial power. (Order, Dkt. 120, at 33–36). The Prosecutor Defendants are correct (with the possible exception of Putman) that they have not explicitly threatened to enforce the pre-*Roe* bans against Plaintiffs. But they ignore the presumption that prosecutors will enforce the laws they are tasked with enforcing. They do not need to make specific threats to enforce the pre-*Roe* laws in order for the threat of enforcement to be a reasonable inference. "[A] plaintiff who mounts a pre-enforcement statutory challenge on First Amendment grounds need not show that the authorities have threatened to prosecute him" because "the threat is latent in the existence of the statute." *Speech First*, 979 F.3d at 335.

The Austin area prosecutors (i.e., the Prosecutor Defendants who were initially sued in Plaintiffs' original complaint) argue that the injury is not redressable because they have already agreed to be bound by any preliminary or permanent injunction in this case. (Mot. Dismiss, Dkt. 137, at 7–8). This cannot negate Plaintiffs' Article III injury because, if this Court lacked jurisdiction, it could not enter an injunction, which would thereby moot the Austin area prosecutor's agreement and cause Plaintiffs to suffer an injury once again. Indeed, the fact that Plaintiffs have been able to resume certain services *after* this Court's preliminary injunction shows precisely that the injury is

redressable by a court order. It would be illogical to claim that an injury is not redressable by a court order because the injury has been temporarily relieved by a court order.[8] Plaintiffs fear that the Prosecutor Defendants will pursue criminal prosecution for facilitating out-of-state abortions. A court order that enjoins the Prosecutor Defendants from pursuing such prosecutions will redress that injury.

In sum, the Court finds that Plaintiffs are suffering an injury in fact that is traceable and redressable to the Prosecutor Defendants. Accordingly, it will deny their motions to dismiss.

## IV. DISCUSSION – SB 8 DEFENDANTS

The SB 8 Defendants move to dismiss on separate grounds of improper joinder and venue. (Mot. Dismiss, Dkt. 167). The SB 8 Defendants do not move to dismiss on grounds of lack of subject-matter jurisdiction. (*Id.*).

### A. Joinder

#### 1. The Claims Involve the Same Occurrences

The SB 8 Defendants argue that joinder is improper with Plaintiffs' claims against the Prosecutor Defendants. (Mot. Dismiss, Dkt. 167, at 5). Rule 20 sets out two factors for whether joinder is proper:

> "Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a).

---

[8] Putman sets forth a similar argument: "The fact that injunctions against specific prosecutors cannot rectify Plaintiffs' harm is illustrated by the fact that they repleaded and added defendants (including Putman) *after the Court granted injunctive relief.*" (Mot. Dismiss, Dkt. 165, at 16) (emphasis in original). Again, the Court views the argument to show the exact opposite: Plaintiffs added more Defendants precisely because the injunction *did* redress their injuries in the specific counties represented by the enjoined prosecutors. By adding more Defendants, Plaintiffs can obtain more complete relief.

First, a common series of transactions or occurrences runs through claims against both the SB 8 Defendants and the Prosecutor Defendants. Plaintiffs have ceased providing support for abortions and have been unable to facilitate abortions outside the State of Texas because of SB 8 and the pre-*Roe* laws.[9] Indeed, this Court's order noted at length that every single Plaintiff organization was forced to stop providing support for abortions—their core organizational mission—when SB 8 went into effect, a fear that was exacerbated by potential liability under the pre-*Roe* laws following *Dobbs*. (Order, Dkt. 120, at 10–14). The chilling of Plaintiffs' core organizational activities derives both from SB 8 and the pre-*Roe* laws. (*Id.*). This chill includes concrete occurrences, such as donors telling Plaintiffs' organizations that they no longer feel safe donating because of liability under the laws. (*Id.* at 11 ("Fund Texas Choice has received communications from its donors saying that they will not donate because of the potential for criminal and civil liability[.]")). Because Plaintiffs' chill is an occurrence which relates to both the SB 8 Defendants and the Prosecutor Defendants, the parties are properly joined.

The SB 8 Defendants prefer to define "transactions or occurrences" only as those which the Defendants undertake. (Mot. Dismiss, Dkt. 167, at 5–6). They characterize fear of "private civil enforcement lawsuits under [SB8]" as different than "violating the state's criminal abortion prohibitions." (*Id.*). But there is no support for the notion that conduct from multiple defendants—resulting in the same injury and regarding the same legal issues—must be filed in separate suits. To the contrary, the court should seek the "broadest possible scope of action consistent with fairness to the parties[.]" *Def. Distributed v. Bruck*, 30 F.4th 414, 427 (5th Cir. 2022). District courts should "liberally construe permissive joinder of claims and parties in the interest of judicial economy." *Stein v. Navient Sols., LLC*, No. A-17-CV-907 LY, 2018 WL 2124108, at *2 (W.D. Tex. May 7, 2018)

---

[9] Again, some Plaintiffs have been able to resume some operations pending the Court's entry of a preliminary injunction.

(citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)). The SB 8 Defendants'

position—that claims cannot derive from the same occurrence when they involve different laws—

runs directly contradictory to this position. *See United Mine Workers*, 383 U.S. at 724 ("Under the

Rules, the impulse is towards entertaining the broadest possible scope of action consistent with

fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.").

 *Defense Distributed* is directly on point.[10] In that case, a plaintiff who wished to distribute

blueprints for 3D-printed firearms sued both the New Jersey Attorney General and the U.S.

Department of State (among other defendants) because both defendants sought to regulate the

distribution of firearm blueprints, even though the former enforced state criminal laws while the

latter promulgated federal regulations. *Id.* The district court severed claims by a plaintiff against the

New Jersey Attorney General on the basis that his enforcement of state law criminal penalties

(threatened through a cease-and-desist letter) were separate from the State Department's use of civil

export controls. *Def. Distributed v. Grewal*, No. 1:18-CV-637-RP, 2021 WL 1614328 (W.D. Tex. Apr.

19, 2021). The Fifth Circuit reversed the district court's grant of severance, granting mandamus

relief that is reserved "as an extraordinary remedy for extraordinary cases." *Bruck*, 30 F.4th at 426. It

noted that "having to tell the same story in two courts would abuse Plaintiffs and the judicial

process." *Id.* at 430. It made no mention of the fact that state criminal prosecutions would differ

from federal civil enforcement. *Id.* As the Fifth Circuit has found it wrong to sever claims when they

involve defendants with different enforcement mechanisms, the Court finds that it would be equally

wrong to dismiss the SB 8 Defendants for improper joinder.

---

[10] The SB 8 Defendants argue that *Defense Distributed* is irrelevant because it focuses on severance, rather than joinder. But motions to sever under Rule 21 look to the factors of Rule 20 for guidance. *See Stein*, 2018 WL 2124108, at *2. Indeed, improper joinder may be remedied by severing the party. *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 522 (5th Cir. 2010) ("The proper remedy in case of misjoinder is to grant severance or dismissal to the improper party if it will not prejudice any substantial right.") (quoting *Sabolsky v. Budzanoski*, 457 F.2d 1245, 1249 (3d Cir. 1972)).

The SB 8 Defendants' own briefing illustrates how the two set of Defendants are intertwined. The SB 8 Defendants' Rule 202 petitions seek discovery because the "State of Texas has never repealed its pre-*Roe v. Wade* statutes that outlaw and criminalize abortion[.]" (Maxwell 202 Pet., Dkt. 129-31, at 4). The validity of this request by the SB 8 Defendants turns directly on the validity of Plaintiffs' claims against the Prosecutor Defendants. Similarly, a reply filed by the SB 8 Defendants concedes that their strategy on the merits is to show "that the plaintiffs are criminals and criminal organizations that have violated the criminal abortion laws of Texas and other jurisdictions." (Reply, Dkt. 230, at 3). Again, the question of whether the pre-*Roe* laws criminalize Plaintiffs' conduct is at issue in their suit against the Prosecutor Defendants. The SB 8 Defendants' argument directly relates to Plaintiffs' own claims against the Prosecutor Defendants, and it would be erroneous to force Plaintiffs to litigate these two interrelated claims separately.

In sum, Plaintiffs have suffered the same injury because of the SB 8 and Prosecutor Defendants' conduct. Both SB8 and the pre-*Roe* laws presently chill Plaintiffs' ability to carry out their organizational mission in an interrelated, complementary fashion. Defendants' use of different laws to effect the same chill does not defeat the liberal construction of joinder required by Rule 20.

## 2. The Claims Involve Other Common Questions of Law and Fact

The SB 8 Defendants argue that they "enforce different statutes" than the Prosecutor Defendants, "so there cannot be a 'common question of law'" that the plaintiffs are asserting against these two groups of defendants. (Mot. Dismiss, Dkt. 167, at 10). This argument ignores the common *constitutional* questions raised by both claims. Undoubtedly, Plaintiffs challenge two different state statutes. But the central question is whether those state laws comport with federal law (i.e., the U.S. Constitution). This includes determining whether the Constitution protects the right to travel across state lines to obtain an abortion, whether an organization within the state can constitutionally fund such travel, and whether the statutes violate the First Amendment through

restrictions on finances and donations. These are common questions of federal law that underlie both the SB 8 and pre-*Roe* law claims.

The SB 8 Defendants appear to argue that these constitutional questions—despite being counts of relief requested in the complaint—are imaginary. (Reply, Dkt. 204, at 5). They argue that "[n]one of the SB 8 Defendants have ever asserted that SB 8 applies extraterritorially[.]" (*Id.*).[11] But the text of SB 8 itself imposes liability for abortions performed by Texas-licensed physicians and contains no other limitations on geographic scope. (*See* Order, Dkt. 120, at 6 (explaining application of law to Texas physicians). A physician licensed in both Texas and California could face liability under SB 8, even if they perform the abortion in California. Indeed, Plaintiff Dr. Moayedi is licensed in Texas and 19 other states. (2d Am. Compl., Dkt. 129, at 26). SB 8 risks imposing liability on her abortions performed in those 19 other states, regardless of whether they are legal in those states. The constitutionality of extraterritorial restrictions on abortions for Texans is central to Plaintiffs' claims.

Similarly, retroactivity is a common question to both claims. The pre-*Roe* laws' enforcement was suspended by the Supreme Court's decision from *Roe v. Wade* until *Dobbs*. SB 8 was suspended during a temporary restraining order in *Whole Woman's Health* and again in *U.S. v. Texas*. The question of liability during the time that a federal court has found the state statute unconstitutional is common to both claims.[12]

---

[11] The SB 8 Defendants also state that "this Court has already ruled that the pre-*Roe* criminal abortion statutes do not apply to abortions performed outside the state." (Reply, Dkt. 204, at 5). The Court held the exact opposite, finding no limitation against extraterritoriality in the laws. (Order, Dkt. 120).

[12] The SB 8 Defendants suggest that SB 8 "has been in continuous effect since September 1, 2021[.]" This is misleading, as this Court issued an injunction in *U.S. v. Texas*, 566 F. Supp. Perhaps the SB 8 Defendants seek to argue that SB 8 remained in effect while enjoined. *See* Jonathan F. Mitchell, *The Writ-Of-Erasure Fallacy*, 104 VA. L. REV. 933 (2018). Both the pre-*Roe* laws and SB 8 were found to be unconstitutional in decisions that were later reversed. The SB 8 Defendants' implication that SB 8 remained in effect during an injunction only serves to underscore the point that Plaintiffs' claims share a common question of law regarding the constitutionality of retroactive punishment.

Finally, the First Amendment protections afforded to advocating and funding abortions are common to both claims. Plaintiffs seek to advocate for abortions (including those in the state) and fund interstate travel. (2d Am. Compl., Dkt. 129, at 67). Both SB 8 and the pre-*Roe* laws risk chilling this advocacy. (*Id.*). And both laws allegedly suffer from vagueness issues, with the pre-*Roe* laws failing to define "furnish the means" while SB 8 fails to define "aiding and abetting." (*Id.* at 70 (complaining of vagueness)). The constitutionality of these allegedly vague phrases is at issue in both claims, as is the chill that the vagueness allegedly has on their First Amendment expression. Because the same constitutional concerns underlie claims against SB 8 and the pre-*Roe* laws, the claims share a common question of law.

### B. Venue

Having found that joinder is proper, venue becomes straightforward. Under 28 U.S.C. § 1391(b)(1), venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located[.]" At least one Defendant (e.g., José Garza) resides in this district. All SB 8 Defendants are residents of the state. (Mot. Dismiss, Dkt. 167). As long as joinder is proper in this case, venue follows.

Even if the SB 8 Defendants were not properly joined, venue would still be proper. Under 28 U.S.C. § 1391(b)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]" Here, any "substantial part" analysis must bear in mind that SB 8 delegates enforcement to private parties, regardless of whether they have suffered any injury. Because a plaintiff under SB 8 can have zero connection to collect damages for another person's abortion, "venue" is necessarily more dispersed.

Still, it is evident that a substantial part of the events giving rise to this suit occurred in the Western District of Texas (and particularly in Austin). SB 8 was enacted in Austin. This Court, sitting in Austin, temporarily restrained the law from taking effect. *Whole Woman's Health v. Jackson,*

556 F. Supp. 3d 595 (W.D. Tex. 2021), *aff'd in part, rev'd in part* 142 S. Ct. 522 (2021). The United States moved for a preliminary injunction against SB 8 in Austin, which was granted. *United States v. Texas*, 566 F. Supp. 3d. These injunctions are central to Plaintiffs' claims because the litigation hold letters that form the basis of the suit stem from abortions performed during this Court's injunctions. (2d Am. Compl., Dkt. 129, at 51–55).

One of the SB 8 Defendants, Mistie Sharp, sought to intervene in that case, which the Court granted. *United States v. Texas*, No. 1:21-cv-796 (W.D. Tex. filed Sept. 9, 2021) (Order, Dkt. 40). In her motion to intervene, Sharp noted that she "intend[s] to sue only abortion funds who pay for other people's abortion in violation of [SB 8]." (Mot. Intervene, Dkt. 129-32). That declaration put the abortion funds on notice of a duty to preserve documents, which forms the basis of a core part of their injuries against the SB 8 Defendants. *See, e.g., Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010) ("Generally, the duty to preserve arises when a party has notice that the evidence is relevant to litigation or should have known that the evidence may be relevant to future litigation.") (cleaned up). To that end, three litigation hold letters were sent from Austin to Plaintiffs and their counsel. (Thompson Coburn Litig. Hold Letter, Dkt. 129-2; Alexander DuBose Litig. Hold Letter, Dkt. 129-3; Buckle Bunnies Litig. Hold Letter, Dkt. 129-4). The litigation (and litigation holds) that form the core of this controversy occurred in Austin, and they constitute a "substantial part" of the events giving rise to this action.

Plaintiffs' activities also support venue in this district. Plaintiffs Fund Texas Choice, the Lilith Fund, West Fund, and Jane's Due Process all maintain their headquarters within the Western District of Texas. (Resp., Dkt. 177, at 16). Because of SB 8 and the pre-*Roe* laws, they have been forced to stop providing support for abortions, including out-of-state abortions prior to this Court's preliminary injunction. *See Umphress v. Hall*, 479 F.Supp.3d 344, 352 (N.D. Tex. Aug. 14, 2020)

(noting that in venue determinations, "the Court may . . . consider the location of the effects of the alleged conduct, which can include a consideration of a plaintiff's activities.").[13]

Because the SB 8 Defendants were properly joined, venue is proper in this district. Even without joinder, a substantial portion of the events at issue occurred in the Western District of Texas. Therefore, the Court will deny the SB 8 Defendants' motion to dismiss.

## V. DISCUSSION – Pending Discovery Motions

### A. Rule 56(d)

Having denied the SB 8 Defendants' motions to dismiss, the Court turns to their motion to defer consideration of Plaintiffs' motion for summary judgment under Rule 56(d). (Mot., Dkt. 217). Under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). The party resisting summary judgment must demonstrate two things: "1) why he needs additional discovery, and 2) how the additional discovery will likely create a genuine issue of material fact." *Chenevert v. Springer*, 431 F. App'x 284, 287 (5th Cir. 2011).

In general, Rule 56(d) motions should be "broadly construed and liberally granted." *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010). In particular, when a moving party has included declarations in their motion for summary judgment, the opposing party may ordinarily seek discovery related to those declarants. (Mot., Dkt. 217, at 4–5 (citing *Converse v. City of Kemah, Texas*, No. 3:15-CV-00105, 2021 WL 5811726, at *2 (S.D. Tex. Dec. 7, 2021))). Plaintiffs' motion contains

---

[13] Indeed, in *Umphress*, the Court considered "omissions" to encompass a plaintiff's chill and unwillingness to engage in protected conduct. *Id.* And "events" included the plaintiff's speech about wanting to resume his protected conduct. Under this logic, events and omissions for Plaintiffs must include their fundraising efforts in Austin and the abortion travel they are no longer able to support.

several declarations that describe SB 8's chill on their ability to fund or facilitate abortions. (Mot. Summ. J., Dkt. 209). These declarations are largely identical and contain few factual assertions other than statements that the organizations are suffering an ongoing chill. (*Id.* at 190–235). Nonetheless, because those declarations are relevant to Plaintiffs' claims, the SB 8 Defendants are entitled to take limited discovery on the matter. *See* Fed. R. Civ. P. 26(b)(1). Accordingly, the Court will grant the Rule 56(d) motion in part and allow the SB 8 Defendants to take limited discovery.

### B. Limitation of Discovery Under Rule 26

A complete review of the record in this case shows a clear need to tailor discovery to the actual questions at issue in this case. In general, the scope of discovery is broad. *Crosby v. La. Health Serv. and Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). Still, discovery must be reasonably calculated to produce evidence that is relevant to a party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The Court, on motion or on its own, may limit the frequency or extent of discovery. Fed. R. Civ. P. 26(b)(2)(C).

During the pendency of this motion to dismiss and the Rule 56(d) motion, the parties filed multiple motions for protective order, motions to compel, and motions to quash. (*See, e.g.*, Dkts. 219, 224, 245, 246, 247, 250, 251). The Court referred the motions to U.S. Magistrate Judge Susan Hightower, who stayed discovery pending further order of the Court. (Order, Dkt. 256).

While these motions have been partially addressed by the stay, the volume of the parties' motions indicates a need for guideposts on the scope of discovery. Several factors here warrant some limitation on discovery. First, Plaintiffs challenge the constitutionality of a state law, and their arguments rest almost entirely on questions of law—not fact. (*See* Mot. Summ. J., Dkt. 209). They argue that SB 8 is unconstitutionally vague, violates the Equal Protection Clause, violates the Eighth Amendment, and suppresses their First Amendment rights. These are pure questions of law, and discovery is unlikely to produce relevant facts to their constitutional challenge. Indeed, the SB 8

Defendants' Rule 56(d) motion only mentions the need for jurisdictional discovery—not discovery on the merits. (*See* Mot., Dkt. 217).

The one issue that the SB 8 Defendants identify on the merits in their reply brief is whether Plaintiffs can claim First Amendment protection for activity that violates criminal law(s). (Defs.' Reply, Dkt. 230, at 3). However, Plaintiffs bring their First Amendment challenge against SB 8 on its face, not as applied. A showing that Plaintiffs engage in criminal conduct would not affect the relevant facial analysis because SB 8 on its face regulates both protected and unprotected speech. For this reason, district courts have commonly held that parties do not need discovery to defend a law's facial validity. *See S.C. Freedom Caucus v. Jordan*, No. 3:23-CV-795-CMC, 2023 WL 4010391, at *8 (D.S.C. June 13, 2023) ("The court finds discovery is unnecessary to determine whether Plaintiff has standing to bring this constitutional challenge[.]"); *Briggs v. Yi*, No. 3:22-CV-00265-SLG, 2023 WL 2914395, at *5 (D. Alaska Apr. 12, 2023) ("[Plaintiff's] facial challenge to the constitutionality of [the challenged law] is a pure question of law and [Defendant] has not identified any discoverable facts that would be relevant to resolving this question."); *Shelby County v. Holder*, 270 F.R.D. 16, 19 (D.D.C. 2010) ("Because Shelby County brings only a facial challenge to the [Voter Registration Act], discovery into that claim is unwarranted."); *Gen. Elec. Co. v. Johnson*, 362 F. Supp. 2d 327, 337 (D.D.C. 2005) ("[A] facial challenge to the text of a statute does not typically require discovery for resolution because the challenge focuses on the language of the statute itself."). While the SB 8 Defendants may make arguments as to why discovery is needed to resolve the facial challenge, the Court will not deviate at this stage from the presumption that discovery is unnecessary for the merits of Plaintiffs' facial challenges.

Moreover, the SB 8 Defendants have not shown why subject matter jurisdiction cannot be resolved on the pleadings. Although the SB 8 Defendants have not filed a 12(b)(1) motion, such motions are commonly decided at the pleading stage, before extensive discovery takes place. Had

the Court denied any SB 8 Defendant's motion to dismiss for lack of jurisdiction on the basis of an underdeveloped evidentiary record, then the SB 8 Defendants would have a colorable argument that discovery is necessary. But the SB 8 Defendants did not move to dismiss for lack of jurisdiction. It appears exceedingly likely that most of the subject-matter jurisdiction arguments can be resolved on a 12(b)(1) motion prior to discovery, as is the case with the Prosecutor Defendants. Plaintiffs need not answer thousands of discovery requests to assist in a jurisdictional inquiry that can, in all likelihood, be resolved on the pleadings.[14]

Finally, the Court notes that the discovery requests in this case appear overbroad. In the preceding three months, the SB 8 Defendants have served Plaintiffs with at least 272 interrogatories, 175 requests for production, and 542 requests for admission. (Mot. Protective Order, Dkt. 246, at 2). Plaintiffs' most recent accounting states that "the SB 8 Defendants have served over 1,691 written requests for discovery." (Pls.' Resp., Dkt. 249, at 2 n.1). The Court recognizes that Rule 26 authorizes a broad scope of discovery and that, as there are ten different Plaintiffs, the number of corresponding discovery requests will multiply. Still, 169 discovery requests per Plaintiff is overly broad, especially given that they are likely to be duplicative. Such voluminous requests would impose substantial costs on any party, especially considering that the requests appear to have been withdrawn and then re-served. (Mot. Protective Order, Dkt. 246, at 2 n.2); *see also* Fed. R. Civ. P. 26, Advisory Committee's note to 2015 amendment ("The objective is to guard against redundant or disproportionate discovery" and "to encourage judges to be more aggressive in identifying and discouraging discovery overuse.").

---

[14] While the SB 8 Defendants seek discovery related to venue, that issue has become moot by this order. Because Defendants are properly joined, venue lies in this district as a matter of law. *See* 28 U.S.C. § 1391(b)(1) ("A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located[.]").

In order to avoid the costly, burdensome, and disorderly pattern of discovery motions filed in the preceding months, the Court will impose initial limitations on discovery. This order shall not bar the SB 8 Defendants from seeking additional discovery, and as necessary, the SB 8 Defendants may file motions to compel or to exceed the discovery set forth in this order.

Therefore, the Court will allow initial limited discovery as follows:

- The SB 8 Defendants may serve written interrogatories on each declarant in Plaintiffs' motion for summary judgment, not to exceed eight questions each.
- The SB 8 Defendants may conduct depositions of each declarant, not to exceed two hours per deposition.
- Should the SB 8 Defendants seek document production, they must first file a motion to compel. Such a motion shall describe in specific detail why the documents are necessary to contest Plaintiffs' assertion of subject-matter jurisdiction or defend the case on the merits.

The SB 8 Defendants shall file a response to Plaintiffs' motion for summary judgment no later than two weeks after the close of this discovery.

## VI. CONCLUSION

**IT IS ORDERED** that the motions to dismiss, (Dkts. 137, 161, 162, 163, 164, 165, 166, 167, 176), are **DENIED**.

**IT IS FURTHER ORDERED** that the motion to defer summary judgment, (Dkt. 217), is **GRANTED IN PART** as set forth in this order.

**SIGNED** on December 21, 2023.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE