**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **Plaintiffs Fund Texas Choice, et al.,**<br><br>        **Plaintiffs,**<br>**v.**<br><br>**JOSE GARZA, in his Official Capacity of Travis County District Attorney, et al.,**<br><br>        **Defendants.** | **Civil Case No. 1:22-cv-859** |

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**
**AGAINST PROSECUTOR DEFENDANTS**

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ................................................................................................. 1

II.  UNDISPUTED FACTS AND PROCEDURAL BACKGROUND ........................................ 1

III. LEGAL STANDARD ............................................................................................ 6

IV.  SUMMARY OF ARGUMENT ................................................................................ 6

V.   ARGUMENT & AUTHORITIES .............................................................................. 8

      A.   The Court correctly determined that Plaintiffs have standing and that their
           claims against the Prosecutor Defendants are ripe. ................................... 8

      B.   Plaintiffs are entitled to declaratory judgment on Count III that the Pre-
           *Roe* Statutes were repealed by implication. ............................................ 10

      C.   Plaintiffs are entitled to declaratory judgment on Count III that the Pre-
           *Roe* Statutes cannot be enforced against them for conduct that occurred
           before the *Dobbs* mandate issued or while *McCorvey* remains the law of
           the Fifth Circuit. ...................................................................................... 12

      D.   Plaintiffs are entitled to declaratory judgment on Counts I and II that the
           Pre-*Roe* Statutes cannot be enforced against them. ............................... 15

           1.   The right to travel protects Plaintiffs' Desired Conduct. .......................... 15

           2.   The Pre-*Roe* Statutes violate Plaintiffs' rights to free speech and
                 association. ............................................................................................... 19

      E.   Plaintiffs are entitled to declaratory judgment on Count IV that the
           "furnishing the means" provision of the Pre-*Roe* Statutes is
           unconstitutionally vague. .......................................................................... 21

      F.   Alternatively, Plaintiffs are entitled to a declaration under Count V that the
           Pre-*Roe* Statutes cannot apply to their Desired Conduct as a matter of
           Texas law. ................................................................................................ 24

      G.   Plaintiffs are entitled to a permanent injunction prohibiting the Prosecutor
           Defendants from enforcing the Pre-*Roe* Statutes against Plaintiffs. .......... 25

VI.  CONCLUSION .................................................................................................... 27

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aptheker v. Secretary of State*, 378 U.S. 500 (1964) ...............................................................17, 18

*Baggett v. Bullitt*, 377 U.S. 360 (1964)...................................................................................23

*Bigelow v. Virginia*, 421 U.S. 809 (1975)...........................................................................20, 21

*Book People, Inc. v. Wong,* 91 F.4th 318 (5th Cir. Jan. 17, 2024) .................................................26

*Bouie v. City of Columbia*, 378 U.S. 347 (1964) ..........................................................7, 13, 14

*Bryan v. Sundburg*, 5 Tex. 418 (1849)....................................................................................11

*Califano v. Gautier Torres*, 435 U.S. 1 (1978)..........................................................................15

*Citizens United v. Fed. Election Com'n*, 558 U.S. 310 (2010).....................................................19

*Corfield v. Coryell*, 6 F. Cas. 546 (C.C.E.D. Pa. 1823) .............................................................16

*De Leon v. Perry*, 975 F. Supp. 2d 632 (W.D. Tex. 2014), *aff'd sub nom. De Leon v. Abbott*, 791 F.3d 619 (5th Cir. 2015)....................................................................26

*Dep't of Texas, Veterans of Foreign Wars of U.S. v. Texas Lottery Comm'n*, 760 F.3d 427 (5th Cir. 2014) ..................................................................................19

*Dobbs v. Jackson Women's Health Organizatio*n, 597 U.S. 215 (2022)............................... *passim*

*Doe v. Bolton*, 410 U.S. 179 (1973)........................................................................................16

*Dunn v. Blumstein*, 405 U.S. 330 (1972) .................................................................................18

*eBay Inc. v. MercExchange*, L.L.C., 547 U.S. 388 (2006) ...........................................................25

*Ex Parte Siebold*, 100 U.S. 371 (1879)....................................................................................14

*F.D.I.C. v. Abraham*, 137 F.3d 264 (5th Cir. 1998) ...................................................................11

*Fed. Crude Oil Co. v. Yount-Lee Oil Co.*, 52 S.W.2d 56 (1932)....................................................12

*Fleming Foods of Texas, Inc. v. Rylander*, 6 S.W.3d 278 (Tex. 1999) .........................................12

*Free Mkt. Found. v. Reisman*, 573 F. Supp. 2d 952 (W.D. Tex. 2008)....................................19, 27

*Gordon v. Lake*, 356 S.W.2d 138 (Tex. 1962)....................................................................10, 11

*In re Paxton*, 60 F.4th 252 (5th. Cir. 2023) ................................................................23

*Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274 (5th Cir. 1996)..........................26

*Int'l Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Tex. Steel Co.*, 538
 F.2d 1116 (5th Cir. 1976) ............................................................................................6

*Kent v. Dulles*, 357 U.S. 116 (1958) ............................................................................15

*Kolender v. Lawson*, 461 U.S. 352 (1983)....................................................................22

*Landgraf v. USI Film Prods.,* 511 U.S. 244 (1994)......................................................21

*Marbury v. Madison*, 5 U.S. 137 (1803).......................................................................14

*McCorvey v. Hill*, 385 F.3d 846 (5th Cir. 2004), cert denied 543 U.S. 1154 (2005) ........... *passim*

*Mendez v. Poitevent*, 823 F.3d 326 (5th Cir. 2016) ........................................................6

*Moore v. State*, 40 S.W. 287 (Tex. Crim. App. 1897)..............................................24, 25

*Nat'l Inst. Of Family & Life Advocates v. Becerra*, 585 U.S. 755 138 S. Ct. 2361
 (2018)..........................................................................................................................21

*NetChoice, L.L.C. v. Paxton*, 49 F.4th 439 (5th Cir. 2022), *cert. granted in part
 sub nom. Netchoice, LLC v. Paxton*, 216 L. Ed. 2d 1313 (Sept. 29, 2023) ............20

*NetChoice, L.L.C. v. Paxton*, No. 21-51178, 2022 WL 4285917 (5th Cir. Sept. 16,
 2022) ...........................................................................................................................21

*O'Connor v. Smith*, 427 Fed. Appx. 359 (5th Cir. 2011) .............................................25

*Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992) .....................2

*Radzanower v. Touche Ross & Co.*, 426 U.S. 148 (1976) ............................................10

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) .............................................................21

*Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781 (1988)............19, 20

*Robak v. United States*, 658 F.2d 471 (7th Cir. 1981)..................................................20

*Roe v. Wade*, 410 U.S. 113 (1973).......................................................................1, 11, 14

*Rowan Oil Co. v. Texas Employment Commission*, 263 S.W.2d 140 (Tex. 1953).........12

*Saenz v. Roe*, 526 U.S. 489 (1999) ...............................................................................16

*Secretary of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947 (1984)..............19, 20

*Serafine v. Branaman*, 810 F.3d 354 (5th Cir. 2016) ..................................................................21

*Shapiro v. Thompson*, 394 U.S. 618 (1969) (Harlan, J., dissenting), *overruled on
    other grounds by Edelman v. Jordan*, 415 U.S. 651 (1974) ...................................................16

*Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535 (5th Cir. 2013) ..........................19

*Texas Mun. Police Assoc. v. Texas Ethics Comm'n*, No. A-08-CA-741-SS, 2010
    WL 11506913 (W.D. Tex. Oct. 29, 2010) ...............................................................................19

*United States v. Guest*, 383 U.S. 745 (1966) ........................................................................15, 16

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982).......................22

*Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620 (1980) ....................19

*Ward v. State*, 79 U.S. 418 (1870) .............................................................................................16

*Women's Med. Ctr. of Nw. Houston v. Bell*, 248 F.3d 411 (5th Cir. 2001)..............................23, 27

*Yellowhammer Fund v. Marshall, et al.*, No. 2:23-cv-00450, slip op. (M.D.Ala.
    May 6, 2024)..........................................................................................15, 16, 17, 18

**Statutes and Constitutional Provisions**

42 U.S.C. § 1988..........................................................................................................................27

Magna Carta (1215) cl. 41 ...........................................................................................................15

TEX. CODE CRIM. PROC. ARTS. 2.01-02............................................................................................3

TEX. HEALTH & SAFETY CODE ANN. § 170A.001 *et seq.* ...............................................................3

Texas Bingo Enabling Act ............................................................................................................19

Texas Revised Civil Statutes, Articles 4512.1-4512.4 and 4512.6....................................... *passim*

U.S. CONST. amend. I...............................................................................................................17, 19

U.S. CONST. amend. V; amend. XIV, § 1 ..................................................................................9, 16

U.S. CONST. amend. XIV, § 1 .......................................................................................................16

U.S. CONST. art. I, § 8, cl. 3 .........................................................................................................16

U.S. CONST. art. IV, § 2, cl. 1 .......................................................................................................16

**Rules**

Fed. R. Civ. P. 56................................................................................................................6

Tex. R. Civ. P. 202..............................................................................................................5

**Other Authorities**

Articles of Confederation of 1781, art. IV, para. 1 ......................................................15

Senate Bill No. 8, 2021 Legislative Session ...............................................................11

# I.  INTRODUCTION

Plaintiffs are "nonprofit Texas abortion funds and one physician. As part of their mission to support reproductive rights, they hope to fund and facilitate travel and lodging for Texans who seek abortions outside the state." ECF 258 at 2. They are currently unable to fulfill their missions because of the threat of criminal prosecution under Articles 1191-1194 and 1196 of the Texas Penal Code (the "Pre-*Roe* Statutes," now codified at Texas Revised Civil Statutes, Articles 4512.1-4512.4 and 4512.6). The Prosecutor Defendants[1] are Texas district attorneys and county attorneys who have the power to enforce the Pre-*Roe* Statutes.

Because there are no genuine disputes as to any material fact and the Pre-*Roe* Statutes have been repealed by implication, are facially unconstitutional, and are otherwise void as a matter of law, Plaintiffs seek partial summary judgment on Counts I-V against the Prosecutor Defendants. As explained below, Plaintiffs are entitled to declaratory judgment that: (1) the Pre-*Roe* Statutes were impliedly repealed; (2) retroactive application of the Pre-*Roe* Statutes violates due process; (3) the Pre-*Roe* Statutes violate Plaintiffs' constitutional rights to travel, speech, and assembly; and (4) the Pre-*Roe* Statutes are void for vagueness.[2]

# II.  UNDISPUTED FACTS AND PROCEDURAL BACKGROUND

On June 24, 2022, the U.S. Supreme Court issued its opinion in *Dobbs v. Jackson Women's Health Organizatio*n, 597 U.S. 215 (2022), reversing its prior holdings in *Roe v. Wade*, 410 U.S.

---

[1] The Prosecutor Defendants are: Susan R. Deski, José Garza, Wiley B. McAfee, Julie Renken, Fred H. Weber, Gocha Allen Ramirez, Joe Gonzales, Bill D. Hicks, Toribio Palacios, Jacob Putman, Richard E. Glaser, Ryan Sinclair, and K. Sunshine Stanek (along with Ori T. White who has failed to appear in this case).

[2] All Plaintiffs are moving for partial summary judgment against the Prosector Defendants on Counts I-V. Dr. Moayedi is not moving for summary judgment at this time on Count VII, which seeks a declaratory judgment that the Pre-*Roe* Statutes are preempted by federal law and regulations implemented by the Center for Medicare Services.

113 (1973) and *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992). The Supreme Court entered its final judgment in *Dobbs* approximately a month after its decision, on July 25, 2022.

Immediately following the *Dobbs* decision, and then again after the Supreme Court entered final judgment, Texas Attorney General Ken Paxton stated that the Pre-*Roe* Statutes were in full force and effect and could immediately be enforced by prosecutors in Texas.[3] Both before and after *Dobbs* was decided, other Texas officials also proclaimed that reproductive justice groups would be held criminally liable—both going forward and retrospectively—for assisting with abortions pre-*Dobbs* and for helping pregnant people to travel to states where abortion is legal.[4]

The *Dobbs* opinion and the related threats that Texas's anti-abortion laws, including the Pre-*Roe* Statutes, would be enforced caused all Plaintiffs (except for Buckle Bunnies Fund) to immediately pause all of their activities that assisted Texans seeking abortion care, including care provided out of state.[5] Those Plaintiffs stopped providing financial, logistical, or practical support to assist pregnant Texans to access abortion outside the state, including traveling with pregnant Texans.[6] All Plaintiffs also significantly restrained their speech in terms of providing educational

---

[3] *See* Ex. A, Pls.' Preliminary Injunction Hearing Exhibits ("Hearing Exhibits") 3-4, 26-27 (offered and admitted at Preliminary Injunction Hearing on Sept. 27, 2022); Ex. B, Pls. Preliminary Injunction Hearing Transcript ("Hearing Transcript"), pp. 80, 87, 102-03, 158-59 (reflecting offer and admission).

[4] *See* Ex. A, Hearing Exhibits, 1, 5-9; Ex. B, Hearing Transcript, pp. 88-89, 92-101 (reflecting offer and admission).

[5] *See* Ex. A, Hearing Exhibits, 17-20; Ex. B, Hearing Transcript, pp. 11:20-12:25 (Testimony of A. Rupani on behalf of Plaintiff Fund Texas Choice); pp. 55:16-57:17 (Testimony of N. Davé on behalf of Plaintiff the Lilith Fund for Reproductive Equity); pp. 84:17-86:21 (Testimony of R. Mariappuram on behalf of Plaintiff Jane's Due Process); pp. 153:25-154:17 (Testimony of B. Schilling on behalf of Plaintiff Clinic Access Support Network); pp. 189:8-190:9 (Testimony of Plaintiff G. Moayedi); *see also* Ex. C, Declaration of Makayla Montoya-Frazier at ¶ 5.

[6] *Id.*

or other information or encouragement to people seeking legal abortions in other states.[7] Plaintiff Dr. Ghazaleh Moayedi also ceased providing all abortion care to Texans, both in Texas (via telehealth for patients in other states) and in other states where it remains legal and in which she is also licensed to practice medicine.[8]

On August 23, 2022, Plaintiffs filed their Original Class Action Complaint naming Defendant Deski, on behalf of a class of all Texas County Attorneys similarly situated; and Defendants Renken, McAfee, Garza, and Weber on behalf of a class of all Texas District Attorneys similarly situated. Defendants Gonzales, Palacios, Stanek, Ramirez, Hicks, White, Glaser, Sinclair, and Putman were at that time members of the proposed Defendant Class and were added as named defendants on April 20, 2023, when Plaintiffs filed their Second Amended Class Action Complaint. SAC at ¶¶ 75-83, 85, 170-80.[9]

The Prosecutor Defendants are authorized to enforce the Pre-*Roe* Statutes in their respective jurisdictions. *See* ECF 258 at 2 (order denying motions to dismiss); ECF 31, ¶ 2 (agreed stipulation by Defendant Garza); ECF 32, ¶ 2 (agreed stipulation by Defendants Deski, Renken, McAfee, and Weber); TEX. CODE CRIM. PROC. ARTS. 2.01-02 (providing that district attorneys, or county attorneys in the absence of a district attorney, have sole power to represent the State in criminal cases).

Plaintiffs' Original Complaint included claims against Texas Attorney General Ken Paxton and sought protection from his enforcement of the "Texas Trigger Ban," TEX. HEALTH & SAFETY CODE ANN. § 170A.001 *et seq*. *See* ECF 1, pp. 35-41. Plaintiffs also sought declaratory and

---

[7] *See id.*, *see also* Ex. C, ¶ 7.
[8] Ex. B, Hearing Transcript, pp. 189:8-190:9 (Testimony of Plaintiff G. Moayedi).
[9] All of the Prosecutor Defendants were named in their official capacities.

injunctive relief to declare the Pre-*Roe* Statutes unconstitutional and to prohibit the Prosecutor Defendants from enforcing them against Plaintiffs so that Plaintiffs could safely resume their Desired Conduct.[10]

The Court held a preliminary injunction hearing on September 27, 2022, and granted preliminary injunctive relief against the enforcement of the Pre-*Roe* Statutes by Defendants Julie Renken (District Attorney of Washington County), Susan R. Deski (County Attorney of Burleson County), Wiley B. "Sonny" McAfee (District Attorney of Blanco, Burnet, Llano, and San Saba Counties), Jose Garza (District Attorney of Travis County), and Fred H. Weber (District Attorney of Caldwell County) on February 24, 2023. *See* ECF 120. In the same order, the Court granted General Paxton's Motion to Dismiss after determining that the Texas Trigger Ban could not reach Plaintiffs' Desired Conduct. *Id.*

After Plaintiffs filed their Second Amended Class Action Complaint on April 20, 2023, the Prosecutor Defendants (except for Ori T. White, who has not appeared) all filed motions to dismiss, which the Court denied on December 21, 2023. *See* ECF 258. On January 25, 2024, Plaintiffs filed their Amended Motion for Certification of a Defendant Class, seeking to certify one or more defendant classes of Texas prosecutors to facilitate statewide declaratory and/or injunctive relief. *See* ECF 279. That motion is fully briefed and awaiting resolution by the Court. All of the Prosecutor Defendants are members of the proposed class(es) and are also individually named defendants.

---

[10] "Desired Conduct" means "providing financial, logistical, or practical assistance to pregnant Texans who seek abortion care out of state where such care remains legal, including traveling with them, educating people about where to obtain legal abortion services and providing information to help them get those services, and in the case of Dr. Moyaedi, providing abortion care either by remaining physically in Texas and providing telehealth to out-of-state patients or by traveling outside the state of Texas to provide such care."

With the exception of one pending interrogatory, discovery in this matter closed on May 7, 2024, (ECF 314, ECF 343), and the Prosecutor Defendants did not serve any discovery.[11] All of the Plaintiffs were served with extensive discovery by Defendants Shannon D. Thomason, Sadie Weldon, Ashley Maxwell, Zach Maxwell, and Mistie Sharp ("SB8 Defendants"). The SB8 Defendants sought, among other things, detailed information regarding all of the abortions for which Plaintiffs have provided funds or other support both before and after *Dobbs*. *See* ECFs 235, 236, 246, 250 (motion practice related to this discovery, which attaches and authenticates the discovery itself).

Principals of several Plaintiffs, including the Lilith Fund for Reproductive Equity, TEA Fund, and Buckle Bunnies Fund, have also been subjected to Rule 202 pre-suit discovery proceedings in Texas state court filed by various SB8 Defendants. *See* ECF 209 (Plaintiffs' Motion for Summary Judgment Against SB8 Defendants), Exs. A-1, A-2, and A-11 (authenticated by ECF 209, Ex. A). These petitions purport to seek evidence of SB8 violations, but they also request information about conduct that each SB8 Defendant characterizes as criminal. *Id.* The petitions cite the Pre-*Roe* Statutes, and all demand information relating to the funding of abortions prior to the *Dobbs* decision. *Id.* They also demand information about the funding of abortions for people who obtain them in other states. *Id.*

---

[11] Plaintiffs Fund Texas Choice, Jane's Due Process, Frontera Fund, and West Fund all sent letters to several Prosecutor Defendants asking for confirmation that they could resume their Desired Conduct without violating the Pre-*Roe* Statutes, but they received no response. *See* ECF 175 (Plaintiffs' Opposition to Ramirez Defendants' Motions to Dismiss Plaintiffs' Second Amended Complaint); Ex. A (Declaration of John Atkins, authenticating and attaching letters from various Plaintiffs to Prosecutor Defendants Gonzales, Palacios, Ramirez, Stanek, and Hicks and confirming under oath that no response was received).

Plaintiffs Jane's Due Process, the Lilith Fund for Reproductive Equity (and Lilith Fund's principal Neesha Davé), and Buckle Bunnies Fund have also been served with non-party discovery in unrelated taxpayer-standing litigation involving the City of San Antonio. The third-party subpoenas were sent by Jonathan F. Mitchell, who is counsel of record for the SB8 Defendants, and the third-party subpoenas seek much of the same material as the SB8 Defendants sought in this case, including disclosures regarding what abortions Jane's Due Process, Lilith Fund, and Buckle Bunnies Fund have funded both before and after *Dobbs*.[12]

### III.  <u>LEGAL STANDARD</u>

A party may move for summary judgment at any time until 30 days after the close of discovery. *See* FED. R. CIV. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* Where facts are undisputed, and "questions of law alone are involved in a case, summary judgment is appropriate." *Int'l Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Tex. Steel Co.*, 538 F.2d 1116, 1119 (5th Cir. 1976); *see also Mendez v. Poitevent*, 823 F.3d 326, 336 (5th Cir. 2016) ("Rule 56 does not require that any discovery take place before summary judgment can be granted." (citation omitted)).

### IV.  <u>SUMMARY OF ARGUMENT</u>

Given the evidence in the record, and this Court's prior rulings, there are no genuinely disputed material facts related to Counts I-V against the Prosecutor Defendants. The only remaining issues for those claims are legal questions to be resolved by the Court:

(1)     Were the Pre-*Roe* Statutes repealed by implication?

---

[12] *See* Ex. D (declaration of John P. Atkins authenticating the served discovery); Ex. D-1 through D-4 (the served discovery). *See* Ex. C ¶¶ 12, 13.

(2)     Is retroactive application of the Pre-*Roe* Statutes to conduct that occurred before the decision in *Dobbs* (and a reversal of *McCorvey*, which has not yet occurred) a violation of due process?

(3)     Are the Pre-*Roe* Statutes unconstitutional because they violate Plaintiffs' constitutional rights to travel, speech, and assembly?

(4)     Are the Pre-*Roe* Statutes void for vagueness?

(5)     Alternatively, does Texas law forbid the application of the Pre-*Roe* Statutes to conduct that solely assists people in obtaining abortions in other states where such abortions are legal?

(6)     Are Plaintiffs entitled to a permanent injunction against enforcement of the Pre-*Roe* Statutes?

The answer to all these questions is "yes."

On the first question, the Court is bound by undisturbed (and correct) precedent holding that the Pre-*Roe* Statutes were impliedly repealed. *McCorvey v. Hill*, 385 F.3d 846, 849 (5th Cir. 2004), cert denied 543 U.S. 1154 (2005). *See infra*, § VI.B.

As to the second question, Justice Kavanaugh called the retroactivity question "not especially difficult[.]" *Dobbs*, 597 U.S. at 346 (Kavanaugh, J. concurring). Enforcement of the Pre-*Roe* Statutes to any conduct that occurred during the period that *Roe* (and also *McCorvey*) was the law of the land violates due process for the reasons given in *Bouie v. City of Columbia*, 378 U.S. 347, 352 (1964). *See infra*, § VI.C.

The answer to the third question is "yes" because the Pre-*Roe* Statutes violate the fundamental and longstanding right to travel freely among the states to engage in activity that is legal in the destination state. The Pre-*Roe* Statutes also impermissibly invade and chill the Plaintiffs' fundamental rights of expression and association.

The answer to the fourth question is "yes" because the antiquated "furnishing the means" language in the Pre-*Roe* Statues is vague and refers to the now-defunct theory of accomplice liability, thus fails to give notice of the conduct proscribed. *See infra*, § VI.D.

Alternatively, in answer to the fifth question, the only constitutionally permissible construction of the Pre-*Roe* Statutes means that they cannot apply to in-Texas conduct that helps people obtain abortions in states where abortions are legal. This is consistent with the current structure of Texas criminal law, including statutory developments that occurred after the implied repeal of the Pre-*Roe* Statutes, and after the adoption of the modern Texas Penal Code. *See infra*, § VI.F.

Finally, Plaintiffs are entitled to a permanent injunction against enforcement of the Pre-*Roe* Statutes against them for any of their Desired Conduct. Because constitutional rights are implicated, irreparable harm is presumed and the Prosecutor Defendants have no interest in enforcing an unconstitutional statute. A permanent injunction is therefore an appropriate remedy.[13]

## V.  ARGUMENT & AUTHORITIES

**A.    The Court correctly determined that Plaintiffs have standing and that their claims against the Prosecutor Defendants are ripe.**

The Court has already addressed the factual and legal questions associated with standing and ripeness, and correctly determined that it has jurisdiction over Plaintiffs' claims against the Prosecutor Defendants. In its order granting a preliminary injunction against the then-joined Prosecutor Defendants, this Court analyzed the evidence presented at the preliminary injunction hearing and determined that Plaintiffs had standing to proceed. *See* ECF 120, pp. 30-36. The Court

---

[13] To the extent the Court believes any factual questions remain regarding the propriety of permanent injunctive relief, Plaintiffs are prepared to proceed to trial at the Court's convenience.

reaffirmed this holding after analyzing (and rejecting) all of the Prosecutor Defendants' 12(b)(1)

motions to dismiss. *See* ECF 258, pp. 8-18.

Specifically, this Court found, based on pleadings and evidence in the record, that:

(1)    Plaintiffs articulated concrete, non-speculative, current injuries because their Desired Conduct is afforded constitutional interests and has been chilled by the threat of enforcement of the Pre-*Roe* Statutes;[14]

(2)    The Pre-*Roe* Statutes arguably proscribe Plaintiffs' Desired Conduct;[15]

(3)    The threat of enforcement arising from the Pre-*Roe* Statutes is substantial;[16]

(4)    Injuries arising from the Pre-*Roe* Statutes are traceable to the Prosecutor Defendants, who enforce those statutes;[17] and

(5)    Injuries arising from the Pre-*Roe* Statutes will be redressed by declaratory or injunctive relief against the Prosecutor Defendants.[18]

These findings and the evidence in the record confirm Plaintiffs' standing and the Court's

jurisdiction.

Nothing has changed since the Court issued its prior orders. No Prosecutor Defendant has

disavowed his ability to enforce the Pre-*Roe* Statutes against Plaintiffs. No Prosecutor Defendant

has entered any other evidence into the record at all.[19] The Court has also already ruled that

---

[14] *See* ECF 120, pp. 18-20, 32 and ECF 258, pp. 9-10. This includes an injury to at least one plaintiff's constitutional right to travel, (ECF 120, pp. 19, 38 and ECF 258, p. 10); injuries to expressive and associational rights, (ECF 120, pp. 18-20 and ECF 258, pp. 9-10); and injuries to other constitutional interests arising from the Due Process Clauses of the Fifth and Fourteenth Amendments.

[15] *See* ECF 120, pp. 33-36 and ECF 258, pp. 11-13.

[16] *See* ECF 120, pp. 20-22, 32-33 and ECF 258, pp. 12-15.

[17] *See* ECF 120, p. 36; ECF 258, pp. 17-18.

[18] *Id.* Plaintiff Buckle Bunnies Fund was not joined at the time, but the allegations and experience of Buckle Bunnies Fund are similar to those of the other Plaintiffs. *See* Ex. C.

[19] If anything has changed since the Court's issued its prior orders, it has been that the threat posed by the Pre-*Roe* Statutes has increased. Certain politically motivated private persons—some of whom are current Defendants in this case, and all of whom are represented by Jonathan Mitchell, counsel for the SB8 Defendants—have been seeking invasive discovery about alleged criminal

Plaintiffs' claims against the Prosecutor Defendants are ripe. ECF 258 at 15-18. There are also no disputed material facts regarding ripeness (or any other issue) in the record.

**B.      Plaintiffs are entitled to declaratory judgment on Count III that the Pre-*Roe* Statutes were repealed by implication.**

After *Roe* was decided, and while it was the law of the land, the State of Texas enacted various laws regulating abortions that are not consistent with, and could not be simultaneously applied along with, the Pre-*Roe* Statutes. As the Fifth Circuit held, those actions by the Texas Legislature constitute an implied repeal of the Pre-*Roe* Statues. *McCorvey*, 385 F.3d at 849. The Court should therefore grant Plaintiffs' request for a declaratory judgment on Count III.

In *McCorvey*, the Fifth Circuit ruled that the "Texas statutes that criminalized abortion (former Penal Code Articles 1191, 1192, 1193, 1194, and 1196) and were at issue in *Roe* have, at least, been repealed by implication[,]" because it found that Texas's regulatory provisions governing abortion "cannot be harmonized with provisions that purport to criminalize abortion. There is no way to enforce both sets of laws; the current regulations are intended to form a comprehensive scheme—not an addendum to the criminal statutes struck down in *Roe*." *Id.*

*McCorvey* is correct. The two sets of laws—the newer ones regulating abortions permissible until viability, and the older ones forbidding it in all but a few cases regardless of viability—were not possible to reconcile. An irreconcilable conflict exists between two statutes when there is a "positive repugnancy between them or . . . they cannot mutually coexist." *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155 (1976). Under Texas law, "a statute may be repealed expressly or by implication." *Gordon v. Lake*, 356 S.W.2d 138, 139 (Tex. 1962). "Where a later enactment is intended to embrace all the law upon the subject with which it deals, it repeals

---

acts of Plaintiffs through pre-suit depositions, non-party discovery, and even in this case. *See supra*, § II, ¶¶. 10-13.

all former laws relating to the same subject." *Id.* "A subsequent statute, revising the subject matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must operate to repeal the former, to the extent to which its provisions are revised and supplied." *Bryan v. Sundburg*, 5 Tex. 418, 423 (1849). Therefore, "laws relating to the same subject should be considered as though incorporated in the same act." *Gordon*, 356 S.W.2d at 139.

When Texas decided, post-*Roe*, to regulate abortion in detail, it necessarily impliedly repealed any laws forbidding abortion altogether. By doing so, Texas was inherently "revising the subject matter of [the] former [law]" and the new laws it created could not reasonably be read together if "incorporated in the same act." *See Bryan*, 5 Tex. at 423; *Gordon*, 356 S.W.3d at 139.

*McCorvey* is also binding. There are no Texas Supreme Court or Fifth Circuit decisions overturning it. In fact, there are not even any state appellate court decisions disagreeing with it.[20] Nor has *McCorvey's* holding been undone by the Texas Legislature's late expressions of contrary intention.

When the Texas Legislature enacted Senate Bill 8 during the 2021 Legislative Session, it included language stating "[t]he legislature finds that the State of Texas never repealed, either expressly or by implication, the state statutes enacted before the ruling in *Roe v. Wade*, 410 U.S. 113 (1973), that prohibit and criminalize abortion unless the mother's life is in danger."[21] This

---

[20] Even if any intermediate state court precedent existed, it still would not warrant a retreat from *McCorvey*. *See F.D.I.C. v. Abraham*, 137 F.3d 264, 269 (5th Cir. 1998) ("[W]hen our *Erie* analysis of controlling state law is conducted for the purpose of deciding whether to follow or depart from prior precedent of this circuit. . . we should not disregard our own prior precedent on the basis of subsequent intermediate state appellate court precedent unless such precedent comprises unanimous or near-unanimous holdings from several—preferably a majority—of the intermediate appellate courts of the state in question.").

[21] *See* Ex. A, Plaintiffs' Exhibits, 13 (SB8 Enacted Text, Section 2); Ex. B, pp. 182 (reflecting offer and admission).

proclamation—and any other similar action by the Texas Legislature—has no effect on *McCorvey*. Under Texas law, a legislative declaration of the intentions of a prior legislature is meaningless. *Fleming Foods of Texas, Inc. v. Rylander*, 6 S.W.3d 278, 286 (Tex. 1999) ("General statements of the Legislature's intent cannot revive repealed statutes or override the clear meaning of a new, more specific statute.").[22] The Texas Legislature cannot undo its prior implied repeal of the Pre-*Roe* statutes by asserting current expressions of the past intentions of a completely different legislature.

Thus, the Court should declare that the Pre-*Roe* Statutes were repealed by implication and cannot be enforced against Plaintiffs at all.

**C.    Plaintiffs are entitled to declaratory judgment on Count III that the Pre-*Roe* Statutes cannot be enforced against them for conduct that occurred before the *Dobbs* mandate issued or while *McCorvey* remains the law of the Fifth Circuit.**

As alleged by Plaintiffs and supported by the evidence before the Court, Plaintiffs reasonably fear that the Pre-*Roe* Statutes will be retroactively enforced against them. General Paxton claimed that the Pre-*Roe* Statutes were revived by the decision in *Dobbs*, and several Texas officials have claimed that this revival gives the Pre-*Roe* Statutes retroactive force covering periods before the *Dobbs* decision issued, or between the announcement of the *Dobbs* decision and the issuance of the final judgment in July of 2022.[23] No Prosecutor Defendant has disavowed his or

---

[22] *See also Fed. Crude Oil Co. v. Yount-Lee Oil Co.*, 52 S.W.2d 56, 63 (1932) ("[T]he expression of an opinion by one Legislature in construing the act of a former Legislature is not conclusive upon the courts as it is their province to arrive at the intention of the particular legislature which enacted each of these laws."); *Rowan Oil Co. v. Texas Employment Commission*, 263 S.W.2d 140, 144 (Tex. 1953) ("[T]he Act cannot release any contributions which accrued … before its passage and neither does one session of the Legislature have the power to construe the Acts or declare the intent of a past session.").

[23] *See*, *e.g.*, Ex. A, Hearing Exhibits, 1 (letter from various legislators to Sidley Austin threatening that "abortion is a felony offense in Texas unless the mother's life is in danger" on July 7, 2022—after the *Dobbs* decision but before judgment was entered—and calling abortions both before and after *Dobbs* illegal); 3-4 and 26-27 (Paxton communications and advisories claiming Texas Pre-

her ability to enforce the Pre-*Roe* Statutes against acts that occurred prior to the entry of judgment in the *Dobbs* decision, or prior to any future decision overturning *McCorvey*.

A person is required to conform their conduct to the law, but she is entitled to rely on the pronouncements of the courts as to what the law actually is. Retroactive enforcement of a statute against conduct that occurred during a period when a statute was struck down as unconstitutional violates due process of law just as an impermissibly vague statute does. As the Supreme Court has explained, "a deprivation of the right of fair warning can result not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language." *Bouie v. City of Columbia*, 378 U.S. 347, 352 (1964).

The issue addressed in *Bouie* was retroactive expansion of a previously narrowly construed statute. The argument applies with greater force to statutes previously and specifically declared unconstitutional by the Supreme Court. If a person cannot rely on the Supreme Court's binding construction of the Constitution in conforming their behavior to the law, the law becomes unknowable. Justice Kavanaugh, concurring in *Dobbs*, agreed—calling the question of retroactive enforcement "not especially difficult as a constitutional matter." *Dobbs*, 597 U.S. at 346 (Kavanaugh, J. concurring). He stated:

> May a State retroactively impose liability or punishment for an abortion that occurred before today's decision takes effect? In my view the answer is no based on the Due Process Clause or the *Ex Post Facto* Clause.

---

*Roe* Statutes were immediately revived by *Dobbs* decision, including in Ex. 3 claiming that district attorneys may "immediately"—the day after the *Dobbs* decision was issued but before judgment— begin to enforce the Pre-*Roe* Statutes, and in Ex. 27 saying the same thing after judgment was issued, despite *McCorvey* remaining undisturbed), 5 (March 18, 2022 letter—before *Dobbs*—from representative Cain to Plaintiff the Lilith Fund for Reproductive Equity alleging that "furnishing the means" for an abortion is a violation of the Pre-*Roe* Statutes), 8 (tweet by Representative Cain excerpting Pre-*Roe* Statutes and claiming donating money "to a Texas abortion" is a crime).

*Id.* (citing *Bouie*, 378 U.S. 347).

This is particularly true of the Pre-*Roe* Statutes, which are the specific statutes declared unconstitutional in *Roe*. 410 U.S. 113, 117-18 ("[t]he Texas statutes that concern us here are Arts 1191-1194 and 1196 of the State's Penal Code…"), 117 n. 1 (setting out the statutes in full), and 166 ("[o]ur conclusion that Art. 1196 is unconstitutional means, of course, that the Texas abortion statutes, as a unit, must fall."). During the time that *Roe* was the law of the land, the Pre-*Roe* Statutes were "void, and [] no law … [a]n offence created by [them] [was] not a crime." *Ex Parte Siebold*, 100 U.S. 371, 376 (1879); *see also Marbury v. Madison*, 5 U.S. 137, 177 (1803).

*McCorvey* also dealt specifically with the Pre-*Roe* Statutes. 385 F.3d at 850. In that case, the Fifth Circuit found a challenge to *Roe* was moot because the statutes *Roe* negated were impliedly repealed by later legislative acts. Plaintiffs were (and remain) entitled to rely on *McCorvey*'s finding that Texas's Pre-*Roe* Statutes are not effective unless and until *McCorvey* is overruled or the statutes themselves are re-enacted.[24]

Plaintiffs—and all others—were entitled to rely on *Roe v. Wade* while it was the law, and are entitled to rely on *McCorvey* while it is still the law. Any alternative finding invites the chaos of citizens having to consider multiple contradictory layers of law, and decide in undertaking ostensibly legal conduct how likely a court might be to overrule itself. Courts can change their minds, but if the meaning of the Constitution cannot be the same from one year to the next, it must at least be the same for all people at any one time, and **knowable** to those people at that time. Plaintiffs are therefore entitled to declaratory judgment that the Pre-*Roe* Statutes cannot be

---

[24] Even if one of those two things occurred, the Pre-*Roe* Statutes still could not have retroactive effective without violating the U.S. Constitution (in the former under *Bouie*, in the latter under the Texas and federal prohibitions against *ex post facto* laws).

enforced against any Plaintiff for any conduct that occurred prior to both (1) *Dobbs* becoming effective, and (2) any future decision overruling *McCorvey* becoming effective.

**D.      Plaintiffs are entitled to declaratory judgment on Counts I and II that the Pre-*Roe* Statutes cannot be enforced against them.**

The Pre-*Roe* Statutes also violate Plaintiffs' substantive rights to travel, speech, and free association under the U.S. Constitution.

### 1.      The right to travel protects Plaintiffs' Desired Conduct.

"The right to interstate travel is one of our most fundamental constitutional rights. It cultivates national citizenship and curbs state provincialism, and thus was key to fusing a league of States into a true federal union." *Yellowhammer Fund v. Marshall, et al.*, No. 2:23-cv-00450, slip op. at 41-2 (M.D.Ala. May 6, 2024) (citing *United States v. Guest*, 383 U.S. 745, 757-58 (1966); *id*. at 767 (Harlan, J., concurring)). The right to travel has also "consistently been protected precisely so that people would be free to engage in lawful conduct while traveling." *Id*. at 42. The right can be traced back at least as far as the Magna Carta, which ensured that merchants could travel for the purpose of engaging in commerce. *See* Magna Carta (1215) cl. 41; *see also Kent v. Dulles*, 357 U.S. 116, 125-26 (1958). The right was also included in Article IV of the Articles of Confederation, which stated that all citizens "shall have free ingress and regress to and from any other State, and shall enjoy therein all the privileges of trade and commerce, subject to the same duties, impositions and restrictions as the inhabitants thereof." Articles of Confederation of 1781, art. IV, para. 1.

The Supreme Court has also located the right to travel in several different constitutional provisions, and has held that the right is "virtually unqualified." *Califano v. Gautier Torres*, 435

U.S. 1, 5 n.6 (1978).[25] Justice Bushrod Washington, the nephew of George Washington, also opined within a generation of the Constitution's ratification, that:

> The right of a citizen of one state to pass through, or to reside in any other state, for purposes of trade, agriculture, professional pursuits, or otherwise … may be mentioned as some of the particular privileges and immunities of citizens, which are clearly embraced by the general description of privileges deemed to be fundamental…

*Corfield v. Coryell*, 6 F. Cas. 546, 552 (C.C.E.D. Pa. 1823). The right is broad and embraces at least "lawful commerce, trade, or business." *Ward v. State*, 79 U.S. 418, 430 (1870). The U.S. Supreme Court has also made clear that travel for medical care is protected by the right to travel.

In *Doe v. Bolton*, the Supreme Court struck down a residency requirement attendant to the provision of health care related to abortion. 410 U.S. 179, 200 (1973), *abrog'd on other grounds by Dobbs*, 597 U.S. 215 (2022). In *Saenz v. Roe*,  the Supreme Court listed "to procure medical services" as one of the protected uses of the right to travel. 526 U.S. 489, 502 (1999) (citing *Bolton*, 410 U.S. at 502). Justice Kavanagh also dismissed the question of whether the right to travel

---

[25] The Supreme Court has derived the right to travel from the Privileges and Immunities Clause of Article IV, the Commerce Clause, the Privileges, or Immunities Clause of the Fourteenth Amendment, and the Due Process Clauses of the Fifth and Fourteenth Amendments. *See Shapiro v. Thompson*, 394 U.S. 618, 666 (1969) (Harlan, J., dissenting), *overruled on other grounds by Edelman v. Jordan*, 415 U.S. 651 (1974); *Guest*, 383 U.S. at 763-70 (Harlan, J., concurring). "Considering the right to travel in the context of Article IV's Privileges and Immunities Clause confirms that the right includes both the right to move physically between the States and to do what is legal in the destination State. The Clause was meant to create a 'general citizenship,' and 'place the citizens of each State upon the same footing with citizens of other States.'" *Yellowhammer Fund*, No. 2:23-cv-00450 at 45-7. When individuals travel to another state, the Privileges, and Immunities "Clause ensures that they lose both 'the peculiar privileges conferred by their [home State's] laws' as well as 'the disabilities of alienage.' The Clause 'insures to [citizens] in other States the same freedom possessed by the citizens of those States in the acquisition and enjoyment of property and in the pursuit of happiness.'" *Id.* at 45-6 (citing and quoting *Paul v. Virginia*, 75 U.S. 168, 180 (1868), *overruled in part on other grounds by United States v. Se. Underwriters Ass'n*, 322 U.S. 533 (1944).

protects the ability to travel to obtain abortion care where such care is legal as "not especially difficult as a constitutional matter[:]"

> May a State bar a resident of that State from traveling to another State to obtain an abortion? In my view, the answer is no based on the constitutional right to interstate travel.

*See Dobbs*, 597 U.S. at 346 (Kavanaugh, J. concurring).

"Of course, if a State cannot outright prohibit the plaintiffs' clients from traveling to receive lawful out-of-state abortions, it cannot accomplish the same end indirectly by prosecuting those who assist them. The threatened prosecutions offend two tenets of right-to-travel jurisprudence: first, that States may not act with the purpose of impeding lawful travel; and, second, that States may not outlaw assistance for otherwise lawful travel." *Yellowhammer Fund*, No. 2:23-cv-00450, at 51-2.[26] "When a State creates barriers to travel itself, 'the constitutional right of interstate travel is virtually unqualified,' and even the slightest burdens on travel are generally not tolerated." *Id.* at 54 (citing and quoting *Haig v. Agee*, 453 U.S. 280, 307 (1981)). Travel restrictions directed toward those who facilitate lawful travel for others are also unconstitutional.

As explained by the Honorable Myron H. Thompson in *Yellowhammer Fund*:

> Exemplifying both points is *Crandall v. Nevada*, which produced the Supreme Court's first majority opinion on the right to travel. 73 U.S. 35 (1867). At issue was a Nevada statute that imposed a one-dollar tax per passenger on common carriers leaving the State. The Court held that the tax was an unconstitutional burden on the passengers' right to travel, even though the tax was merely one dollar and even though it applied only when someone relied on a common carrier for transportation.

---

[26] *See also Aptheker v. Secretary of State*, 378 U.S. 500, 507 (1964) ("The restrictive effect of the legislation cannot be gainsaid by emphasizing, . . . that a member of a registering organization could recapture his freedom to travel by simply in good faith abandoning his membership in the organization. Since freedom of association is itself guaranteed in the First Amendment, restrictions imposed upon the right to travel cannot be dismissed by asserting that the right to travel could be fully exercised if the individual would first yield up his membership in a given association.").

> Likewise, in *Edwards v. California*, the Supreme Court struck down a California law that made it a crime to bring or assist in bringing into the State any indigent person who was not a California resident. 314 U.S. 160 (1941). Thus, the California law subjected only those who assisted others in travel to criminal liability. The Court nonetheless determined that the law violated indigent people's right to travel. It did so even despite recognizing that the State had passed the law to address "grave and perplexing social and economic" issues. *Id*. at 173. The Court held that regardless of "'the wisdom, need, or appropriateness' of the legislative efforts of the States to solve such difficulties," the Constitution prohibited such a burden on facilitating travel. *Id*. (quoting *Olsen v. Nebraska ex rel. W. Reference & Bond Ass'n*, 313 U.S. 236, 246 (1941))
>
> Denying—through criminal prosecution—assistance to the plaintiffs' clients [who seek legal abortion care out of state], many of whom are financially vulnerable, is a greater burden on travel than the one-dollar tax per passenger in *Crandall*, and it is precisely what was held unconstitutional in Edwards.

*Id*. at 54-6.  Texas's Pre-*Roe* Statutes impermissibly invade the right to travel in exactly the same way.

Criminalizing a citizen's exercise of their constitutional right to interstate travel to engage in lawful conduct in another state does not bear any relationship to any legitimate state interest, let alone a compelling one.[27]  "There is no end-run around the right to travel that would allow States to burden travel selectively and in a patchwork fashion based on whether they approve or disapprove of lawful conduct that their residents wish to engage in outside their borders." *Yellowhammer Fund*, No. 2:23-cv-00450, at 56. Because the Pre-*Roe* Statutes fail strict scrutiny, the Court may find them facially invalid. *Aptheker*, 378 U.S. at 516-17.

---

[27] A blanket restriction on all interstate travel or assistance related to abortion outside of Texas is also not narrowly tailored to any interest the State may try to articulate, as there are reasonable alternatives that could further the State's alleged interest. *See Dunn v. Blumstein*, 405 U.S. 330, 343 (1972); *see* ECF 6 at 21-22 (listing alternatives).

2.      **The Pre-*Roe* Statutes violate Plaintiffs' rights to free speech and association.**

Plaintiffs have an expressive right under the First Amendment to make legal, charitable

donations, and to solicit charitable contributions for that work. *See* ECF 120, pp. 19, 38, 50 and

ECF 258, pp. 9-10. Similarly, they have the right to educate pregnant Texans about their legal

options with respect to abortions, to direct them to where they may legally obtain them, and to

encourage, advertise, and provide charitable help to people seeking to leave the state to obtain

legal abortions. *See* ECF 258, p. 10.

"[T]he solicitation of charitable contributions is protected speech." *Riley v. Nat'l Fed'n of

the Blind of N. Carolina, Inc.*, 487 U.S. 781, 789 (1988); *see also Secretary of State of Maryland

v. Joseph H. Munson Co.*, 467 U.S. 947, 967 (1984) (finding unconstitutional a law that limited

the ability of charitable organizations to raise contributions because the law was therefore "a direct

restriction on protected First Amendment activity.").[28]  Plaintiffs are not subject to any exception

---

[28] *See also Citizens United v. Fed. Election Com'n*, 558 U.S. 310, 339 (2010) ("prohibition on corporate independent expenditures is thus a ban on speech."); *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 632 (1980) (charitable solicitations "involve a variety of speech interests . . . that are within the protection of the First Amendment"); *Dep't of Texas, Veterans of Foreign Wars of U.S. v. Texas Lottery Comm'n*, 760 F.3d 427, 430 (5th Cir. 2014) (applying strict scrutiny to the Texas Bingo Enabling Act, which allowed charitable organizations to raise money by holding bingo games on the condition that the money is used only for the organizations' charitable purpose, and finding that the statute restricted organization's speech, and was therefore invalid under the First Amendment.); *Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) ("[Texans for Free Enterprise's] ability to speak is undoubtedly limited when it cannot raise money to pay for speech. Consistent with our precedents, then, [Texans for Free Enterprise] has established irreparable harm."); *Texas Mun. Police Assoc. v. Texas Ethics Comm'n*, No. A-08-CA-741-SS, 2010 WL 11506913, at *7-8 (W.D. Tex. Oct. 29, 2010) (finding Texas statute that prohibited a corporation or labor organization from making political contribution or political expenditure conflicted with *Citizens United*, and holding that Texas may not restrict political speech based on the speaker's corporate identity); *Free Mkt. Found. v. Reisman*, 573 F. Supp. 2d 952, 954 (W.D. Tex. 2008) ("Contribution limits imposed on groups can be especially problematic when they 'severely inhibit collective political activity by preventing [a group] from using contributions by small donors to provide meaningful assistance to any individual candidate.'" (quoting *Randall v. Sorrell,* 548 U.S. 230 (2006) (Breyer, J., plurality)).

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT – Page 19**

to this general rule because of the nature of their charitable work. The abortions they wish to provide financial and practical support for (and in the case of Dr. Moayedi, perform) are all legal where they take place. *See Riley*, 487 U.S. at 789; *Joseph H. Munson Co.*, 467 U.S. at 967.

The Supreme Court has ruled that a state does not have an interest in prohibiting its citizens from obtaining abortions sufficient to prevent advertisement of legal abortion services in another state. *Bigelow v. Virginia*, 421 U.S. 809, 815, 824-25 (1975) (Virginia's interest in prohibiting abortion did not extend to preventing in-state advertisement regarding the legal availability of abortion in New York).[29] In *Bigelow*, the Court found that Virginia had little, if any, interest in protecting its citizens from information about abortion services in New York, or from "using in New York the then legal services of local New York agency." *Id.* at 827-28. Moreover, Virginia could not "prevent its residents from traveling to New York to obtain" an abortion. *Id.* The Seventh Circuit has similarly explained:

> It is quite common for persons to travel to other jurisdictions in order to avoid restrictive laws in their home state or to take advantage of more lenient laws in another state, **and it is perfectly lawful for one to advise another to do so**. People travel to Nevada to gamble or to gain a quick marriage or divorce; they travel across state lines in order to purchase liquor cheaper or at a younger age.

*Robak v. United States*, 658 F.2d 471, 476–77 (7th Cir. 1981) (emphasis added).

A prohibition against charitable giving that applies exclusively to charitable contributions, assistance, or provision of information to those seeking legal abortions in another state is necessarily a content-based restriction on speech because it is a restriction that is based on the

---

[29] *Bigelow* does not rely on *Roe*, and it remains good (and binding) law. *See NetChoice, L.L.C. v. Paxton*, 49 F.4th 439, 450 (5th Cir. 2022), *cert. granted in part sub nom. Netchoice, LLC v. Paxton*, 216 L. Ed. 2d 1313 (Sept. 29, 2023) (citing *Bigelow* favorably and without any signal indicating any part has been abrogated or overruled post-*Dobbs*).

"communicative content" of the speech. *See Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015); *NetChoice, L.L.C. v. Paxton*, No. 21-51178, 2022 WL 4285917, at *30 (5th Cir. Sept. 16, 2022). When a prohibition is content-based, it is "presumptively unconstitutional" and strict scrutiny applies. *Reed*, 576 U.S. at 163. "Whether laws define regulated speech by particular subject matter or by its function or purpose, they are subject to strict scrutiny." *Id.* at 156. "This stringent standard reflects the fundamental principle that governments have no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Nat'l Inst. Of Family & Life Advocates v. Becerra*, 585 U.S. 755, 766 138 S. Ct. 2361, 2371 (2018) (cleaned up). Once strict scrutiny is applied, a law must be "narrowly tailored" to serve a "compelling interest" to survive. *Serafine v. Branaman*, 810 F.3d 354, 361 (5th Cir. 2016).

As *Bigelow* shows, Texas's interest (if any) in preventing its citizens from leaving the state to obtain legal abortions in Texas's sister states (or in preventing them from learning of their right to do so) is not compelling. The Pre-*Roe* Statutes therefore fail at the first hurdle—absent a compelling interest, no amount of narrow tailoring can vindicate the content-based restriction. Plaintiffs are entitled to a declaratory judgment to the effect that the Pre-*Roe* Statutes are unconstitutional on their face..[30]

**E.     Plaintiffs are entitled to declaratory judgment on Count IV that the "furnishing the means" provision of the Pre-*Roe* Statutes is unconstitutionally vague.**

"Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly . . . ." *Landgraf v. USI Film Prods.,* 511 U.S. 244, 265 (1994). A penal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that

---

[30] The Pre-*Roe* Statues are also not narrowly tailored. *Supra*, n. 27.

does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). The vagueness standard is stricter where, as here, the relevant statute interferes with other protected rights. *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982) ("[P]erhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent test should apply.")

It is not clear what "furnishing the means" for "procuring an abortion" in Section 4512.2 of the Pre-*Roe* Statutes means. The phrases are not defined anywhere in the statutes. Whether a person "furnish[es] the means" by driving someone to an abortion appointment in another state, by providing money to that person to obtain the necessary medical care, by providing them with the information they need to find a clinic in a state where abortion is legal that can help them, by providing them the emotional support to make the decision to seek an abortion, by providing them with abortion medication, or by all of these, or only some, is not clear.

Some of the constructions of the statutory language may appear more likely than others, but none have been tested. And this Court has recognized that, despite persuasive arguments that "furnishing the means" should only apply to the literal provision of abortion medications and the like, [*see* ECF 120, p. 35, *see also* ECF 6, pp. 35-36 (Plaintiffs' Motion for Preliminary Injunction, making a similar argument)] Texas officials have taken the opposite position, and no recent state court authority addresses the issue so as to define the language clearly. *See* ECF 120, pp. 33-36.

The dictionary definitions of "furnish" and "means" afford exceptionally broad possibilities for the meaning of the terms that could encompass **anything** of assistance associated

with an abortion.[31]  This ambiguity is worsened by the Texas Penal Code's explicit disclaimer that "[t]he rule that a penal statute is to be strictly construed does not apply to this code."  *See* ECF 120, p. 34 (citing TEX. PENAL CODE ANN. § 1.05(a)).  It is worsened further by the Prosecutor Defendants' silence about what the words of the statute mean.  Plaintiffs asked some of the Prosecutor Defendants specifically whether they can engage in their Desired Conduct and be in compliance with the Pre-*Roe* Statutes.  They all refused to answer.[32]

It is this "unsettling and chilling want of clarity in statements by officials with enforcement authority, made against a chorus of state officials without enforcement power" that furthers and enhances the vagueness already present in Pre-*Roe* Statutes. *See In re Paxton*, 60 F.4th 252, 262 (5th. Cir. 2023) (Higginbotham, J. concurring).  In the absence of clarity, there is significant risk that Plaintiffs will be "subject[ed] to sanctions based not on their own objective behavior, but on the subjective viewpoints of others." *Women's Med. Ctr. of Nw. Houston v. Bell*, 248 F.3d 411, 422 (5th Cir. 2001). Requiring Plaintiffs to move forward with their missions without clarification of the law forces them to choose between foregoing the work they believe they are constitutionally permitted to do or risking prosecution for "knowing but guiltless behavior." *Baggett v. Bullitt*, 377 U.S. 360, 373 (1964). Even "[w]ell-intentioned prosecutors and judicial safeguards do not neutralize the vice of a vague law." *Id.*

---

[31] *E.g.*, www.dictionary.com, (defining "furnish" in this context as "to provide or supply" and "means" as "the medium, method, or instrument used to obtain a result or achieve an end") (last visited May 8, 2024); merriam-webster.com (defining "furnish" as "supply, give" and defining "means" as "something useful or helpful to a desired end") (last visited May 8, 2024).
[32] *Supra*, § II.

The Pre-*Roe* Statutes—specifically the "furnishing the means" provision at Article 4512.2 of the Texas Revised Civil Statutes—are unconstitutionally vague, and they should be declared facially unconstitutional for that reason.

**F.    Alternatively, Plaintiffs are entitled to a declaration under Count V that the Pre-*Roe* Statutes cannot apply to their Desired Conduct as a matter of Texas law.**

In the alternative to declarations that the Pre-*Roe* Statutes are impliedly repealed and/or unconstitutional for the reasons discussed above, Plaintiffs are entitled to a declaration that the Pre-*Roe* Statutes, properly construed, cannot apply to their Desired Conduct as a matter of Texas law. As the Court has recognized, there is no present, binding, non-dicta Texas state court authority construing the meaning of the Pre-*Roe* Statutes, particularly the "furnishing the means" provision. ECF 120 at 35. However, several lines of authority suggest that, despite the threats of various public officials, the vagueness of the statute, and the silence of the Prosecutor Defendants, the Pre-*Roe* Statutes were not intended to be enforced, and cannot be enforced, against someone who merely provides material assistance to a person seeking an out-of-state abortion. ECF 107, pp. 10-13.

First, the Pre-*Roe* Statutes were written before the State of Texas eliminated the distinction between principals and accomplices in Texas law. As construed by the Texas Court of Criminal Appeals in 1897, it was impossible to punish someone for "furnishing the means" where the abortion itself was legal because the "furnishing the means" statute states that a person who provides the means for an abortion is liable as an accomplice, and accomplice liability first requires the liability of a principal. *Moore v. State*, 40 S.W. 287, 290 (Tex. Crim. App. 1897) (analyzing the furnishing statute and finding it impossible to have an offense committed by an accomplice without a principal). Straightforwardly applying that rule to an abortion that occurred legally in

another state, the "principal" could not be liable, and thus there could be no "accomplice" act of "furnishing the means." *See generally id.*

Second, the best reading of the Pre-*Roe* Statutes is that a person only "furnishes the means for procuring an abortion" if she provides the actual physical means of causing the abortion (*i.e.*, the medicine, drug, or, conceivably, surgical tool). *See* ECF 120, p. 35. Amici have briefed that issue in this case. *See* ECF 107, pp. 10-13. If that reading of the statute is correct, then furnishing money, or travel support, or even traveling with someone, would not constitute "procuring" an abortion (whether in-state or out-of-state).

Plaintiffs recognize the Court's reticence to "impose [its] own narrowing construction" onto a law where a state court has not done so. *See* ECF 120, p. 35 (citing *Hill v. City of Houston*, 789 F.3d 1103 (5th Cir. 1986) (en banc) *aff'd* 482 U.S. 451 (1987)). Plaintiffs also believe that the better course to provide them full and clear relief, is a declaration that the Pre-*Roe* Statutes are facially unconstitutional. Nevertheless, Plaintiffs asserted Count V in the alternative and are entitled to the relief requested if the Court denies Plaintiffs' requested relief on Counts I-IV.

## G.    Plaintiffs are entitled to a permanent injunction prohibiting the Prosecutor Defendants from enforcing the Pre-*Roe* Statutes against Plaintiffs.

A court's decision to award permanent injunctive relief is an act of "equitable discretion." *eBay Inc. v. MercExchange*, L.L.C., 547 U.S. 388, 391 (2006). Permanent injunctive relief is authorized when a party establishes: "(1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest. *O'Connor v. Smith*, 427 Fed. Appx. 359, 365 (5th Cir. 2011). All of those elements are satisfied.

First, as established herein, Plaintiffs are entitled to declaratory judgment on Counts I-V.

Second, "when an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Book People, Inc. v. Wong,* 91 F.4th 318, 340-41(5th Cir. Jan. 17, 2024). The Court already correctly determined that the Plaintiffs are suffering an irreparable injury to their constitutional rights when it issued its preliminary injunction. *See* ECF 120, pp. 48-50.

Third, the requested injunction will not cause any injury to the Prosecutor Defendants because it simply restrains them from doing something they have no right to do. "[N]either the State nor the public has any interest in enforcing a regulation that violates federal law." *Book People,* 91 F.4th at 341 (citations omitted).

Finally, safeguarding fundamental constitutional rights always serves the public interest. *Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996) ("The School Prayer Statute is unconstitutional so the public interest was not disserved by an injunction preventing its implementation."); *De Leon v. Perry*, 975 F. Supp. 2d 632, 665 (W.D. Tex. 2014), *aff'd sub nom. De Leon v. Abbott*, 791 F.3d 619, 665 (5th Cir. 2015) ("Therefore, a preliminary injunction preventing the enforcement of an unconstitutional law serves, rather than contradicts, the public interest.").

Moreover, a permanent injunction against all enforcement of the Pre-*Roe* Statutes is necessary to dissuade other actors—like the SB8 Defendants—from seeking invasive and irrelevant discovery about what they believe is "criminal" conduct.[33]  An injunction against the

---

[33] The SB8 Defendants and their counsel, Mr. Mitchell, have repeatedly made clear that they will continue to target Plaintiffs and assert that they are engaging in criminal behavior in the absence of clear court orders to the contrary. As recently as May 5, 2024, Mr. Mitchell sent *yet another* litigation hold notice to Plaintiffs through undersigned counsel, this time on behalf of unidentified clients that Mr. Mitchell asserts he also represents. Ex. E (Declaration of Elizabeth G. Myers authenticating litigation hold); Ex. E-1, litigation hold email.

Prosecutor Defendants will ensure that no other actors, including the SB8 Defendants or their counsel, can use the Pre-*Roe* Statutes to assert that Plaintiffs are engaged in criminal behavior as a basis for any discovery or continued harassment of Plaintiffs.

Plaintiffs recognize that ordinarily a court will not impose a permanent injunction against enforcement of a statute unless there is some signal that a declaration by the Court will not be sufficient. *See, e.g.*, *Free Mkt. Found.*, 573 F. Supp. 2d at 957. But as the Fifth Circuit has recognized, abortion is a uniquely hot political button, which generates more than its share of overreach among the political branches, as well as political actors, individuals, and counsel now acting at the government's behest. *Bell*, 248 F.3d at 422 (warning of standardless laws and arbitrary government action in the context of abortion). Plaintiffs' constitutional rights are threatened by multiple abortion laws that work together to chill their speech and conduct. ECF 258 at 23-25. Plaintiffs respectfully submit that this unique case warrants the issuance of permanent injunctive relief to ensure that there is no doubt that they can legally resume their Desired Conduct.

## VI. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs ask that this Court grant summary judgment against the Prosecutor Defendants on Counts I-V and enter the requested declarations and a permanent injunction. Plaintiffs also respectfully request any other relief to which they are justly entitled.[34]

---

[34] Plaintiffs specifically request an award of reasonable and necessary attorneys' fees under 42 U.S.C. § 1988, and if such an award is granted, Plaintiffs will submit evidence establishing the amount of such an award at an evidentiary hearing conducted at the Court's convenience.

Dated: May 17, 2024

By: */s/ Jennifer R. Ecklund*
Jennifer R. Ecklund
Texas Bar No. 24045626
jecklund@thompsoncoburn.com

Elizabeth G. Myers
Texas Bar No. 24047767
emyers@thompsoncoburn.com

Nicole L. Williams
Texas Bar No. 24041784
nwilliams@thompsoncoburn.com

Allyn Jaqua Lowell
Texas Bar No. 24064143
alowell@thompsoncoburn.com

John Atkins
Texas Bar No. 24097326
jatkins@thompsoncoburn.com

**THOMPSON COBURN LLP**
2100 Ross Avenue, Suite 3200
Dallas, Texas 75201
Telephone: 972/629-7100
Facsimile: 972/629-7171

Alexandra Wilson Albright
Texas Bar No. 21723500
aalbright@adjtlaw.com

Marcy Hogan Greer
Texas Bar No. 08417560
mgreer@adjtlaw.com

515 Congress Ave., Suite 2350
Austin, TX 78701-3562
Telephone: 512/482-9300
Facsimile: 512/482-9303

Kevin Dubose
Texas Bar No. 06150500
kdubose@adjtlaw.com
1844 Harvard Street
Houston, TX 77008
Telephone: 713/523-2358

Facsimile: 713/522-4553

Kirsten M. Castañeda
Texas Bar No. 00792401
kcastaneda@adjtlaw.com
8144 Walnut Hill Lane, Suite 1000
Dallas, TX 75231-4388
Telephone: 214/369-2358
Facsimile: 214/369-2359

**ALEXANDER DUBOSE &
JEFFERSON, LLP**

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I certify that this document was filed electronically on May 17, 2024, with the clerk of the Court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court.

/s/ *John P. Atkins*
John P. Atkins