# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | |
|---|---|
| **Fund Texas Choice**, et al., | |
| Plaintiffs, | |
| v. | Case No. 1:22-cv-00859-RP |
| **José Garza**, et al., | |
| Defendants. | |

## SB 8 DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Table of contents ............................................................................................. i

Table of authorities ...................................................................................... iii

The Texas and federal abortion laws ....................................................... 1

   I.  The trigger ban ..................................................................................... 1

   II.  The pre–*Roe v. Wade* abortion statutes............................................ 3

   III. The Texas Heartbeat Act ................................................................. 4

   IV. The murder statute.............................................................................. 5

   V.  Abortion-trafficking bans ................................................................ 6

   VI. 18 U.S.C. §§ 1461–1462 ................................................................... 7

The plaintiffs' claims against the SB 8 defendants ................................. 7

   I.   The court lacks subject-matter jurisdiction to consider any of the plaintiffs' claims against the SB 8 defendants............................ 12

      A.  The plaintiffs lack Article III standing to sue over section 3 of SB 8 because every single abortion (and abortion-assistance activity) prohibited by SB 8 is independently criminalized by the trigger ban and the pre-*Roe* abortion statutes ........................................................ 12

         1.  The plaintiffs lack standing to sue over section 3 of SB 8 because the trigger ban independently outlaws all of the conduct prohibited by SB 8 ........................................................................ 14

         2.  The plaintiffs have no "intention" to engage in conduct "proscribed" by SB 8 because they are unwilling to expose themselves to the penalties established in the trigger ban ................. 14

         3.  The abortion-fund plaintiffs lack standing to sue over section 3 of SB 8 because it is impossible for them to violate SB 8 even if they were willing to subject themselves to the trigger ban's penalties ....................................................................................... 18

      B.  The plaintiffs lack standing to sue over section 30.022's fee-shifting regime because they have not alleged or shown an injury in fact that is fairly traceable to the SB 8 defendants ............................................... 21

      C.  The plaintiffs lack Article III standing because each of the SB 8 defendants has declared that they have no intention of suing the plaintiffs under SB 8 ........................................................................ 23

      D.  The plaintiffs lack Article III standing because this court cannot redress the plaintiffs' injuries by entering declaratory or injunctive relief against the SB 8 defendants ...................................................... 26

E. The plaintiffs lack Article III standing to sue over the litigation-hold letter sent on behalf of Mr. Thomason because the injuries inflicted by that letter are not redressable...........................................................27

II. None of the plaintiffs' claims against the SB 8 defendants can proceed under 42 U.S.C. § 1983 .............................................................................29

A. The SB 8 defendants have not subjected any of the plaintiffs to a "deprivation" of their constitutional or federally protected rights because they have never sued the plaintiffs under SB 8 and have no intent of doing so ...............................................................................29

B. Even if the sb 8 defendants were to bring a private civil-enforcement lawsuit against the plaintiffs, they would not be acting "under color" of state law ..............................................................................30

C. A private citizen who files a private civil lawsuit against another person does not "deprive" the person being sued of any constitutional or federally protected rights by merely asking a court to enter judgment against him ..................................................34

D. The plaintiffs' arguments for suing the SB 8 defendants under 42 U.S.C. § 1983 are meritless ..................................................................36

1. Texas has not delegated "all" of its enforcement power over SB 8 to private citizens..........................................................................36

2. Filing civil lawsuits against lawbreakers is not "a function which is traditionally the exclusive province of the state" ..........................37

III. If the SB 8 defendants are "state actors," then they are entitled to sovereign immunity ..................................................................................37

IV. The plaintiffs' constitutional grievances with SB 8 are meritless and irrelevant ..................................................................................................38

Conclusion ........................................................................................................40

Certificate of service.........................................................................................41

## TABLE OF AUTHORITIES

**Cases**

*California v. Texas*, 593 U.S. 659 (2021) ................................................................12

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)................................................22

*Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671 (Tex. 2006) ......................5

*Earnest v. Lowentritt*, 690 F.2d 1198 (5th Cir. 1982)............................................11

*Ex parte Young*, 209 U.S. 123 (1908) .....................................................................38

*Federal Election Commission v. Ted Cruz for Senate*,
   596 U.S. 289 (2022) .............................................................................................25

*Fund Texas Choice v. Paxton*, 658 F. Supp. 3d 377 (W.D. Tex. 2023)..............2, 4, 5

*Gras v. Stevens*, 415 F. Supp. 1148 (S.D.N.Y. 1976) .............................................31

*Gritchen v. Collier*, 254 F.3d 807 (9th Cir. 2001)............................................31, 37

*Harris County v. MERSCORP Inc.*, 791 F.3d 545 (5th Cir. 2015) .......................11

*Health and Hospital Corporation of Marion County v. Talevski*,
   599 U.S. 166 (2023) .............................................................................................10

*Hollis v. Itawamba County Loans*, 657 F.2d 746 (5th Cir. 1981) .........................30

*Howard Gault Co. v. Texas Rural Legal Aid, Inc.*,
   848 F.2d 544 (5th Cir. 1988) ........................................................................30, 32

*Kaspersky Lab, Inc. v. United States Dep't of Homeland Security*,
   909 F.3d 446 (D.C. Cir. 2018) ............................................................................14

*Lilith Fund for Reproductive Equity v. Dickson*,
   662 S.W.3d 355 (Tex. 2023) ...............................................................................35

*McCartney v. First City Bank*, 970 F.2d 45 (5th Cir. 1992) ..................................31

*McCorvey v. Hill*, 385 F.3d 846 (5th Cir. 2004) ....................................................4

*NiGen Biotech, LLC v. Paxton*, 804 F.3d 389 (5th Cir. 2015) ..............................38

*Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) (en banc)..................................11

*Planned Parenthood of Greater Texas Surgical Health Services v. Abbott*,
   748 F.3d 583 (5th Cir. 2014) ..............................................................................40

*Schneider Granite Co. v. Gast Realty & Investment Co.*,
   245 U.S. 288 (1917) .............................................................................................40

*Shelley v. Kraemer*, 334 U.S. 1 (1948) ...........................................................33, 36

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ........................................................22

*Stevens v. Frick*, 372 F.2d 378 (2d Cir. 1967) ......................................................31

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)..........................14, 19, 24

*United States v. Texas*, 566 F. Supp. 3d 605 (W.D. Tex. 2021) ..............................20

*Voting for America, Inc. v. Steen*, 732 F.3d 382 (5th Cir. 2013) ...........................40

*Warth v. Seldin*, 42 U.S. 490 (1975) ...........................................................................22

*White v. United States*, 601 F.3d 545 (6th Cir. 2010) ...........................................14

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) .............................................................22

*Will v. Michigan Dep't of Police*, 491 U.S. 58 (1989) ............................................38

**Statutes**

18 U.S.C. § 1461 ...............................................................................................................7

18 U.S.C. §§ 1461–1462 ....................................................................................................7

18 U.S.C. § 1462 ...............................................................................................................7

18 U.S.C. § 1462(a)–(c) ....................................................................................................7

18 U.S.C. §§ 2421–2424 ...................................................................................................6

Tex. Gov't Code § 311.036(a) .........................................................................................4

Tex. Health & Safety Code § 170A.002(a) ...............................................................1, 2

Tex. Health & Safety Code § 170A.004(b) ...................................................................1

Tex. Health & Safety Code § 170A.005 .........................................................................1

Tex. Health & Safety Code § 170A.007 .........................................................................1

Tex. Health & Safety Code § 171.002(1) ......................................................................5

Tex. Health & Safety Code § 171.201(4) ......................................................................5

Tex. Health & Safety Code § 171.204 ...........................................................................5

Tex. Health & Safety Code § 171.207(a) ............................................................4, 5, 36

Tex. Health & Safety Code § 171.208(a) .....................................................................26

Tex. Health & Safety Code § 171.208(c) .....................................................................27

Tex. Health & Safety Code § 171.208(j) ......................................................................26

Tex. Health & Safety Code § 171.212 ..........................................................................40

Tex. Health & Safety Code § 245.002(1) ...............................................................1, 3, 5

Tex. Penal Code § 1.04(a) .......................................................................................2, 3, 5, 13

Tex. Penal Code § 1.07 ....................................................................................................5

Tex. Penal Code § 7.02(a)(2) ..........................................................................................2

Tex. Penal Code § 7.03 ....................................................................................................2

Tex. Penal Code § 19.02 ..................................................................................................5

Tex. Penal Code § 19.06(2) .............................................................................................5

West's Texas Civil Statutes, article 4512.1 (1974) .................................................. 3

West's Texas Civil Statutes, article 4512.2 (1974) .................................................. 3

**Other Authorities**

*Application of the Comstock Act to the Mailing of Prescription Drugs That Can Be Used for Abortions*, 46 Op. O.L.C. ___ (Dec. 23, 2022) ................................................................................................................ 7

Black's Law Dictionary (11th edition) ..................................................................... 3

J. David Goodman, *In Texas, Local Laws to Prevent Travel for Abortions Gain Momentum*, New York Times (Oct. 24, 2023) .......................... 6

Ken Paxton, *Updated Advisory on Texas Law Upon Reversal of Roe Wade*, June 27, 2022 ...................................................................................... 3

13A Charles Alan Wright et al., *Federal Practice and Procedure* (3d ed. 2008 & Supp. 2021) ............................................................................... 14

The SB 8 defendants respectfully move for summary judgment, as there are no genuine disputes as to any material fact and the SB 8 defendants are entitled to either a jurisdictional dismissal or judgment as a matter of law on each of the counts that the plaintiffs are asserting against them.

## THE TEXAS AND FEDERAL ABORTION LAWS

The law of Texas not only bans elective abortions but also penalizes individuals and organizations that help women leave the state to obtain abortions elsewhere. Each of the four statutes restricts the behavior of abortion-assistance organizations in different ways.

## I.      The Trigger Ban

The trigger ban, also known as the Human Life Protection Act, provides (in relevant part) that "a person may not knowingly perform, induce, or attempt an abortion." Tex. Health & Safety Code § 170A.002(a). "Abortion" is defined as:

> [T]he act of using or prescribing an instrument, a drug, a medicine, or any other substance, device, or means with the intent to cause the death of an unborn child.

Tex. Health & Safety Code § 245.002(1). Anyone who violates the trigger ban is subject to criminal sanctions of up to 99 years imprisonment,[1] civil penalties,[2] and mandatory loss of medical or health-care licenses.[3]

The trigger ban does not apply to abortions that occur entirely in another state. Criminal statutes such as section 170A.002(a) can apply to out-of-state conduct only in the following set of circumstances:

---

1. *See* Tex. Health & Safety Code § 170A.004(b); Tex. Penal Code § 12.32.
2. *See* Tex. Health & Safety Code § 170A.005 ("A person who violates Section 170A.002 is subject to a civil penalty of not less than $100,000 [per] violation.").
3. *See* Tex. Health & Safety Code § 170A.007 ("[T]he appropriate licensing authority shall revoke the license, permit, registration, certificate, or other authority of a physician or other health care professional who performs, induces, or attempts an abortion in violation of Section 170A.002.").

(1) either the conduct or a result that is an element of the offense occurs inside this state;

(2) the conduct outside this state constitutes an attempt to commit an offense inside this state;

(3) the conduct outside this state constitutes a conspiracy to commit an offense inside this state, and an act in furtherance of the conspiracy occurs inside this state; or

(4) the conduct inside this state constitutes an attempt, solicitation, or conspiracy to commit, or establishes criminal responsibility for the commission of, an offense in another jurisdiction that is also an offense under the laws of this state.

Tex. Penal Code § 1.04(a). But the trigger ban will apply to out-of-state abortion providers who dispense abortion-inducing drugs if the patient ingests one or both of the abortion-inducing drugs in Texas.[4] One "element" of the crime defined in section 170A.002(a) is "the act of using . . . a drug . . . with the intent to cause the death of an unborn child," and a pregnant woman who ingests mifeprex or misoprosol in Texas is "using . . . a drug" with the intent to kill her unborn child. An out-of-state abortion provider who supplies those drugs has violated the trigger ban, and abortion funds who knowingly assist these abortions are equally liable for the crime. *See* Tex. Penal Code § 7.02(a)(2) (imposing accomplice liability on anyone who "solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense").[5]

In its order of February 24, 2023, this Court correctly held that that the trigger ban does not apply "extraterritorially." *See Fund Texas Choice v. Paxton*, 658 F. Supp. 3d 377, 397–401 (W.D. Tex. 2023). But it did not address whether the trigger ban

---

4.   A drug-induced abortion involves two drugs taken 24–48 hours apart. The patient will typically ingest the first drug (mifepristone or mifeprex) at a clinic, and return home to ingest the second drug (misoprostol) 24–48 hours later.

5.   The pregnant woman's immunity from prosecution will not shield abortion providers or abortion-assistance organizations from accomplice liability. *See* Tex. Penal Code § 7.03.

applies when a patient ingests an abortion-inducing drug in Texas after receiving it from an out-of-state provider. *See id.* These abortions occur in Texas and violate section 170A.002(a) because the act of ingesting the drug is "the act of using . . . a drug . . . with the intent to cause the death of an unborn child." Tex. Health & Safety Code § 245.002(1) (definition of "abortion"). An out-of-state abortion provider who supplies these drugs is as guilty as someone who aids or abets a self-managed abortion by mailing abortion-inducing drugs into Texas. No one in this litigation believes that the trigger ban (or any Texas abortion law) applies "extraterritorially." But punishing people outside the state for assisting criminal conduct that occurs in Texas is not an "extraterritorial" application of the law.

## II.     The Pre–*Roe v. Wade* Abortion Statutes

Texas never repealed its pre–*Roe v. Wade* abortion statutes, and these statutes became immediately enforceable when the Supreme Court overruled *Roe* on June 24, 2022. *See* Ken Paxton, *Updated Advisory on Texas Law Upon Reversal of Roe v. Wade*, June 27, 2022, available at http://bit.ly/3X1uOme. The pre-*Roe* statutes reach beyond the trigger ban by criminalizing conduct that "procures" an abortion:

> If any person shall designedly administer to a pregnant woman *or knowingly procure to be administered with her consent any drug or medicine*, or shall use towards her any violence or means whatever externally or internally applied, *and thereby procure an abortion*, he shall be confined in the penitentiary …

West's Texas Civil Statutes, article 4512.1 (1974) (emphasis added). This imposes criminal liability on abortion funds that commit acts inside Texas that "procure" abortions elsewhere. *See* Tex. Penal Code § 1.04(a)(1); Black's Law Dictionary (11th edition) ("procure *vb.* (14c) 1. To obtain (something), esp. by special effort or means. 2. To achieve or bring about (a result)."). The pre-*Roe* statutes also impose criminal liability on anyone who "furnishes the means for procuring an abortion knowing the purpose intended." West's Texas Civil Statutes, article 4512.2 (1974). This subjects

abortion funds to criminal sanctions if their conduct inside Texas "furnishes the means for procuring an abortion"—regardless of where the abortion occurs.

In 2004, the Fifth Circuit Court held that Texas's pre-*Roe* abortion statutes were "repealed by implication." *McCorvey v. Hill*, 385 F.3d 846, 849 (5th Cir. 2004). But section 2 of the Texas Heartbeat Act overrules *McCorvey*. *See* SB 8 § 2 ("Texas never repealed, either expressly or by implication, the state statutes enacted before … *Roe v. Wade* … that prohibit and criminalize abortion"). The Heartbeat Act also amends the Code Construction Act, which now provides that: "A statute that regulates or prohibits abortion may not be construed to repeal any other statute that regulates or prohibits abortion, either wholly or partly, unless the repealing statute explicitly states that it is repealing the other statute." Tex. Gov't Code § 311.036(a). Each of these statutory provisions repudiates *McCorvey*'s holding that Texas's post-*Roe* abortion regulations are somehow incompatible with the pre-*Roe* abortion ban.

The district court's preliminary-injunction order claims that *McCorvey* remains good law despite these recently enacted provisions in SB 8. *See Fund Texas Choice v. Paxton*, 658 F. Supp. 3d 377, 411–13 (W.D. Tex. 2023). The SB 8 defendants respectfully disagree and wish to preserve for appeal their claim that the Texas pre-*Roe* abortion statutes remain in effect. To preserve their claims, the SB 8 defendants will argue the summary-judgment motion as if the pre-*Roe* abortion statutes continue to exist, although we understand and respect that this Court has taken a different view.

## III. The Texas Heartbeat Act

The Texas Heartbeat Act (SB 8) prohibits abortion if a fetal heartbeat is detectable. But SB 8 does not impose criminal sanctions or administrative penalties, and it bans state officials from enforcing the law. *See* Tex. Health & Safety Code § 171.207(a). Instead, it authorizes private citizens to file civil-enforcement lawsuits

against those who perform or assist post-heartbeat abortions. SB 8 applies only to abortions performed by Texas-licensed physicians.[6]

SB 8 does not apply to abortions that occur entirely outside Texas because it lacks a clear statement of extraterritorial effect. *See Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 682 (Tex. 2006) ("[A] statute will not be given extraterritorial effect by implication but only when such intent is clear."). But SB 8 (like the trigger ban) will apply if a patient ingests an abortion-inducing drug in Texas after receiving it from a Texas-licensed physician who dispenses the drug outside the state. *See* Tex. Health & Safety Code § 245.002(1) ("abortion" includes "the act of using" any "drug" "with the intent to cause the death of an unborn child"); Tex. Health & Safety Code § 171.002(1) (adopting section 235.002(1)'s definition of abortion for purposes of the Texas Heartbeat Act). An abortion of that sort occurs in Texas, because the "the act of using" a "drug" with the intent to kill an unborn child occurs within the state. Abortion funds can be sued under SB 8 if they aid or abet these abortions.

## IV.   The Murder Statute

The murder statute prohibits any act that "intentionally or knowingly causes the death" of an unborn child,[7] although it exempts "lawful medical procedures" by licensed health care providers. *See* Texas Penal Code § 19.06(2). Any abortion prohibited by the trigger ban, the pre-*Roe* abortion statutes, or SB 8 will also violate the murder statute—but only if the death of the fetus or the act that "intentionally or knowingly caused" the death occurred inside Texas. *See* Tex. Penal Code § 1.04(a).

---

6.   *See* Tex. Health & Safety Code §§ 171.201(4), 171.204; *Fund Texas Choice v. Paxton*, 658 F. Supp. 3d 377, 387 (W.D. Tex. 2023) ("S.B. 8 limits its coverage to abortions performed by Texas-licensed physicians.").

7.   Texas Penal Code § 19.02; *see also* Texas Penal Code § 1.07 ("'Individual' . . . includ[es] an unborn child at every stage of gestation").

## V.    Abortion-Trafficking Bans

Three cities and six counties in Texas have enacted abortion-trafficking bans, which prohibit individuals and organizations from transporting pregnant women to other jurisdictions for the purpose of obtaining elective abortions. *See* J. David Goodman, *In Texas, Local Laws to Prevent Travel for Abortions Gain Momentum*, New York Times (Oct. 24, 2023), available at http://nyti.ms/4aBbsJP. These ordinances are modeled on the pre-1986 version of the federal Mann Act, which criminalized the transportation in interstate or foreign commerce of "any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose."[8] The six counties in Texas that have enacted these abortion-trafficking bans are: Lubbock County (population 317,561), Dawson County (12,130), Mitchell County (9,070), Jack County (8,875), Goliad County (7,012), and Cochran County (2,547). The three cities that have enacted these ordinances are: Odessa (population 125,413), Little River-Academy (2,048), and Muenster (1,556). Abortion funds that pay for or assist the travel of a pregnant woman who passes through any one of these jurisdictions on her way to an abortion clinic are committing unlawful acts and can be sued under the private civil-enforcement provisions in these local ordinances.

Neither the Mann Act nor the abortion-trafficking bans implicate the constitutional right to interstate travel because they do not penalize the pregnant woman who leaves the state to obtain an abortion, nor do they prevent any other person from travelling to or from the state for any purpose. Punishment is inflicted only on those who transport *another* person to an abortion provider, or who aid or abet the abortion-related transportation of another person.

---

8.    An Act to Further Regulate Interstate and Foreign Commerce by Prohibiting the Transportation Therein for Immoral Purposes of Women and Girls, and for Other Purposes, ch. 395, § 2, 36 Stat. 825, 825 (1910) (codified as amended at 18 U.S.C. §§ 2421–2424).

### VI.   18 U.S.C. §§ 1461–1462

In addition to these state and local prohibitions, it is also a federal crime to:

1. Knowingly use the mails for the mailing, carriage, or delivery of abortion-related paraphernalia;[9]

2. Knowingly use any express company, common carrier, or interactive computer service for carriage of abortion-related paraphernalia in interstate or foreign commerce;[10] or

3. Knowingly take or receive abortion-related paraphernalia from an express company, a common carrier, or an interactive computer service, regardless of whether this occurs in interstate or foreign commerce.[11]

*See* 18 U.S.C. §§ 1461–1462. Any abortion provider or abortion fund that commits or assists these acts is a criminal organization,[12] regardless of whether the Biden Administration is willing to enforce the text of 18 U.S.C. §§ 1461–1462. *See Application of the Comstock Act to the Mailing of Prescription Drugs That Can Be Used for Abortions*, 46 Op. O.L.C. ___ (Dec. 23, 2022).

### THE PLAINTIFFS' CLAIMS AGAINST THE SB 8 DEFENDANTS

The plaintiffs include nine Texas abortion funds and one abortionist who fear criminal prosecution and civil liability for assisting out-of-state abortions performed on Texas residents. On April 20, 2023, the plaintiffs sued Ashley Maxwell, Zach Maxwell, Mistie Sharp, Shannon Thomason, and Sadie Weldon under 42 U.S.C. § 1983,[13] claiming that each of these private citizens is depriving the plaintiffs of their constitutional or federally protected rights while acting under color of state law. *See* Second

---

9.   *See* 18 U.S.C. § 1461.

10.   *See* 18 U.S.C. § 1462(a)–(c).

11.   *See* 18 U.S.C. § 1462 (last two paragraphs).

12.   *See* 18 U.S.C. § 2 (federal accomplice-liability statute).

13.   For simplicity and ease of exposition, we will refer to these defendants collectively as the "SB 8 defendants," to distinguish them from the district-attorney defendants that the plaintiffs have also sued.

Amended Complaint, ECF No. 129. The complaint seeks declaratory and injunctive relief that would restrain the five SB 8 defendants from "enforcing" SB 8 against the plaintiffs, or from seeking pre-suit discovery against them in Rule 202 proceedings. *See id.* at 79; *id.* at 81.

The claims brought against the SB 8 defendants in the second amended complaint do not match the claims asserted in the motion for summary judgment. The second amended complaint asserts the following eight claims against the SB 8 defendants:

- The SB 8 defendants are violating the plaintiffs' rights under the First Amendment's Speech Clause (Count II);

- The SB 8 defendants are violating the plaintiffs' constitutional rights by threatening to sue them for violations of SB 8 that occurred before *Roe v. Wade* was overruled (Count III);

- The SB 8 defendants are violating the plaintiffs' constitutional due-process rights by threatening to sue them under an unconstitutionally vague statute (Count IV);

- SB 8, as a matter of state law, does not apply to abortions "obtained outside of Texas" (Count V);

- The SB 8 defendants are violating the plaintiffs' constitutional due-process rights by threatening to sue them under SB 8, which (in the plaintiffs' view) includes provisions that deprive the plaintiffs of "meaningful access to courts" (Count VI);

- SB 8, as a matter of state law, does not apply to abortions "provided to patients outside of Texas via telemedicine" (Count VII);

- The SB 8 defendants are violating the plaintiffs' constitutional equal-protection rights by threatening to sue them under SB 8, which (in the plaintiffs' view) includes provisions that violate the Equal Protection Clause (Count VII);[14]

---

14. The counts listed in the second amended complaint are misnumbered and include two separate counts described as "Count VII"—one concerning telemedicine abortions and the other dealing with equal protection. *See* Second Amended Complaint, ECF No. 129, at ¶¶ 235–246; *id.* at ¶¶ 257–260.

- The fee-shifting regime in section 30.022 of the Texas Civil Practice and Remedies Code, which requires litigants and attorneys to pay the costs and attorneys' fees of the "prevailing party" in any lawsuit that seeks declaratory or injunctive relief to prevent the enforcement of any Texas abortion law, is pre-empted by 42 U.S.C. § 1988 (Count VIII).

The plaintiffs' motion for summary judgment, by contrast, provides a different litany of claims, and abandons some claims that appear in the second amended complaint. The motion for summary judgment seeks judgment as a matter of law on each of the following claims:

- A claim that SB 8's standing provisions "violate Article III of the Constitution" (Roman numeral I). This claim is nowhere to be found in the second amended complaint.

- A claim that SB 8's statutory-damages provision, which requires defendants who violate SB 8 to pay damages of "not less than $10,000," is "unconstitutionally excessive" (Roman numeral II.A). None of the "counts" in the second amended complaint claim that SB 8's statutory-damages provision is "unconstitutionally excessive."

- A claim that SB 8's elimination of certain defenses is unconstitutional (Roman numeral II.B). This roughly corresponds to "Count VI" in the second amended complaint.

- A claim that the fee-shifting regime in section 30.022 of the Texas Civil Practice and Remedies Code, which requires litigants and attorneys to pay the costs and attorneys' fees of the "prevailing party" in any lawsuit that seeks declaratory or injunctive relief to prevent the enforcement of any Texas abortion law, is unconstitutional and preempted by 42 U.S.C. § 1988 (Roman numeral II.C). This corresponds to "Count VII" and part of "Count VI" in the second amended complaint.

- A claim that certain provisions in SB 8 are unconstitutionally vague (Roman numeral II.D). This corresponds to "Count IV" of the second amended complaint.

- A claim that SB 8 violates the Equal Protection Clause (Roman numeral III). This corresponds to the second "Count VII" in the second amended complaint.

- A claim that SB 8 "violates the plaintiffs' First Amendment rights." (Roman numeral IV). This corresponds to the second "Count II" in the second amended complaint.

- A claim that SB 8 cannot be enforced against statutory violations that occurred before *Roe v. Wade* was overruled (Roman numeral V). This corresponds to "Count III" in the second amended complaint.

The plaintiffs' motion for summary judgment does not discuss or request judgment as a matter of law on Count V of the second amended complaint (which claims that SB 8, as a matter of state law, does not apply to abortions "obtained outside of Texas"), or the first of the two Count VIIs (which claims that SB 8, as a matter of state law, does not apply to abortions "provided to patients outside of Texas via telemedicine"). The plaintiffs have therefore abandoned these claims and the Court should dismiss them out of hand. The Court lacks subject-matter jurisdiction to consider these claims in any event, because the SB 8 defendants have declared that: (1) They do not believe that SB 8 applies extraterritorially or to telemedicine abortions; (2) They have never considered suing anyone over abortions this sort; and (3) They will never under any circumstance sue the plaintiffs under SB 8 for performing or assisting a telemedicine or out-of-state abortion, even if the patient swallows one or more of the drugs in Texas.[15] Nor can these claims proceed under 42 U.S.C. § 1983, which allows litigants to sue only in response to deprivations of their federally protected "rights," not in response to disputes over the meaning of a state statute. *See Health and Hospital Corp. of Marion County v. Talevski*, 599 U.S. 166, 180 (2023).

---

15. *See* Thomason Supplemental Decl., ECF No. 359-1, at ¶¶ 4–5; Weldon Supplemental Decl., ECF No. 359-2, at ¶ 6; Ashley Maxwell Supplemental Decl., ECF No. 359-3, at ¶ 6; Zach Maxwell Supplemental Decl., ECF No. 359-4, at ¶ 6; Sharp Supplemental Decl., ECF No. 359-5, at ¶ 6.

The only cause of action that could be invoked to support the plaintiffs' claims is 42 U.S.C. § 1983, which allows the plaintiffs to sue any person who "depriv[es]" them of "rights, privileges, or immunities secured by the Constitution and laws" while acting "under color" of state law.[16] The Declaratory Judgment Act, which the plaintiffs cite in both their second amended complaint and motion for summary judgment, does not create a cause of action, and a court may not consider or award declaratory relief unless another statute (such as 42 U.S.C. § 1983) authorizes the plaintiff to sue the defendant over that particular claim. *See Harris County v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015) ("[T]he Declaratory Judgment Act alone does not create a federal cause of action."); *Okpalobi v. Foster,* 244 F.3d 405, 423 n.31 (5th Cir. 2001) (en banc) ("[T]he law makes clear that—although the Declaratory Judgment Act provides a *remedy* different from an injunction—it does not provide an additional cause of action with respect to the underlying claim."); *Earnest v. Lowentritt*, 690 F.2d 1198, 1203 (5th Cir. 1982) ("28 U.S.C. § 2201 . . . does not provide an independent cause of action for determination of the constitutionality of a statute"). So the plaintiffs must show that every claim that they bring against each of the SB 8 defendants is authorized by 42 U.S.C. § 1983 before they can request any type of relief (including declaratory relief) from this Court.

Finally, the plaintiffs' motion for summary judgment assumes that they can prove a violation of 42 U.S.C. § 1983 merely by showing that "SB 8" or its provisions violate the Constitution. *See* Pls.' Mot. for Sum J., ECF No. 209, at 8 ("SB8 is unconstitutional as a matter of law"); *id.* ("SB8's provisions violate Plaintiffs' due process,

---

16.   The relevant text of 42 U.S.C. § 1983 reads as follows: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

equal protection, and First Amendment rights."). That is wrong. The plaintiffs must prove that each of the named defendants—Ashley Maxwell, Zach Maxwell, Mistie Sharp, Shannon Thomason, and Sadie Weldon—is engaging in conduct that "deprives" each of the plaintiffs of their constitutional or federally protected rights. Litigants who sue under 42 U.S.C. § 1983 are challenging the *behavior* of the named defendant that they have sued; they are not challenging the legislature's decision to enact a statute. *See California v. Texas*, 593 U.S. 659, 669–70 (2021) (injuries attributable to the mere existence of a statute cannot be remedied in federal court). The plaintiffs must prove *with evidence* that Ashley Maxwell, Zach Maxwell, Mistie Sharp, Shannon Thomason, and Sadie Weldon are depriving each of them of the constitutional and federally protected rights that they assert; otherwise their section 1983 claims must be dismissed.

## I.   THE COURT LACKS SUBJECT-MATTER JURISDICTION TO CONSIDER ANY OF THE PLAINTIFFS' CLAIMS AGAINST THE SB 8 DEFENDANTS

The Court lacks subject-matter jurisdiction over every claim that the plaintiffs assert against the SB 8 defendants, and it should grant the defendants' motion for summary judgment on this ground alone.

### A.   The Plaintiffs Lack Article III Standing To Sue Over Section 3 Of SB 8 Because Every Single Abortion (And Abortion-Assistance Activity) Prohibited By SB 8 Is Independently Criminalized By The Trigger Ban And The Pre-*Roe* Abortion Statutes

The plaintiffs lack Article III standing to sue over section 3 of SB 8 because every single abortion (and abortion-assistance activity) prohibited by SB 8 is now independently criminalized by the trigger ban and the pre-*Roe* abortion statutes.[17] SB 8's

---

17.   Most abortions and abortion-assistance activities outlawed by SB 8 are also covered by the murder statute. The only exception is for a drug-induced abortion in which a patient ingests the second abortion pill in Texas (thereby completing the abortion within state boundaries), if the unborn child had already been killed by the first abortion pill before the patient's return to Texas.

ban on post-heartbeat abortions has been completely overtaken by the trigger ban and the pre-*Roe* abortion statutes, which outlaw every single abortion prohibited by SB 8 and then some by criminalizing: (1) Pre-heartbeat as well as post-heartbeat abortions; and (2) Abortions performed by anyone, not just Texas-licensed physicians. The following chart shows the relationship among the statutes:



There is no abortion (or abortion-assistance activity) prohibited by SB 8 that is not also subject to the criminal sanctions, civil penalties, and mandatory loss of licensure established in the trigger ban—as well as the criminal sanctions set forth in the pre-*Roe* abortion statutes. That includes abortions in which the patient ingests an abortion-inducing drug in Texas after receiving it from a Texas-licensed physicians located in another state, as these abortions violate the trigger ban and the pre-*Roe* abortion statutes as well as SB 8. *See* Tex. Penal Code § 1.04(a); *see also supra* at pp. 1–5.

The plaintiffs are not challenging the enforceability of the trigger ban, and they do not deny that the trigger ban and the pre-*Roe* abortion statutes outlaw and criminalize all of the conduct prohibited by section 3 of SB 8. This means the plaintiffs lack standing to sue over section 3 for three separate and independent reasons.

1.     **The Plaintiffs Lack Standing To Sue Over Section 3 Of SB 8 Because The Trigger Ban Independently Outlaws All Of The Conduct Prohibited By SB 8**

A plaintiff lacks standing to challenge the constitutionality of a statute when a separate, unchallenged statute independently outlaws all of the conduct prohibited by the disputed law. *See* 13A Charles Alan Wright et al., *Federal Practice and Procedure* § 3531.5 (3d ed. 2008 & Supp. 2021) ("One law alone does not cause the injury if the other law validly outlaws all the same activity."); *Kaspersky Lab, Inc. v. United States Dep't of Homeland Security*, 909 F.3d 446, 465 (D.C. Cir. 2018) (no standing to challenge an agency directive when a separate (unchallenged) statute prohibits "all the same conduct as the directive—and then some."); *White v. United States*, 601 F.3d 545, 552 (6th Cir. 2010) (no standing to challenge federal Animal Welfare Act's prohibition on cockfighting when "the states' prohibitions on cockfighting would remain in place notwithstanding any action we might take in regard to the AWA.").

Every single abortion (and abortion-assistance activity) prohibited by SB 8 will remain criminal even if this Court declares SB 8 unconstitutional and enjoins the defendants from filing civil-enforcement lawsuits. And because the plaintiffs are not challenging the enforceability of the trigger ban, they lack standing to sue over any of the provisions in section 3 of SB 8.

2.     **The Plaintiffs Have No "Intention" To Engage In Conduct "Proscribed" By SB 8 Because They Are Unwilling To Expose Themselves To The Penalties Established In The Trigger Ban**

The plaintiffs lack standing to sue over section 3 of SB 8 for a separate and independent reason: A litigant cannot establish standing to sue in a pre-enforcement lawsuit unless he has "'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). The

plaintiffs have brought a pre-enforcement lawsuit against each of the SB 8 defendants, and they acknowledge that they must satisfy the test from *Susan B. Anthony List*. *See* Pls.' Omnibus Response to SB 8 Defs.' Rule 12(b)(1) Motions, ECF No. 344, at 8.

To defeat a motion for summary judgment, the plaintiffs produce *evidence* showing that they have an "intention" to engage in conduct "proscribed" by SB 8—even though the trigger ban independently imposes criminal sanctions, civil penalties, and mandatory loss of licensure on every person who violates SB 8, and even though the trigger ban will remain fully enforceable even if this Court grants the plaintiffs their requested relief. And they must point to evidence showing that each of the plaintiffs is willing to accept the penalties inflicted by the trigger ban as the price for engaging in conduct prohibited by SB 8.

No such evidence exists. The Buckle Bunnies Fund and the Lilith Fund didn't even submit declarations on this point.[18] The declarations from the remaining seven abortion-fund plaintiffs say only that they "wish" to fund out-of-state abortions performed on Texas residents.[19] That's not enough. Each plaintiff must declare an "intention" to engage in conduct "proscribed" by SB 8—and an intention to do so despite the criminal sanctions and civil penalties imposed by the trigger ban, which will remain enforceable no matter how this Court rules. Yet each of the seven decla-

---

18. As far as we are aware, there is no declaration from Buckle Bunnies anywhere in the record. The plaintiffs attached a declaration from the Lilith Fund that was submitted in a different lawsuit and has nothing to say about its intentions to engage in conduct banned by SB 8. *See* Davé Decl., ECF No. 209 Ex. A-24.

19. *See* Rupani Decl., ECF No. 209 Ex. A-12, at ¶ 14; Conner Decl., ECF No. 209 Ex. A-13, at ¶ 12; Zamora Decl., ECF No. 209 Ex. A-14, at ¶ 13; Jones Decl., ECF No. 209 Ex. A-15, at ¶ 13; Cheek Decl., ECF No. 209 Ex. A-16, at ¶ 11; Mariappuram Decl., ECF No. 209 Ex. A-17, at ¶ 13; Schilling Decl., ECF No. 209 Ex. A-18, at ¶ 13.

rations submitted by the abortion-fund plaintiffs says that they will *not* engage in conduct that subjects them to "criminal prosecution and civil penalties" under the trigger ban, which the plaintiffs are not challenging.[20]

Ghazaleh Moayedi declares that she would perform abortions on Texas residents in other states "but for" the trigger ban, the pre-*Roe* abortion statutes, and SB 8. Moayedi Decl., ECF No. 209 Ex. A-19, at ¶¶ 7, 10. Moayedi also declares that she will *not* perform these abortions as long as they remain subject to the criminal sanctions, civil penalties, and mandatory loss of licensure described in the trigger ban:

> Civil penalties, and the related civil litigation, could ruin me. My medical practice and professional licensure are also jeopardized by the threat of civil penalties and especially criminal prosecution. And, obviously, the threat of being charged with a first degree felony, or even murder, and being sentenced to life in prison, is terrifying. While I am confident in my view of the actual state of the law, I cannot subject myself or my family to the harm that criminal prosecution—even an ultimately unsuccessful one—inflicts.

*Id.* at ¶ 11. So Moayedi's declaration, like the declarations from the seven abortion funds, admits that she has no "intention" of engaging in any conduct "proscribed" by the trigger ban, which neither Moayedi nor her co-plaintiffs are challenging. That means Moayedi and the abortion-fund plaintiffs likewise have no "intention" of engaging in conduct "proscribed" by SB 8—even if this Court declares SB 8 unconstitutional and issues a universal remedy against its enforcement. Every single act "proscribed" by SB 8 is equally proscribed by the trigger ban, and none of the plaintiffs are willing to subject themselves to the penalties imposed by the trigger ban in order to perform or assist an abortion outlawed by SB 8.

---

20. *See* Rupani Decl., ECF No. 209 Ex. A-12, at ¶¶ 10–11; *id.* at 13; Conner Decl., ECF No. 209 Ex. A-13, at ¶¶ 8–9; *id.* at ¶ 11; Zamora Decl., ECF No. 209 Ex. A-14, at ¶¶ 9–10; *id.* at 12; Jones Decl., ECF No. 209 Ex. A-15, at ¶¶ 9–10; *id.* at 12; Cheek Decl., ECF No. 209 Ex. A-16, at ¶¶ 7–8; *id.* at 10; Mariappuram Decl., ECF No. 209 Ex. A-17, at ¶¶ 9–10; *id.* at 12; Schilling Decl., ECF No. 209 Ex. A-18, at ¶¶ 9–10; *id.* at 12.

In sum, there is no genuine dispute as to any of the following facts:

- The plaintiffs are not challenging the constitutionality or enforceability of the trigger ban in this litigation;[21]

- The trigger ban and its penalties will remain fully enforceable no matter how the Court rules in this lawsuit;[22]

- Every single abortion and abortion-assistance activity "proscribed" by SB 8 is independently proscribed by trigger ban, and any person who violates SB 8 is subject to the criminal sanctions, civil penalties, and mandatory loss of licensure described in the trigger ban;[23]

- None of the plaintiffs are willing to engage in conduct proscribed by the trigger ban and expose themselves to the penalties established in the trigger ban;[24]

- Because the trigger ban and its penalties will remain fully enforceable no matter how the Court rules in this lawsuit, none of the plaintiffs have an "intention" to engage in any conduct "proscribed" by the trigger ban, even if they prevail in this litigation and even if the Court grants all of their requested relief;[25] and

- Because none of the plaintiffs have an "intention" to engage in any conduct "proscribed" by the trigger ban, none of the plaintiffs have an "intention" to engage in any conduct "proscribed" by SB 8 either, as every single act "proscribed" by SB 8 is also proscribed by the trigger ban.[26]

The plaintiffs therefore lack standing to sue over section 3 of SB 8 because they have no "intention" to engage in conduct "proscribed" by SB 8 given the concomitant penalties imposed by the trigger ban.

---

21. *See* Second Amended Complaint, ECF No. 129 (no claim challenging the enforceability of the trigger ban)
22. *See* note 21, *supra*.
23. *See supra* at pp. 1–5; *id*. at 12–13.
24. *See* note 20, *supra*, and accompanying text.
25. *See* note 20, *supra*, and accompanying text.
26. *See* note 20, *supra*, and accompanying text.

### 3. The Abortion-Fund Plaintiffs Lack Standing To Sue Over Section 3 Of SB 8 Because It Is Impossible For Them To Violate SB 8 Even If They Were Willing To Subject Themselves To The Trigger Ban's Penalties

The nine abortion-fund plaintiffs lack standing to sue over section 3 of SB 8 for yet another reason: It is *impossible* for the abortion-fund plaintiffs (or anyone else) to assist abortions in violation of SB 8, even if they wanted to violate the statute and subject themselves to the trigger ban's criminal sanctions and civil penalties. That is because there are no Texas-licensed physicians[27] willing to perform abortions in violation of SB 8 now that the trigger ban is in effect, as any person who violates SB 8 will also be subject to the criminal sanctions, civil penalties, and mandatory loss of licensure described the trigger ban (as well as the criminal penalties specified in the pre-*Roe* abortion statutes).

Ghazaleh Moayedi has unequivocally declared that that she will not perform any abortion that subjects her to the penalties described in the trigger ban. *See* Moayedi Decl., ECF No. 209 Ex. A-19, at ¶ 11. And there is no evidence in the record showing that any other Texas-licensed physician is willing to do this. The plaintiffs bear the burden of proof, so they must point to evidence showing that there are Texas-licensed physicians willing to perform abortions in violation of SB 8 and subject themselves to the criminal sanctions, civil penalties, and mandatory loss of licensure described the trigger ban. No rational physician would take this risk, and the absence of evidence means that the defendants are entitled to summary-judgment on this issue.

In sum, there is no genuine dispute as to any of the following facts:

- Every single abortion prohibited by SB 8 is also prohibited by the trigger ban;[28]

---

27. SB 8 applies only to abortions performed by Texas-licensed physicians. *See* note 6, *supra*.

28. *See supra* at pp. 1–5; *id*. at 12–13.

- Ghazaleh Moayedi will not perform any abortion that will expose her to penalties under the trigger ban;[29]

- Ghazaleh Moayedi will not perform any abortion prohibited by SB8, even if the plaintiffs prevail in this litigation, because she is unwilling to expose herself to penalties under the trigger ban, which will remain in effect no matter how the Court rules;[30]

- There is no evidence in the record showing that any other Texas-licensed physician is willing to perform abortions prohibited by SB8, as no rational physician would subject himself or herself to the penalties described in the trigger ban; and

- It is impossible for the nine abortion-fund plaintiffs to violate SB 8, even if they are willing to subject themselves to penalties described in the trigger ban, no Texas-licensed physicians are willing to perform abortions prohibited by SB8 on account of the trigger ban.

The nine abortion-fund plaintiffs therefore lack standing to sue over section 3 of SB 8 because it is impossible for them to violate the statute.

* * *

There only way that any of the plaintiffs might establish standing to sue over section 3 of SB 8 given the concomitant penalties imposed by the trigger ban is to show that they violated SB 8 *before* the trigger ban took effect, and that they face a "credible threat"[31] of private civil-enforcement lawsuits from the SB 8 defendants over those *past* violations of the statute. But none of the plaintiffs will admit to violating SB 8. Indeed, five of the plaintiffs (The Afiya Center, West Fund, Jane's Due Process, Clinic Access Support Network, and Moayedi) insist that they fully complied with SB 8 since it took effect, so they cannot face a "credible threat" of enforcement based on

---

29. *See* Moayedi Decl., ECF No. 209 Ex. A-19, at ¶ 11.

30. *See* Moayedi Decl., ECF No. 209 Ex. A-19, at ¶ 11.

31. *See Susan B. Anthony List*, 573 U.S. at 159 (a "credible threat of prosecution" is needed to establish standing to bring a pre-enforcement lawsuit challenging the constitutionality of a law).

any past violations of the statute.[32] Four of the other plaintiffs (Fund Texas Choice, Frontera Fund, TEA Fund, and Lilith Fund) offer mealy-mouthed statements suggesting that they might have violated SB 8 in October 2021 while the preliminary injunction from *United States v. Texas*, 566 F. Supp. 3d 605 (W.D. Tex. 2021), was in effect.[33] And the Buckle Bunnies Fund never submitted a declaration.

The plaintiffs bear the burden of proving standing, and they cannot rely on past violations of SB 8 to establish standing if they are unwilling to say whether they violated SB 8 or cooperate with the defendants' efforts to learn these facts in discovery. *See* Pls.' Response to Motion to Compel, ECF No. 361; Pls.' Response to Motion to Compel, ECF No. 366. There is no genuine dispute as to any of the following facts:

- The Afiya Center, West Fund, Jane's Due Process, Clinic Access Support Network, and Moayedi never violated SB 8;[34]

---

32. See Jones Decl., ECF No. 209 Ex. A-15, at ¶ 7 ("When Senate Bill 8, also called the Texas Heartbeat Act, became effective in September of 2021, Afiya began to limit its direct assistance activities to abortions done in compliance with that law so as to avoid potential civil litigation and civil penalties resulting from that law."); Cheek Decl., ECF No. 209 Ex. A-16, at ¶ 5 (similar); Mariappuram Decl., ECF No. 209 Ex. A-17, at ¶ 7 (similar); Schilling Decl., ECF No. 209 Ex. A-18, at ¶ 7 (similar); Moayedi Decl., ECF No. 209 Ex. A-19, at ¶ 5 ("When SB8 became effective, I stopped providing abortion services in Texas except as permitted under that law—after a cardiac activity test, and only then if the result of that test was negative.").

33. *See* Rupani Decl., ECF No. 209 Ex. A-12, at ¶ 8 n.1 ("Following the entry of an injunction by the Honorable Robert Pitman on October 6, 2021, that prohibited the enforcement of Senate Bill 8, and before that injunction was stayed by the Fifth Circuit Court of Appeals, [Fund Texas Choice] briefly resumed its normal operations and assisted pregnant Texans without regard to whether cardiac activity has been detected."); Conner Decl., ECF No. 209 Ex. A-13, at ¶ 6 n.1 (similar); Zamora Decl., ECF No. 209 Ex. A-14, at ¶ 7, n.1 (similar); Davé Decl., ECF No 209 Ex. A-24 (similar).

34. *See* note 32, *supra*.

- The Afiya Center, West Fund, Jane's Due Process, and Clinic Access Support Network, face no "credible threat" of private civil-enforcement lawsuits because they never violated SB 8 and it is impossible for them to violate SB 8 in the future;[35]

- The Afiya Center, West Fund, Jane's Due Process, Clinic Access Support Network, and Moayedi face no "credible threat" of private civil-enforcement lawsuits because they have never violated SB 8 and have no "intention" of violating it in the future because of the concomitant penalties imposed by the trigger ban;[36]

- There is no evidence in the record showing that Fund Texas Choice, Frontera Fund, TEA Fund, Lilith Fund, or Buckle Bunnies has violated SB 8 in a manner that could expose them to private civil-enforcement lawsuits;[37] and

- Fund Texas Choice, Frontera Fund, TEA Fund, Lilith Fund, and Buckle Bunnies face no "credible threat" of private civil-enforcement lawsuits because there is no evidence that they have violated SB 8, and it is impossible for them to violate SB 8 in the future and they have no "intention" of violating SB 8 in the future because of the concomitant penalties imposed by the trigger ban.

Each of the plaintiffs' claims relating to section 3 of SB 8 should be dismissed for lack of Article III standing. The plaintiffs have no "intention" or even ability to engage in conduct proscribed by SB 8 given the concomitant penalties imposed by the trigger ban, and there is no evidence that any of the plaintiffs has engaged in past violations of SB 8 that could expose it to private civil-enforcement lawsuits.

### B. The Plaintiffs Lack Standing To Sue Over Section 30.022's Fee-Shifting Regime Because They Have Not Alleged Or Shown An Injury In Fact That Is Fairly Traceable To The SB 8 Defendants

The plaintiffs cannot establish standing to sue over the fee-shifting provisions in section 4 of SB 8 unless they allege and prove facts showing: (1) an injury in fact that is (2) fairly traceable to allegedly unlawful conduct of the named defendants and (3)

---

35.  *See* note 32, *supra*.

36.  *See* note 32, *supra*, and accompanying text; *see* Part I.A.3, *supra*, at pp. 18–19.

37.  *See* note 33, *supra*, and accompanying text.

likely to redressed by the relief requested from this Court. The plaintiffs have produced *nothing* in the way of allegations or evidence to support these elements of Article III standing. The second amended complaint does not identify or describe any "injury in fact" that the plaintiffs are suffering on account of section 30.022's fee-shifting regime, nor does it explain how that injury is "fairly traceable" to allegedly unlawful conduct of the plaintiffs. *See* Second Amended Complaint, ECF No. 129. That alone requires dismissal of the plaintiffs' claims involving section 4, because the operative complaint must "clearly allege facts" needed for Article III standing with respect to *every* claim. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) ("Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element [of Article III standing.]" (citation omitted)); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013) ("[P]laintiffs bear the burden of *pleading and proving concrete facts* showing that the defendant's actual action has caused the substantial risk of harm." (emphasis added)); *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) ("The litigant *must clearly and specifically set forth facts* sufficient to satisfy these Art. III standing requirements." (emphasis added)); *Warth v. Seldin*, 42 U.S. 490, 518 (1975) ("It is the responsibility of the complainant *clearly to allege facts demonstrating that* he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." (emphasis added)).

Worse, none of the plaintiffs' declarations claim that they are suffering "injury in fact" on account of section 4's fee-shifting regime. They complain about the abortion restrictions imposed by SB 8 and its private civil-enforcement mechanism (section 3),

but they say nary a word about section 30.022 or its fee-shifting requirement.[38] Without *evidence* of injury in fact and traceability, the plaintiffs cannot prove Article III standing or survive a motion for summary judgment on this question.

There is no genuine dispute as to any of the following facts:

- There are no factual allegations in the second amended complaint that identify an "injury in fact" that the plaintiffs are suffering on account of section 30.022's fee-shifting regime, or explain how that injury is "fairly traceable" to the SB 8 defendants and redressable by the requested relief;[39] and

- There is no evidence in the record showing how the plaintiffs are suffering an "injury in fact" on account of section 30.022's fee-shifting regime, or how that injury is "fairly traceable" to the SB 8 defendants and redressable by the requested relief.[40]

Each of the plaintiffs' claims relating to section 4 of SB 8 should be dismissed for lack standing. The plaintiffs cannot survive a motion for summary judgment on this question without factual allegations in the second amended complaint and factual evidence in the record to support the existence of standing to assert these claims.

### C. The Plaintiffs Lack Article III Standing Because Each Of The SB 8 Defendants Has Declared That They Have No Intention Of Suing The Plaintiffs Under SB 8

The plaintiffs also lack Article III standing because each of the SB 8 defendants has declared that they have no intention of suing the plaintiffs under SB 8's private civil-enforcement mechanism and had no such intention when the second amended

---

38. *See* Rupani Decl., ECF No. 209 Ex. A-12 (no mention of SB 8's fee-shifting regime and no claim or suggestion that the fee-shifting requirement inflicts "injury in fact"); Conner Decl., ECF No. 209 Ex. A-13 (same); Zamora Decl., ECF No. 209 Ex. A-14 (same); Jones Decl., ECF No. 209 Ex. A-15 (same); Cheek Decl., ECF No. 209 Ex. A-16 (same); Mariappuram Decl., ECF No. 209 Ex. A-17 (same); Schilling Decl., ECF No. 209 Ex. A-18 (same); Moayedi Decl., ECF No. 209 Ex. A-19 (same); Conner Decl., ECF No. 209 Ex. A-23 (same); Davé Decl., ECF No. 209 Ex. A-24 (same).

39. *See* Second Amended Complaint, ECF No. 129.

40. *See* note 38, *supra*, and accompanying text.

complaint was filed on April 20, 2023.[41] Four of the declarants (Thomason, Weldon, Ashley Maxwell, and Sharp) are unequivocal and say that will never under any circumstance sue any of the 10 plaintiffs under SB 8's private civil-enforcement provision—and that they had no intention or interest in doing so on April 20, 2023. The only declarant who hedged even slightly was Zach Maxwell, who conceded that he was "interested" in pursuing potential SB 8 enforcement litigation against Buckle Bunnies, but "only if evidence emerges showing that the Buckle Bunnies Fund has violated Senate Bill 8." Zach Maxwell Decl., ECF No. 324-1, at ¶ 7. No evidence has emerged showing that Buckle Bunnies has violated SB 8, and Buckle Bunnies has not submitted a declaration or cooperated with the defendants' discovery efforts.[42] So the plaintiffs lack standing because: (1) They cannot establish an injury that is "fairly traceable" to the conduct of the SB 8 defendants; and (2) They cannot show a "credible threat" that any of the SB 8 defendants might "enforce" the disputed provisions of SB 8 against them. *See Susan B. Anthony List*, 573 U.S. at 159.

For good measure, the SB 8 defendants have executed additional declarations disclaiming any intent to "enforce" the discrete provisions in SB 8 that the plaintiffs attack as unconstitutional, which nixes any possibility of Article III standing at the retail as well as the wholesale level.[43] *See Federal Election Commission v. Ted Cruz for*

---

41.   *See* Thomason Decl., ECF No. 320-1; Weldon Decl., ECF No. 322-1; Ashley Maxwell Decl., ECF No. 323-1; Zach Maxwell Decl., ECF No. 324-1; Sharp Decl., ECF No. 325-1; Supplemental Thomason Decl., ECF No. 359-1; Supplemental Weldon Decl., ECF No. 359-2; Supplemental Ashley Maxwell Decl., ECF No. 359-3; Supplemental Zach Maxwell Decl., ECF No. 359-4; Supplemental Sharp Decl., ECF No. 359-5.

42.   *See* Pls.' Response to Motion to Compel, ECF No. 361; Pls.' Response to Motion to Compel, ECF No. 366.

43.   *See* Thomason Decl. in Support of Sum. J., ECF No. 379-12, at ¶¶ 6–13; Weldon Decl. in Support of Sum. J., ECF No. 379-13, at ¶¶ 6–13; Ashley Maxwell Decl. in Support of Sum. J., ECF No. 379-14, at ¶¶ 6–13; Zach Maxwell Decl. in Support of Sum. J., ECF No. 379-15, at ¶¶ 6–13; Sharp Decl. in Support of Sum. J., ECF No. 379-16, at ¶¶ 6–13.

*Senate*, 596 U.S. 289, 299 (2022) ("[P]laintiffs must establish standing separately for each claim that they press and each form of relief that they seek.").

There is no genuine dispute as to any of the following facts:

- Shannon Thomason, Sadie Weldon, Ashley Maxwell, and Mistie Sharp have not sued and will never sue any of the plaintiffs under SB 8's private civil-enforcement mechanism;[44]

- Zach Maxwell has not sued and will never sue Fund Texas Choice, The North Texas Equal Access Fund, The Lilith Fund for Reproductive Equity, Frontera Fund, The Afiya Center, West Fund, Jane's Due Process, Clinic Access Support Network, or Ghazaleh Moayedi under SB 8's private civil enforcement mechanism;[45]

- Zach Maxwell would only consider suing Buckle Bunnies under SB 8 if evidence emerges showing that Buckle Bunnies violated SB 8, and no such evidence has been uncovered;[46]

- Shannon Thomason, Sadie Weldon, Zach Maxwell, and Mistie Sharp cannot sue any of the plaintiffs under section 30.022's fee-shifting provision because none of them have attained "prevailing party" status in a case to which one of the plaintiffs is a party;[47]

- Ashley Maxwell has attained "prevailing party" status within the meaning of section 30.022 in a lawsuit brought against her by the

---

44. *See* Thomason Decl., ECF No. 320-1, at ¶ 8 ("I will not sue Fund Texas Choice, The North Texas Equal Access Fund, The Lilith Fund for Reproductive Equity, Frontera Fund, The Afiya Center, West Fund, Jane's Due Process, Clinic Access Support Network, Buckle Bunnies Fund, or abortionist Ghazaleh Moayedi for violating the Texas Heartbeat Act, even if they engage in conduct that violates the statute, and I will not sue them under SB 8's private civilenforcement mechanism under any circumstance."); Weldon Decl., ECF No. 322-1, at ¶ 9 (same); Ashley Maxwell Decl., ECF No. 323-1, at ¶ 7 (same); Sharp Decl., ECF No. 325-1, at ¶ 10 (same).

45. *See* Zach Maxwell Decl., ECF No. 324-1, at ¶ 9.

46. *See* Zach Maxwell Decl., ECF No. 324-1, at ¶ 7.

47. See Thomason Decl., ECF No. 320-1, at ¶ 8 ("I have not obtained "prevailing party" status in any abortion-related lawsuit."); Zach Maxwell Decl., ECF No. 323-1, at ¶ 13 (same); Weldon Decl., ECF No. 322-1, at ¶ 10 ("I have not obtained "prevailing party" status in any abortion-related lawsuit to which [the plaintiffs] are a party."); Sharp Decl., ECF No. 325-1, at ¶ 11 (same).

> North Texas Equal Access Fund, but her case is on appeal and at the
> Supreme Court of Texas on petition for review. If Ms. Maxwell ul-
> timately prevails then she will consider whether to pursue the rem-
> edies available under section 30.022(a) against the North Texas
> Equal Access Fund, in consultation with her attorneys.[48]

Each of the plaintiffs' claims against the SB 8 defendants should therefore be dismissed for lack of Article III standing, as they cannot establish an injury that is "fairly trace-able" to the conduct of the SB 8 defendants; and they cannot show a "credible threat" that any SB 8 defendant might enforce the disputed provisions of SB 8 against them.

### D.   The Plaintiffs Lack Article III Standing Because This Court Cannot Redress The Plaintiffs' Injuries By Entering Declaratory Or Injunctive Relief Against The SB 8 Defendants

There is a separate and independent obstacle to the plaintiffs' standing to sue the SB 8 defendants over section 3 of SB 8. Even if the plaintiffs could show that they have violated or will violate Senate Bill 8 and that the SB 8 defendants will sue them in response, the Court cannot "redress" that injury by restraining the SB 8 defendants from suing the plaintiffs under SB 8's private civil-enforcement provision. Senate Bill 8 allows anyone[49] to sue a person that aids or abets an unlawful post-heartbeat abor-tion, or that intends to engage in such conduct. *See* Tex. Health & Safety Code § 171.208(a). And if the SB 8 defendants are enjoined from suing, there are countless others who will sue to recover the $10,000 for each illegal abortion that the plaintiffs perform or assist. An injunction that restrains only the SB 8 defendants from suing—while leaving the door open for every other person in the world to sue the plaintiffs for their violations of Senate Bill 8—does not redress any injury that the plaintiffs claim to be suffering on account of the statute. And the plaintiffs have provided no

---

48.   *See* Ashley Maxwell Decl. in Support of Sum. J., ECF No. 379-14 ¶ 9.

49.   Other than Texas government officials and individuals who impregnated the mother of the unborn child through rape or some other illegal act. *See* Tex. Health & Safety Code §§ 171.208(a); 171.208(j).

allegations or evidence showing how their requested remedy would remove or in any way diminish the injuries described in each of the plaintiffs' declarations.

Senate Bill 8 allows only a single recovery of $10,000 for each illegal abortion that a defendant performs or assists,[50] so an injunction that prevents the SB 8 defendants from suing does nothing to reduce the monetary exposure that the plaintiffs face under the statute. It also does nothing to reduce the deterrent effect of Senate Bill 8's private civil-enforcement regime. Someone will still sue the plaintiffs to collect the $10,000 per illegal abortion that the statute authorizes; taking the SB 8 defendants out of the mix does nothing to eliminate (or even alleviate) the injuries described in the plaintiffs' declarations. The plaintiffs bear the burden of proving redressability, and they have made no attempt to do so.

### E. The Plaintiffs Lack Article III Standing To Sue Over The Litigation-Hold Letter Sent On Behalf Of Mr. Thomason Because The Injuries Inflicted By That Letter Are Not Redressable

The plaintiffs' only argument for standing to sue Mr. Thomason rests on a litigation-hold letter that Jonathan F. Mitchell, Mr. Thomason's attorney, sent to some of the plaintiffs and their counsel on July 7, 2022. *See* Pls.' Mot. for Sum. J., ECF No. 209, at 5. The plaintiffs claim that this litigation-hold letter injures them by requiring them to preserve "documents and information related to certain abortions" that they would otherwise be free to destroy. This cannot be used to establish standing because the injuries inflicted by this litigation-hold letter are not redressable.

---

50. *See* Tex. Health & Safety Code § 171.208(c) ("Notwithstanding Subsection (b), a court may not award relief under this section in response to a violation of Subsection (a)(1) or (2) if the defendant demonstrates that the defendant previously paid the full amount of statutory damages under Subsection (b)(2) in a previous action for that particular abortion performed or induced in violation of this subchapter, or for the particular conduct that aided or abetted an abortion performed or induced in violation of this subchapter.").

First, Mr. Mitchell has served the plaintiffs' counsel with a separate and distinct litigation-hold letter that independently requires the plaintiffs to preserve all of the documents and communications described in the litigation-hold letter of July 7, 2022. *See* Mitchell Decl., ECF No. 359-6, at ¶ 5 & Ex. A. This supplemental litigation-hold letter, which was served on May 5, 2024, states that it is being sent on behalf of other clients of Mr. Mitchell who are considering whether to investigate or sue individuals and organizations that perform and facilitate abortions on Texas residents, and that these clients do not include Ashley Maxwell, Zach Maxwell, Sadie Weldon, Mistie Sharp, or Shannon D. Thomason. *See id*. at Ex. A ("This litigation-hold letter is . . . not [sent] on behalf of any of the individuals that you have sued in *Fund Texas Choice v. Garza*, No. 1:22-cv-00859-RP (W.D. Tex.)). So the plaintiffs and their lawyers will remain obligated to preserve all documents and communications described in the litigation-hold letter sent on July 7, 2022, regardless of any relief that this Court enters against Mr. Thomason or the remaining SB 8 defendants.

Second, even apart from the separate litigation-hold letter that Mr. Mitchell sent on May 5, 2024, the plaintiffs are not requesting any relief that would absolve them of the responsibilities described in the earlier litigation-hold letter. The plaintiffs are not asking this Court to enjoin Mr. Thomason from investigating or suing Alan Braid, Andrea Gallegos, Amy Hagstrom Miller, and Marva Sadler. They are seeking relief that would enjoin Mr. Thomason from "enforcing" SB 8 *against the named plaintiffs*. *See* Second Amended Complaint, ECF No. 129, at 79–82 (requested relief). Mr. Thomason will remain free to pursue his Rule 202 petition and eventual SB 8 lawsuits against Braid, Gallegos, Miller, and Sadler, which means that the plaintiffs will remain under the obligations described the litigation-hold letter sent by Mr. Thomason's attorney. The plaintiffs are not requesting a remedy that would revoke the litigation-hold letter or restrain Mr. Thomason's lawyer from enforcing it.

## II.   NONE OF THE PLAINTIFFS' CLAIMS AGAINST THE SB 8 DEFENDANTS CAN PROCEED UNDER 42 U.S.C. § 1983

The SB defendants are also entitled to summary judgment because none of the plaintiffs' claims against them can proceed under 42 U.S.C. § 1983. That is because: (1) The SB 8 defendants cannot "deprive" the plaintiffs of their constitutional or federally protected rights within the meaning of 42 U.S.C. § 1983 when they have never sued the plaintiffs under SB 8 and have disavowed any intent to do so; (2) Even if the defendants were to sue the plaintiffs under SB 8, they would not be acting "under color" of state law; and (3) Even if the defendants were to sue the plaintiffs under SB 8 while acting "under color" of state law, a private citizen who files a civil lawsuit does not "deprive" the person being sued of any constitutional or federally protected "rights" merely by asking a court to enter judgment against him.

### A.   The SB 8 Defendants Have Not Subjected Any Of The Plaintiffs To A "Deprivation" Of Their Constitutional Or Federally Protected Rights Because They Have Never Sued The Plaintiffs Under SB 8 And Have No Intent Of Doing So

The plaintiffs accuse the SB 8 defendants of violating 42 U.S.C. § 1983, but they never quote or consider the text of that statute:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. To establish a violation of 42 U.S.C. § 1983, each of the plaintiffs must identify a "person" who is engaged in conduct that "subjects" them or "causes" them to be subjected to a "deprivation" of their federally protected rights. The plaintiffs do not establish a violation of 42 U.S.C. § 1983 by railing against the perceived constitutional shortcomings of SB 8. They must show how *the behavior of the SB 8*

*defendants* is subjecting them to a "deprivation" of the constitutional or federally protected rights that they are asserting in this lawsuit.

The plaintiffs cannot make this showing because the SB 8 defendants: (1) Are not suing them under SB 8; (2) Have no intention of suing them under SB 8; and (3) Will not sue them under SB 8's private civil-enforcement mechanism.[51] *See* Part I.C, *supra* at pp. 23–26. There are no genuine disputes as to any of these facts. The plaintiffs cannot show that the SB 8 defendants are "depriving" them of any constitutional or federally protected rights under 42 U.S.C. § 1983 when the SB 8 defendants are not suing them under SB 8 and have no plans to do so.

### B.   Even If The SB 8 Defendants Were To Bring A Private Civil-Enforcement Lawsuit Against The Plaintiffs, They Would Not Be Acting "Under Color" Of State Law

Even if one were to disregard the defendants' declarations and imagine that the defendants intend to sue the plaintiffs under SB 8, the plaintiffs' section 1983 claims must be *still* be dismissed because a private citizen does not act under color of state law by suing (or threatening to sue) another person under a state statute that authorizes his suit. The law of the Fifth Circuit is clear on this point. *See, e.g.*, *Howard Gault Co. v. Texas Rural Legal Aid, Inc.*, 848 F.2d 544, 555 (5th Cir. 1988) ("The growers cannot be held liable in a § 1983 suit simply because they filed suit under Texas statutes and obtained a temporary restraining order."); *Hollis v. Itawamba County Loans*, 657 F.2d 746, 749 (5th Cir. 1981) ("[N]o state action is involved when the state merely opens its tribunals to private litigants."); *see also Gras v. Stevens*, 415 F. Supp.

---

51.   The only possible caveat is for Zach Maxwell, who acknowledge that he might sue Buckle Bunnies if evidence emerges showing that they violated SB 8 by aiding or abetting a post-heartbeat abortion performed by a Texas-licensed physician after September 1, 2021. *See* Zach Maxwell Decl., ECF No. 324-1, at ¶ 7. But there is no evidence in the record that Buckle Bunnies has ever violated SB 8, so the plaintiffs cannot show that there is any possibility that Mr. Maxwell will sue Buckle Bunnies under SB 8's private civil-enforcement mechanism.

1148, 1152 (S.D.N.Y. 1976) (Friendly, J.) ("[W]e know of no authority that one private person, by asking a state court to make an award against another which is claimed to be unconstitutional, is violating 42 U.S.C. § 1983.").[52]

The only circumstance in which a private litigant may be sued for acting "under color of" state law is when he conspires or coordinates his efforts with state officials, or when there is "corruption of judicial power by the private litigant." *See, e.g.,* *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992) ("If a state merely allows private litigants to use its courts, there is no state action within the meaning of § 1983 unless 'there is corruption of judicial power by the private litigant.'" (quoting *Earnest v. Lowentritt,* 690 F.2d 1198, 1200 (5th Cir. 1982)). In *Howard Gault*, the Fifth Circuit carefully explained the circumstances in which a private litigant might be held liable under 42 U.S.C. § 1983 for acting "under color of" state law:

> The growers are purely private individuals. Viewed in a vacuum, their action in filing suit and seeking a temporary restraining order cannot be viewed as state action. The growers cannot be held liable in a § 1983 suit simply because they filed suit under Texas statutes and obtained a temporary restraining order. The action taken by the growers cannot be viewed in a vacuum, however. It arose out of deep-seated community hostility toward the strike, the strike organizers and the strikers themselves. The attorneys hired to represent the growers were also criminal district attorneys. Throughout the strike, while representing the growers in an ostensibly private action, the attorneys advised the sheriff of the provisions of the TRO and instructed them in means of enforcing compliance. The attorneys sought advice from the Attorney General of the State of Texas on the constitutionality of the Mass Picketing Statutes. Under Texas law, this advice could only be solicited by

---

52.  *See also Stevens v. Frick*, 372 F.2d 378, 381 (2d Cir. 1967) ("[M]erely by holding its courts open to litigation of complaints, regardless of how baseless they eventually prove to be, Pennsylvania does not clothe persons who use its judicial processes with the authority of the state."); *Gritchen v. Collier*, 254 F.3d 807, 813–14 (9th Cir. 2001) (police officer who threatens to bring defamation suit is not acting "under color of state law" under 42 U.S.C. § 1983, even though a state statute gave him the right to sue).

public officials in their public capacity. Throughout the litigation, dep-
uty sheriffs and investigators with the sheriff's office reported the results
of their observations on the picket lines to the growers' attorneys, who
were at once public officials charged with the duty of enforcing state
criminal laws, including civil injunctions, and private attorneys con-
cerned with adequate representation of their private clients. The inter-
locking activities of the State, through the criminal district attorneys,
the Attorney General and the sheriff of Deaf Smith County, and the
growers constituted a joint effort which justified the lower court's char-
acterization of the growers as state actors. The activity here, while not
compelled by the state, was so "significant[ly] encourage[ed, both]
overt[ly] and covert[ly], that the choice must in law be deemed to be
that of the state." We once again emphasize that the growers cannot be
considered state actors merely because they invoked a state statute. It
was the heavy participation of state and state officials that brings this
under color of state law.

*Howard Gault*, 848 F.2d at 555; *see also id*. ("The growers' action here extends be-

yond merely resorting to the courts to obtain a TRO. The growers acted in concert

with their attorneys who were public officials and who were engaging in official duties

throughout the strike.").

There is no evidence in the record that Mr. Maxwell, Ms. Maxwell, Ms. Sharp,

Ms. Weldon, or Mr. Thomason is conspiring or coordinating with public officials, and

the plaintiffs bear the burden of proof on this question. And each of the SB 8 defend-

ants has declared that any SB 8 enforcement lawsuits that they might file will be done

on their own initiative and without consultation with government officials:

I have not conspired or consulted with any judge or any government
official with regard to any possible lawsuit that I might bring under
Senate Bill 8, and I have no intention of doing so. If I ever decide to
bring a civil-enforcement lawsuit under Senate Bill 8, it will be entirely
of my own accord, and it will be brought in consultation with no one
except my attorneys, who are private citizens and not government offi-
cials. Under no circumstance will I coordinate my efforts with any judge
or any government official, and I will not allow my attorneys to do so.

Thomason Decl., ECF No. 320-1, at ¶ 13; Weldon Decl., ECF No. 322-1, at ¶ 13;

Ashley Maxwell Decl., ECF No. 323-1, at ¶ 11; Zach Maxwell Decl., ECF No. 324-

1, at ¶ 16; Sharp Decl., ECF No. 325-1, at ¶ 14. There is no genuine dispute as to these facts, and the defendants are entitled to summary judgment on this ground.

It is hardly unusual for a state to foreclose traditional public enforcement of one of its laws and leave enforcement to occur exclusively through private civil lawsuits, as the Texas legislature did with SB 8. *See Whole Woman's Health v. Jackson*, 595 U.S. 30, 45 (2021) (analogizing SB 8 to "private attorneys general acts, statutes allowing for private rights of action, [and] tort law"). The tort of defamation is enforced solely through private civil lawsuits. The state does not impose fines or penalties on people who commit libel or slander, and neither a state's legislature nor its executive-branch officials play any role in "enforcing" defamation laws or initiating lawsuits in response to a defamatory utterance. Breach of contract is similar in this regard.

Yet none of this makes plaintiffs (or potential plaintiffs) in defamation or breach-of-contract lawsuits into state actors who can be sued under 42 U.S.C. § 1983. And the plaintiffs fail to cite a single case holding that private litigants act "under color" of state law when the state disclaims any public-enforcement role over a law and allows that law to be enforced exclusively through private civil lawsuits. Every case that we could find has rejected this idea.[53] And for good reason: The state actor in these situations is the *court*, not the private litigant who merely *asks* the court to enforce the Texas Heartbeat Act (or a state's defamation or breach-of-contract laws) against lawbreakers. *See Shelley v. Kraemer*, 334 U.S. 1, 14 (1948)("'A State acts by its legislative, its executive, or its judicial authorities. *It can act in no other way*.'" (emphasis added) (quoting *Ex parte Commonwealth of Virginia*, 100 U.S. 339, 347 (1880)).

The same analysis applies when a private citizen files a complaint with the Texas Medical Board and asks it to revoke Ghazaleh Moayedi's medical license. *See* https://bit.ly/4dBW1Uk (web page of TMB inviting private citizens to submit complaints

---

53.    *See* note 52, *supra*, and accompanying text.

against licensed medical professionals). The medical board is acting "under color" of state law, but the private complainant is not. That would remain the case even if a private complainant asks the Texas Medical Board to revoke Moayedi's license in retaliation for her constitutionally protected activities, such as her criticism of Texas's abortion laws or her public statements in support of legal abortion. Private citizens who ask courts or licensing authorities to take action against lawbreakers (or perceived lawbreakers) are not state actors, even if they formally initiate proceedings in those tribunals, and even if they make patently unconstitutional requests of these entities.

### C. A Private Citizen Who Files A Private Civil Lawsuit Against Another Person Does Not "Deprive" The Person Being Sued Of Any Constitutional Or Federally Protected Rights By Merely Asking A Court To Enter Judgment Against Him

Finally, even if the plaintiffs had proven that the defendants would sue them under SB 8, and even if the plaintiff had proven that the defendants would act "under color" of state law when doing so, the defendants would *still* be entitled to summary judgment because a private citizen who sues in state court does not "deprive" the person being sued of any constitutional or federally protected right. *See* 42 U.S.C. § 1983 (imposing liability only on persons who "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the *deprivation* of any rights, privileges, or immunities secured by the Constitution and laws" while acting under color of state law (emphasis added)). The private litigant is powerless to "deprive" his opposing litigant of anything. All he can do is *ask* the state judiciary to impose monetary consequences and injunctive relief on lawbreakers, and only the state judiciary can exercise the coercive powers needed to "deprive" the plaintiffs of the constitutional and federally protected rights that they assert.

Filing or threatening to file a civil lawsuit against another person does not "deprive" that person of "life, liberty, or property" within the meaning of the Fourteenth

Amendment. And filing a civil lawsuit does not "deprive" any person of their constitutional rights—even if the lawsuit is filed in response to a person's constitutionally protected conduct. The Afiya Center, the Texas Equal Access Fund, and the Lilith Fund for Reproductive Equity did not "deprive" Mark Lee Dickson of his constitutional rights when they sued him for defamation in response to his constitutionally protected speech, although the state judiciary would have "deprived" Mr. Dickson of his First Amendment rights if it had entered judgment against him or ordered him to pay damages. *See Lilith Fund for Reproductive Equity v. Dickson*, 662 S.W.3d 355 (Tex. 2023) (holding that all of Mark Lee Dickson's allegedly defamatory utterances were protected by the First Amendment); *id*. at 371 (Devine, J., concurring) (denouncing the abortion funds' defamation claims as "obviously meritless lawsuits that were filed to silence their political adversaries."). Do these plaintiffs (and does this Court) think that Mr. Dickson can now sue them under 42 U.S.C. § 1983 to recover his court costs and attorneys' fees, as well as money damages, for the bogus defamation lawsuits that they filed against him in state court?

Only the state judiciary can "deprive" the plaintiffs of their constitutional rights in SB 8 litigation, and it does so by imposing penalties or remedies backed by the coercive powers of the state. Neither a private SB 8 litigant nor a complainant to the Texas Medical Board has any ability (let alone authority) to deprive the plaintiffs of their constitutionally protected rights, because they cannot wield the coercive powers of the state against anyone. That remains the case even if this Court were to accept the plaintiffs' contention that the SB 8 defendants (and other potential SB 8 litigants) act "under color" of state law. Only the state *courts* can deprive the plaintiffs of their constitutional rights in SB 8 litigation, and they can do so only *after* making an independent determination that a private civil-enforcement lawsuit is meritorious.

> **D.      The Plaintiffs' Arguments For Suing The SB 8 Defendants Under 42 U.S.C. § 1983 Are Meritless**

The plaintiffs disregard the Fifth Circuit's cases on private litigants and claim that the SB 8 defendants can be sued under 42 U.S.C. § 1983 because (according to the plaintiffs) Texas has "delegated *all* of its enforcement authority under SB8 to private individuals." Pls.' Mot. for Sum. J., ECF No. 209, at 37 (emphasis in original). The plaintiffs' claim is false and legally irrelevant.

> **1.      Texas Has Not Delegated "All" Of Its Enforcement Power Over SB 8 To Private Citizens**

Texas has not delegated "all" of its SB 8 enforcement power over SB 8 to private citizens because the state judiciary enforces SB 8 in response to private civil lawsuits. *See* Tex. Health & Safety Code § 171.207(a) ("No enforcement of this subchapter . . . may be taken or threatened by this state, a political subdivision, a district or county attorney, or an executive or administrative officer or employee of this state or a political subdivision against any person, *except as provided in Section 171.208*." (emphasis added)); *Shelley v. Kraemer*, 334 U.S. 1, 14 (1948) ("[T]he action of state courts and of judicial officers in their official capacities is to be regarded as action of the State within the meaning of the Fourteenth Amendment."). No private citizen can do anything to "enforce" SB 8 except by *asking* the state judiciary to impose monetary consequences and injunctive relief on lawbreakers, and only the state judiciary can exercise the coercive powers needed to bring lawbreakers (and would-be lawbreakers) to heel. So the entire premise of the plaintiffs' state-action argument is false.

The state of Texas enforces SB 8 through its judiciary, and it enforces SB 8 in response to lawsuits brought by private citizens who can only ask the courts to restrain or impose sanctions on lawbreakers. This arrangement is no different from the Texas Medical Board, which allows members of the public to file complaints against licensed physicians, yet reserves to itself the power to discipline physicians and determine whether punishment should be imposed. *See* https:// bit.ly/4dBW1Uk (web page of

TMB inviting private citizens to submit complaints against licensed medical professionals). SB 8 litigants are empowered only to submit complaints to the state judiciary and ask a court to impose the remedies in section 171.208(b). They have no power to adjudge anyone guilty of violating SB 8, and they have no power to impose any punishment or coercive measures against lawbreakers. Only the courts can do that.

### 2. Filing Civil Lawsuits Against Lawbreakers Is Not "A Function Which Is Traditionally The Exclusive Province Of The State"

The plaintiffs also argue that the SB 8 defendants can be sued under 42 U.S.C. § 1983 because the SB 8 litigants are performing a function "traditionally exclusively reserved to the state," and therefore qualify as state actors under the "public function" test. *See* Pls.' Mot. for Sum. J., ECF No. 209, at 36 (citing *Manhattan Community Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019)). The plaintiffs' claim is false. Filing private civil lawsuits against lawbreakers is not a "function which is traditionally the exclusive province of the state," and the plaintiffs cite no authority to support this idea. Private civil enforcement of laws has existed since time immemorial, and private civil litigants do not become part of the state or act "under color" of state law when a state authorizes private civil lawsuits as the exclusive means of enforcing a common-law or statutory rule. *See Gritchen v. Collier*, 254 F.3d 807, 813–14 (9th Cir. 2001) (police officer who threatens to bring defamation suit is not acting "under color" of state law, even though a state statute gave him the right to sue).

## III. If The SB 8 Defendants Are "State Actors," Then They Are Entitled To Sovereign Immunity

If the Court rejects the arguments in Section II and concludes that the SB 8 defendants should be treated as state actors rather than private citizens,[54] then the

---

54.   *See* Pls.' Mot. for Sum. J., ECF No. 209, at 37 ("The SB8 Defendants are plainly operating on behalf of the State of Texas").

plaintiffs' claims against the SB 8 defendants should be dismissed on sovereign-immunity grounds. 42 U.S.C. § 1983 does not abrogate sovereign immunity. *See Will v. Michigan Dep't of Police*, 491 U.S. 58, 67 (1989). So the plaintiffs must show that their claims against the SB 8 defendants fit within the *Ex parte Young* doctrine. But a litigant can sue state actors under *Ex parte Young*, 209 U.S. 123 (1908), only when they "threaten and are about to commence proceedings." *Id.* at 156; *see also NiGen Biotech, LLC v. Paxton*, 804 F.3d 389, 392 (5th Cir. 2015) (*Ex parte Young* lawsuits allows only when the alleged threat "intimat[es] that formal enforcement was on the horizon."). The plaintiffs cannot make this showing when the defendants have disclaimed any intent to sue the plaintiffs under SB 8. *See* Part I.C, *supra* at pp. 23–26.

## IV. THE PLAINTIFFS' CONSTITUTIONAL GRIEVANCES WITH SB 8 ARE MERITLESS AND IRRELEVANT

The Court should not consider any of the plaintiffs' constitutional grievances with SB 8 because the plaintiffs lack Article III standing and cannot use 42 U.S.C. § 1983 to litigate any of these claims against the SB 8 defendants. But if Court decides to reach these issues, it should reject them out of hand for reasons provided in the SB 8 defendants' response to the plaintiffs' motion for summary judgment. *See* SB 8 Defs.' Response to Pls.' Mot. for Sum. J., ECF No. 378, at 22–38. The plaintiffs also ignore the severability clause that requires the courts to sever and preserve every constitutional provision and every constitutional *application* of SB 8's provisions:

> (a) Mindful of *Leavitt v. Jane L.*, 518 U.S. 137 (1996), in which in the context of determining the severability of a state statute regulating abortion the United States Supreme Court held that an explicit statement of legislative intent is controlling, it is the intent of the legislature that every provision, section, subsection, sentence, clause, phrase, or word in this chapter, and every application of the provisions in this chapter, are severable from each other.
>
> (b) If any application of any provision in this chapter to any person, group of persons, or circumstances is found by a court to be invalid or unconstitutional, the remaining applications of that provision to all

other persons and circumstances shall be severed and may not be affected. All constitutionally valid applications of this chapter shall be severed from any applications that a court finds to be invalid, leaving the valid applications in force, because it is the legislature's intent and priority that the valid applications be allowed to stand alone. Even if a reviewing court finds a provision of this chapter to impose an undue burden in a large or substantial fraction of relevant cases, the applications that do not present an undue burden shall be severed from the remaining applications and shall remain in force, and shall be treated as if the legislature had enacted a statute limited to the persons, group of persons, or circumstances for which the statute's application does not present an undue burden.

(b-1)  If any court declares or finds a provision of this chapter facially unconstitutional, when discrete applications of that provision can be enforced against a person, group of persons, or circumstances without violating the United States Constitution and Texas Constitution, those applications shall be severed from all remaining applications of the provision, and the provision shall be interpreted as if the legislature had enacted a provision limited to the persons, group of persons, or circumstances for which the provision's application will not violate the United States Constitution and Texas Constitution.

(c)  The legislature further declares that it would have enacted this chapter, and each provision, section, subsection, sentence, clause, phrase, or word, and all constitutional applications of this chapter, irrespective of the fact that any provision, section, subsection, sentence, clause, phrase, or word, or applications of this chapter, were to be declared unconstitutional or to represent an undue burden.

(d)  If any provision of this chapter is found by any court to be unconstitutionally vague, then the applications of that provision that do not present constitutional vagueness problems shall be severed and remain in force.

(e)  No court may decline to enforce the severability requirements of Subsections (a), (b), (b-1), (c), and (d) on the ground that severance would rewrite the statute or involve the court in legislative or lawmaking activity. A court that declines to enforce or enjoins a state official from enforcing a statutory provision does not rewrite a statute, as the statute continues to contain the same words as before the court's decision. A judicial injunction or declaration of unconstitutionality:

(1) is nothing more than an edict prohibiting enforcement that may subsequently be vacated by a later court if that court has a different

understanding of the requirements of the Texas Constitution or United States Constitution;

(2)  is not a formal amendment of the language in a statute; and

(3)  no more rewrites a statute than a decision by the executive not to enforce a duly enacted statute in a limited and defined set of circumstances.

Tex. Health & Safety Code § 171.212. The plaintiffs ignore this severability provision, but this Court cannot. *See Planned Parenthood of Greater Texas Surgical Health Services v. Abbott*, 748 F.3d 583, 589 (5th Cir. 2014) ("Federal courts are bound to apply state law severability provisions."); *Voting for America, Inc. v. Steen*, 732 F.3d 382, 398 (5th Cir. 2013) ("Severability is a state law issue that binds federal courts."); *Schneider Granite Co. v. Gast Realty & Investment Co.*, 245 U.S. 288, 290 (1917) ("[T]he severability of a statute of the state . . . is a question of state law."). Any remedy must preserve each of the constitutional provisions and applications of the statute.

## CONCLUSION

The SB 8 defendants' motion for summary judgment should be granted. The Court should dismiss all claims brought against the SB 8 defendants for lack of subject-matter jurisdiction, or (in the alternative) it should enter judgment for the SB 8 defendants on every count and claim asserted against them in the second amended complaint and in the plaintiffs' motion for summary judgment.

Respectfully submitted.

 /s/ Jonathan F. Mitchell 
Jonathan F. Mitchell
Texas Bar No. 496344
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dated: May 31, 2024                    *Counsel for SB 8 Defendants*

## CERTIFICATE OF SERVICE

I certify that on May 31, 2024, I served this document through CM/ECF upon:

Jennifer R. Ecklund
Elizabeth G. Myers
Allyn Jaqua Lowell
John Atkins
Elizabeth Rocha
Thompson Coburn LLP
2100 Ross Avenue, Suite 3200
Dallas, Texas, 75201
(972) 629-7100 (phone)
(972) 629-7171 (fax)
jecklund@thompsoncoburn.com
emyers@thompsoncoburn.com
alowell@thompsoncoburn.com
jatkins@thompsoncoburn.com
erocha@thompsoncoburn.com

Alex Wilson Albright
Marcy Hogan Greer
Alexander Dubose & Jefferson LLP
515 Congress Avenue, Suite 2350
Austin, Texas 78701-3562
(512) 482-9300 (phone)
(512) 482-9303 (fax)
aalbright@adjtlaw.com
mgreer@adjtlaw.com

*Counsel for Plaintiffs*

 /s/ Jonathan F. Mitchell 
Jonathan F. Mitchell
*Counsel for SB 8 Defendants*