IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| FUND TEXAS CHOICE, et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:22-CV-859-RP |
| SUSAN R. DESKI, et al., | § § § | |
| Defendants. | § | |

## ORDER

Before the Court are Defendants Ashley Maxwell, Zach Maxwell, Mistie Sharp, Shannon D. Thomason, and Sadie Weldon's (the "S.B. 8 Defendants") Motions to Dismiss, (Dkts. 320, 322, 323, 324, 325), Motion for Judgment on the Pleadings, (Dkt. 326), Motions for Summary Judgment, (Dkts. 327, 377), and Motions to Compel, (Dkts. 350, 353). Also before the Court are Plaintiffs Fund Texas Choice, et al.'s ("Plaintiffs") Motion for Summary Judgment, (Dkt. 209), and the National Network of Abortion Funds' Motion for Leave to File Brief as *Amicus Curiae*, (Dkt. 391). Having considered the parties' briefing, the record, and the relevant law, the Court issues the following order.

## I. BACKGROUND

This case concerns several Texas abortion advocacy groups that seek to fund or support abortion for Texans in states where it remains legal. Plaintiffs are comprised of several non-profit Texas abortion funds and one physician. As part of their mission to support reproductive rights, they hope to fund and facilitate travel and lodging for Texans who seek abortions outside the state. (Am. Compl., Dkt. 129, at 2). Before the Supreme Court's decision in *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022), the funds would provide financial, logistical, emotional, and travel assistance to pregnant Texans. They claim that they have been forced to halt many of their historic

1

activities following the passage of S.B. 8 and the *Dobbs* decision, and they want to resume their prior activities as permitted by the U.S. Constitution. (Am. Compl., Dkt. 129, at 2).

## A. S.B. 8

This set of motions revolves around Senate Bill 8 ("S.B. 8"). The Texas Legislature passed S.B. 8 in 2021, prior to the Supreme Court's decision in *Dobbs*. *See* Senate Bill 8, 87th Leg., Reg. Sess. (Tex. 2021). S.B. 8 purports to ban all abortions where cardiac activity has been detected in the embryo with no exceptions for rape, sexual abuse, incest, or fetal defects incompatible with life after birth. Tex. Health & Safety Code § 171.204(a). It amounts to a ban on all abortions after six weeks.

At the time it was passed, S.B. 8 was designed to prohibit constitutional conduct by evading judicial review. Section 3 of S.B. 8 creates liability for anyone who performs an abortion in violation of the six-week ban or "knowingly" aids or abets the performance of an abortion after six weeks. *Id.* § 171.208(a). To avoid federal court review, S.B. 8 delegates enforcement to private individuals and precludes state enforcement. Individuals who sue may be awarded injunctive relief, statutory damages not less than $10,000 for each abortion, and costs and attorney's fees. *Id.* § 171.208(b). In addition, Section 4 requires litigants who challenge the constitutionality of any Texas abortion restriction to pay the attorney's fees of "prevailing parties" if their challenge is unsuccessful. Tex. Civ. Practice & Remedies Code § 30.022. Attorneys and law firms that sue to enjoin the enforcement of any Texas abortion law are also jointly and severally liable for attorney's fees. *Id.* Section 4 also allows prevailing parties to bring suit to recover attorney's fees if they did not seek to recover attorney's fees in the underlying action. *Id.* § 30.022(c).

By its own text, S.B. 8 limits its coverage to abortions performed by Texas-licensed physicians. The act states that "a physician may not knowingly perform or induce an abortion on a pregnant woman if the physician detected a fetal heartbeat . . . ." Tex. Health & Safety Code § 171.204(a). The act further defines "physician" as "an individual licensed to practice medicine in

2

this state, including a medical doctor and a doctor of osteopathic medicine." *Id.* § 171.201(4). The text of the law does not necessarily limit covered abortions to those performed by Texas physicians in Texas.

In July 2021, a group of abortion service providers and advocacy organizations filed a pre-enforcement challenge, seeking injunctive relief to stop S.B. 8 from taking effect. *Whole Woman's Health v. Jackson*, 556 F. Supp. 3d 595 (W.D. Tex. 2021), *aff'd in part, rev'd in part*, 142 S. Ct. 522 (2021). Defendants filed a motion to dismiss, which this Court denied on August 25, 2021. *Id.* The Fifth Circuit then issued a temporary administrative stay of proceedings in the case. Hours before S.B. 8 took effect, Plaintiffs filed an emergency application for injunctive relief or to vacate the stay with the Supreme Court. *Whole Woman's Health v. Jackson*, 141 S. Ct. 2494 (2021). In a brief opinion, the Supreme Court denied the emergency application, with Justices Breyer, Kagan, Sotomayor, and Chief Justice Roberts each filing a dissenting opinion. *Id.* In dissent, Chief Justice Roberts noted that "[t]he statutory scheme before the Court is not only unusual, but unprecedented," because "[t]he legislature has imposed a prohibition on abortions after roughly six weeks, and then essentially delegated enforcement of that prohibition to the populace at large," with the "desired consequence appear[ing] to be to insulate the State from responsibility for implementing and enforcing the regulatory regime." *Id.*

The Supreme Court then granted a petition for a writ of certiorari before judgment and, in an opinion written by Justice Gorsuch, explained its reasoning at greater length. *Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021). The Court held that *Ex parte Young* barred suit against the Texas Attorney General, and the plaintiffs lacked standing to sue a private individual who attested that he had no intention of filing suit against them. *Id.* at 535. However, plaintiffs had sufficiently alleged the enforcement authority of Texas executive officials with disciplinary authority over medical licensees. *Id.* On remand to the Fifth Circuit, the remaining defendants moved to certify a

question as to whether state officials could enforce any provision of S.B. 8. *Whole Woman's Health v. Jackson*, 23 F.4th 380 (5th Cir. 2022). The Fifth Circuit granted the motion for certification. *Id.* On March 11, 2022, the Texas Supreme Court held that none of the remaining defendants could enforce S.B. 8, effectively bringing the case to a halt. *Whole Woman's Health v. Jackson*, 642 S.W.3d 569 (Tex. 2022).

Also during the fall of 2021 and pre-*Dobbs*, the United States filed a separate action against the State of Texas, challenging S.B. 8 as being in "open defiance of the Constitution." *United States v. Texas*, 566 F. Supp. 3d 605 (W.D. Tex. 2021). This Court granted the United States' motion for a preliminary injunction and denied Texas's motion to dismiss. *Id.* In a per curiam, three-sentence order, the Fifth Circuit granted a temporary stay of the case, and the Supreme Court later dismissed the writ of certiorari. *United States v. Texas*, No. 21-50949, 2021 WL 4706452 (5th Cir. Oct. 8, 2021), *cert. dismissed* No. 21-588, 142 S. Ct. 522 (2021).

### B. The S.B. 8 Defendants

Plaintiffs filed suit on August 23, 2022. (Compl., Dkt. 1). Initially, Plaintiffs sued Attorney General Ken Paxton ("Paxton"), in his official capacity, alleging that his potential enforcement of fee-shifting provisions under S.B. 8 violated their constitutional rights. (*Id.*). On February 24, 2024, the Court rejected those claims, finding that Paxton lacked enforcement authority under S.B. 8. (Order, Dkt. 120, at 30).

Plaintiffs amended their complaint on April 20, 2023. (Am. Compl., Dkt. 129). In their amended complaint, Plaintiffs added the S.B. 8 Defendants. (*Id.*). The S.B. 8 Defendants are a group of Texas citizens who have sought discovery against Plaintiffs or threatened to sue them under S.B. 8. Plaintiffs ask the Court to enjoin the S.B. 8 Defendants from "attempting to enforce S.B. 8 against Plaintiffs, and from seeking pre-suit discovery against Plaintiffs related to potential or anticipated S.B. 8 claims." (*Id.* at 79). Plaintiffs also ask for a declaratory judgment stating that (1) it is

unconstitutional for the S.B. 8 Defendants to enforce S.B. 8 against Plaintiffs; (2) S.B. 8 does not apply to abortions performed outside of Texas or provided via telemedicine by non-Texas-licensed physicians; and (3) Section 4 is preempted by 42 U.S.C. § 1988. (*Id.* at 79–81). The Court provides further background on each S.B. 8 Defendant below.

### 1. Shannon D. Thomason

Shannon D. Thomason ("Thomason") has filed Rule 202 petitions in state court against Amy Hagstrom Miller, Marva Sadler, Alan Braid, and Andrea Gallegos, related to abortions performed after S.B. 8 became effective. (*Id.* at 51; Mot. Dismiss, Dkt. 320, at 4). On July 7, 2022, Thomason served Plaintiffs' counsel with copies of a litigation-hold letter that requires them to "preserve any and all documents and information related to any abortions performed after September 1, 2021." (Am. Compl., Dkt. 129, at 52).

In his motion to dismiss, Thomason acknowledges that his attorneys emailed Plaintiffs a litigation-hold letter but argues that this letter was sent solely to preserve evidence that Thomason might use in his Rule 202 proceedings and potential litigation against Miller, Sadler, Braid, and Gallegos. (Reply, Dkt. 359, at 21). He argues that this letter does not evince an intent or threat to sue Plaintiffs and that he "has never threatened to sue any of the Plaintiffs under S.B. 8, either publicly or privately." (Mot. Dismiss, Dkt. 320, at 4).

### 2. Sadie Weldon

Sadie Weldon ("Weldon") filed a Rule 202 petition against Neesha Davé, the deputy director of the Lilith Fund for Reproductive Equity ("Lilith Fund") in January 2022. (Mot. Dismiss, Dkt. 322, at 1). In the petition, Weldon stated that she "anticipat[ed] the institution of a suit in which Ms. Davé or the Lilith Fund may be a party." (Am. Compl., Dkt. 129, at 52). In May 2022, Weldon also

submitted a sworn declaration to this Court in *Davis v. Sharp*, 656 F. Supp. 3d 687 (W.D. Tex. 2023),[1] stating that she has "no interest in suing any abortion fund . . . apart from the Lilith Fund." (*Id.* at 53).

A state-court judge denied Weldon's Rule 202 petition on August 9, 2022. (Mot. Dismiss, Dkt. 322, at 4). The judge also denied Weldon's motion to dismiss when the Lilith Fund counter-sued her for declaratory relief in state court. (*Id.*). Because of the judge's "repeated adverse rulings" against Weldon, she "and her attorneys determined that Jack County would not be a favorable venue in which to sue the Lilith Fund." (*Id.* at 5). Weldon alleges that she has decided not to seek review of the determination. (*Id.*). Weldon has also decided that she is no longer interested in suing the Lilith Fund for violating S.B. 8. (*Id.*). According to Weldon, she and her attorneys made these decisions long before Plaintiffs filed the Second Amended Complaint on April 20, 2023. (*Id.*).

### 3. Mistie Sharp

Plaintiffs also sue Mistie Sharp ("Sharp"). On September 22, 2021, Sharp filed a motion to intervene in *United States v. Texas*, stating, "I intend to sue only abortion funds who pay for other's people's abortions in violation of [S.B. 8] . . . . I respectfully seek intervention to defend and preserve my state law right to sue abortion funds that pay for post-heartbeat abortions in violation of [S.B. 8]." (Am. Compl., Dkt. 129, at 55). Again in *Davis v. Sharp*, Sharp stated she is "interested in suing only the abortion *funds*—the actual entities rather than the individuals—that pay for abortions in violation of [S.B. 8]." (*Id.*).

In her motion to dismiss, Sharp alleges that she "no longer has any interest in suing Texas abortion funds under S.B. 8's private civil-enforcement mechanism because *Roe v. Wade* . . . has been

---

[1] In *Davis v. Sharp*, a nonprofit abortion fund, Stigma Relief Fund, and individual supporters of the fund sued Defendants Sharp, Weldon, and Ashley Maxwell, seeking to enjoin them from enforcing S.B. 8 against the plaintiffs in that case. 656 F. Supp. 3d 687.

6

overruled and abortion has been outlawed and criminalized throughout the state of Texas." (Mot. Dismiss, Dkt. 325, at 4). Sharp states that she will not sue Plaintiffs even if they violated S.B. 8 in the past or intend to do so in the future. (*Id.* at 12).

### 4. Ashley Maxwell

Ashley Maxwell filed a Rule 202 petition seeking discovery from the North Texas Equal Access Fund ("TEA Fund") in January 2022. (Mot. Dismiss, Dkt. 323, at 4). In her petition, Ashley Maxwell stated that she is investigating future civil actions to be brought under S.B. 8, that a principal of the TEA Fund had admitted to violating S.B. 8 in October of 2021, and that the TEA Fund may be a party to the suit. (Am. Compl., Dkt. 129, at 53–54; Mot. Dismiss, Dkt. 323, at 4). Later in *Davis v. Sharp*, Ashley Maxwell stated that she has "no interest in suing an abortion fund . . . apart from the [TEA Fund]." (Am. Compl., Dkt. 129, at 54).

In her motion to dismiss, Ashley Maxwell states that she has no intention of suing the TEA Fund even if it violated the law or intends to do so in the future, nor did she have intention to sue when the Second Amended Complaint was filed. (Mot. Dismiss, Dkt. 323, at 4, 7). She instead intends to use the Rule 202 proceeding to identify all other individuals involved in the October 2021 abortion, and she will decide later whether to sue any of them under S.B. 8's civil-enforcement mechanism. (*Id.* at 5).

### 5. Zach Maxwell

Finally, Plaintiffs sue Zach Maxwell, who filed a Rule 202 petition in September 2022 against Makayla Montoya-Frazier, the founder of Plaintiff Buckle Bunnies Fund, to investigate potential S.B. 8 violations. (Mot. Dismiss, Dkt. 324, at 5).

In his motion to dismiss, Zach Maxwell states that he is interested in pursuing S.B. 8 enforcement litigation against Buckle Bunnies Fund "only if evidence emerges showing that the Buckle Bunnies Fund has violated" S.B. 8. (*Id.*). Zach Maxwell "has no interest—and has never had

7

any interest" in suing any other Plaintiffs in this case, "even if they are found to have violated S.B. 8 or intend to do so in the future." (*Id.*).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject-matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

## III. DISCUSSION

The S.B. 8 Defendants move to dismiss on the grounds that Plaintiffs have no standing to sue them. (*See, e.g.*, Mot. Dismiss, Dkt. 320, at 4). "To demonstrate standing, a plaintiff must show that they have suffered "an injury in fact" that is "fairly traceable" to the defendant's actions and will "likely be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff must establish injury in fact, traceability, and redressability with respect to every claim against each defendant. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) ("Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element [of

8

Article III standing]." (citation omitted)); *Federal Election Commission v. Ted Cruz for Senate*, 596 U.S. 289, 299 (2022) ("[P]laintiffs must establish standing separately for each claim that they press and each form of relief that they seek."). "Standing is assessed at the time the action commences." *Carney v. Adams*, 592 U.S. 53, 60 (2020).

When plaintiffs request an injunction or a declaratory judgment, they must show an *ongoing* injury in fact, or that a future injury is "certainly impending" or that there is a "substantial risk" that it might occur. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013); *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) ("Because injunctive and declaratory relief 'cannot conceivably remedy any past wrong,' plaintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury." (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998))). Although past harms may be relevant to "whether there is a real and immediate threat of repeated injury," "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102–03 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)).

### 1. Shannon D. Thomason

For Thomason, Plaintiffs primarily argue that they have standing based on the litigation-hold letter that Thomason's lawyer sent to Plaintiffs and their counsel. (Am. Compl., Dkt. 129, at 51). They claim that the letter evinces Thomason's "intent[] to enforce SB8 against Plaintiffs," which caused Plaintiffs to "alter[] their normal operations and procedures in response." (*Id.* at 51–52).

However, Thomason has stated that he has no intention of suing Plaintiffs under Section 3 of S.B. 8 and never had such intention. (Mot. Dismiss, Dkt. 320, at 4, 10). Thomason's affidavit, disavowing intent to sue, is similar to those in *Whole Women's Health* and *Davis v. Sharp*. In *Whole Woman's Health*, the Supreme Court found that plaintiffs lacked standing to sue a private citizen who

9

submitted sworn declarations stating that he had "no intention to file an S.B. 8 suit against them." *Whole Woman's Health*, 595 U.S. at 48. The Court explained that because the individual did not intend to sue, plaintiffs had no "personal injury fairly traceable" to him. *Id.* In *Davis v. Sharp*, this Court concluded plaintiffs lacked standing for the same reason. 656 F. Supp. 3d 687, 689 (W.D. Tex. 2023). Similarly, in this case, the Court finds that Plaintiffs have not shown injury traceable to Thomason for their challenge to Section 3 of S.B. 8. The same goes for Section 4. Thomason had no intent to sue Plaintiffs under that provision when they filed the Second Amended Complaint and had in fact had never even heard of the provision. (Mot. Dismiss, Dkt. 320, at 11). Plaintiffs therefore lack traceability both as to their claims against Section 3 and Section 4.

Moreover, Plaintiffs' alleged injury from the letter is not redressable by the Court. Plaintiffs are not asking the Court to enjoin Thomason from investigating or suing Alan Braid, Andrea Gallegos, Amy Hagstrom Miller, and Marva Sadler—only that the Court enjoin Thomason from suing Plaintiffs. (*Id.* at 79). Nor do Plaintiffs ask the Court to revoke the litigation-hold letter or restrain Thomason's counsel from enforcing it. Because Thomason will be free to pursue his Rule 202 petition regardless, Plaintiffs will remain under the obligations described in the letter no matter what relief the Court ultimately grants. Plaintiffs' injury is therefore not redressable.

Because Plaintiffs have failed to establish traceability and redressability as to Thomason, they have no standing to sue him.

### 2. Sadie Weldon

Plaintiffs argue that they have standing to sue Weldon based on her Rule 202 petition against the deputy director of the Lilith Fund and her past interest in suing the Lilith Fund. (Am. Compl., Dkt. 129, at 52–53). Standing requires Plaintiffs to show injury in fact, traceability, and redressability with respect to every claim against each defendant. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The Court will therefore address each Plaintiff's standing to sue Weldon in turn.

The non-Lilith Fund abortion funds cannot show injuries traceable to Weldon under Section 3 because she lacked an interest in "suing any abortion fund . . . apart from the Lilith Fund" well before Plaintiffs filed suit. (Am. Compl., Dkt. 129, at 53). And the Lilith Fund cannot assert traceability because Weldon no longer wished to sue the Lilith Fund when the Second Amended Complaint was filed. (Mot. Dismiss, Dkt. 322, at 4). The Lilith Fund also fails to show standing based on the Rule 202 petition. Because the Lilith Fund seeks an injunction and declaratory judgment, it must show that the injury from Weldon's Rule 202 petition is still ongoing, or that the injury is in danger of occurring again. *See Stringer*, 942 F.3d at 720. However, Weldon's Rule 202 petition had already been denied in 2022, and Weldon no longer wished to sue the Lilith Fund for violating S.B. 8 at the time of the Second Amended Complaint. (Mot. Dismiss, Dkt. 322, at 4).[2] The Lilith Fund therefore suffers no ongoing or impending injury from the petition. Finally, Plaintiff Moayedi has no standing against Weldon because Weldon has "no interest in suing anyone other than the individuals or organizations that aided or abetted the illegal post-heartbeat abortions described in Ms. Dave's sworn declaration." (Resp., Dkt. 344, at 4). This includes abortion providers like Plaintiff Moayedi.

As for Section 4, Weldon has expressed no intention of suing Plaintiffs under the provision. (Mot. Dismiss, Dkt. 322, at 12). The Court therefore finds that none of the Plaintiffs have made their requisite showing of traceability as to Weldon.

Plaintiffs urge the Court to "assess[]" the S.B. 8 Defendants' declarations "in relation to all of the other evidence before the Court." (Resp., Dkt. 344, at 14). For Weldon in particular, Plaintiffs

---

[2] Plaintiffs argue that they suffered "past injury" from Defendants' "statements and actions before April 20, 2023." (Resp., Dkt. 344, at 6). It is well-taken that a Rule 202 petition issued pursuant to an unconstitutional law could establish injury in fact. However, Plaintiffs have failed to show "continuing, present adverse effects," which are necessary to confer standing. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102–03 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)).

11

point to Weldon's past intent to sue the Lilith Fund. (*Id.* at 21). Because standing is assessed at commencement of a lawsuit, however, the Court considers only Weldon's intent at the time of the Second Amended Complaint. *See Carney v. Adams*, 592 U.S. 53, 60 (2020). Plaintiffs' efforts to distinguish the declarations in this case from those filed in *Whole Women's Health* and *Davis v. Sharp*—by arguing that those cases involved "no conflicting evidence in the record"—are unavailing. (*See* Resp., Dkt. 344, at 22). In both *Whole Women's Health* and *Davis v. Sharp*, defendants had previously made public statements declaring their intent to sue plaintiffs under S.B. 8. *Davis v. Sharp*, 656 F. Supp. 3d 687, 689 (W.D. Tex. 2023). These statements arguably conflicted with the declarations that they had filed in those cases renouncing their intent to sue. *See id.* Still, the Court found that plaintiffs lacked standing because no "credible, imminent threat" attributable to defendants existed. *Id.* Similarly, the Court finds that Plaintiffs have failed to establish standing against Weldon in this case.

### 3. Mistie Sharp

For Sharp, Plaintiffs argue for standing based on her motion to intervene in *United States v. Texas* and her *Davis v. Sharp* declaration, both of which indicated that she was interested in suing abortion funds that violated S.B. 8. (Am. Compl., Dkt. 129, at 55).

First, Plaintiff Moayedi lacks standing because Sharp had expressed an interest only in suing abortion *funds*, not providers. (Am. Compl., Dkt. 129, at 55). Second, the abortion-fund Plaintiffs lack standing because Sharp no longer has an interest in suing them, and had no such interest at the time the Second Amended Complaint was filed. (Mot. Dismiss, Dkt. 325, at 4). Like with Weldon, the Court finds Plaintiffs' arguments regarding Sharp's prior statements unavailing. Accordingly, Plaintiffs have failed to establish standing to sue Sharp.

4. Ashley Maxwell

Plaintiffs argue that they have standing to sue Ashley Maxwell based on her Rule 202 petition against a principal of the TEA Fund and her past interest in suing the TEA Fund. (Am. Compl., Dkt. 129, at 53–54). However, Ashley Maxwell has since renounced any interest in suing the TEA Fund. (Mot. Dismiss, Dkt. 322, at 4). Instead, she seeks pre-suit discovery to "identify all other individuals involved in the illegal abortion that occurred in October of 2021, and she will decide later whether to sue any of them under S.B. 8's private civil-enforcement mechanism." (Dkt. 323 at 4–5).[3] The other abortion-fund Plaintiffs also lack injury traceable to Ashley Maxwell because she has "no interest in suing an abortion fund . . . apart from the North Texas Equal Access Fund [TEA Fund]." (Am. Compl., Dkt. 129, at 54). And Maxwell has not expressed interest in suing providers like Plaintiff Moayedi. (Reply, Dkt. 359, at 5). Because none of the Plaintiffs can establish traceability, their claims against Ashley Maxwell must be dismissed.

5. Zach Maxwell

Finally, Plaintiffs argue that they have standing to sue Zach Maxwell based on his Rule 202 petition against Buckle Bunnies Fund. Zach Maxwell has stated that he is interested in pursuing S.B. 8 enforcement litigation against Buckle Bunnies Fund "only if evidence emerges showing that the Buckle Bunnies Fund has violated" S.B. 8. (Mot. Dismiss, Dkt. 24, at 5). Because Zach Maxwell intends to sue only in that circumstance, Buckle Bunnies Fund suffers injury in fact traceable to him only if it meets its "burden of proof" to show that it violated S.B. 8. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002).

Buckle Bunnies Fund has not met its burden of establishing injury in fact. Because the Rule 202 proceeding has been stayed while Buckle Bunnies Fund pursues interlocutory appeal, (Mot.

---

[3] As with Weldon's Rule 202 petition against the Lilith Fund, the Court notes that the TEA Fund might have suffered an injury from Ashley Maxwell's Rule 202 petition. But Plaintiffs have alleged no facts that indicate the injury is ongoing.

13

Dismiss, Dkt. 324, 6), no evidence of S.B. 8 violations have emerged. Buckle Bunnies Fund has similarly offered no such evidence in this case. Without evidence that Buckle Bunnies Fund has violated S.B. 8, Zach Maxwell does not intend to sue, and Buckle Bunnies Fund suffers no injury in fact traceable to him. Its claims against Zach Maxwell must be dismissed.

Finally, Zach Maxwell has not expressed an interest in suing the other abortion-fund Plaintiffs or Plaintiff Moayedi. (Mot. Dismiss, Dkt. 24, at 5). Because these Plaintiffs have not shown injury in fact or traceability, their claims must be dismissed as well.

## IV. CONCLUSION

The S.B. 8 Defendants' Motions to Dismiss, (Dkts. 320, 322, 323, 324, 325), are **GRANTED**. Accordingly, **IT IS ORDERED** that all claims against the S.B. 8 Defendants are **DISMISSED WITHOUT PREJUDICE**.

In light of the dismissal, **IT IS FURTHER ORDERED** that the S.B. 8 Defendants' Motion for Judgment on the Pleadings, (Dkt. 326), Motions for Summary Judgment, (Dkts. 327, 377), and Motions to Compel, (Dkts. 350, 353), as well as Plaintiffs' Motion for Summary Judgment, (Dkt. 209), and the National Network of Abortion Funds' Motion for Leave to File Brief as *Amicus Curiae*, (Dkt. 391), are **MOOT**.

**SIGNED** on October 29, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE