# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| FUND TEXAS CHOICE, et al., | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 1:22 cv-00859-RP |
| | § | |
| v. | § | |
| | § | |
| JOSÉ GARZA, in his official capacity as | § | |
| Travis County District Attorney, et al., | § | |
| | § | |
| Defendants. | § | |

---

**DEFENDANT JACOB PUTMAN'S MOTION FOR SUMMARY JUDGMENT**

---

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION .............................................................................................. 1

BACKGROUND ................................................................................................ 1

STATEMENT OF UNDISPUTED FACTS ....................................................... 3

LEGAL STANDARD ......................................................................................... 5

ARGUMENT ...................................................................................................... 6

   I.  The Court Lacks Jurisdiction Over the Claims Against DA Putman Because
      Plaintiffs Do Not Have Standing to Sue Him. ................................................ 6

     A.  Plaintiffs lack an injury in fact as to DA Putman. ........................................... 7

        1.  Plaintiffs cannot satisfy their burden that they intend to engage in a
            course of conduct that could trigger prosecution by Putman under the
            pre-*Roe* laws. ................................................................................................ 8

        2.  Plaintiffs cannot provide evidence that there is a threat of future
            enforcement against them by DA Putman, much less that it is
            "substantial." ............................................................................................... 11

     B.  Plaintiffs failed to prove any injury "fairly traceable" to DA Putman. ........ 14

     C.  Plaintiffs' claimed harm is not redressable. ................................................. 14

  II.  The Court Lacks Jurisdiction Because Sovereign Immunity Bars Plaintiffs'
      Claims Against Putman. .................................................................................. 15

     A.  DA Putman has no "specific duty" to bring prosecutions under the
        pre-*Roe* laws. ................................................................................................ 17

     B.  DA Putman has no "demonstrated willingness" to enforce the law in
        question as he has made no "specific threat of enforcement." ..................... 18

     C.  Putman has not "compelled" nor "constrained" the Plaintiffs. ..................... 20

CONCLUSION .................................................................................................. 20

CERTIFICATE OF SERVICE .......................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*Addicks Servs., Inc. v. GGP–Bridgeland, LP*,
   596 F.3d 286 (5th Cir. 2010) .................................................................. 6

*Babbitt v. Farm Workers*,
   442 U.S. 289 (1979) .......................................................................... 12

*Barilla v. City of Houston*,
   13 F.4th 427 (5th Cir. 2021)............................................................. 7, 12

*Brennan v. Stewart*,
   834 F.2d 1248 (5th Cir. 1988) ............................................................. 14

*California v. Texas*,
   593 U.S. 659 (2021) ...................................................................... 12, 15

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 323 (1986)...................................................................... 6

*City of Austin v. Paxton*,
   943 F.3d 993 (5th Cir. 2019) .............................................................. 16

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ................................................................. 7, 11, 15

*Cooley v. Hous. Auth. of Slidell*,
   747 F.3d 295 (5th Cir. 2014) ................................................................ 6

*Dobbs v. Jackson Women's Health Org.*,
   597 U.S. 215 (2022) ............................................................................ 1

*Ex parte Young*,
   209 U.S. 123 (1908) .......................................................................... 16

*Fontenot v. Upjohn Co.*,
   780 F.2d 1190 (5th Cir. 1986) .............................................................. 6

*Fund Tex. Choice v. Paxton*,
   658 F. Supp. 3d 377 (W.D. Tex. 2023) ................................................ 12

*In re Gee*,
   941 F.3d 153 (5th Cir. 2019) ........................................................... 8, 11

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ...................................................................... 6, 7, 8

*Massachusetts v. Mellon*,
   262 U.S. 447 (1923) .......................................................................... 12

*Meshell v. State*,
   739 S.W.2d 246 (Tex. Crim. App. 1987).............................................. 17

*Mi Familia Vota v. Ogg*,
   105 F.4th 313 (5th Cir. 2024)....................................... 12, 16, 17, 18, 20

*New Orleans & Gulf Coast Ry. Co. v. Barrois*,
   533 F.3d 321 (5th Cir. 2008) .............................................................. 16

ii

*Paxton v. Dettelbach,*
  105 F.4th 708 (5th Cir. 2024) ................................................................... 8
*QBE Ins. Corp. v. Brown & Mitchell, Inc.,*
  591 F.3d 439 (5th Cir. 2009) ................................................................... 6
*Roe v. Wade,*
  410 U.S. 113 (1973) ................................................................................. 1
*Speech First, Inc. v. Fenves,*
  979 F.3d 319 (5th Cir. 2020) .......................................................... 12, 13
*Spokeo, Inc. v. Robins,*
  578 U.S. 330 (2016) ................................................................................. 7
*St. Maron Properties, L.L.C. v. City of Houston,*
  78 F.4th 754 (5th Cir. 2023) ................................................................... 15
*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 83 (1998) ................................................................................. 15
*Stringer v. Whitley,*
  942 F.3d 715 (5th Cir. 2019) ................................................................. 15
*Susan B. Anthony List v. Driehaus,*
  573 U.S. 149 (2014) ................................................................................. 7
*Technical Automation Servs. Corp. v. Liberty Surplus Ins. Corp.,*
  673 F.3d 399 (5th Cir. 2012) ................................................................... 6
*Texas Democratic Party v. Abbott,*
  978 F.3d 168 (5th Cir. 2020) ................................................................. 18
*Texas Democratic Party v. Abbott,*
  961 F.3d 389 (5th Cir. 2020) ................................................................. 16
*Zimmerman v. City of Austin,*
  881 F.3d 378 (5th Cir. 2018) ................................................................... 7

**Constitutional Provisions**

Tex. Const. art. V, §21 ............................................................................. 17

**Statutes**

Tex. Civ. Stat.
  art. 4512.1 ............................................................................................... 2
  art. 4512.2 .......................................................................................... 2, 12
  art. 4512.3 ............................................................................................... 2
  art. 4512.6 .......................................................................................... 1, 2
  art.4512.1–4 ...................................................................................... 1, 17
Tex. Gov't Code
  §44.001 ................................................................................................... 3
  §44.312 ................................................................................................... 3
Tex. Health & Safety Code

§171.207(a) ................................................................................................................. 10
§§170A.002–.005 .......................................................................................................... 2
§170A.001(1) ................................................................................................................. 2
§170A.002(b) ................................................................................................................. 2
§170A.003 ..................................................................................................................... 2
§245.002 ....................................................................................................................... 2
Tex. Local Gov't Code
§87.011(3)(B) ............................................................................................................... 18

**Rules**

Tex. Code Crim. Proc. art. 2A.102(a) ........................................................................ 17
Tex. Code Crim. Proc. art. 2A.101 ............................................................................. 17

**Other Authorities**

Tex. State Law Library, *History of Abortion Laws*,
https://guides.sll.texas.gov/abortion-laws/history-of-abortion-laws (last accessed
June 19, 2023) .............................................................................................................. 2

## INTRODUCTION

This Court lacks subject matter jurisdiction over the claims against Defendant Jacob Putman because Plaintiffs lack standing and because they are barred by sovereign immunity. Plaintiffs failed to provide evidence that they are in any danger of prosecution from DA Putman, much less the "substantial threat" of prosecution binding precedent requires. And there is no evidence showing that Plaintiffs have, or specifically will in the future, do anything in Smith County that would arguably violate the pre-*Roe* statutes and could subject them to prosecution. Plaintiffs cannot meet the requirements of Article III standing and cannot satisfy the requirements to meet the narrow exception to sovereign immunity under *Ex parte Young*. The Court should therefore grant summary judgment in DA Putman's favor and dismiss all claims against him for lack of subject matter jurisdiction.[1]

## BACKGROUND

Plaintiffs Fund Texas Choice, TEA Fund, Lilith Fund, Frontera Fund, Afiya Center, West Fund, Jane's Due Process, Buckle Bunnies Fund, Clinic Access Support Network (CASN), and Dr. Ghazaleh Moayedi sued Defendant Jacob Putman in his official capacity as the Criminal District Attorney of Smith County. 2d Am. Compl. ¶83. Plaintiffs seek to enjoin Putman from enforcing Texas's criminal statutes prohibiting abortion that pre-dated the Supreme Court's decision in *Roe v. Wade*, 410 U.S. 113 (1973), *overruled by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022). Texas Revised Civil Statutes articles 4512.1–4 and 4512.6 (the "pre-*Roe* laws"), which were recodified in 1974, provide that it is a criminal offense to give a

---

[1] DA Putman regrets any repetition between this brief and his Opposition to Plaintiffs' Partial Motion for Summary Judgment, but the Court does not permit a combined brief. *See* ECF No. 374.

pregnant woman any substance or commit any act to cause an abortion, art. 4512.1, knowingly "furnish[] the means for procuring an abortion," art. 4512.2, or "attempt to produce abortion," art. 4512.3, unless it is done "by medical advice for the purpose of saving the life of the mother," art. 4512.6. These laws predate the creation of the State's penal code in 1856.[2] The Supreme Court declared these criminal prohibitions unconstitutional in *Roe* and they were thus unenforceable, but the laws were never repealed by the Legislature. The Fifth Circuit held in *McCorvey v. Hill* that the laws were impliedly repealed. 385 F.3d 846, 849 (5th Cir. 2004). Regardless of the applicability of the pre-*Roe* laws, Texas law now makes performing most abortions illegal. Tex. Health & Safety Code §§170A.002–.005.[3] Plaintiffs do not challenge this law, which does not address "aiding and abetting," only "perform[ing], induc[ing], or attempt[ing] an abortion." *Id.*

Plaintiffs filed a motion for summary judgment on all claims against the Prosecutor Defendants on May 17, 2024. ECF No. 357. DA Putman filed a motion to defer summary judgment briefing pursuant to Federal Rule of Civil Procedure 56(d) on May 29. ECF No. 375. The Court granted that motion on June 26. ECF No. 399. DA Putman issued written discovery requests to all Plaintiffs, which were subsequently narrowed by the Court after Putman filed a motion to compel to require

---

[2] *See* Tex. State Law Library, *History of Abortion Laws*, https://guides.sll.texas.gov/abortion-laws/history-of-abortion-laws (last accessed February 19, 2025).

[3] The law explicitly does not permit prosecution of the pregnant woman, Tex. Health & Safety Code §170A.003, and it explicitly allows for abortions to be performed where, in the "reasonable medical judgment" of the physician, "the female [is] at risk of death or poses a serious risk of substantial impairment of a major bodily function unless the abortion is performed or induced," *id.* §170A.002(b). The law excludes contraception, treatment for miscarriages, and ectopic pregnancies from the definition of abortion. *Id.* §170A.001(1); *id.* §245.002.

Plaintiffs to provide information "sufficient to show" activities in Smith County. ECF No. 457. In November 2024, DA Putman deposed Plaintiff Moayedi and Rule 30(b)(6) representatives from all the Plaintiff organizations except Plaintiffs CASN, Afiya Center, Frontera Fund, and West Fund, who stipulated that they lack standing to sue DA Putman rather than be deposed. ECF No. 460, 461, 462, 463. Plaintiffs also sought to take the deposition of DA Putman, which the Court permitted. ECF No. 464, 470. DA Putman's deposition was taken on January 23, 2025.

## STATEMENT OF UNDISPUTED FACTS

Defendant Jacob Putman is the Criminal District Attorney of Smith County. Ex. A (Decl. of Jacob Putman) at ¶ 2; Tex. Gov't Code §44.001. DA Putman is charged with "attend[ing] each term and session of the district courts of Smith County and each term and session of the inferior courts of the county held for the transaction of criminal business and shall exclusively represent the state in all criminal matters before those courts." Ex. A at ¶ 3; Tex. Gov't Code §44.312. DA Putman has no authority to prosecute crimes committed outside of Smith County. Ex. A at ¶ 4. Under state law, Putman, like other DAs, is prohibited from "adopt[ing] or enforc[ing] . . . a policy of refusing to prosecute a class or type of criminal offense under state law or instructing law enforcement to refuse to arrest individuals suspected of committing a class or type of offense under state law." Tex. Gov't Code §87.011(3)(B); Ex. A at ¶ 5. But Putman's office does not file a criminal complaint in every case and exercises discretion in doing so based on several factors. Ex. A, Putman Decl. ¶ 8.

DA Putman does not know whether the pre-*Roe* laws would be enforceable, *see* Ex. B (Deposition Transcript of Jacob Putman) at 14:13-15:2, he has never enforced them or threatened to enforce them, and he has taken no steps to enforce them

against anyone, including Plaintiffs. Ex. A at ¶¶ 12, 13. Putman is aware of no law commanding him to enforce the pre-*Roe* laws, nor any law that requires him to do so in every case. Ex. A at ¶ 14. Putman is unaware of any illegal abortions occurring in Smith County, nor any activity of Plaintiffs in Smith County, either past or planned, and so has no intention of prosecuting them for anything, including any offense under the pre-*Roe* laws. Ex. A at ¶ 11.

None of the above facts are in genuine dispute. Plaintiffs Clinic Access Support Network, Afiya Center, Frontera Fund, and West Fund stipulated that they lack standing to sue DA Putman rather than be deposed. ECF No. 460, 461, 462, 463. The rest of the Plaintiffs admitted they have never been threatened with prosecution by DA Putman, much less under the pre-*Roe* laws challenged here. *See* Ex. C (Excerpt of Deposition Transcript of Buckle Bunnies 30(b)(6) Representative) at 19:6-8; Ex. D (Excerpt of Deposition Transcript of Fund Texas Choice 30(b)(6) Representative) at 11:15-21; Ex. E (Excerpt of Deposition Transcript of Ghazaleh Moayedi) at 13:22-24; Ex. F (Excerpt of Deposition Transcript of Jane's Due Process 30(b)(6) Representative) at 16:3-5; Ex. G (Excerpt of Deposition Transcript of Lilith Fund 30(b)(6) Representative) at 14:6-17; *see also* Ex. H (Excerpt of Deposition Transcript of TEA Fund 30(b)(6) Representative) at 17:8-19:21) (stating DA Putman's discovery requests to Plaintiffs in this lawsuit were the only "threat" against TEA Fund).

During their depositions, Plaintiffs refused to answer questions about whether they have done anything in the past or intend to do anything in the future which they believe might subject them to prosecution in Smith County. Ex. C at 12:8-13, 18:14-21, 18:22-22:10 (Buckle Bunnies); Ex. D at 12:12-15 (Fund Texas Choice); *see also id.* at 12:5-14:23, 14:24-15:15; Ex. E at 11:11-12:22 (Ghazaleh Moayedi); Ex. F at 19:7-

21:14, 23:22-26:12 (Jane's Due Process); Ex. G at 15:15-23, 17:22-18:5, 21:3-22:10 (Lilith Fund); *see also id.* at 16:19-17:9; Ex. H at 39:23-40:4 (TEA Fund).

TEA Fund claimed that it had assisted at least one person from Smith County in accessing abortion care before *Dobbs* but refused to say whether it has any written documentation to support that assertion. Ex. H at 15:4-17:1. In response to DA Putman's written discovery requesting asking for such documents, TEA Fund referred to several documents it produced, but none of these documents reference Smith County nor support the claim that any specific person in Smith County was assisted by TEA Fund. *See* Ex. I at 23-24 (Excerpt from TEA Fund Deposition Ex. 3) (referencing Bates numbered documents 000076-8, 000149-54, 000184-88, 000254-57, 001493-98, 001520-21, 001711-72, 001780-84, and 001809-15); Ex. J (Excerpts from Plaintiffs' Document Production). TEA Fund confirmed that the documents listed above are TEA Fund's entire response to DA Putman's request for "documents sufficient to show [TEA Fund]'s operations and activities in Smith County." Ex. H at 24:10-25:25. TEA Fund testified that its desired conduct going forward is to "continue operating as we have in the past." *Id.* at 39:1-15. But per the above, there is no evidence that TEA Fund's "past" conduct includes anything in Smith County.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law". Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for their motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which they believe demonstrate the absence of a genuine issue

of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Technical Automation Servs. Corp. v. Liberty Surplus Ins. Corp.,* 673 F.3d 399, 407 (5th Cir. 2012); *QBE Ins. Corp. v. Brown & Mitchell, Inc.,* 591 F.3d 439, 442 (5th Cir. 2009). Where "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original); *see Addicks Servs., Inc. v. GGP–Bridgeland, LP,* 596 F.3d 286, 293 (5th Cir. 2010). And the nonmoving parties may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to demonstrate the existence of a genuine issue for trial. *Celotex,* 477 U.S. at 322 n.3 (citation omitted). "When parties file cross-motions for summary judgment, [the court] review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Cooley v. Hous. Auth. of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014) (citation omitted).

## ARGUMENT

### I.    The Court Lacks Jurisdiction Over the Claims Against DA Putman Because Plaintiffs Do Not Have Standing to Sue Him.

"[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). As the parties invoking federal jurisdiction, Plaintiffs bear the burden of establishing standing. *Texas v. United States*, 50 F.4th 498, 513–14 (5th Cir. 2022) (footnote omitted). "To do so, they 'must show (i) that [they] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the

injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief.'" *Id.* (footnote omitted); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Plaintiffs must make this showing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561 (citation omitted). At summary judgment, they "can no longer rest on . . . 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts.'" *Id.*; ECF No. 399 at 11.

### A.    Plaintiffs lack an injury in fact as to DA Putman.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). Plaintiffs do not claim that the law at issue has ever been enforced against them before by DA Putman. Where a plaintiff raises a pre-enforcement challenge to a federal statute, the injury-in-fact requirement is satisfied where the plaintiff shows a serious "intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (citation omitted); *see also, e.g., Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018) (requiring a "serious intention to engage in conduct proscribed by law"). In a pre-enforcement challenge, "a plaintiff must show that "the threat of future enforcement of the [challenged policies] is substantial." *Barilla v. City of Houston*, 13 F.4th 427, 431–32 (5th Cir. 2021). The summary judgment evidence shows that Plaintiffs cannot meet their burden to establish standing.

### 1. Plaintiffs cannot satisfy their burden that they intend to engage in a course of conduct that could trigger prosecution by Putman under the pre-*Roe* laws.

"Article III requires more than theoretical possibilities. *Absent [evidence] that Plaintiffs will trigger these requirements in the near future, they have no standing to challenge them.*" *In re Gee*, 941 F.3d 153, 164–65 (5th Cir. 2019) (emphasis added) (cleaned up). It is Plaintiffs' burden to demonstrate that they will "trigger" the pre-*Roe* laws in Smith County in the near future, but they cannot do so. Plaintiffs alleged that they conducted their desired activities previously in Texas generally, but did not include any allegations specific to Smith County, either in the past or the future. But according to the Fifth Circuit, such barebones claims are insufficient to establish standing at the summary-judgment stage because they "lack the necessary detail to establish that the . . . Plaintiffs' professed intent to [engage in prohibited conduct] is sufficiently 'serious' to render their feared injury 'imminent' rather than merely speculative or hypothetical." *Paxton v. Dettelbach*, 105 F.4th 708, 713 (5th Cir. 2024). "As the Supreme Court explained in *Lujan*, at the summary-judgment stage, declarants' profession of 'some day' intentions [to engage in certain conduct]—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent injury' required for standing." *Id.* (quoting *Lujan*, 504 U.S. at 564).

The Fund Plaintiffs and CASN claimed a desire to provide monetary and logistical support to women in Texas seeking abortions in places where they are legal. But DA Putman only has jurisdiction to prosecute crimes committed in Smith County. Ex. A at ¶ 4. As the Court already stated, "[i]f Plaintiffs have not or do not intend to facilitate out-of-state abortions with for Texans from Smith County, then it is doubtful that they can reasonably fear a substantial risk of enforcement from

Putman." ECF No. 399 at 11. Plaintiffs cannot show a substantial threat of future enforcement by DA Putman because Plaintiffs refused put forth evidence that any of them have ever administered or provided abortion drugs in Smith County or assisted anyone in obtaining an abortion in Smith County, or that they plan to do so.

Discovery has shown what DA Putman has contended all along—Plaintiffs cannot meet their burden to show standing. Rather than be deposed, Plaintiffs Clinic Access Support Network, Afiya Center, Frontera Fund, and West Fund, stipulated that they lack standing to sue DA Putman, so their claims must be dismissed. Docs. 460, 461, 462, 463. Buckle Bunnies admitted it has never done any work in Smith County and refused to answer whether it had ever assisted a woman residing in Smith County to obtain an abortion. Ex. C at 12:8-13, 18:14-21. It also refused to answer whether it intends to do so in the future. *Id*. at 18:22-22:10. The 30(b)(6) representative admitted she had never even been to Smith County before. *Id*. at 12:12-13. Similarly, Fund Texas Choice refused to answer whether it has ever engaged in "any activity" in Smith County. Ex. D at 12:12-15; *see also id*. at 12:5-14:23. And Fund Texas Choice refused to answer any questions about actions it wishes to take in Smith County in the future that it believes could trigger prosecution. *Id*. at 14:24-15:15. It had no evidence that any employee works or lives in Smith County. *Id*. at 8:19-9:23.

Plaintiff Ghazeleh Moayedi, an abortion doctor, refused to answer whether she had ever provided an abortion to any resident of Smith County via telemedicine, whether she had ever performed an abortion in Smith County, or whether she had ever assisted a woman from Smith County in obtaining an abortion. Ex. E at 11:11-12:22. She admitted that her supposed fear of prosecution is not specific to Smith

County, and is based simply on "helping Texans in states where abortion is legal"—in other words, not in Smith County, where abortion is *illegal* (like the rest of Texas). *Id*. at 13:8-21. Dr. Moayedi also admitted that she has no further evidence to show any past or future activity in Smith County other than what has already been submitted to the Court at ECF No. 209, which says nothing specifically about Smith County.[4] *Id*. at 15:22-17:9 (citing Ex. J at P001809-12). Moayedi therefore has no evidence showing that she has or does "intend to facilitate out-of-state abortions for Texans from Smith County," nor that she intends to facilitate abortions *in* Smith County (the only place Putman has jurisdiction to prosecute). She therefore lacks standing to sue Putman. ECF No. 399 at 11.

The story is similar for the remaining plaintiffs. Jane's Due Process refused to answer whether it has ever engaged in conduct in Smith County that it believes might violate the laws that are challenged in this lawsuit. Ex. F at 23:22-26:12. It also refused to answer what conduct it wants to engage in that might violate the challenged laws or subject it to prosecution by DA Putman. *Id*. at 19:7-21:14. Jane's Due Process also had no information to suggest that any employee has ever lived in Smith County nor does it have an office in Smith County. *Id*. at 13:12-14:14. Lilith Fund refused to provide evidence that it has any intention of engaging in activities or conduct that it believes might violate the laws challenged in this case. Ex. G at 15:15-23. Lilith Fund refused to even say what activities or assistance it has provided

---

[4] Dr. Moayedi also referenced a document she produced as Bates number 001493-01495, which is a declaration filed in a Travis County case apparently challenging SB8. *See* Ex. E at 15:22-17:9 (citing Ex. J at P001493-1495). As a government official, DA Putman does not enforce SB8. Tex. Health & Safety Code §171.207(a). In any event, the declaration contains no information pertaining to activities—either past or planned—in Smith County.

in the past anywhere in Texas. *Id.* at 16:19-17:9. Lilith Fund also refused to say whether it had ever engaged in *any activity* at all in Smith County. *Id.* at 17:22-18:5. Lilith Fund further refused to say whether it has ever engaged in conduct it believes or fears would allow Defendant Putman to prosecute it under the Texas laws challenged in this lawsuit or to provide any evidence that it desires to engage in any conduct in Smith County that it fears might subject it to prosecution by Defendant Putman. *Id.* at 21:3-23:7. Lilith Fund admitted that none of its employees live or work in Smith County. *Id.* at 11:18-12:12.

TEA Fund admitted that none of its employees work or reside in Smith County. Ex. H at 39:23-40:4. And TEA Fund confirmed that its desired conduct going forward is to "continue operating as we have in the past." *Id.* at 39:1-15. As established above, there is no evidence that TEA Fund's "past" conduct includes anything in Smith County. And it appears to be relying solely on its broad claim to desire providing "funding and travel assistance to pregnant Texans, wherever they live or are present in Texas (including in Smith County)" as sufficient for standing. *Id.*; Ex. I at 28. But that is not enough at summary judgment. In sum, none of the remaining Plaintiffs can show that they have, or will imminently, engage in conduct in Smith County which could trigger prosecution. *In re Gee*, 941 F.3d at 164–65.

### 2. Plaintiffs cannot provide evidence that there is a threat of future enforcement against them by DA Putman, much less that it is "substantial."

The Supreme Court has "repeatedly reiterated that 'threatened injury must be certainly *impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Clapper*, 568 U.S. at 409 (citation omitted). Plaintiffs lack standing because the evidence shows that there is no "substantial" threat of

future enforcement against them by DA Putman. *Barilla*, 13 F.4th at 431–32. This Court previously said that the interpretation of the pre-*Roe* laws Plaintiffs claim to fear—that they could be held criminally liable for "furnishing" under art. 4512.2 even if the abortion itself takes place in another state—is "unlikely." *Fund Tex. Choice v. Paxton*, 658 F. Supp. 3d 377, 403 (W.D. Tex. 2023). If such an interpretation is "unlikely," there cannot be a "substantial," "non-speculative" threat of enforcement by DA Putman.

In any event, the evidence demonstrates that there is no such threat of enforcement. And as is well-established, to have standing to challenge the pre-*Roe* laws, Plaintiffs "must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or *enforcement*." *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979) (emphasis added). The mere existence of an allegedly unconstitutional statute is not an injury sufficient to provide standing. *California v. Texas*, 593 U.S. 659, 670-71 (2021); see also *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923) ("The party who invokes the power [of Article III courts] must be able to show, not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement"). Only in the First Amendment context and "when dealing with pre-enforcement challenges to recently enacted (or at least, non-moribund) statutes" will courts "assume a credible threat of prosecution" based on the mere existence of the law and its facial applicability to the plaintiff's speech activities, *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020), "so long as there is "some scintilla' of affirmative action by the state official." *Mi Familia Vota v. Ogg*, 105 F.4th 313, 329 (5th Cir. 2024) (citation omitted). But the pre-*Roe* laws here have not been enforced for more than fifty years

at least, and in any event, there is "compelling contrary evidence" demonstrating that Plaintiffs have no credible fear of prosecution. *Speech First*, 979 F.3d at 335.

All Plaintiffs admitted during discovery that Putman has never even threatened them with prosecution. *See* Ex. C at 19:6-8 (Buckle Bunnies); Ex. D at 11:15-21 (Fund Texas Choice); Ex. E at 13:22-24 (Ghazaleh Moayedi); Ex. F at 16:3-5 (Jane's Due Process); Ex. G at 14:6-17 (Lilith Fund); *see also* Ex. H at 17:8-19:21) (stating DA Putman's discovery requests to Plaintiffs in this lawsuit were the only "threat" against TEA Fund). With no threat, and no past enforcement, Plaintiffs' fear of prosecution is speculative and insufficient to establish standing. And aside from Plaintiffs' own testimony, DA Putman's testimony shows further that Plaintiffs' claimed fear of enforcement is not credible, nor that there is a "substantial" threat of enforcement. DA Putman testified repeatedly that:

(1) He does not know whether the pre-*Roe* laws are enforceable, *see* Ex. B at 14:13-15:2;

(2) He does not know whether actions like funding or assisting women in traveling to receive an abortion would violate the pre-*Roe* laws, *see id.* at 16:9-17:23, 25:14-27:8;

(3) He has never threatened enforcement of the pre-*Roe* laws and has taken no actions to enforce that law or instruct others to investigate potential violations of that law, *see* Ex. A at ¶¶ 12-13); *accord* Ex. B at 15:7-16:8, 19:9-20:17;

(4) He has nothing more than a general duty to enforce the criminal laws of the State, and that duty contains a high level of individual discretion as to which crimes will be prosecuted, *see* Ex. A at ¶¶ 8, 9, 14.

DA Putman's testimony makes clear that while his private personal beliefs are pro-life, he is not in cahoots with any pro-life organization and is not part of some conspiracy to drum up prosecutions related to abortion or to target groups or individuals like the Plaintiffs. *See* Ex. B at 20:12-17, 31:3-24, 34:5-35:20, 41:2-5.

13

Given that Plaintiffs now admit, after they were forced to under oath, that Putman did nothing to threaten them with prosecution, perhaps this speculation was what prompted the claims against him. But the evidence has clearly not borne it out. All Putman has ever said is that he would enforce abortion laws in Smith County just like any other law according to his general duty as Criminal District Attorney of Smith County, *see id*. at 37:3-8, 33:8-18, and there is no evidence to show that Putman has ever taken any steps to enforce the pre-*Roe* laws, much less against Plaintiffs. That is insufficient to create a "substantial" threat of prosecution necessary to establish standing.

### B.    Plaintiffs failed to prove any injury "fairly traceable" to DA Putman.

Plaintiffs claim that they have had to change their operations and have lost donations and board members but fail to provide evidence of these claims. Regardless, these things have nothing to do with DA Putman. As explained above, DA Putman has never threatened to enforce the pre-*Roe* statutes against anyone, much less Plaintiffs. DA Putman has in fact denied that he is aware of any activity violating any abortion statute occurring in Smith County, and he is unaware of any activity by any Plaintiff in Smith County. *See* Ex. B at 37:4-11; Ex. A at ¶10. And there is no evidence that Plaintiffs intend to engage in conduct in Smith County that will violate the pre-*Roe* statutes such that DA Putman would even have jurisdiction to prosecute them. Plaintiffs cannot trace any injuries they suffer to DA Putman.

### C.    Plaintiffs' claimed harm is not redressable.

When plaintiffs request an injunction or a declaratory judgment, as they must in order to bring a claim against a state official in his official capacity, *see Brennan v. Stewart*, 834 F.2d 1248, 1253 (5th Cir. 1988), they must show an ongoing injury in

fact, or that a future injury is "certainly impending" or that there is a "substantial risk" that it might occur. *See Clapper*, 568 U.S. at 414 n.5; *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) ("Because injunctive and declaratory relief 'cannot conceivably remedy any past wrong,' plaintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury." (citation omitted)). To receive prospective relief— the only remedy permitted here—Plaintiffs must meet their burden to show they are suffering *ongoing* harm. But if there is no evidence Plaintiffs have any specific intent to engage in any activity in Smith County, much less any activity which would violate the pre-*Roe* laws, and no evidence that DA Putman has any intention of prosecuting the Plaintiffs under the pre-*Roe* laws and no other evidence suggesting that is likely to happen, there is no ongoing home and simply no need for relief. And even if a declaratory judgment might "deter the risk of future harm," "[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998). "[T]he declaratory judgment device does not ... permit litigants to invoke the power of this Court to obtain constitutional rulings in advance of necessity." *California*, 593 U.S. at 672 (citation omitted). Again, the mere existence of a law that Plaintiffs claim is unconstitutional is insufficient to provide a basis for relief. *Id.* at 670–71. Plaintiffs lack Article III standing on the claims against Putman.

## II.    The Court Lacks Jurisdiction Because Sovereign Immunity Bars Plaintiffs' Claims Against Putman.

In the alternative, DA Putman's motion for summary judgment should be granted because sovereign immunity bars Plaintiffs' claims against Putman. As sovereign immunity is a jurisdictional issue, *St. Maron Properties, L.L.C. v. City of Houston*, 78 F.4th 754, 762 (5th Cir. 2023), Plaintiffs bear the burden here as well,

*New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008). "Generally, state sovereign immunity precludes suits against state officials in their official capacities." *Texas Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020). The legal fiction of *Ex parte Young*, 209 U.S. 123 (1908), however, provides an "exception to Eleventh Amendment sovereign immunity" in the subset of cases to which it applies. *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). The exception permits federal courts to enjoin prospective unconstitutional conduct by "individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature." *Ex parte Young*, 209 U.S. at 155–56. As this Court noted, the Fifth Circuit recently "clarifie[d] what is needed for plaintiffs to being suit against prosecutors under *Ex parte Young*." ECF No. 464 at 4-5 (citing *Mi Familia Vota*, 105 F.4th 313). *Mi Familia Vota* analyzed whether a local prosecutor has a "sufficient connection to enforcement" to permit suit under the *Ex parte Young* exception using three "guideposts":

> (1) the state official has "more than the general duty to see that the laws of the state are implemented," i.e., a "particular duty to enforce the statute in question"; (2) the state official has "a demonstrated willingness to exercise that duty"; and (3) the state official, through her conduct, "compel[s] or constrain[s persons] to obey the challenged law."

105 F.4th 313, 325 (citation omitted). Under *Mi Familia Vota*, sovereign immunity bars suit against DA Putman because Putman has no "specific duty" to prosecute anyone under the pre-*Roe* laws, Putman has not demonstrated "willingness" to exercise his duty to prosecute anyone under the pre-*Roe* laws, and there is zero specific threat of enforcement against Plaintiffs by Putman, as Plaintiffs' own admissions make clear. Nothing DA Putman has done therefore "compels or

16

constrains" anyone with respect to the pre-*Roe* laws. And Putman's testimony only further emphasizes this.

### A. DA Putman has no "specific duty" to bring prosecutions under the pre-*Roe* laws.

As Criminal District Attorney of Smith County, DA Putman has the *authority* to bring prosecutions, but he retains discretion over which cases to bring. And as *Mi Familia Vota* held, "mere authority is not enough" for *Ex parte Young* to apply. *Id.* at 326. Texas Code of Criminal Procedure article 2A.101 states that "the primary duty of an attorney representing the state, including a special prosecutor, is not to convict but to see that justice is done." A district attorney "shall represent the state in all criminal cases in the district courts of the attorney's district and in appeals from those cases," Tex. Code Crim. Proc. art. 2A.102(a); *see also* Tex. Const. art. V, §21, but that command only applies to existing cases. Whether or not to bring a prosecution is up to a particular prosecutor according to state law. *See Meshell v. State*, 739 S.W.2d 246, 254 (Tex. Crim. App. 1987) ("An obvious corollary to a district or county attorney's duty to prosecute criminal cases is the utilization of his own discretion in the preparation of those cases for trial.").

And there is nothing in Texas law that "commands" that district attorneys like Putman "shall" prosecute under the pre-*Roe* laws. *Mi Familia Vota*, 105 F.4th at 328; *see also* Tex. Rev. Civ. Stat. arts. 4512.1–6 (the pre-*Roe* laws contain no language "command[ing]" prosecution). Nor could there be. *Meshell*, 739 S.W.2d at 254–55 ("Therefore, under the separation of powers doctrine, the Legislature may not remove or abridge a district or county attorney's exclusive prosecutorial function, unless authorized by an express constitutional provision."). Plaintiffs claim nonetheless that

17

Texas Local Government Code section 87.011(3)(B) constrains that authority. But that provision of law only provides that it is "official misconduct" for a prosecuting attorney to "adopt[] or enforce[] . . . a policy of refusing to prosecute a class or type of criminal offense under state law." All that means for purposes of this case is that no Prosecutor Defendant may have a policy of refusing to prosecute any offenses under criminal abortion statutes. But it does not follow that the Prosecutor Defendants here are specifically required to prosecute *all* abortion-related crimes under *all* abortion statutes, including under the pre-*Roe* statutes Plaintiffs challenge here. Thus, DA Putman's duty under the pre-*Roe* laws remains a general one, the same as his general duty to enforce all criminal laws of Texas. And "[a] general duty to enforce the law is insufficient." *Texas Democratic Party v. Abbott*, 978 F.3d 168, 181 (5th Cir. 2020).

> ### B. DA Putman has no "demonstrated willingness" to enforce the law in question as he has made no "specific threat of enforcement."

Even if the mere presence of the pre-*Roe* laws gave sufficient basis to assume that they will be enforced by Putman for standing purposes (and it does not, as explained above), that does "not necessarily establish an enforcement connection" required to avoid sovereign immunity. *Mi Familia Vota*, 105 F.4th at 330. Here, as in *Mi Familia Vota*, "regardless of whether the record is sufficient to establish standing, it does not support the conclusion that [Putman] has demonstrated a willingness to enforce the challenged . . . provisions." *Id.* Like the district attorney in *Mi Familia Vota*, Putman "has taken no action with respect to the . . . provisions challenged by the Plaintiffs." *Id.* Putman "never enforced the challenged provisions in the past." *Id.* Plaintiffs must have *some* evidence of "action taken by [Putman] to show a

demonstrated willingness to enforce." *Id.* But they do not, as the summary judgment record makes clear.

All Plaintiffs admit that Putman has never threatened them with enforcement (assuming they were even doing anything or wanted to do anything he could prosecute them for in Smith County, which they refused to provide evidence of). *See* pp. 4-5 *supra*. As it is Plaintiff's burden to establish subject matter jurisdiction, including both standing and an exception to sovereign immunity, their refusal to provide evidence on that point is sufficient to grant summary judgment in Putman's favor. But Putman's testimony makes it crystal clear that he has no "imminent" intention to prosecute the Plaintiffs at all, much less under the pre-*Roe* statutes. Putman testified that:

(1) He does not know whether the pre-*Roe* statute is even still good law or whether his office would have a "role in prosecuting" under that statute, *see* Ex. B at 14:13-15:2, and he would not be in a position to make such a decision until someone brought him a case that had been investigated as a violation of that statute, and that has not happened, *see id.* at 15:22-16:8;

(2) He has not had "any conversations with anyone about locating cases that might be prosecuted under the abortion statutes of Texas," nor "any discussions about recruiting folks who might complain about folks violating the abortion statutes of Texas," *see id.* at 15:7-21;

(3) Notwithstanding Attorney General Paxton's position that the pre-*Roe* statutes are immediately enforceable, he has no position on that and would only consider the laws' effectiveness "if and when law enforcement brought [him] a case to consider" because "we don't go through the Penal Code and look at each statute and see what we think about it. When a case is brought to us, then we analyze it and see what we need to do with it," *see id.* at 18:14-19:18;

(4) Putman's office does not provide guidance to law enforcement as to how to enforce the pre-*Roe* statutes, and in fact has not done so, and he "can't speak to all the ways [law enforcement] might be informed about what statutes to investigate," *see id.* at 19:19-20:6;

19

(5) He is not aware that many of the Plaintiffs in this case are abortion funds, but he does not know whether funding an abortion is a crime and he can't say whether there would be a prosecutable case without actually seeing a specific case because, as one example, crimes often turn on intent, *see id.* at 28:24-31:2.

This testimony makes abundantly clear that Putman has no "willingness" to enforce the challenged provisions other than a general willingness to enforce any Texas law, which, as discussed above, is insufficient.

### C.    Putman has not "compelled" nor "constrained" the Plaintiffs.

Similar to *Mi Familia Vota*, Plaintiffs here claim to fear prosecution by Putman, but that fear is "insufficient to demonstrate compulsion or constraint under our *Ex parte Young* precedent," even if it were sufficient for standing purposes. 105 F.4th at 332. The Court must "focus [its] attention on [Putman]'s actions," and Plaintiffs' fear does not change the fact that Putman "has not done or threatened to do anything," as explained above. *Id.* Again, "'the mere fact that the [state official] *has* the authority to enforce [the challenged statute] cannot be said to 'constrain' the party challenging the statute." *Id.* (citation omitted). Following the "guideposts" outlined in *Mi Familia Vota*, DA Putman is not a proper defendant in this case under *Ex parte Young*, and the claims against him should be dismissed, even if the Plaintiffs have standing under Article III.

### CONCLUSION

The Court should grant this motion and dismiss all claims against Defendant Jacob Putman for lack of subject matter jurisdiction under Rules 56 and 12(h)(3).

Respectfully submitted.

/s/ Heather Gebelin Hacker

HEATHER GEBELIN HACKER
Texas Bar No. 24103325
ANDREW B. STEPHENS
Texas Bar No. 24079396
HACKER STEPHENS LLP
108 Wild Basin Rd. South, Suite 250
Austin, Texas 78746
Tel: (512) 399-3022
heather@hackerstephens.com
andrew@hackerstephens.com

*Counsel for Defendant Jacob Putman*

## CERTIFICATE OF SERVICE

I certify that on February 20, 2024, this document was served through the Court's CM/ECF Document Filing System, or through electronic mail, upon all counsel of record.

/s/ Heather Gebelin Hacker
HEATHER GEBELIN HACKER

22