**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| **FUND TEXAS CHOICE, et al.,** | |
| **Plaintiffs,** | |
| **v.** | **Civil Case No. 1:22-cv-00859-RP** |
| **JOSÉ GARZA, in his official capacity as District Attorney of Travis County, Texas, et al.,** | |
| **Defendants.** | |

**PLAINTIFFS' RESPONSE TO DEFENDANT PUTMAN'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

The issues of standing and sovereign immunity have been raised by various DA Defendants multiple times throughout the course of this litigation, and in each prior instance the Court has rejected them.  [ECF 120 at 30-36; ECF 258 9-15].  In his Motion for Summary Judgment, DA Putman again puts forward the same arguments.  [Doc. 478].  Because these arguments have repeatedly been fully briefed, Plaintiffs respectfully refer  the Court to that prior briefing in addition to the arguments presented below.[1]  The evidence before the Court confirms Plaintiffs' Article III standing and satisfies the *Ex parte Young* exception to sovereign immunity.  DA Putman's Motion for Summary Judgment should be denied in its entirety.

---

[1] Plaintiffs hereby incorporate the briefing from the following responses and replies, for the sake of completeness: ECFs 422, 445, 469.

## TABLE OF CONTENTS

I.    SUMMARY OF ARGUMENT AND KEY FACTS ........................................... 1

II.   ARGUMENT & AUTHORITIES.......................................................... 4

    A.   Plaintiffs have repeatedly established their Article III standing. ........................... 4

        1.   Plaintiffs have set forth substantial evidence of their historical and desired future activity in Smith. .......................................... 5

        2.   The evidence overwhelmingly shows a substantial threat of enforcement by DA Putman........................................................ 8

        3.   Plaintiffs' injury is fairly traceable to DA Putman................................... 10

        4.   Plaintiffs' harm is redressable by the injunction and declaratory judgment they seek. .................................................11

    B.   The Ex parte Young exception to sovereign immunity applies to Plaintiffs' claims against DA Putman. ...................................................11

III.  CONCLUSION............................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Air Evac EMS, Inc. v. Tex. Dep't of Ins., Div. of Workers' Comp.,*
851 F.3d 507 (5th Cir. 2017) ............................................................13, 14

*Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289 (1979) ............................15

*Book People v. Wong,* 91 F.4th 318 (2024) ..................................................5

*Calhoun v. Collier*, 78 F.4th 846 (5th Cir. 2023) .............................................14

*Cave v. State*, 26 S.W. 503 (Tex. Crim. App. 1894)..........................................15

*City of Austin v. Paxton*, 943 F.3d 993 (5th Cir. 2019) ................................12, 13, 14

*Computer & Commc'ns Indus. Ass',n,*  747 F. Supp. 3d 1026 ......................12, 14, 15, 17

*Computer & Commc'ns Indus. Ass'n v. Paxton,*
747 F. Supp. 3d 1011 (W.D. Tex. 2024)...............................................12, 14, 15, 17

*Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) ....................... *passim*

*Fondren v. State*, 169 S.W. 411 (Tex. Crim. App. 1914) .......................................15

*Gray v. State*, 178 S.W. 337 (Tex. Crim. App. 1915).........................................15

*Hammett v. State*, 209 S.W. 661 (1919) ......................................................15

*In re Paxton,* 53 F.4th 303 (5th Cir. 2022) (Higginbotham, J., concurring),
*withdrawn and superseded*, 60 F.4th 252 (5th Cir. 2023) ....................................10

*La Union Del Pueblo Entero v. Abbott*, No. SA-21-CV-00844-XR,
2022 WL 17574079 (W.D. Tex. Dec. 9, 2022) ...............................................7, 9

*Mi Familia Vota v. Ogg*, 105 F.4th 313 (5th Cir. 2024)...................................12, 14, 17

*Moore v. La. Bd. of Elementary & Secondary Educ.,* 743 F.3d 959 (5th Cir. 2014)....................11

*Moore v. State*, 40 S.W. 287 (Tex. Crim. App. 1897) ........................................15

*Nat'l. Press Photographers Assn. v. McCraw*, 90 F.4th 770 (5th Cir. 2024).........................13, 16

*Roe v. Wade*, 410 U.S. 113 (1973)........................................................14, 15

*Rumsfeld v. Forum for. Acad. & Institutional Rights, Inc.*, 547 U.S. 497 (2007) ......................2, 5

*Shaw v. State*, 165 S.W. 930 (Tex. Crim. App. 1914) ...................................................15

*Speech First, Inc. v. Fenves*, 979 F.3d 319 (5th Cir. 2020) .........................................5

*State v. Rupe*, 41 Tex. 33 (1874)....................................................................................14

*Steffel v. Thompson,* 415 U.S. 452 (1974) .....................................................................17

*Tex. Democratic Party v. Abbott,* 961 F.3d 389 (5th Cir. 2020) ....................................13

*Thompson v. State*, 493 S.W.2d 913 (Tex. Crim. App. 1971), *vacated*, 410 U.S. 950 (1973)...............................................................................................................15

*Veevers v. State*, 354 S.W.2d 161 (Tex. Crim. App. 1962) ............................................15

*Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988) ......................................15

*Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084 (5th Cir. 1979) ..................................9

*Willingham v. State*, 25 S.W. 424 (Tex. Crim. App. 1894) ...........................................15

**Other Authorities**

Eleventh Amendment...........................................................................................................11

U.S. Constitution Fifth and First Amendments ..................................................... *passim*

## I.    SUMMARY OF ARGUMENT AND KEY FACTS

DA Putman asserts that Plaintiffs do not have any evidence to support (1) Article III standing or (2) the *Ex parte Young* exception to sovereign immunity.  But to arrive at those conclusions, DA Putman ignores key evidence already before the Court, and misunderstands the evidence adduced by his counsel during the Plaintiffs' depositions and his own testimony during his deposition.

The key facts relevant to DA Putman's arguments are:

- At least two Plaintiffs have confirmed in sworn testimony and/or in response to discovery requests that they have historically assisted a resident of Smith County and/or would like to do so in the future.[2]

- All Plaintiffs have explained that they would like to safely and fully resume their desired conduct of assisting pregnant Texans who wish to leave the state to obtain legal abortion care, fundraising for and funding such assistance, providing information about how to obtain such care, and associating with others who seek to provide the same assistance, but they fear prosecution under the pre-*Roe* statutes for doing so.[3]

- DA Putman has made public statements confirming that he will enforce Texas's anti-abortion laws, which include the pre-*Roe* Statutes;[4]

---

[2] Ex. D, Portions of K. Conner's deposition testimony at 11:8-16; ECF 479-2, Ex. F, Arvallo Dep. at 15:2-15.
[3] ECF 129 at 2, 11.
[4] ECF 478 at 19.

- DA Putman has refused to disavow an intention to enforce the pre-*Roe* Statutes against the Plaintiffs if they engage in their desired activity in Smith County or for the benefit of a Smith County resident;[5]

- DA Putman has refused to directly answer questions about whether the pre-*Roe* statutes are enforceable generally, whether he believes they could be used to prosecute Plaintiffs for their desired activities, or whether he would agree not to do so.[6]

- DA Putman – through counsel – refused to grant the individuals who provided deposition testimony in this matter any immunity from prosecution for discussing their prior conduct in, or contact with, Smith County so they could safely answer the questions posed by his counsel, which then required them all to invoke their rights under the Fifth Amendment.[7]  Thus, during depositions, witnesses who appeared[8] were forced to subject themselves and other individuals within their organizations to possible prosecution, or, to invoke their Fifth Amendment rights

---

[5] *See* ECF 479-2, Ex. B, Putman Dep. 14:18–15:2, 15:24–16:8, 19:9–15, 26:21–27:23; *See* ECF 479-2, Ex. B, Putman Dep. 27:3–8, 33:8–18, 36:3–12, 40:17–41:1.
[6] *See* ECF 479-2, Ex. B, Putman Dep. 14:18–15:2, 15:24–16:8, 19:9–15, 26:21–27:23; *See* ECF 479-2, Ex. B, Putman Dep. 27:3–8, 33:8–18, 36:3–12, 40:17–41:1.
[7] *See* ECF 469, Ex. A-4, November 5–7, 2024 Email Exchange.
[8] Plaintiffs Clinic Access Support Network, Afiya Center, Frontera Fund, and West Fund stipulated to having conducted no known operations in Smith County and having no intentions of doing so in the future.  [ECF 460, 461, 462, 463].  DA Putman therefore did not depose representatives of these Plaintiffs and these Plaintiffs have admitted that they do not personally have standing to pursue their claims against DA Putman.  Only one Plaintiff need demonstrate Article III standing to avoid dismissal and sustain the claims in this lawsuit.  *Rumsfeld v. Forum for. Acad. & Institutional Rights, Inc.*, 547 U.S. 497, 518 (2007) ("[T]he presence of one party with standing is sufficient to satisfy Article III's case or controversy requirement.").

against self-incrimination. On the advice of counsel, they all invoked their Fifth Amendment rights when questioned about their specific prior conduct.[9]

DA Putman's protestations of "lack of evidence" are disingenuous given the hardline positions he has taken to achieve that result. Had DA Putman valued the testimony of the individual he deposed more than his right to prosecute them (and others) in the future, he would have agreed to a request for immunity from prosecution. But, he did not. The purported "lack of evidence" about which he now complains was created by him. Regardless, beyond the deposition testimony of their corporate representatives, Plaintiffs have provided ample evidence of their Article III standing at various stages throughout this litigation, all of which DA Putman has also received. That evidence has been sufficient for the Court to find standing previously, and no change in facts or law warrant a different result here.

DA Putman also asserts *Plaintiffs* lack evidence of *his* intent to enforce criminal laws against them. This argument improperly imposes an evidentiary burden on Plaintiffs, when it is DA Putman's own actions that are dispositive of sovereign immunity, and of the applicability of the *Ex parte Young* exception. DA Putman has repeatedly been asked to disavow enforcement of the criminal pre-*Roe* statutes against Plaintiffs for their desired conduct, and he has repeatedly refused to do so. When questioned under oath at his deposition, he wasn't even willing to answer whether the pre-*Roe* statutes could be enforced, generally or specifically, against the Plaintiffs if they engaged in their desired conduct.[10] He refused to grant limited immunity to Plaintiffs'

---

[9] *See* ECF 479-2, Ex. C, Frazier Dep. 18:14–21, 18:22-22:10; Ex. D, Jamal Dep. 12:5–15:15; Ex. E, Moayedi Dep. 11:11–12:22; Ex. F, Arvallo Dep. 15:16–16:2, 23:22-26:12, 21:25–23:6; Ex. G, Dave Dep. 15:15–18:5, 21:3–23:7; Ex. H, Conner Dep. 14:8–21, 15:25–17:1; Ex. I, TEA First Amended Disc. Resp. at 28.

[10] *See* ECF 479-2, Ex. B, Putman Dep. 14:18–15:2, 15:24–16:8, 19:9–15, 26:21–27:23 (Beginning at 26:21 "Q: [A]re you telling me that you won't consider whether or not the pre-*Roe* statutes apply until or unless law enforcement brings you a case that requires you to do that? A: Correct. It's impossible for me to know if they apply without having an actual case in front of me to see the

individual representatives during depositions conducted by his counsel, which strongly suggests he wants to be able to prosecute those individuals in the future. And, he has previously stated that he would enforce abortion laws in Smith County just like any other law." [ECF 478 at 19]. DA Putman's conduct is that of a prosecutor who wants to maintain absolute prosecutorial power when it comes to abortion funds and pre-*Roe* statutes, it is emphatically not the conduct of a state actor who has no intention of enforcing the challenged laws.

## II.    ARGUMENT & AUTHORITIES

### A.    Plaintiffs have repeatedly established their Article III standing.

DA Putman claims Plaintiffs cannot demonstrate Article III standing because he believes they lack evidence that they violated the pre-*Roe* statutes or intend to do so. [ECF 478 at 13-16]. This claim wholly ignores the evidence Plaintiffs have already offered multiple times in support of other briefing on this issue; it additionally ignores the evidence obtained in DA Putman's depositions of Plaintiffs. Insofar as DA Putman's claim relies on Plaintiffs' testifying representatives' invocations of their individual Fifth Amendment rights, his argument ignores the reason they were forced to invoke—his refusal to grant them immunity from prosecution in even a limited manner.[11]

Multiple Plaintiffs, including Dr. Moayedi, Jane's Due Process, Fund Texas Choice, Lilith Fund, and TEA Fund have all set forth evidence sufficient to establish an "injury-in-fact" for Article III standing in connection with their claims against DA Putman.

---

specific facts of that case."); *See* ECF 479-2, Ex. B, Putman Dep. 27:3–8, 33:8–18, 36:3–12, 40:17–41:1.

[11] *See* ECF 469, Ex. A-4.

### 1. Plaintiffs have set forth substantial evidence of their historical and desired future activity in Smith.

In a pre-enforcement challenge such as this, Plaintiffs establish standing if they present evidence that: "'(1) they have an intention to engage in a course of conduct arguably affected with a constitutional interest, (2) their intended future conduct is arguably proscribed by the policy in question, and (3) the threat of future enforcement of the challenged policies is substantial.'" *Book People v. Wong*, 91 F.4th 318, 329 (2024) (quoting *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020)).  Only one Plaintiff need demonstrate Article III standing to avoid dismissal and sustain the claims in this lawsuit.  *Rumsfeld v. Forum for. Acad. & Institutional Rights, Inc.*, 547 U.S. 497, 518 (2007) ("[T]he presence of one party with standing is sufficient to satisfy Article III's case or controversy requirement.").

Specifically, the following evidence of certain Plaintiffs' own intended activities, in addition to evidence that has been previously cited and placed into the record in this case,[12] establishes:

- Plaintiff Jane's Due Process identified at least one contact or caller from Smith County that it has assisted since *Dobbs* was decided, and its corporate representative testified that "we serve clients in Smith County," which includes "funding for out-of-state abortion travel."[13] She further testified that "we operate in Smith County and Defendant Putman has failed to clarify what actions he believes to be violative of the pre-*Roe* statutes…"[14]   Jane's Due

---

[12] *See, e.g.,* ECF 4-3 – 4-11; ECF 86-1 at Tr. 11:14–16:20, 42:16–44:21, 47:2–16, 54:3–58:16, 60:2–63:17, 71:15–17, 79:9–21, 84:20–87:1, 95:16–96:14, 114:23–118:24, 120:13–121:22, 126:15–131:16, 153:24–154:17, 164:5–165:15, 168:4–169:20, 189:8–194:14, 197:3–25, 200:7–208:13, 210:5–212:6; ECF 209, Ex. A-19.

[13] Exh. A, Portions of L. Arvallo's Deposition Transcript, at 15:2-15.

[14] Exh. A at 44:20-45:6.

Process has also testified that it "operate[s] in every county of the state and isn't exclusive of any specific county."[15]

- Plaintiff Dr. Moayedi testified "I have taken care of many people from Smith County over the years."  DA Putman's suggestion that Dr. Moayedi "admitted that her supposed fear of prosection is not specific to Smith County" [ECF 478 at 14-5] also misrepresents her testimony.  In fact, Dr. Moayedi testified that she wants to "help Texans who travel outside of state and provide abortion care to them, and people from all over the state travel to other states to receive abortion care."[16]  Given Dr. Moayedi's desire to assist Texans from all over the state—including those who reside in Smith County, and her prior treatment of patients from Smith County—she credibly fears prosecution across all Texas counties, but specifically in Smith County, too.

- Contrary to DA Putman's assertion, [ECF 478 at 11], Lilith Fund did not "refuse[] to say whether it has ever engaged in conduct it believes or fears would allow Defendant Putman to prosecute it."  Instead, its representative testified that "I think that likely Lilith Fund has served someone in Smith County…"  She further testified that "we fear being criminalized for carrying out our mission and doing the work that we have been doing – that we had been doing for years and that we want to be able to continue doing."[17]

- Kamyon Conner, Executive Director of Texas Equal Access Fund ("TEA Fund"), testified that TEA Fund has assisted at least one person from Smith County in accessing abortion care.[18]  She further testified that TEA Fund has felt threatened by prosecution because

---

[15] Exh. A at 43:12-22.

[16] Exh. B, Portions of Dr. Moayedi's Deposition Transcript, at 13:8-21.

[17] Exh. C, Portions of N. Dave's Deposition Transcript, at 13:11-24.

[18] Exh. D at 15:4-11.

"there has not been clarification from Putman as whether or not they believe that the work that we do is legal and safe to do in Texas."[19]

Plaintiffs believe all of their desired behaviors—assisting pregnant Texans who wish to leave the state to obtain legal abortion care, fundraising for and funding such assistance, providing information about how to obtain such care, and associating with others who seek to provide the same assistance—is constitutionally protected and therefore cannot be criminalized by the state. This Court also already determined that restrictions on Plaintiffs' ability to assemble, associate, and provide assistance—whether in the form of direct care and funding or practical support—to pregnant Texans implicate Plaintiffs' First Amendment Rights. (*See* ECF 120 at 50-51); *La Union Del Pueblo Entero v. Abbott*, No. SA-21-CV-00844-XR, 2022 WL 17574079, at *6 (W.D. Tex. Dec. 9, 2022) (finding that "[i]nformation that may be privileged on the basis of associational rights includes identities of rank and file members and similarly situated individuals, mailing lists, and lists of conferences' attendees."). Even so, DA Putman refuses to agree with these analyses, insisting he has no current intention of prosecuting Plaintiffs while simultaneously refusing to agree not to do so and refusing to provide immunity to that very prosecution.[20]

The result is Plaintiffs' continued inability to safely assist Smith County residents regardless of where they are. Several Plaintiffs have state-wide missions, and their inability to pursue their mission in *any* Texas counties necessarily frustrates those missions and constitutes a continuing injury.

---

[19] Exh. D at 17:23-18:6.

[20] ECF 422 at 3-4, Exs. 2-A, 2-B. In an August 27, 2024 conference between counsel, Plaintiffs' counsel told DA Putman's counsel that Plaintiffs would consider providing additional responses if DA Putman would stipulate that Plaintiffs' desired conduct is not criminal. Through counsel, DA Putman refused. *See* ECF 469, Ex. A-4, November 5-7, 2024 Email Exchange.

2.    *The evidence overwhelmingly shows a substantial threat of enforcement by DA Putman.*

DA Putman has made clear his intention to enforce the Texas criminal pre-*Roe* statutes against Plaintiffs by (1) refusing to grant limited immunity from prosecution to the individuals that testified at the depositions his counsel conducted in this case; and (2) refusing to stipulate that he would not prosecute Plaintiffs under the pre-*Roe* statutes if the engaged in their desired activities in Smith County.    Additionally, DA Putman's public statements and conduct evince his unwillingness to cede even an *ounce* of his power to prosecute Plaintiffs.[21]

Many Prosecutor Defendants, including DA Putman, believe Plaintiffs are "criminal organizations" and that even associating or donating funds to Plaintiffs is criminal activity.[22]    DA Putman does not disavow these assertions.    Instead, he claims he "does not know whether the pre-*Roe* laws would be enforceable." [ECF 478 at 8].    This Hobson's choice illustrates the importance and necessity of the instant lawsuit—Plaintiffs cannot discern what the pre-*Roe* Texas abortion laws proscribe or prohibit and whether/how their conduct may subject them to prosecution.    DA Putman has specifically refused to agree not to prosecute them under those laws based on the

---

[21] *See* ECF 479-2, Ex. B, Putnam Dep. 14:18–15:2, 15:24–16:8, 19:9–15, 26:21–27:23 (Beginning at 26:21 "Q: [A]re you telling me that you won't consider whether or not the pre-*Roe* statutes apply until or unless law enforcement brings you a case that requires you to do that? A: Correct. It's impossible for me to know if they apply without having an actual case in front of me to see the specific facts of that case."); *See* ECF 479-2, Ex. B, Putnam Dep. 27:3–8, 33:8–18, 36:3–12, 40:17–41:1; *see also* ECF 469, Ex. A-1, Caroline Kitchener, *Conservatives Complaint Abortion Bans Not Enforced, Want Jail Time for Pill 'Trafficking,'* WASH. POST. (Dec. 14, 2022), https://www.washingtonpost.com/politics/2022/12/14/abortion-pills-bans-dobbs-roe/, Ex. A-2, Oscar Saravia, *Smith County District Attorney Will Prosecute Abortion-Related Crimes Like Any Other Case,* TYLER MORNING TEL. (Jul. 2, 2022), Updated Aug. 7, 2023), https://tylerpaper.com/news/smith-county-district-attorney-will-prosecute-abortion-relatedcrimes-like-any-other-case/article_6990012c-f71b-11ec-9ea4-a30dfafdd919.html.

[22] *See* ECF 258 at 12 ("Most problematically for Putman, Texas government officials have taken the stance that the pre-*Roe* laws do cover Plaintiffs' conduct."); ECF 357 at 8 ("Both before and after *Dobbs* was decided, other Texas officials also proclaimed that reproductive justice groups would be held criminally liable—both going forward and retrospectively—for assisting with abortions pre-*Dobbs* and for helping pregnant people to travel to states where abortion is legal").

conduct Plaintiffs identify in their deposition testimony. *This alone* demonstrates that Plaintiffs are at risk, specifically from Defendant Putman.

DA Putman has information responsive to his discovery requests that is sufficient to establish standing and jurisdiction. Nonetheless, he implies that Plaintiffs' invocation of their Fifth Amendment rights is "proof" that they have not produced evidence sufficient to withstand an attack on their standing. This is a clear attempt to weaponize Plaintiffs' plain constitutional rights. Both the Fifth and First Amendments to the U.S. Constitution create privileges that relieve a party from responding to discovery requests. *See Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1086 (5th Cir. 1979) ("[I]t is clear that the Fifth Amendment would serve as a shield to any party who feared that complying with discovery would expose him to a risk of self-incrimination."); *see also La Union Del Pueblo Entero*, 2022 WL 17574079, at *6 (describing the Court's two-part test for applying First Amendment privilege to compelled disclosures).

Plaintiffs have provided declarations and testimony, as DA Putman knows, that have been cited in multiple filings in this lawsuit, including in Plaintiffs' Motion for Protection from Defendant Shannon Thomason's Discovery [ECF 219], Plaintiffs' Responses to Motions to Dismiss (ECF 344, 178), Plaintiffs' MSJ Against SB8 Defendants [ECF 209], Plaintiffs' Response to SB8 Defendants' MSJ [ECF 402], and Plaintiffs' Partial MSJ Against Prosecutor Defendants [ECF 357]. This evidence clearly establishes that Plaintiffs have historically assisted Texans across the state, regardless of their county of residence, with financial, emotional, and logistical support in their efforts to obtain legal abortions. It also establishes that they would continue to do so, but for the lack of clarity on the meaning and enforceability of the pre-*Roe* statutes. Plaintiffs' invocation of the Fifth Amendment in response to questioning about the legality of their operations—while being deposed by counsel for the official who may prosecute them—only

proves their credible fear of prosecution, given DA Putman's refusal to immunize them. Plaintiffs' representatives' invocation of their Fifth Amendment rights in no way alters the sufficiency of the evidence before the Court.

Indeed, this Court has already found Plaintiffs' testimony sufficient to establish standing for a preliminary injunction and to defeat various Defendants' Motions to Dismiss.[23] [*See* ECF 258, Order Denying Motions to Dismiss]. The Court has already found that the pre-*Roe* laws arguably *do* cover Plaintiffs' conduct and that the threat of enforcement is substantial. *Id. at* 13. And, as Judge Higginbotham wrote, there is here a "chilling want of clarity in statements by officials with enforcement authority made against a chorus of state officials without enforcement power," which subjects Plaintiffs and others to a substantial threat of prosecution under laws that analogize their activities to murder. *In re Paxton,* 53 F.4th 303, 313 (5th Cir. 2022) (Higginbotham, J., concurring), *withdrawn and superseded*, 60 F.4th 252 (5th Cir. 2023); *see also* Doc. 258 at 13-14.

### 3.    *Plaintiffs' injury is fairly traceable to DA Putman.*

DA Putman also claims that Plaintiffs have "fail[ed] to provide evidence" that they had to change their operations and lost donations and board members. [ECF 478 at 19]. This assertion is false. Plaintiffs have provided in-court testimony, declarations, affidavits, and deposition testimony that they had to change their operations and that they lost donations and board members.[24] DA Putman's related assertion that he has never directly threatened Plaintiffs and is unaware of any activity by any Plaintiff in Smith County [ECF 478 at 24-5] is not relevant to traceability. DA Putman's conduct in this litigation, however, is further evidence that Plaintiffs'

---

[23] Plaintiffs have repeatedly put forth and cited *evidence*, not mere allegations, of their standing before this Court. *See* ECF 4, 57, 91, 99, 113, 129.
[24] ECF 126 at ¶36, Ex. A-20 at 11:1-4.

reasonably believe  that he is a threat to them and that the threat could be removed through their requested relief.  DA Putman refused to disavow enforcement of the pre-*Roe* statutes as to Plaintiffs, and he refused to grant individual representatives any immunity from prosecution for their testimony on these very topics.[25]  A declaratory judgment and related injunction that prohibits DA Putman from prosecuting Plaintiffs under the pre-*Roe* Statutes would eliminate the threats.

> **4.     Plaintiffs' harm is redressable by the injunction and declaratory judgment they seek.**

DA Putman briefly asserts that Plaintiffs cannot establish the third prong of standing: that their harm is redressable.  He again relies on his own asserted lack of knowledge of Plaintiffs' conduct in Smith County as well as the supposed lack of evidence of Plaintiffs' intended conduct.  These arguments fail for all of the reasons previously discussed, and an injunction would resolve the threat posed by DA Putman's possible prosecution of Plaintiffs under the pre-*Roe* laws.

**B.     The *Ex parte Young* exception to sovereign immunity applies to Plaintiffs' claims against DA Putman.**

As this Court has recognized,

> The Eleventh Amendment deprives federal courts of jurisdiction over "suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it.'" *Moore v. La. Bd. of Elementary & Secondary Educ.,* 743 F.3d 959, 963 (5th Cir. 2014). However, lawsuits may proceed in federal court when a plaintiff requests prospective relief against state officials in their official capacities for ongoing federal violations under the *Ex parte Young* exception. 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908). For the exception to apply, "the state official, 'by virtue of his office,' must have 'some connection with the enforcement of the [challenged] act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state

---

[25] If, as DA Putman claims, he is unaware of any potential criminal activity by any Plaintiff in Smith County, his refusal to grant the individuals who testified even a sliver of immunity—for the sole purpose of obtaining information relevant to this suit—is baffling.  The result of his actions has been to intensify Plaintiffs' credible fear of prosecution for helping Smith County residents.

a party.'" *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) (quoting *Young*, 209 U.S. at 157, 28 S.Ct. 441).

*Computer & Commc'ns Indus. Ass'n v. Paxton,* 747 F. Supp. 3d 1011, 1026 (W.D. Tex. 2024).

Since June 2024, the Fifth Circuit's *Ex parte Young* jurisprudence requires a defendant with "some connection" to enforcement, and looks to three requirements to overcome official immunity: (1) the particular duty to enforce the challenged law; (2) a demonstrated willingness of enforcement; and (3) enforcement authority that amounts to "compulsion" or "constraint." *Mi Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir. 2024); *see also Computer & Commc'ns Indus. Ass'n,* 747 F. Supp. 3d at 1026.[26]

The facts relevant to that inquiry in this case are:

- DA Putman refused to stipulate that the pre-*Roe* statutes do not reach Plaintiffs' desired (and historical) conduct in assisting Texas residents in obtaining abortion care in states where it is legal.[27]

- DA Putman refused to grant Plaintiffs' individual representatives limited immunity from prosecution for testimony regarding their conduct in Smith County, which would have allowed them to testify fully without fear of prosecution.[28]

---

[26] For purposes of this Response, Plaintiffs have assumed that *Ogg* is controlling precedent and explain herein how the requirements of *Ogg* have been met. Plaintiffs do not waive their prior arguments in their Reply in Support of their Motion for Partial Summary Judgment Against Prosecutor Defendants [ECF 422], that (1) *Ogg* conflicts with a prior panel decision in this case and is therefore not controlling; (2) the facts of this case distinguish it from *Ogg*; and (3) *Ogg* is wrongly decided insofar as it ignores or misreads the Supreme Court's pronouncements in *Whole Women's Health v. Jackson.* For efficiency and to avoid duplicative briefing, Plaintiffs respectfully refer the Court to that briefing and incorporate it by reference here. ECF 422 at 6-7.

[27] *See* ECF 479-2, Ex. B, Putnam Dep. 14:18–15:2, 15:24–16:8, 19:9–15, 26:21–27:23 (Beginning at 26:21 "Q: [A]re you telling me that you won't consider whether or not the pre-*Roe* statutes apply until or unless law enforcement brings you a case that requires you to do that? A: Correct. It's impossible for me to know if they apply without having an actual case in front of me to see the specific facts of that case.").

[28] *See* ECF 469, Ex. A-4, November 5–7, 2024 Email Exchange. Further, during the depositions of Plaintiff Texas Equal Access Fund and Dr. Ghazaleh Moayedi, counsel for Plaintiffs also explained on the record that immunity from prosecution was requested and denied. Ex. B at 10:5-10; Ex. D at 12:18-13:2.

- DA Putman repeatedly responded to press inquiries about enforcement of the abortion laws by indicating that he is willing and able to enforce Texas law if and when facts are presented to him that implicate Texas abortion laws.[29]

- DA Putman served and sought to compel discovery in this case that would have required the production information that could be used to prosecute Plaintiffs.[30]

- Texas law tasks DA Putman with enforcement of criminal law in Smith County.[31]

- DA Putman claimed in his deposition that he could not opine on whether the pre-*Roe* statutes were enforceable generally[32]

- DA Putman claimed in deposition that he could not opine on whether Plaintiffs' desired and historical conduct was criminal under the pre-*Roe* statutes without an actual case in front of him, despite being tasked by Texas law for enforcing those statutes.[33]

With respect to the law, to demonstrate a "particular duty," *Ex parte Young* requires neither a history of enforcement nor a statutory requirement of enforcement. *City of Austin v. Paxton*, 943 F.3d 993, 999-1000 (5th Cir. 2019); *Air Evac EMS, Inc. v. Tex. Dep't of Ins., Div. of Workers' Comp.,* 851 F.3d 507, 519 (5th Cir. 2017); *Tex. Democratic Party v. Abbott,* 961 F.3d 389, 401 (5th Cir. 2020). Whether enforcement is mandatory or discretionary speaks to a "demonstrated willingness" to enforce a statute—not whether DA Putman has the "particular duty" to enforce it. *See Nat'l. Press Photographers Assn. v. McCraw*, 90 F.4th 770, 786 (5th Cir. 2024) (finding state

---

[29] *See* ECF 479-2, Ex. B, Putnam Dep. 27:3–8, 33:8–18, 36:3–12, 40:17–41:1; *see also* ECF 469, Ex. A-1, Caroline Kitchener, *Conservatives Complain Abortion Bans Not Enforced, Want Jail Time for Pill 'Trafficking,'* WASH. POST (Dec. 14, 2022), https://www.washingtonpost.com/politics/2022/12/14/abortion-pills-bans-dobbs-roe/, Ex. A-2, Oscar Saravia, *Smith County District Attorney Will Prosecute Abortion-Related Crimes Like Any Other Case,* TYLER MORNING TEL. (Jul. 2, 2022, Updated Aug. 7, 2023), https://tylerpaper.com/news/smith-county-district-attorney-will-prosecute-abortion-relatedcrimes-like-any-other-case/article_6990012c-f71b-11ec-9ea4-a30dfafdd919.html.
[30] *See, e.g.*, ECF 449-1.
[31] ECF 479-2, Ex. A at 1-3; Ex. B, Putnam Dep. 11:14–24.
[32] ECF 479-2, Ex. B, Putnam Dep. 14:18–20, 15:24–16:3, 17:2–23, 19:9–18, 26:7–27:2, 27:12–23.
[33] ECF 479-2, Ex. B, Putnam Dep. 15:24–16:8, 23:22–24:7, 25:14–26:11, 26:21–27:2, 29:9–24, 40:21–41:1.

agency heads with discretionary enforcement power had a particular duty to enforce and noting that "[a]s heads of Texas law-enforcement agencies, [defendants] have more than just the general duty to see that the state's laws are implemented—they are directly responsible for enforcing Texas's criminal laws"). *Computer & Commc'ns Indus. Ass'n,* 747 F. Supp. 3d at 1026-27. There is no dispute or doubt that DA Putman has the authority and duty to enforce Texas's criminal law in Smith County, including the pre-*Roe* Statutes. [ECF 478 at 8].

As to the "demonstrated willingness" element, there need be only a "scintilla of enforcement by the relevant state official" for the *Ex parte Young* exception to apply. *Computer & Commc'ns Indus. Ass'n,* 747 F. Supp. 3d at 1027; *City of Austin,* 943 F.3d at 1002 (quotations omitted). Imminent enforcement or actual threats thereof "are not required." *Computer & Commc'ns Indus. Ass'n,* 747 F. Supp. 3d at 1027; *Air Evac,* 851 F.3d at 519. DA Putman argues that there must be evidence of action he has previously taken regarding enforcing these laws in order for *Ex parte Young* to apply. [ECF 477 at 23, 25].

But this case is a pre-enforcement challenge to a law that has not been enforced in 50 years due to the constitutional right to abortion guaranteed by the Supreme Court's decision in *Roe v. Wade.* The pre-*Roe* Statutes therefore could not have been enforced until 2022, when *Roe* was overturned. Evidence of recent actual enforcement of the pre-*Roe* Statutes by DA Putman or anyone else  is therefore an impossible standard. It is also not required, just as such evidence would not be required for a pre-enforcement challenge to a new law. *See Calhoun v. Collier*, 78 F.4th 846, 851 (5th Cir. 2023); *Computer & Commc'ns Indus. Ass'n,* 747 F. Supp. 3d at 1027. All Plaintiffs must show in this case is "'some scintilla' of affirmative action by DA Putman, *Ogg*, 105 F.4th at 329 (*citing Tex. Democratic Party*, 961 F.3d at 401), which they have done[34]

---

[34] To the extent relevant, in the years before *Roe v. Wade* was decided, Texas district attorneys did have a history of enforcing the pre-*Roe* Statutes and their predecessor statutes. *See, e.g., State v.*

DA Putman has repeatedly refused to disavow enforcement of the statutes at issue, despite multiple opportunities and direct requests that he do so.[35] *See Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) ("We are not troubled by the pre-enforcement nature of this suit. The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise."); *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 290 (1979) ("[T]he State has not disavowed any intention of invoking the criminal penalty .... Appellees are thus not without some reason in fearing prosecution for violation of the ban ...."); *see also Computer & Commc'ns Indus. Ass'n*, 747 F. Supp. 3d at 1027. In the First Amendment context,

---

*Rupe*, 41 Tex. 33 (1874) (affirming defendant's conviction under Texas Penal Code 2196 for procuring an abortion as advised by a physician, despite the lack of details in the indictment); *Willingham v. State*, 25 S.W. 424, 424 (Tex. Crim. App. 1894) (affirming defendant's conviction under Texas Penal Code Articles 536 and 538 for furnishing "certain drugs and medicines calculated to produce an abortion"); *Cave v. State*, 26 S.W. 503, 503 (Tex. Crim. App. 1894) (affirming defendant's conviction under Texas Penal Code Articles 538, even though his indictment did not "name the means" used to procure an abortion); *Moore v. State*, 40 S.W. 287, 289-90, (Tex. Crim. App. 1897) (affirming defendant's conviction under Texas Penal Code Article 642 and holding "that where one prescribes the medicine, and furnishes it to the woman for the purpose of creating an abortion, he is a principal, and that article 642 has reference to a case in which the principal is furnished the means with which the abortion is committed."); *Fondren v. State*, 169 S.W. 411, 556 (Tex. Crim. App. 1914) (affirming defendant's conviction under Texas Penal Code Article 1072 for encouraging, advising, and offering to pay for procuring an abortion); *Shaw v. State*, 165 S.W. 930, 932 (Tex. Crim. App. 1914) (affirming defendant's conviction for inducing an abortion on a pregnant person); *Gray v. State*, 178 S.W. 337, 341 (Tex. Crim. App. 1915) (affirming defendant's conviction under Texas Penal Code Article 1071 for the use of means to procure an abortion by insertion of a catheter); *Hammett v. State*, 209 S.W. 661, 639 (1919) (affirming defendant's conviction where he took his pregnant girlfriend to the doctor and paid for the abortion, concluding the jury was authorized to find defendant "guilty as a principal if he consulted or advised the doctor who actually performed the abortion to commit same"); *Veevers v. State*, 354 S.W.2d 161, 171 (Tex. Crim. App. 1962) (affirming defendant physician's conviction under Texas Penal Code Article 1191 for the use of means designed to produce an abortion.); *Thompson v. State*, 493 S.W.2d 913 (Tex. Crim. App. 1971), *vacated*, 410 U.S. 950 (1973) (affirming defendant physician's conviction for abortion under Articles 1191–96, and stating that the person who drove the pregnant person to the defendant's office "could be a principal in the State's case . . . and [was], therefore, an accomplice witness as a matter of law." The *Thompson* case was overturned following the Supreme Court's decision in *Roe*, but remains an example of historical enforcement.

[35] *See* ECF 479-2, Ex. B, Putnam Dep. 14:18–15:2, 15:24–16:8, 19:9–15, 26:21–27:23.

this is enough. *See Nat'l Press*, 90 F.4th at 782 ("Unlike in other constitutional contexts, in the speech context, we may assume a substantial threat of future enforcement absent compelling contrary evidence.") (internal citation and quotation omitted).

DA Putman has also publicly voiced his support for pro-life laws in Texas and declared his intention to enforce them.[36] He has refused to stipulate that he would not enforce those laws during this lawsuit, unlike many of the other DA Defendants.[37] He refused to grant Plaintiffs' individual representatives immunity from prosecution for potential historical violations of the statutes at issue, which would have allowed them to freely and safely testify about their prior conduct.[38] He refused to say whether he believes the laws at issue are enforceable.[39] He refused to say whether Plaintiffs' historical and desired future conduct would be criminal under the statutes at issue.[40] He admits that, for Smith County, he alone decides whom to prosecute under the criminal laws of Texas, including the pre-*Roe* Statutes at issue in this case.[41] All of this is far more than a scintilla of an indication that DA Putman is willing to enforce the pre-*Roe* statutes and that Plaintiffs' fear of prosecution is legitimate, reasonable, and credible.

---

[36] *See* ECF 469, Ex. A-1, Caroline Kitchener, *Conservatives Complaint Abortion Bans Not Enforced, Want Jail Time for Pill 'Trafficking,'* WASH. POST. (Dec. 14, 2022), https://www.washingtonpost.com/politics/2022/12/14/abortion-pills-bans-dobbs-roe/, Ex. A-2, Oscar Saravia, *Smith County District Attorney Will Prosecute Abortion-Related Crimes Like Any Other Case,* TYLER MORNING TEL. (Jul. 2, 2022, Updated Aug. 7, 2023), https://tylerpaper.com/news/smith-county-district-attorney-will-prosecute-abortion-relatedcrimes-like-any-other-case/article_6990012c-f71b-11ec-9ea4-a30dfafdd919.html.

[37] ECF 479-2, Ex. B, Putnam Dep. 25:14–27:8, 36:9–37:3; ECF 258 at 17; *see also* Ex. A-2, Oscar Saravia, *Smith County District Attorney Will Prosecute Abortion-Related Crimes Like Any Other Case,* TYLER MORNING TEL. (Jul. 2, 2022, Updated Aug. 7, 2023), https://tylerpaper.com/news/smith-county-district-attorney-will-prosecute-abortion-relatedcrimes-like-any-other-case/article_6990012c-f71b-11ec-9ea4-a30dfafdd919.html.

[38] ECF 469, Ex. A-4, November 5–7, 2024 Email Exchange.

[39] ECF 479-2, Ex. B, Putnam Dep. 14:18–20; 15:24–16:3; 17:2–23; 19:9–18; 26:7–27:2; 27:12–23.

[40] ECF 479-2, Ex. B, Putnam Dep. 15:24–16:8, 23:22–24:7, 25:14–26:11, 26:21–27:2, 29:9–24, 40:21–41:1.

[41] ECF 479-2, Ex. A, Putnam Declaration at 1-3, 3-9.

Lastly, insofar as DA Putman argues that *Ogg* imposes a greater burden on Plaintiffs—to show that they have been constrained or compelled by DA Putman's conduct, his argument fails. In the midst of a storm of constant claims by various state officials regarding the enforceability of the Pre-*Roe* Statutes, DA Putman has remained notably silent.  On the facts shown above, this silence is sufficiently chilling, particularly after multiple requests to DA Putman to clarify his position, to disavow enforcement of Texas abortion laws until a final order is issued herein, or to immunize Plaintiffs' representatives during their depositions.  These actions effectively constrain Plaintiffs, as DA Putman must be aware.  Therefore, this guidepost of *Ogg* is met as well.  *Mi Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir. 2024); *see also Computer & Commc'ns Indus. Ass'n,* 747 F. Supp. 3d at 1026.

### III.    <u>CONCLUSION</u>

As the Supreme Court wrote in *Steffel v. Thompson,* 415 U.S. 452, 462 (1974):

> …a refusal on the part of the federal courts to intervene when no state proceeding is pending may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding.

Plaintiffs seek clarity and assurance that their exercise of constitutional rights in service of their missions is, in fact, constitutionally protected, and thus cannot subject them to criminal prosecution.  The law does not require them to undertake the conduct, hope for the best, and then try to defend themselves against imprisonment if they are wrong.  Plaintiffs have put forth sufficient evidence of their standing and that DA Putman is a proper defendant for this case under *Ex parte Young*.  DA Putman's Motion for Summary Judgment should be denied in its entirety.

Dated: April 17, 2025                    Respectfully submitted,

By: */s/ Elizabeth G. Myers*
Jennifer R. Ecklund
Texas Bar No. 24045626
jecklund@thompsoncoburn.com

Elizabeth G. Myers
Texas Bar No. 24047767
emyers@thompsoncoburn.com

Nicole L. Williams
Texas Bar No. 24041784
nwilliams@thompsoncoburn.com

John P. Atkins
Texas Bar No. 24097326
jatkins@thompsoncoburn.com

Allyn Jaqua Lowell
Texas Bar No. 24064143
alowell@thompsoncoburn.com

**THOMPSON COBURN LLP**
2100 Ross Avenue, Suite 3200
Dallas, Texas 75201
Telephone: 972/629-7100
Facsimile: 972/629-7171

Alexandra Wilson Albright
Texas Bar No. 21723500
aalbright@adjtlaw.com

Marcy Hogan Greer
Texas Bar No. 08417560
mgreer@adjtlaw.com

515 Congress Ave., Suite 2350
Austin, TX 78701-3562
Telephone: 512/482-9300
Facsimile: 512/482-9303

Kevin Dubose
Texas Bar No. 06150500
kdubose@adjtlaw.com
1844 Harvard Street
Houston, TX 77008
Telephone: 713/523-2358
Facsimile: 713/522-4553

Kirsten M. Castañeda
Texas Bar No. 00792401
kcastaneda@adjtlaw.com
8144 Walnut Hill Lane, Suite 1000
Dallas, TX 75231-4388
Telephone: 214/369-2358
Facsimile: 214/369-2359

**ALEXANDER DUBOSE &
JEFFERSON, LLP**

**ATTORNEYS FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 17, 2025, a copy of the foregoing was served on all parties via email to their counsel.


*/s/ Elizabeth G. Myers*
Elizabeth G. Myers