IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| FUND TEXAS CHOICE, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 1:22-CV-859-RP |
| | § | |
| SUSAN R. DESKI, et al., | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is Plaintiffs Buckle Bunnies Fund, Clinic Access Support Network, Frontera Fund, Fund Texas Choice, Jane's Due Process, Ghazaleh Moayedi, The Afiya Center, The Lilith Fund for Reproductive Equity, The North Texas Equal Access Fund, and West Fund's ("Plaintiffs") Motion for Partial Summary Judgment Against Prosecutor Defendants. (Dkt. 357). Also before the Court are Defendant Jose Garza's ("Garza") Motion for Summary Judgment, (Dkt. 474), Defendants Susan R. Deski ("Deski"), Richard E. Glaser ("Glaser"), Wiley B. McAfee ("McAfee"), Julie Renken ("Renken"), Ryan Sinclair ("Sinclair"), and Fred H. Weber's ("Weber")[1] Motion for Judgment on the Pleadings and Motion for Summary Judgment, (Dkt. 475), Defendant Joe Gonzales's ("Gonzales") Motion for Summary Judgment, (Dkt. 476), Defendant Jacob Putman's ("Putman") Motion for Summary Judgment, (Dkt. 478), and Defendant James Montoya's[2] ("Montoya") Motion for Summary Judgment, (Dkt. 483). Defendants Gocha Allen Ramirez

---

[1] Defendants Renken, McAfee, and Glaser have been replaced in their official capacities following the election of their successors. Derek Estep replaced Julie Renken as District Attorney for Washington County; Perry Thomas replaced Wiley B. McAfee as County Attorney for Blanco, Burnet, Llano, and San Saba Counties; and John Skotnik replaced Richard E. Glaser as District Attorney for Fannin County. Plaintiffs refer to these officials by the name listed in this case's caption, as their motion for summary judgment did, but their successors nonetheless substituted for them automatically under Rule 25(d). Fed. R. Civ. P. 25(d).
[2] James Montoya succeeded Defendant Bill Hicks as district attorney for El Paso, Hudspeth, and Culberson counties. He is therefore automatically substituted as a party for Bill Hicks. Fed. R. Civ. P. 25(d) ("The officer's successor is automatically substituted as a party.").

("Ramirez"), Toribio Palacios ("Palacios"), and K. Sunshine Stanek ("Stanek") did not move for

summary judgment but raise similar arguments to the other Defendants in their responses to

Plaintiffs' Motion for Summary Judgment. (Dkts. 415, 419, 423). Having considered the parties'

briefing, the record, and the relevant law, the Court issues the following order.

## I. BACKGROUND

This case concerns several Texas abortion advocacy groups that seek to fund or support

abortion for Texans in states where it remains legal. Plaintiffs are comprised of several nonprofit

Texas abortion funds and one physician. As part of their mission to support reproductive rights, the

abortion funds hope to fund and facilitate travel and lodging for Texans who seek abortions outside

the state. (Am. Compl., Dkt. 129, at 2).[3] Before the Supreme Court's decision in *Dobbs v. Jackson

Women's Health Org.*, 142 S. Ct. 2228 (2022), the funds would provide financial, logistical, emotional,

and travel assistance to pregnant Texans. They claim that they have been forced to halt many of

their historic activities following the passage of S.B. 8[4] and the *Dobbs* decision, and they want to

resume their prior activities as permitted by the U.S. Constitution. (Am. Compl., Dkt. 129, at 2).

Plaintiffs brought the instant action on August 23, 2022. (Dkt. 1). This set of motions

concerns the validity of Texas statutes which criminalized abortion prior to the Supreme Court's

---

[3] Though the Court will refer to Plaintiffs' previous Complaints, the Court will cite the Second Amended
Complaint throughout the Order, (2d Am. Compl., Dkt. 129), because it is the operative Complaint. The
claims for relief relevant to the instant motions remain the same across the original Complaint, the First
Amended Complaint, and the Second Amended Complaint.
[4] The Texas Legislature passed S.B. 8 in 2021, prior to *Dobbs. See* Senate Bill 8, 87th Leg., Reg. Sess. (Tex.
2021). S.B. 8 purports to ban all abortions where cardiac activity has been detected in the embryo with no
exceptions for rape, sexual abuse, incest, or fetal defects incompatible with life after birth. Tex. Health &
Safety Code § 171.204(a). The bill delegates enforcement to private individuals and precludes state
enforcement. Tex. Health & Safety Code § 171.207–.208(a). In addition to their challenge to the pre-*Roe* laws
discussed here, Plaintiffs also sued several private individuals who had allegedly sought discovery against
Plaintiffs or threatened to sue them under S.B. 8. (Order, Dkt. 458, at 4). Plaintiffs sought to enjoin these
individuals from bringing suit against them under S.B. 8. (*Id.*). The Court dismissed these claims on October
29, 2024, finding that Plaintiffs lacked standing as to these Defendants. (*Id.*).

decision in *Roe v. Wade*, 410 U.S. 113, 166 (1973) ("pre-*Roe* laws"). Prior to that 1973 decision, Articles 1191, 1192, 1193, 1194, and 1196 criminalized abortion in the state.

Article 1191 of the Texas Penal Code, the direct ban on abortion, stated:

> If any person shall designedly administer to a pregnant woman or knowingly procure to be administered with her consent any drug or medicine, or shall use towards her any violence or means whatever externally or internally applied, and thereby procure an abortion, he shall be confined in the penitentiary not less than two nor more than five years; if it be done without her consent, the punishment shall be doubled. By 'abortion' is meant that the life of the fetus or embryo shall be destroyed in the woman's womb or that a premature birth thereof be caused.

Tex. Pen. Code. Art. 1192 (West 1961). Article 1192, which provides for accomplice liability, further states, "Whoever furnished the means for procuring an abortion knowing the purpose intended is guilty as an accomplice." *Id.* This accomplice liability is punishable by two to five years in a state penitentiary. *Id.*

Because the laws have been null for at least 52 years, interpretive decisions are sparse. In *Moore v. State*, 40 S.W. 287, 290 (Tex. Crim. App. 1897), the Texas Court of Criminal Appeals ruled that "furnishing the means" was added to criminalize providing a woman with medication or tools to perform an abortion herself. In *Fondren v. State*, 169 S.W. 411, 414–16 (Tex. 1914), the Texas Supreme Court held that "furnishing the means for procuring an abortion" applied to the drugs, medicine, or procedure that could produce an abortion. In 1908, the Texas Court of Criminal Appeals affirmed that the pre-*Roe* laws' definition of "abortion" was not unconstitutionally vague but gave no analysis on that point. *Jackson v. State*, 115 S.W. 262, 268 (Tex. Crim. App. 1908).

In *Roe v. Wade*, the Supreme Court determined that these statutes were unconstitutional. 410 U.S. 113, 166 ("Our conclusion that Art. 1196 is unconstitutional means, of course, that the Texas abortion statutes, as a unit, must fall."). However, the Court found it unnecessary to issue further relief because it "assume[d] that the Texas prosecutorial authorities will give full credence to this

decision that the present criminal abortion statutes of that State are unconstitutional." *Id.* Shortly

after, the Texas Legislature removed the pre-*Roe* statutes from the Penal Code. *See* Act of May 24,

1973, S.B. 34, 63rd Leg., Reg. Sess., ch. 399, § 5(a). The pre-*Roe* statutes were initially transferred to

Chapter 6-1/2 of Title 71 of the Civil Statutes but have been absent from both criminal and civil

statutes since 1984. *See* 1973 Tex. Gen. Laws 995 (codified at Tex. Rev. Civ. Stat. arts. 4512.1–

4512.4, 4512.6 (West 1974)).

In 2004, the Fifth Circuit addressed whether the acts had been repealed. The court wrote,

"Texas statutes that criminalized abortion (former Penal Code Articles 1191, 1192, 1193, 1194, and

1196) and were at issue in *Roe* have, at least, been repealed by implication." *McCorvey v. Hill*, 385 F.3d

846, 849 (5th Cir. 2004). The court further noted that Texas's regulatory provisions that govern

abortion "cannot be harmonized with provisions that purport to criminalize abortion" and stated

firmly that "the statutes declared unconstitutional in *Roe* have been repealed." *Id.* The concurrence

also explained that reopening *Roe* could not "turn back Texas's legislative clock to reinstate the laws,

no longer effective, that formerly criminalized abortion." *Id.* at 850 (Jones, J., concurring). Similarly,

two Texas appellate courts have held that the pre-*Roe* statutes are unenforceable. *See Dickson v. Afiya

Ctr.*, 636 S.W.3d 247, 263 (Tex. App.—Dallas 2021) (pet. granted); *Zimmerman v. City of Austin*, 620

S.W.3d 473, 477 n.4 (Tex. App.—El Paso 2021) (pet. granted).

Notwithstanding these cases, the Texas Legislature included a legislative finding in S.B. 8

that Texas "never repealed, either expressly or by implication, the state statutes enacted before the

ruling in *Roe v. Wade*, 410 U.S. 113 (1973), that prohibit and criminalize abortion unless the mother's

life is in danger." S.B. 8 § 2 (Tex. 2021). Similarly, Texas Attorney General Ken Paxton ("Paxton")

tweeted on July 1, 2022, that "Texas's pre-*Roe* statutes criminalizing abortion is 100% good law, and

I'll ensure they're enforceable." (Paxton Tweet, Dkt. 42-42). On June 27, 2022, a group of abortion

providers sued in Harris County Court seeking to enjoin the pre-*Roe* bans from taking effect. *Whole*

*Woman's Health v. Paxton*, No. 2022- 38397, 2022 WL 2314499 (Tex. Dist. June 27, 2022). Although

the trial court granted a temporary restraining order blocking enforcement of the bans, the Texas

Supreme Court stayed the order, allowing the ban to take effect. *In re Paxton*, No. 22-0527, 2022 WL

2425619 (Tex. July 1, 2022). On October 5, 2022, the case was voluntarily dismissed. *Id.*

 Here, Plaintiffs initially sued Paxton, as well as local prosecutors in the Austin area: Deski,

Garza, McAfee, Renken, and Weber (collectively, the "Austin area prosecutors"). (Compl., Dkt. 1).

Plaintiffs sought to enjoin the Austin area prosecutors "from prosecuting Plaintiffs, or any of their

staff, volunteers, or donors, under the Pre-*Roe* Statutes for any behavior undertaken by Plaintiffs in

connection with any abortion that occurs outside the State of Texas." (2d Am. Compl., Dkt. 129, at

79). They also sought a declaratory judgment that (1) enforcement of the pre-*Roe* laws against

Plaintiffs for traveling across state lines to assist another person to access a legal abortion is

unconstitutional because it violates their right to travel, their right to free speech, the Equal

Protection Clause, and the void-for-vagueness doctrine, (*id.* at 79–81); and (2) the pre-*Roe* laws do

not constitutionally apply to either abortions obtained or performed outside of Texas, medication

legally prescribed outside of Texas, or abortion care provided via telemedicine by a physician

licensed in another state regardless of the physician's physical location, (*id.* at 81).

 A month after Plaintiffs filed their Complaint, on September 31, 2022, the Austin area

prosecutors filed an agreed stipulation stating that they did not intend to enforce abortion laws

against interstate travel during the duration of this suit. (Agreed Stips., Dkt. 31, at 3; Dkt. 32, at 3).

The Austin area prosecutors each also stipulated they are a "proper Defendant in this lawsuit

because of her or his authority to prosecute under the challenged statutes." (Agreed Stips., Dkt. 31,

at 2; Dkt. 32, at 3).

 Paxton moved to dismiss, (Dkt. 110), and Plaintiffs moved for a preliminary injunction,

(Dkt. 6). On February 24, 2023, the Court issued an order on the motions. (Order, Dkt. 120). First,

the Court granted Paxton's motion to dismiss, finding that Plaintiffs lack standing to sue Paxton, and their claims are barred by sovereign immunity. (*Id.* at 18–32). As for the Austin area prosecutors, the Court found standing because the Austin area prosecutors have the authority to enforce the pre-*Roe* laws, and some of the laws arguably apply to extraterritorial abortions. (*Id.* at 33). Although Article 4512.1, the direct ban on abortion, does not evince any intent to apply extraterritorially and therefore does not appear to prohibit out-of-state abortions on its own, the remainder of Texas's pre-*Roe* laws create ambiguity. For example, Article 4512.2, which provides "[w]hoever furnishes the means for procuring an abortion knowing the purpose intended is guilty as an accomplice," does not necessarily extend to only the abortions covered by Article 4512.1. (*Id.*). In other words, even if an abortion takes place outside of Texas, a plausible (albeit unlikely) construction of the statute authorizes prosecution for "furnishing the means" of that abortion if that "furnishing" takes place in Texas. (*Id.* at 34). Accordingly, the Court found that the pre-*Roe* laws arguably proscribe Plaintiffs' desired conduct, so Plaintiffs have standing as to the Austin area prosecutors. (*Id.* at 35).

Second, the Court granted Plaintiffs' motion for a preliminary injunction. This Court is bound by the Fifth Circuit's opinion in *McCorvey v. Hill*, which, as explained above, held that the pre-*Roe* laws were repealed by implication. 385 F.3d 846. Accordingly, the Court found that Plaintiffs established a likelihood of success on the merits. (Order, Dkt. 120, 46). Because Plaintiffs also satisfied the other preliminary-injunction factors, the Court enjoined the Austin area prosecutors from enforcing the pre-*Roe* laws against Plaintiffs for any conduct related to an abortion obtained outside Texas. (*Id.* at 52).

Plaintiffs amended their Complaint on April 20, 2023, this time adding prosecutors from outside the Austin area: Gonzales, Palacios, Stanek, Ramirez, Hicks, White, Glaser, Sinclair, and Putman (together with the Austin area prosecutors, the "Prosecutor Defendants"). (2d Am. Compl., Dkt. 129). Each Prosecutor Defendant is authorized to pursue criminal charges under the pre-*Roe*

laws for crimes that occur in their jurisdiction. Tex. Code Crim. Proc. art. 2.01. They have the sole authority to file and pursue criminal cases in their respective districts. *Id.* at 32.

On December 21, 2023, in response to new motions to dismiss from the Prosecutor Defendants, the Court reaffirmed that Plaintiffs have standing. (Order, Dkt. 258). In doing so, the Court relied on the Fifth Circuit's decision in *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020), *as revised* (Oct. 30, 2020), to explain that Plaintiffs "do not need to show specific threats of enforcement from each prosecutor." (Order, Dkt. 258, at 13). The *Speech First* Court had instructed "in the pre-enforcement context of criminal laws, 'the threat is latent in the existence of the statute'"; therefore, courts should "assume a credible threat of prosecution in the absence of compelling contrary evidence." (*Id.* (quoting *Speech First*, 979 F.3d at 335)). Though none of the Prosecutor Defendants have explicitly threatened to enforce the pre-*Roe* bans against Plaintiffs, Plaintiffs therefore have standing to sue them. (*Id.* at 17).

Then, on May 17, 2024, Plaintiffs filed a Motion for Partial Summary Judgment against the Prosecutor Defendants, which, if granted, would resolve all claims against the Prosecutor Defendants. (Dkt. 357). The motion asks the Court for a declaratory judgment that: (1) the pre-*Roe* laws were impliedly repealed; (2) retroactive application of the pre-*Roe* laws violates due process; (3) the pre-*Roe* laws violate Plaintiffs' constitutional rights to travel, speech, and assembly; and (4) the pre-*Roe* laws are void for vagueness. (Dkt. 357, at 1).

In response, Putman filed a Motion to Defer Consideration of Plaintiffs' Motion for Partial Summary Judgment, arguing that the Court should stay Putman's response deadline to the motion until he has the opportunity to conduct limited discovery to challenge Plaintiffs' standing. (Dkt. 375, at 1). The Court agreed that Putman's discovery requests were germane to Plaintiffs' standing to sue him. (Order, Dkt. 399, at 11). Plaintiffs had plead that they intend to help "Texans across the state," including Texans from Smith County, but the assertion could potentially be disproven with factual

evidence obtained through discovery. (*Id.*). The Court therefore allowed Putman to conduct limited discovery, (*id.*), and the Court later also allowed Plaintiffs to take a deposition of Putman because *Mi Familia Vota v. Ogg,* 105 F.4th 313 (5th Cir. 2024), which the Fifth Circuit published six months after this Court's decision on the motions to dismiss, potentially made new factual inquiries from the Prosecutor Defendants relevant. (Order, Dkt. 464, at 5). No other Prosecutor Defendants moved to stay their deadlines to respond to Plaintiffs' Motion for Partial Summary Judgment pending additional discovery on standing.

In addition to opposing Plaintiffs' Motion for Partial Summary Judgment, the Prosecutor Defendants filed their own dispositive motions, which vary but contain similar arguments. Garza filed a Motion for Summary Judgment, (Dkt. 474), Deski, Glaser, McAfee, Renken, Sinclair, and Weber filed a Motion for Judgment on the Pleadings and Motion for Summary Judgment, (Dkt. 475), Gonzales filed a Motion for Summary Judgment, (Dkt. 476), Putman filed a Motion for Summary Judgment, (Dkt. 478), and Montoya filed a Motion for Summary Judgment, (Dkt. 483). Defendants Ramirez, Palacios, and Stanek did not move for summary judgment but raise essentially the same arguments in their responses to Plaintiffs' Partial Motion for Summary Judgment. (Dkts. 415, 419, 423). White did not answer or otherwise respond. (*See* Dkt. 357, at 1).

The Prosecutor Defendants' motions focus on the purported procedural deficiencies in the case. All of the dispositive motions argue that Plaintiffs' claims against the Prosecutor Defendants are barred by Eleventh Amendment and sovereign immunity under the *Ex parte Young* test laid out by the Fifth Circuit in *Mi Familia Vota v. Ogg.* (Dkt. 474, at 2; Dkt. 475, at 7–13; Dkt. 476, at 8–15; Dkt. 478, at 15–20; Dkt. 483, at 1–5; Dkt. 415, at 1–4; Dkt. 419, at 5–13; Dkt. 423, at 3–6). Renken, McAfee, and Glaser additionally argue that because they no longer serve as the district attorneys in their respective counties, Plaintiffs have failed to demonstrate and/or establish that substitution by their successors-in-office would be appropriate in this matter pursuant to Federal Rule of Civil

Procedure 25. (Dkt. 475, at 2–3). Finally, Deski, Renken, McAfee, Weber, Glaser, Sinclair, and Putman once again argue that Plaintiffs lack standing. (Dkt. 475, at 9; Dkt. 478, at 6–15).

Plaintiffs filed a consolidated response in opposition to most of the Prosecutor Defendants' motions. (Dkt. 485). Plaintiffs filed a separate response to Putman's motion, which incorporates facts gathered via the additional discovery the Court granted. (Dkt. 487).

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation marks and footnote omitted). When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Further, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343

(5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000).

## B. Judgment on the Pleadings

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion brought pursuant to Rule 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). "Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001). The Fifth Circuit applies the same standard to a motion under Rule 12(c) as it does for a motion under Rule 12(b)(6). *Id.*, at 313 n.8; *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). In ruling on a Rule 12(c) motion, the Court is confined to the pleadings and must accept all allegations contained therein as true. *St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.,* 937 F.2d 274, 279 (5th Cir. 1991).

## III. DISCUSSION

"Generally, state sovereign immunity precludes suits against state officials in their official capacities." *Texas Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020). The legal fiction of *Ex parte Young*, however, provides an "exception to Eleventh Amendment sovereign immunity" in the

subset of cases to which it applies. *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). The exception permits federal courts to enjoin prospective unconstitutional conduct by "individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature." *Ex parte Young*, 209 U.S. 123, 155–56 (1908).

To be a proper defendant under *Ex parte Young*, a state official must have "some connection with the enforcement of" the law being challenged. *Id.* at 157. Although the Fifth Circuit admits that its decisions have not been "a model of clarity" on what constitutes a sufficient connection to enforcement for *Ex parte Young* purposes, it has provided "guideposts" to aid the analysis. *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022). "These guideposts help ensure that a defendant has 'some connection with the enforcement of the challenged act,' in the absence of which the State becomes the real party, in violation of the Eleventh Amendment." *Mi Familia Vota v. Ogg*, 105 F.4th 313, 330 (5th Cir. 2024) (quoting *Ex parte Young*, 209 U.S. at 157).

In *Mi Familia Vota v. Ogg*, the Fifth Circuit elaborated on the guideposts, which are: "(1) the state official has 'more than the general duty to see that the laws of the state are implemented,' i.e., a 'particular duty to enforce the statute in question'; (2) the state official has 'a demonstrated willingness to exercise that duty'; and (3) the state official, through her conduct, 'compel[s] or constrain[s persons] to obey the challenged law." *Id.* at 325 (quoting *Tex. All. for Retired Ams.*, 28 F.4th at 672). In *Ogg*, plaintiffs challenged several provisions of a Texas election statute, alleging that Harris County District Attorney Kim Ogg was a proper *Ex parte Young* defendant. (*Id.* at 318). The appeals court held that their claims were barred by sovereign immunity.

In assessing the first guidepost—whether Ogg had a particular duty to enforce the statute— the Court explained that "mere authority" over whether to bring criminal charges is not enough to invoke the *Ex parte Young* exception. *Id.* at 326. Because local prosecutors have "complete

discretion" over whether to enforce the law, they do not have the "specific duty" required for *Ex parte Young* to apply. *Id.* "Discretionary authority to act, on its own, is insufficient to give rise to a particular duty to act." *Id.* at 327.

On the second guidepost—Ogg's demonstrated willingness to enforce the challenged provisions—plaintiffs must show that "the state officials [] have taken some step to enforce the statute." *Id.* at 329 (internal quotation marks omitted). This requires "'some scintilla of affirmative action by the state official." *Id.* (internal quotation marks omitted). "To determine whether an official has demonstrated a willingness to enforce a challenged statute, we consider the prior or contemporaneous affirmative acts of the named official." *Id.* at 330. "[W]hat is sufficient for standing will not necessarily establish an enforcement connection" under *Ex parte Young*. *Id.* at 330. Thus, courts cannot "assume a credible threat of prosecution in the absence of compelling contrary evidence." *Id.* at 329 (quoting *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020), *as revised* (Oct. 30, 2020)). While that may be enough to establish standing to bring a preenforcement challenge, it is not enough to satisfy *Ex parte Young*'s enforcement connection requirement. *Id.*

Finally, on the third guidepost of whether Ogg compelled or constrained plaintiffs, the court ruled in the negative. In doing so, the court rejected plaintiffs' argument that the challenged statute's existence "coupled with Ogg's authority to prosecute criminal cases constrained the Plaintiffs because of their fear of prosecution." *Id.* at 332. "Although this fear of prosecution may be sufficient for standing, it is insufficient to demonstrate compulsion or constraint under [] *Ex parte Young*" because "Ogg has neither enforced the challenged statute against anyone or threatened to do so." *Id.* The appeals court accordingly held that Ogg was not a proper *Ex parte Young* defendant. *Id.* at 333.

Here, each Defendant has relied on *Mi Familia Vota v. Ogg* to assert that they are entitled to sovereign immunity from Plaintiffs' claims. In response, Plaintiffs argue *Ogg* is not binding and is distinguishable. (Dkt. 485, at 9–14; Dkt. 422, at 2–10). The Court will first address Plaintiffs'

arguments regarding whether *Ogg* is binding, which apply to every Prosecutor Defendant, then discuss each of the Prosecutor Defendant's sovereign immunity.

### A. *Mi Familia Vota v. Ogg*

Plaintiffs argue that *Ogg* is not binding because it conflicts with the Fifth Circuit's previously issued opinion in *In re Paxton*, 60 F.4th 252, 257 (5th Cir. 2023). In the Fifth Circuit, "one panel may not overrule a prior panel opinion and the earlier precedent controls." *United States v. Walker*, 302 F.3d 322, 325 (5th Cir. 2002). In *In re Paxton*, the court considered this Court's denial of Paxton's motions to quash Plaintiffs' subpoenas to obtain his testimony. *Id.* Plaintiffs had asserted that they were entitled to examine Paxton to "clarify his power to enforce the challenged laws because his public statements—including official advisories, campaign statements, and tweets—allegedly contradicted his court filings on that point." *In re Paxton*, 60 F.4th at 254–55. According to Plaintiffs, the testimony was necessary to decide Paxton's sovereign-immunity defense. *Id.* at 256. This Court agreed, finding the testimony relevant because "Paxton had simultaneously publicly promised to enforce the laws while arguing in court that he lacked the authority to do so." *Id.* at 255. The Court accordingly denied the motion to quash, and Paxton petitioned the Fifth Circuit for a writ of mandamus to shield him from the order. *Id.* at 254.

The Fifth Circuit reversed. In doing so, it rejected Plaintiffs' sovereign-immunity argument:

> We reject Plaintiffs' argument that Paxton's testimony is somehow necessary to decide jurisdiction. Whether Paxton may be sued under the *Ex parte Young* exception to sovereign immunity does not turn on Paxton's campaign statements or tweets. Rather, it turns **principally on whether Paxton is statutorily tasked with enforcing the challenged law**.

*In re Paxton*, 60 F.4th at 257 (emphasis added).

In their response to the Prosecutor Defendants' dispositive motions, Plaintiffs now argue that *In re Paxton* made clear "whether a state officer is a proper defendant under *Ex parte Young* turns nearly exclusively on whether that defendant has the power to enforce the challenged laws," (*see* Dkt.

485, at 10), not his "thoughts or statements," *In re Paxton*, 60 F.4th at 258. Plaintiffs argue that *Ogg* conflicts with *In re Paxton* to the extent that it holds that a public official's actions or threats to enforce are relevant to the sovereign-immunity analysis. (Dkt. 485, at 10).

The Court agrees that *In re Paxton*, if read broadly, is in tension with *Ogg*. In *Ogg*, the Fifth Circuit discussed Ogg's (lack of) affirmative action or threats to enforce the statute under the second guidepost of willingness to enforce the challenged provisions and third guidepost of whether her actions had constrained plaintiffs. *Ogg*, 105 F.4th at 329–33 (instructing courts to "consider the prior or contemporaneous affirmative acts of the named official" under the second guidepost and to "focus [] on Ogg's actions" under the third guidepost). The official's actions and threats therefore seem highly relevant to sovereign immunity.

However, this Court declines to read *In re Paxton* so broadly as to create conflict with *Ogg*. *In re Paxton* primarily considered whether Plaintiffs were entitled to subpoena Paxton's testimony. Beyond the bare statements quoted here, *In re Paxton* did not opine on the *Ex parte Young* exception. The opinion's statement that sovereign immunity turns "principally" on whether Paxton had the statutory authority to enforce the law leaves room for other considerations. *See In re Paxton*, 60 F.4th at 257. The court also based its decision in part on the apex doctrine, which reinforced its conclusion that Paxton's testimony was irrelevant to jurisdiction. *Id.* at 258–59.

Because *In re Paxton* does not discuss sovereign immunity in detail and the appeals court had other bases for quashing the subpoenas, the Court finds that *In re Paxton* did not squarely address sovereign immunity. *Ogg*, on the other hand, addressed the *Ex parte Young* exception head-on, assessing each of the three guideposts in detail. *Ogg*, 105 F.4th at 325–33. The Court finds *Ogg* to be a clearer ruling on *Ex parte Young* and therefore does not find conflict with *In re Paxton*.

## B. The Prosecutor Defendants' Sovereign Immunity

Having determined that *Ogg* is binding, the Court will now address the Prosecutor Defendants' sovereign immunity. The Court will address each of the three guideposts in turn.

### 1. The Prosecutor Defendants' Duty to Enforce

The Court will first analyze whether the Prosecutor Defendants have a duty to enforce the pre-*Roe* laws. In *Ogg*, the Fifth Circuit explained that officials who have "complete discretion" to enforce the law do not have the "specific duty" required to invoke *Ex parte Young*. *Ogg*, 105 F.4th at 326. The court therefore ruled that Ogg, who is a district attorney with the same authority as the Prosecutor Defendants in this case, is protected by sovereign immunity.

Plaintiffs argue that, unlike Ogg, the Prosecutor Defendants here do not have "complete discretion" to decide whether to enforce violations of the pre-*Roe* laws. (Dkt. 485, at 12). This is because Texas Local Government Code Section 87.011(3)(B), which went into effect on September 1, 2023, provides that any "adoption or enforcement of a policy of refusing to prosecute a class or type of criminal offense" is "official misconduct." Tex. Loc. Gov't Code Ann. § 87.011(3)(B) (West 2025). Plaintiffs assert that the provision removes the Prosecutor Defendants' discretion because if they are unwilling to enforce the pre-*Roe* laws, they would be committing "official misconduct."

The Court disagrees. The law does not mandate that district attorneys prosecute every case under every criminal statute no matter the specific facts. Further, Article 2A.101 of the Texas Code of Criminal Procedure, which went into effect on January 1, 2025—after Section 87.011(3)(B)—provides that "[t]he primary duty of an attorney representing the state, including a special prosecutor, is not to convict but to see that justice is done." Tex. Code. Crim. Proc. art. 2A.101 (West 2025). This provision clarifies that prosecutors have discretion over which cases to pursue. Finding that the Prosecutor Defendants have no "specific duty" to enforce the pre-*Roe* laws, the Court finds that the first guidepost weighs in favor of sovereign immunity.

2.  The Prosecutor Defendants' Demonstrated Willingness to Enforce

For "demonstrated willingness" to enforce the pre-*Roe* laws, Plaintiffs must show "some scintilla of affirmative action by the state official" for the *Ex parte Young* exception to apply. *Ogg*, 105 F.4th at 329. Though "past enforcement of the statute," would qualify, the Fifth Circuit has acknowledged that "when plaintiffs bring a pre-enforcement action . . . prior enforcement will obviously be lacking." *Id.* Nevertheless, the "prior or contemporaneous affirmative acts of the named official" must show some willingness to enforce. *Id.* at 330.

Here, for each of the Prosecutor Defendants except for Sinclair, Glaser, and Putman, Plaintiffs argue only their silence or refusal to disavow enforcement indicates a demonstrated willingness to enforce.[5] On March 3, 2023, Plaintiffs' counsel sent letters to counsel for Palacios, Ramirez, Stanek, Hicks (now Montoya), White, and Gonzales, requesting confirmation that they did not intend to investigate or prosecute Plaintiffs' provision of funding and/or practical support to pregnant Texans to assist them in traveling out of Texas to obtain abortion services where legal. (Dkt. 485, at 7). Plaintiffs explain that none responded except White, whose response was not substantive. (*Id.*). Thereafter, after being served with discovery by the former S.B. 8 Defendants regarding Plaintiffs' support for abortion, Plaintiffs' counsel emailed counsel for every Defendant in this case in September 2023, asking whether each of their clients believed the conduct about which discovery was sought was criminal under the pre-*Roe* laws, and whether they would agree not to prosecute Plaintiffs based on information disclosed in that discovery. (*Id.*). All refused to answer, claiming the request was improper discovery. (*Id.*). Plaintiffs argue that this failure to disavow

---

[5] Plaintiffs also argue that the Austin area prosecutors have already stipulated that each is a "proper Defendant in this lawsuit because of her or his authority to prosecute under the challenged statutes." (Dkt. 485, at 8). These stipulations were, however, made two years before *Ogg*, which clarified the test under *Ex parte Young*. Because controlling precedent has changed, the stipulations do not show that the Austin area prosecutors are proper *Ex parte Young* defendants.

enforcement shows a demonstrated willingness to enforce the pre-*Roe* laws. (*Id.*). The parties do not dispute these facts, only their legal significance.

In light of the pre-*Roe* laws' uncertain status, the Court does not find that the Prosecutor Defendants' failure to disavow enforcement under the circumstances amounts to willingness to enforce. Notably, it is unclear whether the laws are enforceable at all. The Fifth Circuit has already held that they have been repealed by implication. *McCorvey v. Hill*, 385 F.3d 846, 849 (5th Cir. 2004). Based on that decision, this Court has held that Plaintiffs are likely to succeed on the merits in this case, (Order, Dkt. 120, at 44–48), but it has also said that Plaintiffs' desired conduct of funding and facilitating out-of-state abortions arguably falls within the laws' ambit. (*Id.* at 33). Despite the legal precedent, the Texas Legislature has issued a legislative finding that the laws are still enforceable, and Paxton has said the same. S.B. 8 § 2 (Tex. 2021). Because the pre-*Roe* laws' validity is in dispute, it is not surprising that prosecutors would decline to answer whether they would enforce them.

Plaintiffs cite cases that suggest refusal to disavow enforcement is enough to bring suit, at least in the First Amendment context. (Dkt. 485, at 7 (citing *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979); *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770 (5th Cir. 2024)). But these cases hold only that failure to disavow is enough to establish standing or to establish a case or controversy. As the Fifth Circuit has explained, the *Ex parte Young* and standing analyses are "not identical." *Ogg*, 105 F.4th at 329. What is sufficient for standing may not be sufficient for *Ex parte Young*.

Beyond refusal to disavow enforcement, Plaintiffs do not assert that most of the Prosecutor Defendants have taken any affirmative acts to enforce or threaten to enforce the pre-*Roe* laws. Though the Court agrees that a clear refusal to disavow enforcement can constitute an affirmative act in certain circumstances, the Court declines to find affirmative acts on the facts here. Beyond their silence in response to Plaintiffs' questions—which makes sense in light of the laws'

questionable enforceability—the Prosecutor Defendants have said nothing about their willingness to enforce the pre-*Roe* laws in the four years since *Dobbs*. Considering the length of time Plaintiffs have had to find evidence of willingness to enforce, and their inability to do so, the Court finds that the second guidepost tips in Defendants' favor.

Plaintiffs have put forth additional evidence for Sinclair, Glaser, and Putman, purporting to show the requisite "scintilla" of affirmative action. First, Sinclair posted an article regarding the *Dobbs* decision to social media, calling it "good news." (Dkt. 485, at 13). Though this reflects Sinclair's personal views, this statement says nothing about his willingness to enforce the pre-*Roe* laws. Second, Glaser said he will enforce Texas's abortion laws post-*Dobbs*, and that "he feels he cannot pick and choose what he does or does not prosecute[.]" (*Id.* at 14). However, the interview discussed abortion laws generally, not the pre-*Roe* laws at issue here, which, as explained above, are unique. A prosecutor's willingness to enforce abortion bans on a "case-by-case"[6] basis says little about their willingness to enforce the pre-*Roe* laws, which may or may not even be in effect. It is also notable that while "other state officials were claiming that the result in *Dobbs* would render the pre-*Roe* Statutes immediately enforceable again," (Dkt. 485 at 13–14), Plaintiffs have put forth no evidence of action or threat from Sinclair and Glaser regarding the pre-*Roe* laws specifically.

Third, and finally, Plaintiffs fail to show that Putman has demonstrated a willingness to enforce. Plaintiffs argue that willingness to enforce has been shown because:

- Putman refused to stipulate that the pre-*Roe* statutes do not reach Plaintiffs' desired (and historical) conduct in assisting Texas residents in obtaining abortion care in states where it is legal.
- Putman refused to grant Plaintiffs' individual representatives limited immunity from prosecution for testimony regarding their conduct in Smith County, which would have allowed them to testify fully without fear of prosecution.

---

[6] Lauren Rangel, *Some Texoma District Attorneys Say They Will Prosecute Abortion Cases*, KXII (kxii.com) (June 30, 2022, 6:24 PM), https://www.kxii.com/2022/06/30/some-texoma-district-attorneys-say-they-will-prosecute-abortion-cases.

- Putman repeatedly responded to press inquiries about enforcement of the abortion laws by indicating that he is willing and able to enforce Texas law if and when facts are presented to him that implicate Texas abortion laws.
- Putman served and sought to compel discovery in this case that would have required the production of information that could be used to prosecute Plaintiffs.
- Texas law tasks Putman with enforcement of criminal law in Smith County.
- Putman claimed in his deposition that he could not opine on whether the pre-*Roe* statutes were enforceable generally.
- Putman claimed in his deposition that he could not opine on whether Plaintiffs' desired and historical conduct was criminal under the pre-*Roe* statutes without an actual case in front of him, despite being tasked by Texas law with enforcing those statutes.

(Dkt. 487, at 12–13) (internal footnotes omitted).

Like the other Prosecutor Defendants, Putman has taken no affirmative action to enforce or threaten to enforce the pre-*Roe* laws. The Court declines to interpret Putman's failure to disavow enforcement as evidence of willingness to enforce for the same reasons as the other Prosecutor Defendants. That is, his refusal to answer whether the laws would apply to Plaintiffs' conduct makes sense in light of the laws' uncertain legal status and the lack of legal decisions interpreting those laws. And his willingness to enforce abortion bans generally says little about his willingness to enforce the pre-*Roe* laws.[7]

Nor can Putman's willingness to enforce be shown by his seeking to compel evidence that could be used to prosecute Plaintiffs or his refusal to grant Plaintiffs' individual representatives immunity from prosecution. First, in the motion to compel, Putman requested that Plaintiffs "[i]dentify and describe every act that you have taken since September 1, 2021, that you believe or

---

[7] In the interview that Plaintiffs cite, Putman seems to be discussing the Trigger Ban, H.B. 1280, not the pre-*Roe* laws. This law, passed during the same legislative session as S.B. 8, took effect after the *Dobbs* opinion and prohibits any abortion except those performed by a licensed physician to prevent the death or serious risk of substantial impairment of a major bodily function of the pregnant person. Tex. Health & Safety Code § 170A.002. Regardless of the applicability of the pre-*Roe* laws at issue in this case, the Trigger Ban now makes most abortions illegal in Texas.

fear might cause Jacob Putman to prosecute you under the criminal abortion laws of Texas"; and "[i]dentify every action that you have taken in Smith County that you believe or fear might have violated Texas's pre-*Roe v. Wade* abortion laws." (Dkt. 457, at 7). Putman seemed to believe that Plaintiffs' answers to these interrogatories could reveal whether they have standing. *See Speech First*, 979 F.3d at 330 (explaining that a plaintiff pursuing a preenforcement challenge has an injury-in-fact when the plaintiff "(1) has an intention to engage in a course of conduct arguably affected with a constitutional interest, (2) his intended future conduct is arguably proscribed by the policy in question, and (3) the threat of future enforcement of the challenged policies is substantial"). Though the United States Magistrate Judge ultimately denied the motion to compel because the interrogatories "call[ed] for legal conclusions," (Dkt. 457, at 8), the Court does not find Putman's attempt to seek discovery relevant to his standing defense shows willingness to enforce.

Second, Plaintiffs argue Putman's refusal to grant Plaintiffs' individual representatives immunity from prosecution amounts to willingness to enforce. But Plaintiffs had asked for "full immunity from any and all prosecutions under Texas law based on . . . information revealed by the individual during the depositions." (Dkt. 493, at 3). This is a broad request, and Putman's failure to grant this immunity simply to obtain Plaintiffs' deposition testimony does not demonstrate willingness to enforce, given his duties to enforce Texas law and to the public.

### 3. The Prosecutor Defendants' Compelling or Constraining Plaintiffs

The Court's analysis on this guidepost follows its analysis on the second guidepost. Because the Prosecutor Defendants have "neither enforced the challenged statute against anyone nor threatened to do so," *Ogg*, 105 F.4th at 332, it is unlikely they have compelled or constrained plaintiffs. "[F]ear of prosecution" stemming from "the existence of the challenged statutes coupled with [the defendant's] authority to prosecute criminal cases" is insufficient to show constraint. *Id.* Here, Plaintiffs assert only that the Prosecutor Defendants' "silence," "in the midst of a storm of

constant claims by state officials that the Pre-*Roe* Statutes *can* be enforced" "is sufficiently chilling." (Dkt. 458, at 9, 11–12). Under *Ogg*, this chilling effect is not sufficient proof of constraint.

Though the Court fears that *Ogg* makes *Ex parte Young* easily avoidable and severely limits plaintiffs' ability to seek preenforcement review of constitutional violations, (*see* Dkt. 458, at 14–19), the Court is bound by the opinion. Applying the connection guideposts as articulated by *Ogg*, all three demonstrate that the Prosecutor Defendants are not proper *Ex parte Young* defendants. Because no genuine factual dispute remains, and the Prosecutor Defendants are entitled to judgment as a matter of law, the Court will grant the Prosecutor Defendants' Motions for Summary Judgment.[8] Accordingly, the Court does not reach Defendants' arguments on standing.

## IV. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Garza's Motion for Summary Judgment, (Dkt. 474); Deski, Glaser, McAfee, Renken, Sinclair, and Weber's Motion for Judgment on the Pleadings and Motion for Summary Judgment, (Dkt. 475); Gonzales's Motion for Summary Judgment, (Dkt. 476); Putman's Motion for Summary Judgment, (Dkt. 478); and Montoya's Motion for Summary Judgment, (Dkt. 483), are **GRANTED**. Accordingly, **IT IS ORDERED** that Garza, Deski, Glaser, McAfee, Renken, Sinclair, Weber, Gonzales, Putman, and Montoya are **DISMISSED**

---

[8] Defendants Ramirez, Palacios, and Stanek did not move for summary judgment but rather raised their sovereign-immunity defenses in their responses to Plaintiffs' Motion for Partial Summary Judgment. Under Federal Rule of Civil Procedure 12(h)(3), "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Here, the Court has found that it lacks subject-matter jurisdiction because Plaintiffs have failed to demonstrate that the Prosecutor Defendants fall into the *Ex parte Young* exception. Therefore, it will dismiss Ramirez, Palacios, Stanek as well.

However, Defendant White has not raised a sovereign-immunity defense at all because he has not appeared in this action. White's deadline to file an answer or otherwise respond passed on May 4, 2023. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). When a party fails to timely plead or defend, it may be held in default. Fed. R. Civ. P. 55(a). If a defendant is in default, the Court may require the plaintiff to move for entry of default and default judgment. W.D. Tex. Loc. R. CV-55. Here, the Court will order Plaintiffs to move for entry of default against White on or before June 6, 2025. Plaintiffs may also choose to voluntarily dismiss their claims against White. *See* Fed R. Civ P. 41(a)(1)(A)(i).

**WITHOUT PREJUDICE**. **IT IS FURTHER ORDERED** that Ramirez, Palacios, Stanek, are

**DISMISSED WITHOUT PREJUDICE**.

　　　**IT IS FURTHER ORDERED** that Plaintiffs shall move for entry of default against White

on or before **June 6, 2025**. Plaintiffs may also choose to voluntarily dismiss their claims against

White. *See* Fed. R. Civ P. 41(a)(1)(A)(i).

　　　**IT IS FURTHER ORDERED** all remaining motions are **MOOT**.

　　　**IT IS FINALLY ORDERED** that the current June 23, 2025, trial date is **VACATED**.

　　　**SIGNED** on May 23, 2025.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE